**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

|  |  |  |
|---|---|---|
| | ) | |
| AnywhereCommerce, Inc. and BBPOS Limited | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 18-cv-05824-MLB |
| v. | ) ) ) | |
| Ingenico Inc., Ingenico Corp., Ingenico Group SA, and Ingenico Ventures SAS | ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION
TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6) OR TRANSFER
VENUE UNDER 28 U.S.C. § 1404 AND MOTION FOR MORE DEFINITE
STATEMENT PURSUANT TO FED. R. CIV. P. 12(E)**

# Table of Contents

I.   INTRODUCTION ..................................................................................................1

II.   ALLEGED FACTS ............................................................................................4

   A. Plaintiffs' Complaint alleges that Ingenico breached a contractual duty of
      confidentiality and violated state and federal laws related to trade secret
      misappropriation and the lawful conduct of business...............................4

   B. The contract that Ingenico allegedly breached contains a mandatory
      forum selection clause requiring that any litigation be brought in the
      Commonwealth of Massachusetts and adjudicated according to
      Massachusetts law. ....................................................................................7

   C. AnywhereCommerce expressly consented to the contract with the forum
      selection clause and previously agreed with ROAM, an entity that
      merged into Ingenico, that it would litigate in Massachusetts.................8

III.   ARGUMENT....................................................................................................9

   A. The Court should transfer all of BBPOS' claims against Ingenico to
      federal court in Massachusetts because BBPOS agreed to a mandatory
      forum selection clause and no highly unusual circumstances weigh
      against transfer. ........................................................................................9

   B. The Court should hold that the remaining parties are also bound by the
      forum selection clause because they are closely related to the dispute and
      it was foreseeable that the forum selection clause would require
      litigation in Massachusetts. ....................................................................13

   C. If the remaining parties are for some reason not bound by the forum
      selection clause, the Court should exercise its discretion to transfer the
      entire case because any other result would result in duplicate, parallel
      litigation. ................................................................................................19

   D. This Court should order any remaining Plaintiff(s) to offer a more
      definite statement. ...................................................................................24

IV.   CONCLUSION ..............................................................................................25

## I.    INTRODUCTION

This case concerns an alleged theft of Plaintiffs' confidential business information by Defendants, four affiliated corporate entities (collectively, the "Ingenico entities"). All of the parties participate in the mobile payments business. Plaintiffs are two separate companies, but their principals allegedly developed key mobile payment technology as a unified group in 2006. The Plaintiffs have remained closely allied in the subsequent years: their operations remain "complementary," they are "philosophically aligned," and they believe that through their collective intellectual property ownership, they "effectively lock up the manufacture and supply of mobile point of sale devices world-wide."

BBPOS Limited ("BBPOS"), one of the two Plaintiffs, alleges that it has a contractual relationship with Ingenico Inc. ("Ingenico") that required Ingenico to keep certain information confidential. BBPOS alleges that Ingenico breached this agreement by sharing BBPOS' alleged trade secrets with the other Ingenico entities. According to the Complaint, the same operative facts underlie the remaining claims brought by BBPOS and AnywhereCommerce Inc. ("AnywhereCommerce"). For example, AnywhereCommerce alleges that the Ingenico entities used the stolen trade secrets to compete unfairly and tortiously divert business opportunities away from AnywhereCommerce.

Defendants move to dismiss this action under Rule 12(b)(6) or transfer it to the United States District Court for the District of Massachusetts under 28 U.S.C. § 1404. The contract that Ingenico allegedly breached contains a forum selection clause that requires that any litigation take place in Massachusetts, and demonstrates the parties' intent for this clause to apply to "any dispute concerning this agreement." Because this clause covers BBPOS' claims against Ingenico, this Court should dismiss the action or transfer it to the parties' chosen and contractually bargained-for exclusive forum.

Although AnywhereCommerce and the other Ingenico entities did not sign that contract, the Court should bind them to that clause. The Eleventh Circuit has held that litigants may be bound to a forum selection clause that they did not sign if they are closely related to the dispute and it was foreseeable that they too might be bound to the clause. By expanding the effect of forum selection clauses to such litigants, courts ensure that plaintiffs do not avoid their contractual promise to litigate in a particular forum by simply adding additional litigants.

This rule applies here. Plaintiffs alleged that all of the claims are based on the same operative facts and should be tried together. AnywhereCommerce expressly consented to the contract containing the forum selection clause. It is a long-time business partner of BBPOS and the ultimate owner of at least some of the allegedly

stolen trade secrets. Most if not all of AnywhereCommerce's claims are derived from the premise that the Ingenico entities stole trade secrets from BBPOS in breach of the contract between BBPOS and Ingenico. Consequently, these and other facts support binding AnywhereCommerce to the clause.

