## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| **ANYWHERECOMMERCE, INC.** **and BBPOS LIMITED,** | Leave to file granted on November 27, 2019 |
| **Plaintiffs,** | |
| **v.** | **CIVIL ACTION NO.** **1:19-cv-11457-IT** |
| **INGENICO INC., INGENICO CORP.,** **and INGENICO GROUP S.A.** | |
| **Defendants.** | **JURY TRIAL DEMANDED** |

### Second Amended Counterclaims of Ingenico Inc.

1. These counterclaims relate to licensing and intellectual property rights in the mobile payments business. As more fully described below, ROAM Data, Inc., which later merged into Ingenico Inc., bargained and agreed with Defendant BBPOS Limited ("BBPOS") for an exclusive license to sell and use certain mobile payment devices, and for an exclusive worldwide license for related intellectual property.

2. BBPOS breached that exclusive license in several respects, including through sales of licensed devices and grants of licensed rights to AnywhereCommerce Inc. ("AnywhereCommerce").

## Parties

3. Ingenico Inc. is a Georgia corporation with its principal place of business in Georgia.

4.    Upon information and belief, BBPOS Limited is a Hong Kong corporation with a principal place of business at Suite 1903-1904, Tower 2 Nina Tower, No. 8 Yeung UK Road, Tsuen Wan, N.T., Hong Kong.

5.    AnywhereCommerce Inc. is a foreign corporation incorporated under the laws of the Canada Business Corporations Act. Upon information and belief, its principal place of business in the United States is located at 4585 North Maroa Avenue, Fresno, CA 93704.

### Jurisdiction & Venue

6.    This Court has subject matter jurisdiction over these Counterclaims under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00 and the parties are of diverse citizenship.

7.    This Court also has subject matter jurisdiction over Ingenico Inc.'s claim for breach of the federal Defend Trade Secrets Act under 28 U.S.C. § 1331.

8.    This Court has subject matter jurisdiction over Ingenico Inc.'s claim for patent infringement under 28 U.S.C. § 1338.

9.    This Court also has subject matter jurisdiction over these Counterclaims under 28 U.S.C. § 1367.

10.   Venue is proper in this District because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district and because Ingenico Inc. and BBPOS selected Massachusetts as the proper forum for disputes arising out of the agreement central to these Counterclaims.

### Facts Common to All Counts

11.   Ingenico Inc., BBPOS, and AnywhereCommerce all participate in the business of mobile payments. Upon information and belief, BBPOS primarily designs and manufactures mobile payment devices.

12.   ROAM Data, Inc. ("ROAM") is the name of a company that formerly participated in the business of mobile payments. On December 31, 2017, ROAM merged with and into Ingenico.

### A. The Ingenico-BBPOS Agreement and BBPOS' breaches thereof

13.   On or around May 4, 2010, ROAM and BBPOS entered into an "Engineering Development and License Agreement" that they amended on or around August 15, 2011. Because ROAM merged with Ingenico Inc., Ingenico Inc. refers to the amended agreement herein as the "Ingenico-BBPOS Agreement." A copy of the Ingenico-BBPOS Agreement is attached hereto as Exhibit 1.

14.   The Ingenico-BBPOS Agreement reflects that Ingenico Inc. (and ROAM, before it merged with Ingenico Inc.) paid BBPOS and provided BBPOS with other valuable consideration in return for BBPOS' services, including the design, manufacture, and production of certain mobile payment devices. BBPOS also provided Ingenico Inc. with an exclusive license to certain mobile payment devices and related intellectual property.

