**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **ANYWHERECOMMERCE, INC. and BBPOS LIMITED,**<br><br>  **Plaintiffs,**<br><br> v.<br><br>**INGENICO INC., INGENICO CORP., and INGENICO GROUP SA,**<br><br>  **Defendants.** | **Civil Docket No: 1:19-cv-11457-IT**<br><br>**Jury Trial Demanded** |

**ANYWHERECOMMERCE, INC.'S AND BBPOS LIMITED'S MOTION TO DISMISS COUNT VIII OF INGENICO INC.'S SECOND AMENDED COUNTERCLAIMS**

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Plaintiffs / Counterclaim-Defendants AnywhereCommerce, Inc. ("AnywhereCommerce") and BBPOS Limited ("BBPOS," and together, "Counterclaim-Defendants"), by and through their attorneys, move the Court to dismiss Count VIII of Defendant / Counterclaim-Plaintiff Ingenico Inc.'s Second Amended Counterclaims [Doc. 78], in which Ingenico Inc. alleges infringement of several U.S. patents that it neither owns nor otherwise holds any exclusive licensing rights thereto.

Dismissal of Ingenico Inc.'s infringement claim at Count VIII of the Second Amended Counterclaims is warranted because Ingenico Inc. lacks standing to bring the asserted claim and for failure to state a legally cognizable claim for relief. In support of this Motion, the attention of the Court is respectfully directed to Counterclaim-Defendants' Memorandum of Reasons submitted for filing contemporaneously herewith in further support of their Motion to Dismiss, and to any additional arguments to be properly presented in support of the requested relief set forth in this Motion.

## REQUEST FOR ORAL ARGUMENT

Counterclaim-Defendants respectfully request oral argument on this Motion.

Dated: December 17, 2019.

Respectfully submitted,

Plaintiffs / Counterclaim-Defendants,

By their attorneys,

/s/*Jonathon D. Friedmann*
Jonathon D. Friedmann, Esq. (BBO # 180130)
Robert P. Rudolph, Esq. (BBO # 684583)
RUDOLPH FRIEDMANN LLP
92 State Street
Boston, MA 02109
Tel.: (617) 723-7700
Fax: (617) 227-0313
JFriedmann@rflawyers.com
RRudolph@rflawyers.com

and

KUTAK ROCK LLP

Oliver D. Griffin (Pro Hac Vice)
Pennsylvania Bar No. 88026
Oliver.griffin@kutakrock.com
Peter N. Kessler (Pro Hac Vice)
Pennsylvania Bar No. 209033
Peter.kessler@kutakrock.com
Melissa A. Bozeman (Pro Hac Vice)
Pennsylvania Bar No.  201116
Melissa.bozeman@kutakrock.com
1760 Market Street
Suite 1100
Philadelphia, PA  19103-4104
(215) 299-4384 (Telephone)
(215) 981-0719 (Facsimile)

Daniel Carmeli (Pro Hac Vice)
Colorado Bar No. 52880
Daniel.carmeli@kutakrock.com
1801 California Street, 30th Floor

Denver, CO 80202
(303) 297-2400 (Telephone)
(303) 292-7799 (Facsimile)

Attorneys for Plaintiffs / Counterclaim-Defendants

## **CERTIFICATION PURSUANT TO LOCAL RULE 7.1(A)(2)**

I hereby certify that the parties have previously conferred with respect to the relief requested in this Motion and have attempted in good faith to resolve or narrow the issue, but have been unable to do so.

*/s/ Melissa A. Bozeman*
Melissa A. Bozeman, Esq.

## **CERTIFICATE OF SERVICE**

I, Melissa A. Bozeman, hereby certify that this Motion, in accordance with L.R. 4.5(c) and 5.2(b), was filed through the ECF system on December 17, 2019 and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) via the court's transmission facilities.

*/s/ Melissa A. Bozeman*
Melissa A. Bozeman, Esq.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **ANYWHERECOMMERCE, INC. and BBPOS LIMITED,**<br><br>    **Plaintiffs,**<br><br>       **v.**<br><br>**INGENICO INC., INGENICO CORP., and INGENICO GROUP SA,**<br><br>    **Defendants.** | **Civil Docket No: 1:19-cv-11457-IT**<br><br><br>**Jury Trial Demanded** |

### ANYWHERECOMMERCE, INC.'S AND BBPOS LIMITED'S MEMORANDUM OF REASONS IN SUPPORT OF THEIR MOTION TO DISMISS COUNT VIII OF INGENICO INC.'S SECOND AMENDED COUNTERCLAIMS

Jonathon D. Friedmann, Esq. (BBO # 180130)
Robert P. Rudolph, Esq. (BBO # 684583)
RUDOLPH FRIEDMANN LLP
92 State Street
Boston, MA 02109
Tel.: (617) 723-7700
Fax: (617) 227-0313
JFriedmann@rflawyers.com
RRudolph@rflawyers.com

and

KUTAK ROCK LLP
Oliver D. Griffin (Pro Hac Vice)
Pennsylvania Bar No. 88026
Oliver.griffin@kutakrock.com
Peter N. Kessler (Pro Hac Vice)
Pennsylvania Bar No. 209033
Peter.kessler@kutakrock.com
Melissa A. Bozeman (Pro Hac Vice)
Pennsylvania Bar No.  201116
Melissa.bozeman@kutakrock.com
1760 Market Street, Suite 1100
Philadelphia, PA  19103-4104
(215) 299-4384 (Telephone)
(215) 981-0719 (Facsimile)

Daniel Carmeli (Pro Hac Vice)
Colorado Bar No. 52880
Daniel.carmeli@kutakrock.com
1801 California Street, 30th Floor
Denver, CO 80202
(303) 297-2400 (Telephone)
(303) 292-7799 (Facsimile)

Attorneys for Plaintiffs / Counterclaim-Defendants

Table of Contents

Page

I.    INTRODUCTION ................................................................................................ 1

II.   FACTS ............................................................................................................... 5

      A.    The BBPOS-ROAM Licensing Agreement (And Only Arguable – Albeit,
            Meritless - Basis For Ingenico Inc.'s Alleged Standing To Bring Count
            VIII) ................................................................................................................ 5

      B.    The 4361423 Patents........................................................................................ 6

      C.    Ingenico Inc.'s Patent Infringement Claims ..................................................... 8

III.  ARGUMENT .................................................................................................... 10

      A.    Legal Standard ............................................................................................... 10

            1.    Standing ................................................................................................ 10

            2.    Failure to State a Claim......................................................................... 10

            3.    Ingenico Lacks Standing To Sue For Patent Infringement As It Is
                  Not An Owner Or "Exclusive Licensee" Of Either The 4361423
                  Patents Nor Any Of The Patents-In-Suit ............................................... 11

                  a.    No Standing to Bring Suit on the 4361423 Patents ..................... 11

                  b.    No Standing to Bring Suit on the Patents-In-Suit....................... 16

            4.    Ingenico Inc.'s Amended Counterclaims For Infringement Of All
                  Patents Fail To State A Claim Under Rule 12(b)(6)............................... 19

V.    CONCLUSION.................................................................................................. 20

# CITATION OF SUPPORTING AUTHORITIES

**Page(s)**

**Cases**

*Abraxis Bioscience, Inc. v. Navinta LLC,*
   625 F.3d 1359 (Fed. Cir. 2010)........................................................................10, 15

