# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| **ANYWHERECOMMERCE, INC.**<br>**and BBPOS LIMITED,**<br><br>          **Plaintiffs,**<br><br>      **v.**<br><br>**INGENICO INC., INGENICO CORP., and**<br>**INGENICO GROUP S.A.**<br><br>          **Defendants.** | **CIVIL ACTION NO.**<br>**1:19-cv-11457-IT** |

### INGENICO INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS
### COUNT VIII OF INGENICO INC.'S SECOND AMENDED COUNTERCLAIMS

Ingenico Inc. ("Ingenico"), by and through its counsel, opposes Plaintiffs' Motion to

Dismiss Count VIII of Ingenico's Second Amended Counterclaims (ECF No. 79, the "Motion"

to dismiss the "Patent Counterclaim"). For the reasons set forth herein, the Court should deny

Plaintiffs' Motion in its entirety.

# Table of Contents

Table of Authorities……………………………………………………………………... iii

I.   Introduction…………………………………………………………………...   1

II.   Background…………………………………………………………………....   3

III.   Argument………………………………………………………………………   6

  A. Ingenico has alleged a facially plausible claim for patent infringement…………………...  6

  B. Ingenico has standing because the Counterclaims plausibly allege that Ingenico can enforce
     an exclusive license covering the infringed patents………………………………………..  8

     1. The Counterclaims allege that Ingenico can enforce the exclusive license originally
        granted to ROAM Data, and nothing in the allegations allows the Court to draw the
        adverse inference that the opposite is true. ................................................................... 10

     2. The Counterclaims allege that BBPOS could convey to Ingenico an exclusive license in
        the Asserted Patents, and nothing in the Counterclaims allows the Court to draw the
        adverse inference that the opposite is true. ................................................................... 16

  C. Because the Patent Counterclaim alleges that Plaintiffs sell devices that meet every
     limitation of the Asserted Patents in the United States, it does not fail to state a claim for
     relief…………………………………………………………………………………… 18

IV.   Conclusion…………………………………………………………………… 20

TABLE OF AUTHORITIES

**Cases**

*Duckweed, USA, Inc. v. Behrens*, No. CV 15-5387, 2016 WL 1241869 (E.D. Pa. Mar. 30, 2016) ..................................................................................................................................... 8, 9

*Gimbel v. Signal Companies, Inc.*, 316 A.2d 599 (Del. Ch.), aff'd, 316 A.2d 619 (Del. 1974) ... 16

*Mariasch v. Gillette Co.*, 521 F.3d 68 (1st Cir. 2008) ................................................................. 15

*Nike, Inc. v. Puma N. Am., Inc.,* No. CV 18-10876-LTS, 2018 WL 4922353 (D. Mass. Oct. 10, 2018) ........................................................................................................................................ 19

*Ocasio-Hernandez v. Fortuño-Burset*, 640 F.3d 1 (1st Cir. 2011) ......................................... 6, 12

*Rampage LLC v. Glob. Graphics SE*, No. 16-CV-10691-ADB, 2017 WL 239328 (D. Mass. Jan. 19, 2017) ..................................................................................................................................... 8

*Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49 (1st Cir. 2013) ........................................... 7

*Sagarra Inversiones, S.L. v. Cementos Portland Valderrivas, S.A.*, 34 A.3d 1074 (Del. 2011) .. 15

*Spring Air Int'l, LLC v. R.T.G. Furniture Corp.*, No. 8:10-CV-1200-T-33TGW, 2010 WL 4117627 (M.D. Fla. Oct. 19, 2010) ........................................................................................... 12

*Sunrise Techs., Inc. v. Cimcon Lighting, Inc.*, 219 F. Supp. 3d 260 (D. Mass. 2016) ............. 8, 18

*Waterman v. Mackenzie*, 138 U.S. 252 (1891) ............................................................................. 9

**Statutes**

35 U.S.C. § 100 ............................................................................................................................... 8

35 U.S.C. § 281 ............................................................................................................................... 8

## I.    INTRODUCTION

Plaintiffs argue that Count VIII of Ingenico Inc.'s ("Ingenico's") Second Amended Counterclaims (ECF No. 78)—the "Patent Counterclaim" in the "Counterclaims"—should be dismissed under Fed. R. Civ. P. 12(b) for two reasons: Ingenico lacks standing to assert a claim for patent infringement, and Ingenico has not stated a legally cognizable claim for relief. Plaintiffs' arguments are both wrong.

