UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

ANYWHERECOMMERCE, INC. and
BBPOS LIMITED,

     Plaintiffs,

v.

INGENICO INC., INGENICO CORP., and
INGENICO GROUP SA,

     Defendants.

Civil Docket No: 1:19-cv-11457-IT

**REQUEST FOR ORAL ARGUMENT**

Pursuant to Rule 7.1(d) of the Local Rules of the United States District Court for the District of Massachusetts, counsel request a hearing on Plainitffs' Motion.

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL CONCERNING GDPR ISSUES

## Table of Contents

Memorandum of Law In Support of  Defendants' Opposition to Plaintiffs' Motion to Compel Concerning GDPR Issues ........................................................................................................ 1

Introduction ........................................................................................................................ 1

    I.   The General Data Protection Regulation ("GDPR") ............................................. 3

    II.  The Parties' Meet-and-Confer Process ................................................................. 5

Argument ............................................................................................................................ 7

    I.   The GDPR applies to Defendants' responses to Plaintiffs' 126 document requests. ......... 7

    II.  The "Litigation Exemption" Does Not Create a Broad an Exception for Plaintiffs' 126 Document Requests. ....................................................................................................... 9

    III. The *Société Nationale* case demonstrates that Plaintiffs' one-size-fits-all Motion to Compel responses to 126 requests must be denied. ........................................................ 10

        A.  Plaintiffs' First Set of Document Requests are overbroad........................................ 13

        B.  The First Set of Document Requests seek information that is not important to the underlying litigation. ....................................................................................... 15

        C.  Many of the documents requested by the First Set of Document Requests are not in and did not originate in the United States. ................................................... 16

        D.  Plaintiffs have alternative means of obtaining any relevant information sought by Plaintiffs in the document requests. ....................................................... 16

        E.  United States interests are not strongly implicated here. .......................................... 16

        F.  Plaintiffs' proposed order is contrary to law............................................................. 17

    IV. The Court should adopt one of Defendants' balanced proposals. .................................... 18

        A.  Proposal 1: .................................................................................................... 18

        B.  Proposal 2: .................................................................................................... 19

Conclusion ...................................................................................................................... 20

## INTRODUCTION

Plaintiffs' Motion to Compel (the "Motion") asks the Court to issue a blanket order determining that international law does not have *any* application to Defendants' responses to Plaintiffs' discovery requests. Plaintiffs' position, albeit simple, does not comport with the law.

Foreign data privacy laws, and specifically, the General Data Protection Regulation ("GDPR"), which came into effect in May 2018 in the European Union, including France, apply to Defendants' discovery responses here. The GDPR sharply restricts the collection, review, and transmission of data that includes personal information, including any person's "names" or "online identifiers," and establishes severe penalties for failure to comply.

The GDPR includes exemptions from some of its strictures when the processing and transfer of data is "necessary for the establishment, exercise, or defence of legal claims." But this exemption is limited, and both the GDPR and official guidance clarify that the GDPR's concept of "necessary" data for defending legal claims is far narrower than the concept of relevance established in Fed. R. Civ. P. 26. Thus, Defendants must take steps to comply with their obligations under both the GDPR and United States law.

In these circumstances, United States Supreme Court precedent requires this Court to examine Plaintiffs' discovery requests and balance principles of international comity against the national interest in having civil discovery proceed according to the default provisions of the Federal Rules of Civil Procedure. *Société Nationale Industrielle Aérospatiale v. U.S. District Court for the Southern District of Iowa*, 482 U.S. 522 (1987). More specifically, the Supreme Court has instructed that "American courts, in supervising pretrial proceedings, should exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position" because they are subject to international law. *Id.* at 546. The Court directed district courts to examine, on a case-by-case

basis, five relevant factors, including (1) the importance of responsive documents to the litigation and (2) the specificity of the discovery requests at issue. "[T]he concept of international comity requires" this "particularized analysis of the respective interests of the foreign nation and the requesting nation … ." *Id.* at 543-44.

Thus, as the court recognized in *Société Nationale,* for less intrusive discovery requests, a district court may order compliance with the U.S. civil discovery request notwithstanding any obstacles imposed by foreign law.  But for more intrusive, overbroad requests, the Court suggested that the principles of international comity should prevail where possible.

Plaintiffs, however, would have this Court disregard that controlling law and, instead, generally conclude that all 126 of Plaintiffs' document requests are narrowly drawn and important to the underlying litigation such that this Court's interest in their production outweighs all foreign data privacy interests implicated by those requests.  Although Plaintiffs acknowledge that the *Société Nationale* decision applies here, Plaintiffs suggest that the request-by-request analysis necessitated by *Société Nationale* somehow dictates the same result for every single one of its 126 document requests.  That is clearly not the case.

