# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ANYWHERECOMMERCE, INC. and BBPOS LIMITED,<br><br>      **Plaintiffs,**<br><br>                    **v.**<br><br>INGENICO INC., INGENICO CORP., and INGENICO GROUP SA,<br><br>      **Defendants.** | **Civil Docket No: 1:19-cv-11457-IT** |

**REPLY IN FURTHER SUPPORT OF**
**PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

Take out the caption, and Defendants' Opposition to Plaintiffs' Motion to Compel (the "Opposition") would appear to have been filed in a French court.  Remarkably, but unsurprisingly, Defendants do not cite to a single U.S. court opinion in support of any of their arguments.[1]  Rather, they rely solely upon guidance documents from Europe.  But this case is before a U.S. Court, not a French one, and U.S. courts are bound by the Federal Rules of Civil procedure and precedence of other U.S. court opinions, not European guidance documents (which presumably are not binding anywhere) – even when it comes to interpreting and applying foreign law.

That is why Defendants have no meaningful response to Plaintiffs' discussion of the GDPR Litigation Exemption and, more specifically, to the opinion in *Knight Capital Partners Corp. v. Henkel Ag & Co., KGaA*, 290 F. Supp. 3d 681, 689 (E.D. Mich. 2017), which rejected application of materially identical foreign privacy law restrictions based on a materially identical litigation exception.  (*See* Memorandum of Law in Support of Plaintiffs' Motion to Compel Production of

---

[1] Plaintiffs observed during the March 30, 2020 Court conference that Defendants had not identified any U.S. court opinions supporting their position in any of their communications with Plaintiffs.  Now having filed their Opposition, Defendants still have not identified a single U.S. court opinion in support of their position.

Documents (the "Memorandum"), at 7-9.  Given those similarities, it is immaterial that the court's opinion was issued a year before the GDPR took effect (though actually a year after the GDPR was enacted), as Defendants note in their Opposition.  It also is immaterial that the court opinion predates the GDPR foreign guidance documents upon which Defendants solely rely because the court expressly rejected "resorting solely to interpretations of [foreign] law by [foreign] authorities," meaning it would not have considered Defendants' guidance documents anyway.  *Id.* at 689.[2]  The Court should do the same here.

Defendants also provide no meaningful response to Plaintiffs' alternative argument that the five factors from the United States Supreme Court's decision in *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522 (1987) weigh against application of the GDPR:

1. *Specificity* – Defendants contend that Request for Production of Documents Nos. 44, 66, 73, 75, 76, 77, 78, and 89 are overbroad inasmuch as they do not "seek specific, identifiable documents." (Opposition, at 14).  That is incorrect.  Each of those Requests target specific categories of documents necessary for specific purposes.  Moreover, those are the only Requests that Defendants specifically identify as being allegedly overbroad, meaning that they have failed to address this factor as to the vast majority of Plaintiffs' Requests.

2. *Importance* – Defendants argue in broad strokes that Plaintiffs' Requests are not important because Plaintiffs' claims are barred by the statute of limitations. (Opposition, at 15).  If Defendants want to assert a statute of limitations defense, they should move for summary judgment.  They cannot limit discovery based on a legal defense that has yet to be credited by the Court, let alone briefed.

3. *Location of the Documents* – Defendants admit that "they cannot state whether the information originated in the United States."  (Opposition, at 16).

4. *Alternative means* – Defendants argue that Plaintiffs could seek discovery through interrogatories and requests for admission.  But those discovery tools are not "substantially equivalent" to requests for production of documents. (Memorandum, at 12 (quoting *Finjan, Inc. v. Zscaler, Inc.*, No. 17CV06946JSTKAW, 2019 WL 618554, at *2 (N.D. Cal. Feb 14, 2019); *Richmark Crop. V. Timber Falling Consultants*, 959 F.2d 1468, 1475 (9th Cir. 1992)).  Defendants also argue that Plaintiffs can seek to

---

[2] Defendants make no meaningful response to any of the other U.S. court opinions cited in Plaintiffs' Memorandum.

compel compliance with existing requests that identify specific documents. But Plaintiffs' Motion does exactly that.

5. *Competing Interests* – Defendants argue that the United States lacks an interest "in the just, speedy, and inexpensive determination of litigation in [its] courts" when the plaintiffs are not American or, stated differently, that non-American plaintiffs are not entitled "[t]he broad right of discovery in American courts . . . that serves the integrity and fairness of the judicial process by promoting the search for the truth." (Opposition, at 16-17; Memorandum, at 13 (quoting *Societe Nationale*, 482 U.S. at 543 and *St. Jude Med. S.C., Inc. v. Janssen-Counotte*, 104 F. Supp. 3d 1150, 1162 (D. Or. 2015))). That is nonsense. The Federal Rules of Civil Procedure apply to all litigation in federal courts, regardless of the plaintiffs' origins, and access to the American justice system does not depend on what country you come from.[3]

