```
 1                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MASSACHUSETTS
 2

 3

 4     ANYWHERE COMMERCE, INC., et al,    )
                           Plaintiffs,    )
 5                                        )
                                          )
 6     vs.                                )  CA No. 19-11457-IT
                                          )
 7                                        )
       INGENICO, INC., et al              )
 8                           Defendants.  )

 9

10     BEFORE:  THE HONORABLE INDIRA TALWANI

11

12                         TELEPHONE CONFERENCE

13

14

15            John Joseph Moakley United States Courthouse
                            Courtroom No. 9
16                         One Courthouse Way
                            Boston, MA 02210
17                      Tuesday, April 28, 2020
                              11:03 a.m.
18

19

20

                        Cheryl Dahlstrom, RMR, CRR
21                        Official Court Reporter
             John Joseph Moakley United States Courthouse
22                 One Courthouse Way, Room 3510
                           Boston, MA 02210
23            Mechanical Steno - Transcript by Computer

24

25
```

```
 1   APPEARANCES:

 2   ON BEHALF OF THE PLAINTIFFS:

 3        KUTAK ROCK LLP
          By:  Melissa Ann Bozeman, Esq.
 4             Daniel Carmeli, Esq.
          1760 Market Street
 5        Philadelphia, Pennsylvania 19103

 6

     ON BEHALF OF THE DEFENDANTS:
 7
          ADLER POLLOCK & SHEEHAN P.C.
 8        By:  Nicole J. Benjamin, Esq.
               William K. Wray, Jr., Esq.
 9        One Citizens Plaza
          Providence, Rhode Island 02903
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                    P R O C E E D I N G S

2          THE COURT:  Good morning.

3          THE CLERK:  Good morning, Judge.  This is Gail

4    Marchione.  I'm going to call the case for the record.  United

5    States District Court is now in session.  The Honorable Judge

6    Indira Talwani presiding.  This is Case No. 19-cv-11457,

7    AnywhereCommerce, Inc., et al v. Ingenico, Inc., et al.  Will

8    counsel please state their names for the record.  And please

9    remember to state your name every time you speak.

10         MS. BENJAMIN:  Good morning, your Honor.  Nicole

11   Benjamin on behalf of the defendant.

12         THE COURT:  Good morning.

13         MR. WRAY:  Good morning, your Honor.  William Wray on

14   behalf of the defendant as well.

15         THE COURT:  Good morning.

16         MS. BOZEMAN:  Good morning, your Honor.  Melissa

17   Bozeman of Kutak Rock on behalf of the plaintiff.

18         THE COURT:  Good morning.

19         MR. CARMELI:  Good morning, your Honor.  This is

20   Daniel Carmeli from Kutak Rock on behalf of plaintiffs as well.

21         THE COURT:  Good morning.

22         So we're here for a telephone conference that I

23   believe plaintiffs' counsel requested.  And I'm going to ask,

24   as you speak each time to please state your name and party

25   you're representing so that we can keep the record straight

1    here.

2            So I'll start with the -- with plaintiffs' counsel.

3            MS. BENJAMIN:  Your Honor, this is Nicole Benjamin,

4    actually, on behalf of defendants' counsel.  It was defendants

5    who had requested the conference.

6            THE COURT:  Okay.  Then I will let you start.

7            MS. BENJAMIN:  Very well.  Thank you, your Honor.

8            The matter that we brought before the Court concerns

9    the number of sets of document requests that may be served

10   under the court's local rules.  In this case, there are two

11   plaintiffs and three defendants; and of those three defendants,

12   one is a counterclaimant.  And as a result of that

13   relationship, the plaintiffs and the defendants have a

14   different understanding of what's permitted by the court's

15   rules.  And in the event that the Court does agree with the

16   plaintiffs' understanding, the defendants would respectfully

17   request permission to serve document requests that pertain to

18   counterclaims that are being asserted by the counterclaimant.

19           So to put this in perspective, initially, the

20   defendant, Ingenico Corporation, served two sets of requests

21   for production:  one on BBPOS, the plaintiff, and one on

22   AnywhereCommerce, also a plaintiff, seeking discovery on the

23   plaintiffs' claims.  Thereafter, Ingenico --

24           THE COURT:  Were these two different sets of requests

25   for documents, or were they the same ones but addressed to two

1    different parties?

