UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ANYWHERECOMMERCE, INC., and BBPOS LIMITED, | * * * | |
| Plaintiffs, | * * | |
| v. | * * | Civil Action No. 19-cv-11457-IT |
| INGENICO, INC., INGENICO CORP., and INGENICO GROUP, SA, | * * * | |
| Defendants. | * | |

MEMORANDUM & ORDER

February 3, 2021

This action concerns a dispute between several entities in the mobile payments business. Plaintiffs AnywhereCommerce, Inc. ("AnywhereCommerce") and BBPOS Limited ("BBPOS") initially filed suit against Defendants Ingenico, Inc., Ingenico Corp., and Ingenico Group, SA.[1] In response, Ingenico Inc. filed counterclaims against Plaintiffs, including a claim that Plaintiffs infringed Ingenico Inc.'s rights to nine asserted patents. Citing the undisputed fact that the asserted patents are registered to BBPOS and to AnywhereCommerce's parent company, 4361423 Canada Inc. ("436 Canada"), Plaintiffs have moved to dismiss this patent claim. Pls.' Mot. Dismiss Count VIII [#79]. Plaintiffs contend that Ingenico Inc. does not have standing to sue Plaintiffs for infringement of the asserted patents since Ingenico Inc. is not the owner or an

---

[1] Plaintiffs characterize Ingenico Group, SA, as a "French payments technology behemoth." First Am. Compl. ¶ 1 [#67]. Ingenico Corp. and Ingenico Inc. are described as Ingenico Group SA's primary United States subsidiaries. Id. Plaintiffs also initially named as a Defendant Ingenico Ventures SAS, which Plaintiffs characterized as Ingenico Group, SA's "France-based acquisition vehicle." Compl. ¶ 1 [#1]. However, Plaintiffs dismissed all claims against Ingenico Ventures SAS without prejudice, pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii). See Joint Stipulation Dismissal 2 [#64].

exclusive licensee of the nine asserted patents. Plaintiffs also assert that Ingenico Inc. has failed

to state sufficient facts to support its claim for patent infringement. For the reasons set forth

below, the court finds that Ingenico Inc. has stated a claim for relief and, accordingly, Plaintiffs'

Motion to Dismiss Count VIII of Defendant Ingenico Inc.'s Second Amended

Counterclaims [#79] is DENIED.

    I.   Facts Alleged in the Second Amended Counterclaims

On or around May 4, 2010, BBPOS entered into an "Engineering Development and

License Agreement" (the "Licensing Agreement") with a company called ROAM Data, Inc.

("ROAM").[2] See Licensing Agreement [#78-1]. Per the terms of the agreement, ROAM paid

BBPOS and provided BBPOS with other valuable consideration in return for BBPOS's services,

including the design, manufacture, and production of certain mobile payment "Products."[3]

Ingenico Inc. Second Am. Countercls. ("Am. Countercls.") ¶ 14 [#78]; Licensing Agreement at 1

[#78-1]. BBPOS also provided ROAM with "a worldwide, perpetual, fully-paid license to freely

use and sell the Products." Licensing Agreement at 1, ¶ 1.1 [#78-1].

The agreement was amended on or around August 15, 2011. Am. Countercls. ¶ 13 [#78].

The amendment, which continued to identify ROAM as a Delaware corporation, explained that

the Licensing Agreement "originally contemplated an exclusive product license," that BBPOS

had filed, or caused to be filed, a Patent Application for a secure audio-coupled card swiper, and

---

[2] According to the Licensing Agreement, which is attached to the Second Amended
Counterclaims as Exhibit 1 [#78-1], ROAM was a Delaware corporation with its head office in
Boston. Licensing Agreement at 1 [#78-1].

[3] The agreement defined the "Products" as: 1) an encrypted swipe reader "that has the ability to
generate capacitance for encryption from the audio jack of a mobile device or PC" developed by
BBPOS "including any variance of this design"; and 2) a "[chip card] capable [point of sale] unit
with Bluetooth Interface, sometimes referred to as the 'BBPOS' currently completing
certification." Licensing Agreement at 10 [#78-1].

