UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANYWHERECOMMERCE, INC. and BBPOS LIMITED,<br><br>**Plaintiffs,**<br><br>v.<br><br>INGENICO INC., INGENICO CORP., and INGENICO GROUP, SA,<br><br>**Defendants.** | **Civil Docket No: 1:19-cv-11457-IT** |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO COMPEL DISCOVERY FROM PLAINTIFFS**

Defendants Ingenico Inc., Ingenico Corp. and Ingenico Group S.A. (collectively "Defendants" or "Ingenico"), by and through their attorneys, respectfully submit this memorandum of law in support of their Motion to Compel Discovery from Plaintiffs.

**INTRODUCTION**

The parties to this action all participate in the business of mobile payments processing. Plaintiffs AnywhereCommerce, Inc. ("AnywhereCommerce") and BBPOS Limited ("BBPOS") (collectively, "Plaintiffs") filed suit against Ingenico, alleging generally that Ingenico tortiously interfered with contractual relations, in the case of AnywhereCommerce, and stole trade secrets, in the case of BBPOS. *See* Plaintiffs' Complaint, ECF No. 1; Plaintiffs' Amended Compliant, ECF No. 67. Despite the fact that the parties asserted different theories of wrongdoing, several of the claims are asserted jointly against the Defendants. *See id.* at Count VII (unjust enrichment); Count VIII (violation of the Georgia Deceptive Trade Practices Act); Count IX (violation of the Georgia Fair Business Practices Act).

For years, Ingenico (itself or through an entity later merged into Ingenico, ROAM Data,

Inc.) purchased hardware from BBPOS pursuant to an exclusive license agreement that prohibited BBPOS from selling the same or similar products anywhere other than China and the Philippines. Notwithstanding this arrangement, BBPOS sold product to, among others, its co-Plaintiff, AnywhereCommerce, who in turn sold those products in direct competition with Ingenico. Therefore, in response to Plaintiffs' Complaint, Ingenico filed counterclaims against both BBPOS and AnywhereCommerce arising out of Plaintiffs' violations of Ingenico's intellectual property rights and other breaches of the BBPOS license agreement, including its failure to indemnify Ingenico for intellectual property claims made against products sold by BBPOS to Ingenico. *See* Second Amended Counterclaims of Ingenico Inc., ECF No. 78.

During the discovery process, Ingenico propounded written discovery requests upon Plaintiffs pursuant to Rules 26, 33, and 34 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 26, 33, 34. Ingenico also conducted depositions pursuant to Rule 30. *See* Fed. R. Civ. P. 30. Disputes arose during the discovery period regarding documents Plaintiffs had failed to produce and questions that deponents from AnywhereCommerce and BBPOS refused to answer based upon the instructions of counsel. In an effort to resolve each of these disputes and avoid filing this motion, Ingenico's counsel sent Plaintiffs' counsel several emails requesting production, and requested a conference with this Court to address the propriety of counsel's instructions not to answer deposition questions, which the Court conducted on November 30, 2021. *See* Techentin Decl. (attached hereto as **Exhibit A**). Additionally, Ingenico initiated a telephonic conference with Plaintiffs' counsel that was held on December 17, 2021. *See id*. Ingenico's counsel followed up through email on the topics discussed during the parties' meet and confer, but notwithstanding these good faith efforts, Plaintiffs have not produced bulk of the requested, and improperly withheld, discovery. *See id*. This motion followed.

**ARGUMENT**

Pursuant to Rule 26 of the Federal Rules of Civil Procedure, parties may obtain discovery on any non-privileged matter that is (1) relevant to any party's claim or defense; and (2) proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Information within the scope of discovery need not be admissible in evidence to be discoverable. *Id*. The purpose of these discovery rules "is to permit 'the parties to obtain the fullest possible knowledge of the issues and facts before trial.'" *Valentine v. Maersk Line, Ltd.*, No. CV 05-40187-FDS, 2007 WL 9805437, at *2 (D. Mass. Feb. 9, 2007) (quoting *Hickman v. Taylor*, 329 U.S. 495, 501 1947)).

Pursuant to Rule 37 of the Federal Rules of Civil Procedure, a party may move for an order compelling discovery from an opposing party that fails to respond to a request for production of documents under Rule 34 of the Federal Rules of Civil Procedure, or if a "deponent fails to answer a question asked under Rule 30," provided that (1) the requests and/or questions were properly presented under the relevant rule of civil procedure; (2) the party moving to compel has in good faith conferred or attempted to confer with the party failing to provide discovery responses in an effort to obtain them without court action; and (3) following the good faith conference or attempt to confer, the non-moving party still fails to provide discovery responses. *See* Fed. R. Civ. P. 37(a)(1)-(3); s*ee also* L.R. 37(b). An incomplete discovery response constitutes a failure to respond. Fed. R. Civ. P. 37(a)(4).

