# EXHIBIT C

```
 1                UNITED STATES DISTRICT COURT
 2                 DISTRICT OF MASSACHUSETTS
 3
 4   ANYWHERE COMMERCE, INC. and    )
 5   BBPOS LIMITED,                 )
 6                      Plaintiffs, )
 7                   v.             )  CIVIL ACTION NO.:
 8   INGENICO INC., INGENICO CORP.  )  1:19-cv-11457-IT
 9   and INGENICO GROUPS, SA,       )
10                      Defendants. )
11   _____   )
12
13
14
15
16
17
18
19
20
21
22
23         The 30(b)(6) VIDEO DEPOSITION of BEN LO, taken in
24   the above-entitled cause, before Susan Steudel, official
25   reporter, on the 10th day of December, 2021
```



```
 1   APPEARANCES:
 2
 3        ADLER POLLOCK & SHEEHAN, P.C.
 4        Once Citizens Plaza, 8th Floor
 5        Providence, RI 02903-1345
 6        Ph:  401-274-1345
 7        Jtechentin@apslaw.com
 8        BY: Jeffrey K. Techentin,
 9             On behalf of the Defendants;
10
11        Kutak Rock
12        1760 Market Street, Suite 1100
13        Philadelphia, PA 19104-4104
14        Ph:  215-353-8484
15        Melissa.bozeman@kutakrock.com
16        BY: Melissa Bozeman,
17             On behalf of the Plaintiffs;
18
19   ALSO PRESENT: Mike Cooper, Videographer
20
21
22
23
24
25
```



1        Q.   This says that the partner and that's again --
2    again that's you; right?  BBPOS?
3        A.   Yes.
4        Q.   "The partner agrees that during or after the term
5             of this agreement it will not directly or
6             indirectly design or produce or assist in the
7             design or production of the devices or products
8             substantially similar to the devices for any
9             third party."  Do you see that?
10       A.   Yes.
11       Q.   When did this agreement, if it did -- let me ask
12   it this way.  Was this agreement ever terminated?
13       A.   Can you repeat your question.
14       Q.   Was this agreement ever terminated?
15       A.   No.
16       Q.   So at any point between May 4th of 2010 and today
17   has BBPOS directly or indirectly designed or produced or
18   assisted in the design or production of devices or
19   products substantially similar to the devices for any
20   third party?
21       A.   No.
22       Q.   This paragraph continues:
23            The partner agrees that, during or after the
24            term of this agreement, it will not directly or
25            indirectly design or produce or assist in the



```
 1        A.   I don't know.
 2   BY MR. TECHENTIN:
 3        Q.   Is there an agreement in place between
 4   AnywhereCommerce and BBPOS as to how the proceeds -- if
 5   you were to win on count 8 and there was a judgment of
 6   money awarded, is there an agreement as to how that money
 7   would be split between AnywhereCommerce and BBPOS?
 8        A.   Yes.  I think so, yes.
 9        Q.   What is that agreement?
10             MS. BOZEMAN:  Objection.  Attorney/client
11   privileged and I'll instruct the client not to answer.
12   BY MR. TECHENTIN:
13        Q.   Are you going to obey that instruction?
14        A.   Yes.
15        Q.   And I'd asked that specifically with respect to
16   count 8, but I'll ask it more generally.
17        A.   For this count 8 I don't know.
18        Q.   Let me ask the question.  Is there an agreement
19   in place that speaks to how any damages that would be
20   awarded in this case would be split between
21   AnywhereCommerce and BBPOS?
22        A.   Yes.
23        Q.   And what is that agreement?
24             MS. BOZEMAN:  What is the name of the agreement
25   are you asking?
```



1            MR. TECHENTIN:  I'll withdraw that.  I'll do that
2    differently.
3    BY MR. TECHENTIN:
4         Q.   What is your agreement with AnywhereCommerce as
5    it relates to the splitting of an award of damages in this
6    case?
