UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANYWHERECOMMERCE, INC. and BBPOS LIMITED,<br><br>　　Plaintiffs,<br><br>　　　　v.<br><br>INGENICO INC., INGENICO CORP., and INGENICO GROUP SA,<br><br>　　Defendants. | Civil Docket No: 1:19-cv-11457-IT<br><br>REQUEST FOR ORAL ARGUMENT<br><br>Pursuant to Rule 7.1(d) of the Local Rules of the United States District Court for the District of Massachusetts, counsel request a hearing on Defendants' Motion. |

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL

## Table of Contents

Memorandum of Law In Support of Plaintiffs' Opposition to Defendants' Motion to Compel.....1

I. INTRODUCTION………………………………………………………………………....1

II. ARGUMENT…………………………………………………………………………..2

A.   BBPOS Has No Obligation to Create Sales and Profit Records Concerning Mobile Point-Of-Sale Technology Through the Present……………………………………………2

B.   Plaintiffs Properly Asserted Privilege…………………………………………………..5

    1.   Both BBPOS and AnywhereCommerce Have Properly Asserted Privilege…...….5

    2.   Deponents Should Not Be Compelled to Answer Defendants' Questions Regarding a Conversation That Occurred In 2017 Between Mr. Kron and Mr. Lo Because This Communication is Privileged……………………………7

    3.   The Agreement Among Kutak Rock, BBPOS and AnywhereCommerce Is Protected by Attorney-Client Privilege and Work Product Doctrine…………..…11

III. CONCLUSION……………………………………………………………………………12

## I. INTRODUCTION

Nearly a year ago, BBPOS Limited ("BBPOS") completed a massive production of responsive sales and financial information (some, apparently, existed and therefore were produced in a format, which Defendants seem to now find useful, in accord with the parties stipulated ESI protocol). Defendants' motion to compel, in part, seeks to reopen fact discovery or otherwise compel Plaintiffs to create sales and financial documents that do not currently exist. But, of course, document requests are for the production of documents which already exist. Not only do Defendants' efforts in this regard come too late, it is an improper attempt to expand the scope of permissible discovery and avoid the burden of engaging in a proper document review (which they had nearly a year to do and, yet, seemingly did not).

The other aspect of their motion to compel seeks to break privilege on both faulty legal and factual bases. Plaintiffs' privilege logs provide sufficient detailed information about the circumstances, the parties and the topics of the communications sufficient to demonstrate their privileged nature. Moreover, Defendants' suggestion that communicants would have to be *attorneys* in order for attorney-client privilege protections to apply is contrary to Massachusetts law. While it is a mystery to Plaintiffs what Defendants may hope to gain in this endeavor, their motives are immaterial. The documents and information are privileged, and, therefore, insusceptible to any compelled disclosure, absent Plaintiffs' knowing waiver of these protections, which shall not be forthcoming.

In short, Defendants' motion to compel appears, in part, last-ditch attempt to remedy a perceived failure of proofs in prosecuting their counterclaims before the close of fact discovery and means of satisfying a curiosity, which was peaked during Plaintiffs' recent depositions, to improperly intrude on the clearly privileged communications of Plaintiffs, having no factual

relevance or articulated bearing on the claims and defenses in the case. It should be denied, summarily.

## II. ARGUMENT

**A.   BBPOS Has No Obligation to Create Sales and Profit Records Concerning Mobile Point-Of-Sale Technology Through the Present.**

BBPOS has no obligation to newly create the specified sales and profit records, as Defendants demand by way of their motion, concerning all magnetic stripe, EMV, and Bluetooth card readers for the years 2010-2014 and from 2018 through the present. BBPOS already produced all non-privileged, existing documents, in its custody, possession, or control, which were responsive to Defendants' Request Nos. 41, 43, and 44, pursuant to the parties' agreed-upon ESI protocol. The number of documents produced by BBPOS, as believed to be responsive to these requests, are conservatively estimated to exceed 9,276 documents. See **Exhibit 1, Declaration of Melissa Bozeman ("Bozeman Decl."), ¶ 3, Exhibit A**.

