```
                                               Page 1
 1            UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MASSACHUSETTS
 2
 3
 4
 5
    ANYWHERECOMMERCE, INC. and
 6  BBPOS LIMITED
 7       VS.                    C.A. No. 1:19-cv-11457-IT
 8  INGENICO, INC., INGENICO
    CORP., INGENICO GROUP, SA,
 9  and INGENICO VENTURES SAS
10
11
12
13
14
15      VIDEOTAPED WEB CONFERENCE DEPOSITION OF
16                      BEN LO
17
18               December 8, 2021
19                 12:30 p.m.
20
21
22
23           Denise A. Webb, CSR, RPR
24
25
```

```
                                               Page 2
 1              APPEARANCES OF COUNSEL
 2
 3
 4  COUNSEL FOR THE PLAINTIFFS:
    LAW OFFICES OF KUTAK ROCK, LLP
 5  1801 CALIFORNIA STREET, SUITE 3000
    DENVER, COLORADO  80202
 6  BY:  OLIVER D. GRIFFIN, ESQUIRE
    BY:  MELISSA A. BOZEMAN, ESQUIRE
 7  oliver.griffin@kutakrock.com
    melissa.bozeman@kutakrock.com
 8
    COUNSEL FOR THE DEFENDANTS:
 9  LAW OFFICES OF ADLER, POLLOCK & SHEEHAN
    ONE CITIZENS PLAZA, 8TH FLOOR
10  PROVIDENCE, RHODE ISLAND  02903
    BY:   JEFFREY K. TECHENTIN, ESQUIRE
11  jtechentin@apslaw.com
12
13  ALSO PRESENT:  HEIDI STUART, VIDEOGRAPHER
14
15
16
17
18
19
20
21
22
23
24
25
```

```
                                               Page 3
 1                    I N D E X
 2
 3
 4  WITNESS:                                       PAGE
 5  BEN LO
 6      EXAMINATION BY MR. TECHENTIN . . . . . . . .7
 7
 8
 9
10             E X H I B I T S
11
12  NO.          DESCRIPTION: DEFENDANT'S          PAGE
13  Exhibit 1    First Amended Complaint . . . . . .235
                 (65pp)
14
    Exhibit 37   PCI Security Standards . . . . . . .235
15               Council   (17pp)
16  Exhibit 38   Third Amended  . . . . . . . . . . .235
                 Objections and Answers
17               (15pp)
18  Exhibit 39   History of Invention   . . . . . . .235
                 (3pp)
19
    Exhibit 40   E-mail string  (3pp) . . . . . . . .235
20
    Exhibit 41   E-mail dated 7/23/12   . . . . . . .235
21               (2pp)
22  Exhibit 42   E-mail dated 2/16/12   . . . . . . .235
                 (1p)
23
    Exhibit 43   E-mail string  (2pp) . . . . . . . .235
24
25
```

```
                                               Page 4
 1  INDEX PAGE CONTINUED:
 2
 3  NO.          DESCRIPTION: DEFENDANT'S          PAGE
 4  Exhibit 44   E-mail dated 8/4/10  . . . . . . . .235
                 (1p)
 5
    Exhibit 45   E-mail string  (2pp) . . . . . . . .235
 6
    Exhibit 46   E-mail string  (6pp) . . . . . . . .235
 7
    Exhibit 47   E-mail dated 2/2/12  . . . . . . . .235
 8               (4pp)
 9  Exhibit 48   E-mail string  (2pp) . . . . . . . .235
10  Exhibit 49   E-mail dated 6/5/12  . . . . . . . .235
                 (2pp)
11
    Exhibit 50   E-mail string  (4pp) . . . . . . . .235
12
    Exhibit 51   E-mail string  (6pp) . . . . . . . .235
13
    Exhibit 52   E-mail dated 6/13/12   . . . . . . .235
14               (1p)
15  Exhibit 53   Correspondence dated . . . . . . . .235
                 6/15/12  (1p)
16
17
18
19
20
21
22
23
24
25
```



