## Page 1

```
 1              UNITED STATES DISTRICT COURT
 2                 DISTRICT OF MASSACHUSETTS
 3
 4   ANYWHERE COMMERCE, INC. and    )
 5   BBPOS LIMITED,                 )
 6                  Plaintiffs,     )
 7              v.                  ) CIVIL ACTION NO.:
 8   INGENICO INC., INGENICO CORP.  ) 1:19-cv-11457-IT
 9   and INGENICO GROUPS, SA,       )
10                  Defendants.     )
11   _____  )
12
13
14
15
16
17
18
19
20
21
22
23        The 30(b)(6) VIDEO DEPOSITION of BEN LO, taken in
24   the above-entitled cause, before Susan Steudel, official
25   reporter, on the 10th day of December, 2021
```

## Page 2

```
 1   APPEARANCES:
 2
 3      ADLER POLLOCK & SHEEHAN, P.C.
 4      Once Citizens Plaza, 8th Floor
 5      Providence, RI 02903-1345
 6      Ph:  401-274-1345
 7      Jtechentin@apslaw.com
 8      BY: Jeffrey K. Techentin,
 9           On behalf of the Defendants;
10
11      Kutak Rock
12      1760 Market Street, Suite 1100
13      Philadelphia, PA 19104-4104
14      Ph:  215-353-8484
15      Melissa.bozeman@kutakrock.com
16      BY: Melissa Bozeman,
17           On behalf of the Plaintiffs;
18
19   ALSO PRESENT: Mike Cooper, Videographer
```

## Page 3

```
 1                       I N D E X
 2
 3   INDEX OF EXAMINATIONS:
 4     EXAMINATION                                    PAGE
 5        By Mr. Techentin                              7
 6        Reporter certification                       231
 7
 8   EXHIBITS:
 9   NUMBER       DESCRIPTION                         PAGE
10   Exhibit 54   Notice of 30(b)(6) Deposition of
                 Plaintiff BBPOS Limited              24
11
     Exhibit 55   BBPOS Response to Rule 30(b)(6)
12                Deposition Notice                   26
13   Exhibit 56   BBPOS Updated Response to Rule
                  30(b)(6) Deposition Notice          33
14
     Exhibit 57   Email dated December 8, 2021        35
15
     Exhibit 58   Statement dated February 1, 2013    37
16
     Exhibit 59   License Agreement dated the 23rd
17                day of March, 2010                  38
18   Exhibit 60   Amendment to License Agreement      43
19   Exhibit 61   Document entitled "BBPOS
                  Information Package
20                Confidential"                       68
21   Exhibit 62   Document entitled " "MPOS
                  Everywhere."                        76
22
     Exhibit 63   BBPOS Chipper 2X specification
23                material                            80
     Exhibit 64   BBPOS Chipper 2X BT
24                specification material
                 MR. TECHENTIN:                       80
25
```

## Page 4

```
 1   Exhibit 65   Chipper Mini 2 specification
                  material                            81
 2
     Exhibit 66   Chipper OTA material                83
 3
     Exhibit 67   Walker 1.0 specification
 4                material                            86
 5   Exhibit 68   Rambler 3.0 specification sheet     92
 6   Exhibit 69   Email dated June 11, 2012           96
 7   Exhibit 70   Document entitled "Cartes 2013
                  Paris MPOS solutions review"
 8                authored by Nabeel Choudhry.        98
 9   Exhibit 71   Cardreader promotional material
                  generated by Landi                  100
10
     Exhibit 72   Product review for RP350x Mobile
11                Card Reader                         102
12   Exhibit 73   Email dated February 12, 2013       104
13   Exhibit 74   Email dated May 7, 2013             114
14   Exhibit 75   Email dated November 11, 2012       117
15   Exhibit 76   Email dated August 27, 2013         120
16   Exhibit 77   Press release, ROAM RP350x          124
17   Exhibit 78   Technical drawings                  133
18   Exhibit 79   Email dated July 18, 2012           145
19   Exhibit 80   Email dated July 16, 2012           152
20   Exhibit 81   Email dated July 17, 2012           153
21   Exhibit 82   Email dated February 28, 2012       155
22   Exhibit 83   Email dated May 23, 2012            158
23   Exhibit 84   Email dated September 30, 2015      163
24   Exhibit 85   Email                               166
25   Exhibit 86   Email dated December 11, 2015       172
```



