UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANYWHERECOMMERCE, INC. and BBPOS LIMITED,<br><br>Plaintiffs,<br><br>v.<br><br>INGENICO INC., INGENICO CORP., and INGENICO GROUP SA,<br><br>Defendants. | Civil Docket No: 1:19-cv-11457-IT<br><br>Jury Trial Demanded |

## DECLARATION OF MELISSA A. BOZEMAN

I, Melissa A. Bozeman, under penalty of perjury, declare and state the following in support of the Motion for Summary Judgment of Plaintiffs/Counterclaim Defendants BBPOS Limited ("BBPOS") and AnywhereCommerce, Inc. ("AC"):

1. I am a partner at the law firm of Kutak Rock LLP and litigation counsel to BBPOS and AC in the above-captioned action. I make this Declaration based on personal knowledge.

2. Before instituting these proceedings, on behalf of BBPOS and in response to Ingenico Inc.'s demand for indemnification in relation to a number of claims generally sounding in infringement, Kutak Rock LLP wrote a letter dated November 2, 2008, reserving all rights and remedies and demanding an extensive amount of information related to each pending demand for indemnity, as necessary to analyze the various claims and alleged indemnity obligations. A true and correct copy of the November 2, 2008 letter is attached hereto as Exhibit A.

3. In response to the November 2, 2018 letter, on November 9, 2018, Ingenico Inc.'s outside counsel wrote an email addressed to me, asking that a Common Interest Agreement be signed "before going further with [BBPOS's] requests." The November 9, 2018 email attached a sample Common Interest Agreement relating to an entirely different matter. A true and correct

copy of the November 9, 2018 email, together with its attached sample Common Interest Agreement, is attached hereto as Exhibit B.

4.      In an email dated December 3, 2018, counsel for BBPOS responded to Ingenico's suggestion of a Common Interest Agreement, writing, "Subject to our client's final approval, we would be interested in a comprehensive Common Interest Agreement. Will you please send me a proposed draft for our review? Thank you."

5.      Counsel for Ingenico did not respond to counsel's December 3, 2018 email, did not send a proposed Common Interest Agreement, and did not further communicate in any way whatsoever regarding its demand for indemnification despite BBPOS's counsel's assent to a Common Interest Agreement and expressed interest in a discussion to resolve Ingenico's demand for indemnity.

6.      I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing statements are true and correct to my personal knowledge.

Dated this 22nd day of June, 2022.

*/s/ Melissa A. Bozeman*
Melissa A. Bozeman

# KUTAKROCK

**Kutak Rock LLP**
1760 Market Street, Suite 1100, Philadelphia, PA 19103-4104
office 215.299.4384

**Melissa A. Bozeman**
215.299.4384
melissa.bozeman@kutakrock.com

November 2, 2018

**BY EMAIL & FEDEX**

Kerry Timbers, Esq.
Sunstein Kann Murphy & Timbers LLP
125 Summer Street
Boston, MA  02110-1618
ktimbers@sunsteinlaw.com

  **Re:**  **Ingenico, Inc.'s Claims for Indemnity Directed to BBPOS, Ltd.:**

    I. *REM Holdings 3, LLC ("REM") v. Comerica, Inc., Capital One, N.A., Elavon, Inc., Total System Services, Inc., PayPal, Inc., Total Merchant Services, Inc., and North American Bancard, LLC* Regarding U.S. Patent Nos. 9,218,517, 7,896,248, and 9,747,474 (ref: Ingenico Letters dated January 19, 2017, February 28, 2017, and October 26, 2018)

    II. *IOENGINE, LLC ("IOENGINE") v. PayPal Holdings, Inc.* Regarding U.S. Patent Nos. 8,539,047, 9,059,969, and 9,774,703 (ref: Ingenico Letters dated May 7, 2018 and October 23, 2018)

    III. *MobilePay LLC ("MobilePay") v. Pay Pal, Inc.* Regarding U.S. Patent No. 9,800,706 (ref: Ingenico Letter dated October 4, 2018)

    IV. *Blackbird Technologies ("Blackbird") v. Blackbaud, Inc., Total Merchant Services, Inc., and North American Bancard, LLC* Regarding U.S. Patent No. 9,679,286 (ref: Ingenico Letter dated October 22, 2018)

Dear Mr. Timbers:

  This is our third attempt to speak with you regarding the above-referenced matters.

