UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANYWHERECOMMERCE, INC. and BBPOS LIMITED,<br><br>**Plaintiffs,**<br><br>v.<br><br>INGENICO INC., INGENICO CORP., and INGENICO GROUP SA,<br><br>**Defendants.** | **Civil Docket No: 1:19-cv-11457-IT**<br><br>**Jury Trial Demanded** |

**ANYWHERECOMMERCE, INC.'S AND BBPOS LIMITED'S
MOTION FOR SUMMARY JUDGMENT ON INGENICO INC.'S
SECOND AMENDED COUNTERCLAIMS**

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, Plaintiffs / Counterclaim Defendants BBPOS Limited ("BBPOS") and AnywhereCommerce, Inc. ("AC") (together, the "Movants"), by and through their attorneys, respectfully move for summary judgment on Defendant / Counterclaim Plaintiff Ingenico Inc.'s Second Amended Counterclaims (Doc. No. 78), on the grounds that there is no genuine issue as to any material fact and that Movants are entitled to judgment as a matter of law, on each of Ingenico Inc.'s Counts I through VII, generally summarized as follows:

- **COUNTS I & II - Breach of Contract & Breach of the Contractual Duty of Good-Faith and Fair Dealing (Ingenico Inc. v. BBPOS):**
  - *Alleges that BBPOS breached the exclusivity provision of the BBPOS-ROAM Licensing Agreement[1] at §1.3, by allegedly selling covered mPOS products to North American Bancard, LLC ("NAB"), AC, and others under its "exclusive IP license" contract interpretation theory (the "Alleged Exclusivity Breaches");*

---

[1] The term "BBPOS-ROAM Licensing Agreement" refers to the Engineering Development and License Agreement, dated May 4, 2010, as amended August 15, 2011 entered into between BBPOS and Ingenico Inc.'s predecessor-in-interest, ROAM Data, Inc. ("ROAM") [AC_02770544-554, IngenicoInc_0268234-238].

- o *Alleges that BBPOS breached its duty "to indemnify and hold the Company [i.e., ROAM] harmless" under §3.18 of the BBPOS-ROAM Licensing Agreement in failing to undertake a "duty to defend / prosecute" in connection with certain alleged "claim[s] brought by a third party against the Company as a result of or relating to any actual or alleged breach" of BBPOS's reps / warranties at §3.10 "that none of the Products, Devices, Deliverables or Services does or will infringe, misappropriate or violate any intellectual property right of any person" (the "Alleged Indemnification Breaches");*

- **COUNT III - Tortious Interference with Advantageous Business Relations (Ingenico Inc. v. BBPOS):**

  - o *Alleges that BBPOS tortiously interfered with Ingenico Inc.'s existing customer relationship with NAB by "attempting to sell" NAB covered mPOS products in December 2015;*

- **COUNT IV - Tortious Interference with Contractual Relations (Ingenico Inc. v. AC):**

  - o *Alleges that AC intentionally and knowingly tortiously interfered with Ingenico Inc.'s existing contractual relationship with BBPOS by inducing BBPOS to breach the contract or preventing it from performing its contractual obligations as purportedly evidenced by AC's parent company, 4361423 Canada Inc. ("436 Canada") having purportedly retroactively acknowledged and consented to the ROAM-BBPOS Licensing Agreement in July 2013;*

- **COUNT V & VI - Violations of the Defend Trade Secrets Act, 18 U.S.C. § 1836, et seq.& Massachusetts Trade Secrets Act, M.G.L. Ch. 93, § 19 (Ingenico Inc. v. AC):**

  - o *Alleges that AC misappropriated various, albeit unspecified, BBPOS trade secrets to which Ingenico Inc. purports to have a superior, proprietary interest via the BBPOS-ROAM Licensing Agreement; and*

- **COUNT VII - Violation of Mass. Gen. L. Ann. ch. 93A, § 11 (Ingenico Inc. v. BBPOS & AC):**

  - o *Alleges that BBPOS and AC engaged in unfair competition / deceptive acts that constitute willful or knowing violations of this statute.*

This Motion is based upon the pleadings, depositions, expert reports, public records, and other exhibits, which demonstrate that Ingenico Inc.'s counterclaims are stale, ill-conceived, and/or untenable based on the record facts and applicable law.

