UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANYWHERECOMMERCE, INC. and BBPOS LIMITED,<br><br>Plaintiffs,<br><br>v.<br><br>INGENICO INC., INGENICO CORP., and INGENICO GROUP SA,<br><br>Defendants. | Civil Docket No: 1:19-cv-11457-IT |

## DECLARATION OF BEN LO

I, Ben Lo, hereby declare that the following facts are true and correct to the best of my knowledge, information and belief:

1. I am over the age of 18 and have personal knowledge of each of the facts set forth in this declaration. If called to testify, I could and would competently testify thereto. I understand that I am submitting this declaration for use in the above proceeding.

2. I am employed by BBPOS Limited ("BBPOS") and hold the title of CEO. In this position, I have personal knowledge of the matters set forth herein.

3. BBPOS and ROAM Data, Inc. ("ROAM") entered into the Engineering Development and License Agreement dated May 4, 2010, as amended on August 15, 2011 (the "BBPOS-ROAM Licensing Agreement").

4. Under the BBPOS-ROAM Licensing Agreement, BBPOS granted ROAM an exclusive product license for one particular magnetic stripe card reader-only product that connected to mobile phones/tablets via audio-jack plug, and, which, generally, was referred to as the "CircleSwipe."

5. The exclusive product license grant does not cover any other mPOS devices in BBPOS's inventory that have been developed, manufactured, and/or sold from the company's inception through the present.

6. I understood the "similar to or based upon" and "or any portion thereof" language in the BBPOS-ROAM Licensing Agreement to refer to immaterial variations of the CircleSwipe and contemplated EMV ROAMpay POS product, such as in physical form factor, which accounts for the differences in nomenclature between the G3X, G4X, and G5X versions of the CircleSwipe.

7. Defendants' use of the term "Covered Mobile Payment Devices" in this litigation to include all of BBPOS's mPOS devices is inconsistent with the parties' original intent, my understanding, and BBPOS's performance under the BBPOS-ROAM Licensing Agreement.

8. Ingenico Inc. promised to keep BBPOS informed of the status of various patent infringement claims that it claimed to be subject to indemnity, but then failed to do so.

9. Ingenico Inc. failed to provide any advance notice or evidence of reasonableness of settlements of infringement claims purportedly reached.

10. BBPOS requested additional information from Ingenico Inc. regarding its indemnity demands that was never provided.

11. Outside of China, BBPOS has never sold any CircleSwipe devices to anyone other than ROAM / Ingenico.

12. BBPOS has never sold any CircleSwipe devices to NAB.

13. BBPOS has never sold any CircleSwipe devices to AC.

14. BBPOS has never sold any CircleSwipe devices to NMA.

15. BBPOS has never sold any CircleSwipe devices to Shopify.

16. BBPOS has never sold any CircleSwipe devices to its customers in Mexico

17. I understood Christopher Rotsaert to be a corporate representative for ROAM at the time BBPOS disclosed its trade secrets and other confidential information to him and/or others, at his specific direction.

18. I understood any disclosures of confidential information by BBPOS to Ingenico to be covered by the confidentiality protections set forth in the BBPOS-ROAM Licensing Agreement.

19. BBPOS's electronic files containing trade secrets are stored on computers, that are password protected which can only be accessed by a certain engineer, who acts as both custodian / gatekeeper, subject to standing instructions against any unauthorized distribution thereof.

20. BBPOS maintains its electronic files on a local server. To access the local server, a recognized username and password successful login is required.

21. With the exception of possibly Jimmy Tang, or some very early senior staff, I am the only person at BBPOS who has the authority to authorize a third party disclosure of any of BBPOS's engineering files, all of which are considered to be confidential as a matter of course.

22. I am the only person authorized to disclose BBPOS's trade secrets.

23. With respect to the five trade secrets at issue in this case, I authorized the disclosures to made to ROAM, as requested, under the protections of the BBPOS-ROAM Licensing Agreement.

24. No employee of BBPOS had "unfettered access" to the trade secrets at issue in the case.

25. BBPOS employees sign non-disclosure agreements.

26. The trade secret disclosures to ROAM at issue herein were made at my direction, not as a result of any employee seeking permission to do so.

27. I was not aware of ROAM / Ingenico's launch of any competitive EMV devices until approximately October 2014.

28. In or around FY 2016, I learned that ROAM / Ingenico would be transitioning away from BBPOS as a manufacturer for its mPOS devices.

29. ROAM / Ingenico's transition to another manufacturer coincided with a significant decrease in sales revenues for BBPOS.

30. I was not aware of any of the specific initial sale dates for the products below until this litigation:

| ACCUSED PRODUCT | FIRST DATE OF RECORDED SALE | REFERENCE [IngenicoInc_0126787] |
|---|---|---|
| RP757c | February 4, 2014 | Line 4 |
| RP350x | July 9, 2014 | Line 5 |
| RP755x | September 5, 2014 | Line 8 |
| RP170c | October 15, 2015 | Line 64 |
| RP150 | January 29, 2016 | Line 104 |
| RP170 | March 4, 2016 | Line 124 |
| RP457c | March 15, 2016 | Line 129 |
| RP457c-BT | June 15, 2017 | Line 580 |

<
<

I declare under penalty of perjury that the foregoing is true and correct. This Declaration is made pursuant to 28 U.S.C. § 1746.

Executed on July 13, 2022.

_____
Ben Lo