If this Court determines that the forum selection clause for some reason does not bind AnywhereCommerce, it should exercise its discretion to transfer the entire case to the United States District Court for the District of Massachusetts under 28 U.S.C. § 1404. The factors that this Court considers when determining whether to transfer an action favor transfer. Most significantly, if this Court severed the action and transferred only some of the claims based on the forum selection clause, then parallel cases would proceed in this Court and in Massachusetts. This would be inefficient for the judicial system, inconvenient to parties and non-parties involved in the lawsuits, and could lead to divergent rulings on similar issues.

Finally, if this Court does not transfer the entire action, then it should order Plaintiffs to provide a more definite statement of any remaining claims under Rule 12(e). In many respects Plaintiffs' Complaint treats the Ingenico Defendants as an undifferentiated mass, and fails to attribute alleged acts or omissions to a specific Ingenico entity. As a result, Defendants cannot reasonably answer the allegations,

assert the appropriate defenses, or move for relief under Federal Rule of Civil

Procedure 12(b). Accordingly, the Court should order a more definite statement.

## II.   ALLEGED FACTS

### A. Plaintiffs' Complaint alleges that Ingenico breached a contractual duty of confidentiality and violated state and federal laws related to trade secret misappropriation and the lawful conduct of business.

This action was initiated by Plaintiffs AnywhereCommerce, allegedly a

Canadian corporation with a principal place of business in California, and BBPOS

Limited, allegedly a Hong Kong Corporation with a principal place of business in

Hong Kong.[1] The Complaint alleges that AnywhereCommerce and BBPOS are

strategic partners in a "resilient alliance" operating in the business of credit card

processing and mobile payment solutions.[2] This "alliance" began in or around

2006, when the principals of BBPOS and AnywhereCommerce collaborated to

develop mobile payment solutions.[3] AnywhereCommerce licenses its technology

to BBPOS, and BBPOS is its "primary manufacturer and technology developer."[4]

In May 2010, BBPOS entered into a sub-license with an entity named ROAM

Data, Inc. ("ROAM") (the "Sub-License"). At the time that BBPOS and ROAM

entered into the Sub-License, Ingenico Ventures SAS owned about 40% of

---

[1] *See* Plaintiffs' Complaint, Doc. No. 1 ("Complaint").
[2] *Id.* ¶ 19.
[3] *Id.* ¶ 16.
[4] *See id.* at ¶¶ 14-15, 18.

ROAM.[5] By February 2012, Ingenico Ventures SAS purchased a controlling stake in ROAM, and in 2017 ROAM merged with Ingenico.[6] Accordingly, throughout this memorandum, ROAM is referred to as "Ingenico"

In the Sub-License, Ingenico engaged BBPOS to design and manufacture point of sale devices, and BBPOS granted Ingenico a license to use and sell the devices, as well as some rights to the intellectual property incorporated in the devices.[7] Defendants refer to this agreement as the "Sub-License" because some of what BBPOS licensed to Ingenico had first been licensed from AnywhereCommerce to BBPOS.[8] In the original or "Prime License" between AnywhereCommerce and BBPOS, AnywhereCommerce expressly acknowledges and consents to the Sub-License.[9]

BBPOS alleges that Ingenico breached the Sub-License by failing to uphold the duty of confidentiality owed to BBPOS thereunder.[10] Specifically, Plaintiffs allege that in the summer of 2012, an Ingenico Vice President interviewed BBPOS

---

[5] *Id.* at ¶ 41.
[6] *Id.* at ¶¶ 44, 53.
[7] *See* Exhibit A to the Complaint.
[8] *See* Complaint at ¶¶ 20, 26.
[9] *Id.* at ¶ 21 (alleging that the July 1, 2013 license was between AnywhereCommerce's parent and BBPOS); *id.* at ¶ 26 ("[T]he Plaintiff parties acknowledge the existence of BBPOS' and ROAM's" Sub-License, "a copy of which is attached hereto as Exhibit A.").
[10] *Id.* at ¶¶ 156-161.

personnel to determine the "design and trade secrets of the products BBPOS was making" under the Sub-License.[11] BBPOS alleges that the Vice President then sent these alleged trade secrets to the other Ingenico entities, which "misused the stolen technology and trade secrets."[12] (Plaintiffs attribute their allegation that Ingenico stole trade secrets as deriving from unspecified "court filings." It appears that the allegation comes from a complaint that was filed against certain Ingenico entities in 2012 and dismissed with prejudice by the Massachusetts Superior Court.[13])

Here, Ingenico's alleged breach of the Sub-License forms the basis of BBPOS' claim for breach of contract. The remainder of Plaintiffs' claims are based "upon a common nucleus of operative facts" and Plaintiffs allege that "the entire action commenced by this complaint constitutes *a single case that would ordinarily be tried in one judicial proceeding*."[14]

BBPOS' additional claims include alleged violations of the Lanham Act and trade secret protection laws of Georgia, Massachusetts, and the United States.[15]

---

[11] *Id.* at ¶ 47.