15.   The exclusive license granted by BBPOS covers a magnetic swipe reader that interfaces with mobile devices or computers through an audio jack, a mobile payment unit with a Bluetooth interface, and an EMV terminal "based on the foundation of BBPOS." The exclusive license extends to those specified devices, to products "similar to or based upon" such devices, and in the case of

the swipe reader and the mobile payment unit with a Bluetooth interface, to any portion of the device. Collectively, the devices (and portions of devices) covered by the exclusive license are referred to as "Covered Mobile Payment Devices."

i.   *The exclusive device license provisions and BBPOS' breach thereof*

16.   In the Ingenico-BBPOS Agreement, BBPOS grants Ingenico Inc. a worldwide, perpetual, fully-paid license to use and sell Covered Mobile Payment Devices.[1] Further, BBPOS promises in the Ingenico-BBPOS Agreement that this license is exclusive even as to BBPOS (except that BBPOS has a non-exclusive, non-transferrable right to sell two specific devices in China and the Philippines—an exception that applies to all licenses referenced in these Counterclaims).[2]

17.   Specifically, BBPOS agreed that it would not use or sell any of the Covered Mobile Payment Devices, that it would not grant any rights to intellectual property related to Covered Mobile Payment Devices to develop or sell such devices, and that it would not design, produce, or assist in the design or production of Covered Mobile Payment Devices for any other party.[3]

18.   BBPOS breached the referenced provisions of the Ingenico-BBPOS Agreement.

19.   In December 2015 BBPOS attempted to sell Covered Mobile Payment Devices to one of Ingenico Inc.'s customers, North American Bancard, LLC.

---

[1] *See id.* at pages 12-13.
[2] *See id.*
[3] Exhibit 1 at § 3.8.

20.  Upon information and belief, BBPOS sold and continues to sell Covered Mobile Payment Devices to AnywhereCommerce or permitted the use or sale thereof.

21.  Upon information and belief, BBPOS sold and continues to sell Covered Mobile Payment Devices to other non-parties.

  ii.   *The intellectual property license provisions*

22.  In the Ingenico-BBPOS Agreement, BBPOS grants Ingenico Inc. a worldwide, perpetual, fully-paid license to use a broadly-defined set of BBPOS' intellectual property.[4] This license includes any patents and patent applications that relate to Covered Mobile Payment Devices, any substitutions or extensions of these patents, and any of BBPOS' copyrights, trademarks, trade secrets, owned or controlled by BBPOS that relate to the Covered Mobile Payment Devices.[5]

23.  BBPOS has breached these provisions of the Ingenico-BBPOS Agreement.

24.  BBPOS breached these provisions by bringing claims against Ingenico Inc.—which enjoys an express, contractual, fully-paid license to any of BBPOS' intellectual property that relates to Covered Mobile Payment Devices—for misappropriating trade secret-protected information relating to the manufacture of mobile payment devices.

25.  Further, although BBPOS promised that the license granted to Ingenico Inc. was exclusive and that it would grant no rights in that intellectual property to any other parties for the use or sale of Covered Mobile Payment Devices,

---

[4] *Id.* at page 12 of 16.
[5] *Id.*

BBPOS has itself and has permitted third parties, including AnywhereCommerce, to use some or all of the licensed intellectual property rights in violation of the Ingenico-BBPOS Agreement.

### iii.   The indemnification provisions and BBPOS' breach thereof

26.   In the Ingenico-BBPOS Agreement, BBPOS promises to comply with the applicable law in the course of providing services.[6] It also promises that none of the Covered Mobile Payment Devices or other deliverables infringe on any person's intellectual property rights.[7]

27.   BBPOS also promises that it will indemnify and hold Ingenico Inc. harmless from any and all losses, costs, liabilities, or expenses—including attorneys' fees—that arise out of the breach of any of its promises.[8] BBPOS' obligation to indemnify Ingenico Inc. extends, *inter alia*, to "any claim brought by a third party against [Ingenico Inc.] as a result of or relating to any actual or alleged breach hereof."[9]

28.   BBPOS has breached the aforementioned provisions of the Ingenico-BBPOS Agreement.

29.   Despite Ingenico Inc.'s demands, BBPOS has failed to indemnify Ingenico Inc. for attorneys' fees and other costs related to claims by third parties that the use or sale of Covered Mobile Payment Devices or other deliverables or services

---

[6] *Id.* at § 3.2.
[7] *Id.* at § 3.10.
[8] *Id.* at § 3.18.
[9] *Id.*

that BBPOS provided under the Agreement violates the third parties' intellectual property rights.