*Amin v. Mercedes-Benz USA, LLC,*
   349 F. Supp. 3d 1338 (N.D. Ga. 2018) ...........................................................7

*Arco Ingenieros, S.A. de C.V. v. CDM Int'l Inc.,*
   368 F. Supp. 3d 256 (D. Mass. 2019) ..............................................................3

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009).........................................................................................11, 19

*Bell Atlantic Corporation v. Twombly,*
   550 U.S. 544 (2007) .................................................................................. *passim*

*Deetz Family, LLC v. Rust-Oleum Corporation,*
   217 F. Supp. 3d 430 (D. Mass. 2016) ..............................................................19

*Frappier v. Countrywide Home Loans, Inc.,*
   750 F.3d 91 (1st Cir. 2014) ..............................................................................11

*Gimbel v. Signal Companies, Inc.,*
   316 A.2d 599 (Del. Ch. 1974), *aff'd*, 316 A.2d 619 (Del. 1974)......................17

*Icahn Sch. of Med. at Mount Sinai v. Neurocrine Biosciences, Inc.,*
   191 F. Supp. 3d 322 (S.D.N.Y. 2016)..............................................................18

*IONA Techs., Inc. v. Walmsley,*
   No. 021442, 2002 WL 1290217 (Mass. Super. Ct. Apr. 29, 2002) ..................18

*Lombard Med. Tech., Inc. v. Johannessen,*
   729 F.Supp.2d 432 (D. Mass. 2010) ................................................................18

*Mars, Inc. v. Coin Acceptors, Inc.,*
   527 F.3d 1359 (Fed. Cir. 2008)........................................................................11, 15

*Mentor H/S Inc. v. Med. Device Alliance Inc.,*
   240 F.3d 1016 (Fed. Cir. 2001).........................................................................12

*Nano-Proprietary, Inc. v. Canon, Inc.,*
   537 F.3d 394 (5th Cir. 2008) ............................................................................18

*Newman v. Lehman Bros. Holdings Inc.*,
    901 F.3d 19 (1st Cir. 2018) ..................................................................................3

*Prima Tek II, L.L.C. v. A–Roo Co.*,
    222 F.3d 1372 (Fed. Cir. 2000) ......................................................................2, 14

*Quails v. Lake Berryessa Enters.*,
    76 Cal. App. 4th 1277 (1999) ...............................................................................14

*Rampage LLC v. Global Graphics SE*,
    No. 16-10691-ADB, 2017 WL 239328 (D. Mass. Jan. 19, 2017) ...........................19

*Rodriguez-Reyes v. Molina-Rodriguez*,
    711 F.3d 49 (1st Cir. 2013) ..................................................................................11

*Sagarra Inversiones, S.L. v. Cementos Portland Valderrivas, S.A.*,
    34 A.3d 1074 (Del. 2011) .....................................................................................17

*Sicom Sys., Ltd. v. Agilent Techs., Inc.*,
    427 F.3d 971 (Fed. Cir. 2005) ..............................................................................11

*United Pacific Ins. Co. v. Conn*,
    129 Cal. App. 2d 272 (1954) ................................................................................14

*Valentin v. Hosp. Bella Vista*,
    254 F.3d 358 (1st Cir. 2001) ................................................................................10

*Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*,
    944 F.2d 870 (Fed. Cir. 1991) .........................................................................12, 14

**Statutes**

35 U.S.C. § 271 .............................................................................................................5

35 U.S.C. § 285 .............................................................................................................7

**Other Authorities**

5A Charles Alan Wright et al., Federal Practice & Procedure § 1327 (West 2012) ....................10

Massachusetts Continuing Legal Education, Inc., *A Practical Guide to*
    *Massachusetts Closely Held Business Organizations, Chapter 4* ..........................................16

Federal Rule of Civil Procedure 12(b)(1) ..........................................................1, 10, 16

Federal Rule of Civil Procedure 12(b)(6) ..................................................4, 10, 11, 19

Plaintiffs / Counterclaim-Defendants AnywhereCommerce, Inc. ("AnywhereCommerce") and BBPOS Limited ("BBPOS," and together, "Movants"), by and through their attorneys, hereby submit this Memorandum of Reasons in support of their Motion to Dismiss Count VIII of Defendant / Counterclaim-Plaintiff Ingenico Inc.'s Second Amended Counterclaims [Doc. 78], alleging infringement of nine U.S. patents neither owned by Ingenico Inc. nor exclusively licensed to Ingenico Inc., due to a lack of standing and for failure to state a claim.

## I.    INTRODUCTION

Ingenico Inc.'s newly amended infringement claim appearing at Count VIII of the Second Amended Counterclaims [Doc. 78] (cited to hereinafter as "Am. Counterclaims") is woefully defective, incapable of cure, and bordering on the absurd – it should be dismissed by this Court, in its entirety, with prejudice on at least two grounds, namely, lack of standing and failure to state a claim.

_Dismissal Reason #1: Lack of Standing._   The first basis for dismissal is that Ingenico Inc. lacks standing pursuant to Rule 12(b)(1).  A party who is not a patentee – or the entity to whom the patent issued, or the patentee's successor in title – typically lacks standing to file a patent infringement suit; however, an exception applies when a patentee has granted another entity an exclusive license.  In such case, the exclusive licensee may have standing to sue alone or jointly with the patentee.

Here, Ingenico Inc. does not purport to be an owner of any of the nine patents-in-suit, but instead claims standing to bring its infringement claim under the exception to the general rule, alleging simply that it "holds a legally sufficient interest" in the patents-in-suit to bring the claim. (Am. Counterclaims at ¶ 95).  Although largely vague and ill-defined, Ingenico Inc.'s factual allegations relevant hereto loosely coalesce in support of only one conceivable (albeit, unsustainable) theory of standing under the exception to the general rule requiring ownership: that

all nine patents-in-suit are part of a single "exclusive" license[1] for a purportedly "broadly-defined set of BBPOS' intellectual property" that was granted in 2010 by BBPOS (the owner of two of the patents at issue – but not the other seven) to Ingenico Inc.'s predecessor-by-merger, ROAM Data, Inc. ("ROAM"), following a sale of ROAM to a competitor, Ingenico Ventures SAS ("Ingenico Ventures"), occurring no later than January 1, 2015, and merger into Ingenico Inc. on December 31, 2017.  (Am. Counterclaim at Exhibit 1, ¶¶ 12, 22, 24-25, 89-90, 96-98; Answer at ¶ 54).  If it seems far-fetched to the Court, that is because it is.

Indeed, it suffers from at least two fatal defects.  *First*, Ingenico Inc.'s theory would require BBPOS to own or hold the exclusive licensing rights to all nine of the patents-in-suit, but it does not.  BBPOS owns only two of the asserted patents.[2]  (And, surely, BBPOS cannot confer rights in something to which it never had rights to begin with.)[3]  The other seven patents-in-suit are owned and controlled by an affiliated non-party[4] hereto.  Ingenico Inc. points to no relevant licensing or other agreement between it and the non-party, 436 Canada, which is not surprising, as

---

[1] Ingenico Inc. contends that the license grant is evidenced by the Engineering Development and License Agreement dated May 4, 2010 as amended August 15, 2010, a licensing agreement (the "BBPOS-ROAM Licensing Agreement") between BBPOS and its predecessor-by-merger, ROAM, a copy of which attached to the Second Amended Counterclaims at Exhibit 1.