Ingenico and Plaintiffs BBPOS Limited ("BBPOS") and AnywhereCommerce, Inc. all participate in the mobile payments business. Ingenico Inc.'s Patent Counterclaim principally arises out of a 2011 licensing agreement between BBPOS and ROAM Data, Inc. ("ROAM Data"), an entity that later merged with and into Ingenico Inc. The licensing agreement, referred as the "Ingenico-BBPOS Agreement," grants Ingenico (with a narrow exception not relevant to the Motion) an exclusive, worldwide license over "all patents related to" certain mobile payment devices. BBPOS promised, in the Ingenico-BBPOS Agreement, to perform certain work exclusively with Ingenico and to license certain intellectual property exclusively to Ingenico. The Counterclaims allege that BBPOS then breached these promises and worked with AnywhereCommerce in violation of the Ingenico-BBPOS Agreement.

**First**, Plaintiffs argue that Ingenico lacks standing to assert the Patent Counterclaim because Ingenico cannot enforce the license that BBPOS originally granted to ROAM Data in 2011. The Ingenico-BBPOS Agreement states that in certain circumstances ROAM Data cannot transfer or assign its patent license. Plaintiffs argue that ROAM Data attempted such a prohibited transfer. This is nothing more than a fact-bound argument that should be rejected. The Counterclaims plausibly allege that Ingenico presently enjoys the license initially conferred to ROAM Data in the Ingenico-BBPOS Agreement. Nothing in the Counterclaims permits the Court to draw the adverse inference that a prohibited transfer occurred. Indeed, it did not.

**Second**, as to the subset of the allegedly infringed patents presently assigned to 4361423 Canada Inc. ("'436 Canada"), Plaintiffs argue that Ingenico lacks standing to sue for infringement because, they assert that '436 Canada never allowed BBPOS to grant Ingenico any such license. This is another fact-bound argument that the Court should reject. Among other things, the Counterclaims allege that '436 Canada expressly acknowledged and consented to BBPOS' transfer of exclusive rights in such patents to Ingenico. Thus, as alleged, '436 Canada *did* allow BBPOS to grant Ingenico an exclusive license in patents assigned to '436 Canada.

**Third**, Plaintiffs argue that Ingenico failed to state a plausible claim for patent infringement because Ingenico's pleading fails to meet the *Iqbal/Twombly* pleading standard. Plaintiffs are again wrong. This Court has held that in order to state a claim for patent infringement that satisfies the *Iqbal/Twombly* pleading standard, a plaintiff must allege that defendant's product practices all the elements of at least one of the claims of the subject patent and infringes in the United States. Here, the Patent Counterclaim alleges, among other more specific allegations, that each Plaintiff has made, used, sold, or offered to sell infringing devices in the United States, and that "one or more of the Infringing Devices meets every limitation of at least one of the claims of each of the Asserted Patents."[1] Because Ingenico's Patent Counterclaim meets what this Court has determined to be the requisite pleading standard for claims of patent infringement under *Iqbal/Twombly*, the Court should reject this argument as well.

---

[1] *See* Counterclaims ¶¶ 99, 100.

## II.    BACKGROUND

Ingenico and the Plaintiffs, AnywhereCommerce Inc. and BBPOS Limited, each participate in the mobile payments business. *See* Counterclaims (ECF No. 78) ¶ 11.[2] The devices most relevant to this lawsuit process credit card payments using mobile devices such as cell phones.

On December 3, 2019, Ingenico filed its Second Amended Counterclaims (the "Counterclaims") against Plaintiffs, Count VIII of which alleges that Plaintiffs infringed nine United States patents (the "Patent Counterclaim" concerning the "Asserted Patents"). ¶¶ 86-109. The Patent Counterclaim notes that the Plaintiffs themselves are the present assignees of the Asserted Patents that they have infringed. ¶¶ 87-88. BBPOS is the present assignee of two of the Asserted Patents, and '436 Canada, AnywhereCommerce's parent company, is the present assignee of the remaining seven. *Id.* But the Patent Counterclaim, and the Counterclaims more broadly, allege that Ingenico is the exclusive licensee of the Asserted Patents on a worldwide basis, with a limited exception relating to China and the Philippines that is not relevant to Plaintiffs' Motion. *See, e.g.,* ¶ 89. Consequently, Ingenico is the exclusive licensee for these Asserted Patents, neither Plaintiff may make, use, offer to sell, or sell devices that practice such patents without Ingenico's consent. ¶ 98.

Concerning the source of Ingenico's licensing rights, the Counterclaims allege that in 2011, BBPOS and ROAM Data executed an agreement entitled the Engineering Development and License Agreement (i.e., the Ingenico-BBPOS Agreement). ¶ 13, Exhibit 1. Ingenico Ventures SAS, a non-party formerly affiliated with Defendants, owned a significant percentage of ROAM Data for years before ROAM Data executed this Agreement. Later, ROAM Data merged with

---

[2] References to paragraph numbers in this section refer to the corresponding paragraphs of the Second Amended Counterclaims.

and into Ingenico. ¶ 12. Ingenico now enjoys the license rights originally granted to ROAM Data. ¶¶ 13, 16. Hence, Ingenico refers to the "Engineering Development and License Agreement" as the "Ingenico-BBPOS Agreement."