Recognizing the importance of discovery in this litigation, Defendants offer two proposals that would strike a balance between the foreign data privacy interests and the need for discovery. The first proposal contemplates that Defendants would prioritize the production of documents that fall within exceptions to the GDPR, and suggests a multi-phased approach that initially would afford Defendants an opportunity to seek consent from their custodians to avoid GDPR's constraints and would require the Parties to meaningfully confer and determine which of Plaintiffs' 126 document requests (or, in many cases, which portions of Plaintiffs' document requests) seek documents that are "necessary" for the establishment, exercise or defense of legal claims.  The

first proposal also includes a protocol for treatment of those documents that are not prioritized because they implicate data privacy concerns.

The second proposal seeks to narrow the scope of discovery in this case and obviate any need to order Defendants to respond to discovery in a manner that is either prohibitively expensive, or that could violate foreign law.  The second proposal recognizes that it is highly probable that some or all of Plaintiffs' claims are barred by the applicable statutes of limitations. Plaintiffs complain of alleged actions that took place in 2012 or 2014, and do not claim that they were unaware of these alleged misdeeds until years later.  Therefore, it is highly likely that some or all of Plaintiffs' claims are barred by the statute of limitations.  Under the second proposal, the Court would limit discovery related to Plaintiffs' claims to the statute of limitations issue until it determines whether Plaintiffs' claims are, in fact, barred by the statute of limitations.

## BACKGROUND

### I.      The General Data Protection Regulation ("GDPR")

The Charter of Fundamental Rights of the European Union recognizes that each person has a fundamental right to their personal data.[1]  The European Parliament established a comprehensive framework for the regulation and enforcement of this fundamental right on April 27, 2016, when it enacted the GDPR.  The GDPR went into effect for the EU member states, including France, on May 25, 2018.[2]  On June 21, 2018, France enacted Law n° 2018-493, which implemented and

---

[1] European Charter of Human Rights, Title II, Art. 8 (providing that "[e]veryone has the right to the protection of personal data concerning him or her," and that "[s]uch data must be processed fairly for specified purposes and on the basis of the consent of the person or some other legitimate basis laid down by law.") *available at* https://fra.europa.eu/en/eu-charter/article/8-protection-personal-data.

[2] Regulation (EU) 2016/679, Apr. 27, 2016, 2016 O.J. (L119) 1 (Regulation of the European Parliament and of the Council on the protection of natural persons with regard to the processing of personal data and on the free movement of such data, and repealing Directive 95/46/EC (General Data Protection Regulation) (attached as Exhibit B to Plaintiffs' submission).

supplemented the GDPR.[3]  For the purposes of this Motion, the restrictions imposed on personal data by GDPR need not be analyzed separately from the restrictions imposed by n° 2018-493.

The GDPR sharply restricts both the transfer and use of "personal data," which it broadly defines as "any information relating to an identified or identifiable natural person," including a person's name.  GDPR Art. 4(1).  In GDPR parlance, natural persons are "data subjects."  Entities that direct how data are used are "controllers," and entities that interact with the data are called "processors."  *See* GDPR Art. 4.  "Processing" includes "any operation or set of operations … performed on personal data," including "collection … retrieval, use, [or] disclosure … ."  GDPR Art. 4(2).

The GDPR generally prohibits the processing (Article 6) and transfer outside of the EU (Article 44) of "personal data" except in very limited circumstances, such as when it is "necessary" for the establishment, exercise, or defense of legal claims.  According to the European Data Protection Board (the "EDPB"),[4] a data transfer is necessary only when it bears a "close and substantial connection" to the defense of legal claims.[5]  The GDPR's necessity standard differs from the broad and liberal relevancy standard established in Fed. R. Civ. P. 26: the EDPB emphasizes that transferring "all possibly relevant personal data in response to a request" would "*not be in line with*" the legal claims exemption.  *Id.* (emphasis added).

---

[3] LAW n ° 2018-493 of June 20, 2018 relating to the protection of personal data, *available at* https://www.legifrance.gouv.fr/affichTexte.do?cidTexte=JORFTEXT000037085952&fastPos=1 &fastReqId=364642988&categorieLien=cid&oldAction=rechTexte

[4] The EDPB is established by GDPR (Section 3, Article 68) as an official body of the Union. *See* GDPR Section 3. The EPDB is tasked with issuing guidelines concerning GDPR and ensuring that it is consistently applied. *See id.* § 3, Art. 70.

[5] EPDB, Guidelines 2/2018 on derogations of Article 49 under Regulation 2016/679 at 12 ("EPDB 2/2018 Guidelines"), *available at*: https://edpb.europa.eu/sites/edpb/files/files/file1/edpb_guidelines_2_2018_derogations_en.pdf.