Without any legal support for their arguments and without any meaningful responses to Plaintiffs' arguments, Defendants are faced with only one option: try to flip the burden of proof onto Plaintiffs. They state that "Plaintiffs suggest that the request-by-request analysis necessitated by *Societe Nationale* somehow dictates the same result for every single one of its 126 document requests" and that Plaintiffs "do not show that the requests at issue are so important, narrowly-drawn, or otherwise worthy of disregarding important principles of international comity." (Opposition, at 2, 12). In actuality, it is *Defendants'* burden to do a request-by-request analysis to show that the GDPR restrictions apply as to each of the 126 document requests – which they have failed to do. It is not accurate that Plaintiffs have requested that the Court "overrule Defendants' GDPR" (Opposition, at 13); rather, by default, the Federal Rules of Civil Procedure apply to discovery in U.S. district courts and it is *Defendants*, as "the party seeking to rely on [foreign] law, [that have the] burden to demonstrate that these laws bar production of the documents at issue." (Memorandum, at 6 (quoting *Knight Capital*, 290 F. Supp. 3d at 689 and citing other opinions)). In that way, it is Defendants' burden to identify the discovery requests that should be subject to

---

[3] Defendants also suggest that they risk being penalized by French authorities, referring to a website that purportedly tracks GDPR-related penalties. (Opposition, at 5). However, Defendants fail to mention that, according to that website, the French authorities have issued only five penalties relating to the GDPR (none in 2020) and that none of those had anything to do with disclosure pursuant to civil litigation or otherwise remotely resembled the circumstances at issue here.

the restrictions of foreign law and it is also Defendants' burden to show why those foreign law restriction should apply as to those requests.  Defendants have done neither.

> Instead, Defendants have done everything they can to avoid producing anything in this case.  As Plaintiffs expressed during the March 30, 2020 Court conference, it has been over seven months since Defendants served their initial disclosures and nearly four months since Plaintiffs served their discovery requests.  And still Defendants have yet to produce a single document.

Plaintiffs raised their concern that the GDPR's data privacy restrictions would unnecessarily mire discovery in a never ending futile exercise – which has now been confirmed by Defendants' Opposition.  Defendants propose a five-step process involving attempts to obtain consent from former employees, a meet and confer to identify "necessary" documents, a prioritization of documents that are "necessary" or whose disclosure is consented to or does not implicate the GDPR, another meet and confer about documents that may contain personal data of individuals other than the former employees (Defendants speculate that it could involve thousands of people (Opposition, at 12-13)), and then a reassessment of the need for further discovery. (Opposition, at 18-19).[4]  Stated differently, Defendants propose months and months of negotiating, legal wrangling, and discovery disputes, all just so that Plaintiffs may obtain practically none of the documents they have requested and to which they are entitled.

Defendants present an alternative proposal, one even more brazen than the first, that the Court limit discovery to the issue of whether the statute of limitations bars some or all of Plaintiffs' claims.  (Opposition, at 19-20).  This has absolutely nothing to do with the GDPR, data privacy, or any other matters at issue in this discovery dispute.  Rather, Defendants casually seek to slip in

---

[4] Defendants had referred to a "phased" approach during the March 30, 2020 conference, which the Court declined to adopt.  Rather, the Court identified two "phases" – the production of non-ESI documents, which should commence immediately (which Defendants have yet to do), and the production of ESI documents, which should commence following the resolution of this dispute.

an extraordinary limitation on Plaintiffs' right to discovery without any warning, chance to meet and confer, or opportunity for briefing.  Defendants could have (and should have) proposed this as part of the Rule 16 conference in August 2019 – they did not.  Defendants could have (and should have) objected on this ground in response to Plaintiffs' December 2019 discovery requests – they did not.  Defendants could have (and should have) brought this up during the March 30, 2020 Court conference regarding the instant dispute – they did not do that either.  Defendants' apparent afterthought amounts to an ambush.

## CONCLUSION

For the foregoing reasons, and those discussed in Plaintiffs' Motion to Compel Production of Documents and the Memorandum of Law in support thereof, the Court should grant Plaintiffs' Motion as set forth in the proposed order attached to their Motion.

Respectfully submitted this 15th day of April, 2020,

*/s/ Daniel Carmeli*
MELISSA A. BOZEMAN
OLIVER D. GRIFFIN
PETER N. KESSLER
Kutak Rock LLP
1760 Market Street, Suite 1100
Philadelphia, PA 19103
Tel: (215) 288-4384
Fax: (215) 981-0719
Melissa.bozeman@kutakrock.com
Oliver.griffin@kutakrock.com
Peter.kessler@kutakrock.com

DANIEL CARMELI
Kutak Rock LLP
1801 California Street, Suite 3000
Denver, Colorado 80202
Tel: (303) 297-2400
Fax: (303) 292-7799
Daniel.carmeli@kutakrock.com

JONATHON D. FRIEDMANN
ROBERT P. RUDOLPH
Rudolph Friedmann LLP
92 State Street
Boston, MA 02109
Tel: (617) 723-7700
Fax: (617) 227-0313
jfriedmann@rflawyers.com
rrudolph@rflawyers.com

RICARDO G. CEDILLO
Davis, Cedillo & Mendoza, Inc.
755 E. Mulberry Ave., Ste 500
San Antonio, Texas 78212
Tel: (210) 822-6666
Fax: (210) 822-1151
rcedillo@lawdcm.com

*Counsel for Plaintiffs AnywhereCommerce, Inc. and BBPOS Limited*

**CERTIFICATE OF SERVICE**

I certify that on this 15th day of April, 2020, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Daniel Carmeli*