2         MS. BENJAMIN:  They were two different sets served on

3    the same day, by the same defendant, against two different

4    plaintiffs.

5         THE COURT:  Okay.

6         MS. BENJAMIN:  Okay.  So, thereafter, a different

7    defendant, Defendant Ingenico, Inc., which is also the

8    counterclaimant, served document requests on BBPOS, again, a

9    plaintiff, and those document requests concern principally

10   Ingenico, Inc.'s, counterclaims, so different than the document

11   requests that were served by defendant, Ingenico Corp., and

12   directed at the counterclaim.

13        Thereafter, Ingenico, Inc., also served a set of

14   document requests on Plaintiff AnywhereCommerce.

15        THE COURT:  Hold on one minute.  Let me try to make

16   sure I've got this straight.  The first ones were sent -- were

17   served by who?

18        MS. BENJAMIN:  Ingenico Corp.

19        THE COURT:  Okay.  The second one?

20        MS. BENJAMIN:  To BBPOS.

21        THE COURT:  The first two were served by Ingenico

22   Corp.?

23        MS. BENJAMIN:  Correct.

24        THE COURT:  After that, what happened?

25        MS. BENJAMIN:  Ingenico, Inc., served a set of

1    document requests on BBPOS concerning Ingenico, Inc.'s,

2    counterclaims.

3           THE COURT:  Okay.

4           MS. BENJAMIN:  And then Ingenico, Inc., served a

5    second set of document requests, this time on AnywhereCommerce.

6    And the only difference between the set served on

7    AnywhereCommerce and the set that had been served on BBPOS is

8    that there were a number of requests that simply didn't pertain

9    to AnywhereCommerce.  So there are counterclaims both against

10   BBPOS and AnywhereCommerce.  So there were 14 requests that

11   were actually deleted and one request that was added but,

12   again, all related to counterclaims.

13          THE COURT:  Okay.  And is Ingenico, Inc., also a

14   defendant?  Yes.

15          MS. BENJAMIN:  That's correct, your Honor, yes.

16          THE COURT:  Okay.

17          MS. BENJAMIN:  So the dispute that exists relates to

18   those last two sets of document requests.  And the position

19   that the plaintiff has taken is that those last two sets are

20   improper and are in excess of what's permitted under the

21   court's local rule.

22          THE COURT:  When were those served?

23          MS. BENJAMIN:  On February 27th and March 16th.

24          THE COURT:  Okay.  February 27th was the original set,

25   and March 16th are the third and fourth ones?

1          MS. BENJAMIN:  No.  Let me back up and say the first

2     two sets were February 12th.

3          THE COURT:  Okay.

4          MS. BENJAMIN:  The third set, which was to BBPOS, was

5     February 27th; and the fourth set was March 16th to

6     AnywhereCommerce.  And that was that narrow group of document

7     requests.

8          THE COURT:  Okay.  So as to that March 16 one, why is

9     that even timely?  Did we extend that deadline?

10          MS. BENJAMIN:  So we've received -- what we've

11     received in response has been a letter that is -- indicated --

12     so it's not an actual pleading or response in the form of a

13     pleading.  It's a letter indicating that the plaintiff has

14     taken the position that neither of those sets are proper and

15     will not be responding as a result.

16          THE COURT:  Okay.  But before I get to that question,

17     I was just asking about the timeliness of service.  I'm looking

18     at the joint statement which I -- looks like I didn't adopt the

19     interim fact discovery deadlines, did I?  Okay.  So --

20          MS. BENJAMIN:  They were all served within the

21     discovery period if that's your question, your Honor.

22          THE COURT:  Yup.  Okay.

23          So -- and what is -- your argument as to why the local

24     rule doesn't apply is what?

25          MS. BENJAMIN:  Right.  So we read the local rule to

1    talk about limitations on each side.  I think the question is,

2    is a counterclaimant part of a side as a defendant and a

3    plaintiff?  I certainly understand that a plaintiff has the

4    opportunity to serve a certain number and a defendant has a

5    certain number.  But here, where you've got one defendant who

6    is a counterclaimant, does that fall within a side?