that ROAM and BBPOS wished to amend the Agreement "to include the Patent Application within the scope of the exclusive license grant under the Agreement, [and] to clarify that the scope of the license grant under the Agreement includes any other intellectual property rights of [BBPOS] relating to the Products . . . ." Licensing Agreement at 12 [#78-1]. As amended, BBPOS granted to ROAM "a worldwide, perpetual, fully-paid license to freely use the Partner Intellectual Property to make, have made, develop, have developed, use, sell, offer for sale, import and distribute the Products, any portion thereof, or any products similar to or based upon any Products." Id.; see also Am. Countercls. ¶ 14 [#78]. The Licensing Agreement does not identify a specific catalogue of patents or patent applications conveyed by the agreement, but instead defines "Partner Intellectual Property" to include "any and all patents and patent applications relating to the Products" (the "Licensed Patents"). Licensing Agreement at 12 [#78-1]. Included in this grant of rights was the "first right, but not the obligation, to institute, prosecute and control legal proceedings and/or administrative proceedings to prevent or restrain . . . infringement or misappropriation" of the Licensed Patents. Id. at 13.

The Agreement also provided that the license granted to ROAM "is not transferrable or assignable in the event [of] a sale of the Company to a competitor with its own POS products without prior written consent of [BBPOS], not to unreasonably withheld." Id. at 1, ¶ 1.2. The 2011 amendment made no change to that provision.

Ingenico Ventures SAS held more than 70% of the ownership interests in ROAM as of February 6, 2012. Defs.' Answer ¶ 45 [#68]. By January 1, 2015, Ingenico Ventures SAS had acquired 100% of ROAM. Id. ¶ 54. Then, on December 31, 2017, ROAM "merged with and into" Ingenico Inc. Am. Countercls. ¶¶ 1, 12 [#78]. In light of the merger between ROAM and

Ingenico, Ingenico Inc. alleges that the agreement between BBPOS and ROAM is, for present purposes, an agreement between BBPOS and Ingenico. Id. ¶ 13.

Ingenico Inc. alleges that the Licensed Patents include, but are not limited to, the nine patents asserted in this action (the "Asserted Patents"). Am. Countercls. ¶¶ 87, 90 [#78]. Ingenico Inc.'s counterclaims acknowledge that seven of the nine Asserted Patents are not presently assigned to BBPOS but to AnywhereCommerce's parent company, 436 Canada. Id. ¶ 88. Ingenico Inc. argues that even though some of the Asserted Patents are registered to 436 Canada, BBPOS "had or obtained sufficient rights in the Licensed Patents to convey all of the rights that BBPOS conveyed in the [Licensing Agreement]." Id. ¶¶ 88, 92. Namely, Ingenico Inc. asserts that the principal of BBPOS, who is listed as an inventor on each of the Asserted Patents, had "asserted facts showing that [436 Canada's] purported rights in some or all of the Asserted Patents were invalid and that the patents properly belonged to BBPOS." Id. ¶ 93. These "asserted facts" include the allegation that [436 Canada] "fraudulently obtained" the patents from BBPOS or that the contracts conveying the patents from BBPOS to 436 Canada "failed for lack of consideration." Id. Ingenico Inc. asserts further that 436 Canada "expressly acknowledged and consented to Ingenico Inc.'s exclusive license over the Licensed Patents." Id. ¶ 94.

## II.   Legal Standard

Plaintiffs' Motion to Dismiss Count VIII of Defendant Ingenico Inc.'s Second Amended Counterclaims [#79] is assertedly brought pursuant to both Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Plaintiffs' Rule 12(b)(1) challenge is that Ingenico Inc. is not an owner or exclusive licensee of the patents asserted and therefore does not have standing under the patent laws (i.e., statutory standing) to bring its patent infringement claim. Pls.' Mot. 11 [#79]. However, as the Federal Circuit recently recognized in Lone Star Silicon Innovations LLC v. Nanya Tech. Corp., motions

4

to dismiss based on statutory standing "do[] not implicate standing or subject-matter jurisdiction." 925 F.3d 1225, 1235–36 (Fed. Cir. 2019); see also Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 128 n.4 (2014) ("the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, i.e., the court's statutory or constitutional power to adjudicate the case") (internal quotation omitted). Accordingly, the court considers Plaintiffs' standing arguments under Rule 12(b)(6), not Rule 12(b)(1).[4] Accord Minden Pictures, Inc. v. John Wiley & Sons, Inc., 795 F.3d 997, 1001 (9th Cir. 2015) ("[defendant's] Rule 12 motion to dismiss should have been brought under Rule 12(b)(6) . . . rather than under Rule 12(b)(1) . . . for the issue is statutory rather than Article III standing").

On a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), the well-pleaded facts in the complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). When adjudicating a Rule 12(b)(6) motion, the court "must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" Garcia-Catalan v. United States, 734 F.3d 100, 103 (1st Cir. 2013) (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir.