Here, despite Ingenico's numerous good faith attempts to resolve the discovery disputes without filing a motion, Plaintiffs failed to cure the deficiencies in both their production of documents and their improper refusal to respond to deposition questions. An order compelling disclosure is warranted and necessary.

I. **This Court Should Compel BBPOS to Immediately Produce Sales and Profit Records Concerning Mobile Point-Of-Sale Technology Through the Present.**

BBPOS has failed to produce sales and profit records concerning all magnetic stripe, EMV, and Bluetooth card readers for the years 2010-2014 and from 2018 through the present. These documents are necessary to the litigation of Ingenico's counterclaims and were requested in discovery. Therefore, Ingenico issued the following requests to BBPOS:

> **REQUEST NO. 41.** Profit and loss statements, royalty reports, budget profit and loss statements, financial statements, and income statements concerning the mobile point-of-sale technology (including but not limited to the manufacture and design of mobile point-of-sale technology) of [BBPOS], AnywhereCommerce, 4361423 Canada, Inc., and/or any person doing business under the names HomeATM or HomeATM/AnywhereCommerce.
>
> **REQUEST NO. 43.** All documents concerning BBPOS' use or sale, whether direct or indirect, of any Acknowledged Products & Portions[1] to persons other than Ingenico, unless those documents solely concern sales of Acknowledged Products & Portions in China for use in China or in Philippines for use in Philippines.
>
> **REQUEST NO. 44.** All documents concerning BBPOS' use or sale, whether direct or indirect, of any Covered Products & Portions[2] to persons other than Ingenico, unless those

---

[1] Ingenico's Requests for Production to BBPOS Limited define "Acknowledged Products & Portions" as "[BBPOS's] understanding of the phrases 'Products, or any portion thereof, or any products similar to or based on any Products' and 'the Devices, or products substantively similar to the Devices'" as used in the document titled "Engineering Development and License Agreement" as amended by the "Amendment to Engineering Development and License Agreement," a copy of which was filed with the Court as ECF No. 78-1. Ingenico Inc.'s First Set of Requests for Production to BBPOS Limited at 8 (attached hereto as **Exhibit B**).

[2] Ingenico's requests for production define "Covered Products & Portions" as "POS devices, products, protypes, and/or associated systems and software, and/or mPOS technology, and any portion of any of the foregoing, that have or are intended to have when operating with the appropriate systems, hardware, and software, any one or more of the following characteristics:
   a. the ability to generate capacitance for encryption from the audio jack of a mobile device or PC;
   b. the ability to transmit data through the audio jack of a mobile device or PC;
   c. the ability to obtain, interpret, or transmit data from a magnetic stripe on a payment card such as a credit card or debit card, including all devices generally known as or that can be referred to as swipe readers, card swipe readers, or magstripe readers;
   d. the ability to obtain, interpret, or transmit data from a "smart chip" card, an EMV card, and/or cards with VIS, MasterCard, AEIPS, UICS, J Smart, D-PAS, Rupay, or Verve chips;

4

documents solely concern sales of Covered Products & Portions in China for use in China or in Philippines for use in Philippines.

**Exhibit B**, at 33-36.

BBPOS has tacitly acknowledged the relevance and discoverability of this information by producing sales and profit information for 2015-2017 and a portion of 2018. The meet and confer process did not disclose any reasoned basis for selectively producing information from these years as opposed to the other years during which the Engineering Development and License Agreement between Ingenico and BBPOS (the "Ingenico-BBPOS Agreement") was in effect.

The sales and profit records that Ingenico seeks in Request Nos. 41, 43, and 44 are both relevant to Ingenico's counterclaims and proportional to the needs of this case. As alleged in its Second Amended Counterclaim, Ingenico expects to prove that BBPOS breached the Ingenico-BBPOS Agreement.[3] ECF No. 78. The Ingenico-BBPOS Agreement provides, in relevant part, that BBPOS presented Ingenico "with an exclusive license to certain mobile payment devices and related intellectual property." ECF No. 78 ¶ 14. Moreover, BBPOS promised Ingenico, *inter alia*, that (1) "it would not use or sell any of the Covered Mobile Payment Devices" (*see supra* note 2); (2) "it would not grant any rights to intellectual property related to Covered Mobile Payment Devices to develop or sell such devices"; and (3) "it would not design, produce, or assist in the

---

   e. a Bluetooth interface;
   f. it was at any point in its development referred to as the "Crypto Swipe," the "ROAMpay Swipe," or the ROAMpay POS, or was developed based on any devices that were at any point referred to as the "Crypto Swipe," the "ROAMpay Swipe," or the ROAMpay POS."