7            MS. BOZEMAN:  Objection.  Attorney/client
8    privileged and I'll instruct the client not to answer.
9    BY MR. TECHENTIN:
10        Q.   Is this the agreement that I'm asking about right
11   now a written agreement between you and AnywhereCommerce?
12        A.   Between me and AnywhereCommerce?
13        Q.   You meaning BBPOS, yes.
14        A.   No.  Can I answer that?
15           MS. BOZEMAN:  Are you asking me?
16        A.   Yeah.
17           MS. BOZEMAN:  You can answer.
18        A.   Between BBPOS and -- no.  No.
19   BY MR. TECHENTIN:
20        Q.   Is there a written agreement between BBPOS and
21   AnywhereCommerce with respect to this litigation?
22        A.   Just two parties, do you mean?
23        Q.   No.  I don't mean to limit it to two parties.
24        A.   Yeah.  There are agreement in place, but there's
25   no agreement just AnywhereCommerce and BBPOS, two parties.



```
 1         Q.   There's an agreement between you,
 2    AnywhereCommerce and Kutak Rock; is that correct?
 3         A.   Yes.
 4         Q.   When did you enter into that agreement?
 5         A.   2018.
 6         Q.   When did you first discuss bringing a lawsuit
 7    against Ingenico with AnywhereCommerce?
 8         A.   It is also around 2018 or 2017.
 9         Q.   Who was there for that conversation?
10         A.   I just talk to our lawyer Oliver about the
11    litigation and about a case, about Ingenico steal our
12    trade secrets.  And then Oliver just give me some -- come
13    up with this lawsuit and suggest that we can join with
14    AnywhereCommerce as a plaintiff to file this lawsuit.
15         Q.   So the first conversation you had about
16    potentially filing a lawsuit was with Oliver?
17         A.   Yes.
18         Q.   Was Oliver your lawyer at that point?
19         A.   Oliver was introduced to me by one of our
20    potential -- one of our financial advisor.  And he was not
21    my lawyer at that period of time.
22         Q.   When did Oliver become your lawyer?
23         A.   After we talk about our case.  And then we sign
24    our agreement.  And then we file this litigation.  And
25    then Oliver become our lawyers.
```



1       Q.  Is the agreement that you signed that you just
2   mentioned now, is that the same agreement that you were
3   talking about before with the three parties, you,
4   AnywhereCommerce and Kutak Rock?
5       A.  I believe before that we have one more engagement
6   letter with Kutak Rock.  Before we sign the agreement
7   between Anywhere Commerce, BBPOS and Kutak Rock we also
8   sign engagement letter with Kutak Rock.
9       Q.  You have a separate engagement letter with Kutak
10  Rock; is that right?
11      A.  Yes.
12      Q.  Does that engagement letter set forth the terms
13  by which Kutak Rock is providing their legal services to
14  you?
15      A.  I think that letter is -- is engagement letter
16  between BBPOS and Kutak Rock because after -- it's not
17  just this case.  Kutak Rock also represent us in some like
18  defence case.
19          MS. BOZEMAN:  Don't --
20  BY MR. TECHENTIN:
21      Q.  I don't need to know.  I think you're saying that
22  is a general engagement letter?
23      A.  Yeah.  A general engagement letter.
24      Q.  But does that general engagement letter set forth
25  the legal fees or whatever you have to pay in exchange for



```
 1   litigation.
 2           Who initiated that conversation?
 3        A.  With Michael Kron?  I don't remember.
 4        Q.  Did he call you?  Did you call him?  Was there a
 5   meeting set up?
 6        A.  Meeting?  Most likely Michael Kron call me.
 7        Q.  What was discussed during that conversation?
 8           MS. BOZEMAN:  I'm going to caution you.  If it
 9   involves either communications with attorneys that reveal
10   legal strategy or legal advice then you cannot speak to
11   that portion of the conversation.  But if there was
12   anything unrelated you can talk about that.