Pursuant to the Stipulated Order Regarding Discovery of Electronically Stored Information and Hard Copy Documents, which was entered by the Court on March 30, 2020 (No. 102) (the "ESI Order"), the parties agreed to engage in document discovery in this case in a manner consistent with the ESI protocol set forth in this ESI Order, as to be supplemented through additional party disclosures. These additional disclosures were subject to heavy negotiations amongst the parties over the next month and ultimately stipulated parameters were reached for each of the parties.

On April 30, 2020, Plaintiffs circulated their "Stipulated Parameters for Plaintiffs' ESI Searches." A true and correct copy of this letter is attached hereto as **Exhibit 2**. Exhibit A thereto sets forth the specifics of the agreed-upon search parameters for Plaintiffs' document productions, which identified the respective custodians, data sources, time periods, and search terms, which was

then provided to Plaintiffs' retained e-vendor for implementation and extraction. Plaintiffs' e-vendor went to the identified custodians, ran searches in accordance with the search and extraction parameters for the agreed-upon time period and extracted responsive materials in accordance therewith. *See* Dep. Ben Lo at 227:6-25 – 230:1-10 (relevant excerpts attached hereto as **Exhibit 3**), and Rule 30(b)(b) Dep. of AnywhereCommerce, Inc. ("AnywhereCommerce") at 43:9-25 – 45:1-8 (relevant excerpts attached hereto as **Exhibit 4**).

Plaintiffs' e-vendor then created an electrotonic repository for these extracted documents to be reviewed for relevancy and privilege and for production to Defendants in the normal course. The negotiated ESI process resulted in the timely production of many sales and profit records of BBPOS related to magnetic stripe, EMV, and Bluetooth card readers over the applicable time period. Thousands of these types of records were produced by BBPOS in three separate production tranches, which occurred on November 5, 2020, December 23, 2020, and January 12, 2021. There were no complaints from Defendants over the ensuing year they had to review these documents.

On the eve of the close of fact discovery, during the final hour of the very last deposition to be taken in the case, Defendants for the first time hinted at an evidentiary problem, identified by an expert, perhaps, in trying to calculate alleged damages associated with BBPOS's sales of mPOS devices under Ingenico Inc.'s breach of contract counterclaim. In follow up communications on the matter, Defendants' counsel demanded that Plaintiffs review the entire BBPOS production to pinpoint precisely where in the production apparently useful sales and profit information may reside or otherwise newly created sales and profit information in a particularly requested format. A true and correct copy of the email thread is attached hereto as **Exhibit 5**.

There was no obvious means to even begin the process of substantively responding to

Defendants' counsel's demand in this regard.  Ultimately, however, Plaintiffs settled on directing the e-vendor to formulate a search of BBPOS's production to return all produced excel spreadsheets, invoices, and P.O.s (purchase orders), as follows: "bates(bbpos!) & (type(excel) invoice! "P.o." "PO")."  This search returned 9,276 responsive documents, representing an unknown (massive) number of pages. (*See* Bozeman Dec. ¶ 3).  Thus, Plaintiffs determined Defendants' demand was unreasonable as it would require a nearly impossible undertaking under prevailing time constraints and would present an improper attempt by Defendants to shift the burden of their (and/or their expert's) review and analysis of BBPOS's sales and profit information to Plaintiffs.

"Fed. R. Civ. P. 34(a)(1) authorizes a party to request the production of documents within the responding party's possession, custody, or control. Documents are considered to be under a party's control when that party has the right, authority or ability to obtain those documents upon demand." *Szulik v. State St. Bank & Tr. Co.*, No. CIV.A. 12-10018-NMG, 2014 WL 3942934, at *1 (D. Mass. Aug. 11, 2014) (citations and quotation marks omitted.)  Courts, however, cannot compel a party to create a document that does not exist.