Page 5

1  (DEPOSITION COMMENCED AT 12:32 P.M.)
2              BEN LO,
3  being duly sworn, deposes testifies as follows:
4          THE REPORTER:  Would you please state
5   your name for the record.
6          THE VIDEOGRAPHER:  This is media unit
7   one to the video recorded deposition of Ben Lo in
8   the matter of AnywhereCommerce, Inc., et al.
9   versus Ingenico, Inc., et al., heard before the
10  United States District Court for the District of
11  Massachusetts, Case Number 1:19-cv-11457-IT.
12     This deposition is being held remotely using
13  Esquire Control Remote Technology, and the
14  witness is located in Vancouver, Canada on
15  December 8, 2021 at 9:36 a.m.
16     My name is Heidi Stuart, and I'm the
17  videographer.  The Court Reporter is Denise Webb.
18  Counsel, will you please introduce yourselves and
19  your affiliations, and the witness will be sworn.
20          MR. TECHENTIN:  Jeffrey Techentin at
21  Adler Pollock & Sheehan, P.C. on behalf of the
22  defendants.
23          MR. GRIFFIN:  Oliver Griffin, Kutak
24  Rock, on behalf of the plaintiffs and the witness
25  today.

Page 6

1          MS. BOZEMAN:  Melissa Bozeman, Kutak
2  Rock, on behalf of the plaintiffs.
3          THE WITNESS:  Ben Lo.
4          MR. TECHENTIN:  Good morning, Mr. Lo.
5  My name is Jeffrey Techentin.  As I said a few
6  moments ago, I'm from the law firm of Adler
7  Pollock & Sheehan, and I'm here today
8  representing the defendants.
9     I have some -- I'll have some questions for
10  you, but before we get into that, I'd like to get
11  on the record an agreement that I think we have
12  between the plaintiffs and the defendants
13  regarding this deposition.
14     And it is the following:  That this
15  deposition, which is being conducted remotely
16  over Zoom, with the court reporter who's located
17  in Rhode Island, with yourself in Vancouver,
18  Canada, is duly noticed and taken under Rule 30
19  of the Federal Rules of Civil Procedure, and that
20  it may be used in this case as a deposition in
21  compliance with Rule 30.  Counsel, do I have
22  agreement on that?
23          MR. GRIFFIN:  Yes.
24          MR. TECHENTIN:  Thank you.
25

Page 7

1      EXAMINATION BY MR. TECHENTIN:
2  Q. Good morning, Mr. Lo.  Before we get started,
3     maybe I'll just ask you, have you ever given a
4     deposition before?
5  A. Yes.
6  Q. How many times?
7  A. One.
8  Q. And in what circumstance did you give a
9     deposition previously?
10  A. We were suing a company in the U.S., and I'm
11     one of the witnesses to give the deposition.
12  Q. When did that happen, your deposition?
13  A. Five years ago.
14  Q. Were you a party to that litigation?
15  A. Yes.
16  Q. Personally or your company?
17  A. My company.
18  Q. Was that BBPOS Limited?
19  A. Yes.
20  Q. And who was the defendant in that case?
21  A. Samsung Pay.
22  Q. Were there any other parties to the case other
23     than BBPOS Limited and Samsung Pay?
24  A. No.
25  Q. Were you represented?

Page 8

1  A. Yes.
2  Q. By whom?
3  A. What?  Can you say again?
4  Q. Who represented you?
5  A. Who represent -- I forget that.  I forget
6     that.
7  Q. You had a lawyer though?
8  A. I have a lawyer, yes.
9  Q. And you don't remember who the lawyers were for
10     you in the litigation with Samsung?
11  A. I forget.  It was not arranged by me.
12  Q. It appears your lips are moving.  I don't know if
13     you're actually saying something, and I can't
14     hear it.
15  A. The lawyer was not arranged by me, so I don't
16     know.  I forget name of the law firm or lawyers.
17  Q. The lawyer was not arranged by you; is that what
18     you're saying?
19  A. Yes.
20  Q. Okay.  Where did that deposition take place?
21  A. California, San Francisco.
22  Q. All right.  So if you've given a deposition
23     before, you probably are familiar with the format
24     here.  And your lawyers may have told you much of
25     this before we got started today.  But you