Page 5

| 1 | Exhibit 87 | Email | 173 |
| 2 | Exhibit 88 | Email dated December 11, 2015 | 176 |
| 3 | Exhibit 89 | Email dated December 17, 2015 | 179 |
| 4 | Exhibit 90 | Letter dated January 19, 2017 | 182 |
| 5 | Exhibit 91 | Letter dated February 28, 2017 | 184 |
| 6 | Exhibit 92 | Letter dated October 26, 2018 | 187 |
| 7 | Exhibit 93 | Letter dated May 7, 2018 | 191 |
| 8 | Exhibit 94 | Letter dated October 23, 2018 | 195 |
| 9 | Exhibit 95 | Letter dated October 4, 2018 | 197 |
| 10 | Exhibit 96 | Letter dated October 22, 2018 | 198 |
| 11 | Exhibit 97 | Email dated May 17, 2012 | 200 |
| 12 | Exhibit 98 | Email dated April 26, 2012 | 202 |
| 13 | Exhibit 99 | Email dated March 27, 2012 | 203 |
| 14 | Exhibit 100 | Email dated February 16, 2012 | 205 |
| 15 | Exhibit 101 | BBPOS spreadsheet | 228 |

PREVIOUSLY MARKED EXHIBITS REFERENCED:

| NUMBER | PAGE | / | LINE |
| Exhibit | 44 | / | 20 |
| Exhibit | 214 | / | 13 |

ADDITIONAL INFORMATION REQUESTED:

| Page | / | Line |
| 216 | / | 14 |
| 225 | / | 23 |

Page 6

1           VANCOUVER, CANADA.
2              December 10, 2021
3                   *****
4       (PROCEEDINGS COMMENCED AT 9:30 A.M.)
5       THE VIDEOGRAPHER:  Good morning.  We're on record
6  at 9:34 A.M., on December 10th, 2021.  This begins the
7  video conference 30(b)(6) deposition of Ben Lo taken in
8  the matter of AnywhereCommerce, Inc. et al versus Ingenico
9  Inc. et al, being heard before the United States District
10 Court for the District of Massachusetts, page [sic] number
11 1:19-cv-11457-IT.  My name is Mike Cooper.  The court
12 reporter is Susan Steudel and we represent Esquire
13 Deposition Solutions.
14      Would all counsel present please introduce
15 yourselves and whom you represent.
16      MR. TECHENTIN:  Jeffrey Techentin on behalf of
17 the defendants.
18      MS. BOZEMAN:  Melissa Bozeman, Kutak Rock, on
19 behalf of the plaintiffs, and Mr. Lo as a corporate
20 designee this morning.
21      THE VIDEOGRAPHER:  Thank you.  Would the court
22 reporter please swear in the witness.
23              BEN LO,.
24 called as a witness, having been first affirmed, was
25 examined and testified as follows:

Page 7

1              EXAMINATION
2  BY MR. TECHENTIN:
3      Q.  Good morning, Mr. Lo.
4      A.  Good morning.
5      Q.  Before we get going I would just like to put on
6  the record that this was noted on the video as being the
7  30(b)(6) deposition.  I want to make clear that this is
8  the 30(b)(6) deposition of plaintiff BBPOS Ltd.  You
9  understand that, right, Mr. Lo?
10     A.  Yes.
11     Q.  Before we get started who is in the room with you
12 today?
13     A.  My lawyer, Melissa.
14     Q.  Anyone else?
15     A.  No.
16        MS. BOZEMAN:  Can you see -- the tech in this
17 room is somewhat beyond my expertise level.  Can you see
18 the room?
19        MR. TECHENTIN:  No.  I cannot.  I can only see
20 Mr. Lo.  There is another feed, but that is of Mr. Lo,
21 too.  Well, it's just me in the room.  I actually don't
22 know how to change that.
23     A.  I can do that.
24        MR. TECHENTIN:  Last time there were two lawyers
25 and today there's one.  That's all I was asking.