  As we advised you on October 19, 2018 by voice message and a follow-up email[1], this office represents BBPOS, Ltd. ("BBPOS") in connection with the various indemnity claims that Ingenico, Inc. ("Ingenico"), as successor by merger to ROAM Data, Inc. ("ROAM"), has asserted against our client with reference to an Engineering Development and License Agreement dated

---

[1] Another copy (without attachment) is enclosed for your reference.

KUTAKROCK

Kerry Timbers, Esq.
November 2, 2018
Page 2

May 4, 2010, as amended on August 15, 2010, by and between BBPOS, as Licensor, and ROAM, as Licensee (the "Licensing Agreement").

We would really like to speak with someone in short order to get a better sense of the facts and issues at play in the four separate matters giving rise to Ingenico's indemnity claims. If we should be directing our communications on these matters elsewhere, please so advise.

Ingenico's letters impart some sense of urgency to the situation: in the ensuing two weeks since first reaching out to you regarding the MobilePay litigation, a blitz of letter demands and threats have been sent by Ingenico to BBPOS relating to three other patent infringement claims initiated by REM, IOENGINE, and Blackbird. In its October 23rd letter concerning IOENGINE, for example, Ingenico makes some sort of waiver-type argument, ratcheting up the pressure (*needlessly, we think*), by incongruously "interpret[ing]" BBPOS's lack of requested assurances as a purported "acceptance and assent" to very indemnity claims for which it sought but failed to receive BBPOS's assurances, advising that, "[e]ffective immediately," Ingenico would be submitting *your firm's* invoices for legal services to BBPOS for payment. We disagree with Ingenico's analysis, to be clear.

In fact, nothing contained in this letter shall be construed to (i) limit the right of BBPOS to dispute, assert a defense to, and/or apply an offset against any and all sums that Ingenico alleges are or may become due or payable pursuant to the Licensing Agreement or otherwise; (ii) waive any breach or default, whether or not known to BBPOS and whether or not stated in this letter; (iii) amend, waive, limit, modify, prejudice, or otherwise adversely affect any rights, remedies or powers of BBPOS under the Licensing Agreement or by statute, at law or in equity, or otherwise, all of which rights, remedies and powers are expressly reserved; or (iv) waive, limit, modify, prejudice, or otherwise adversely affect any claims of BBPOS against Ingenico.

At this point, we still are in the early stages of our investigation of the competing patent interests at play and the scope of accused products now at issue. To more efficiently and expeditiously perform our investigation, and thereby, sooner substantively respond to Ingenico's indemnity claims, we hereby request on behalf of BBPOS that you provide us with the following information as soon as practicable (on a rolling basis, if necessary or appropriate):

**I.** ***REM Holdings 3, LLC v. Comerica, Inc., Capital One, N.A., Elavon, Inc., Total System Services, Inc., PayPal, Inc., Total Merchant Services, Inc., and North American Bancard, LLC* Regarding U.S. Patent Nos. 9,218,517, 7,896,248, and 9,747,474**

- Copies of each controlling licensing agreement or other relevant contract(s) that governs Ingenico/ROAM's supply of products and services and indemnification duties, if any, with respect to Comerica, Inc.

KUTAKROCK

Kerry Timbers, Esq.
November 2, 2018
Page 3

- Copies of each controlling licensing agreement or other relevant contract(s) that governs Ingenico/ROAM's supply of products and services and indemnification duties, if any, with respect to Capital One, N.A.
- Copies of each controlling licensing agreement or other relevant contract(s) that governs Ingenico/ROAM's supply of products and services and indemnification duties, if any, with respect to Elavon, Inc.
- Copies of each controlling licensing agreement or other relevant contract(s) that governs Ingenico/ROAM's supply of products and services and indemnification duties, if any, with respect to Total System Services, Inc.
- Copies of each controlling licensing agreement or other relevant contract(s) that governs Ingenico/ROAM's supply of products and services and indemnification duties, if any, with respect to PayPal, Inc.
- Copies of each controlling licensing agreement or other relevant contract(s) that governs Ingenico/ROAM's supply of products and services and indemnification duties, if any, with respect to Total Merchant Services, Inc.
- Copies of each controlling licensing agreement or other relevant contract(s) that governs Ingenico/ROAM's supply of products and services and indemnification duties, if any, with respect to North American Bancard, LLC.