Ingenico Inc. claims its is entitled to recover nearly ***$73 million*** in alleged counterclaim damages – a surprising figure that was only first disclosed to Movants in March 2022, that ***more than triples*** BBPOS's calculation of trade secret theft damages, and which is, for the most part, completely untethered to even a single credible allegation of breach or actionable harm. It is, however, part and parcel of an aggressive litigation strategy that attempts to portray Defendants – *not BBPOS* – as the purported victims of misused trade secrets that are, in fact, trade secrets that belong to and were first stolen from BBPOS. Ingenico Inc. claims to have sustained these multimillions in damages as result of BBPOS having, in effect, "stolen back" its own original IP to participate in the mPOS market, somehow unfairly or in an ostensible immediate and unabating twelve-year breach of BBPOS's alleged restrictive covenants, if one were to accept Defendants' version of facts.

And, yet there is no trade secret theft counterclaim asserted against BBPOS. The operative claim that Ingenico Inc. asserts against BBPOS, at Count I, is one for breach of contract, that reads as trade secret theft claim but without the pesky need to observe any of the statutory limitations thereof, in support of more than $56 million in unjust enrichment damages it improperly seeks as flowing from the Alleged Exclusivity Breaches (rather than its alleged "lost profits"), which alone constitutes a valid basis for the Court's entry of a dismissal with prejudice of this portion of Count I. More importantly, however, it fails because there has been no breach of the bargained-for scope of exclusivity under the licensing agreement. There are, also, several other grounds, from which the Court may choose, that likewise require a dismissal of this portion of Count I – being the dispositive legal issue upon which Ingenico Inc.'s entire affirmative case largely hinges.

Count I (and, by extension, Ingenico Inc.'s Count II) alleges two types of contractual breaches. With respect to the Alleged Exclusivity Breaches (amounting to $56+ million in alleged

unjust enrichment damages under the theory that an "exclusive IP license" was granted – *although one wasn't*), dismissal with prejudice is warranted for, at least, six reasons, including: (i) no breach of exclusivity / no agreement to exclusivity on devices other than CircleSwipe class of products (i.e., an exclusive product license was granted); (ii) lack of consideration; (iii) constitutes an illegal or unenforceable restraint on trade; (iv) vague, ambiguous, and/or insufficiently definite to enforce; (v) no actionable harm; and/or (vi) time-barred under the 6-year statute of limitations. And, if this portion of the claim fails, so do Counts III and IV, both of which depend on sufficient proofs of alleged IP exclusivity obligations.

Regarding the second type of Alleged Indemnification Breaches, dismissal of the remainder of Count I with prejudice is warranted, in whole or in part, for five distinct reasons: (i) failure to establish the existence of a duty to defend (vs. duty to indemnify); (ii) failure to establish the existence of a duty to prosecute; (iii) failure to keep informed; (iv) lack of advance notice and/or evidence of reasonableness of settlements; and/or (v) lack of evidence of reasonableness of attorneys' fees and costs allegedly incurred.

A more comprehensive discussion of these and the other specific grounds upon which summary judgment is sought in this Motion are further presented in Movants' accompanying moving papers. That said, with the benefit of a fully developed record, the common thread tying together nearly the entirety of Ingenico Inc.'s affirmative case – i.e., Ingenico Inc.'s "exclusive IP license" theory – completely unravels. It is a wildly expansive *ad hoc* interpretation of the scope of the 2010 license grant that attempts to reach beyond the licensed product at issue (i.e., the "CircleSwipe" device, which is a MasterCard magnetic stripe reader with an audio-jack interface) to now cover every single mPOS product ever to have been sold by BBPOS outside of China and the Philippines from 2010 to the present. Essentially, if the Court were to accept Ingenico Inc.'s

"exclusive IP license" theory, this would have the practical effect of retroactively excluding and, ostensibly, also forever barring BBPOS from continuing to engage in its perfectly permissible and notorious competitive mPOS business activities that use or incorporate technology leveraged in the making of BBPOS's CircleSwipe device. Not only does this contradict the documentary and testimonial evidence adduced in the case, it also contradicts the plain language, manifest intent, and objective performances of BBPOS and Ingenico Inc. (or its predecessor-in-interest, ROAM) under the 2010 agreement from its inception until the filing of this lawsuit in late 2018.