[12] *Id.* at ¶ 48.

[13] *Graylin et al. v. Lazare et al.*, C.A. No. 12-4032 BL2 (Superior Court Department of the Trial Court).

[14] *See* Complaint at ¶ 12 (emphasis supplied).

[15] *See id.* at Count VI (Lanham Act) Count IV (an alleged violation of the Defend Trade Secrets Act of 2016, 18 USC § 1836); Count III (an alleged violation of the Massachusetts Trade Secrets Act, M.G.L. Ch. 93, § 19); and Count II (an alleged violation of the Georgia Trade Secrets Act, O.C.G.A. §§ 10-1-760, et. seq.).

AnywhereCommerce's claims include alleged theft of trade secrets and unfair business practices under common law business torts, unjust enrichment, and Georgia statutes that forbid unfair and deceptive trade practices.[16] Specifically, AnywhereCommerce alleges that it owned some or all of the trade secrets that the Ingenico entities stole from BBPOS.[17] After the alleged theft, the Ingenico entities allegedly used them in conjunction with unfair business practices to undermine AnywhereCommerce's relationship with its customers.[18]

## B. The contract that Ingenico allegedly breached contains a mandatory forum selection clause requiring that any litigation be brought in the Commonwealth of Massachusetts and adjudicated according to Massachusetts law.

The Sub-License that Ingenico allegedly breached states as follows:

> This Agreement shall be governed by and construed in all respects in accordance with the laws of Massachusetts, USA and **the parties hereto hereby irrevocably submit to the exclusive jurisdiction of the courts of Massachusetts.** Either party may require that any dispute concerning this Agreement that is not resolved by the parties within 30 days be resolved by binding arbitration in Boston, Massachusetts using one arbitrator and the

---

[16] *See id.* at pages 37-53.

[17] *See, e.g., id.* at ¶ 108 ("Ingenico, in response to its knowledge of Plaintiffs' business plans *and on the back of its theft of Plaintiffs' trade secrets*, began … shut[ting] out competition from AnywhereCommerce … .") (emphasis supplied).

[18] *See id.*

Commercial Arbitration Rules of the American Arbitration Association.[19]

On August 15, 2011, BBPOS' CEO confirmed and acknowledged the continuing validity and enforceability of the Agreement.[20]

### C. AnywhereCommerce expressly consented to the contract with the forum selection clause and previously agreed with ROAM, an entity that merged into Ingenico, that it would litigate in Massachusetts.

As noted, AnywhereCommerce was aware of and consented to the Sub-License between BBPOS and Ingenico. In the Prime License—a July 1, 2013 contract that Plaintiffs referenced in the Complaint but did not attach—AnywhereCommerce's parent company agreed as follows: "Licensor hereby expressly acknowledges that [BBPOS] previously entered into [the Sub-License] with ROAM Data, Inc., a subsidiary of Ingenico S.A., dated May 4, 2010, and Licensor hereby consents to such agreement … ."[21]

---

[19] Exhibit A to Complaint at 8 (§16.1) (emphasis supplied). No party has elected to arbitrate the dispute.

[20] *See id.* at 13 (§ 6).

[21] Exhibit 1 (July 1, 2013 License between BBPOS and HomeATM). Because the Plaintiffs referenced Exhibit 1 in their Complaint, the Court can consider it under Rule 12. *See, e.g., G&G TIC, LLC v. Alabama Controls, Inc.*, 324 F. App'x 795, 798 (11th Cir. 2009) ("G&G contends that the district court erred in considering the contents of the contract, and not merely the allegations in the Amended Complaint, in its analysis of TAC's motion to dismiss. We disagree. The district court's consideration of the contract referenced in G&G's Amended Complaint was proper.") (citing *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir.2005).

[21] *Id.* at Page 6 of 12 (§ 13).

In addition, in 2010 AnywhereCommerce signed an agreement with ROAM, which later merged into Ingenico.[22] The President and C.E.O. of "HomeATM-Anywhere Commerce" signed a contract providing that AnywhereCommerce could market, sell, and distribute some of ROAM's products and associated services.[23] This agreement stated that it renews unless terminated, and permits ROAM to assign the agreement without obtaining consent.[24] The parties agreed that their contract "shall be governed by … the laws of the Commonwealth of Massachusetts," and that "[a]ny dispute between the Parties shall be brought in a court … in the Commonwealth of Massachusetts … ."[25] This clause is not limited to disputes arising under or as a result of the agreement.

## III.   ARGUMENT

### A. The Court should dismiss all of BBPOS' claims against Ingenico or transfer them to federal court in Massachusetts because BBPOS agreed to a mandatory forum selection clause and no highly unusual circumstances weigh against transfer.