30.    BBPOS has purported to place and/or placed unreasonable, overly-burdensome, and un-bargained-for conditions precedent and requirements on its contractual obligation to indemnify Ingenico Inc.

**B. AnywhereCommerce's knowledge of and interference with the Ingenico-BBPOS Agreement**

31.    BBPOS not only granted Ingenico Inc. a license, it also granted Ingenico Inc. the first right, but not the obligation, to institute legal proceedings to prevent others from infringing or misappropriating any of the intellectual property licensed to Ingenico Inc.

32.    AnywhereCommerce Inc. and BBPOS claim that they are long-time business partners, and that their operations are complementary and philosophically-aligned.

33.    AnywhereCommerce knows and knew at all relevant times that BBPOS granted Ingenico Inc. exclusive licenses to Covered Mobile Payment Devices and to related intellectual property.

34.    AnywhereCommerce's parent company, 4361423 Canada Inc., has expressly acknowledged and consented to the Ingenico-BBPOS Agreement which sets forth these exclusive licenses.

35.    Upon information and belief, AnywhereCommerce is and has been acquiring Covered Mobile Payment Devices from BBPOS in violation of Ingenico Inc.'s exclusive license covering the same.

36.   Upon information and belief, AnywhereCommerce is and has been using intellectual property rights licensed to Ingenico Inc. by BBPOS in violation of Ingenico Inc.'s exclusive license covering the same.

37.   Upon information and belief, AnywhereCommerce is and has been using some or all of the intellectual property licensed to Ingenico Inc. by BBPOS without BBPOS' knowledge, consent, or approval.

**Count I**
**Breach of Contract**
**Against BBPOS**

38.   Ingenico Inc. re-alleges the preceding paragraphs of this Counterclaim and incorporates them as if fully stated herein.

39.   Ingenico Inc. and BBPOS are parties to a valid contract.

40.   Ingenico Inc. has performed its duties and obligations under that contract, and has fulfilled all required conditions precedent to BBPOS' performance.

41.   BBPOS has breached the foregoing contract.

42.   Ingenico Inc. has been damaged and continues to be damaged by BBPOS' breach in an amount to be determined at trial.

**Count II**
**Breach of the Contractual Duty of Good-Faith and Fair Dealing**
**Against BBPOS**

43.   Ingenico Inc. re-alleges the preceding paragraphs of this Counterclaim and incorporates them as if fully stated herein.

44.   Ingenico Inc. and BBPOS are parties to a valid contract.

45. Ingenico Inc. has performed its duties and obligations under that contract, and has fulfilled all required conditions precedent to BBPOS' performance.

46. BBPOS has breached its implied contractual duty of good-faith and fair-dealing.

47. Ingenico Inc. has been damaged and continues to be damaged by BBPOS' breach in an amount to be determined at trial.

**Count III**
**Tortious Interference with Advantageous Business Relations**
**Against BBPOS**

48. Ingenico Inc. re-alleges the preceding paragraphs of the Counterclaim and incorporates them as if fully stated herein.

49. At all relevant times Ingenico Inc. or ROAM Data, Inc., which merged into Ingenico Inc., had advantageous business relations with a third-party, North American Bancard LLC.

50. BBPOS knew of Ingenico Inc.'s or ROAM Data, Inc.'s advantageous business relations with North American Bancard, LLC.

51. BBPOS intentionally interfered with Ingenico Inc.'s or ROAM Data, Inc.'s relationship for an improper purpose or by improper means.

52. BBPOS' interference with Ingenico Inc.'s or ROAM Data, Inc.'s advantageous business relation was not justified, privileged, or protected under any applicable law or legal authority.

53. Ingenico Inc. and ROAM Data, Inc. were harmed and damaged as a result of BBPOS' interference in an amount to be determined at trial.

## Count IV
## Tortious Interference with Contractual Relations
## Against AnywhereCommerce, Inc.

54.   Ingenico Inc. re-alleges the preceding paragraphs of the Counterclaim and incorporates them as if fully stated herein.