[2] U.S. Patent Nos. 9,362,689 and 8,336,771 (together, the "BBPOS Patents").

[3] *Prima Tek II, L.L.C. v. A–Roo Co.*, 222 F.3d 1372, 1382 (Fed. Cir. 2000) (". . . an owner or licensee of a patent cannot convey that which it does not possess.") (citation omitted).  Indeed, as to the other remaining seven patents, in particular, BBPOS could grant no such license because the licensing rights were not BBPOS's to give.

[4] 4361423 Canada, Inc. ("436 Canada") is the parent company of AnywhereCommerce.  It is not, however, a named party in this lawsuit – neither as plaintiff nor defendant, or by way of joinder.  436 Canada owns and controls seven of the patents-in-suit, namely, U.S. Patent Nos. 8,281,998; 8,286,875; 8,534,554; 9,015,566; 9,311,637; 9,443,239; and 9,818,107 (collectively, the "4361423 Patents").  Moreover, in its exclusive capacity as the rightful owner of the 4361423 Patents, 436 Canada is engaged in active (but, as a consequence of this frivolous claim by Ingenico Inc., increasingly *jeopardized*) patent prosecution efforts on said patents since before July 2019 in unrelated proceedings.  The timing of Ingenico Inc.'s bringing such infringement claims now, as opposed to nearly eight years ago, is somewhat bizarre, that is, assuming that they were brought in good faith.

none exists, but, yet, nonetheless baselessly asserts "exclusive" licensing rights[5] to its patents *somehow* (as it is not explained) derived from the BBPOS-ROAM Licensing Agreement and which *somehow* (again, as it is not explained) extends to 436 Canada's patents.  This is despite language to the contrary in the licensing agreement defining the scope of the license granted therein as Partner Intellectual Property (a defined term in the agreement) and despite the irreconcilable fact that BBPOS has never owned nor held an exclusive license[6] to 436 Canada's patents.  This notion is frivolous, baseless, and a complete waste of the parties' and the Court's attention and resources.

The other fatal problem with Ingenico Inc.'s theory of standing to bring its infringement claim, in any capacity whatsoever, as to all the patents-in-suit, is the fact that Ingenico Inc. presupposes that it received enforcement rights via the BBPOS-ROAM Licensing Agreement via ROAM, when it simply did not.  That is because ROAM attempted a prohibited transfer of the license under the agreement no later than January 1, 2015 when, as Ingenico Inc. states in its Answer at ¶ 54, "Ingenico Ventures SAS acquired 100% of the ownership interests in ROAM[.]"

Although transfers and assignments of the license granted to ROAM were freely permitted under the licensing agreement, the agreement did contain one bargained-for exception: a

---

[5] BBPOS reserved rights in and to the Partner Intellectual Property such that the license could not be considered "exclusive" to ROAM.  Among other reserved licensing rights, BBPOS expressly retained the right to "jointly sell" "the BBPOS or ROAMpay POS" under certain circumstances within the alleged excluded territory pursuant to § 1.5, the worldwide nonexclusive right to use the Partner Intellectual Property in order to make, use, and sell the Products, Device, Deliverables, and Services (as defined therein) as required under the contract, and the worldwide rights to "make" the Products in comparison to restrictions that explicitly limited BBPOS's rights of "use" and "sale" within the alleged excluded territory.  (Am. Counterclaims at Exhibit 1, §§ 1.3 – 1.5, as amended).

[6] *See* the License Agreement and Non-Competition Agreement dated March 18, 2010 (the "Original License"), by and between "HomeATM EPayment Solution" and BBPOS at ¶ 2.1 and the License Agreement and Non-Competition Agreement dated July 1, 2013 (the "Second License"), by and between 436 Canada and BBPOS at 1, A-C; ¶ 3.1, attached hereto at Exhibits A and B, respectively.  These exhibits are properly subject to the Court's review as central to Ingenico Inc.'s infringement claim and repeatedly referenced and cited to in the First Amended Complaint [Doc. 67] at ¶¶ 23, 25-27, acknowledged by Defendants in their Answer [Doc. 68] at ¶¶ 23, 25-27, and referenced in Ingenico Inc.'s Second Amended Counterclaims at ¶¶ 34, 94. *Arco Ingenieros, S.A. de C.V. v. CDM Int'l Inc.*, 368 F. Supp. 3d 256, 260 (D. Mass. 2019) ("In addition to the complaint, courts may also consider 'documents central to the plaintiff's claim' and 'documents sufficiently referred to in the complaint' on a motion to dismiss. *Newman v. Lehman Bros. Holdings Inc.*, 901 F.3d 19, 25 (1st Cir. 2018) (quoting *Freeman v. Town of Hudson*, 714 F.3d 29, 36 (1st Cir. 2013)).

prohibition against transfer "in the event a sale of [ROAM] to a competitor with its own POS products without prior written consent of [BBPOS,]" which is precisely what occurred by January 1, 2015.[7]  As such, the licensing agreement did not allow ROAM to convey the license to any POS competitor; it did so anyway and, as such, the rights that Ingenico Inc. attempts to assert herein, which all hinge on it actually being an exclusive licensee of the patents-in-suit (which it is not), are invalid or otherwise unenforceable.

   *Dismissal Reason #2: Failure to State a Claim*.   The other legal basis for dismissal of Ingenico Inc.'s Count VIII arises under Rule 12(b)(6).  Should the Court be disinclined to dismiss for lack of standing, Ingenico's claim for infringement of the patents-in-suit nonetheless warrants dismissal for failure to state a claim upon which relief may be granted.  A claim for patent infringement requires factual recitals to support the allegations that an accused device or method practices each and every element of at least one claim of each of the asserted patents.  As a practical matter, here, this requires Ingenico Inc. to specifically (1) identify an accused product/method made, used, or sold by BBPOS and/or AnywhereCommerce in the United States, and (2) tie every element of at least one claim of each asserted patent to the structures and/or features of the accused product/method.  Because Ingenico Inc. fails to make the necessary allegations – particularly an element-by-element comparison between any accused product and any claim of any asserted patent – it fails to state a claim and dismissal is appropriate.[8]

   Accordingly, due to Ingenico Inc.'s incurable lack of standing and failure to meet the basic pleading requirements of a patent infringement claim, Ingenico Inc.'s Count VIII of the Second

---

[7] (*E.g.*, Am. Counterclaims at ¶ 11 ("Ingenico Inc., BBPOS, and AnywhereCommerce all participate in the business of mobile payments.")).

[8] *See Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007) (explaining that a complaint containing nothing more than "labels and conclusions,'" and "a formulaic recitation of the elements of a cause of action," fails to state a claim.).

Amended Counterclaims for patent infringement under 35 U.S.C. § 271 should be dismissed with prejudice.