The Ingenico-BBPOS Agreement explicitly grants Ingenico an exclusive license over a broadly-defined set of intellectual property. ¶ 22. It states that Ingenico has an exclusive license to use "the Partner Intellectual Property to … use [or] sell … the Products, any portion thereof, or any products similar to or based upon any Products." ¶ 89; *see also* Exhibit 1. The Agreement defines the term "Partner Intellectual Property" to include "any and all patents and patent applications relating to the Products … ."[3] The Ingenico-BBPOS Agreement's "Products" include a credit card mobile payment unit that is EMV capable and has a Bluetooth interface, and an encrypted magnetic swipe reader "and including any variance of this design."[4] (The acronym EMV refers to "chip" card readers as opposed to swipe card readers; EMV readers require the consumer to insert his or her card rather than swipe it).

The Ingenico-BBPOS Agreement does not identify any of the patents that were licensed by patent number. Instead, BBPOS licensed to Ingenico, *inter alia*, *any* patents that are "related" to the Products. Ingenico alleges that the patents licensed to Ingenico include the Asserted Patents. ¶ 90.

As noted, the Asserted Patents include patents presently assigned to '436 Canada. ¶¶ 87-88. '436 Canada is AnywhereCommerce's parent company. ¶ 34. Plaintiffs allege that BBPOS and AnywhereCommerce operate in a "complementary" fashion, that they are in a long-standing

---

[3] Exhibit 1 at 12 of 16.

[4] Exhibit 1 at 10 of 16.

"resilient alliance," and that acting together they "effectively lock up the manufacture and supply of mobile point of sale devices" through ownership of patents.[5]

Ingenico alleges that BBPOS licensed to Ingenico certain patents presently assigned to '436 Canada, and that it had the full power and authority to do so: "BBPOS had or obtained sufficient rights in [the patents presently assigned to '436 Canada] to convey all of the rights that BBPOS conveyed in the Ingenico-BBPOS Agreement." ¶ 92. Indeed, in the Ingenico-BBPOS Agreement, BBPOS represented and warranted that "it has full power to enter into this Agreement and to carry out its obligations," and that it "has obtained *all* corporate, third party, and governmental approvals and intellectual property rights necessary to enter into this Agreement … ." Exhibit 1 at ¶ 3.8 (emphasis supplied).

Ingenico further alleges that '436 Canada expressly acknowledged and consented to Ingenico's exclusive license over these patents. ¶¶ 34, 94. Ingenico also alleges that "[t]he principal of BBPOS, who is listed as an inventor on each of the Asserted Patents, has asserted facts showing that '436 Canada's purported rights in some or all of the Asserted Patents were invalid and properly belonged to BBPOS" because "4361423 Canada Inc. fraudulently obtained them from BBPOS, or because any conveyances of rights from BBPOS … failed for lack of consideration." ¶ 93.

Finally, Ingenico alleges that although BBPOS and AnywhereCommerce each expressly agreed that Ingenico has an exclusive license over each of the Asserted Patents, both Plaintiffs manufactured, used, made, and sold devices that practice the Asserted Patents in the United States and therefore infringe on the patents. ¶¶ 98-99.

---

[5] *See* Plaintiffs' First Amended Complaint (ECF No. 67) at ¶¶ 20, 30.

## III.   ARGUMENT

### A.   Ingenico has alleged a facially plausible claim for patent infringement.

In its 2011 decision of *Ocasio-Hernandez v. Fortuño-Burset,* the First Circuit addressed the standard that district courts must apply to motions to dismiss for failure to state a claim for relief in light of the Supreme Court's decisions in *Iqbal* and *Twombly*.[6] Although Plaintiffs also move to dismiss under Rule 12(b)(1) on the grounds that standing to assert patent infringement is a jurisdictional issue, they acknowledge that the standard is effectively the same: that the court "should accept as true all well-pleaded factual allegations in the complaint … ."[7]

In *Ocasio-Hernandez*, the court explained that "[t]he question confronting a court on a motion to dismiss is whether all the facts alleged, when viewed in the light most favorable to the plaintiffs, render the plaintiff's entitlement to relief plausible."[8] The First Circuit noted that a complaint should not be dismissed under Rule 12(b)(6) "if [it] satisfies Rule 8(a)(2)'s requirement of 'a short and plain statement of the claim showing that the pleader is entitled to relief,'" which "needs only enough detail to provide a defendant with 'fair notice of what the ... claim is and the grounds upon which it rests.'"[9] It held that a "complaint must contain enough factual material 'to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'"[10] "In short," the court

---

[6] *Ocasio-Hernandez v. Fortuño-Burset*, 640 F.3d 1, 10–13 (1st Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

[7] *See* Plaintiffs' Motion at 10.