The GDPR recognizes that data may be processed and transferred with the consent of the data subject.  Article 4(11) provides that consent must be a "freely given, specific, informed and unambiguous indication" that the data subject "signifies agreement to the processing of personal data relating to him or her."  This consent can be withdrawn "at any time." GDPR Art. 7(3).

Importantly, the GDPR does not contain an exception for transfers subject to a protective order—so having a protective order in U.S. litigation does not eliminate the GDPR's requirements with respect to any EU data produced in discovery.

The consequences for violating the GDPR can be extreme.  If data subjects' rights or the "basic principles for processing, including conditions for consent" are infringed, then the entity that violated the GDPR faces penalties of up to 4% of its annual global gross revenue.  *See* GDPR Art. 83 § 5.  The GDPR came into effect in 2018, and available information concerning enforcement to date suggests that the European authorities take the GDPR's requirements seriously, monitor compliance closely, and severely penalize those who violate them.  GDPR Enforcement Tracker, http://www.enforcementtracker.com/ (last visited April 8, 2020).

## II.    The Parties' Meet-and-Confer Process

Defendants' responses to Plaintiffs' First Set of Document Requests objected to the Requests to the extent that they called for the production of documents that contain information that is protected by the GDPR.  In subsequent meet-and-confer sessions, Plaintiffs' counsel indicated that they had similar concerns arising from a Hong Kong data privacy ordinance (one of the Plaintiffs, BBPOS Limited, is a Hong Kong entity).

The parties proceeded to negotiate discovery protocols that addressed their respective legal obligations.  First, they agreed on confidentiality and privacy protections consistent with standard practice in U.S. litigation.  *See* Stipulation and Protective Order, ECF No. 92.  The parties then stipulated to an order concerning their discovery protocols, and agreed that they

would "rais[e] separately with the Court any issues … related to privacy laws or regulations of other jurisdictions, including but not limited to the General Data Protection Regulation of the European Union and the Personal Data (Privacy) Ordinance (Cap. 486 of Hong Kong … ." *See* Stipulated Order Regarding Discovery of Electronically Stored Information and Hard Copy Documents, ECF No. 102 at 4, ¶ 1 (the "ESI Protocol").  They further agreed that the order concerning discovery protocols "does not waive or preclude any objections related to" those laws "or cause either Party to act in a manner inconsistent with" them.  *Id.*[6]

At some point, Plaintiffs' position that these foreign laws applied and merited accommodation to the default discovery procedures in this litigation changed.  Plaintiffs announced their new position that GDPR simply did not apply to discovery in this matter, and sought to involve the Court in this newfound dispute.  This cut short the parties' efforts to devise a discovery protocol that accommodated these foreign laws.  Then, on a conference call with the Court, Plaintiffs announced their conclusion that the Hong Kong data privacy ordinance and other foreign data privacy laws (such as any that could apply to the Canadian Plaintiff, AnywhereCommerce) required no amendment to their obligations under the Federal Rules of Civil Procedure.  In consultation with the Court, the Parties agreed that a ruling from the Court would be necessary as to the applicability of GDPR and that Plaintiffs would file a motion to compel to present that issue to the Court.  Plaintiffs' Motion followed.

---

[6] In their Memorandum, Plaintiffs wrongly imply that Defendants have unduly delayed their production of documents in this case.  Notably, Plaintiffs also have not produced any documents to date.  After receiving Plaintiffs' document requests, Defendants promptly took steps to identify the relevant custodians, ESI sources, and methods of collection to obtain documents from five or more years ago from their three clients, one of which is based in France.  During that time, Defendants and Plaintiffs also negotiated and agreed on a protocol (including a timeline) for exchanging custodians and search terms.  Defendants have not sought extensions to these agreed-upon timelines and the Parties' negotiation of custodians and search terms is ongoing.

Plaintiffs' Motion asks the Court to order that "[t]he parties are not bound by the restrictions of the [GDPR] or its French analog as to the production of documents in this case." Plaintiffs' Proposed Order, ECF No. 104-2 at ¶ 1. Plaintiffs also ask the Court to order that "[t]he parties shall not redact or withhold information on the basis of any protection allegedly afforded by" GDPR, *id.* at ¶ 2, and that "[c]onsent, the lack of consent, or objection by any third party shall not affect the parties' obligation to produce documents and information pursuant to this Order." *Id.* at ¶ 3. For the reasons that follow, this Court should deny Plaintiffs' Motion and should instead adopt the proposal made by Defendants herein.

## ARGUMENT

### I.     The GDPR applies to Defendants' responses to Plaintiffs' 126 document requests.

The GDPR applies to Defendants' responses to Plaintiffs' 126 document requests, even though two Defendants are United States entities.