7        And our view was that the counterclaimant had, you

8    know, very different requests to serve, and it wouldn't have

9    made sense for the other defendants to be serving document

10   requests on behalf of a counterclaimant.  So we structured it

11   this way believing that that was proper.

12       THE COURT:  So let me ask you this question:  If --

13   let's assume you didn't have Ingenico Corp. in the picture and

14   it was just Ingenico, Inc.  Are you saying those requests that

15   were served by Ingenico Corp. are not ones that Ingenico, Inc.,

16   was interested in?

17       MS. BENJAMIN:  So Ingenico, Inc., is, as a defendant,

18   interested in the document requests that Ingenico Corp. served,

19   yes.

20       THE COURT:  So what you're really saying is that a

21   person who is both a defendant and a counterclaimant should

22   have twice the -- it really has nothing to do with one party

23   being only defendants and another party being a defendant and a

24   counterclaimant.  What you're saying is a defendant and a

25   counterclaimant should get double the number of requests.

1          MS. BENJAMIN:  Or at least in the posture that we are

2     in here, you know, with this disagreement as to which is

3     proper.  Here Ingenico, Inc., as a counterclaimant, our

4     position is, should at a minimum have an opportunity to serve

5     those document requests, whether it is, you know, procedurally

6     proper under the local rules to have done it the way we have

7     proposed doing it here or whether we request permission from

8     your Honor to exceed the limitation of the local rule.  We want

9     to make sure that Ingenico, Inc., as a counterclaimant, has an

10    opportunity to seek discovery on its counterclaims.

11         THE COURT:  Well, so, is there a reason that the

12    original request for documents couldn't have included both the

13    ones on behalf of the defendants and the ones on behalf of the

14    counterclaimant?

15         MS. BENJAMIN:  I suppose they could have in hindsight,

16    your Honor.  The only oddity about that is that they were

17    served by Ingenico Corp.  So I suppose they could have been

18    served by both.

19         THE COURT:  Right.  I mean, the purpose of these

20    limitations -- I mean, these aren't limitations on the number

21    of requests.  These are limitations on the number of sets.  And

22    I think the reason for those limitations are that each side

23    shouldn't have to go through all of their documents more than

24    two times.

25         MS. BENJAMIN:  Right.

1          THE COURT:  And I don't really see any reason for why

2     they would go through three or four times.

3          MS. BENJAMIN:  I understand that as a rationale, too,

4     your Honor, and I think the position that we are in here, there

5     would be no prejudice of that nature because, to also put this

6     in context, what the parties have been doing for some time now

7     is working through a protocol which your Honor has recently

8     adopted related to the collection of and production of

9     electronically stored and hard-copy documents.  We worked out a

10    stipulated protective order.  We worked out an ESI protocol,

11    all of which have been entered by the Court.

12         Since that last ESI protocol was entered by the Court,

13    there is within that protocol a process for the parties to

14    confer on search terms and custodians, and we have been working

15    through that process up until yesterday.  We've continued our

16    discussion on that.  So neither side has engaged in actual

17    searches or productions at this point.  We've continued to work

18    through what those Boolean searches would look like to retrieve

19    the appropriate documents that will be responsive to the

20    request.

21         So that's the process that we've been working through,

22    so I don't believe there would be any prejudice at this point

23    to there being these two additional requests, and certainly it

24    would be in line with the Court's thinking that the number of

25    documents -- sets of document requests are limited so that the

1   parties are only searching once.

2          THE COURT:  So for plaintiffs' counsel, can you

3   respond to the point that -- other than the fact that you might

4   have to turn over documents you didn't want to, is there any

5   prejudice here how you're positioned differently than if these

6   had all been served on the same day in one big document?

7          MR. CARMELI:  Yes, your Honor.  Your Honor, this is

8   really an issue --

9          THE COURT:  Wait.  Please identify yourself for the

10  record.

11         MR. CARMELI:  Sorry.  This is Daniel Carmeli from

12  Kutak Rock on behalf of plaintiffs.

13         Your Honor, this is really an issue of timeliness and

14  good faith.  We came before you in August of 2019 for a

15  scheduling conference.  That's really the time when the parties

16  should be providing to the Court their ideas for how discovery

17  is going to run.  In particular --

18         THE COURT:  Let me -- I tried to focus your question

19  so let me try again.