---

[4] Plaintiffs' motion arguably also raises questions of Article III standing insofar as Plaintiffs allege that Ingenico Inc. does not hold *any* rights to the Asserted Patents and, as a result, argues there is no injury and thus no case or controversy. However, Plaintiffs' disputed contention that Ingenico holds no rights to the Asserted Patents does not, by itself, deprive the court of its statutory or constitutional power to adjudicate the case. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) ("Jurisdiction . . . is not defeated . . . by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover") (citing Bell v. Hood, 327 U.S. 678, 682 (1946)). Instead, "[d]ismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" Id. at 89 (quoting Oneida Indian Nation of N.Y. v. County of Oneida, 414 U.S. 661, 666 (1974). Here, Ingenico's argument that it holds rights to the Asserted Patents is neither insubstantial nor implausible.

2012)). The plausible factual allegations, taken as true, must ultimately be able to support the legal conclusion that underlies each claim for relief. See Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011). Although the court ordinarily only considers the complaint's plausible factual allegations on a motion to dismiss, the First Circuit has recognized a narrow exception to this rule for "documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).

III.   Discussion

    A.   Plaintiffs' Standing Arguments

Plaintiffs' standing arguments come in three parts. First, Plaintiffs contend that Ingenico Inc. lacks standing to bring suit as to those seven patents that are presently assigned to 436 Canada (the "436 Canada Patents") because the patents were not, nor could ever have been, licensed to ROAM since 436 Canada was not party to the Licensing Agreement. Pls.' Mot. 11–16 [#79]. Put another way, Plaintiffs argue that the rights to the 436 Canada Patents were not BBPOS's to give. Following oral argument, Plaintiffs elected to bring this aspect of their argument in the form of a motion for summary judgment. Second, Plaintiffs point to the Licensing Agreement's provision stating that the license granted through the agreement to ROAM could not be transferred in the event that ROAM was sold "to a competitor with its own POS products without prior written consent" of BBPOS. Id. at 16 (citing Licensing Agreement at 1, ¶ 1.2 [#67-1]). Plaintiffs contend that this provision was triggered no later than January 1, 2015, when Ingenico Ventures SAS acquired 100% ownership in ROAM, thus prohibiting transfer of the rights to the Licensed Patents to Ingenico Ventures SAS (and, later, to Ingenico Inc.) since there was no written approval of the same. Id. at 16–19. Third, Plaintiffs raised at

hearing the argument that Ingenico Inc. lacked standing to sue for infringement of the Asserted
Patents without joining the assignees of the patents at issue in the action. The court addresses the
second and third arguments in turn.

    1. *Whether Ingenico Inc. has Adequately Pled that it is a Successor to
ROAM's License Rights Under the BBPOS-ROAM Licensing Agreement*

Plaintiffs contend that Ingenico Inc. cannot claim infringement as to any of the Asserted
Patents because Ingenico Inc. never received the exclusive rights to the Licensed Patents held by
ROAM. Pls.' Mot. 16 [#79]. Plaintiffs' argument rests on the provision in the Licensing
Agreement providing that ROAM's rights to the Licensed Patents are "not transferrable or
assignable in the event a sale of [ROAM] to a competitor with its own POS products without
prior written consent of [BBPOS], not to be unreasonably withheld." Id. (citing Licensing
Agreement at 1, ¶ 1.2 [#78-1]). Plaintiffs contend that Ingenico Ventures SAS's ownership of
ROAM constituted a prohibited sale of ROAM to a competitor and thus the rights to the Asserted
Patents did not transfer. Id.

There are at least two reasons that the court cannot resolve this dispute at the pleading
stage. First, although Defendants admit that Ingenico SAS owned a 100% interest in ROAM by
2015 (and 70% by February 2012), the counterclaim is silent as to *when* Ingenico Ventures SAS
first acquired its interests in ROAM. If Ingenico Ventures SAS had already acquired sufficient
interest in ROAM before ROAM entered into the Agreement or the Amendment, then the further
interest acquired by Ventures SAS or the merger with Ingenico Inc. may not have amounted to a
"sale" of ROAM during the contract term.[5] Second, even if the court were to read the pleadings

---

[5] The 2013 agreement between 436 Canada and BBPOS, referenced in Ingenico Inc.'s Second
Amended Counterclaims [#78], states that 436 Canada "acknowledges that [BBPOS] previously
entered into an Engineering and Development and License Agreement with ROAM Data, Inc., *a
subsidiary of Ingenico S.A.* . . . ." 436 Canada–BBPOS Agreement at 11 [#79-2] (emphasis
added). It is unclear whether 436 Canada and BBPOS understood ROAM to have been a

as alleging facts supporting a prohibited sale of ROAM to Ingenico during the term of the

Licensing Agreement—such that the contract clause would preclude claims of infringement that

occurred following the sale—there is no basis to find on the pleadings that this provision would

also bar Ingenico Inc., as ROAM's successor-in-interest, from bringing claims of infringement

that occurred during the period prior to the prohibited sale.[6] Nothing in the pleadings supports

finding such a rescission as a matter of law.