*Id*. at 9.

[3] Although ROAM and BBPOS were the original parties to the above-mentioned Engineering Development and Licensing Agreement, Ingenico refers to this agreement as the "Ingenico-BBPOS Agreement" because after the parties entered into the agreement on or around May 4, 2010 (and later the amended agreement on or around August 15, 2011), ROAM merged with Ingenico. *See* Ingenico's Second Amended Counterclaim, ECF No. 78 ¶ 13.

design or production of Covered Mobile Payment Devices for any other party." *Id.* ¶ 17.

Ingenico intends to prove that BBPOS breached the Ingenico-BBPOS Agreement by, *inter alia*, selling the Covered Mobile Payment Devices to both (1) AnywhereCommerce; and (2) nonparties to this case. *Id.* ¶ 20-21.  BBPOS admits that the Ingenico-BBPOS Agreement remains in effect and BBPOS's continued sales of the Covered Products and Portions constitute an ongoing breach of the Ingenico-BBPOS Agreement.  *See* Rule 30(b)(6) Dep. of BBPOS at 50:14-15 (relevant excerpts attached hereto as **Exhibit C**).  Therefore, the relevant time frame extends from its execution in 2010 through the present.

BBPOS's revenues and profits resulting from its breach of the Ingenico-BBPOS Agreement are a critical component of that part of Ingenico's breach of contract-related damages. Ingenico requires this information in order to calculate and prove those damages.  Accordingly, Ingenico respectfully requests that this Court order BBPOS to produce all documents responsive to Request Nos. 41, 43, and 44 and more specifically revenue and profit information on a product-specific basis for the years 2010-2014 and 2018 to the present.

## II.   Plaintiffs' Ungrounded Assertions of Privilege or Other Immunity from Disclosure Should be Overruled and the Court Should Compel Plaintiffs' Responses Forthwith.

As a general matter, the party asserting an applicable privilege has the burden of establishing that it applies.  *In re Grand Jury Subpoena*, 220 F.R.D. 130, 140 (D. Mass. 2004) (citing *FDIC v. Ogden Corp.*, 202 F.3d 454, 460 (1st Cir. 2000)).

The First Circuit has adopted "the essential elements of the attorney-client privilege: (1) where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived." *Trustees of Boston U. v. Everlight Elecs. Co., Ltd.*, CIV.A.

12-11935-PBS, 2015 WL 3407555, at *2 (D. Mass. May 27, 2015) (citing *United States v. MIT*, 129 F.3d 681, 684 (1st Cir.1997) (quoting 8 J. Wigmore, Evidence § 2292, at 554 (McNaughton rev.1961))). The First Circuit has stated that "'the attorney-client privilege must be narrowly construed because it comes with substantial costs and stands as an obstacle of sorts to the search for truth.'" *XYZ Corp. v. United States (In re Keeper of the Records)*, 348 F.3d 16, 22 (1st Cir. 2003) (citing *United States v. Nixon*, 418 U.S. 683, 709-10 (1974)).

"It is clear beyond hope of contradiction that the party seeking to invoke the attorney-client privilege must carry the devoir of persuasion to show that it applies to a particular communication and has not been waived." *In re Grand Jury Subpoena*, 662 F.3d 65, 71 (1st Cir. 2011). A "blanket assertion of privilege is generally insufficient" to satisfy this burden of proof. *Id.* (citing *In re Grand Jury Proceedings*, 616 F.3d 1172, 1183 (10th Cir. 2010); *In re Grand Jury Matters*, 751 F.2d 13, 17 n.4 (1st Cir. 1984); *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983)). When "otherwise privileged communications are disclosed to a third party, the disclosure destroys the confidentiality upon which the privilege is premised." *XYZ Corp.*, 348 F.3d at 22 (citing 2 Paul R. Rice, Attorney-Client Privilege in the U.S. § 9:79, at 357 (2d ed. 1999)).

The work product doctrine "shields from discovery 'documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).'" *United States v. Mass. Gen. Hosp.*, 475 F. Supp. 3d 45, 61 (D. Mass. 2020) (quoting Fed. R. Civ. P. 26(b)(3)(A)). The First Circuit "has taken a narrow view of the attorney work product doctrine in the leading case of *United States v. Textron Inc.*, 577 F.3d 21 (1st Cir. 2009)." *Id.* at 61.

Here, Plaintiffs withheld documents and instructed deponents to refuse to answer questions where the documents and responsive information were not subject to any privilege or protection.

7

The Court should compel the Plaintiffs to produce the requested documents and instruct deponents to answer Ingenico's deposition questions.