13        A.  Michael Kron also said he had unfair treatment by
14   Ingenico and that he's also angry.  So this is the
15   conversation, it's like that.
16   BY MR. TECHENTIN:
17        Q.  Did you talk about the possibility of joining
18   together in litigation?
19        A.  Yes.
20           MS. BOZEMAN:  Objection.  To the extent that it
21   involves legal strategy, I don't want you to answer the
22   question, but otherwise you can talk.
23   BY MR. TECHENTIN:
24        Q.  Did you have a lawyer at this point when you were
25   talking with Michael Kron?  Did you have a lawyer who was
```



```
 1  representing you against Ingenico?
 2      A.  Did have I a lawyer at that period of time?  Do I
 3  have a lawyer?  Do I find a lawyer, you mean?
 4      Q.  No.  Did you have a lawyer representing you
 5  against Ingenico when you were talking to Michael Kron?
 6      A.  No.
 7      Q.  Did you discuss with Michael Kron potential
 8  sharing of legal expenses?
 9      A.  Yes.
10      Q.  What did you discuss?
11          MS. BOZEMAN:  Objection to the content.
12  Attorney/client privileged and I will instruct the client
13  not to answer.
14  BY MR. TECHENTIN:
15      Q.  Are you going to abide by your counsel's
16  instruction?
17      A.  Yes.
18      Q.  Did you discuss with him the topic of potential
19  litigation proceeds or damages?
20      A.  No.
21      Q.  Did you discuss entering into a joint defence
22  agreement?
23      A.  We -- you mean in the meantime do I discuss with
24  Michael Kron about entering agreement?  I think at that
25  meeting, no, we don't need to talk about that.
```



1        Q.   Did that come up at some point?
2        A.   Yeah, many time.
3        Q.   Between you and Michael Kron?
4        A.   And also Kutak Rock.
5        Q.   Do you have a joint defence agreement with
6    AnywhereCommerce?
7        A.   Joint defence.
8             MS. BOZEMAN:  If you know, you can answer.
9        A.   I don't know.
10   BY MR. TECHENTIN:
11       Q.   Do you have any agreements relating to this
12   litigation with AnywhereCommerce other than that agreement
13   between you, Kutak Rock and AnywhereCommerce?
14       A.   No.
15       Q.   And that's a written agreement?
16       A.   You mean the agreement between me and
17   AnywhereCommerce?  No.  Just an agreement between me and
18   AnywhereCommerce and Kutak Rock.  That's the agreement
19   about this litigation, but we don't have a separate
20   agreement between BBPOS and AnywhereCommerce about this
21   litigation, no.
22       Q.   Right.  I'm asking about the one that Kutak Rock
23   is a party to.  Is that agreement in writing?
24       A.   Yes.
25       Q.   What is the nature of that agreement?



```
1        A.   Do I need to answer this question?
2        Q.   Unless she instructs you not to, yes.
3             MS. BOZEMAN:  Objection to that question.
4        A.   Is this client/lawyer privilege?  Do I need to
5   answer this question.
6             MS. BOZEMAN:  I'm going to instruct you not to
7   answer this question to the extent that your answer would
8   involve legal strategy or legal advice related to the
9   litigation.  So if there's anything otherwise appropriate
10  to disclose, you can.
11       A.   So in this agreement there's just a -- I'm
12  uncomfortable to answer this question.  This is more a
13  lawyer/client privilege.
14  BY MR. TECHENTIN:
15       Q.   Can you describe for me without getting into any
16  of the details of what the agreement says what the subject
17  matter of this the agreement is?
18            MS. BOZEMAN:  Objection.  Attorney/client
19  privileged.  I'm going to instruct the client not to
20  answer.
21  BY MR. TECHENTIN:
22       Q.   You are going to abide by that?
23       A.   Yes.
24       Q.   What was your motivation for joining together
25  with AnywhereCommerce to bring this litigation?
```