Here, BBPOS produced a massive amount of sales and profit information, in accordance with the negotiated ESI search and extraction parameters, which were carried out by an independent, uninterested, and retained litigation services provider specializing in e-discovery matters.  There is no rule, and no case law, stating that a responding party has a duty to create a new business record specially tailored to the pending request.  Thus, Defendants' unreasonable demand that Plaintiffs be ordered to review thousands of documents to pinpoint documents that may be helpful to Defendants or create special reports for them should be denied.

### B. Plaintiffs Properly Asserted Privilege.

"[T]he essential elements of the attorney-client privilege: (1) where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived." *Trustees of Boston U. v. Everlight Elecs. Co., Ltd.*, CIV.A. 12-11935-PBS, 2015 WL 3407555, at *2 (D. Mass. May 27, 2015) (citing *United States v. MIT*, 129 F.3d 681, 684 (1st Cir.1997) (quoting 8 J. Wigmore, Evidence § 2292, at 554 (McNaughton rev.1961))).

The work product doctrine "shields from discovery 'documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).'" *United States v. Mass. Gen. Hosp.*, 475 F. Supp. 3d 45, 61 (D. Mass. 2020) (quoting Fed. R. Civ. P. 26(b)(3)(A)).

#### 1. Both BBPOS and AnywhereCommerce Have Properly Asserted Privilege

Defendants are erroneously relying on *Neelon v. Krueger*, Civil Action No. 12-cv-11198-IT, 2015 U.S. Dist. LEXIS 29146 (D. Mass. Mar. 10, 2015) for the proposition that the descriptions must "satisfy each element required for protection." *Id*. at *7. This order purports to impose a level of detail in a privilege log that is inconsistent with First Circuit case law. The First Circuit approach is more consistent with Rule 26(b)(5) itself, which requires only that the party "expressly make the claim" and "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(i), (ii); *Bryan Corp. v. Chemwerth, Inc.*, 296 F.R.D. 31, 41 (D. Mass. 2013). Thus,

Defendnats and their erroneous reliance on *Neelon* seek to impose a standard for privilege logs that is not required in the First Circuit.

Defendants identify two entries on BBPOS's privilege log – i.e., two emails between Michael Kron, the current CEO of AnywhereCommerce, and Ben Lo of BBPOS dated March 28, 2017 and April 15, 2017 – that they claim to be improperly designated as attorney-client privileged. The email dated March 28, 2017 includes the following description: "Email providing confidential information necessary to render legal advice regarding internal investigation." The email dated April 15, 2017 is described as: "Email providing legal advice regarding pending or potential litigation." These descriptions are sufficient as they expressly make the claim and describe the nature of the documents in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim. Mr. Lo and Mr. Kron were respective agents of BBPOS and non-party, 4361423 Canada Inc. ("436 Canada"), at the time of their correspondences at issue in 2017. Their interests, represented by their separately retained attorneys, were aligned in opposing Ingenico's demand for indemnity directed to BBPOS under the BBPOS-ROAM licensing agreement relative to a claim for alleged patent infringement. Because BBPOS and 436 Canada had a common legal interest at the time of these communications, they are protected by the privilege, and the privilege has not been waived because there was no sharing of this information with any third party. *See* Subsection 2, below.

The documents labeled ACPL-000544 and ACPL-000545, which are described in the AnywhereCommerce privilege log as "Email providing legal advice rega[r]ding pending or potential litigation," are likewise privileged, even though no attorneys are among the senders or recipients of either email. *See*, *e.g.*, *Crane Sec. Techs., Inc. v. Rolling Optics, AB*, *supra* at 22 (D. Mass. 2017).

Plaintiffs' respective privilege log categories reveal that sufficient information has been provided to determine that the communications are privileged and correctly identify the nature of the privileges claimed. It would be clear error to require Plaintiffs to disclose what the legal advice was or the actual content of the communications—then Defendants would claim waiver by disclosure of privileged communications. Plaintiffs did their best to disclose enough about the communications topics, scenario, and timeframe to demonstrate their privileged nature without disclosing actual privileged content. Defendants therefore purport to impose specificity requirements in a manner unsupported by Fed. R. Civ. P. 26(b)(5) or First Circuit case law.