Page 165

1    remember what -- what meeting is for what.
2  Q. How do you know that the -- that this meeting
3     where the trade secret information was disclosed
4     occurred between the signing of the term sheet
5     and when the deal discussions broke down in mid
6     June?
7  A. How do I know? Because the DD process, Jimmy
8     and Daniel told me that. They ask a lot of feed
9     out (phonetic) questions.
10 Q. Did Ingenico send an agenda for that meeting?
11 A. I don't remember that.
12 Q. Would it be unusual to have a meeting without an
13    agenda in advance?
14 A. No. You can send agenda. It would be from
15    ROAM Data from Will Graylin.
16 Q. My question is, given that it's not a simple
17    thing to fly from Boston or France to Hong Kong,
18    it would be typical to make arrangements for the
19    meeting in advance, right?
20 A. Yes.
21 Q. And that would typically be done in writing, by
22    e-mail, right?
23 A. Yes.
24 Q. And that would include setting up an agenda for
25    discussions, correct?

Page 166

1  A. Yes.
2  Q. Have you seen any correspondence regarding
3     setting up a meeting or an agenda for a meeting
4     between March and June of 2012?
5  A. I think so, but I don't remember that.
6  Q. Were you involved in the gathering of the
7     documents that were produced in this case?
8  A. Yeah. Some of the document, yeah.
9  Q. What was your role in the document-gathering
10    process?
11 A. Just give the instruction of -- like, I asked
12    Daniel and Jimmy to provide the information. So
13    my role was more like project manager.
14 Q. Did you yourself provide documents that would be
15    considered in this litigation?
16 A. No. No.
17 Q. Did anybody ask for your e-mails?
18 A. Yes.
19 Q. Okay. Were your e-mails subject to whatever
20    process it was that gathered documents in this
21    case?
22 A. Can you repeat your question?
23 Q. Sure. I'm just trying to understand -- I assume
24    your lawyers ran through the process of gathering
25    documents in this case; is that right?

Page 167

1  A. Yes.
2  Q. And as part of that process, did someone look at
3     your e-mails?
4  A. I think so. I think they looked at our
5     e-mail.
6  Q. And did somebody also look at your laptop or
7     whatever computer you use for work?
8  A. I'm not sure. I just have the IT team to
9     coordinate with (inaudible).
10 Q. If there were an agenda for a meeting between
11    ROAM Data and BBPOS for this due diligence
12    process, you would have gotten in your e-mail,
13    correct?
14 A. Yes.
15 Q. And that would have been gathered as part of the
16    process in this case; is that fair?
17    MR. GRIFFIN: Objection.
18 A. Yes.
19 Q. You didn't do anything to remove those types of
20    e-mails before they were produced in this case,
21    right?
22 A. Yes.
23 Q. I think you mean -- no -- you didn't take those
24    documents out of your e-mail before so they
25    wouldn't get to us, right?

Page 168

1  A. I didn't take the e-mail off. Yeah. I
2     didn't take the e-mail off.
3  Q. So I want to go back to something you said
4     earlier today, which was -- let me see if I
5     understand the time line correctly here. So, in
6     2012, there's a potential deal with ROAM Data,
7     and also in 2012, you give a bunch of trade
8     secret information to ROAM Data, right?
9  A. Yes.
10 Q. And pretty shortly thereafter, Will Graylin tells
11    you, I've been fired because I had a problem
12    sharing your secrets with Ingenico, right?
13 A. Yes.
14 Q. And but Ingenico -- strike that. But ROAM Data
15    wants to give your information -- your secret
16    information to Ingenico, right?
17 A. I don't know.
18 Q. Well, that's what Will said to you, right?
19 A. Yeah. He told me, but I don't know whether
20    this is true or not true.
21 Q. Am you knew that ROAM Data, in fact, hadn't all
22    of the information that we've talked about here
23    today, right?
24 A. Yes.
25 Q. So you know it was capable of providing that