Page 8

1      A.  Yeah.  So it's fair I only have one lawyer.
2         MR. TECHENTIN:  Melissa, do you anticipate being
3  joined by anyone today?
4         MS. BOZEMAN:  No, I do not.
5         MR. TECHENTIN:  It's just normally I would have
6  notice as to who is entering and leaving the room and I
7  don't because I don't have a video, but if it's just going
8  to be you, that's fine.  Or if it's other people, that's
9  fine, too.  I just would like to know.
10        MS. BOZEMAN:  Understood.  Just me today.
11 BY MR. TECHENTIN:
12     Q.  Mr. Lo, as we touched on this is a deposition not
13 of you personally today but of the company BBPOS Limited;
14 right?
15     A.  Yes.
16     Q.  And you understand that you are here today to
17 provide testimony on behalf of the company; right?
18     A.  Yes.
19     Q.  You understand that the testimony that you are to
20 give is not necessarily just your own knowledge but the
21 information that is available to the company; yes?
22     A.  Yes.
23     Q.  You were provided with a document from the
24 defendants in this case that outlined a number of topics
25 for today's deposition; is that right?



Page 217
1  MR. TECHENTIN: I'll withdraw that. I'll do that
2  differently.
3  BY MR. TECHENTIN:
4     Q. What is your agreement with AnywhereCommerce as
5  it relates to the splitting of an award of damages in this
6  case?
7     MS. BOZEMAN: Objection. Attorney/client
8  privileged and I'll instruct the client not to answer.
9  BY MR. TECHENTIN:
10    Q. Is this the agreement that I'm asking about right
11 now a written agreement between you and AnywhereCommerce?
12    A. Between me and AnywhereCommerce?
13    Q. You meaning BBPOS, yes.
14    A. No. Can I answer that?
15    MS. BOZEMAN: Are you asking me?
16    A. Yeah.
17    MS. BOZEMAN: You can answer.
18    A. Between BBPOS and -- no. No.
19 BY MR. TECHENTIN:
20    Q. Is there a written agreement between BBPOS and
21 AnywhereCommerce with respect to this litigation?
22    A. Just two parties, do you mean?
23    Q. No. I don't mean to limit it to two parties.
24    A. Yeah. There are agreement in place, but there's
25 no agreement just AnywhereCommerce and BBPOS, two parties.

Page 218
1     Q. There's an agreement between you,
2  AnywhereCommerce and Kutak Rock; is that correct?
3     A. Yes.
4     Q. When did you enter into that agreement?
5     A. 2018.
6     Q. When did you first discuss bringing a lawsuit
7  against Ingenico with AnywhereCommerce?
8     A. It is also around 2018 or 2017.
9     Q. Who was there for that conversation?
10    A. I just talk to our lawyer Oliver about the
11 litigation and about a case, about Ingenico steal our
12 trade secrets. And then Oliver just give me some -- come
13 up with this lawsuit and suggest that we can join with
14 AnywhereCommerce as a plaintiff to file this lawsuit.
15    Q. So the first conversation you had about
16 potentially filing a lawsuit was with Oliver?
17    A. Yes.
18    Q. Was Oliver your lawyer at that point?
19    A. Oliver was introduced to me by one of our
20 potential -- one of our financial advisor. And he was not
21 my lawyer at that period of time.
22    Q. When did Oliver become your lawyer?
23    A. After we talk about our case. And then we sign
24 our agreement. And then we file this litigation. And
25 then Oliver become our lawyers.

Page 219
1     Q. Is the agreement that you signed that you just
2  mentioned now, is that the same agreement that you were
3  talking about before with the three parties, you,
4  AnywhereCommerce and Kutak Rock?
5     A. I believe before that we have one more engagement
6  letter with Kutak Rock. Before we sign the agreement
7  between Anywhere Commerce, BBPOS and Kutak Rock we also
8  sign engagement letter with Kutak Rock.
9     Q. You have a separate engagement letter with Kutak
10 Rock; is that right?
11    A. Yes.
12    Q. Does that engagement letter set forth the terms
13 by which Kutak Rock is providing their legal services to
14 you?
15    A. I think that letter is -- is engagement letter
16 between BBPOS and Kutak Rock because after -- it's not
17 just this case. Kutak Rock also represent us in some like
18 defence case.
19    MS. BOZEMAN: Don't --
20 BY MR. TECHENTIN:
21    Q. I don't need to know. I think you're saying that
22 is a general engagement letter?
23    A. Yeah. A general engagement letter.
24    Q. But does that general engagement letter set forth
25 the legal fees or whatever you have to pay in exchange for