- As to Comerica, Inc., a description and the quantity of the products sold, leased or otherwise disposed of in connection with said customer, the dates of sale for each such product, the serial number sequences for each such product, the price charged for each such product, and the amount of royalties/licensing fees paid for each such product, if any.
- As to Capital One, N.A., a description and the quantity of the products sold, leased or otherwise disposed of in connection with said customer, the dates of sale for each such product, the serial number sequences for each such product, the price charged for each such product, and the amount of royalties/licensing fees paid for each such product, if any.
- As to Elavon, Inc., a description and the quantity of the products sold, leased or otherwise disposed of in connection with said customer, the dates of sale for each such product, the serial number sequences for each such product, the price charged for each such product, and the amount of royalties/licensing fees paid for each such product, if any.
- As to Total System Services, Inc., a description and the quantity of the products sold, leased or otherwise disposed of in connection with said customer, the dates of sale for each such product, the serial number sequences for each such product, and the amount of royalties/licensing fees paid for each such product.
- As to PayPal, Inc., a description and the quantity of the products sold, leased or otherwise disposed of in connection with said customer, the dates of sale for each such product, the serial number sequences for each such product, the price charged

Confidential

KUTAKROCK

Kerry Timbers, Esq.
November 2, 2018
Page 4

- for each such product, and the amount of royalties/licensing fees paid for each such product, if any.
- As to North American Bancard, LLC, a description and the quantity of the products sold, leased or otherwise disposed of in connection with said customer, the dates of sale for each such product, the serial number sequences for each such product, the price charged for each such product, and the amount of royalties/licensing fees paid for each such product, if any.

**II.** *IOENGINE, LLC v. PayPal Holdings, Inc.* **Regarding U.S. Patent Nos. 8,539,047, 9,059,969, and 9,774,703**

- Copies of each controlling licensing agreement or other relevant contract(s) that governs Ingenico/ROAM's supply of products and services and indemnification duties, if any, with respect to PayPal Holdings, Inc.

- As to PayPal Holdings, Inc., a description and the quantity of the products sold, leased or otherwise disposed of in connection with said customer, the dates of sale for each such product, the serial number sequences for each such product, the price charged for each such product, and the amount of royalties/licensing fees paid for each such product, if any.

**III.** *MobilePay LLC v. Pay Pal, Inc.* **Regarding U.S. Patent No. 9,800,706**

- Copies of each controlling licensing agreement or other relevant contract(s) that governs Ingenico/ROAM's supply of products and services and indemnification duties, if any, with respect to PayPal, Inc.

- As to PayPal, Inc., a description and the quantity of the products sold, leased or otherwise disposed of in connection with said customer, the dates of sale for each such product, the serial number sequences for each such product, the price charged for each such product, and the amount of royalties/licensing fees paid for each such product, if any.

**IV.** *Blackbird Technologies v. Blackbaud, Inc., Total Merchant Services, Inc., and North American Bancard, LLC* **Regarding U.S. Patent No. 9,679,286**

- Copies of each controlling licensing agreement or other relevant contract(s) that governs Ingenico/ROAM's supply of products and services and indemnification duties, if any, with respect to Blackbaud, Inc.
- Copies of each controlling licensing agreement or other relevant contract(s) that governs Ingenico/ROAM's supply of products and services and indemnification duties, if any, with respect to Total Merchant Services, Inc.