Prior to the filing of this lawsuit, the record lacks any direct or even circumstantial evidence that suggests that Ingenico Inc. considered itself to be the "rightful and exclusive licensee" of all of BBPOS's trade secrets and other intellectual property under the 2010 licensing agreement, as now claimed by Ingenico Inc. To the contrary, the record overwhelmingly confirms otherwise, as discussed in Movants' motion papers via concrete examples (e.g., ROAM's internal email thread dated April 24, 2010, discussing the value of the exclusively licensing the CircleSwipe product from BBPOS[2]; ROAM's 2011 email and attached pictures of about AC's sales of BBPOS's similar EMV Chipper device specially branded as the "Rambler"[3]; internal audit findings on procurement matters, noting, in part, "[c]urrently, BBPOS continues to honor and abide by the contract signed in July 2013. No issues have been noted related to product quality or deliveries[,]" in Ingenico Mobile Solutions Business Review December 2015 at 17[4]; *etc.*).

In short, Defendants' legal positions in this case don't square with their past conduct. For example, why seek direct licensing rights to 436 Canada's patents in 2013 (licensing request

---

[2] [IngenicoInc_0020924-929]
[3] [IngenicoInc_0044582-585]
[4] [IngenicoInc_0104763]

**rejected** via letter dated May 14, 2013[5]), *if*, one purportedly has sufficient standing under the 2010 BBPOS licensing agreement to assert a claim for patent infringement based on 436 Canada's patents in 2019? Why pursue a potential acquisition of BBPOS beginning in 2011[6], *if*, one purportedly already owns and controls all the rights to its mPOS intellectual property on a worldwide basis (except in China and the Philippines)? Motivations aside, the record is more than sufficiently developed for the Court to now consider and summarily dispose of Defendants' "exclusive IP license" theory that *alone* represents an approximate $70 million aggregated litigation risk to Movants.

In further support of this Motion, the attention of the Court is respectfully directed to Movants' Memorandum of Reasons, Concise Statement of Material Facts, and Declaration of Counsel submitted for filing contemporaneously herewith, and to any additional arguments to be properly presented in support of the requested relief set forth in this Motion.

## REQUEST FOR ORAL ARGUMENT

Movants respectfully request oral argument on this Motion.

Dated: June 22, 2022.

    Respectfully submitted,

    Plaintiffs / Counterclaim-Defendants,

    By their attorneys,

    */s/ Melissa Bozeman*
    MELISSA A. BOZEMAN
    OLIVER D. GRIFFIN
    PETER N. KESSLER
    Kutak Rock LLP
    1760 Market Street, Suite 1100
    Philadelphia, PA 19103

---

[5] [AC_0098843]
[6] [IngenicoInc_0047329-334]

Tel: (215) 288-4384
Fax: (215) 981-0719
Melissa.bozeman@kutakrock.com
Oliver.griffin@kutakrock.com
Peter.kessler@kutakrock.com

JONATHON D. FRIEDMANN
ROBERT P. RUDOLPH
Rudolph Friedmann LLP
92 State Street
Boston, MA 02109
Tel: (617) 723-7700
Fax: (617) 227-0313
jfriedmann@rflawyers.com
rrudolph@rflawyers.com

RICARDO G. CEDILLO
Davis, Cedillo & Mendoza, Inc.
755 E. Mulberry Ave., Ste 500
San Antonio, Texas 78212
Tel: (210) 822-6666
Fax: (210) 822-1151
rcedillo@lawdcm.com

*Attorneys for Plaintiffs / Counterclaim-Defendants*

**CERTIFICATION PURSUANT TO LOCAL RULE 7.1(a)(2)**

I hereby certify that Movants attempted to conferred with defense counsel respect to the relief requested in this Motion via email request directed to opposing counsel, outlining the legal bases asserted herein, and, therefore, attempted in good faith to resolve or narrow the issue, but were unable to do so.

    */s/ Melissa A. Bozeman*
    Melissa A. Bozeman, Esq.

**CERTIFICATE OF SERVICE**

I, Melissa A. Bozeman, hereby certify that this Motion, in accordance with L.R. 4.5(c) and 5.2(b), was filed through the ECF system on June 22, 2022 and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) via the court's transmission facilities.

    */s/ Melissa A. Bozeman*
    Melissa A. Bozeman, Esq.