The Court should dismiss this action or transfer it to the United States District Court for the District of Massachusetts because the mandatory forum selection clause covers all of the claims that BBPOS brought against Ingenico, Inc. The

---

[22] *See* Exhibit 2 (Agreement between AnywhereCommerce and ROAM Data, Inc.).
[23] *See id.*
[24] *Id.*
[25] *Id.* at Page 6 of 12 (§ 13).

2013 United States Supreme Court decision in *Atlantic Marine Constr. Co. v. U.S. Dist. Court for Western Dist. of Tex.* held that defendants who benefit from a forum selection clause can enforce it through a motion to transfer under 28 U.S.C. § 1404(a), and possibly through dismissal under Rule 12(b)(6).[26] 28 U.S.C. § 1404(a) provides as follows:

> (a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

In *Atlantic Marine*, the Supreme Court held that if a valid forum selection clause exists and applies to the claims in question "a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer."[27] Specifically, district courts should only deny the requested transfer if public-interest factors such as the administrative difficulties flowing from court congestion, the local interest in having localized controversies decided at home, and the interest in having the trial of a diversity

---

[26] 571 U.S. 49 (2013); *see id.* at 61 (declining to determine whether a defendant in a breach of contract action can obtain dismissal under Rule 12(b)(6) if plaintiff files suit in a district other than the one specified in a valid forum-selection clause). *See also Claudio-De Leon v. Sistema Universitario Ana G. Mendez*, 775 F.3d 41, 46 n. 3 (1st Cir. 2014) ("[A]bsent a clear statement from the Supreme Court to the contrary … the use of Rule 12(b)(6) … is still permissible in this Circuit … ." for forum selection clauses).

[27] *Id.* at 52.

case in a forum that is at home with the law weigh against the transfer.[28] "Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases."[29]

Here, BBPOS and Ingenico are parties to the Sub-License. BBPOS has alleged that Ingenico breached the Sub-License that contains a mandatory forum selection clause and expressly specifies Massachusetts as the only forum for litigation.[30] The clause does not limit itself to claims for breach of contract, and instead demonstrates the parties' intent for it to apply to "any dispute concerning th[e] Agreement … ." Thus, all of BBPOS' claims against Ingenico, which "are based upon a common nucleus of operative facts" and "constitute a single case that would ordinarily be tried in one judicial proceeding" are subject to the clause.[31] Thus, this Court should "transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer."[32]

Here, no extraordinary circumstances weigh against transfer. Per the Supreme Court, the public interests that could "conceivabl[y]" outweigh the parties' chosen forum include "the administrative difficulties flowing from court congestion; the

---

[28] *Id.* at 62 n. 6.
[29] *Id.* at 64.
[30] *See* Exhibit A at 8.
[31] *See* Complaint at ¶ 12.
[32] *Id.* at 52.

local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law."[33]

Although BBPOS would "bear the burden" of showing that these factors justify releasing itself from its contractual commitment, here there is no reason to believe that administrative difficulties in the District of Massachusetts weigh against transfer.[34] There is also no cause to characterize this action as a "localized controvers[y]" because the Complaint does not allege that any particular acts or omissions occurred in Georgia: the only alleged connection to Georgia is that Ingenico is a Georgia corporation.[35] To the contrary, the Sub-License identifies Massachusetts as the proper forum for disputes, and one of the key entities, ROAM Data was based in Boston.[36] As attested to in the Declaration of Ward D. Hewins, Ingenico employs roughly fifty employees in its Boston office and continues to run the mobile payment business formerly operated by ROAM Data Inc. primarily from that office.[37] Finally, the public interest factor of "having the trial of a diversity case in a forum that is at home with the law" favors Massachusetts as the proper forum. The contract between BBPOS and Ingenico states that

---

[33] *Id.* at 62 n.6.

[34] *Id.* at 63-64 ("[T]he plaintiff must bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed.").

[35] See Complaint at ¶ 5.

[36] *See* Complaint at ¶¶ 5-8; *see also id.* at Exhibit A.

[37] *See* Hewins Decl. at ¶ 4.

Massachusetts law governs, and BBPOS has brought a claim under the "recently passed" Massachusetts Trade Secrets Act.[38]

Because the parties agreed to a mandatory forum-selection clause covering BBPOS' claims, the Court should dismiss or transfer the action to the United States District Court for the District of Massachusetts under 28 U.S.C. § 1404(a).

**B. The Court should hold that the remaining parties are also bound by the forum selection clause because they are closely related to the dispute and it was foreseeable that the forum selection clause would require litigation in Massachusetts.**

Although the remaining Ingenico entities and AnywhereCommerce did not sign the Sub-License, this Court should nonetheless hold that they are bound to the forum selection clause because they are closely related to the dispute between BBPOS and Ingenico, and it was foreseeable that the clause would apply.