55.   Ingenico Inc. has a valid contract with BBPOS.

56.   AnywhereCommerce knew of Ingenico Inc.'s contract with BBPOS at all relevant times.

57.   AnywhereCommerce intentionally and knowingly interfered with that contract by inducing BBPOS to breach the contract or preventing it from performing its contractual obligations.

58.   AnywhereCommerce's interference was a significant factor in causing that breach.

59.   AnywhereCommerce's interference was improper in motive or means, and lacked justification.

60.   Ingenico Inc. was harmed and damaged as a result in an amount to be determined at trial.

## Count V
## Violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836, et seq.
## Against AnywhereCommerce Inc.

61.   Ingenico Inc. re-alleges the preceding paragraphs of the Counterclaim and incorporates them as if fully stated herein, with the exception that Ingenico Inc. does not re-allege paragraph 25 of the Counterclaim.

62.   BBPOS represented and warranted to ROAM (and now Ingenico Inc.) that it owns and maintains trade secrets relating to the manufacture of mobile payment devices, and upon information and belief BBPOS does own and maintain such trade secrets, including but not limited to the data, formulae, patterns, programs, devices, methods, techniques, and product plans that relate to the development, use, sale, or distribution of the Covered Mobile Payment Devices.

63.   Because Ingenico Inc. is the rightful and exclusive licensee of the trade secrets referenced in the preceding paragraph worldwide, except in China and the Philippines, Ingenico Inc. owns and maintains trade secrets relating to the manufacture of mobile payment devices, including but not limited to the data, formulae, patterns, programs, devices, methods, techniques, and product plans that relate to the development, use, sale, or distribution of the Covered Mobile Payment Devices.

64.   The trade secrets referenced in the preceding paragraphs derive economic value, actual and potential, from not being generally known to or readily ascertainable by proper means by other persons who can obtain economic value from their disclosure or use.

65.   The trade secrets referenced in the preceding paragraphs are the subject of efforts by BBPOS and Ingenico Inc. that are reasonable under the circumstances to maintain their secrecy.

66.   The trade secrets referenced in the preceding paragraphs are used in and intended for use in interstate and foreign commerce.

67.   Upon information and belief, AnywhereCommerce has acquired the referenced trade secrets by improper means, including through breach or inducement of breach of a contractual relationship.

68.   Upon information and belief, AnywhereCommerce has misappropriated the trade secrets referenced in the preceding paragraphs and has profited from the same without providing compensation to Ingenico Inc.

69.   Upon information and belief, AnywhereCommerce's misappropriation was willful and malicious under 18 U.S.C. § 1836(b), as it intentionally and repeatedly took and used what it knew was a trade secret with conscious disregard of Ingenico Inc.'s rights.

70.   Ingenico Inc. has been damaged and continues to be damaged by AnywhereCommerce's misappropriation of the trade secrets referenced in the preceding paragraphs in an amount to be determined at trial.

### Count VI
### Violation of the Massachusetts Trade Secrets Act, M.G.L. Ch. 93, § 42 *et seq.* Against AnywhereCommerce Inc.

71.   Ingenico Inc. re-alleges the preceding paragraphs of the Counterclaim and incorporates them as if fully stated herein, with the exception that Ingenico Inc. does not re-allege paragraph 25 of the Counterclaim.

72.   BBPOS represented and warranted to ROAM (and now Ingenico Inc.) that it owns and maintains trade secrets relating to the manufacture of mobile payment devices, and upon information and belief BBPOS does own and maintain such trade secrets, including but not limited to the data, formulae, patterns, programs, devices, methods, techniques, and product plans that relate

to the development, use, sale, or distribution of the Covered Mobile Payment Devices.

73. Because Ingenico Inc. is the rightful and exclusive licensee of the trade secrets referenced in the preceding paragraph in all or part of the world, Ingenico Inc. owns and maintains trade secrets relating to the manufacture of mobile payment devices, including but not limited to the data, formulae, patterns, programs, devices, methods, techniques, and product plans that relate to the development, use, sale, or distribution of the Covered Mobile Payment Devices.