## II.     FACTS

### A.     The BBPOS-ROAM Licensing Agreement (And Only Arguable – Albeit, Meritless - Basis For Ingenico Inc.'s Alleged Standing To Bring Count VIII)

On or around May 4, 2010, BBPOS and ROAM entered into the BBPOS-ROAM Licensing Agreement.  (Am. Counterclaims at Exhibit 1).  On August 15, 2011, BBPOS and ROAM Data amended the agreement to include rights to certain "Partner Intellectual Property," with BBPOS identified as the sole "Partner."  (*Id.* at § 1).  Section 1.1 of the agreement, as amended, sets forth the particular scope of the license granted thereunder by BBPOS to ROAM:

> The Partner hereby grants to the Company a worldwide, perpetual, fully-paid license to freely use the Partner Intellectual Property to make, have made, develop, have developed, use, sell, offer for sale, import and distribute the Products, any portion thereof, or any products similar to or based upon any Products. For purposes of this Agreement, "Partner Intellectual Property" shall mean: (a) any and all patents and patent applications relating to the Products, including without limitation US Patent Application Number 12/767,831 for secure audio coupled card swiper filed on April 27, 2010 with the United States Patent and Trademark Office (the "Patent Application") and any patents issuing on the Patent Application, including (i) any reissues, renewals, reexaminations, substitutions or extensions thereof and foreign equivalents of the foregoing; (ii) any claim of a continuation-in-part application or patent that is entitled to the priority date of, and is directed specifically to subject matter specifically described in, the Patent Application; (iii) any foreign counterpart thereof (including PCTS); and (iv) any supplementary protection certificates and any other patent term extensions, restorations and exclusivity periods and the like of the Patent Application; and (b) any copyrights, trademarks, trade names, trade secrets, knowledge, data and information owned or controlled by the Partner relating to the Products.

(Am. Counterclaims at Exhibit 1, § 1.1).

The BBPOS-ROAM Licensing Agreement identified a single patent-related document, U.S. Patent Application Number 12/767,831.  That patent application, filed by BBPOS, pertained to specific power-related features of credit card readers – namely, credit card readers designed to draw power from a signal being sent from the host device, which eliminated the need for the reader

to itself include a battery.  That single patent application—again, the only patent-related document identified in the agreement—has resulted in one U.S. patent:  U.S. Patent No. 8,336,771, which was issued to BBPOS.  As to the Products, the agreement narrowly defined "Products" in terms of two specific devices:  (1) the "Encrypted Circle Swipe reader, sometimes referred to as the 'Crypto Swipe' or 'ROAMpay Swipe' that has ability to generate capacitance for encryption from the audio jack of a mobile device or PC, this was developed by the Partner, and including any variance of this design;" and (2) "EMV capable POS unit with Bluetooth interface, sometimes referred to as the 'BBPOS' currently completing certification."  (Am. Counterclaims at Exhibit 1, Schedule I).

Finally, the BBPOS-ROAM Licensing Agreement at § 9.1 specifically binds and inures to the benefit of the parties and their respective successors and assigns; **provided, however**, it prohibits ROAM from transferring or assigning the license under certain circumstances.  Section 1.2 explicitly provides that the license granted to ROAM therein is not transferable or assignable "in event a sale of the Company to a competitor with its own POS products" – unless prior written consent is given by BBPOS.  (Am. Counterclaims at Exhibit 1, §§ 9.1, 1.2).

Relevant thereto, Defendants admitted that (i) "Ingenico Ventures SAS held more than 70% of the ownership interests in ROAM Data, Inc. on or around February 6, 2012[,]" (Answer at ¶45), and (ii) "Ingenico Ventures SAS acquired 100% of the ownership interests in ROAM Data, Inc. by January 1, 2015[.]" (Answer at ¶ 53).  With respect to neither transaction, notably, does Ingenico Inc. point to any prior written consent to transfer given by BBPOS; indeed, none exists.

### B.    The 4361423 Patents

All seven of the 4361423 Patents pertain to credit card readers, and all are owned by 436 Canada.  *See* the printout from the U.S. Patent and Trademark Office search of patents assigned to

436 Canada, which is attached hereto as Exhibit C.[9]  AnywhereCommerce is a d/b/a affiliate of 436 Canada and is in the business of making, using, and selling these credit card readers.

BBPOS has never owned or controlled the 4361423 Patents or their applications; it has never had more than a non-exclusive license to these properties.  Ingenico Inc.'s counterclaims do not allege to the contrary, as the only documents discussed do not point to any ownership or exclusive licensing interest transferred ***from 436 Canada to BBPOS***.  Instead, Ingenico Inc.'s counterclaims rely on the "Ingenico-BBPOS" agreement, without alleging anything that could establish that 436 Canada conferred exclusive licensing rights to BBPOS such that BBPOS could have conferred those rights to Ingenico Inc. (Am. Counterclaims at ¶¶ 13-25).[10]

On March 18, 2010, 436 Canada's predecessor-in-interest to the patents, HomeATM Epayment Solution gave BBPOS a ***non-exclusive license*** to use certain intellectual property rights, with no right to sublicense.  *See* Exhibit A at ¶ 2.1 ("The Licensor grants to the Licensee a non-exclusive licence [*sic*] to use the Intellectual Property Rights in the Region in relation to the Products.").  On July 1, 2013, 436 Canada and BBPOS signed a new license agreement that replaced the first with "a royalty bearing, personal, non-transferable and non-exclusive license" to BBPOS "with a right to sub-license to Sublicensees (hereinafter referred to as the 'License') to

---

[9] This document is properly subject to the Court's review as a matter of public record. *See Amin v. Mercedes-Benz USA, LLC*, 349 F. Supp. 3d 1338, 1346 (N.D. Ga. 2018) (discussing three bases on which the Court could consider it on a Rule 12 Motion: if the document is attached to the Complaint or incorporated by reference; attached to a motion to dismiss if it is (1) central to Plaintiff's claim and (2) undisputed; or a matter of public record).

[10] Left with no serious challenge to 436 Canada's ownership of the patents, Ingenico instead makes the bizarre allegation that "[t]he principal of BBPOS, who is listed as an inventor on each of the Asserted Patents, has asserted facts" to somehow challenge 436 Canada's ownership based on either fraud or a failure of consideration.  (Am. Counterclaims at ¶ 93.)  This allegation by Ingenico Inc. has emerged for the first time in the Second Amended Counterclaims – *after* Plaintiffs advised Ingenico Inc. that Ingenico Inc. lacks standing to bring suit for infringement of the 4361423 Canada Patents and invoked 35 U.S.C. § 285.  Ingenico Inc.'s response was to keep the patents in the case with a completely new theory.  Of course, Ingenico Inc. fails to describe the "asserted facts," fails to explain how they might support a fraudulent conveyance theory, fails to explain how they might support a failure-of-consideration theory, and fails to explain how it might rationalize this new conjecture with Ingenico Inc.'s previous position, which implied standing based solely on BBPOS's alleged <u>licensing rights</u> from AnywhereCommerce, without any assertion whatsoever that BBPOS might have <u>ownership rights</u> under a non-explained theory of fraud or lack of consideration.

use and/or practice the Licensed Patent Rights for the purpose of manufacturing, distributing and selling Products in the Region." *See* Exhibit B at 1, A-C; *id.* at ¶ 3.1.  Even under the second agreement, BBPOS and any potential sublicensors had no right to exclude others.  *See id.*

### C.     Ingenico Inc.'s Patent Infringement Claims

Ingenico Inc.'s infringement claim alleges – for the first time in the history of a BBPOS-ROAM Licensing Agreement spanning the past nine years or so – that Ingenico Inc. received exclusive license rights not only to patents belonging to BBPOS, but somehow also received exclusive patent rights for patents that BBPOS never owned or exclusively licensed from 436 Canada.  In fact, in the list of nine patents asserted by Ingenico Inc. in its Count VIII, seven of those patents are patents owned and controlled by 436 Canada – a company affiliated with AnywhereCommerce, meaning that Ingenico Inc. is pretending that it has legal standing to assert these patents, which it has never owned or exclusively licensed, against the interest *of the owner*. The only purported legal basis that Ingenico Inc. supplies for this assertion is the agreement with BBPOS that (1) does not mention 436 Canada, let alone include 436 Canada as a party; and (2) does not mention the 4361423 Patents, let alone confer exclusive licensing rights to those patents.