[8] *Ocasio-Hernandez v. Fortuño-Burset*, 640 F.3d 1, 14 (1st Cir. 2011).

[9] *Id.* at 11-12 (quoting *Twombly*, 550 U.S. at 554).

[10] *Id.* (quoting *Twombly*, 550 U.S. at 555).

concluded, "an adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim."[11]

The First Circuit noted that a court's sense that a claim might be difficult to prove does not support dismissal. A "court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'"[12] "Nor may a court attempt to forecast a plaintiff's likelihood of success on the merits; 'a well-pleaded complaint may proceed even if ... a recovery is very remote and unlikely.'" As the *Twombly* Court held, "[w]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder."[13]

In 2013 the First Circuit added that "a plaintiff must plead enough facts to make entitlement to relief plausible in light of the evidentiary standard that will pertain at trial," but that the plaintiff "need not plead facts sufficient to establish a prima facie case."[14]

Finally, although the First Circuit has not addressed the application of the *Iqbal/Twombly* pleading standard to patent infringement claims following the elimination of Form 18 from the Federal Rules of Civil Procedure, this Court has. In the 2016 case of *Sunrise Techs., Inc. v. Cimcon Lighting, Inc.*, this Court (Gorton, J.) addressed the question and determined that "applying *Twombly* and *Iqbal* … plaintiff must allege that defendant's product practices all the elements of at least one of the claims of the subject patent" because "the allegedly infringing

---

[11] *Id.* at 12.

[12] *Id.* at 12 (quoting *Twombly*, 550 U.S. at 556).

[13] *Id.* at 13 (quoting *Twombly*, 550 U.S. at 563 n.8).

[14] *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 54 (1st Cir. 2013).

product must practice all elements of a patent claim."[15] This holding has been applied in this
Court's other decisions.[16]

**B.      Ingenico has standing because the Counterclaims plausibly allege that
          Ingenico can enforce an exclusive license covering the infringed patents.**

Ingenico is not the present assignee of any of the Asserted Patents. Consequently, in order to

have standing to bring a claim for patent infringement, Ingenico must allege either that it (1) is

an exclusive licensee with all substantial rights in the Asserted Patents, or (2) is an exclusive

licensee and the alleged infringer of the Asserted Patents is the patent owner.[17] Here, Ingenico

qualifies under either test.

The Patent Act provides that "[a] patentee shall have remedy by civil action for infringement

of his patent."[18] The statute defines "patentee" to include "successors in title to the patentee."[19]

As explained in 2016 by the federal district court in *Duckweed, USA, Inc. v. Behrens*, "[i]n

addition to the patent owner, Federal Circuit case law provides that an exclusive licensee has

standing to sue in its own name, without joining the patent holder where all substantial rights in

---

[15] *Sunrise Techs., Inc. v. Cimcon Lighting, Inc.*, 219 F. Supp. 3d 260, 263 (D. Mass. 2016) (citing
*TeleSign Corp. v. Twilio, Inc.*, Docket No. CV 16–2106, 2016 WL 4703873, at *3–4 (C.D.
Cal. Aug. 3, 2016)).

[16] *See, e.g., Rampage LLC v. Glob. Graphics SE*, No. 16-CV-10691-ADB, 2017 WL 239328, at
*3 (D. Mass. Jan. 19, 2017) ("Therefore, in applying *Twombly* and *Iqbal* after the elimination
of Form 18, plaintiff must allege that defendant's product practices all the elements of at least
one of the claims of the subject patent.") (citing *Sunrise*, 219 F. Supp. 3d 260, 263 (D. Mass.
2016)).

[17] *See, e.g., Duckweed, USA, Inc. v. Behrens*, No. CV 15-5387, 2016 WL 1241869 (E.D. Pa.
Mar. 30, 2016).

[18] 35 U.S.C. § 281.