First, by its terms, the GDPR applies when an EU-based organization processes the data of EU residents and conducts the processing in the EU. *See* GDPR Article 3 ("This Regulation applies to the processing of personal data in the context of the activities of a controller or a processor in the Union … ."). Here, Defendant Ingenico Group SA is an EU-based organization. Plaintiffs' discovery requests purport to require Ingenico Group SA to process the data of EU residents. Because much of its data is located in France, Ingenico Group SA would need to process this data in France and transfer it to the United States for review and production. In those circumstances, the GDPR applies.

Second, the GDPR also applies to the other Defendants, even though they are U.S. entities. The GDPR applies when data is processed *in connection with* an EU-based business, even if the processing is done in the United States. GDPR's Article 3, "Territorial Scope," provides: "[t]his

7

Regulation applies to the processing of personal data in the context of the activities of an establishment of a controller or a processor in the Union, regardless of whether the processing takes place in the Union or not." GDPR Article 3(1).  The GDPR refers to an "establishment" as anything that "implies the effective and real exercise of activities through stable arrangements. The legal form of such arrangements, whether through a branch or a subsidiary with a legal personality, is not the determining factor in that respect."  GDPR Recital 22 (Exhibit B at 5). Accordingly, although two of the entities are U.S. entities, the authorities charged with enforcing GDPR would not consider that fact to be a determining factor in whether one or more of the Defendants violated the GDPR.

Further, for the GDPR to apply to an entity searching or reviewing data, "it is not necessary that the processing in question is carried out 'by' the relevant EU establishment itself; the controller or processor will be subject to obligations under the GDPR whenever the processing is carried out 'in the context of the activities' of its relevant establishment in the Union."[7]  In other words, even if the U.S. entities are not considered part of the same establishment as Ingenico Group S.A., their activities in processing and producing data could be deemed to have been carried out "in the context of the activities" of Ingenico Group S.A.

Moreover, the GDPR applies if the data of a non-EU resident is processed in the EU. Guidelines issued by the EDPB provide that "where the processing of personal data falls within the territorial scope of the GDPR, all provisions of the Regulation apply to such processing."[8]  It further clarifies that GDPR "does not restrict [its] application … to the processing of personal data

---

[7] EDPB, Guidelines 3/2018 on the territorial scope of the GDPR (Article 3), Version 2.1, November 12, 2019 at 7, *available at* https://edpb.europa.eu/sites/edpb/files/files/file1/edpb_guidelines_3_2018_territorial_scope_after _public_consultation_en_1.pdf.

[8] *Id.* at 5.

of individuals who are in the Union.  The EDPB therefore considers that any personal data processing in the context of the activities of an establishment of a controller or processor in the Union would fall under the scope of the GDPR, *regardless of the location or the nationality of the data subject whose personal data are being processed*."  *Id.* at 10 (emphasis supplied).  Thus, GDPR states that "[t]he protection afforded by this Regulation should apply to natural persons, whatever their nationality or place of residence, in relation to the processing of their personal data."  GDPR Recital 14.  Therefore, to the extent that the U.S. subsidiaries' documents are stored in the EU, the GDPR applies to the processing and transferring of such data.

## II.     The "Litigation Exemption" Does Not Create a Broad an Exception for Plaintiffs' 126 Document Requests.

Plaintiffs maintain that due to the "Litigation Exemption, the GDPR's restrictions on the transfer of personal data do not apply" here because the transfer is necessary for the "exercise or defence of legal claims."  Plaintiffs' Memorandum of Law in Support of their Motion to Compel, ECF No. 105, at 7 ("Plaintiffs' Mem.").  What Plaintiffs refer to as the Litigation Exemption is not a singular exemption from the entirety of GDPR.  Instead, Plaintiffs cite to two clauses within Article 49 and Article 18 of the GDPR.  *See id.* at 5 (citing GDPR Art. 49(1)(e) and Article 18(1)(2)).  Article 18 governs a data subject's right to restrict data processing.  GDPR Art. 18.  Article 49 governs transfers of data to a third country.  GDPR Art. 49.  In addition, five other Articles and two recitals in the GDPR reference an exemption relating to the "exercise or defence of legal claims."  *See* GDPR Recital 52, Recital 65, Article 9(2)(f), Article 17(3)(e), Article 18(1)(c), Article 18(2), Article 21(1), Article 49(1)(e).