20         MR. CARMELI:  Sure.

21         THE COURT:  Let's assume they've made a mistake here.

22  Other than wanting to get the advantage of the mistake, in

23  terms of prejudice, what would be different if these were all

24  served on the same day versus not?  If you told me you've

25  already run all your computer searches, we would be in one

1    situation, but counsel just told me you're at the front end of

2    this, not at the back end of this.

3         So tell me what prejudice if I -- recognizing they

4    have made a mistake and I shouldn't do it, but what's the

5    prejudice other than you'd rather not turn over the documents?

6         MR. CARMELI:  The prejudice, I think, as you're

7    framing it, we would have responded to these requests -- if

8    they were all packaged as one set of requests, it would have

9    all been legitimate and something we would have -- you know,

10   request that we would have responded to to the extent they were

11   not objectionable.

12        Since the first two sets of requests were served, like

13   defendants' counsel pointed out, we have gone through a long

14   negotiation of search terms and protocol and so forth.  A lot

15   of that negotiation was done prior to the second two sets.

16   We're still completing it now.  So there is -- I would say that

17   there isn't much prejudice aside from the timing and going --

18   in a kind of going-forward basis, to make sure that discovery

19   is limited as set forth in the rule.

20        MS. BOZEMAN:  This is Melissa Bozeman on behalf of the

21   plaintiffs as well.  Your Honor, the way that the ESI protocol

22   is structured is such that the parties are very close to having

23   finalized now, are going to bring back a very wide -- a very

24   broad range and universe of documents, which then both parties

25   have discussed that we'll undergo the process of the narrowing

1     them down to be responsive to the document requests.

2          So the prejudice that we would be facing at this point

3     is that it's not clear necessarily that all of the -- that that

4     universe would encompass all of these -- the last minute -- the

5     late two requests.  And to the extent that we are then going to

6     have to undertake responding to the document requests, it's

7     just beyond -- it's just untimely at this point because we've

8     already done that process with the first two sets and were

9     under the assumption that that would be the extent of what we

10    would have to be responding to.

11         THE COURT:  When did you flag this issue?  This is a

12    question to plaintiffs' counsel.  When did you alert

13    defendants' counsel that you realized that they had served more

14    requests for production of documents than were covered by the

15    local rule?

16         MR. CARMELI:  This is Daniel Carmeli again for

17    plaintiffs.  We discussed this on a meet and confer shortly

18    before I sent the letter dated March 27, 2020.  So it was

19    shortly before that.

20         THE COURT:  Okay.  So you had them for about a month.

21    You got the first set on February 12th.  How much of the

22    negotiating of the protocol happened before February 27th, and

23    how much of it happened between February 27th and March 27th?

24         MS. BENJAMIN:  Your Honor, this is Nicole Benjamin.  I

25    can address that, and I think I can also address one other

1    piece that I think will help here.  None of the search terms

2    that we've negotiated will need to change as a result of the

3    second -- I'm sorry, the third and the fourth request for

4    production of documents.  I think that all of the search terms

5    that we have crafted are broad enough.

6              THE COURT:  Let me just stop you right there.  So are

7    you saying that, if I were to go forward and allow your

8    additional requests for production to be operative here, you

9    would not be asking for anything different than on the protocol

10   you already have?

11             MS. BENJAMIN:  That's correct, your Honor.

12             THE COURT:  Okay.

13             MS. BENJAMIN:  And the first -- your Honor, just to

14   add one additional point, the first set of search terms that

15   the parties exchanged were exchanged on April 8th so well after

16   both of these additional sets of document requests were served.

17             MS. BOZEMAN:  This is Melissa Bozeman on behalf of the

18   plaintiff.  I'm not sure that that's exactly correct because

19   there are not search terms that are necessarily directed to

20   patent infringement, which is the counterclaim that I think --

21   in one of the more operative counterclaims.

22             And to the extent that our negotiated search terms are

23   sufficient for conducting our gathering of responses to the

24   third and fourth set of documents, that's a different story.

25   But I'm not sure that defendants' counsel is correct, that this

1    universe of documents that we fully -- almost fully negotiated

2    would pull back all of the responsive documents that they're

3    requesting in their third and fourth requests.