> 2. *Whether Ingenico Inc. has Standing to Sue as an Exclusive Licensee of the*
> *Licensed Patents*

Plaintiffs' final standing argument, raised at oral argument but not in its papers, is that

Ingenico Inc. does not have the right to bring this action under the United States patent laws. The

Federal Circuit has interpreted 35 U.S.C. §§ 100(d) and 281 to set forth that "[t]he owner of a

patent or the owner's assignee can commence an action for patent infringement, but a licensee

alone cannot." Sicom Sys., Ltd. v. Agilent Techs., Inc., 427 F.3d 971, 976 (Fed. Cir. 2005)

(quoting Calgon Corp. v. Nalco Chem. Co., 726 F.Supp. 983, 985 (D.Del. 1989)). However, the

Federal Circuit has extended the statutory right to bring suit to exclusive licensees who have

been assigned "all substantial rights" in the patent since, in such cases, "the transferee is treated

as the patentee and has standing to sue in its own name." Alps S., LLC v. Ohio Willow Wood

Co., 787 F.3d 1379, 1382 (Fed. Cir. 2015) (citing Propat Int'l Corp. v. Rpost, Inc., 473 F.3d

---

subsidiary of Ingenico S.A. at the time of the ROAM – BBPOS Licensing Agreement, or only in
2013 when 436 Canada and BBPOS were referencing that earlier agreement.

[6] At oral argument, Plaintiffs cited a recent decision in the Northern District of California, Uniloc
USA, Inc. v. Apple, Inc., No. 18-cv-00358-WHA, 2020 WL 7122617, at *5 (N.D. Cal. Dec. 4,
2020), for the proposition that a material breach of an exclusive licensing agreement would result
in Ingenico Inc. losing its exclusionary rights to the Licensed Patents and thus its Article III
standing. However, the loss of exclusive rights in Uniloc turned on the specific agreement at
issue there, pursuant to which a license was granted as security in the event of a default. No such
provision is at issue in the License Agreement here.

1187, 1189 (Fed.Cir.2007)). "If, however, the transferee or licensee does not hold all substantial rights, it may 'sue third parties only as a co–plaintiff with the patentee.'" Id. at 1382–83 (quoting Mentor H/S, Inc. v. Med. Device Alliance, Inc., 240 F.3d 1016, 1017 (Fed. Cir. 2001).[7]

Here, Plaintiffs argue that the Licensing Agreement did not assign ROAM "all substantial rights" to the Licensed Patents and that, as a result, Ingenico Inc. cannot sue for infringement of the Licensed Patents without adding 436 Canada and BBPOS as co-plaintiffs in the Counterclaim.[8] Complicating matters is the fact that 436 Canada is AnywhereCommerce's parent company and BBPOS is the accused infringer. Ingenico Inc. presents two arguments in rebuttal. First, Ingenico Inc. contends that it holds "all substantial rights" to the Licensed Patents under the BBPOS-ROAM Licensing Agreement. Second, Ingenico Inc. contends that even if it does not hold all substantial rights to the Licensed Patents, requiring Ingenico Inc. to join an alleged infringer and an alleged infringer's parent company as co-plaintiffs would constitute an "absolute failure of justice." Because the court concludes that Ingenico, Inc., has adequately pled that

---

[7] The Supreme Court has noted that the purpose of this rule is "not only to give jurisdiction under the patent laws, but also in most cases to enable the alleged infringer to respond in one action to all claims of infringement for his act, and thus either to defeat all claims in the one action, or by satisfying one adverse decree to bar all subsequent actions." Indep. Wireless Tel. Co. v. Radio Corp. of Am., 269 U.S. 459, 468 (1926). The Federal Circuit has also noted that this rule recognizes "a danger in allowing patentees to award a 'hunting license' to third-parties." Lone Star Silicon Innovations LLC v. Nanya Tech. Corp., 925 F.3d 1225, 1233 (Fed. Cir. 2019) (citing Prima Tek II, L.L.C. v. A-Roo Co., 222 F.3d 1372, 1381 (Fed. Cir. 2000)).