### A. Both BBPOS and AnywhereCommerce Have Made Bare Assertions of Privilege to Withhold Unprivileged Documents

Federal Rule of Civil Procedure 26(b)(5)(A) "requires a party objecting to document requests on the grounds of privilege to '(i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.'" *Neelon v. Krueger*, Civil Action No. 12-cv-11198-IT, 2015 U.S. Dist. LEXIS 29146, at *6 (D. Mass. Mar. 10, 2015).

The First Circuit "has made clear that privilege logs need not 'be precise to the point of pedantry' or contain 'infinitely detailed information'" and has permitted the use of categorical logs. *Id.* at *6-7 (citing *In re Grand Jury Subpoena*, 274 F.3d 563, 576 (1st Cir. 2001); Fed. R. Civ. P. 26(b)(5)(A), advisory committee notes to the 1993 amendments). "Neither of these allowances, however, purports to limit or supplant the requirement that litigants provide information 'sufficient to judge whether the undisclosed documents satisfy each element required for protection.'" *Id.* at *7 (quoting *Clark v. Edison*, No. 09-40040-FDS, 2010 U.S. Dist. LEXIS 92859, 2010 WL 3245428, at *3 (D. Mass. Aug. 16, 2010)). Where a party withholds responsive documents on the grounds of privilege, it must identify the nature of the privilege claimed on a privilege log. *See e.g.*, L.R. 34.1.

Here, BBPOS produced a privilege log that not only includes "blanket assertion[s] of privilege," but also includes documents to which the attorney-client privilege would have no natural application. More specifically, BBPOS lists on its privilege log two emails between Michael Kron ("Mr. Kron") of AnywhereCommerce and Ben Lo ("Mr. Lo") of BBPOS dated

March 28, 2017 and April 15, 2017. *See* BBPOS Privilege Log, 14 (attached hereto as **Exhibit D**).[4] The privilege log indicates that both documents are protected by attorney-client privilege. *Id*. The email dated March 28, 2017 and labeled BBPOS-PL-00263 ("BBPOS-PL-00263") includes the following description: "Email providing confidential information necessary to render legal advice regarding internal investigation." *Id*. The email dated April 15, 2017 and labeled BBPOS-PL-00270 ("BBPOS-PL-00270") is described as: "Email providing legal advice regarding pending or potential litigation." *Id*. These descriptions do not "satisfy each element required for protection." *See Neelon*, 2015 U.S. Dist. LEXIS 29146, at *7.

More specifically, the privilege log states that only Mr. Kron and Mr. Lo were included in these communications, and thus BBPOS has not met the second element, which requires that the legal advice at issue be "from a professional legal adviser in his capacity as such." *See Trustees of Boston U., Ltd.*, 2015 WL 3407555, at *2 (emphasis added). Nor has the final element been met regarding waiver. *Id.*

Neither Mr. Kron nor Mr. Lo is an attorney, and therefore these emails are not "communications between an attorney and [his or her] client made in connection with legal representation." *See In re Grand Jury Subpoena*, 273 F. Supp. 3d 296, 301 (D. Mass 2017). Rather, the Plaintiffs' position appears to be that two non-attorneys communicated and in doing so, either relayed information that was "necessary" to some other legal representation, or that recited legal advice from some unspecified attorney. In the latter case, such disclosure is a waiver of the privilege, as disclosure of otherwise privileged information to a third-party "destroys the confidentiality upon which the privilege is premised." *See XYZ Corp.*, 348 F.3d at 22 (citing 2

---

[4] These documents are not listed on the AnywhereCommerce Privilege Log. *See* AnywhereCommerce Privilege Log (attached hereto as **Exhibit E**).

Paul R. Rice, Attorney-Client Privilege in the U.S. § 9:79, at 357 (2d ed. 1999)).[5] The Plaintiffs' invocation of attorney client privilege is even weaker for BBPOS-PL-00263 because it does not even claim to include actual legal advice, but rather "information necessary to render legal advice," with no information about who would be rendering such advice and to whom it would be provided. *See* **Exhibit D**, at 14.

Likewise, the AnywhereCommerce Privilege Log contains documents withheld as attorney-client privileged, even though the privilege does not extend to those documents. The documents labeled ACPL-000544 and ACPL-000545 in the AnywhereCommerce Privilege Log were each described as "Email providing legal advice rega[r]ding pending or potential litigation," and yet no attorneys are among the senders or recipients of either email. **Exhibit E**, at 19. There is nothing from the description of the documents in AnywhereCommerce's privilege log to suggest that the material could possibly be an attorney-client privileged communication. *See id*. Because no valid basis for withholding has been asserted, these documents should be produced.

Given the failure of the Plaintiffs to establish that the documents labeled BBPOS-PL-00263, BBPOS-PL-00270, ACPL-00544, and ACPL-00545 are attorney-client privileged communications, there is no valid basis for withholding the information, and this Court should compel their production.