2. **Deponents Should Not Be Compelled to Answer Defendants' Questions Regarding a Conversation That Occurred In 2017 Between Mr. Kron and Mr. Lo Because This Communication is Privileged**

Defendants summarily argue that only communications with an attorney are privileged. However, the attorney-client communication privilege applies to "communications (1) between the client or the client's representative and the client's attorney or the attorney's representative, (2) between the client's attorney and the attorney's representative, (3) between those involved in a joint defense, (4) between representatives of the client or between the client and a representative of the client, or (5) among attorneys and their representatives representing the same client." Mass. G. Evid. § 502(b). *See Hanover Ins. Co. v. Rapo & Jepsen Ins. Services, Inc.*, 870 N.E.2d 1105, 1111 (Mass. 2007) (the attorney-client privilege "not only protects statements made by the client to the attorney in confidence for the purpose of obtaining legal advice in a particular matter, but also protects such statements made to or shared with necessary agents of the attorney or the client, including experts consulted for the purpose of facilitating the rendition of such advice."). *See also Crane Sec. Techs., Inc. v. Rolling Optics, AB*, 230 F. Supp. 3d 10, 22 (D. Mass. 2017) (clients may

7

communicate among each other on matters of common interest without waiving the attorney client privilege).

In *Crane Sec. Techs., Inc. v. Rolling Optics, AB*, 230 F. Supp. 3d 10, 22 (D. Mass. 2017), the court held that "[t]he fact that communications are between nonlawyers does not per se waive the privilege." *Id*. at 21–22.  The court described this holding as "uncontroversial" and cited a number of district court cases to support its reasoning.  *See id*. at 22 ("In *In re Prograf Antitrust Litigation*, No. 1:11-md-02242-RWZ, 2013 WL 1868227, *1, 3 (D. Mass. May 3, 2013), the idea that non-lawyers could discuss or relay legal advice without copying an attorney was so uncontroversial that Judge Zobel, incorporating it into her ruling, did not even discuss it.  Other courts have held the same."); *see id*. (citing *Gucci America, Inc. v. Gucci*, 2008 WL 5251989, *1 (S.D.N.Y. Dec. 15, 2008) (if privileged information is shared between parties that have a common legal interest, "the privilege is not forfeited even though no attorney either creates or received that communication"); *INVISTA North America S.a.r.l. v. M&G USA Corp.*, 2013 WL 12171721, *1, *5 (D. Del. Jun. 25, 2013) (common-interest doctrine protects communications between non-attorneys); *IBJ Whitehall Bank & Trust v. Cory & Associates, Inc.*, 1999 WL 617842, at *6-7 (N.D. Ill. Aug. 12, 1999) (attorney-client privilege exists for communications between non-lawyers: "[s]o long as the parties keep the advice within their circle of common interest, the privilege is not waived"); *McCook Metals LLC v. Alcoa Inc.*, 192 F.R.D. 242, 255 (N.D. Ill. Mar. 2, 2000) ("[I]t appears implicit in present day litigation with multiple attorneys required for proper representation that attorneys must be allowed to confer with each other regarding the representation of a client on a privileged basis in the same way that clients must be able to discuss the advice of counsel amongst themselves on a privileged basis" (citations omitted)); *see also Heidelberg Harris, Inc. v. Mitsubishi Heavy Industries, Ltd.*, No. 95 C 0673, 1996 WL 514997, *1 (N.D. Ill. Sept. 6, 1996)

8

("Of necessity, communications between their respective counsel - and between themselves as communicators of their counsels' opinions are well within the common legal interest extension of the attorney-client privilege."); *cf. United States v. Gotti*, 771 F. Supp. 535, 545 (E.D.N.Y. July 19, 1991) ("The defendants would extend the application of the joint defense privilege to conversations among the defendants themselves even in the absence of any attorney during the course of those conversations. Such an extension is supported neither in law nor in logic and is rejected.").