Page 220
1  Kutak Rock's representation?
2     A. I don't remember the detail of the letter, of
3  that engagement letter. It is just an engagement letter.
4  So I think that the fee is -- I think how --
5     Q. And I don't want to know how your fees -- I don't
6  want to know details about the fees. I'm just asking
7  which document they're in?
8     A. I think just general engagement letter.
9     Q. And so at some point did you have a conversation
10 with Michael Kron about this litigation?
11    A. Yes.
12    Q. When did that happen?
13    A. Also 2018.
14    Q. Was this after you spoke with Oliver?
15    A. Yes.
16    Q. Was it before you engaged Oliver?
17    A. I don't remember the time frame. All this time
18 frame is so close. I don't remember.
19    Q. And you said that Oliver was introduced to you by
20 someone else. Do you know who that was?
21    A. Yeah. Oliver was introduced to me by one of our
22 financial advisor.
23    Q. Who was that?
24    A. Our financial advisor. So do I need to give you
25 a name? His name is called JT. J for Jimmy. T is Tang.



Page 221
1  It is the son of Jimmy Tang.  I just call him JT.
2      Q.  So that's the son of the Jimmy Tang who works at
3  BBPOS?
4      A.  No.  I mean, his name is JT.  So I make sure that
5  you get these two characters correct.  JT.
6      Q.  Were you introduced to Oliver before Oliver came
7  to speak to you about the -- or spoke to you about the
8  lawsuit?
9      A.  No.  No.
10     Q.  So your first contact with Oliver was talking
11  about this lawsuit?
12     A.  No.  The first -- the first contact is a share.
13  I share with Oliver our experience, our bad experience
14  with Ingenico.  Because Ingenico is supposed to invest, to
15  acquire our company.  And so JT is our financial advisor.
16  I talk to JT that if there is any potential investor, I
17  want to make sure that there are people -- like people
18  behind so investor or investor, again, to do a technical
19  detail.  So I share the story with JT, and JT just
20  introduce Oliver to me and want me to share the story
21  again.  So this is the first time.  I just share the story
22  with Oliver, and after that with Oliver propose to start
23  litigation, to file litigation against Ingenico.
24     Q.  So I want to focus your attention to the
25  conversation you had with Michael Kron about this

Page 222
1  litigation.
2      Who initiated that conversation?
3      A.  With Michael Kron?  I don't remember.
4      Q.  Did he call you?  Did you call him?  Was there a
5  meeting set up?
6      A.  Meeting?  Most likely Michael Kron call me.
7      Q.  What was discussed during that conversation?
8      MS. BOZEMAN:  I'm going to caution you.  If it
9  involves either communications with attorneys that reveal
10  legal strategy or legal advice then you cannot speak to
11  that portion of the conversation.  But if there was
12  anything unrelated you can talk about that.
13     A.  Michael Kron also said he had unfair treatment by
14  Ingenico and that he's also angry.  So this is the
15  conversation, it's like that.
16  BY MR. TECHENTIN:
17     Q.  Did you talk about the possibility of joining
18  together in litigation?
19     A.  Yes.
20     MS. BOZEMAN:  Objection.  To the extent that it
21  involves legal strategy, I don't want you to answer the
22  question, but otherwise you can talk.
23  BY MR. TECHENTIN:
24     Q.  Did you have a lawyer at this point when you were
25  talking with Michael Kron?  Did you have a lawyer who was

Page 223
1  representing you against Ingenico?
2      A.  Did have I a lawyer at that period of time?  Do I
3  have a lawyer?  Do I find a lawyer, you mean?
4      Q.  No.  Did you have a lawyer representing you
5  against Ingenico when you were talking to Michael Kron?
6      A.  No.
7      Q.  Did you discuss with Michael Kron potential
8  sharing of legal expenses?
9      A.  Yes.
10     Q.  What did you discuss?
11     MS. BOZEMAN:  Objection to the content.
12  Attorney/client privileged and I will instruct the client
13  not to answer.
14  BY MR. TECHENTIN:
15     Q.  Are you going to abide by your counsel's
16  instruction?
17     A.  Yes.
18     Q.  Did you discuss with him the topic of potential
19  litigation proceeds or damages?
20     A.  No.
21     Q.  Did you discuss entering into a joint defence
22  agreement?
23     A.  We -- you mean in the meantime do I discuss with
24  Michael Kron about entering agreement?  I think at that
25  meeting, no, we don't need to talk about that.