Confidential  BBPOS_1613824

# KUTAKROCK

Kerry Timbers, Esq.
November 2, 2018
Page 5

- Copies of each controlling licensing agreement or other relevant contract(s) that governs Ingenico/ROAM's supply of products and services and indemnification duties, if any, with respect to North American Bancard, LLC

- As to Blackbaud, Inc., a description and the quantity of the products sold, leased or otherwise disposed of in connection with said customer, the dates of sale for each such product, the serial number sequences for each such product, the price charged for each such product, and the amount of royalties/licensing fees paid for each such product, if any.

- As to Total Merchant Services, Inc., a description and the quantity of the products sold, leased or otherwise disposed of in connection with said customer, the dates of sale for each such product, the serial number sequences for each such product, the price charged for each such product, and the amount of royalties/licensing fees paid for each such product, if any.

- As to North American Bancard, LLC, a description and the quantity of the products sold, leased or otherwise disposed of in connection with said customer, the dates of sale for each such product, the serial number sequences for each such product, the price charged for each such product, and the amount of royalties/licensing fees paid for each such product, if any.

Finally, going forward, we ask that you instruct your client to refrain from directly contacting BBPOS (or sending BBPOS your firm's legal bills for payment, for example) and instead direct all further communication to our office relevant to the indemnity claims asserted heretofore as well as any other indemnity claim purportedly running in favor of Ingenico and/or arising under the Licensing Agreement in its favor existing now or at a later date, if any.

Thank you for your prompt attention to the forgoing.

Kutak Rock LLP

*/s/ Melissa A. Bozeman*

Melissa A. Bozeman

Enclosure

cc:  BBPOS Ltd. (by email only)
     Ward D. Hewins, Vice President & GC of Ingenico North America (by FedEx only)

**Confidential**                                                                                                   **BBPOS_1613825**

**Bozeman, Melissa A.**

| | |
|---|---|
| **From:** | Bozeman, Melissa A. |
| **Sent:** | Friday, October 19, 2018 1:37 PM |
| **To:** | 'ktimbers@sunsteainlaw.com' |
| **Cc:** | Oliver D. Griffin (Oliver.Griffin@KutakRock.com) |
| **Subject:** | MobilePay Litigation regarding US Patent No. 9,800,706 |
| **Attachments:** | Ltr to BBPOS re MobilePay 10042018.pdf |

Dear Mr. Timbers:

Our office has been retained by BBPOS Ltd. in connection with Ingenico, Inc.'s letter dated October 4, 2018 asserting a claim for indemnity in connection with a licensing agreement.  A copy is attached for your reference.  Following up on the voice message I left you earlier today, I was hoping that we could schedule a convenient time early next week to speak about your client's claim and the status of the lawsuit.

I look forward to speaking with you.

Melissa

**Melissa A. Bozeman** | Of Counsel | **Kutak Rock LLP**
1760 Market Street, Suite 1100, Philadelphia, PA 19103-4104
**D** (215) 717-8489 | **O** (215) 299-4384 | **C** (215) 353-8484
Melissa.Bozeman@KutakRock.com | www.KutakRock.com

1

# Bozeman, Melissa A.

| | |
|---|---|
| **From:** | Kerry Timbers <KTimbers@sunsteinlaw.com> |
| **Sent:** | Friday, November 9, 2018 6:55 AM |
| **To:** | Nemcik, Robin M. |
| **Cc:** | Bozeman, Melissa A.; Griffin, Oliver D. |
| **Subject:** | RE: BBPOS v. Ingenico    4013/5004 |
| **Attachments:** | Common Interest and Confidentiality Agreement -Fully executed  [4013_500....pdf |
| **Categories:** | Attachments |

Dear Ms. Bozeman,

We are in receipt of your letter.  We understand you would like certain information.

Before we go further regarding your requests, we believe a Common Interest Agreement is appropriate.  Attached is one that is currently in place with respect to the REM Holdings matter – would you be agreeable to a new agreement that encompasses all the matters?

Best regards,

Kerry

**Kerry Timbers**, Partner
**Sunstein Kann Murphy & Timbers LLP**
125 Summer Street | Boston, MA 02110-1618
617.692.2223 direct | 617.443.9292 main | 617.443.0004 fax
ktimbers@sunsteinlaw.com | www.sunsteinlaw.com
**Winning Intellectual Property®**

This e-mail is from Sunstein Kann Murphy & Timbers LLP, a law firm, and may contain information that is confidential or privileged. If you are not the intended recipient, do not read, copy or distribute the e-mail or any attachments. Instead, please notify the sender and delete the e-mail and any attachments. Thank you.