In the 1998 decision *Lipcon v. Underwriters at Lloyd's, London*, the Eleventh Circuit recognized that "'[A] range of transaction participants, parties, and non-parties, should benefit from and be subject to forum selection clauses.'"[39] It held that a non-party may be bound to a forum selection clause if "the party [is] 'closely

---

[38] *See id.* at ¶ 138; *see also id.* at Exhibit A.

[39] *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1299 (11th Cir. 1998) (quoting *Manetti–Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n.5 (9th Cir.1988)).

related' to the dispute such that it becomes 'foreseeable' that it will be bound."[40] In

*Lipcon*, two parties were bound to a forum selection clause that required them to

litigate in England. Their spouses became parties to the litigation, and although

they had never signed a contract promising to litigate in England, the district court

determined that they were closely related to the litigants such that they too should

be bound by the forum selection clause.[41]

The Eleventh Circuit upheld this determination and referenced standards the

district courts should apply to apply this rule. It noted that an entity need not be

considered a third-party beneficiary of the contract in order to be bound (although

any third-party beneficiary would "by definition" satisfy the requirements).[42] It

also suggested that one corporation could be bound to another's forum selection

---

[40] *Id.* (quoting *Hugel v. Corporation of Lloyd's*, 999 F.2d 206, 209 (7th Cir.1993)); *see also Vickers v. Wells*, No. CIV.A. 105CV0930RWS, 2006 WL 89858, at *3 (N.D. Ga. Jan. 11, 2006) (The Eleventh Circuit "has defined the inquiry [into whether a non-party should be bound] as whether the litigant in question is 'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound' by the contractual selection of a litigation forum … If so, then the party is deemed to fall within the "range of transaction participants, parties and nonparties, [that] should benefit from and be subject to forum selection clauses.") (internal quotation marks and citations omitted) (alterations in original).

[41] *Id.* at 1299.

[42] *Id.* at 1299 (quoting *Hugel*, 999 F.2d at 209-10 n.7); *see also Vickers v. Wells*, No. CIV.A. 105CV0930RWS, 2006 WL 89858, at *3 (N.D. Ga. Jan. 11, 2006) ("Being a party to the agreement, or indeed, even a third-party beneficiary, simply is not a precondition to enforcement.").

clause if the non-signing "'corporation's interests were directly related to, if not predicated upon, the [signatory's] conduct.'"[43]

In the 2016 case of *Stiles v. Bankers Healthcare Group, Inc.*, the Eleventh Circuit applied this rule to a party that did not sign the contract because her claims depended on the contract:[44] "Defendant … owed [] obligations only to … a party to the agreement. As Mrs. Stiles was not a signatory to her husband's loan agreement nor in any way a party to that contract, she would appear to face a threshold problem in pursuing remedies … against Defendant. But assuming that Mrs. Stiles has some viable claim against Defendant … any such claim is predicated on the same facts as her husband's claims. Therefore, her claims are derivative of and directly related to her husband's, and she is bound by the forum-selection clause."[45]

A number of courts, including those in the Seventh, Third, and Second Circuits, undertake the same or a similar analysis.[46] Several employ the rule to

---

[43] *Id.* at 1299 (alterations in original) (quoting *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1297 (3d Cir.1996)).

[44] *See, e.g., Xena Investments, Ltd. v. Magnum Fund Mgmt. Ltd.*, 726 F.3d 1278, 1285 (11th Cir. 2013) ("Under our de novo review, the district court correctly enforced the forum-selection clause against the signatories to the Forbearance Agreement, Xena and MFM, and also the closely-related parties, Dion and David.")

[45] *Id.* at 562.

[46] *See, e.g., Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1297 (3d Cir.1996); *Am. Patriot Ins. Agency, Inc. v. Mut. Risk Mgmt., Ltd.*, 364 F.3d 884, 889 (7th Cir. 2004) (holding that a forum-selection clause may not be defeated "by suing an

impair attempts by litigants to avoid forum selection clauses by naming affiliates.

The Court should apply this rule here. The three Ingenico entities other than Ingenico are "closely related" as that term is used by the Eleventh Circuit. Ingenico is wholly-owned by Ingenico Corp., which in turn is wholly-owned by Ingenico Group S.A. All of the Ingenico entities are alleged to have participated in and benefited from the same alleged theft.

As shown below, AnywhereCommerce is closely related not only to BBPOS, but to the dispute itself, and having acknowledged and consented to the contract containing the forum selection clause, should have foreseen that it might be bound by the clause in the Sub-License. First, the crux of AnywhereCommerce's claims are based on Ingenico's alleged breach of the Sub-License and theft from BBPOS.