74. The trade secrets referenced in the preceding paragraphs derive economic value, actual and potential, from not being generally known to or readily ascertainable by proper means by other persons who can obtain economic value from their disclosure or use.

75. The trade secrets referenced in the preceding paragraphs are the subject of efforts by BBPOS and Ingenico Inc. that are reasonable under the circumstances to maintain their secrecy.

76. Upon information and belief, AnywhereCommerce has acquired the referenced trade secrets by improper means, including through breach or inducement of breach of a contractual relationship.

77. Upon information and belief, AnywhereCommerce has misappropriated the trade secrets referenced in the preceding paragraphs and has profited from the same without providing compensation to Ingenico Inc.

78. Upon information and belief, AnywhereCommerce's misappropriation was willful and malicious under M.G.L. Ch. 93 § 42C as it intentionally and

repeatedly took and used what it knew was a trade secret with conscious disregard of Ingenico Inc.'s rights.

79. The trade secrets referenced in the preceding paragraphs are used in and intended for use in interstate and foreign commerce.

80. Ingenico Inc. has been damaged and continues to be damaged by AnywhereCommerce's misappropriation of the trade secrets referenced in the preceding paragraphs in an amount to be determined at trial.

**Count VII**
**Violation of M.G.L. Ch. 93A § 11**
**Against BBPOS and AnywhereCommerce Inc.**

81. Ingenico Inc. re-alleges the preceding paragraphs of the Counterclaim and incorporates them as if fully stated herein.

82. Ingenico Inc., BBPOS and AnywhereCommerce Inc. are each engaged in the conduct of trade or commerce, including trade or commerce in the Commonwealth of Massachusetts.

83. BBPOS' and AnywhereCommerce Inc.'s actions as alleged constitute an unfair method of competition and an unfair or deceptive act or practice declared unlawful by section two of M.G.L. Ch. 93A or by a rule or regulation issued under paragraph (c) of section two.

84. BBPOS' and AnywhereCommerce Inc.'s unlawful actions constituted willful or knowing violations of M.G.L. Ch. 93A § 2.

85. Ingenico Inc. has suffered loss of money and property and continues to so suffer as a result of these unlawful actions.

**Count VIII**
**Patent Infringement under 35 U.S.C. § 271**
**Against BBPOS Limited and AnywhereCommerce Inc.**

86. Ingenico Inc. re-alleges the preceding paragraphs of the Counterclaim and incorporates them as if fully stated herein.

87. This count alleges direct infringement of the following "Asserted Patents": U.S. Patent No. 8,281,998, U.S. Patent No. 8,286,875, U.S. Patent No. 8,534,554, U.S. Patent No. 9,016,566, U.S. Patent No. 9,311,637, U.S. Patent No. 9,443,239, U.S. Patent No. 9,818,107, U.S. Patent No. 9,362,689, and U.S. Patent No. 8,336,771.

88. The present assignees of the Asserted Patents are 4361423 Canada Inc. (AnywhereCommerce's parent company) or BBPOS.

89. In the Ingenico-BBPOS Agreement attached as Exhibit 1, BBPOS grants Ingenico Inc. an "exclusive … worldwide" license over, among other things, all "patents and patent applications relating to the Products, any portion thereof, or any products similar to or based upon any Products." (BBPOS retained a non-exclusive, non-transferable right to sell certain products practicing the patents in China and the Philippines.) These patents are referred to herein as the "Licensed Patents."

90. The Licensed Patents include, but are not limited to, the Asserted Patents.

91. The Ingenico-BBPOS Agreement grants Ingenico the "first right … to institute, prosecute and control legal proceedings … to prevent or restrain … infringement or misappropriation" of the Licensed Patents.

92. Upon information and belief, BBPOS had or obtained sufficient rights in the Licensed Patents to convey all of the rights that BBPOS conveyed in the Ingenico-BBPOS Agreement.