With no exclusive license to the 4361423 Patents established in any legal document, Ingenico Inc.'s claim to an exclusive license in each of the seven 4361423 Patents and two BBPOS Patents relies (as much as one can discern) on vague, generalized references to "Covered Mobile Payment Devices"[11] and "BBPOS Intellectual Property."  The problem is, these references do not

---

[11] Ingenico Inc. has broadly mischaracterized the purported scope of "exclusivity" of ROAM's license grant as effectively conferring upon it (which the Movants dispute) a complete bundle of rights in technology broadly described as "a magnetic swipe reader that interfaces with mobile devices or computers through an audio jack, a mobile payment unit with a Bluetooth interface, and an EMV terminal 'based on the foundation of BBPOS'[,] . . . extend[ing] to those specified devices, to products 'similar to or based upon' such devices, and in the case of the swipe reader and the mobile payment unit with a Bluetooth interface, to any portion of the device" collectively defined by Ingenico Inc. as purportedly "Covered Mobile Payment Devices" (Am. Counterclaims at ¶ 15) that is indivisible and exclusive to all others (including BBPOS) worldwide, other than in China and the Philippines (*id.* at ¶ 16). This is not true, however – neither under the express terms of the contract nor the practical intent of the licensing agreement.

actually provide for **_any_** license to the 4361423 Patents (much less an exclusive license), let alone remedy the shortcoming that exclusive license rights to the 4361423 Patents were never BBPOS's rights to grant in the first place.  Ingenico Inc.'s presumed "exclusive license" to the 4361423 Patents is missing from any legal document, save Ingenico Inc.'s own Amended Counterclaims in which Ingenico Inc. would seem to have both invented and self-granted a new form of exclusive licensing rights that requires neither the patent owner's consent nor even the mention of the patents in question.  The focus of Ingenico's infringement allegations is to presume legal standing from Ingenico Inc.'s self-serving interpretation of the "Ingenico-BBPOS Agreement," alleging:

> In the Ingenico-BBPOS Agreement attached as Exhibit 1, BBPOS grants Ingenico Inc. an "exclusive ... worldwide" license over, among other things, all "patents and patent applications relating to the Products, any portion thereof, or any products similar to or based upon any Products." (BBPOS retained a non-exclusive, non-transferable right to sell certain products practicing the patents in China and the Philippines.) These patents are referred to herein as the "Licensed Patents."
>
> * * *
>
> The "Products" that are referenced in the Ingenico-BBPOS Agreement are mobile point of sale devices, i.e., payment transaction devices such as a credit/debit card reader for use with a mobile communication device, such as a cell phone or tablet, for the purpose of effecting commercial transactions. The Products specifically include a card swipe reader mobile point of sale device designed to interface with mobile devices through an audio jack, and an EMV-capable mobile point-of-sale device with a Bluetooth interface.
>
> The Asserted Patents relate to mobile point of sale devices, including those designed to interface with mobile devices through an audio jack and/or through a Bluetooth interface.
>
> Because Ingenico has an exclusive worldwide license for the Licensed Patents (except for BBPOS' non-exclusive, non-transferable, limited rights in China and the Philippines), neither AnywhereCommerce nor BBPOS may make, use, offer to sell, or sell devices that practice the Licensed Patents (including the Asserted Patents) in the United States, or import such devices into the United States, without Ingenico's permission, consent, authorization, or license.
>
> Upon information and belief, AnywhereCommerce and BBPOS have directly infringed and continue to directly infringe, literally or under the doctrine of equivalents, one or more claims of the Asserted Patents by making, using, selling, and/or offering to sell certain mobile point of sale devices ("Infringing Devices")

within the United States without permission, consent, authorization, or license from Ingenico Inc. AnywhereCommerce and BBPOS have also directly infringed and continue to directly infringe one or more claims of the Asserted Patents by importing the Infringing Devices into the United States without authority from Ingenico Inc.

(Am. Counterclaim at ¶¶ 89, 96-99 (formatting altered)).

## III.   ARGUMENT

### A.   Legal Standard

#### 1.   Standing

"Standing is a constitutional requirement pursuant to Article III and it is a threshold jurisdictional issue." *Abraxis Bioscience, Inc. v. Navinta LLC,* 625 F.3d 1359, 1363 (Fed. Cir. 2010). If a plaintiff fails to establish standing, its claims must be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. *Id.* at 1364.

In considering a motion under Rule 12(b)(1), the courts should accept as true all well-pleaded factual allegations in the complaint; the courts may also consider other uncontested documents relevant to the complaint. 5A Charles Alan Wright et al., Federal Practice & Procedure § 1327 (West 2012) ("[W]hen the plaintiff fails to introduce a pertinent document as part of her pleading, ... the defendant may introduce the document as an exhibit to a motion attacking the sufficiency of the pleading ...."); *see also Valentin v. Hosp. Bella Vista,* 254 F.3d 358, 363 (1st Cir. 2001) (court may consider "an explanatory affidavit or other repository of uncontested facts"). While courts must take well-pleaded allegations in the complaint as true, they "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).

#### 2.   Failure to State a Claim

This Court can dismiss a claim under Rule 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. To withstand a motion to dismiss under Rule 12(b)(6), a

complaint must allege a claim for relief that is plausible on its face. *See Twombly*, 550 U.S. at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint or counterclaim containing nothing more than "labels and conclusions," and "a formulaic recitation of the elements of a cause of action" fails to state a claim. *Twombly*, 550 U.S. at 555. Under this standard, then, to survive a Rule 12(b)(6) motion the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

Assessing the plausibility of a claim is a two-step process. "First, the court must sift through the averments in the complaint, separating conclusory legal allegations (which may be disregarded) from allegations of fact (which must be credited). Second, the court must consider whether the winnowed residue of factual allegations gives rise to a plausible claim to relief." *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 53 (1st Cir. 2013) (citation omitted). Along with all well-pleaded facts, the Court must draw all logical inferences from a complaint in favor of the plaintiff. *Frappier v. Countrywide Home Loans, Inc.*, 750 F.3d 91, 96 (1st Cir. 2014). "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *Rodriguez-Reyes*, 711 F.3d at 53 (quoting *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (en banc)).