[19] 35 U.S.C. § 100.

the patent are transferred."[20] There, "the transferee is treated as the patentee and has standing to sue in its own name. If, however, the transferee or licensee does not hold all substantial rights, it may sue third parties only as a co–plaintiff with the patentee."[21]

The *Duckweed* court noted that "[a]t least one exception to that rule exists []: an exclusive licensee that does not have all substantial rights does have standing to sue in his own name when necessary to prevent an absolute failure of justice, as where the patentee is the infringer, and cannot sue himself."[22] This exception dates back (at least) to the 1891 decision of the Supreme Court in *Waterman v. Mackenzie*.[23] There, the Supreme Court explained that "[i]n equity, as at law, when the transfer [of rights in a patent] amounts to a license only, the title remains in the owner of the patent; and suit must be brought in his name, and never in the name of the licensee alone unless that is necessary to prevent an absolute failure of justice, as where the patentee is the infringer, and cannot sue himself."[24]

Here, the Ingenico-BBPOS Agreement conveys to Ingenico *all* substantial rights in the Asserted Patents, including the right to prosecute legal proceedings for infringement.[25] Although Plaintiffs argue that the license conveyed in the Ingenico-BBPOS Agreement cannot be enforced

---

[20] *Duckweed, USA, Inc. v. Behrens*, No. CV 15-5387, 2016 WL 1241869, at *3 (E.D. Pa. Mar. 30, 2016) (internal citations and quotation marks omitted).

[21] *Id.* at *3.

[22] *Id.* (internal citations and quotation marks omitted).

[23] *Waterman v. Mackenzie*, 138 U.S. 252, 255 (1891).

[24] *Id.*

[25] *See* Counterclaims ¶ 91; *see also* Exhibit 1 thereto at 12 of 16.

by Ingenico or that it does not cover some of the Asserted Patents, they do not argue that the license fails to convey all substantial rights that are necessary for Ingenico to have standing.

Finally, assuming arguendo that the license did not convey all substantial rights to the patents, under the exception addressed in *Duckworth* and *Waterman*, Ingenico would still have standing to sue Plaintiffs for infringement without joining '436 Canada as co-counterclaimant because "the patentee is the infringer, and cannot sue himself."

In sum, the Counterclaims plausibly allege, through well-pleaded factual allegations, that Ingenico is the exclusive licensee of each of the Asserted Patents. Accordingly, Ingenico has standing to sue for patent infringement. As shown below, Plaintiffs' arguments to the contrary are not only incorrect, they also invite the Court to draw adverse inferences against Ingenico based on factual suppositions that are not properly before the Court and are not appropriate on a motion to dismiss standard.

> 1.   *The Counterclaims allege that Ingenico can enforce the exclusive license originally granted to ROAM Data, and nothing in the allegations allows the Court to draw the adverse inference that the opposite is true.*

Plaintiffs first argue that Ingenico lacks standing to enforce the license because that license was originally granted to ROAM Data. Although they acknowledge that "transfers and assignments of the license granted to ROAM were freely permitted under the" Ingenico-BBPOS Agreement, they allege that a clause of that Agreement prohibits a transfer or assignment of the relevant license in certain circumstances.[26] They argue that Ingenico's own pleadings show that ROAM Data attempted such a transfer or assignment—i.e., that Ingenico has pleaded itself out of court. This argument misconstrues Ingenico's allegations and should be rejected because the

---

[26] *See* Plaintiffs' Motion at 16.

Counterclaims plausibly allege that Ingenico holds and can enforce the license from the Ingenico-BBPOS Agreement, and nothing in the Counterclaims permits the Court to draw an adverse inference to the contrary.

The Ingenico-BBPOS Agreement states, in Section 1.2, the "license granted … is not transferrable or assignable in the event [sic] a sale of the Company [ROAM Data] to a competitor with its own POS products without prior written consent of the Partner, not to be unreasonably withheld."[27] Ingenico has not alleged (1) that there was a "sale" of ROAM Data, that (2) ROAM Data was sold "to a competitor with its own POS products," that (3) as part of the sale the license was "transferr[ed] or assign[ed]," or that (4) BBPOS did not provide prior written consent to this transfer or assignment. Consequently, Ingenico plausibly alleges that it holds the license and can enforce it, and dismissal of its Patent Counterclaim is not warranted.

The Counterclaims do not purport to lay out the specific factual mechanism with accompanying legal argument specifically and completely addressing how or why Ingenico can enforce this license. Indeed, at this procedural posture, such an explanation is unnecessary. That is because a claim must merely "contain enough factual material 'to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'"[28] Here, the Counterclaims "provide fair notice to the defendants and state a facially plausible legal claim."[29] The clause in the Ingenico-BBPOS Agreement concerning assignment or transfer is a contractual agreement, and Ingenico need not plead all of the facts

---

[27] Exhibit 1 to the Counterclaims ¶¶ 1.2 (clause concerning assignments), 16.1 (Massachusetts choice of law provision).

[28] *Ocasio-Hernandez v. Fortuño-Burset*, 640 F.3d 1, 10–13 (1st Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[29] *Id.* at 12.

and evidence that relate to that clause's meaning, application, nor the parties' rights *vel non* to enforce it in light of their conduct.