These exemptions, while relevant, do not negate the GDPR's application to Defendants' discovery responses.  The EDPB has issued Guidelines concerning the "defence of legal claims" clause that appears in Article 49(1)(e).  EPDB 2/2018 Guidelines at 11.  These Guidelines clarify

that the liberal scope of "relevant" discovery contained in Rule 26 of the Federal Rules of Civil Procedure is far broader than the GDPR's scope of "necessary" data contained in Article 49(1)(e). With respect to Article 49(1)(e), the EDPB stated that "[a]s a transfer needs to be made in a procedure, a close link is necessary between a data transfer and a specific procedure regarding the situation in question." *Id.* It makes clear that transferring "all possibly relevant personal data in response to a request" would "not be in line with" any exemption for the defense of legal claims. *Id.* at 12. Rule 26 of the Federal Rules of Civil Procedure does not limit the scope of relevant documents to those that bear a "close link" to claims or defenses.

Plaintiffs do not address these Guidelines and instead rely on the decision *Knight Capital Partners Corp. v. Henkel Ag & Co., KGaA,* 290 F. Supp. 3d 681, 687–88 (E.D. Mich. 2017). That case, however, was decided in 2017, before this relevant guidance from the EPDB and before the GDPR became effective in May 2018 and, therefore, is not instructive.

In sum, the GDPR applies to Defendants' discovery responses. Although the manner in which the GDPR applies varies with respect to specific discovery requests, there is no basis for ordering, as Plaintiffs have requested, that the GDPR does not bind Defendants.

### III.   The *Société Nationale* case demonstrates that Plaintiffs' one-size-fits-all Motion to Compel responses to 126 requests must be denied.

The Supreme Court established the framework for weighing foreign law against United States civil discovery provisions in *Société Nationale.* In that case plaintiffs served discovery requests under the Federal Rules of Civil Procedure on two corporations owned by France. *Société Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522, 524 (1987). The corporations objected and argued that the proper method for obtaining discovery from them was through the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters (the "Hague Convention"). *Id.* at 526-27.

The Supreme Court declined to "hold as a blanket matter that comity requires" American litigants to invariably use the Hague Convention before utilizing the Federal Rules of Civil Procedure.  *Id.* at 541-42.  Instead, it determined that "the concept of international comity requires … a more particularized analysis of the respective interests of the foreign nation and the requesting nation … ."  *Id.* at 543-44.  The Court held that "American courts, in supervising pretrial proceedings, should exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position." *Id.* at 546.  Although courts "should always seek to minimize [discovery's] costs and inconvenience … [w]hen it is necessary to seek evidence abroad [] the district court must supervise pretrial proceedings particularly closely to prevent discovery abuses."  *Id.*

The Court identified the following factors as relevant to any comity analysis:

> (1) the importance to the ... litigation of the documents or other information requested;
>
> (2) the degree of specificity of the request;
>
> (3) whether the information originated in the United States;
>
> (4) the availability of alternative means of securing the information; and
>
> (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.

*Id.* at 544 n.28 (quoting Restatement of Foreign Relations Law of the United States (Revised) § 437(1)(c) (Tent. Draft No. 7, 1986) (approved May 14, 1986)).

The Court provided illustrative discovery requests connected with that particular case to draw a distinction between less and more intrusive discovery requests.  On the less intrusive side was "an interrogatory asking petitioners to identify the pilots who flew flight tests in the Rallye

11

before it was certified for flight by the Federal Aviation Administration, or a request to admit that petitioners authorized certain advertising in a particular magazine." *Id.* at 545.   The Court suggested that a district court "might well refuse to insist upon the use of Convention procedures before requiring responses to simple interrogatories or requests for admission." *Id.*   On the more intrusive side was "a request to produce all of the 'design specifications, line drawings and engineering plans and all engineering change orders and plans and all drawings concerning the leading edge slats for the Rallye type aircraft manufactured by the Defendants.'" *Id.* The Court emphasized that "[t]he exact line between reasonableness and unreasonableness in each case must be drawn by the trial court, based on its knowledge of the case and of the claims and interests of the parties and the governments whose statutes and policies they invoke." *Id.* at 546.

Although Plaintiffs' Motion concedes that *Société Nationale* applies here, Plaintiffs pay it no more than lip service.  They have asked this Court to declare the GDPR inapplicable to every single one of Plaintiffs' discovery requests, and do not show that the requests at issue are so important, narrowly-drawn, or otherwise worthy of disregarding important principles of international comity.

Rather, Plaintiffs appear to argue that an analysis that expressly analyzes the specificity and importance of a discovery request yields the same result for (1) a document request that seeks the production of a single, defined document and (2) another request that seeks—from companies that have been engaged in the mobile commerce business since at least 2009—"[a]ll documents which relate to [their] efforts, interest, plans, or evaluations related to the mobile commerce market and/or development of mPOS technology."

That is clearly not the case.  The latter request implicates the personal data of hundreds or thousands of data subjects and seeks documents with tenuous, if any, relevance to Plaintiffs'

claims.  If this Court ordered Defendants to comply with such a broad request notwithstanding the GDPR, it would disregard principles of international comity, subject Defendants to high risk of enforcement actions by European authorities, and do little to advance the merits of this litigation. The former request—for a single specified document relevant to Plaintiffs' claims—likely yields a different result under *Société Nationale*.