4         THE COURT:  Okay.  But if they're willing to limit it

5    to what's getting pulled out of this search, they're the ones

6    who might lose out on that, but they're accepting that.

7         MR. CARMELI:  Your Honor, this is Daniel Carmeli.

8    Just to add to Ms. Bozeman's comments, the understanding that

9    the parties have had is that whereas the parties will run the

10   agreed-upon searches.  To the extent that there are documents

11   that may not fall within those searches and that maybe fit

12   within a discrete category, the parties understand that they

13   have an additional obligation to locate those documents and

14   produce them.

15        So in that regard, the search terms are really not the

16   be all, end all, of this discovery process.  And so even if

17   defendants are agreeing not to adjust the search terms at this

18   point, plaintiffs would still have an obligation to produce

19   documents that are responsive to those additional sets of

20   requests if you permit them to be served.

21        THE COURT:  Well, I'm curious about your protocol

22   then.  So what's the point of the protocol if you still have to

23   produce everything, even if it's not turning up through the

24   protocol, if you know of the documents?  But you wouldn't have

25   to do a search beyond the protocol, do you?

1          MR. CARMELI:  Your Honor, again, this is Daniel

2     Carmeli for plaintiffs.  The issue is really as to certain

3     types of documents that are hard to find with search terms

4     either because searches would be too broad or too narrow.  It's

5     just hard to refine them to really target the kind of documents

6     that just don't necessarily have consistent terms on documents

7     and documents or perhaps terms that are just not really

8     predictable in advance before seeing them in person.

9          And so for that reason, the parties had the

10    expectation that they could not just sit back and hope that the

11    search would do their job completely but would have the

12    additional obligation to ensure that all responsive documents

13    were, in fact, produced at least to those types of documents

14    that I just referenced that were perhaps hard to find or, you

15    know, that would not necessarily be easy to find with those

16    searches.

17         THE COURT:  Your reaction?

18         MS. BENJAMIN:  Yes.  So I think what Mr. Carmeli has

19    said is accurate.  The defendants had initially proposed search

20    terms that would pull back that universe of documents.  And in

21    the course of our negotiations, we were told by the plaintiffs

22    that the search terms were simply too broad to pull back, you

23    know, the discrete universe of documents that we're looking for

24    here.  So we did agree that for some documents it would require

25    a different search, not just an application of the search

1   terms.

2         But where we began in talking about this was talking

3   about what prejudice would exist if we were to proceed with the

4   third and fourth sets of requests, and we talked about the

5   search terms not changing as a result.  But the searches

6   themselves have not been undertaken.  These discussions,

7   including the discussion about moving from search terms to

8   looking for discrete documents, happened only yesterday and was

9   memorialized in an email, I believe, last evening.  So that

10  process hasn't happened yet.  So there wouldn't be any

11  prejudice as a result of moving forward at this time.

12        MR. CARMELI:  Your Honor, this is Daniel Carmeli for

13  plaintiffs.  I believe I have a different perception on that

14  issue.  In our first iteration of search terms several weeks

15  back, we included a reservation of rights that essentially

16  addressed this very issue of whether the searches could be

17  crafted to find all of the responsive documents and that, in

18  fact, the parties understood that additional manual or targeted

19  searching may have to be done as well.  And my -- and I believe

20  the defendants had agreed to that and recognized that several

21  weeks back.  So the notion that this was something that came up

22  only yesterday is not my understanding.

23        THE COURT:  No.  But what I'm understanding -- the

24  posture we are in now, it seems to me, is that defendants

25  failed to put these requests for production in a combined -- in

1   two sets and instead spread them out on the four.  But there

2   have been no responsive documents yet produced.  There's been

3   no searches yet conducted.  And they're not asking to

4   renegotiate the terms of the searches.  So it does seem to me

5   that, while it is a violation of the rule, it's a violation

6   with no prejudice whatsoever, and it's simply a sort of a

7   gotcha to say that you shouldn't have to respond to these.