[8] The parties' briefs only note the option of adding the patent holders as co-plaintiffs, but it is not apparent that Ingenico Inc.'s options would be so constrained. The Supreme Court has noted that if the owner of the patent refuses or is unable to join an exclusive licensee as co-plaintiff, "the licensee may make him a party defendant by process, and he will be lined up by the court in the party character which he should assume." Indep. Wireless Tel. Co., 269 U.S. at 468; Cf. Fed. R. Civ. P. 19 advisory committee's note to 1966 amendment ("Whenever feasible, the persons materially interested in the subject of the action . . .  should be joined as parties so that they may be heard and a complete disposition made").

ROAM was granted "all substantial rights" to the Licensed Patents under the Licensing Agreement, it is not necessary to reach Ingenico Inc.'s second argument.

Ingenico Inc.'s first argument that it holds "all substantial rights" to the Licensed Patents is supported by the terms of the Licensing Agreement. First and foremost, the central consideration is whether the agreement includes the "exclusive right to make, use, and sell products or services under the patent." Alfred E. Mann Found. For Sci. Research v. Cochlear Corp., 604 F.3d 1354, 1360 (Fed. Cir. 2010) (citing Propat, 473 F.3d at 1193–94). Here, the Licensing Agreement provides that BBPOS granted ROAM "a worldwide, perpetual, fully-paid license to freely use" the Licensed Patents. Licensing Agreement at 13, ¶ 1.1 [#78-1]. With minor exceptions discussed below, the license was also "exclusive on a worldwide basis," including as to BBPOS, which was prohibited from using or selling, or granting any other person rights to the Licensed Patents to make, use, or sell, the Licensed Products, or any "products similar to or based upon any" of the Licensed Products,. Id. at 14, ¶ 1.3. Accordingly, this threshold requirement is met.

As the Federal Circuit wrote in Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA, "[i]n determining whether a grant of *all* substantial rights was intended, it is helpful to look at what rights have been retained by the grantor, not only what was granted." 944 F.2d 870, 875 (Fed. Cir. 1991). Here, in a short footnote, Plaintiffs focus on several rights retained by BBPOS as the basis for their argument that BBPOS did not grant ROAM "all substantial rights." Pls.' Mot. 3 n.5 [#79]. However, the retained rights cited by Plaintiffs are at most minor derogations from the grant of rights assigned to ROAM in the Licensing Agreement.

Two of these retained rights are limited territorial rights, namely, that the Licensing Agreement granted BBPOS the option to "jointly sell" the Licensed Products in a region or

country where, due to regional or national policies, ROAM is "unable to provide" the licensed technology, id. (citing Licensing Agreement at 3, ¶ 1.5 [#67-1]), and that the Licensing Agreement granted BBPOS a nonexclusive right to use the Licensed Patents to make, use and sell the Licensed Products in China and Philippines for use in those countries. Id. (citing Licensing Agreement at 3, ¶ 1.5, and 14, ¶ 1.3 [#67-1]). As the Federal Circuit noted in Prima Tek II, L.L.C., the patent laws "recognize[], and courts have long held, that an exclusive, territorial license is equivalent to an assignment and may therefore confer standing upon the licensee to sue for patent infringement." 222 F.3d 1372, 1377 (Fed. Cir. 2000) (citing 35 U.S.C. § 261 (1994)) (internal citations omitted).

Plaintiffs' third argument is equally unavailing. Plaintiffs contend that while Ingenico, Inc. obtained exclusive rights for "use and sale" of the Products or the Licensed Patents, the Licensing Agreement did not prohibit BBPOS from *manufacturing* the Products or to use the Licensed Patents to do the same. Pls.' Mot. 3 n.5 [#79]. But where the Licensing Agreement prohibited BBPOS from using or selling the Licensed Patents or the Products worldwide (except as explicitly provided in the Agreement), the reservation of the right to manufacture the product appears to be in service of BBPOS's obligation to deliver to Ingenico, Inc. the products and services to the extent requested by Ingenico, Inc. See e.g., Licensing Agreement at 2, ¶ 3.1 [#78-1]. A reserved nonexclusive right to manufacture at the pleasure of the licensee[9] accompanied by no right to use, sell, exclude, alienate, license, or sublicense to others does not allow the court to