---

[5] In theory, third-party disclosure could not destroy the privilege because of the common interest doctrine. *See*, *e.g.*, *In re Grand Jury Subpoena*, 274 F.3d at 572 ("The joint defense privilege protects communications between an individual and an attorney for another when the communications are part of an ongoing and joint effort to set up a common defense strategy.") (internal quotations omitted). However, that doctrine is clearly inapplicable to communications that occurred in March and April of 2017, because the Plaintiffs concede that their first discussions of potential litigation did not occur until late 2017 [Rule 30(b)(6) Dep. of AnywhereCommerce at 100:15-101:13 (relevant excerpts attached hereto as **Exhibit F**)] or 2018 [**Ex. C** at 220:9-15]. These communications cannot be part of a strategy for litigation that the participants had not even conceptualized.

### B. This Court Should Compel Deponents to Answer Ingenico's Questions Regarding a Conversation That Occurred In 2017 Between Mr. Kron and Mr. Lo Because No Privilege Shields the Communication from Discovery.

When "otherwise privileged communications are disclosed to a third party, the disclosure destroys the confidentiality upon which the privilege is premised." *XYZ Corp.*, 348 F.3d at 22 (citing 2 Paul R. Rice, Attorney-Client Privilege in the U.S. § 9:79, at 357 (2d ed. 1999)).  Courts "generally agree that '[n]ot every passing reference to counsel . . . will trigger a waiver of the privilege.'" *Trustees of Boston U.*, 2015 WL 3407555, at *3 (quoting *United States v. Gorski*, 36 F.Supp.3d 256, 268 (D.Mass.2014)).  Furthermore, "'indicating the fact or topic of a confidential communication' does not waive attorney-client privilege.'" *Id.* (citation omitted).  However, "[e]ven when a party discloses just part of an attorney-client communication or merely gives the conclusion, it is typically enough to waive the privilege for the communication disclosed." *Id*. (citing *In re Grand Jury Subpoena (Zerendow)*, 925 F.Supp. 849, 855 (D.Mass.1995)).

Absent "special circumstances," such as if "disclosure would implicate the client in the very criminal activity for which legal advice was sought," the courts "have not extended the attorney-client privilege to protect a client from disclosure . . . of how [the attorney] has been paid fees on the client's behalf, for example where a third party benefactor has paid the attorney." *In re Grand Jury Subp. (Zerendow)*, 925 F. Supp. 849, 855–56 (D. Mass. 1995).

Here, Plaintiffs' counsel instructed Mr. Kron and BBPOS not to respond to a series of deposition questions regarding a conversation involving only Mr. Kron and Mr. Lo that occurred in 2017 ("the 2017 Conversation"), alleging these communications were subject to the attorney-

11

client privilege. *See* **Exhibit C**, at 216:18-219:11, 224:5-225:20; **Exhibit F**, at 85:11-88:7.[6][7] Ingenico's counsel asks questions regarding the topics of the 2017 conversation, including about sharing of legal fees and litigation proceeds, questions relevant to the prosecution and defense, at least, of those causes of action that the plaintiffs have asserted jointly, as well as to issues that would, traditionally, fall within the doctrines of champerty and maintenance.[8] Plaintiffs' counsel repeatedly responded with objections based upon attorney-client privilege and instructions not to answer even though the privilege does not apply. *See In re Grand Jury Subp. (Zerendow)*, 925 F. Supp. at 855–56; **Exhibit F** at 87:9-13, 17-23. For example, counsel for Ingenico asked Mr. Kron, "During [the 2017] conversation did you and [Mr. Lo] discuss the topic of sharing legal expenses?" to which counsel for Plaintiffs stated "Objection. Attorney/client privileged and I'm going to instruct the client not to answer that question." **Exhibit F** at 86:13-20. Such questions address

---

[6] The questions addressed to BBPOS that Plaintiffs' counsel objected to based on purported attorney-client privilege, and advised deponents not to answer, include the following:
- Did you talk about the possibility of joining together in litigation [during the 2017 Conversation]? [**Exhibit C** at 222:17-18];
- What did you discuss [regarding the potential sharing of legal expenses]? [*Id*. 223:7-10]; and
- What is the nature of that agreement? [*Id*. 224:25].

[7] The questions addressed to Mr. Kron that Plaintiffs' counsel objected to based on purported attorney-client privilege, and advised deponents not to answer, include the following:
- During that conversation did you and [Mr. Lo] discuss the topic of sharing legal expenses? [**Exhibit F** at 86:16-17];
- During the conversation with Mr. Lo, did you discuss the topic of how potential litigation proceeds or damages awards might be assessed as between AnywhereCommerce and BBPOS? [*Id*. at 87:17-20]; and
- During this discussion, did you and Mr. Lo discuss a potential joint defence agreement? [*Id*. at 88:3-4].