Defendants essentially argue in their motion that, at any time before a lawsuit initiated, to the extent that (1) two co-parties have a discussion outside the presence of legal counsel; (2) where at least one party has not yet formally engaged joint counsel; and (3) where there is no specific agreement to keep the content of that communication confidential; then (4) there is no basis to claim the protections of attorney-client privilege as to that communication.

This is not true. It is neither an accurate articulation of Massachusetts law on the "common interest doctrine"; nor does it fairly represent the factual deposition testimony given on the topic by Mr. Kron and Mr. Lo.

The common interest doctrine will preserve attorney-client privilege as to a communication between two parties to the extent that the parties have a common interest in the legal advice. *See F.D.I.C. v. Ogden Corp.*, 202 F.3d 454 (1st Cir. 2000). It does not matter if an attorney is present for the communication – the doctrine can apply to communications outside the presence of any counsel. *See Crane Sec. Techs., Inc. v. Rolling Optics, AB*, *supra* at 22 (D. Mass. 2017).

Moreover, Defendants' selective summarization and cherry-picked quotes from Mr. Kron's deposition do not fairly depict the entirety of Mr. Kron's testimony on this topic, and

9

conveniently wholly ignore Mr. Lo's relevant testimony on BBPOS's retention of Kutak Rock, which undermine Defendants' arguments in this regard.

As to Mr. Kron's testimony, Defendants fail to acknowledge that, irrespective of the participants to the call and formalization of engagements, Mr. Kron was unequivocal in confirming that the content of this telephone discussion with Mr. Lo entirely was limited to the legal advice[1] that AnywhereCommerce had obtained from Kutak Rock, or vice versa, in evaluating whether or not to bring this lawsuit.  Exhibit 4 at 80:20-25 – 85:1-10.  Mr. Kron was not able to pinpoint a specific time frame for this call other than recalling that a call had occurred sometime prior to the initiation of the lawsuit, likely in 2017, at a time when AnywhereCommerce was seeking legal advice on the merits of initiation a lawsuit against Ingenico.  *Id.*  He testified that he believed Kutak Rock initiated contact with BBPOS upon learning the circumstances of the trade secret theft through the evaluation of AnywhereCommerce's claims but was uncertain of the exact timing.  *Id.*

Mr. Lo, however, testified that he initiated BBPOS's first contact with Kutak Rock – and that it had not been initiated by Kutak Rock, nor through an introduction by AnywhereCommerce or Mr. Kron.  *See* Rule 30(b)(6) Dep. Of BBPOS at 220:9-25 – 226:1-4 (relevant excerpts attached hereto as **Exhibit 6)**.  Specifically, Mr. Lo testified that, after a business advisor to BBPOS, at the time, ("JT"), heard the circumstances of Ingenico's trade secret theft, this advisor suggested that Mr. Lo talk to Kutak Rock about the possibility of initiating a lawsuit. *Id.*

---

[1] In an exchange between Defendants' counsel and Mr. Kron, Mr. Kron testified as follows:
    11 Q. So excluding counsel's legal advice or mental
    12 impressions that might have been shared with you what were
    13 the general subject matter topics that you discussed with
    14 Mr. Lo in this conversation?
    15 **A. There was nothing that wasn't part of discussions**
    16 **with counsels. Either my discussions with my counsel or**
    17 **his discussion with his counsel.**
Exhibit 4 at 84:11-17 (emphasis added).

Lastly, Mr. Kron testified that contractual confidentiality obligations were long in place between the two companies, and that he considered the content of their discussions regarding this lawsuit or potential lawsuit to be confidential in nature. Exhibit 4 at 102:10-22. Nothing in Mr. Lo's testimony contradicts Mr. Kron's understanding of mutual confidentiality obligations between the two companies.