Page 224
1      Q.  Did that come up at some point?
2      A.  Yeah, many time.
3      Q.  Between you and Michael Kron?
4      A.  And also Kutak Rock.
5      Q.  Do you have a joint defence agreement with
6  AnywhereCommerce?
7      A.  Joint defence.
8      MS. BOZEMAN:  If you know, you can answer.
9      A.  I don't know.
10  BY MR. TECHENTIN:
11     Q.  Do you have any agreements relating to this
12  litigation with AnywhereCommerce other than that agreement
13  between you, Kutak Rock and AnywhereCommerce?
14     A.  No.
15     Q.  And that's a written agreement?
16     A.  You mean the agreement between me and
17  AnywhereCommerce?  No.  Just an agreement between me and
18  AnywhereCommerce and Kutak Rock.  That's the agreement
19  about this litigation, but we don't have a separate
20  agreement between BBPOS and AnywhereCommerce about this
21  litigation, no.
22     Q.  Right.  I'm asking about the one that Kutak Rock
23  is a party to.  Is that agreement in writing?
24     A.  Yes.
25     Q.  What is the nature of that agreement?



Page 225
1  A. Do I need to answer this question?
2  Q. Unless she instructs you not to, yes.
3     MS. BOZEMAN: Objection to that question.
4  A. Is this client/lawyer privilege? Do I need to
5  answer this question.
6     MS. BOZEMAN: I'm going to instruct you not to
7  answer this question to the extent that your answer would
8  involve legal strategy or legal advice related to the
9  litigation. So if there's anything otherwise appropriate
10 to disclose, you can.
11 A. So in this agreement there's just a -- I'm
12 uncomfortable to answer this question. This is more a
13 lawyer/client privilege.
14 BY MR. TECHENTIN:
15 Q. Can you describe for me without getting into any
16 of the details of what the agreement says what the subject
17 matter of this the agreement is?
18    MS. BOZEMAN: Objection. Attorney/client
19 privileged. I'm going to instruct the client not to
20 answer.
21 BY MR. TECHENTIN:
22 Q. You are going to abide by that?
23 A. Yes.
24 Q. What was your motivation for joining together
25 with AnywhereCommerce to bring this litigation?

Page 226
1  A. What's my motivation, you said?
2  Q. Yes.
3  A. We both -- we both screwed by Ingenico. So the
4  motivation is we get back our damage.
5  Q. I'd like to ask you a few questions about the
6  damages that are claimed against BBPOS in this case.
7     You understand that there are counterclaims; right?
8  A. Yes.
9  Q. And you understand that those counterclaims seek
10 damages associated with your violation of the exclusivity
11 provisions of the ROAM BBPOS license agreement; right?
12    MS. BOZEMAN: Objection. You can answer.
13 A. Yes.
14 BY MR. TECHENTIN:
15 Q. And I'll tell you, maybe you know this, maybe you
16 don't, that the damages that are sought relate to your
17 sale of products that were done in violation of that
18 agreement. Do you understand that?
19    MS. BOZEMAN: Objection. But you can answer.
20 A. Can you repeat your questions.
21    MR. TECHENTIN: Sure.
22 BY MR. TECHENTIN:
23 Q. Do you understand that the damages that are
24 sought by Ingenico for your violation of the license
25 agreement concern the products that you sold in violation

Page 227
1  of that agreement?
2     MS. BOZEMAN: Same objection. But you can
3  answer.
4  A. Yes.
5  BY MR. TECHENTIN:
6  Q. And we didn't get into any detail about your
7  theories of damage, but presumably it's Ingenico's
8  theories will be similar to yours in that regard in terms
9  of entitlement to damages. But my question really goes to
10 how to find out about the revenue that BBPOS achieved by
11 selling different products over the years. And, you know,
12 one of the topics for today's deposition is the gathering
13 of documents in response to discovery requests. You know
14 that; right?
15 A. Yes.
16 Q. And you understand that in the course of
17 discovery Ingenico asked for information about the sales
18 of products by BBPOS; right?
19 A. Yes.
20 Q. And, in fact, BBPOS produced a number of
21 documents in the form of Excel spreadsheets that detail
22 some of the sales and profits associated with its
23 products? Are you familiar with that?
24 A. Yes.
25    MR. TECHENTIN: So I'm trying to show you a

Page 228
1  document. Here we go.
2     So I'll mark as Exhibit 101.
3     (Exhibit 101 was marked for identification
4     and is attached hereto.)
5  BY MR. TECHENTIN:
6  Q. So this is an Excel spreadsheet that was produced
7  to us in this case by BBPOS. Can you see it?
8  A. Can I see it now?
9  Q. My question is whether this spreadsheet is --
10 provides detail as to revenue or sales by customer or
11 product code.
12 A. Can you repeat your question.
13 Q. So let me break that down. Do you know this
14 spreadsheet that I've marked here as 101?
15 A. Yes.
16 Q. Does it contain information that would allow me
17 to figure out what revenue is associated with a particular
18 customer?
19    MS. BOZEMAN: Objection. But you can answer.
20 A. I don't know. I don't know. I'm not an
21 accountant.
22 BY MR. TECHENTIN:
23 Q. Do you know if this spreadsheet reflects sales or
24 revenue data or profit information concerning an
25 individual product?