---

**From:** Nemcik, Robin M. [mailto:Robin.Nemcik@KutakRock.com]
**Sent:** Friday, November 02, 2018 6:26 PM
**To:** Kerry Timbers
**Cc:** Bozeman, Melissa A.; Griffin, Oliver D.
**Subject:** BBPOS v. Ingenico

Dear Ms. Timbers:

Please disregard previous emails.   This is the correct correspondence which you will also receive by federal express.

Thank you.

**Robin Nemcik**
Legal Secretary

**Kutak Rock LLP**

1

1760 Market Street, Suite 1100, Philadelphia, PA 19103
**D** (215) 717-8488 | **O** (215) 299-4384
robin.nemcik@KutakRock.com | www.KutakRock.com

*Support provided to:*

Oliver D. Griffin | p: 215-717-8487 | oliver.griffin@kutakrock.com
Peter N. Kessler| p: 215-717-8505 | peter.kessler@kutakrock.com
Melissa A. Bozeman| 215-717-8489 | melissa.bozeman@kutakrock.com
Karl C. Helgerson| 215-717-8491 | karl.helgerson@kutakrock.com

This E-mail message is confidential, is intended only for the named recipients above and may contain information that is privileged, attorney work product or otherwise protected by applicable law. If you have received this message in error, please notify the sender at 402-346-6000 and delete this E-mail message. Thank you.

## COMMON INTEREST AND CONFIDENTIALITY AGREEMENT

This **COMMON INTEREST AND CONFIDENTIALITY AGREEMENT** (the "Agreement") dated as of _February 16_, 2017 (the "Effective Date") is entered into by and between ROAM Data, Inc., and its affiliates and subsidiaries (collectively "ROAM"), and BBPOS Limited and its affiliates and subsidiaries (collectively "BBPOS"). ROAM and BBPOS are referred to in this Agreement individually as a "Party" and together as the "Parties."

WHEREAS, ROAM and BBPOS entered into an Engineering Development and License Agreement as of May 4, 2010 ("the Agreement");

WHEREAS pursuant to the Agreement BBPOS has provided certain products for sale by ROAM in the United States ("the Products");

WHEREAS Comerica Inc., a seller of products provided by BBPOS for sale by ROAM in the United States pursuant to the Agreement, has received a letter from REM Holdings 3, LLC ("REM") alleging that the Products infringe upon one or more patents owned by REM ("the Patents");

WHEREAS, the Parties have a mutuality of interest in exchanging information relating to the Patents and any related patents, including, but not limited to, in defending against claims based on the Patents ("the Common Claims and Defenses"),

WHEREAS, the Parties desire to enter into a common interest and confidentiality agreement in order to allow them to conduct discussions and exchange information and materials related to the Common Claims and Defenses,

NOW, THEREFORE, in consideration of the foregoing recitals and in further consideration of the mutual agreements set forth herein, the Parties agree as follows:

1. **Common Interest.** The Parties acknowledge and agree that they share certain common interests with respect to the Common Claims and Defenses and that those interests will be best served if they can exchange information and materials subject to the continued protection of the attorney-client privilege, attorney work-product doctrine, community of interest and/or joint defense privilege, and/or any other applicable privileges or protections. The Parties agree that their common interests will be best served if, without waiving any otherwise applicable privilege or protection, they can share with each other Common Interest Materials (as defined below). It is the desire, intention, and mutual understanding of the Parties that the sharing of Common Interest Materials is not intended to, and shall not, waive or diminish in any way the confidentiality of such Common Interest Materials or their continued protection under the attorney-client privilege, the work-product doctrine, or any other applicable privileges or protections. It is also the desire, intention, and mutual understanding of the Parties that all Common Interest Materials disclosed pursuant to this Agreement that are entitled to protection under the attorney-client privilege, the work-product doctrine, or other applicable privileges or protections, shall remain entitled to such protection under the common interest and/or joint-defense doctrines, and shall be treated as confidential and may not be disclosed to persons other

than those described in this Agreement without the consent of the providing Party in order to preserve the privileged and protected nature of the information.