---

affiliate or affiliates of the party to the contract in which the clause appears, or employees of the affiliates."); *In re Optimal U.S. Litig.*, 813 F. Supp. 2d 351, 371 n. 142 (S.D.N.Y.), *on reconsideration in part*, 813 F. Supp. 2d 383 (S.D.N.Y. 2011) (recognizing that "employees or disclosed agents of an entity that is a party to an agreement [containing a forum selection clause] are protected by that agreement … . If it were otherwise, it would be too easy to circumvent [forum selection clauses] by naming individuals as defendants instead of [entities].") (quoting *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1360 (2d Cir. 1993)); *Brock v. Entre Computer Ctrs., Inc.*, 740 F.Supp. 428, 430 (E.D. Tex. 1990) (forum-selection clause applies to "transaction participants" even if they were not parties to the contract); *CCI of Arkansas, Inc. v. Baggette Constr., Inc.*, No. 4:09-CV-513 (JLH), 2009 WL 3010986, at *3 (E.D. Ark. Sept. 17, 2009) (non-signatories to contract interwoven in dispute between parties to contract may invoke contract's forum-selection clause); *Tsai v. Karlik et al.*, Case No. 4:14-cv-244 (E.D. Mo., Dec. 9, 2016) ("Plaintiff may not avoid the forum-selection clause by naming affiliates of the contractual parties as defendants.").

Defendants' alleged theft from BBPOS underlies AnywhereCommerce's unjust enrichment, tortious interference, and deceptive practices claims, all of which depend on the allegation that Ingenico had acquired "Plaintiffs' trade secrets" in breach of the Sub-License.[47] Although AnywhereCommerce alleges that the Ingenico entities had discussions directly with AnywhereCommerce and concludes that it breached unspecified "confidentiality agreements," AnywhereCommerce brought no claim for breach of contract against any Ingenico entities, identified no specific confidentiality agreement, and alleges no cognizable legal duty owed by Ingenico directly to AnywhereCommerce.[48] AnywhereCommerce's claims that Ingenico tortiously interfered with its relationship with First Data, for example, allege that the interference was enabled by the breach of the BBPOS Agreement: "[O]n the back of its theft of Plaintiffs' trade secrets," "Ingenico … began bundling and discounting products … ."[49]

Thus, like the spouse in *Stiles* who was considered a related party because her claims ultimately depended on her husband's contract, AnywhereCommerce should be considered a related party because most if not all of its claims ultimately

---

[47] *Id.* ¶¶ 108, 168; *see id.* at pages 48-51.

[48] *Id.* ¶ 117.

[49] *Id.* ¶ 108.

depend on its business partner's contract with Ingenico.[50] And as in *Lipcon*, AnywhereCommerce's "'interests [are] directly related to, if not predicated upon,'" the conduct and interests of BBPOS.[51]

Second, other facts alleged in the Complaint support the conclusion that AnywhereCommerce should be bound. AnywhereCommerce is closely aligned with and related to BBPOS: Plaintiffs allege that they are long-time strategic partners whose principals formerly did business together as "HomeATM" as far back as 2006.[52] After those principals founded BBPOS and AnywhereCommerce, BBPOS remained AnywhereCommerce's "primary manufacturer and technology developer," and they retain a "resilient alliance" that works because "their operations are complementary and philosophically aligned."[53] They allegedly collectively hold patents and intellectual property "that, together, effectively lock up the manufacture and supply of mobile point of sale devices world-wide … ."[54]

Third, AnywhereCommerce is the alleged owner (or at least licensor) of intellectual property allegedly stolen in violation of the Sub-License. It expressly acknowledged and consented to the Sub-License in writing, *after* Ingenico

---

[50] *Stiles*, 637 F. App'x at 562.

[51] *Lipcon*, 148 F.3d at 1299 (alterations in original) (quoting *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1297 (3d Cir.1996)).

[52] Complaint ¶ 16.

[53] *Id.* ¶ 19.

[54] *Id.* ¶ 29.

Ventures SAS acquired a controlling interest in ROAM.[55] AnywhereCommerce even promised BBPOS that it would not license any of its technology to Ingenico or any of its affiliates in order not to compete with BBPOS' Sub-License.[56]

In sum, all of the parties are closely related to the dispute between Ingenico and BBPOS and should be bound by the Sublicense's forum selection clause.

## C. If the remaining parties are for some reason not bound by the forum selection clause, the Court should exercise its discretion to transfer the entire case because any other result would result in duplicate, parallel litigation.

If this Court does not find that the additional parties are bound to the forum selection clause, then it should still exercise its discretion to transfer the entire case to the District of Massachusetts. The Supreme Court's decision in *Atlantic Marine* identified a number of private and public interest factors that are often considered when a district court determines whether to transfer a case under 28 U.S.C. § 1404:

> Factors relating to the parties' private interests include relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. Public-interest factors may include the administrative difficulties flowing from court congestion; the local interest in having localized controversies

---

[55] *Id.* ¶ 120 (noting that Ingenico acquired a controlling interest in ROAM in 2012).
[56] *See* Exhibit 2 at 8.

> decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law. The Court must also give some weight to the plaintiffs' choice of forum.[57]

Here, per *Atlantic Marine*, the private interests of Ingenico and BBPOS all weigh entirely in favor of Massachusetts because they agreed to a forum selection clause, and for such litigants, "[a] court [] must deem the private-interest factors to weigh entirely in favor of the preselected forum."[58] As previously shown, the public interest considerations likely favor Massachusetts because the action includes a "recently passed" Massachusetts law, and some of the events referenced in the Complaint occurred in Boston or with a Boston-based company.[59] As attested to in the Declaration of Ward Hewins, Ingenico employs roughly fifty employees in its Boston office and continues to run the mobile payment business formerly operated by ROAM Data Inc. primarily from that office.[60]

The only additional considerations relevant to this Court's decision are the private interests of Ingenico Corp. and Ingenico Group SA (both entities favor transfer) and of AnywhereCommerce. AnywhereCommerce's private interests—

---

[57] *Atlantic Marine*, 571 U.S. at 62 n.6 (citations and internal quotations omitted).

[58] *Id.* at 64.

[59] *See* supra at 14.

[60] *See* Declaration of Ward Hewins in support of Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) or Transfer Venue Under 28 U.S.C. § 1404 and Motion for More Definite Statement pursuant to Fed. R. Civ. P. 12(e) at ¶ 4.

regardless of what they are—should not outweigh the private interests of the other four parties to the litigation and the public interest that favors Massachusetts.

A neutral examination of AnywhereCommerce's private interest factors demonstrates that they too favor a transfer to Massachusetts. The private interest factors include "relative ease of access to sources of proof … the cost of obtaining attendance of willing, witnesses … and all other practical problems that make trial of a case easy, expeditious and inexpensive."[61] Should AnywhereCommerce oppose transfer and ask the Court to sever and retain its claims, then two parallel lawsuits would move forward in two different federal forums on identical and/or closely-related claims.[62] AnywhereCommerce itself has alleged that the claims are all based on "a common nucleus of operative facts" and that the "entire action … constitutes a single case that would ordinarily be tried in one judicial proceeding."[63] Thus, it would be extremely inefficient for the courts, parties, and witnesses in the case to litigate the same issues in two courts.

---

[61] *Atl. Marine*, 571 U.S. at 62 n.6.

[62] Three of AnywhereCommerce's four claims are brought jointly with BBPOS against Ingenico. *See* Complaint at 37 (Count I – AnywhereCommerce alleges that Ingenico tortiously interfered with actual and prospective business relations); *id.* at 47-50 (three joint claims with BBPOS against Ingenico).

[63] Complaint ¶ 12.

Such was the conclusion of the district court for the Eastern District of Michigan in the 2015 case of *Family Wireless #1, LLC v. Auto. Techs., Inc.*[64] There the district court analyzed a motion to transfer venue in a case where twenty-four plaintiffs had contractually agreed to litigate in Connecticut and seventeen plaintiffs had not agreed to a forum selection clause.[65] If the district court transferred only the twenty-four Plaintiffs who agreed to litigate in Connecticut and retained the remaining claims, then "duplicative litigation would arise in two forums. Both parties disfavor this outcome, and the Court agrees that it would not be appropriate in this case. Severing and transferring some Plaintiffs and not others would create a much greater inconvenience than transferring the case as a whole."[66] Ultimately, the court transferred the entirety of the case to Connecticut.

Notably, the Michigan court did so even though some of the Plaintiffs before it were based in Michigan. They had a "stronger argument" than any other Plaintiff that their claims should not be transferred because they chose Michigan as their forum and events relevant to their claim occurred in that state.[67] But the court's strong interest in avoiding duplicative litigation ultimately warranted transfer.[68]

---

[64]No. 15-11215, 2015 WL 5142350, at *1 (E.D. Mich. Sept. 1, 2015).

[65] *Id.* at *7 (E.D. Mich. Sept. 1, 2015)

[66] *Id.*

[67] *Id.*

[68] *Id.*

A trial court in the Southern District of New York came to a similar conclusion in the 2016 case of *Bent v. Zounds Hearing Franchising, LLC.*[69] In *Bent*, the plaintiff had agreed to a contractual forum selection clause with one of the two defendants it named. The claims against the first defendant were transferred to Arizona as required by the contract, and the second defendant moved to transfer the remainder. The Court found that although the claims against the second defendant were "not identical" to the claims against the first, "there will unavoidably be significant overlap in the relevant evidence and witnesses, as reflected in Bent's decision to bring a common case against these defendants." Thus, the factors implicated by 28 U.S.C. § 1404, including "trial efficiency and the interests of justice," "the convenience of the witnesses," and "the convenience and relative means of the parties," all favored transferring the remainder. Ultimately, "the interests promoted by allowing this lawsuit to proceed intact outweigh any prejudice that [plaintiff] might endure as a result of transfer."[70]

Also relevant to this Court's consideration of AnywhereCommerce's private interests is its consent to a mandatory forum selection clause with ROAM (now Ingenico) establishing Massachusetts as the only appropriate forum for disputes. Although this contract does not form the basis of AnywhereCommerce's claims, it

---

[69] No. 15 CIV. 6555 (PAE), 2016 WL 153092, at *6 (S.D.N.Y. Jan. 12, 2016).
[70] *Id.* at *9.

demonstrates AnywhereCommerce's willingness to litigate in Massachusetts with ROAM (now Ingenico) or any entity to which ROAM chose to assign the contract.