93. The principal of BBPOS, who is listed as an inventor on each of the Asserted Patents, has asserted facts showing that 4361423 Canada Inc.'s purported rights in some or all of the Asserted Patents were invalid and properly belonged to BBPOS because, *inter alia*, 4361423 Canada Inc. fraudulently obtained them from BBPOS, or because any conveyances of rights from BBPOS to 4361423 Canada Inc. failed for lack of consideration.

94. 4361423 Canada Inc., AnywhereCommerce's parent company, expressly acknowledged and consented to Ingenico Inc.'s exclusive license over the Licensed Patents.

95. Ingenico Inc. holds a legally sufficient interest in the Licensed Patents—and therefore the Asserted Patents—to bring this claim for patent infringement.

96. The "Products" that are referenced in the Ingenico-BBPOS Agreement are mobile point of sale devices, i.e., payment transaction devices such as a credit/debit card reader for use with a mobile communication device, such as a cell phone or tablet, for the purpose of effecting commercial transactions. The Products specifically include a card swipe reader mobile point of sale device designed to interface with mobile devices through an audio jack, and an EMV-capable mobile point-of-sale device with a Bluetooth interface.

97. The Asserted Patents relate to mobile point of sale devices, including those designed to interface with mobile devices through an audio jack and/or through a Bluetooth interface.

98.  Because Ingenico has an exclusive worldwide license for the Licensed Patents (except for BBPOS' non-exclusive, non-transferable, limited rights in China and the Philippines), neither AnywhereCommerce nor BBPOS may make, use, offer to sell, or sell devices that practice the Licensed Patents (including the Asserted Patents) in the United States, or import such devices into the United States, without Ingenico's permission, consent, authorization, or license.

99.  Upon information and belief, AnywhereCommerce and BBPOS have directly infringed and continue to directly infringe, literally or under the doctrine of equivalents, one or more claims of the Asserted Patents by making, using, selling, and/or offering to sell certain mobile point of sale devices ("Infringing Devices") within the United States without permission, consent, authorization, or license from Ingenico Inc. AnywhereCommerce and BBPOS have also directly infringed and continue to directly infringe one or more claims of the Asserted Patents by importing the Infringing Devices into the United States without authority from Ingenico Inc.

100.  Upon information and belief, one or more of the Infringing Devices meets every limitation of at least one of the claims of each of the Asserted Patents.

101.  AnywhereCommerce's website, an excerpt of which is attached hereto as Exhibit 2, states that "[e]ach of AnywhereCommerce [sic] products is covered by one or more of the following patents," and lists each of the Asserted Patents except the '771 Patent and the '689 patent. Upon information and belief, BBPOS manufactured the devices sold by AnywhereCommerce that are covered by the Asserted Patents.

102.  Upon information and belief, the Infringing Devices include, but are not limited to, the devices sold by AnywhereCommerce under the names

Magstripe Rambler 3, the Chip & Sign Walker 2, and the Chip & Sign Walker
C2X, which meet every limitation of the following claims of the following
Asserted Patents:

a. Claim 1 of the '875 patent, which covers: "An apparatus for
effecting commercial transactions between an input device and a
remote transaction server using a transaction card, said apparatus
comprising: an input device for capturing information from the
transaction card; a controller for converting the captured card
information into a signal having an analog audio format suitable for
transmission to an analog hands-free jack of a mobile
communication device; and a communication link for coupling said
input device to an analog hands-free jack of a mobile
communication device for the transmission of said analog-audio-
format signals there between; wherein when said input device
captures the card information, said controller converts the card
information into said analog-audio-format signal and transmits said
converted signal via said communication link to said mobile
communication device; and wherein said mobile communication
device automatically transmits the captured card information to the
remote transaction server and receives transaction validation
information from said remote transaction server,";

b. Claim 1 of the '998 Patent, which covers the same subject matter as
Claim 1 of the '875 Patent, except for the additional requirement
that the analog audio signal generated by the controller be
encrypted;

c. Claim 1 of the '554 patent, which claims: "1. An apparatus for effecting a commercial transaction with a server using a transaction card via a communication device, said apparatus comprising: a transaction device including a controller coupled with said communication device for capturing information from the transaction card; the controller for converting the captured card information into an encrypted audio analog signal and for transmitting said encrypted audio analog signal to said communication device via a hands-free jack; and wherein said communication device delivers said encrypted audio analog signal to the server for processing the commercial transaction.";