       3.     <u>Ingenico Lacks Standing To Sue For Patent Infringement As It Is Not An Owner Or "Exclusive Licensee" Of Either The 4361423 Patents Nor Any Of The Patents-In-Suit.</u>

       *a.*    *No Standing to Bring Suit on the 4361423 Patents*

It is bedrock patent law that "[o]nly a patent owner or an exclusive licensee can have constitutional standing to bring an infringement suit; a non-exclusive licensee does not." *Mars, Inc. v. Coin Acceptors, Inc.,* 527 F.3d 1359, 1367 (Fed. Cir. 2008); *see also Sicom Sys., Ltd. v.*

*Agilent Techs., Inc.,* 427 F.3d 971, 976 (Fed. Cir. 2005).  In determining whether a party is an exclusive licensee for this purpose, courts attempt to discern the parties' intent from the substance of what was granted by the license agreement.  *See Mentor H/S Inc. v. Med. Device Alliance Inc.,* 240 F.3d 1016, 1017 (Fed. Cir. 2001).  It is helpful to consider not only the rights transferred to the licensee, but also any rights retained by the patentee.  *Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA,* 944 F.2d 870, 875 (Fed. Cir. 1991).  To be an exclusive licensee for standing purposes, "a party must have received not only the right to practice the invention within a given territory, but also the patentee's express or implied promise that others shall be excluded from practicing the invention within that territory as well."  *Id.* (citing *Rite–Hite,* 56 F.3d at 1552).

Ingenico Inc. asserts that the BBPOS license to its predecessor ROAM gives it an exclusive license in a broad range of products and unspecified related intellectual property.  (Am. Counterclaims at ¶ 15).  It relies on sweeping, conclusory allegations that it was granted "a broadly-defined set of BBPOS's intellectual property," "any of BBPOS' intellectual property that relates to Covered Mobile Payment Devices," and "[all] patents and patent applications relating to the Products, any portion thereof, or any products similar to or based upon any Products." (*See, e.g.*, Am. Counterclaim at ¶¶ 1, 14, 22, 24, 89).  From there, Ingenico Inc. generates a list of seven 4361423 Patents and two BBPOS Patents that Ingenico Inc. calls "Infringed Patents" and argues – in roundabout fashion – that these are "BBPOS Intellectual Property" to which it has some sort of exclusive rights.

The Court is not bound to accept Ingenico Inc.'s vague labels and conclusions about what it licensed from BBPOS and/or the scope of any rights.  *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)) (courts "are not bound to accept as true a legal conclusion couched as a factual allegation.").  Indeed, Ingenico Inc. has

alleged ***no actual facts*** from which the Court could conclude that BBPOS granted ROAM or Ingenico Inc. an exclusive license in the 4361423 Patents. In fact, the undisputed facts show otherwise:

- The 4361423 Patents are not "BBPOS' intellectual property" or "Partner Intellectual Property." The license from BBPOS to ROAM granted rights in "Partner Intellectual Property" with BBPOS identified as the sole "Partner." (Am. Counterclaims at Exhibit 1, 1 ("BBPOS Limited, a Hong Kong corporation with its address situated at Room 810, 8/F, Grand City Plaza, 1 Sai Lau Kok Road, Tsuen Wan, H.K. ("the "Partner")).

- As shown on the face of the 4361423 Patents, each of these patents is owned by 436 Canada Inc. – not BBPOS. *See* Exhibit C.

- The BBPOS agreement with ROAM identifies only one patent application – *i.e.*, US Patent Application Number 12/767,831 filed by BBPOS and pertaining to a credit card reader (a/k/a "dongle") that is designed to draw its power from a signal being sent from the host device. That single patent application has resulted in one U.S. patent issued to BBPOS: U.S. Patent No. 8,336,771, which claims a particular type of payment card terminal dongle for communications devices. The dongle of the '771 patent, unlike other credit card reading dongles, "contains no battery. It is powered by the sound wave playing continuously from cellphones, personal digital assistant (PDA), smartphones, laptops, netbooks, and other networked devices." *See* Exhibit C at 1:6-15.

  The 4361423 Patents did not issue from U.S. Patent Application Number 12/767,831, have any relationship at all to that application, and have nothing to do with drawing power through for the credit card reader from the host device.[12]

- The broad scope of "Products" that Ingenico claims give context to its claim for exclusive patent rights bears no resemblance to the narrow definition of "Products" provided in the agreement itself. (Am. Counterclaims at Exhibit 1, Schedule I (defining "Products" in terms of two specific products).)

- The BBPOS-ROAM Licensing Agreement does not mention 436 Canada, its patents or patent applications, or AnywhereCommerce at all. (Am. Counterclaims at Exhibit 1).

- BBPOS has never had any ownership or exclusive license to the 4361423 Patents. *See* Exhibit A at ¶ 2.1 ("The Licensor grants to the Licensee a non-exclusive licence (sic) to use the Intellectual Property Rights in the Region in relation to the Products."); Exhibit B at ¶ 3.1 (terminating the first license and replacing it with "a royalty bearing, personal, non-transferable and non-exclusive license" to BBPOS "with a right to sub-license to Sublicensees (hereinafter referred to as the "License") to use and/or practice [certain]

---

[12] There is also no allegation that the '689 Patent has any relationship to that patent application or the technology at issue in that application.

Licensed Patent Rights for the purpose of manufacturing, distributing and selling Products in the Region."). As a matter of law, then, BBPOS could not grant an exclusive license in the 4361423 Patents to ROAM, Ingenico, or anyone else. *See e.g., Prima Tek II, LLC*, 222 F.3d 1372, 1382 (Fed. Cir. 2000) ("[A]n owner or licensee of a patent cannot convey that which it does not possess.") (citing *Dunham v. Indianapolis & St. Louis R.R.*, 7 Biss. 223, 8 F. Cas. 44, 44 (N.D. Ill. 1876) ("It is clear that [a] patentee[] cannot grant what does not belong to him, and if he gives a license or makes a contract for the use of the thing patented, he can only grant that which he has himself. . ."); *Quails v. Lake Berryessa Enters.*, 76 Cal. App. 4th 1277, 1284 (1999) ("Further, [defendant] could not transfer an interest in property greater than it possessed under its concession agreement."); *United Pacific Ins. Co. v. Conn*, 129 Cal. App. 2d 272, 276 (1954) ("It would fly in the face of logic to hold that a tenant can convey to another by way of grant, assignment, mortgage or otherwise greater rights than the tenant himself has in the property.").

- At the time of the BBPOS agreement with ROAM, BBPOS did not even possess a right to sublicense the 436 Patents. *See* Exhibit A at ¶ 2.1 (granting non-exclusive license with no right to sublicense).

- BBPOS and any sublicensees have never had the right to exclude others. *See* Exhibit B at ¶ 3.1 (granting a "non-exclusive license … to use and/or practice the Licensed Patent Rights for the purpose of manufacturing, distributing and selling Products in the Region.").

- ROAM/Ingenico Inc. could not possess exclusive rights in the 4361423 Patents, as 436 Canada and its predecessors have reserved those rights for themselves. *Vaupel Textilmaschinen KG,* 944 F.2d at 875 ("It is helpful to consider not only the rights transferred to the licensee, but also any rights retained by the patentee.").