Plaintiffs' argument that the Ingenico-BBPOS Agreement prohibited any "transfer" from ROAM Data to Ingenico is both premature and incorrect. A federal district court in Florida similarly held in the 2010 decision of *Spring Air Int'l, LLC v. R.T.G. Furniture Corp.*[30] There, the party defending the claim "argue[d] that [a third party] invalidly assigned its accounts receivable to [the claimant] and, therefore, [the claimant] is not a proper party in interest."[31] But the defending party's argument that the claimant "alleged insufficient facts to determine the validity of the assignment," was not well-taken at the Rule 12 stage. "The Court finds that [claimant] did allege in its complaint that it assumed all the rights of the assignor when it stated that it acquired any accounts receivable owed by R.T.G. Furniture. … Accordingly, at this stage of the proceedings, the Court finds that the assignment was valid under Florida law."[32]

Here, the Counterclaims do not compel the conclusion that there was ever a "sale" of ROAM Data as argued by Plaintiffs. Indeed, there was no such sale. Rather, the pleadings allege that ROAM Data has long been owned by Ingenico affiliates, including years before the execution of the Ingenico-BBPOS Agreement. Plaintiffs allege that Ingenico held 44% of ROAM Data in November 2009, years before BBPOS executed the license in ROAM Data's favor.[33] By February 6, 2012, Ingenico Ventures SAS (a dismissed non-party) held more than

---

[30] No. 8:10-CV-1200-T-33TGW, 2010 WL 4117627 (M.D. Fla. Oct. 19, 2010).

[31] *Id.* at *4.

[32] *Id.* at *4.

[33] Plaintiffs' First Amended Complaint ¶ 42.

70% of the ownership interests in ROAM Data.[34] By January 1, 2015, Ingenico Ventures SAS

held 100% of ROAM Data's ownership interests. Plaintiffs describe ROAM Data in 2015 as a

subsidiary of Ingenico Ventures SAS.[35] ROAM Data continued in existence as a separate

corporation until it merged with Ingenico Inc. in 2017.[36] (In the context of corporate law, Black's

Law Dictionary defines a merger as "[t]he absorption of one organization (esp. a corporation)

that ceases to exist into another that retains its own name and identity and acquires the assets and

liabilities of the former.").[37]

    In addition to the fact that no sale of ROAM Data has been alleged (or ever occurred),

Massachusetts law strongly supports that no transfer would have occurred in the event of an

abrupt, outright sale. The Ingenico-BBPOS Agreement must be "governed by and construed in

all respects in accordance" with Massachusetts law.[38] In 1988 the Supreme Judicial Court of

Massachusetts determined whether a distributorship agreement between Seagram Distillers and a

liquor wholesaler could be canceled due to a "[s]ale or transfer of control or management" of the

wholesaler.[39] The sole shareholder of the wholesaler sold all of his capital stock in the wholesaler

to a different company, Gilman. "[A]ll of the stock ownership, officers, directors, management

---

[34] *See* Defendants' Answer to Plaintiffs' First Amended Complaint ¶ 45.

[35] Plaintiffs' First Amended Complaint ¶ 9 n.2.

[36] Counterclaims ¶ 12.

[37] MERGER, Black's Law Dictionary (11th ed. 2019).

[38] Exhibit 1 to Counterclaims at Section 16.1.

[39] *Seagram Distillers Co. v. Alcoholic Beverages Control Comm'n*, 401 Mass. 713, 719–20, 519
    N.E.2d 276, 281 (1988).

and general business operations of the [wholesaler] changed, and [it] moved its headquarters."[40] Seagram attempted to cancel the contract under the "[s]ale or transfer of control or management" clause.[41] But the Supreme Judicial Court noted that "Seagram's argument assumes that a sale of stock in a corporate liquor wholesaler constitutes a transfer of that corporation's license to sell liquor. The short answer to this assumption is that a sale of stock does not effect such a transfer."[42]

Although the Ingenico-BBPOS Agreement requires the application of Massachusetts law "in all respects," Plaintiffs argue that in this respect the Court must apply Delaware law to this question because it relates to the internal affairs of ROAM Data. Plaintiffs' argument is flawed in several respects. First, Plaintiffs rely on Delaware choice-of-law principles, although the First Circuit held in the 2008 decision *Mariasch v. Gillette Co.* that "[t]o determine which state's laws are applicable, we look to the choice-of-law jurisprudence of Massachusetts, the forum state."[43] Second, the *Mariasch* decision further explains that, as applied by Massachusetts, the "internal affairs doctrine" calls for the application of a single state's laws to the "regulat[ion] of a corporation's internal affairs" for "matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders … ."[44] This case involves whether a third-party company can demonstrate that one entity was sold to another entity under the terms of a license agreement, and therefore does not concern "relationships among or

---

[40] *Id.* at n.6.