Consequently, the *Société Nationale* analysis shows that there is no basis to overrule Defendants' GDPR as to the entire First Set of Document Requests as requested by Plaintiffs, much less *prospectively* to every as-yet un-propounded discovery request.

### A.     Plaintiffs' First Set of Document Requests are overbroad.

The *Société Nationale* decision requires the Court to examine "the degree of specificity of the request … ."  Plaintiffs argue that their 126 document requests (the "Requests") were narrowly tailored, but that is far from reality.

As noted, all of the parties in this case are involved in the mobile point-of-sale, a/k/a "mPOS," business. Plaintiffs allege that Defendants misappropriated trade secrets related to a device in 2012, and tortiously interfered with specific relationships in 2014 or thereabouts.  Yet Plaintiffs' 126 document requests purport to require Defendants to produce, for example, "[a]ll documents which relate to your efforts, interest, plans, or evaluations related to the mobile commerce market and/or development of mPOS technology." Exhibit A to Plaintiffs' Mem., Request 44.  Plaintiffs also allege that they compete with Defendants in the mobile commerce space and that all of them sell mobile commerce devices. And here they have requested Defendants to produce "[a]ll documents which relate to any communication concerning your development of any product substantially similar to or otherwise competitive with one or more of ROAM's products." Exhibit A, Request 66.

Requests 44, 66, and a number of the Requests propounded by Plaintiffs not only

demonstrate that Plaintiffs' Requests are extraordinarily broad and intrusive, they also suggest that these foreign entities may be abusing the broad and liberal U.S. civil discovery provisions in order to discover valuable business intelligence from Defendants and impose enormous costs upon Defendants.  Plaintiffs' allegations of discrete, long-past misdeeds do not entitle them to:

- All documents which relate to [Defendants'] business plans, forecasts, and/or projections related to [Defendants'] mPOS technology. (Request 89)

- All documents which relate to any communication concerning [Defendants'] development of mPOS devices, including but not limited market data, economic analyses, schematics, designs, research and development, and testing. (Request 73)

- All documents which relate to any communication concerning licensing rights related to mPOS technology that [Defendants] have granted or have been granted, including but not limited to negotiations thereof. (Request 75)

- All documents which relate to any communication concerning royalties [Defendants] have paid or been paid related to mPOS technology. (Request 76)

- All documents which relate to income, expenses, assets, liabilities, and debts related to [Defendants'] mPOS technology operations. (Request 77)

- All documents which relate to the mPOS technology [Defendants] have sold, licensed, or leased, including but not limited to contracts with merchants, volume of sales/leases, pricing, and solicitation. (Request 78)

In sum, Plaintiffs' First Set of Requests for Production of Documents Upon Defendants does not seek specific, identifiable documents, and clearly fall within the sort of intrusive, over-broad discovery requests identified in *Société Nationale*.

14

B.    *The First Set of Document Requests seek information that is not important to the underlying litigation.*

In this case, the Court's analysis of the importance of the documents sought overlaps with the factor concerning the breadth of the discovery requests in question.  The most significant of Plaintiffs' Requests (i.e., those that are likely to result in the largest volume of responsive documents) fail to specify any particular document or documents to be produced.  Because Plaintiffs have failed to identify a document or set of documents that they claim are important to the underlying litigation, the Court cannot determine that the requested documents are important to the litigation.  Instead, Plaintiffs have sought the production of "[a]ll documents" that relate to extraordinarily broad concepts, such as "business plans," "development" of mPOS devices, and "efforts … related to the mobile commerce market and/or development of mPOS technology." *See* supra § A.  Those Requests embrace virtually *any* document that was generated by a mPOS company, and therefore seek a large volume of unimportant documents.

Further, according to Plaintiffs' summary of their allegations in this case, this action primarily concerns an alleged misappropriation of trade secrets that occurred in 2012 and an alleged tortious interference with contract that occurred beginning in 2012 and culminating in 2014.  *See* Plaintiffs' Mem. at 3.  Plaintiffs do not allege (and could not plausibly allege) that they remained ignorant of these alleged misdeeds until some more recent time.  Accordingly, it is likely that the applicable statutes of limitations bar some or all of Plaintiffs' claims.  Because Plaintiffs' claims are likely time-barred, documents that purport to relate to the merits of those claims are not important to the litigation.

Incidentally, if Plaintiffs have any claim at all that is not time-barred, it is a claim they chose not to assert for many years.  Accordingly, a delay of weeks or months—as might conceivably occur if the Court fashions discovery to accommodate principles of international

comity—would not prejudice Plaintiffs.