8           Please state your name for the record.

9       MS. BOZEMAN:  This is Melissa Bozeman for plaintiffs.

10  Your Honor, would it be possible to submit briefing on this

11  issue just with respect to the issue of any prejudice?  Because

12  part of this process is our discussions with our E-discovery

13  vendor; and to the extent that our conversations with them

14  could help us determine whether there is some definable

15  prejudice, we would like to present that to the Court.

16      THE COURT:  Yeah.  I intend for these informal

17  conversations to be things that would help us resolve

18  everything without papering up, but I'm not going to preclude

19  you from submitting a brief addressing it.

20          But please be clear what I'm talking about about

21  prejudice.  I'm talking about the difference of your discovery

22  obligation if they had served it all at the same time versus

23  serving it late.  I'm not asking about how much more work it is

24  to answer four than to answer two because --

25      MS. BOZEMAN:  Absolutely, your Honor.

1          THE COURT:  You know, unlike interrogatories where

2     there's a specific limit to the number of questions you can

3     ask, here it's simply a timing issue, and there's -- I mean,

4     one -- either side could say it's an oppressive number of

5     individual requests you're asking and it's too burdensome, but

6     that's not the issue here.  It's simply an issue of the timing.

7     You're welcome to brief the question of prejudice based on this

8     timing, but that's really all I want.  I don't want prejudice

9     based on the fact of responding to more rather than responding

10    to less.

11         MS. BOZEMAN:  This is Melissa Bozeman.  Thank you,

12    your Honor.  I think we understand the issue and that it's very

13    narrow.

14         THE COURT:  Why don't you -- if you're going to file

15    something, you want to give yourself a deadline so we can keep

16    things moving here?  A week?

17         MS. BOZEMAN:  That would be perfectly fine, your

18    Honor.

19         THE COURT:  Okay.  And response from defendants?

20         MS. BENJAMIN:  Would one week thereafter be

21    appropriate, your Honor?

22         THE COURT:  That would be fine.  If you manage to work

23    it out without filing it, all the better.  But I will look at

24    it once you get it in if that's the way you proceed.

25         MS. BOZEMAN:  Very well.  Thank you, your Honor.

1          THE COURT:  Do it -- just for the sake of -- you don't

2     need to do a formal separate motion and memo.  You can put your

3     -- what it is you're asking for all in one document.  But if

4     you title it a motion, it's just easier for me to keep track of

5     on my end.

6          MS. BENJAMIN:  Your Honor, this is Nicole Benjamin.

7     Just one question about procedure.  So I understand that the

8     plaintiffs will be filing a motion.  To the extent that the

9     defendants are taking the position that even if the Court

10    concludes, as it has in this conference, that there was, in

11    fact, a violation of the local rule, we would ask under the

12    local rule for relief in the form of permission to proceed with

13    those other two.  Should that be in a separate motion?

14         THE COURT:  I think I can keep track of it if we just

15    do it on one, so, no.  I'm understanding that to be your

16    argument in opposition.  But I'm really -- I'm not going to

17    stop you from briefing that question, but what I am -- I think

18    that the question that's posed here just sort of gets to that

19    same point, which is, there -- there is -- the rules seem to me

20    pretty clear to say each side.  I don't think you can

21    distinguish "side" by defendant versus defendant and

22    counterclaimant.

23         That said, it's a timing question, and so I'm putting

24    it -- in terms of prejudice, they'll argue there is prejudice

25    that would warrant my denying the relief, and you're going to

1   respond and say, Here are the reasons why you shouldn't deny --

2   that you shouldn't preclude us from this search.  Again, the

3   way I have framed it is a search that would not require

4   renegotiating the first one.  That work for everyone?

5           MS. BOZEMAN:  It does.  Thank you, your Honor.

6           THE COURT:  Okay.  Thank you.

7           THE CLERK:  Court is in recess.

8   (Whereupon, at 11:32 a.m. the hearing concluded.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1               C E R T I F I C A T E

2

3

4          I certify that the foregoing is a correct transcript

5    of the record of proceedings in the above-entitled matter to

6    the best of my skill and ability.

7

8

9

10

11

12    /s/Cheryl Dahlstrom

13    Cheryl Dahlstrom, RMR, CRR

14    Official Court Reporter

15

16    Dated:  November 2, 2020

17

18

19

20

21

22

23

24

25