---

[9] Paragraph 9.2 of the Licensing Agreement provides that ROAM was entitled to all engineering, files, and tools so as to be able to manufacture the Licensed Products itself. Licensing Agreement at 7 [#78-1]. Furthermore, if ROAM, in its sole discretion, were to conclude that BBPOS no longer provided the design and manufacturing services "properly or cost effectively," ROAM had the right to source the services elsewhere. Id.

conclude on the pleadings that ROAM was not the effective owner of the Licensed Patents and Plaintiffs have not provided any authority otherwise.[10]

 B. Rule 12(b)(6) Challenge

 Plaintiffs' final challenge is that Ingenico Inc. has failed to state sufficient facts to support its claim for patent infringement. Specifically, Plaintiffs contend that Ingenico Inc. "makes no effort whatsoever to tie any specific product or method to all elements of any allegedly infringed patent claim." Pls.' Mot. 20 [#79].

 Plaintiffs' pleading requirement is to "state a claim to relief that is plausible on its face" and to do so in a manner that "give[s] the defendant fair notice of what the . . . claim is and

---

[10] In addition to the arguments raised by Plaintiffs, the court also noted at oral argument that the Licensing Agreement provided BBPOS some residual rights to institute litigation for infringement of the Licensed Patents. See Licensing Agreement at 14, ¶ 4.4 [#78-1]. As the Federal Circuit wrote in Alfred E. Mann Found., beyond the exclusive right to practice the patent, "the nature and scope of the exclusive licensee's purported right to bring suit, together with the nature and scope of any right to sue purportedly retained by the licensor, is the most important consideration." 604 F.3d at 1361 (Fed. Cir. 2010) (internal citations omitted). Here, the Licensing Agreement granted to ROAM the "*first* right . . . to institute, prosecute, and control legal proceedings and/or administrative proceedings" in the case of infringement or misappropriation. Licensing Agreement at 14, § 4.4 [#78-1] (emphasis added). Furthermore, the Licensing Agreement provides BBPOS with limited rights with regards to lawsuits brought by ROAM against infringers. Namely, BBPOS would have the right to notice of any proceedings, and the right to "participate in such proceedings with its own counsel, at its sole cost and expense." Id. All proceeds from any infringement action would remain with ROAM. Id. While the limited rights to bring suit retained by BBPOS presents a closer issue, the Federal Circuit has held similarly structured reservations to be in accordance with a grant of "all substantial rights." Compare Speedplay, Inc. v. Bebop, Inc., 211 F.3d 1245, 1251 (Fed. Cir. 2000) (holding "all substantial rights" granted where grantor retained right to bring infringement suit if licensee did not initiate suit within 3 months, did not provide grantor right over management of infringement action, and, as here, held a right to sublicense the Licensed Patents so as to render any reserved right to sue for infringement illusory) with Abbott Labs. v. Diamedix Corp., 47 F.3d 1128, 1132 (Fed. Cir. 1995) (holding that licensee did not hold "all substantial rights" where licensee could not manage an infringement action in a manner that would not "prejudice or impair the patent rights in connection with such prosecution or settlement").

the grounds upon which it rests." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)); <u>Twombly</u>, 550 U.S. at 555. Pleading requirements are no different in cases alleging patent infringement. <u>See</u> <u>Disc Disease Sols. Inc. v. VGH Sols., Inc.</u>, 888 F.3d 1256, 1260 (Fed. Cir. 2018) (reversing a district court's grant of a motion to dismiss where the Circuit found that the complaint and attachments were "enough to provide [defendant] fair notice of infringement of the asserted patents").

Here, the allegations in the <u>Second Amended Counterclaims</u> [#78] satisfy Fed. R. Civ. P. 8(a)(2) under the standard set forth by the Supreme Court. Ingenico Inc. has identified the specific products sold by BBPOS and AnywhereCommerce that it contends to infringe upon Ingenico Inc.'s asserted patent rights. <u>See</u> Am. Countercls. ¶¶ 102–04 [#78]. Ingenico Inc. has also identified the specific claims of the Asserted Patents that it contends Plaintiffs are infringing. <u>Id.</u> Furthermore, there is nothing implausible about Ingenico Inc.'s allegations. In sum, the allegations put Plaintiffs on notice of the claims and Plaintiffs can now defend them on the merits.

IV.   <u>Conclusion</u>

For the reasons set forth above, Plaintiffs' <u>Motion to Dismiss Count VIII of Defendant Ingenico Inc.'s Second Amended Counterclaims</u> [#79] is DENIED.

IT IS SO ORDERED.

Date: February 3, 2021

/s/ Indira Talwani
United States District Judge