[8] Although the common law doctrines of champerty, maintenance, and barratry are no longer recognized in Massachusetts, its courts will "continue[] to scrutinize an agreement to finance a lawsuit with care." *Saladini v. Righellis*, 426 Mass. 231, 236 (1997). In this case, because the Plaintiffs have elected to sue collaboratively, any agreements that the plaintiffs have reached regarding the allocation of proceeds are directly relevant to the determination of appropriate jury instructions and verdict forms, as well as other matters necessary to avoid the risk of double-recovery.

mere topics that Mr. Kron and Mr. Lo addressed in the 2017 Conversation, and even assuming *arguendo* that attorney-client privilege could apply to the 2017 Conversation, "'indicating the fact or topic of a confidential communication" does not waive attorney-client privilege and the deponents should have answered. *See Trustees of Boston U*, 2015 WL 3407555, at *3; **Exhibit B** at 221:24-225:23; **Exhibit F** at 86:16-20.

Despite Plaintiffs' counsel's averments of attorney-client privilege, Mr. Kron's and BBPOS's testimony proves that neither the attorney-client privilege applies to the 2017 Conversation, nor is Mr. Kron's disclosure of attorney confidences protected by the common interest doctrine. Mr. Kron admitted that prior to the telephone call, there was no agreement in place to keep the contents of the communication confidential. **Exhibit F** at 102:11-19. He confirmed that as of the date of that call, AnywhereCommerce and BBPOS were not joint clients of Kutak Rock. *Id.* at 101:10-13. When asked if anyone told Mr. Kron "that Kutak Rock represented Ben Lo in connection with suing Ingenico" before the 2017 Conversation, Mr. Kron stated "No," and admitted that Mr. Lo did not tell Mr. Kron that he had hired Kutak Rock. *Id.* at 101:10-102:9. Mr. Kron also testified that Mr. Lo "was not" a "joint client with [Mr. Kron] of Kutak Rock" at the time of the 2017 Conversation. *Id*. at 101:10-13. Critically, Mr. Kron admits that at the time of his discussion with Mr. Lo, Mr. Lo had explicitly told him that he had not yet hired any lawyers in connection with a potential Ingenico lawsuit. *Id*. Moreover, Mr. Lo stated that he was not represented by a lawyer "against Ingenico when [he] w[as] talking to Michael Kron." **Exhibit C** at 223:4-6. These concessions are fatal to any claim that Mr. Kron's disclosures of attorney-client confidences were protected by the common interest doctrine, which applies "'[w]hen two or more clients consult or retain an attorney on particular matters of common interest.'" *Cavallaro v. United States*, 284 F.3d 236, 249 (1st Cir. 2002) (quoting Weinstein's

13

Federal Evidence, § 503.21[1] (J.M. McLaughlin, ed., 2d ed.2002) and 8 J.H. Wigmore, Evidence § 2312, at 603-09 (McNaughton rev.1961)).

Simply, where there is no common representation, and where one party is not even represented by counsel, and where there is no agreement that disclosures are to be held in confidence, third-party disclosures constitute a waiver of any privilege that might have applied prior to the disclosure. Accordingly, Mr. Kron's disclosure to Mr. Lo of any legal advice he obtained from his own attorneys without any agreement protecting the confidentiality of the disclosure "destroy[ed] the confidentiality upon which the privilege is premised." *See XYZ Corp.*, 348 F.3d at 22 (citing 2 Paul R. Rice, Attorney-Client Privilege in the U.S. § 9:79, at 357 (2d ed. 1999)). Counsel's instructions not to answer questions about the substance of that communication were improper.

As any purported privilege has been waived, this Court must compel the answers to the contested deposition questions.

### C. This Court Should Compel Plaintiffs to Produce the Agreement Between Kutak Rock and Plaintiffs and Answer Ingenico's Deposition Questions Regarding the Agreement, Because it Is Not Subject to Attorney-Client Privilege or Work Product Protection.

Attorney-client privilege "'extends to all communications made to an attorney or counsellor, duly qualified and authorized as such, and applied to by the party in that capacity, with a view to obtain his advice and opinion in matters of law, in relation to his legal rights, duties and obligations.'" *FDIC v. Ogden Corp.*, 202 F.3d 454, 461 (1st Cir. 2000) (quoting *Hatton v. Robinson*, 31 Mass. 416, 14 Pick. 416, 421 (Mass. 1833)).