Thus, these communications are protected by the attorney-client privilege, and Defendants' motion should be denied, and Plaintiffs' counsel properly instructed Mr. Kron and BBPOS not to respond to a series of deposition questions regarding these conversations.

### 3. The Agreement Among Kutak Rock, BBPOS and AnywhereCommerce Is Protected by Attorney-Client Privilege and Work Product Doctrine.

The agreement among Kutak Rock, BBPOS and AnywhereCommerce is subject to attorney-client privilege because it contains the mental processes and/or legal theories of Plaintiffs and information, which can be considered legal analysis. Accordingly, Plaintiffs' counsel properly instructed deponents from AnywhereCommerce and BBPOS not to respond to questions regarding said agreement. Moreover, the engagement letter has not been requested, and therefore Plaintiffs have no obligation to produce it.

Likewise, the documents sought by REQUEST NO. 19, *i.e.*, all documents concerning any joint defense agreement or common interest agreement with or among any of the following: BBPOS, AnywhereCommerce, any entity that did or is now doing business under the names HomeATM or HomeATM/AnywhereCommerce, and 4361423 Canada Inc., are privileged. Moreover, such documents are completely irrelevant to any claims or defenses asserted in this litigation.

Defendants argue that Mr. Kron's deposition testimony reveals that at least part of the agreement included "the business terms between [Mr. Kron and Mr. Lo]," and business terms, as

11

opposed to legal advice or work product prepared in anticipation of litigation, is discoverable information and not subject to privilege or protection. However, the law is clear that confidential advice from an attorney does not lose its privileged character merely because it affects business plans or is conveyed within a document that also has non-privileged information. *See United States v. Windsor Capital Corp.,* 524 F. Supp. 2d 74, 81 (D. Mass. 2007) (A communication primarily or predominantly for the purpose of legal advice does not lose its privileged character "by reason of the fact that it also dealt with nonlegal matters.").

Therefore, AnywhereCommerce should not have to produce the Agreement between Kutak Rock, BBPOS, and AnywhereCommerce, and no deposition questions should be asked about the same.

### III. CONCLUSION

For the foregoing reasons, this Court should deny Defendants' Motion to Compel.

Dated this 31st day of December, 2021

        KUTAK ROCK LLP

        */s/ Melissa A. Bozeman*
        MELISSA A. BOZEMAN
        OLIVER D. GRIFFIN
        PETER N. KESSLER
        Kutak Rock LLP
        1760 Market Street, Suite 1100
        Philadelphia, PA 19103
        Tel: (215) 288-4384
        Fax: (215) 981-0719
        Melissa.bozeman@kutakrock.com
        Oliver.griffin@kutakrock.com
        Peter.kessler@kutakrock.com

        DANIEL CARMELI
        Kutak Rock LLP
        1801 California Street, Suite 3000
        Denver, Colorado 80202
        Tel: (303) 297-2400

Fax: (303) 292-7799
Daniel.carmeli@kutakrock.com

JONATHON D. FRIEDMANN
ROBERT P. RUDOLPH
Rudolph Friedmann LLP
92 State Street
Boston, MA 02109
Tel: (617) 723-7700
Fax: (617) 227-0313
jfriedmann@rflawyers.com
rrudolph@rflawyers.com

RICARDO G. CEDILLO
Davis, Cedillo & Mendoza, Inc.
755 E. Mulberry Ave., Ste 500
San Antonio, Texas 78212
Tel: (210) 822-6666
Fax: (210) 822-1151
rcedillo@lawdcm.com

*Counsel for Plaintiffs AnywhereCommerce, Inc. and BBPOS Limited*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on December 31, 2021, a true and correct copy of the above and foregoing was filed with the Clerk of the Court for the District Court of Massachusetts by using the CM/ECF system which will send notice of electronic filing to all counsel of record.

*/s/ Melissa Bozeman*
Attorney for Plaintiffs