Page 229

1  MS. BOZEMAN: There's a lot of tabs here. Do you
2 want him to be going through each of these tabs?
3  A. I just see one page, so ... I can't determine a
4 sense of individual product. It provides sales of each
5 month over the course of each month. So I don't -- I
6 cannot determine whether this is separate products.
7 BY MR. TECHENTIN:
8  Q. Do you know if any spreadsheets have been
9 provided that would enable Ingenico to understand what the
10 sales were for specific products?
11  A. I don't know.
12  Q. I will also point out that this spreadsheet that
13 was produced is dated through 2015. Well, there have been
14 a lot of Excel spreadsheets produced. I think this is the
15 most recent that we have seen. And when I say a lot, I
16 think there's close to 2,000 spreadsheets. But do you
17 know if BBPOS has produced any financial reporting that is
18 more recent than 2015?
19  A. Yes.
20  Q. What has been produced that is more recent than
21 2015?
22  A. Can you repeat your questions?
23  Q. Sure. This spreadsheet is 2015, and we have one
24 for 2014 and we have one for 2013.
25   Do you know if equivalent information was produced

Page 230

1 for 2016 or '17 or anything more recent?
2  A. I don't know.
3  Q. Do you know why, if it's true, do you know why
4 financial information was only produced through 2015?
5   MS. BOZEMAN: Objection. Hypothetical.
6  A. I don't know.
7 BY MR. TECHENTIN:
8  Q. Was there some deliberate choice on the part of
9 BBPOS to not produce information more recent than 2015?
10  A. I don't know.
11   MR. TECHENTIN: All right. Can we take a short
12 break? I think I might be done or close to done. Just
13 give me a few minutes.
14   MS. BOZEMAN: That's fine.
15   THE VIDEOGRAPHER: Off the record at 5:58 P.M.
16   (PROCEEDINGS RECESSED AT 5:58 P.M.)
17   (PROCEEDINGS RECONVENED AT 6:00 P.M.)
18   THE VIDEOGRAPHER: Back on the record at
19 6:01 P.M. I don't have any further questions. Thank you.
20   THE VIDEOGRAPHER: We're off the record rat
21 6:02 P.M.
22   (PROCEEDINGS ADJOURNED AT 6:02 P.M.)
23   (SIGNATURE RESERVED)
24
25

Page 231

1   REPORTER CERTIFICATION
2    I, Susan Steudel, Official Reporter in the Province
 of British Columbia, Canada, BCSRA No. 445, do hereby
3 certify:
4 That the proceedings were taken down by me in shorthand at
 the time herein set forth, and thereafter transcribed, and
5 the same is a true and correct and complete transcript of
 said proceedings to the best of my skill and ability.
6
 IN WITNESS WHEREOF, I have hereunto subscribed my name on
7 this day, the 19th day of December, 2021.
8
9   _Susan Steudel_
  Susan Steudel
10 Official Reporter

Page 232

1 Reference No.: 7675340
2
3 Case:  ANYWHERE COMMERCE V INGENICO
4    DECLARATION UNDER PENALTY OF PERJURY
5
    I declare under penalty of perjury that
6 I have read the entire transcript of my Depo-
 sition taken in the captioned matter or the
7 same has been read to me, and the same is
 true and accurate, save and except for
8 changes and/or corrections, if any, as indi-
 cated by me on the DEPOSITION ERRATA SHEET
9 hereof, with the understanding that I offer
 these changes as if still under oath.
10
11    _____
12    Ben Lo 30b6
13
14    NOTARIZATION OF CHANGES
15      (If Required)
16
17 Subscribed and sworn to on the _____ day of
18
19 _____, 20____ before me,
20
21 (Notary Sign)_____
22
23 (Print Name)          Notary Public,
24
25 in and for the State of _____