2.      **Common Interest Materials**. Materials covered by this Agreement include all documents, communications, and things exchanged or communicated between the Parties and their counsel in connection with the Common Claims and Defenses (collectively "Common Interest Materials"). Common Interest Materials include, without limitation, all drafts of pleadings, expert reports, or court papers; all oral statements and conversations between counsel for the Parties; documents such as memoranda of law and fact, interview reports, notes, factual summaries, histories, transcript digests, computer-generated information, engineering and scientific analyses, risk analyses, and records and memoranda of experts, consultants, or investigators; and all other information; provided that the documents or communications at issue were exchanged or communicated between the Parties in connection with the Common Claims and Defenses. Whenever possible, these Common Interest Materials shall be labeled "Common Interest Materials - Subject to Common Interest Agreement," but failure to so mark these materials is not a waiver of protection and shall not exclude the materials from the scope of protection provided by this Agreement. This Agreement shall relate back to, cover and include any and all Common Interest Materials shared between the Parties prior to the date of this Agreement in connection with the Common Claims and Defenses. Nothing in this Agreement requires a Party to provide information or documents to the other Party, to create Common Interest Materials (as defined below) to provide to the other Party, or to assist the other Party in any way. Also, nothing in this Agreement changes or affects any pre-existing agreements between the Parties.

3.      **Confidentiality of Common Interest Materials**. The Parties understand and agree that this Agreement, the Common Interest Materials, and the fact of communication or exchange of any Common Interest Materials between the Parties are protected from disclosure to any third party. The Common Interest Materials and information derived therefrom shall be used solely in connection with the Common Claims and Defenses. Common Interest Materials and information derived therefrom shall not be used by a Party for any other purpose without the permission of the Party that provided or prepared those particular Common Interest Materials. The Parties acknowledge and agree that such Common Interest Materials may not be used by one Party against any other Party, either in litigation or for any other purpose. This provision shall survive termination of this Agreement.

4.      **Use of Public or Independent Information**. Notwithstanding any of the foregoing, this Agreement shall not restrict a Party from using in any manner or disclosing Common Interest Materials that: a) were or are discovered independently by that Party (including through discovery processes in litigation) without a breach of this Agreement; b) were or are originated by that Party and does not incorporate Common Interest Materials provided by another Party; c) were or are provided by another Party and the providing Party consents to its use or disclosure; or d) were or are provided by a third party that rightfully received or possessed those Materials without restriction on disclosure.

2

5. **Common Interest Doctrine.** Common Interest Materials shall also be kept and remain confidential under any applicable privilege, immunity, or other protection (including without limitation the joint defense and common interest privileges) under the terms of this Agreement, and shall not be disclosed to anyone except employees, agents, and outside counsel of the Parties to this Agreement who need to know the information relating to the Common Claims and Defenses (who shall be notified of the duty of nondisclosure and who each shall be bound to preserve such confidences in the same manner as each Party), and shall be used only for the purposes set forth above in Section 1. The Parties intend to invoke and preserve to the maximum extent permitted by law the attorney-client privilege, attorney work product doctrine, joint prosecution privilege, common interest privilege, and other applicable privileges or protections, as applied to preparing or exchanging the Common Interest Materials between the Parties. The Parties consider that such disclosures of matters of common interest are essential to the effective representation of the Parties, and therefore, that such disclosures are covered under the common interest and/or joint prosecution privileges. The Parties agree that any disclosure of Common Interest Materials that is not authorized by the terms of this Agreement shall not be deemed a waiver of the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity of any Party hereto. The Parties agree that information communicated under this Agreement shall continue to be subject to any applicable privilege, immunity, or protection even if adversity of interest may become apparent or may arise between the Parties, regardless of any claim that the common interest and joint prosecution privileges otherwise may become prospectively inoperative by virtue of such claimed adversity. This provision shall survive termination of this Agreement.