Although AnywhereCommerce's claims based on Georgia statutes might "slightly" favor this district, here there is no reason to believe that any complicated or novel issues of law are implicated by its claims.[71] Unlike the Massachusetts Trade Secret Act invoked by BBPOS, the Georgia statutes are not alleged to be "recently passed." In sum, even if the forum selection clause does not bind all of the parties, this Court should still transfer the entire case under 28 U.S.C. § 1404.

### D. This Court should order any remaining Plaintiff(s) to offer a more definite statement.

If the Court does not transfer the entire case to Massachusetts, then it should require any remaining Plaintiff(s) to submit a more definite statement under Rule 12(e) of the Federal Rules of Civil Procedure . This is because Plaintiffs' Complaint fails to provide each defendant with sufficient information to answer, assert affirmative defenses, or move the Court for relief.

Plaintiffs' 53-page Complaint reads like a novella and accuses the Ingenico entities of various acts and omissions, but does so indiscriminately between the

---

[71] *See Bent*, 2016 WL 153092, at *8 (noting that the fact that a claimant brought New York statutory claims only "slightly" favors New York, but weighing the factor little because "parties have not indicated that any complicated or novel issues of law are implicated by Bent's claims.").

various Ingenico entities. Plaintiffs' Complaint defines "Defendant Ingenico Group, SA" as "individually, or generally, 'Ingenico,' *as the context requires*."[72] The Complaint also uses the word "Defendants" to refer to "any combination of" any of the four Defendants.[73] Plaintiffs' failure to appropriately clarify which entity allegedly performed which action or omission deprives Defendants of the ability to "reasonably prepare a response" to the Complaint. Accordingly, the Court should order Plaintiffs to submit a more definite statement under Rule 12(e).

## IV.  CONCLUSION

For the foregoing reasons, this Court should dismiss the Complaint under Rule 12(b)(6) or transfer the action to the United States District Court for the District of Massachusetts under 28 U.S.C. § 1404; and if it does not do so, this Court should order any remaining Plaintiff(s) to submit a more definite statement under Rule 12(e).

---

[72] Complaint ¶ 1 (emphasis supplied).
[73] *Id.* at 1.

Dated: March 25, 2019

Respectfully Submitted,

**MORRIS, MANNING & MARTIN, LLP**

/s/ Lawrence H. Kunin
Lawrence H. Kunin
Florida Bar No. 050210
1600 Atlanta Financial Center
3343 Peachtree Road, NE
Atlanta, GA 30326
Tel: 912-651-8950
Fax: 912-232-7184
lkunin@mmmlaw.com

and

JOHN A. TARANTINO *(phv pending)*
PATRICIA K. ROCHA *(phv pending)*
WILLIAM K.WRAY, JR. *(phv pending)*
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
Tel: (401) 274-7200
Fax: (401) 351-4607
wwray@apslaw.com
jtarantino@apslaw.com
procha@apslaw.com

*Attorney for Ingenico, Inc., Ingenico Corp, and Ingenico Group, SA*

## **LOCAL RULE 5.1 CERTIFICATION**

I certify that this motion was prepared using Time New Roman (14 point) font pursuant to Local Rule 5.1(c).

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 25th day of March, 2019, I will electronically file the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6) OR TRANSFER VENUE UNDER 28 U.S.C. § 1404 AND MOTION FOR MORE DEFINITE STATEMENT PURSUANT TO FED. R. CIV. P. 12(E)** with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Gregory R. Crochet, Esq.
Kutak Rock LLP
303 Peachtree Street, N.E., Suite 2750
Atlanta, GA 30308
(404) 222-4600 (Telephone)
(404) 222-4654 (Facsimile)
Greg.croshet@kutakrock.com

 and

Oliver D. Griffin
*Admitted Pro Hac Vice*
Oliver.griffin@kutakrock.com

Peter N. Kessler
*Admitted Pro Hac Vice*
Peter.kessler@kutakrock.com
Melisa A. Bozeman
*Admitted Pro Hac Vice*
Melissa.bozeman@kutakrock.com
Kutak Rock LLP
1760 Market Street, Suite 1100
Philadelphia, PA 19103-4104
(215) 299-4384 (Telephone)
(215) 981-0719 (Facsimile)

*Attorneys for Plaintiffs*

/s/ Lawrence H. Kunin
Lawrence H. Kunin
Florida Bar No. 050210

28