d. Claim 1 of the '689 patent, which claims "1. A system comprising: a mobile computing device comprising an audio plug, wherein said audio plug comprises first and second contacts; a peripheral device comprising an audio jack, and a microprocessor; and a circuit connecting the audio jack and the microprocessor and used for detecting a microphone-in (MIC-IN) and a ground (GND) among the first and second contacts of the audio plug, wherein the MIC-IN comprises a higher voltage than the GND; wherein said circuit comprises a first comparator connected to a first switch and a second comparator connected to a second switch and wherein the first comparator connects to the first and second contacts of the audio plug and measures a first voltage between the first and second contacts and the second comparator connects to the first and second contacts of the audio plug in a reverse way and measures a second voltage between the first and second contacts and wherein the

circuit further compares the first and second voltages between the first and second contacts and thereby identifies the MIC-IN and GND among the first and second contacts of the audio plug; wherein said circuit further comprises a resistor connected between first and second inputs of the first comparator and wherein the first and second inputs of the first comparator are connected to the first and second contacts of the audio plug and the resistor is used to establish the first voltage between the first and second inputs of the first comparator and the first and second contacts of the audio plug; and

e. Claim 1 of the '771 patent, which covers: "1. A payment card transaction device comprising: a payment card reader configured to read payment card data; a power generation circuit configured to provide power to the payment card transaction device; an audio jack connector; wherein said payment card reader is configured to connect to an audio plug of an external communication device via the audio jack connector; and wherein said power regeneration circuitry is configured to receive a continuous periodic sound wave from the external communication device and to convert the continuous periodic sound wave into an amplified DC electrical signal."

f. Claim 1 of the '566 patent, which claims "1. A portable smart card reader device for reading a smart card having recorded information stored on an integrated circuit incorporated into the card, the device comprising: a sensor for reading said recorded information stored on said integrated circuit incorporated into said card and for producing

an analog signal indicative of the recorded information, said sensor including circuitry for converting said analog signal to a format suitable for transmission to a jack of a mobile communication device; and an output jack adapted to be inserted into a jack associated with said mobile communication device for providing the converted signal indicative of the recorded information to said mobile communication device for transmission to a transaction server for further processing."

g. Claim 1 of the '637 patent, which claims "1. A portable smart card reader device for reading a smart card having recorded information stored on an integrated circuit incorporated into the card, the device comprising: a sensor for reading said recorded information stored on said integrated circuit incorporated into said card and for producing an analog signal indicative of the recorded information, said sensor including circuitry for converting said analog signal to an encrypted signal suitable for transmission to a jack of a mobile communication device; and an output jack adapted to be inserted into a jack associated with said mobile communication device for providing the encrypted signal indicative of the recorded information to said mobile communication device for transmission to a transaction server for further processing."

103. Upon information and belief, the Infringing Devices include, but are not limited to, the devices sold by AnywhereCommerce under the names All-In-One NOMAD POS, the Chip & PIN Nomad WP2, the Chip & Sign Walker C2X, and the Chip & Sign Walker 2, and they meet every limitation of the following claims of the following Asserted Patents:

a. Claim 1 of the '239 patent, which claims a "portable smart card reader device for reading a smart card having recorded information stored on an integrated circuit incorporated into the card, the device comprising: a sensor for reading said recorded information stored on said integrated circuit incorporated into said card; a controller coupled to said sensor for converting the recorded information stored on said integrated circuit into an encrypted signal indicative of the recorded information, and a communication link for coupling said portable smart card reader device to a mobile communication device for the transmission of said encrypted signal indicative of the recorded information there between; wherein when said sensor reads the recorded information stored on said integrated circuit, said controller converts the recorded information read by said sensor into said encrypted signal and transmits said encrypted signal via said communication link to said mobile communication device; and said mobile communication device transmits the encrypted signal indicative of the recorded information to a remote transaction server for processing a commercial transaction; and