Because Ingenico Inc. can point to no legal agreement defending its allegation of receiving an exclusive license to the 4361423 Patents, it is no surprise that Ingenico Inc. cannot defend its equally threadbare allegation that 436 Canada "consented" to the same exclusive license rights that never existed in the first place. (Am. Counterclaims at ¶ 94.) Ingenico Inc. cites to nothing whatsoever supporting its legal conclusion that "AnywhereCommerce knows and knew at all relevant times that BBPOS granted Ingenico Inc. exclusive licenses to Covered Mobile Payment Devices and to related intellectual property[,]" and "AnywhereCommerce's parent company has expressly acknowledged and consented to the Ingenico-BBPOS Agreement which sets forth these exclusive licenses." (Am. Counterclaims at ¶¶ 33-34). This allegation is indefensible. The ***only acknowledgement at all*** by 436 Canada of the BBPOS-ROAM Licensing Agreement is in the

context of the "Non-Competition" provisions of the agreement between 436 Canada and BBPOS, under which the Licensee BBPOS agreed "not to solicit any person or entity introduced to Licensee by Licensor *__for the purpose of selling the Products__* to such person or entity during the term of this Agreement plus six (6) months after termination of this Agreement under Section 2 or under Section 7 (hereinafter referred to as the 'Non-Competition Period')". *See* Exhibit B at ¶ 9.1 (emphasis added). In the next sentence, 436 Canada merely acknowledged BBPOS's prior agreement with ROAM, and agreed not to enter a license with ROAM, Ingenico SA, or any of their affiliates. *See id.* at ¶ 9.2. This provision was reasonable, of course, for 436 Canada to acknowledge BBPOS's pre-existing agreement to sell products to ROAM when it would be prohibiting BBPOS from soliciting customers introduced to it by 436 Canada thereafter. It also makes perfect sense in the context of this "Non-Competition" section, to acknowledge that any effort by 436 Canada to grant a license to ROAM (or Ingenico SA) could undermine BBPOS's position as the supplier to those customers. This is a far cry from Ingenico Inc.'s attempt to recast this provision, some seven or eight years *ex post facto,* as a purported acknowledgment of exclusive licensing rights that never existed. There is no mention of any license from BBPOS to ROAM for the 4361423 Patents, and no mention at all of any exclusive license.

In short, there is no conceivable way that the BBPOS's license to ROAM granted ROAM an exclusive license in the 4361423 Patents. Ingenico Inc. has no rights to the 4361423 Patents by virtue of that agreement – certainly not exclusive rights – and thus lacks standing to sue for infringement of those patents. Its Second Amended Counterclaim purporting to assert patent infringement of the 4361423 Patents must be dismissed. *Mars*, 527 F.3d at 1367 ("[o]nly a patent owner or an exclusive licensee can have constitutional standing to bring an infringement suit; a non-exclusive licensee does not."); *Abraxis Bioscience, Inc. v. Navinta LLC,* 625 F.3d at 1364

15

(stating that, if a plaintiff fails to establish standing, its claims must be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction).

### b.      No Standing to Bring Suit on the Patents-In-Suit

The other fatal problem with Ingenico Inc.'s theory of standing to bring its infringement claim, in any capacity whatsoever, as to all the patents-in-suit, is the fact that Ingenico Inc. presupposes that it received enforcement rights via the BBPOS-ROAM Licensing Agreement via ROAM, when it simply did not.  That is because ROAM attempted a prohibited transfer of the license under the agreement no later than January 1, 2015 when, as Ingenico Inc. states in its Answer at ¶ 54, "Ingenico Ventures SAS acquired 100% of the ownership interests in ROAM[.]"

Although transfers and assignments of the license granted to ROAM were freely permitted under the licensing agreement, this right was subject an explicit, bargained-for prohibition at § 1.2[13] against transfer "in the event a sale[14] of [ROAM] to a competitor with its own POS products without prior written consent of [BBPOS,]" without the "prior written consent" of BBPOS, which is precisely what occurred no later than January 1, 2015.  (Am. Counterclaims at Exhibit 1, §§ 9.1, 1.2; Answer at ¶ 40 ("Defendants admit that Ingenico Group S.A. was

---

[13] Section 1.2 states:

> The license granted in Section 1.1 is not transferrable or assignable in the event a sale of the Company [*i.e.*, ROAM] to a competitor with its own POS products without prior written consent of the Partner [*i.e.*, BBPOS], not to be unreasonably withheld.

(Am. Counterclaims at Exhibit 1, § 1.2).

[14] "There are three principal ways of selling a business: a sale of assets to a third party (usually followed by a liquidation of the company and a distribution of the sale proceeds to the owners); a sale by the owners of their ownership interests (stock, membership interests, or partnership interests) directly to the third party; and a merger of the company into a third party for cash or debt obligations of the third party."  *See* Massachusetts Continuing Legal Education, Inc., *A Practical Guide to Massachusetts Closely Held Business Organizations, Chapter 4* EXIT STRATEGIES, CLHBU MA-CLE 4-1 (2015).

incorporated in 1980 and sells payment solutions."); Am. Counterclaims at ¶ 11 ("Ingenico Inc., BBPOS, and AnywhereCommerce all participate in the business of mobile payments.")).

Here, Defendants admitted that (i) "Ingenico Ventures SAS held more than 70% of the ownership interests in ROAM Data, Inc. on or around February 6, 2012[,]" (Answer at ¶ 45), and (ii) "Ingenico Ventures SAS acquired 100% of the ownership interests in ROAM Data, Inc. by January 1, 2015[.]" (Answer at ¶ 53). With respect to neither transaction, notably, does Ingenico Inc. point to any prior written consent to transfer given by BBPOS; indeed, none exists.

ROAM was a Delaware corporation, and therefore, as to its "internal affairs," Delaware law applies.[15] Under Delaware law, in analyzing whether the statutory trigger for a required stockholder vote for fundamental changes to the corporate entity, at least one court found that a company's transfer of stock to a buyer, constituting at least 75% of "the actual value of the stock sold[,]" and "as the sale of the company's only substantial income producing asset[,]" was a sale of all or substantially all of the business's assets. *Gimbel v. Signal Companies, Inc.*, 316 A.2d 599, 605-06 (Del. Ch. 1974), *aff'd*, 316 A.2d 619 (Del. 1974). The Chancery Court went on to explain:

> The key language in the Court of Chancery opinion in Philadelphia National Bank is the suggestion that 'the critical factor in determining the character of a sale of assets is generally considered not the amount of property sold but whether the sale is in fact an unusual transaction or one made in the regular course of business of the seller.' (41 Del.Ch. at 515, 199 A.2d at 561). Professor Folk suggests from the opinion that 'the statute would be inapplicable if the assets sale is 'one made in furtherance of express corporate objects in the ordinary and regular course of the business " (referring to language in 41 Del.Ch. at 516, 199 A.2d at 561). Folk, Supra, Section 271, p. 401.

*Id.* at 606.

---

[15] Although the BBPOS-ROAM Licensing Agreement at § 16.1 requires the application of Massachusetts law in construing the contract "in all respects[,]" to the extent that this particular determination involves the analysis of the "internal affairs" of a Delaware entity, Delaware law applies via the internal affairs doctrine. *E.g., Sagarra Inversiones, S.L. v. Cementos Portland Valderrivas, S.A.*, 34 A.3d 1074, 1078 (Del. 2011). (Am. Counterclaims at Exhibit 1, § 16.1).