[41] *Id.*

[42] *Seagram Distillers Co.*, 401 Mass. at 719–20, 519 N.E.2d at 281.

[43] *Mariasch v. Gillette Co.*, 521 F.3d 68, 71 (1st Cir. 2008) (citation omitted).

[44] *Id.* at 72 (quoting *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982)).

between the [one entity] and its current officers, directors, and shareholders … ." Further, the internal affairs doctrine applies because courts are concerned that "a corporation could be faced with conflicting demands" imposed by several different states' laws.[45] There is no such concern here.

Plaintiffs' Delaware case law, if it applied, would still not compel the conclusion that ROAM Data attempted or effected a prohibited transfer or assignment. In the 1974 Delaware decision relied on by Plaintiffs, a stockholder sought to enjoin the sale of all of the outstanding capital stock of a company subsidiary.[46] The Delaware court determined that the proposed sale would not have constituted the sale of all or substantially all of the parent company's assets as would require shareholder approval.[47] The case is not relevant.

Finally, even if the Court for some reason could draw the adverse inference that ROAM Data transferred or assigned in the manner prohibited by Section 1.2, the Ingenico-BBPOS Agreement is silent as to the consequences of any such transfer and does not call for automatic termination.[48] Consequently, even assuming arguendo that BBPOS had a contractual right to deem the license terminated in the event of a prohibited transfer, then the Court should still accept Ingenico's allegation that it holds the license, and infer that for some relevant time, BBPOS did not or could not enforce its contractual right.

---

[45] *Id.* (quoting *Edgar*, 457 U.S. at 645).

[46] *Gimbel v. Signal Companies, Inc.*, 316 A.2d 599, 601 (Del. Ch.), aff'd, 316 A.2d 619 (Del. 1974).

[47] *Id.* at 607.

[48] *See* Exhibit 1 to the Counterclaims.

2. *The Counterclaims allege that BBPOS could convey to Ingenico an exclusive license in the Asserted Patents, and nothing in the Counterclaims allows the Court to draw the adverse inference that the opposite is true.*

Plaintiffs' second challenge to Ingenico's standing relates only to a subset of the Asserted Patents, specifically, the seven Asserted Patents presently assigned to AnywhereCommerce's parent company, '436 Canada. Plaintiffs argue that when BBPOS granted Ingenico a license to "any and all patents related to" certain mobile payment devices, it in fact failed to grant an effective license as to a number of patents related to those mobile payment devices. The specific patents that Plaintiffs claim are those that were invented by BBPOS' principal, Ben Lo (a/k/a Chi Wah Lo), but that are presently assigned to '436 Canada.

Plaintiffs assert that "BBPOS has never owned or controlled the 4361423 patents or their applications; it has never had more than a non-exclusive license to these properties."[49] This factual assertion runs squarely into Ingenico's Patent Counterclaim, which expressly alleges that "[u]pon information and belief, BBPOS had or obtained sufficient rights in the Licensed Patents to convey all of the rights that BBPOS conveyed in the Ingenico-BBPOS Agreement."[50] Any assertion that '436 Canada never agreed that Ingenico could hold this license runs squarely into the Patent Counterclaim's allegation that "4361423 Canada Inc., AnywhereCommerce's parent company, expressly acknowledged and consented to Ingenico Inc.'s exclusive license over the Licensed Patents."[51]

---

[49] Plaintiffs' Motion at 7.

[50] *See* Counterclaims ¶ 92.

[51] Counterclaims ¶ 94.

Plaintiffs implicitly acknowledge that '436 Canada's consent to the license validates the license: "Ingenico Inc. would seem to have both invented … a new form of exclusive licensing rights that requires neither the patent owner's consent nor even the mention of the patents in question."[52] But Ingenico *did* have the patent owner's consent. '436 Canada expressly acknowledged and consented to the Ingenico-BBPOS Agreement.

Further, in the Ingenico-BBPOS Agreement, BBPOS represented and warranted that "it has full power to enter into this Agreement and to carry out its obligations," and that it "has obtained *all* corporate, third party, and governmental approvals and intellectual property rights necessary to enter into this Agreement … ."[53] Finally, Ingenico alleges "[t]he principal of BBPOS, who is listed as an inventor on each of the Asserted Patents, has asserted facts showing that ['436 Canada's] purported rights in some or all of the Asserted Patents were invalid and properly belonged to BBPOS because, *inter alia*, ['436 Canada] fraudulently obtained them from BBPOS, or because any conveyances of rights from BBPOS to ['436 Canada] failed for lack of consideration."[54]

In sum, Ingenico has plausibly alleged facts sufficient to show that it has standing to sue Plaintiffs for infringing the Asserted Patents.