> C.    *Many of the documents requested by the First Set of Document Requests are not in and did not originate in the United States.*

The breadth of the documents requested in the aggregate by Plaintiffs' First Set of Requests for Production of Documents Upon Defendants is such that Defendants cannot readily identify responsive documents and their origin.   Because Defendants cannot identify the group of documents that would be responsive, they cannot state whether the information originated in the United States.   Even so, because France-based Ingenico Group SA is the parent company to Ingenico Corp. and Ingenico Inc., it is certain that responsive data originated in and is stored in France, and likely that much of the responsive data originated in and is stored in France.

> D.    *Plaintiffs have alternative means of obtaining any relevant information sought by Plaintiffs in the document requests.*

The *Société Nationale* case observed that interrogatories and requests for admission offer a less intrusive means of obtaining relevant discovery.  *Société Nationale*, 482 U.S. at 546.  Both of those discovery mechanisms are as yet unused by Plaintiffs.   Further, Plaintiffs can also propound more specific document requests, or if any of their existing Requests identify specific documents, they can seek to compel compliance with those Requests only.

> E.    *United States interests are not strongly implicated here.*

The *Société Nationale* Court recognized the courts' "overriding interest in the 'just, speedy, and inexpensive determination' of litigation."  *Id.* at 543 (quoting Fed. R. Civ. P. 1).   But that interest is less pressing here because American plaintiffs are not involved, and the interest can also be met by phasing discovery in the manner proposed by Defendants.

First, Plaintiffs suggest that the United States' interest in overriding foreign law is "substantial" when it comes to "vindicating the rights of American plaintiffs."  Plaintiffs' Mem. at 13 (quoting *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1475 (9th Cir. 1992)).

16

Here there are *no* American plaintiffs: AnywhereCommerce Inc. is a Canadian corporation and BBPOS Limited is a Hong Kong entity.  Neither is registered to do business in Massachusetts. Plaintiffs are suing a French company and its U.S. subsidiaries.  The national interest in affording plaintiffs the default provisions of the Federal Rules of Civil Procedure is less compelling when the plaintiffs are foreign entities and are suing another foreign entity.

Second, the overriding interest in securing the just, speedy, and inexpensive resolution of litigation does not conflict with respect for the principles of international comity.

F.    *Plaintiffs' proposed order is contrary to law.*

In sum, Plaintiffs have asked the Court to order that "[t]he parties are not bound by the restrictions of the [GDPR] or its French analog as to the production of documents in this case." Plaintiffs' Proposed Order, ECF No. 104-2 at ¶ 1.  But application of *Société Nationale* here shows that Plaintiffs' one-size-fits-all request for relief for all 126 of its Requests (as well as any prospective discovery requests) is unfounded, and that the conclusion that GDPR does not bind Defendants is incorrect.  While the Court has the power to order one or more of the parties to produce documents notwithstanding the existence of GDPR, there is simply no basis to hold that the parties are "not bound by" GDPR.

Second, Plaintiffs' Proposed Order states that "[t]he parties shall not redact or withhold information on the basis of any protection allegedly afforded by" GDPR.  ECF No. 104-2 at ¶ 2. This blanket request for relief is unjustified in light of the breadth and intrusiveness of Plaintiffs' 126 Requests.  The Court should permit Defendants to redact documents pursuant to GDPR, and only compel the removal of redactions for highly relevant documents (although Defendants anticipate that they can reach an agreement on removing redactions for such documents).

Third, Plaintiffs' Proposed Order asks the Court to rule that "[c]onsent, the lack of consent, or objection by any third party shall not affect the parties' obligation to produce documents and

information pursuant to this Order." ECF No. 104-2 at ¶ 3. This paragraph of the Proposed Order is not even limited to GDPR issues, and simply asks the Court to rule as a blanket matter that "consent" and any "third party" objection is simply irrelevant. This request for relief is unfounded.

## IV.     The Court should adopt one of Defendants' balanced proposals.

One of the central principles of GDPR is that of "data minimization" – meaning that companies must limit personal data collection, storage and usage to data that is adequate, relevant and limited to what is necessary in relation to the purposes for which they are proposed. *See* GDPR, Art. 5(1)(c). Relatedly, *Société Nationale* requires the Court to supervise discovery to minimize needless derogation of principles of international comity as well as pay heed to its mandate to secure the "just, speedy, and inexpensive determination" of the merits of this case. *See Société Nationale*, 482 U.S. at 543 (citing Fed. R. Civ. P. 1). The Court can satisfy these demands through either of the Defendants' proposals.