In *United States v. Textron Inc.*, the First Circuit explained as follows:

> It is not enough to trigger work product protection that the subject matter of a document relates to a subject that might conceivably be litigated. Rather, as the Supreme Court explained, "the literal language of [Rule 26(b)(3)] protects

14

materials prepared for any litigation or trial as long as they were prepared by or for a party to the subsequent litigation." *Federal Trade Commission v. Grolier Inc.*, 462 U.S. 19, 25, 103 S. Ct. 2209, 76 L. Ed. 2d 387 (1983) (emphasis added). This distinction is well established in the case law. See, e.g., *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 138, 95 S. Ct. 1504, 44 L. Ed. 2d 29 (1975). Nor is it enough that the materials were prepared by lawyers or represent legal thinking. Much corporate material prepared in law offices or reviewed by lawyers falls in that vast category. It is only work done in anticipation of or for trial that is protected. Even if prepared by lawyers and reflecting legal thinking, "[m]aterials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes are not under the qualified immunity provided by this subdivision." Fed. R. Civ. P. 26 advisory committee's note (1970). Accord *Hickman v. Taylor*, 329 U.S. at 510 n. 9 (quoting English precedent that "[r]eports . . . if made in the ordinary course of routine, are not privileged").

577 F.3d at 29-30.

"As in the case of other privileges, '[t]he party seeking work product protection has the burden of establishing its applicability.'" *Felisberto v. Dumdey*, No. 19-12062-JGD, 2021 U.S. Dist. LEXIS 100705, at *5-6 (D. Mass. May 27, 2021) (quoting *In re Grand Jury Subpoena*, 220 F.R.D. 130, 140 (D. Mass. 2004)).

Here, Plaintiffs' counsel instructed deponents from AnywhereCommerce[9] and BBPOS not to respond to questions regarding an agreement that exists between Kutak Rock,[10] BBPOS, and

---

[9] Although this section focuses on instructions given to Mr. Kron, improper instructions not to answer Ingenico's questions were also directed to deponent Mitchell Cobrin. *See* Cobrin Dep. (relevant excerpts attached hereto as **Exhibit G**). The questions posed by Ingenico that elicited these instructions include the following:
- And so my question is, as a member of the board of Anywherecommerce, are you aware of how that was going to work with you and BBPOS jointly suing the defendants under these claims? [*Id*. at 43:21-24];
- And so my question is: If the plaintiffs prevail on this claim and secure an award of money from the defendants, is there an arrangement for who actually receives the money as between BBPOS and Anywherecommerce? [*Id*. at 46:25-47:4];
- So do you have any understanding of how BBPOS and AnywhereCommerce would divvy up any proceeds that might be received from this litigation? [*Id*. at 57:1-3]; and
- Do you have an understanding as to how the costs of this litigation are shared? [*Id*. at 57:21-22].

[10] Kutak Rock is the law firm representing Plaintiffs.

AnywhereCommerce, stating that such information was subject to attorney-client privilege.[11] *See* **Exhibit C** at 216:3-219:11, 224:5-225:20; **Exhibit F** at 88:17-91:20.[12][13] However, the information sought, such as the sharing of legal fees and litigation proceeds, would not compromise any alleged attorney-client privilege. *See FDIC v. Ogden Corp.*, 202 F.3d at 461; *In re Grand Jury Subp. (Zerendow)*, 925 F. Supp. at 855–56.

Plaintiffs also refused to produce the written agreement between Kutak Rock, BBPOS, and AnywhereCommerce. Defendants' requests for production propounded on AnywhereCommerce included the following:

---

[11] Plaintiffs did not object on the basis of work product protection. *See* **Exhibit C** at 216:3-225:17**; Exhibit F** at 88:17-91:20.

[12] The questions addressed to BBPOS that Plaintiffs' counsel objected to based on purported attorney-client privilege, and advised deponents not to answer, include the following:
- Is there an agreement in place between AnywhereCommerce andBBPOS as to how the proceeds -- if you were to win on count 8 and there was a judgment of money awarded, is there an agreement as to how that money would be split between AnywhereCommerce and BBPOS? [**Exhibit C** at 216:3-7];
- What is your agreement with AnywhereCommerce as it relates to the splitting of an award of damages in this case? [*Id. at* 217:4-6];
- What is the nature of that agreement [between Kutak Rock, BBPOS, and AnywhereCommerce]? [*Id*. at 224:25]; and
- Can you describe for me without getting into any of the details of what the agreement says what the subject matter of this [] agreement is? [*Id*. at 225:15-17].