6. **Subpoenas/Discovery Requests.** If any person or entity requests or demands disclosure or production of this Agreement or the Common Interest Materials, by subpoena or otherwise, the Party receiving such request or demand will, unless prohibited by law, immediately notify the other Party in writing. In the event such a request or demand of disclosure is made of a receiving Party, the receiving Party will take all reasonable, necessary, and proper steps to permit timely assertion in all appropriate forum(s) of all rights, privileges, immunities, and rules of nondisclosure relating to such Common Interest Materials by the disclosing Party.

7. **Inadvertent Disclosure.** The Parties agree that the inadvertent or unintentional disclosure of privileged or work product materials supplied under this Agreement, regardless of whether the information was so designated at the time of disclosure, shall not be deemed a waiver in whole or in part of any applicable confidentiality, privilege or immunity, either as to the specific information disclosed or as to any other information relating thereto or on the same or related subject matter (and no Party will assert such a waiver argument). Upon the discovery of the inadvertent error, the disclosing Party must immediately upon discovery notify the receiving Party, and the Parties shall cooperate to restore the confidentiality, privilege or immunity to that disclosed material, including retrieval of all copies, if possible.

8. **Waiver Of Conflicts.** Neither this Agreement nor the sharing of Common Interest Materials shall be grounds for seeking the disqualification, now or in the future, of counsel to either Party. Nothing in this Agreement shall be construed to affect the separate and independent representation of each Party by its respective counsel. Notwithstanding the

obligations of this Agreement, the Parties recognize that their interests may become directly adverse, and that for such reason, this Agreement does not create an attorney-client relationship or any fiduciary duty between any lawyer and any client other than the client for whom the lawyer and his or her firm appears in this case. Accordingly, after receiving the advice of its own counsel, each Party consents to such adverse representation that may arise due to this Agreement, even if such adverse representation is substantially related to the Common Claims and Defense, and knowingly and intelligently waives any conflict of interest that may arise on account of this Agreement, except as to its own attorney. The fact that any counsel has had access to or used Common Interest Materials, or has acted for its respective Party, shall not in any way preclude that counsel (or counsel's firm) from representing any interest that may be construed to be adverse to any other Party to this Agreement in any litigation, or in any other present or future legal matters, or used as a basis for seeking to disqualify that counsel (or counsel's firm) from representing any client in any other present or future legal matter, or from examining or cross examining any representative of any Party who testifies in any litigation or in any other present or future legal matter. By entering into this Agreement, each Party hereby waives any right he, she or it may otherwise have to seek the disqualification of counsel (or counsel's firm) to another Party in this or any other matter based upon activities undertaken pursuant to this Agreement.

9. **No Agency or Attorney-Client Relationship**. This Agreement shall not create any agency or similar relationship between the Parties. Each Party shall retain its separate and independent judgment with respect to the exercise of the rights and obligations of this Agreement, and nothing herein is intended to provide either Party with control over the other Party. Nothing in this Agreement nor the sharing of any Common Interest Materials under this Agreement shall be deemed to create an attorney-client relationship or any duties between any counsel and anyone other than the Party represented by that counsel. No Party shall have the authority to waive any applicable privilege or doctrine on behalf of the other Party, nor shall any waiver of an applicable privilege or doctrine by the conduct of a Party be construed to apply to to the other Party. Nothing in this Agreement shall obligate any Party in any way to assist another Party. Each Party expressly reserves the right to make its own independent judgments in all matters and on all issues. Nothing contained in this Agreement is intended to be, or shall be deemed to be: (1) an admission of any liability or obligation on the part of either Party to this Agreement, in connection with the Common Claims and Defenses or any other matter; (2) a waiver of any claim or defense available to either Party to this Agreement against the other Party to this Agreement as a result of any other dispute that exists or may arise between or involving them; or (3) an act of forbearance, acquiescence or forgiveness in respect to any other such dispute between or involving them.

10. **Disclosure Of Prior Art**. The Parties each agree that the disclosure by one Party of prior art, in the form of a patent owned by that Party, does not constitute notice of such patent to the other Party, and that failure to assert such patent against the Party to whom such patent is disclosed does not constitute a waiver of any rights.