b. Claim 1 of the '107 Patent, which claims "an apparatus for effecting commercial transactions between an input device and a remote transaction server using a communication device, said apparatus comprising: an input device for capturing recorded information from a transaction card; a sensor incorporated into said input device for reading said recorded information stored on said transaction card, said sensor including circuitry for reading an analog signal; a controller coupled to said sensor for converting the recorded

information stored on said transaction card into a format suitable for transmission to a communication device; and a communication link for coupling said controller to a communication device for the transmission of said recorded information there between; wherein the said sensor reads the recorded information stored on said transaction card, said controller converts said recorded information read by said sensor into a format suitable for transmission to said communication device and transmits said recorded information via the communication link to said communication device, and said communication device transmits said recorded information to a remote transaction server for processing a commercial transaction."

104. Through the direct and indirect design, production, purchase, use, sale, manufacture, importation, or distribution in the United States of the Magstripe Rambler 3, the Chip & Sign Walker 2, the Chip & Sign Walker C2X, the preceding models of these products, and any other products that interface with mobile devices or PC's through an audio jack, or any products that are EMV capable POS units with Bluetooth interfaces including the All-In-One Nomad POS and the Chip & Pin Nomad WP2, and the BBPOS Chipper 2X BT and the predecessor models of those products, BBPOS and AnywhereCommerce have infringed and continue to infringe on the Asserted Patents

105. Upon information and belief, the Asserted Patents are in full force and effect.

106. Upon information and belief, the Infringing Devices have no substantially non-infringing use.

107. Ingenico Inc. has not licensed or authorized BBPOS' or AnywhereCommerce's infringing actions, either expressly or by implication.

108.  BBPOS' and AnywhereCommerce's infringing conduct has injured and continues to injure Ingenico Inc., and Ingenico Inc. is entitled to damages adequate to compensate it for such infringement.

109.  BBBPOS and AnywhereCommerce's infringing conduct has caused and continues to cause irreparable injury to Ingenico Inc., for which remedies at law are inadequate to compensate it, such that the issuance of a permanent injunction against AnywhereCommerce's further manufacture, use, sale, importation, and/or offer for sale of products that infringe the asserted patent is warranted.

WHEREFORE, Ingenico Inc. seeks:

a)  Entry of judgment in its favor;

b)  Monetary damages in an amount to be proven at trial, and for such damages to be doubled or trebled;

c)  Disgorgement of profits;

d)  An account for past, present, and future sales, revenues, and profit for all devices or products made, sold, used, or licensed in violation of Ingenico Inc.'s exclusive licenses thereto, and for all devices or products that use intellectual property in violation of Ingenico Inc.'s exclusive licenses thereto;

e)  Entry of a permanent injunction prohibiting further infringement of intellectual property for which Ingenico Inc. is the exclusive licensee and prohibiting further use or sale of Covered Mobile Payment Devices except

as permitted by BBPOS' non-exclusive, non-transferable rights in China and the Philippines;

f)  Its attorneys' fees;

g)  For a declaration that this case is exceptional under 35 U.S.C. § 285, and for the award of treble damages, attorneys' fees, and the costs of the action pursuant to that statute;

h)  For an award of pre-judgment and post-judgment interest pursuant to 28 U.S.C. § 1961 and 25 U.S.C. § 384 at the maximum rate allowed by law;

i)  Its costs;

j)  Exemplary and/or punitive damages as may be warranted by law; and

k)  And such other and further relief as this Court may deem just and proper.

## Jury Demand

Counter-claimant Ingenico Inc. demands a trial by jury on its counterclaims.

Dated: December 3, 2019            Respectfully Submitted,

Ingenico Inc.,

By its attorneys,


/s/ John A. Tarantino
JOHN A. TARANTINO (BBO #492230)
PATRICIA K. ROCHA (BBO #542348)
WILLIAM K.WRAY, JR. *(#689037)*
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
Tel: (401) 274-7200
Fax: (401) 351-4607
jtarantino@apslaw.com
procha@apslaw.com
wwray@apslaw.com