Given the same, as early as February 6, 2012, but, in no event later than January 1, 2015, assuming the purchaser at issue was a competitor, which Ingenico Ventures assuredly was,[16] there was a triggering sale of ROAM under Delaware law that, under the licensing agreement, resulted in an attempted prohibited transfer or assignment of the license.[17]

As to the issue of what it means to be a competitor under the contract, the BBPOS-ROAM Licensing Agreement itself suggests it is any entity having "its own POS products," as the Ingenico-related defendants herein certainly do or did at all relevant times hereto.   (Am. Counterclaims at Exhibit 1, § 1.2).  Such a reading is consistent with Massachusetts jurisprudence, which has recognized even a minimal amount of overlap in the target customers of two companies is sufficient to support a finding of "direct competition."  *See IONA Techs., Inc. v. Walmsley*, No. 021442, 2002 WL 1290217, at *4 (Mass. Super. Ct. Apr. 29, 2002) ("using an analysis focused on the customer and to whom product is marketed in determining the meaning of 'direct competition,'" the court noted in *dicta* that companies were competitors even though the competition was only at margins and "in a very small portion of [the plaintiff's] product lines").  Moreover, the product offerings of two given companies need not be identical for a court nonetheless to determine that they are direct competitors.   *Lombard Med. Tech., Inc. v. Johannessen*, 729 F.Supp.2d 432, 440 (D. Mass. 2010) (noting that "companies are in direct competition not because they manufacture identical products, but because a consumer would turn only to one of these entities' products to solve its problems").

---

[16] (Answer at ¶ 40 ("Defendants admit that Ingenico Group S.A. was incorporated in 1980 and sells payment solutions."); Am. Counterclaims at ¶ 11 ("Ingenico Inc., BBPOS, and AnywhereCommerce all participate in the business of mobile payments.")).

[17] It also constituted a material breach of the licensing agreement.  *See, e.g., Nano-Proprietary, Inc. v. Canon, Inc*., 537 F.3d 394 (5th Cir. 2008) (holding that unauthorized sublicensing is a material breach of a patent licensing agreement); *Icahn Sch. of Med. at Mount Sinai v. Neurocrine Biosciences, Inc.*, 191 F. Supp. 3d 322, 334 (S.D.N.Y. 2016) (allegations of grant of unauthorized sublicense was sufficient to support breach of licensing agreement).

Thus, any purported transfer or assignment of the license grant in connection therewith or thereafter was prohibited, invalid, and in breach of the express terms and conditions of § 1.2 of the BBPOS-ROAM Licensing Agreement.  Simply put, the licensing agreement did not allow ROAM to convey the license to any POS competitor; it did so anyway and, as such, the rights that Ingenico Inc. attempts to assert herein, which all hinge upon it actually being an exclusive licensee, as it claims, fall apart.

4.     <u>Ingenico Inc.'s Amended Counterclaims For Infringement Of All Patents Fail To State A Claim Under Rule 12(b)(6)</u>

Not only does Ingenico Inc. wrongly assert a right to the patents, even as to the BBPOS Patents, its allegations fail to state a claim for patent infringement.  Its claims must therefore be dismissed.

In recent years, courts – including the courts in this district – have consistently held that the *Twombley/Iqbal* standard applies to claims for patent infringement.  *See e.g., Rampage LLC v. Global Graphics SE*, No. 16-10691-ADB, 2017 WL 239328, at \*\*2-3 (D. Mass. Jan. 19, 2017) (citing cases);  *Deetz Family, LLC v. Rust-Oleum Corporation*, 217 F. Supp. 3d 430, 433 (D. Mass. 2016).  The *Twombly/Iqbal* standard has raised the bar for pleading patent infringement claims to require, generally, factual allegations regarding specific accused products/methods, identification of at least one alleged infringed claim per asserted patent, and an explanation of how the products/methods allegedly infringe the identified claim(s) of the asserted patent(s).  As a practical matter, "in applying *Twombly* and *Iqbal* …, plaintiff must allege that defendant's product practices all the elements of at least one of the claims of the subject patent.  *Rampage*, 2017 WL 239328, at \*\*2-3 (quoting *Sunrise Techs., Inc. v. Cimcon Lighting, Inc.,* No. 15-11545-NMG, 2016 WL 6902395, at \*2 (D. Mass. Nov. 10, 2016).  "The complaint must also allege the infringement occurred in United States territory."  *Id.*; *see also e.g.*, *Deetz Family*, 217 F. Supp. 3d at 434

(requiring factual allegations regarding which actions or products made by defendant infringed which claims of which patents).

Here, Ingenico Inc. identifies the alleged "Infringing Devices" purportedly at issue as "certain mobile point of sale devices[,]" "includ[ing], but not limited to" the seven BBPOS and AnywhereCommerce products mentioned by name, "and any other products that interface with mobile devices or PC's through an audio jack, or any products that are EMV capable POS units with Bluetooth interfaces[.]" (Am. Counterclaim at ¶¶ 99, 102-104). It then quotes the language of a number of patent claims, and alleges, generally, that "BBPOS and AnywhereCommerce have infringed and continue to infringe on the Asserted Patents[.]" (Am. Counterclaim at ¶¶ 102-104). That is not enough. Ingenico Inc. makes no effort whatsoever to tie any specific product or method to all elements of any allegedly infringed patent claim. These types of sweeping and conclusory allegations do not meet the pleading requirements under *Twombly/Iqbal*. Thus, Ingenico Inc.'s claims should be dismissed for failure to state a claim on which relief may be granted.

## IV.    CONCLUSION

Ingenico Inc. lacks standing to assert the patents-in-suit and fails to state any patent infringement claim upon which relief may be granted. Consequently, Ingenico Inc.'s claims for patent infringement are not remotely supported by the applicable law and must be dismissed.

Dated: December 17, 2019

Respectfully submitted,

Plaintiffs,
By their attorneys,

/s/ *Jonathon D. Friedmann*
Jonathon D. Friedmann, Esq. (BBO # 180130)
Robert P. Rudolph, Esq. (BBO # 684583)
RUDOLPH FRIEDMANN LLP
92 State Street
Boston, MA 02109

20

Tel.: (617) 723-7700
Fax: (617) 227-0313
JFriedmann@rflawyers.com
RRudolph@rflawyers.com

and

KUTAK ROCK LLP

Oliver D. Griffin (Pro Hac Vice)
Pennsylvania Bar No. 88026
Oliver.griffin@kutakrock.com
Peter N. Kessler (Pro Hac Vice)
Pennsylvania Bar No. 209033
Peter.kessler@kutakrock.com
Melissa A. Bozeman (Pro Hac Vice)
Pennsylvania Bar No.  201116
Melissa.bozeman@kutakrock.com
1760 Market Street
Suite 1100
Philadelphia, PA  19103-4104
(215) 299-4384 (Telephone)
(215) 981-0719 (Facsimile)


Daniel Carmeli (Pro Hac Vice)
Colorado Bar No. 52880
Daniel.carmeli@kutakrock.com
1801 California Street, 30th Floor
Denver, CO 80202
(303) 297-2400 (Telephone)
(303) 292-7799 (Facsimile)

Attorneys for Plaintiffs