---

[52] Plaintiffs' Motion at 9.

[53] Ingenico-BBPOS Agreement, Exhibit 1 to the Counterclaims, at ¶ 3.8 (emphasis supplied).

[54] Counterclaims ¶ 93.

**C.**   **Because the Patent Counterclaim alleges that Plaintiffs sell devices that meet every limitation of the Asserted Patents in the United States, it does not fail to state a claim for relief.**

Plaintiffs argue that Ingenico has failed to state a plausible claim for patent infringement. They are wrong: the Counterclaims meet the applicable legal standard.

This Court (Gorton, J.) has determined that "applying *Twombly* and *Iqbal* … plaintiff must allege that defendant's product practices all the elements of at least one of the claims of the subject patent" in the United States because "the allegedly infringing product must practice all elements of a patent claim."[55] This Court has since repeated that holding.[56]

The Patent Counterclaim meets this pleading standard. Ingenico's Patent Counterclaim alleges that each Plaintiff has made, used, sold, or offered to sell infringing devices in the United States, and that "[u]pon information and belief, one or more of the Infringing Devices meets every limitation of at least one of the claims of each of the Asserted Patents."[57] In addition to these express allegations, the Patent Counterclaim alleges specific claims of each of the Asserted Patents that Plaintiffs have infringed and identifies the devices that practice those patents.[58]

Further, as this Court held in 2018, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its

---

[55] *Sunrise Techs., Inc. v. Cimcon Lighting, Inc.*, 219 F. Supp. 3d 260, 263 (D. Mass. 2016) (citing *TeleSign Corp. v. Twilio, Inc.*, Docket No. CV 16–2106, 2016 WL 4703873, at *3–4 (C.D. Cal. Aug. 3, 2016)).

[56] *See, e.g., Rampage LLC v. Glob. Graphics SE*, No. 16-CV-10691-ADB, 2017 WL 239328, at *3 (D. Mass. Jan. 19, 2017).

[57] *See* Counterclaims ¶¶ 99, 100.

[58] *See* Counterclaims ¶¶ 86-109.

judicial experience and common sense."[59] The Counterclaims demonstrate that Ingenico and the Plaintiffs all participate in the business of mobile payments. It alleges that BBPOS contractually agreed to manufacture a broad variety of mobile payment devices and license intellectual property to Ingenico exclusively, but then proceeded to manufacture those very mobile payment devices for AnywhereCommerce. Consequently, the context of the Counterclaims further shows that Ingenico's allegation that BBPOS and AnywhereCommerce infringed on Ingenico's exclusive license by making and selling similar devices is plausible.

In an attempt to argue around controlling precedent, Plaintiffs ask this Court to apply a different, heightened pleading standard. Plaintiffs assert that Ingenico is required to allege "an element-by-element comparison between any accused product and any claim of any asserted patent … ."[60] Their sole support for this statement is the *Twombly* case, which had nothing to do with patents or patent infringement, and imposes no such requirement.[61] Plaintiffs also argue that the *Twombly/Iqbal* standard requires "factual allegations regarding specific accused products/methods, identification of at least one alleged infringed claim per asserted patent, and an explanation of how the products/methods allegedly infringe the identified claim(s) … ."[62] First, this sentence lacks *any* legal citation whatsoever. Second, even if this standard were to apply, Ingenico's detailed allegations would pass muster.

---

[59] *Nike, Inc. v. Puma N. Am., Inc.,* No. CV 18-10876-LTS, 2018 WL 4922353, at *2 (D. Mass. Oct. 10, 2018) (citing *Iqbal*, 556 U.S. at 679).

[60] Plaintiffs' Motion at 4.

[61] *Id.* (citing *Twombly*, 550 U.S. at 555).

[62] Plaintiffs' Motion at 19.

This Court has already interpreted how *Twombly* applies to claims for patent infringement. It held that "applying *Twombly* and *Iqbal* … plaintiff must allege that defendant's product practices all the elements of at least one of the claims of the subject patent … ."[63] Ingenico's Counterclaims meet and exceed this standard.

## IV.   CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion to Dismiss the Patent Counterclaim.

Dated: January 10, 2020                    Respectfully Submitted,

Ingenico Inc.,

By its attorneys,

/s/ John A. Tarantino
JOHN A. TARANTINO (BBO #492230)
PATRICIA K. ROCHA (BBO #542348)
WILLIAM K.WRAY, JR. *(#689037)*
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
Tel: (401) 274-7200
Fax: (401) 351-4607
jtarantino@apslaw.com
procha@apslaw.com
wwray@apslaw.com

---

[63] *Sunrise Techs.,* 219 F. Supp. 3d at 263.