### A.     Proposal 1:

**i.       Permit Defendants an opportunity to seek consent from its identified custodians**. Pursuant to the ESI Protocol, the Parties exchanged their proposed list of custodians on April 8, 2020. The Parties are scheduled to confer regarding that list on April 14, 2020. Once the Parties have agreed on a list of custodians, Defendants request an opportunity to seek consent from its proposed custodians. The vast majority of Defendants' proposed custodians are former employees, therefore, Defendants will need a reasonable amount of time to attempt to obtain that consent. If, however, Defendants are successful in obtaining consent, that consent will aid it in narrowing the universe of documents for which there are GDPR concerns.

**ii.      Order that the Parties confer and identify the documents that are "necessary."** Because GDPR exempts document that are demonstrably "necessary" for the exercise or defense of legal claims, the Court should order the Parties to confer and identify those document requests

(or portions thereof) that seek document that are not just relevant, but that are also necessary for Plaintiffs' prosecution of its claims.

**iii.**       **Prioritize discovery that does not implicate GDPR.**   Next, Defendants seek permission from the Court to focus their discovery efforts initially on producing documents from custodians who have provided their consent, documents that the Parties agree are "necessary" and those discrete documents for which GDPR's data privacy protections are not implicated.

**iv.**       **Permit Defendants to redact personal data protected by the GDPR from that universe of documents, subject to a meet-and-confer concerning the necessity of the redactions.**  Defendants recognize that even where custodians have provided their consent, it is conceivable that documents that were at one time held by that custodian may implicate the privacy rights of others.  In that instance, Defendants seek permission to redact such personal data, subject to a meet-and-confer with Plaintiffs concerning the necessity of the redactions.

**v.**       **Order that Plaintiffs reassess the discovery that remains important after the prioritized discovery is complete.**  In keeping with the GDPR's data minimization goals, the Court should order Plaintiffs to reassess the discovery that remains important to determine whether it can be narrowed in any way.  The Court should further direct that the Parties report back to the Court with a proposal for the treatment of any discovery that remains.

   *B.*       *Proposal 2:*

Alternatively, Defendants propose that the Court phase discovery to narrow the issues before the Court.  *See Société Nationale*, 482 U.S. at 543 (citing Fed. R. Civ. P. 1).  To that end, Defendants propose the following:

**i.**       **Order that discovery on Plaintiffs' claims is limited to the issue of whether the statute of limitations bars some or all of Plaintiffs' claims.**  Plaintiffs have alleged nine counts against Defendants.  *See* Plaintiffs' First Amended Complaint, ECF No. 67, at 30-40.  The nine

counts include tortious interference with economic relationships, violation of the Georgia and United States Trade Secrets Acts, breach of contract, violation of the Lanham Act, unjust enrichment, and violation of Georgia Deceptive Trade/Fair Business Practices Acts. Plaintiffs' Complaint, and Plaintiffs' recent summary of their own claims, Plaintiffs' Mem. at 3, demonstrate that these claims arise from two alleged misdeeds: first, Ingenico allegedly misappropriated BBPOS' trade secrets in 2012. *See* Plaintiffs' First Amended Complaint, ECF No. 67, at ¶ 48. Second, Ingenico allegedly tortiously interfered with contractual relations in 2014 by unfairly "bundling and discounting products and services" beginning in 2012 and completing in 2014. *See id.* at ¶ 126; *see also* Plaintiffs' Mem. at 3 ("Ingenico made its pivotal move in 2014 … ."). There are no allegations that Plaintiffs did not discover or could not have discovered these misdeeds in the exercise of reasonable due diligence.

Limited discovery will likely show that the applicable statutes of limitation bar most if not all of Plaintiffs' claims, which they opted not to bring until December 2018. As such, ordering phased discovery will avoid unnecessary conflict with international law and promote the speedy and inexpensive resolution of this matter.

**ii.** **Permit Defendants to redact personal data protected by the GDPR from that universe of documents, subject to a meet-and-confer concerning the necessity of the redactions.** Defendants recognize that even if discovery is limited to information that bears on the statute of limitations, those documents may implicate the privacy rights of others. In that instance, Defendants seek permission to redact personal data, subject to a meet-and-confer with Plaintiffs concerning the necessity of the redactions.

## **<u>CONCLUSION</u>**

For the foregoing reasons, the Court should deny Plaintiffs' Motion to Compel.

April 13, 2020

INGENICO INC., INGENICO CORP., and
INGENICO GROUP S.A.

By their attorneys,


/s/ John A. Tarantino
JOHN A. TARANTINO (BBO #492230)
PATRICIA K. ROCHA (BBO #542348)
NICOLE J. BENJAMIN (BBO #666959)
WILLIAM K.WRAY, JR. (#689037)
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
Tel: (401) 274-7200
Fax: (401) 351-4607
jtarantino@apslaw.com
procha@apslaw.com
nbenjamin@apslaw.com
wwray@apslaw.com

21