[13] The questions addressed to Mr. Kron that Plaintiffs' counsel objected to based on purported attorney-client privilege, and advised deponents not to answer, include the following:
- Does that agreement [between BBPOS, AnywhereCommerce, and Kutak Rock] contain any provisions other than governing the provision and payment for legal services? [**Exhibit F** at 89:9-11];
- So I'm going to ask you to exclude from your answer any of counsel's legal advice or mental impressions that might be reflected in the document. But with that caveat what are the terms of this agreement? [*Id*. at 90:16-19];
- Does the agreement that you have between you, BBPOS and Kutak Rock contain any obligation of AnywhereCommerce other than the payment of legal fees? [*Id*. at 91: 5-7]; and
- And same question with respect to BBPOS. Does this agreement that you have with the three of you contain any obligation on the part of BBPOS other than the payment of legal fees? [*Id*. at 91:14-17].

16

**REQUEST NO. 19.** All documents concerning any joint defense agreement or common interest agreement with or among any of the following: BBPOS, AnywhereCommerce, any entity that did or is now doing business under the names HomeATM or HomeATM/AnywhereCommerce, and 4361423 Canada Inc.

Ingenico Inc.'s First Set of Requests for Production to AnywhereCommerce, Inc., 12 (attached hereto as **Exhibit H**). An identical request was propounded on BBPOS as Request No. 33. **Exhibit B** at 13. In response, both AnywhereCommerce and BBPOS allege, *inter alia*, that the request "seeks information or documents that are protected by the attorney-client privilege, seeks and/or encompasses information or documents containing the mental processes and/or legal theories of Plaintiff and its attorneys." AnywhereCommerce, Inc.'s Objections & Responses to Ingenico Inc.'s First Set of Requests for Production to AnywhereCommerce, Inc., 17 (attached hereto as **Exhibit I**); BBPOS's Objections & Responses to Ingenico Inc.'s First Set of Requests for Production to BBPOS Limited, 27-28 (attached hereto as **Exhibit J**). There is no identifiable mention of this document, much less any further detail as to the basis for this assertion, in either of Plaintiffs' privilege logs. *See* **Exhibits D, E**. Therefore, neither AnywhereCommerce nor BBPOS has met its "'burden of establishing [the] applicability'" of the work product protection and this Court should compel the production of the written agreement between Kutak Rock, BBPOS, and AnywhereCommerce. *See Felisberto*, 2021 U.S. Dist. LEXIS 100705, at *5-6.

Furthermore, Mr. Kron's deposition testimony reveals that at least part of the agreement included "the business terms between [Mr. Kron and Mr. Lo]," and business terms, as opposed to legal advice or work product prepared in anticipation of litigation, is discoverable information and not subject to privilege or protection. *See Textron Inc.*, 577 F.3d at 29-30; *Trustees of Boston U.*, 2015 WL 3407555, at *2.

In sum, the Court should mandate that AnywhereCommerce produce the Agreement between Kutak Rock, BBPOS, and AnywhereCommerce, and compel the deponent to answer the

17

related deposition questions.

## **CONCLUSION**

For the foregoing reasons, this Court should grant Ingenico's Motion to Compel.


December 24, 2021                           INGENICO INC., INGENICO CORP., and
                                            INGENICO GROUP S.A.

                                            By their attorneys,


                                            /s/ *Jeffrey K. Techentin*
                                            JOHN A. TARANTINO (BBO #492230)
                                            PATRICIA K. ROCHA (BBO #542348)
                                            NICOLE J. BENJAMIN (BBO #666959)
                                            JEFFREY K. TECHENTIN (*pro hac vice*)
                                            Adler Pollock & Sheehan P.C.
                                            One Citizens Plaza, 8th Floor
                                            Providence, RI 02903
                                            Tel: (401) 274-7200
                                            Fax: (401) 351-4607
                                            jtarantino@apslaw.com
                                            procha@apslaw.com
                                            nbenjamin@apslaw.com
                                            jtechentin@apslaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 24, 2021 I caused to be served via electronic mail a true copy of the within document on the following counsel of record:

Jonathon D. Friedmann, Esq.
Robert P. Rudolph, Esq.
Rudolph Friedmann LLP
92 State Street
Boston, MA 02109
JFriedmann@rflawyers.com
RRudolph@rflawyers.com

Oliver D. Griffin, Esq.
Peter N. Kessler, Esq.
Melissa A. Bozeman, Esq.
Kutak Rock LLP
303 Peach Street, N.E., Suite 2750
Atlanta, GA 30308
Oliver.griffin@kutakrock.com
Peter.kessler@kutakrock.com
Melissa.bozeman@kutakrock.com

Daniel Carmeli, Esq. (admitted *pro hac vice*)
Kutak Rock LLP
1801 California Street, Suite 3000
Denver, CO 80202
daniel.carmeli@kutakrock.com

Ricardo G. Cedillo, Esq.
755 E. Mulberry Ave., Ste 500
San Antonio, Texas 78212
rcedillo@lawdcm.com

/s/ *Jeffrey K. Techentin*
Jeffrey K. Techentin

1100721.v1