11. **Destruction of Common Interest Materials**. Upon the final disposition of the Common Claims and Defenses, all Common Interest Materials shall be promptly destroyed or returned to the Party from which they were received if requested by the producing Party.

AC
QP

Notwithstanding the foregoing, the Party in receipt of such Common Interest Materials may retain electronic copies created pursuant to standard archival and back-up procedures.

12. **Term Of This Agreement.** This Agreement shall remain in full force and effect until 10 days after either Party elects to terminate this Agreement upon receipt of written notice directed to the other in conformance with Section 19 herein. If either Party violates this Agreement, the other Party shall be free to terminate this Agreement immediately and seek any and all legal or equitable remedies available to the terminating Party.

13. **Entire Agreement.** This Agreement contains the entire agreement of the Parties with respect to its subject matter, and all prior oral or written agreements, contracts, memoranda, negotiations, representations and discussions, if any, are merged into this Agreement. No Party to this Agreement has made any oral or written representation other than those set forth in this Agreement, and no Party has relied upon, or is entering into, this Agreement in reliance upon any representation other than those set forth in this Agreement.

14. **No Modifications Except In Writing.** This Agreement may not be modified or amended except in a writing executed by the Parties.

15. **Third-Party Beneficiaries.** This Agreement shall not confer any rights or remedies upon any person other than the Parties. There are no third-party beneficiaries intended by this Agreement.

16. **Counterparts.** This Agreement may be executed in one or more counterparts, each of which shall be considered to be an original, but all of which taken together shall constitute a single document. This Agreement shall be binding upon each Party upon execution, regardless of whether any other Party has executed the same or a different counterpart. A photocopy, facsimile, or telecopy of an executed counterpart of this Agreement shall be sufficient to bind the Party or Parties whose signature(s) appear thereon.

17. **Representations and Warranties.** Each person and Party whose signature is affixed hereto represents and warrants that such person has full authority to execute this Agreement on behalf of and to bind all of the Parties whose rights are affected by this Agreement and to perform their obligations hereunder. Each Party represents and warrants that it has the legal capacity to enter into this Agreement, that it has read this Agreement, that it understands this Agreement, and that it intends to be legally bound thereby.

18. **Binding Effect.** The obligations and rights under this Agreement shall be binding upon and inure to the benefit of, as the case may be, the Parties' successors, assigns, heirs and personal representatives. This Agreement may not be assigned by any Party, except to the parents, subsidiaries, or Affiliates of such Party, or to successors to all or a controlling interest in the business of such Party relating to the subject matter of this Agreement, without the prior written consent of the other Party, which consent shall not be unreasonably withheld.

19. **Notices.** Any and all notices to be provided pursuant to this Agreement shall be in writing and sent by email or facsimile as well as by overnight courier service. Such notices shall be sent to the individuals noted below, or to such individuals as each Party may designate in writing from time to time:

For ROAM Data, Inc.:

Kerry L. Timbers
Sunstein Kann Murphy & Timbers LLP
125 Summer Street
Boston, MA 02110
ktimbers@sunsteinlaw.com

For BBPOS Limited:

Howard L. Levin
Rich May, PC
176 Federal Street
Boston, MA 02110
hlevin@richmaylaw.com

20. **Interpretation of the Agreement.** This Agreement will not be construed against either of the Parties on the grounds that such Party was the author or drafter of this Agreement. Inapplicability or unenforceability for any reason of any provision of this Agreement shall neither limit nor impair the operation or validity of any other provision of this Agreement.

21. **Governing Law.** The Parties agree that the internal laws of the Commonwealth of Massachusetts, without regard to choice of laws principles, will govern this Agreement and any disputes arising out of, relating to, or in connection with the subject matter addressed herein.

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be executed and delivered by their counsel, to be effective as of the Effective Date.

ROAM DATA, INC..
BY: _____
NAME: DSZCZEPANSKI
TITLE: COO
DATE: 05/25/17

BBPOS LIMITED
BY: _____
NAME: Alex Y W Choi
TITLE: Chief Executive Officer
DATE: February 16, 2017.

6