# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ANYWHERECOMMERCE, INC. and BBPOS LIMITED,<br><br>　　　**Plaintiffs,**<br><br>　　　**v.**<br><br>INGENICO INC., INGENICO CORP., and INGENICO GROUP SA,<br><br>　　　**Defendants.** | **Motion to Exceed Page Limit  Granted July 11,  2022**<br><br><br><br>**Jury Trial Demanded**<br><br>**Civil Docket No: 1:19-cv-11457-IT** |

## PLAINTIFFS ANYWHERECOMMERCE, INC.'S AND BBPOS LIMITED'S OPPOSITION TO DEFENDANTS INGENICO INC.'S, INGENICO CORP.'S, AND INGENICO GROUP, SA'S MOTION FOR SUMMARY JUDGMENT (DOC. NO. 191)

Jonathon D. Friedmann, Esq. (BBO # 180130)
Robert P. Rudolph, Esq. (BBO # 684583)
RUDOLPH FRIEDMANN LLP
92 State Street
Boston, MA 02109
Tel.: (617) 723-7700
Fax: (617) 227-0313
JFriedmann@rflawyers.com
RRudolph@rflawyers.com

and

KUTAK ROCK LLP
Oliver D. Griffin (Pro Hac Vice)
Pennsylvania Bar No. 88026
Oliver.griffin@kutakrock.com
Peter N. Kessler (Pro Hac Vice)
Pennsylvania Bar No. 209033
Peter.kessler@kutakrock.com
Melissa A. Bozeman (Pro Hac Vice)
Pennsylvania Bar No.  201116
Melissa.bozeman@kutakrock.com
1760 Market Street, Suite 1100
Philadelphia, PA  19103-4104
(215) 299-4384 (Telephone)
(215) 981-0719 (Facsimile)

Ricardo G. Cedillo, Esq. (pro hac vice)
755 E. Mulberry Ave., Ste 500
San Antonio, Texas 78212
rcedillo@lawdcm.com


Attorneys for Plaintiffs / Counterclaim-Defendants

# Table of Contents

**Page**

I.  PRELIMINARY ISSUE – DEFENDANTS' VIOLATION OF LOCAL RULE
7.1(A)(2) ................................................................................................... 1

II.  INTRODUCTION ...................................................................................... 1

III.  GENUINE DISPUTED MATERIAL FACTS FOR TRIAL EXIST ............................... 2

IV.  STANDARD OF REVIEW ........................................................................... 3

V.  LEGAL ARGUMENT.................................................................................. 4

    A.  DEFENDANTS' LIMITATIONS ARGUMENTS SHOULD BE DENIED
FOR "INSUFFICIENT SHOWING" ................................................. 4

    B.  GENUINE ISSUES OF MATERIAL FACT PRECLUDE SUMMARY
JUDGMENT ON PLAINTIFFS' CLAIMS ......................................... 5

        1.  AC's Claims Present Genuine Issues of Material Fact for Trial ............... 5

            *a.  Tortious Interference* ............................................................. 6

            *b.  Unjust Enrichment* ............................................................... 8

            *c.  Georgia Deceptive Trade Practices Claim*.................................. 10

        2.  BBPOS'S Claims Are Timely Under Applicable Limitation
Periods.............................................................................................. 11

            *a.  Georgia's 5-Year Limitations Period for Trade Secret Theft*...... 13

            *b.  Massachusetts's Three-Year Limitations Period for Trade
Secret Theft* ........................................................................ 17

            *c.  DTSA's Three-Year Limitations Period*.................................... 19

            *d.  Massachusetts's Six-Year Limitations Period  for Breach of
Contract* ............................................................................. 20

            *e.  Georgia's Four-Year Limitations Period for Deceptive
Trade Practices*.................................................................... 22

        3.  BBPOS's Trade Secret Theft Claims Present Genuine Issues of
Material Fact for Trial ....................................................................... 23

        4.  Defendants' Preemption Arguments Fail.................................................. 28

        5.  Defendants' Arguments for Narrowing the Scope of Trade Secrets
at Issue Fail. ..................................................................................... 30

VI.  CONCLUSION............................................................................................ 32

i

## CITATION OF SUPPORTING AUTHORITIES

### FEDERAL CASES

*Bailey v. Glover*,
  88 U.S. (21 Wall.) 342, 22 L.Ed. 636 (1874) .......................................................19

*Camp Creek Hosp. Inns, Inc. v. Sheraton Franchise Corp.*,
  139 F.3d 1396 (11th Cir. 1998) ..................................................................23, 28

*CMAX/Cleveland, Inc. v. UCR, Inc.*,
  804 F. Supp. 337 (M.D. Ga. 1992) ....................................................................24

*Diamond Power Int'l, Inc. v. Davidson*,
  540 F. Supp. 2d 1322 (N.D. Ga. 2007) ...............................................................30

*EarthCam, Inc. v. OxBlue Corp.*,
  49 F. Supp. 3d 1210 (N.D. Ga. 2014), aff'd, 703 Fed. Appx. 803 (11th Cir.
  2017) ...................................................................................................................24

*Farmers Ins. Exch. v. RNK, Inc.*,
  632 F.3d 777 (1st Cir. 2011) ................................................................................8

*Garside v. Osco Drug, Inc.*,
  895 F.2d 46 (1st Cir. 1990) ..................................................................................3

*Geo. Knight & Co. v. Watson Wyatt & Co.*,
  170 F.3d 210 (1st Cir. 1999) ..............................................................................18

*Georgia-Pacific Corp. v. Lieberam*,
  959 F.2d 901 (11th Cir. 1992) ............................................................................24

*Holmberg v. Armbrecht*,
  327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946) ..............................................19

*Icahn Sch. of Med. at Mount Sinai v. Neurocrine Biosciences, Inc.*,
  191 F. Supp. 3d 322 (S.D.N.Y. 2016) ................................................................21

*Kason Indus., Inc. v. Component Hardware Grp., Inc.*,
  120 F.3d 1199 (11th Cir. 1997) ..........................................................................13

*Korpacz v. Women's Pro. Football League*,
  No. CIV.A. 04-10735-RWZ, 2006 WL 220762 (D. Mass. Jan. 27, 2006) ...............8

*Maggio v. Gerard Freezer & Ice Co.*,
  824 F.2d 123 (1st Cir. 1987) ..............................................................................19

*Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*,
  552 F.3d 47 (1st Cir. 2009) ..................................................................................8

*Nano-Proprietary, Inc. v. Canon, Inc.*,
  537 F.3d 394 (5th Cir. 2008) ..............................................................................21

*Palandjian v. Pahlavi*,
  614 F.Supp. 1569 (D. Mass. 1985) .....................................................................12

*Philip Morris, Inc. v. Brown & Williamson Tobacco Corp.*,
  641 F. Supp. 1438 (M.D. Ga. 1986), order clarified, 645 F. Supp. 174 (M.D.
  Ga. 1986).............................................................................................................24

*Prescott v. Morton Int'l, Inc.*,
  769 F. Supp. 404 (D. Mass. 1990) .................................................................12, 17

*RMS Titanic, Inc. v. Zaller*,
  978 F. Supp. 2d 1275 (N.D. Ga. 2013) ...............................................................29

*SCQuARE Int'l, Ltd. v. BBDO Atlanta, Inc.*,
    455 F. Supp. 2d 1347 (N.D. Ga. 2006) ........................................................10
*Truck Drivers & Helpers Union v. NLRB*,
    993 F.2d 990 (1st Cir. 1993) ......................................................................19
*United States v. One Parcel of Real Property*,
    960 F.2d 200 (1st Cir. 1992) ........................................................................4

## STATE CASES

*Brackett v. Perry*,
    201 Mass. 502, 87 N.E. 903 (1909) ...........................................................18
*Demoulas v. Demoulas Super Markets, Inc.*,
    424 Mass. 501, 677 N.E.2d 159 (1997) .....................................................18
*Essex Grp., Inc. v. Southwire Co.*,
    501 S.E.2d 501 (Ga. 1998) .........................................................................27
*Frank Cooke, Inc., v. Hurwitz*,
    10 Mass. App. Ct. 99, 406 N.E.2d 678 (1980) .........................................17
*Hanna v. McWilliams*,
    213 Ga. App. 648, 446 S.E.2d 741 (1994)...........................................13, 22
*Kurker v. Hill*,
    44 Mass. App. Ct. 184, 689 N.E.2d 833 (1998) .........................................6
*Linkage Corp. v. Trs. of Boston Univ.*,
    425 Mass. 1 (1997) ......................................................................................8
*Malapanis v. Shirazi*,
    21 Mass. App. Ct. 378, 487 N.E.2d 533 (1986) .......................................17
*Order Homes, LLC v. Iverson*,
    300 Ga. App. 332, 685 S.E.2d 304 (2009).................................................10
*Paramount Tax & Accounting, LLC v. H & R Block E. Enterprises, Inc.*,
    299 Ga.        App. 596, 683 S.E.2d 141 (2009).............................................28
*Patsos v. First Albany Corp.*,
    48 Mass.App.Ct. 266, 719 N.E.2d 882 (1999) .........................................17
*Porex Corp. v. Haldopoulos*,
    284 Ga. App. 510, 644 S.E.2d 349 (2007), cert. denied (June 25, 2007) ......................... 13-15
*Prof'l Energy Mgmt., Inc. v. Necaise*,
    684 S.E.2d 374 (Ga. Ct. App. 2009).........................................................29
*Puritan Med. Center, Inc. v. Cashman*,
    413 Mass. 167, 596 N.E.2d 1004 (1992) ..................................................17
*Schwartz v. Travelers Indem. Co.*,
    740 N.E.2d 1039 (Mass. App. 2001) ...................................................12, 20
*Stark v. Advanced Magnetics, Inc.*,
    736 N.E.2d 434 (Mass. App. Ct. 2000) ............................................ 12, 17-18
*Swanset Dev. Corp. v. City of Taunton*,
    668 N.E.2d 333 (Mass. 1996) .....................................................................6
*Thomas v. Best Mfg. Corp., Division of Tillotson Corp.*,
    234 Ga. 787, 218 S.E.2d 68 (1975).........................................................24
*Zelby Holdings, Inc. v. Videogenix, Inc.*,
    92 Mass. App. Ct. 86 (2017)......................................................................13

# FEDERAL STATUTES

18 U.S.C.A. § 1836(d) ................................................................................12, 19
28 U.S.C. § 1404 ...................................................................................................15
Defend Trade Secrets Act ...................................................................................19
Georgia's Business and Commercial Law .........................................................10
Lanham Act Section 43(a) (15 U.S.C. § 1125(a)) .............................................1
Violation of the Defend Trade Secrets Act of 2016 (18 U.S.C. §§ 1836, *et seq.*)........................12

# STATE STATUTES

Georgia Deceptive Trade Practices Act (O.C.G.A. § 10-1-372(a))....................................10, 13, 30
Georgia Fair Business Practices Act (O.C.G.A. §§ 10-1-390, *et seq.*)...............................1
Georgia Trade Secrets Act (O.C.G.A. §§ 10-1-760, *et seq.*) ...............................11, 23, 27, 29-30
Georgia Uniform Deceptive Trade Practices Act ...........................................................10
Mass. Gen. L. c. 260, §12 .....................................................................................17
Mass. Gen. L. c. 260, § 2 .....................................................................................12
Mass. Gen. L. c. 93, § 42E ...................................................................................11
Mass. Gen. L. c. 93, § 42F ...................................................................................29
Mass. Gen. L. c. 93A ...........................................................................................17
Massachusetts Trade Secrets Act (Chapter 93 of the General Laws, §§ 42, *et seq.*)....................11
Massachusetts Uniform Trade Secrets Act .................................................................11
O.C.G.A. 10-1-761(2)(B)(ii)(II) & (III)...................................................................23
O.C.G.A. § 9-3-31.............................................................................................22
O.C.G.A. § 9-9-6(a) ...........................................................................................10
O.C.G.A. § 10-1-372(b).......................................................................................10
O.C.G.A. § 10-1-372(c).......................................................................................10
O.C.G.A. §§ 10-1-761(1) .....................................................................................23
O.C.G.A. § 10-1-761(2)........................................................................................23
O.C.G.A. § 10-1-761(4)........................................................................................27
O.C.G.A. §§ 10-1-762(d).......................................................................................28
O.C.G.A. § 10-1-766............................................................................. 11, 13-14, 16
O.C.G.A. §10-1-767(a).........................................................................................29
O.C.G.A. § 10-1-767(b)(1), (2)...............................................................................29

# OTHER AUTHORITIES

4 Ga. Jur. Consumer Protection § 1:1 .....................................................................10
Fed. R. Civ. P. 41(a)(2).......................................................................................1
Fed. R. Civ. P. 56.............................................................................................3
Fed. R. Civ. P. 56(c)..........................................................................................3
Local Rule 1.3.................................................................................................1
Local Rule 56.1................................................................................................1
Local Rule 7.1(A)(2)..........................................................................................1
MA ST 260 § 2.................................................................................................20
*Prof'l Energy Mgmt., Inc*., 684 S.E.2d at 378-80.........................................................29

iv

Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts, § 68:5
 (4th ed. 2003) .......................................................................................................................8
*Specialty Chemicals & Services, Inc. v. Chandler*,
 9 U.S.P.Q.2d 1793, 1988 WL 618583 (N.D. Ga. 1988) .........................................................24

Pursuant to Local Rule 56.1, Plaintiffs AnywhereCommerce, Inc. ("AC") and BBPOS Limited ("BBPOS," and together, "Plaintiffs"), submit this Opposition to the Motion for Summary Judgment (the "Motion"), Doc. No. 191, filed by Defendants Ingenico Inc., Ingenico Corp., and Ingenico Group, SA ("Ingenico"; and, collectively, "Defendants"). As further detailed below and in Plaintiffs' accompanying Concise Statement of Genuine Disputed Material Facts for Trial ("Pl. Disputed"), Doc. No. 198, Defendants' Motion should be denied because genuine issues of material fact exist, which preclude the entry of summary judgment as a matter of law.

## I.     PRELIMINARY ISSUE – DEFENDANTS' VIOLATION OF LOCAL RULE 7.1(A)(2)

Defendants' counsel certified this Motion under Local Rule 7.1(a)(2) that he "conferred with opposing counsel and attempted in good faith to resolve or narrow the issue. Plaintiffs would not assent to the relief sought." Doc. No. 191 at 2; Doc. No. 192 at 23. Defendants' counsel did not discuss the merits of this Motion with Plaintiffs' counsel in advance of filing. Local Rule 1.3 authorizes this Court to impose sanctions, including dismissal, default, or as otherwise appropriate for failures to comply with the directions or obligations set forth in the local rules.

As to BBPOS's COUNT VI (Violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) and Plaintiffs' COUNT IX (Violation of the Georgia Fair Business Practices Act (O.C.G.A. §§ 10-1-390, *et seq.*)) – ***ONLY***, the Court should deny any relief sought by Defendants on these counts as "moot" as Plaintiffs consent to the entry of a voluntary dismissal without prejudice of these two claims under Fed. R. C. P. 41(a)(2), with all parties to bear their own costs and attorneys' fees.

## II.    INTRODUCTION

Defendants' bases for their Motion are without merit. Defendants' positions regarding the statute of limitations have no support (and should not be sustained where Defendants fail to

1

minimally meet their initial burden of showing a legal entitlement to summary judgment)[1] and are wrong given that Plaintiffs' claims are timely asserted under applicable limitations periods. Defendants' disagreements regarding AC's claim of damages do not detract from the clear sufficiency in AC's support for its damages claims. Last, BBPOS established sufficient proofs of its trade secret theft claims to proceed to trial on each of its remaining claims. Defendants' Motion should, therefore, be denied.

## III.    GENUINE DISPUTED MATERIAL FACTS FOR TRIAL EXIST[2]

Although Defendants suggest that their Concise Statement of Material Facts ("Def. Facts"), Doc. No. 193, contain "Material Facts," in truth, they are not *facts* at all.  Defendants have instead dressed up questions of contract interpretation *reserved for the Court* in an effort to support their theory of their case. To wit; that Ingenico Inc., as successor-in-interest to ROAM Data, Inc. ("ROAM"), purportedly holds an exclusive, fully-paid license to unfettered (and largely uncompensated) use of all of BBPOS's trade secrets and IP brought to bear by the company in the development, manufacturing, and sale of mobile point-of-sale ("mPOS") devices since nearly its inception through the present, with the hypothetical rights to now, retroactively, and, potentially, prospectively, exclude BBPOS's from continuing to engage in ordinary competition with Ingenico in the global mPOS market space, beyond the bargained-for CircleSwipe product license exclusivity carve-outs for sales in China and the Philippines, into perpetuity. This farfetched theory is not supported by the facts, but, ultimately, is a matter largely for the Court to decide.

---

[1] *Lopez v. Corporacion Azucarera de Puerto Rico*, 938 F.2d 1510, 1516 (1st Cir. 1991) ("The moving party invariably bears both the initial and the ultimate burden of demonstrating its legal entitlement to summary judgment.") (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986); *Adickes v. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970)); Fed. R. C. P. 56(c)(3).
[2] All of the facts and documentary evidence set forth in Plaintiffs' accompanying Concise Statement of Genuine Disputed Material Facts are incorporated herein by reference.

Other "Material Facts" identified by Defendants are simply inaccurate or otherwise so lacking in context that they cannot be accepted as true.  For example, the "Material Facts" fail to reference Will Graylin ("Graylin"), ROAM's squeezed-out minority member and founding CEO, or otherwise make any attempt to reconcile the testimony he gave in this case, confirming BBPOS's understanding of the scope of its exclusive product license grant and trade secret theft and other liability theories, with the contradictory positions that Defendants advance in the matter. Plaintiffs rely on both their previously filed Concise Statement of Material Facts, Doc. No. 188 ("Pl. Facts"), as well as the accompanying Concise Statement of Genuine Disputed Material Facts, Doc. No. 198, and address the specific evidentiary materials for opposing this Motion where pertinent below.

## IV.   **STANDARD OF REVIEW**

The purpose of a summary judgment motion is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial," *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990) (quoting Fed.R.Civ.P. 56 advisory committee's note). Defendants, thus, effectively, take the implausible position in their Motion that not even one of the remaining seven counts asserted in Plaintiffs' First Amended Complaint ("FAC"), Doc. No. 67, presents a genuine need for trial.

The evidentiary record adduced in this case – however – presents an abundant basis for the denial of Defendants' Motion based on a genuine need for trial. Plaintiffs' burden of production is well met here when, drawing all inferences in their favor, the record facts and other evidentiary materials show that genuine issues of material fact exist and Defendants are not entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). To qualify as "material," a given fact must have the potential to affect the outcome of the case under controlling law; a "genuine" issue of fact will then be found to exist upon the minimal showing that such fact is susceptible of reasonably

being decided in favor of the nonmoving party. *See United States v. One Parcel of Real Property*, 960 F.2d 200, 204 (1st Cir. 1992).

## V.  LEGAL ARGUMENT

### A.  DEFENDANTS' LIMITATIONS ARGUMENTS SHOULD BE DENIED FOR "INSUFFICIENT SHOWING"

Through two perfunctory paragraphs, without proper legal citation or evidentiary support, Defendants contend that BBPOS's claims are barred under certain statutes of limitation. Doc. No. 192 at 15-16. Such conclusory positions need not be considered by the Court pursuant to Fed. R. C. P. 56(c)(3), and certainly fail to meet Defendants' initial burden in moving for summary judgment on the purported basis that these claims are time-barred. Even an *unopposed* motion for summary must be denied where the movant fails to meet its burden to demonstrate undisputed facts – *under established principles* – entitle it to summary judgment as a matter of law. *Lopez*, 938 F.2d at 1517 (quoting *Jaroma v. Massey*, 873 F.2d 17 (1st Cir.1989)). "[I]f [the movant] does not discharge that burden then he is not entitled to judgment. **No defense to an insufficient showing is required**." *Id.* (citing 6 Moore's ¶ 56.22 [2] at 56–777) (emphasis added).

Defendants' single, unsupported fact[3] for dismissing BBPOS's claims as time-barred is, again, only an argument: "*BBPOS was aware of Ingenico's allegedly unlawful product in January 2013, five years and eleven months before it brought suit.*" Doc. No. 192 at 16. Considering that the first accused product at issue in the case did not enter the marketplace until on or after February 4, 2014[4], it defies logic to suggest that BBPOS knew of an unlawful product – *before it even existed*

---

[3] No citation for this statement appears in their Motion nor anywhere within the body of their supporting Concise Statement of Material Facts, Doc. No. 193.

[4] Table at ¶49(u).

| ACCUSED PRODUCT | FIRST DATE OF RECORDED SALE | REFERENCE [IngenicoInc_0126787] |
|---|---|---|
| RP757c | February 4, 2014 | Line 4 |
| RP350x | July 9, 2014 | Line 5 |

– and, in effect, charge BBPOS, as of that date, with having knowledge that was inherently unknowable, contrary to established legal principles for calculating the limitations periods that apply to these claims. At minimum, the relevant first dates of market entry as to each of the accused products demonstrate the existence of a genuine issue of material fact sufficient to overcome any entry of summary judgment, as discussed further below.

Nonetheless, because Defendants fail to carry their initial burden to demonstrate a sufficient showing of a legal entitlement to summary judgment on BBPOS's claims as time-barred, Defendants' limitations arguments fail as a matter of law.

### B.   GENUINE ISSUES OF MATERIAL FACT PRECLUDE SUMMARY JUDGMENT ON PLAINTIFFS' CLAIMS

#### 1.   AC's Claims Present Genuine Issues of Material Fact for Trial

Defendants' request for an entry of summary judgment in their favor on AC's COUNT I – Tortious Interference with Existing and Prospective Contracts and Business Relationships, COUNT VII – Unjust Enrichment, and COUNT VIII – Violation of The Georgia Deceptive Trade Practices Act (O.C.G.A. § 10-1-372(a)) must be denied because genuine issues of material fact exist as to each of the essential elements of these claims. Doc. No. 198 at 40-42 (Pl. Disputed), ¶¶66(a) – (j).

| RP755x | September 5, 2014 | Line 8 |
|--------|-------------------|--------|
| RP170c | October 15, 2015 | Line 64 |
| RP150 | January 29, 2016 | Line 104 |
| RP170 | March 4, 2016 | Line 124 |
| RP457c | March 15, 2016 | Line 129 |
| RP457c-BT | June 15, 2017 | Line 580 |

Doc. No. 198 at 34 (Pl. Disputed), ¶49(u) (citing Ex. 9 (First Sales Data), Doc. No. 198-9).

a.   *Tortious Interference*

"[T]o make out a claim for interference with advantageous business relations, the plaintiff must prove that (1) he had a business relationship for economic benefit with a third party, (2) the defendants knew of the relationship, (3) the defendants interfered with the relationship through improper motive or means, and (4) the plaintiff's loss of advantage resulted directly from the defendants' conduct." *Kurker v. Hill*, 44 Mass.App.Ct. 184, 191, 689 N.E.2d 833 (1998). Similarly, to establish a claim for intentional interference with contractual relations, a plaintiff must allege (1) "the existence of a contract or a business relationship which contemplated economic benefit" for the claimant; (2) "the defendants' knowledge of the contract or business relationship"; (3) "the defendants' intentional interference with the contract or business relationship for an improper purpose or by improper means"; and (4) damages. *Swanset Dev. Corp. v. City of Taunton*, 668 N.E.2d 333 (Mass. 1996).

First, a genuine issue of material fact exists as to the existence of AC's contract or a business relationship for economic benefit and contemplated economic benefit with First Data Corporation ("First Data"). On September 27, 2012, AC and First Data entered into a Purchase and Services Agreement for the supply of mPOS hardware within the United States; the parties also agreed to a Statement of Work dated September 27, 2012, addressing the pricing structure that would govern their mPOS hardware supplier arrangement. Performance on the contract had already long been underway, however.  *Id.* at 40, ¶66(a). Over the next several years, AC was consistently invited to bid on requests for proposals issued by First Data and was awarded projects, expanding the scope of its preferred mPOS hardware supplier arrangement with the company. *Id.* at 40, ¶66(b).

Second, a genuine issue of material fact exists regarding the second element of this claim – i.e., proof of the defendant's knowledge of that relationship. As evidenced, in part, in a document

dated November 19, 2014, which was produced by First Data under the designation of "Highly Confidential – Attorneys' Eyes Only" ("AEO"), entitled "ROAM Data – Project Reprieve Site Visit" [FISV-AC-0000357], a meeting was held between representatives of ROAM and First Data to discuss the parameters of replacing AC with ROAM as First Data's preferred hardware supplier of mPOS products, which identifies the following two topics under the heading "Conversion Considerations:" "Need to determine if Roam can support interfacing with the current AC readers – Not likely" and "Cannot support AC hardware within Roam infrastructure[.]" *Id.* at 40, ¶66(c) (citing Ex. 10, Doc. 198-10). As such, this document shows that ROAM had knowledge of this existing relationship as it planned to replace AC. Accordingly, a genuine issue of material fact exists as to Defendants' knowledge of AC's business relationship with First Data.

Third, a genuine issue of material fact exists regarding the third element of this claim, which requires proofs of an intentional interference with the relationship for an improper purpose or by improper means, namely a head-start to the market with the help of BBPOS's stolen trade secrets. As evidenced, in part, in a document dated November 19, 2014, which was produced by First Data under the designation of AEO, entitled "Reprieve Status Meeting Deliverables for upcoming meeting 11/21/14" [FISV-AC-0000092], there is a generic listing of ROAM's inventory of audio-jack card readers with functionalities that match, in addition to the G3X, G4X, and G5X product line, the accused products in this case. *Id.* at 40, ¶66(d) (citing Ex. 11, Doc. No. 198-11). Also, as evidenced, in part, in a document dated October 1, 2014, which was produced by First Data under the designation of AEO, entitled "Project Reprieve Meeting" [FISV-AC-0000043], there is a comment: "Moving ahead with ROAM is likely the fastest path away from Apriva, given much upfront work is complete and our strategic relationship w/Ingenico." *Id.* at 41, ¶66(e) (citing Ex. 12, Doc. No. 198-12). Viewing the entire record in the light most favorable to the nonmoving

party and drawing all reasonable inferences in BBPOS's favor, *see Farmers Ins. Exch. v. RNK, Inc*., 632 F.3d 777, 779-80 (1st Cir. 2011), the foregoing demonstrates the existence of a genuine issue of material fact as to whether, absent Defendants' improper theft of trade secrets and the nature of Ingenico's "strategic relationship" with First Data, whether ROAM would have been selected to replace AC as First Data's new preferred mPOS hardware supplier.

Fourth, AC has a viable damages theory. Under Massachusetts law, either a plaintiff's lost profits or a defendant's unjust enrichment (whichever is greater) may be recovered on a tortious interference claim. *Korpacz v. Women's Pro. Football League*, No. CIV.A. 04-10735-RWZ, 2006 WL 220762, at *2 n. 3 (D. Mass. Jan. 27, 2006) (citing *Linkage Corp. v. Trs. of Boston Univ*., 425 Mass. 1, 21 (1997)). Moreover, by applying a simple sorting function for the customer "First Data Corp" to Defendants' produced sales data, reveals that Defendants earned revenues of $12,405,200.00 and incurred costs of $7,921,512.95, which resulted in an unjust enrichment in the amount of $4,483,687.95, for the reviewed period. *Id*. at 41, ¶66(f) (citing Ex. 13, Doc. No. 198-13).

Based on the foregoing, the Court should enter an Order denying Defendants' Motion, seeking summary judgment be entered in their favor on AC's claim for tortious interference, because genuine issues of material fact exist.

b.      *Unjust Enrichment*

A claim for unjust enrichment requires three elements: "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under the circumstances would be inequitable without payment for its value." *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47, 57 (1st Cir.2009) (citing Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts, § 68:5 (4th ed. 2003)).

First, regarding the first element of unjust enrichment, a genuine issue of material fact exists as to whether AC conferred a benefit upon Defendants in connection with its unlicensed, embedded use of intellectual property controlled by AC in incorporating BBPOS's stolen trade secrets in the accused devices. AC earns royalties in the range of 4-5% in connection with BBPOS's sales of certain mPOS devices that speak to its patents, which are often paid to AC in the nature of offsets, and which then filter upstream, in part, to its parent company, 4361423 Canada Inc. ("436 Canada"). *Id.* at 41, ¶66(h) (citing Ex. 14 (Kron I Tr.), Doc. No. 198-14). Thus, AC was denied, in part, royalties it would have otherwise earned in connection with the sale of covered mPOS products – both in depriving BBPOS of sales it would have otherwise made and the royalties it could have charged Defendants for their use of this IP. Defendants received and retained this benefit without payment to AC.

Second, a genuine issue of material fact exists regarding the second element of this claim – i.e., an appreciation or knowledge by the defendant of the benefit. After certain alleged infirmities in BBPOS's intellectual property rights arising under the HATM-BBPOS License got flagged during M&A due diligence, ROAM attempted, unsuccessfully, to resolve those issues, first, by way of an amended licensing agreement between 436 Canada and BBPOS, and then later, by seeking a direct license to 436 Canada's IP in its own right, well after the contemplated BBPOS acquisition had been terminated. *Id.* at 41-42, ¶66(i) (citing Ex. G (Houlihan Lokey Report), Doc. No. 188-7 at 10-11); Ex. V (May 2013 Rejection Letter), Doc. No. 188-22 (rejecting ROAM's request for a direct license to 436 Canada's IP)).

Third, a genuine issue of material fact exists regarding the third element of this claim, which requires proofs of acceptance or retention by the defendant of the benefit under the circumstances would be inequitable without payment for its value. Again, when Defendants were

unable to obtain these licensing rights from AC, legally, Defendants simply decided to leverage this IP in their accused products without paying for this use, as evidenced by its theft of BBPOS's trade secrets, as discussed further below. *Id.*

Based on the foregoing, the Court should enter an Order denying Defendants' Motion, seeking summary judgment be entered in their favor on AC's claim for unjust enrichment, because genuine issues of material fact exist.

c.      *Georgia Deceptive Trade Practices Claim*

As set forth in Georgia's Business and Commercial Law: Business Torts and Trade Regulation (May 2022 Update), "[t]he Georgia Uniform Deceptive Trade Practices Act . . . specifies a nonexhaustive list of actions that are considered engaging in deceptive trade practices." 4 Ga. Jur. Consumer Protection § 1:1 (citations omitted). In addition to the twelve enumerated examples of deceptive trade practices, the statute also contains a savings clause under O.C.G.A. § 10-1-372(c), which permits actions as to those unfair trade practices that are otherwise actionable at common law or under other statutes of Georgia, including claims for fraud, deceit, misrepresentation, unjust enrichment, etc.). *Id.* (citing *Order Homes, LLC v. Iverson*, 300 Ga. App. 332, 685 S.E.2d 304 (2009); O.C.G.A. § 9-9-6(a)). Moreover, the statute "specifically provides that 'a complainant need not prove ... actual confusion' to prevail on a claim under the Act." *SCQuARE Int'l, Ltd. v. BBDO Atlanta, Inc.*, 455 F.Supp.2d 1347, 1367 (N.D. Ga. 2006) (citing O.C.G.A. § 10–1–372(b)).

Thus, to the extent that AC's tortious interference and/or unjust enrichment claims survive, Defendants' request for the entry of summary judgment in their favor on AC's COUNT VIII – Violation of The Georgia Deceptive Trade Practices Act (O.C.G.A. § 10-1-372(a)) must also be denied, on the basis that genuine issues of material fact exist.

10

      1.    <u>BBPOS's Claims Are Timely Under Applicable Limitations Periods</u>

To the extent that the Court is disinclined to deny Defendants' limitations arguments for insufficient showing, the existing genuine issues of material fact require it. *Id.* at 29-36, ¶¶49(a) – (ff). As summarized in the following table and further discussed below, BBPOS's claims were timely asserted as of the date of BBPOS's initiation of this lawsuit against Defendants on December 20, 2018:

| *BBPOS CLAIMS* | *STATUTE OF LIMITATIONS* | *TIMELINESS ASSESSMENT* |
|---|---|---|
| <u>**COUNT II**</u><br><br>**Violation of the Georgia Trade Secrets Act ("GTSA") (O.C.G.A. §§ 10-1-760, *et seq.*)**<br><br>*BBPOS v. Defendants* | ***Five years.*** *See* O.C.G.A. § 10-1-766 ("An action for misappropriation must be brought within five years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered. For the purposes of this Code section, a continuing misappropriation by any person constitutes a single claim against that person, but this Code section shall be applied separately to the claim against each person who receives a trade secret from another person who misappropriated that trade secret."). | BBPOS's trade secret theft claims relative to all accused products were timely asserted as of the date of BBPOS's initiation of this lawsuit on December 20, 2018 – by no less than 45 days, but more likely more than nine months. |
| <u>**COUNT III**</u><br><br>**Violation of the Massachusetts Trade Secrets Act ("MTSA") (Chapter 93 of the General Laws, §§ 42, *et seq.*)**<br><br>*BBPOS v. Defendants* | ***Three years.*** In Massachusetts, there are two relevant statutes of limitations concerning trade secrets. The three-year statute that applies here is for tort actions alleged to have occurred before October 1, 2018, including, as here, a Massachusetts statutory trade secrets misappropriation claim. *Prescott v. Morton Int'l, Inc.*, 769 F. Supp. 404, 406 (D. Mass. 1990).[5] | BBPOS's trade secret theft claims relative to all accused products were timely asserted as of the date of BBPOS's initiation of this lawsuit on December 20, 2018 – by several months under *Stark*. Minimally, however, the claim is timely as it relates to accused products RP150, RP170, RP457c, and RP457c-BT. |

---

[5] Actions brought under the Massachusetts Uniform Trade Secrets Act ("UTSA"), effective for misappropriation claims occurring on or after October 1, 2018 (M.G.L. c. 93, § 42E), also have a three-year statute of limitations period.

| **COUNT IV**<br><br>**Violation of the Defend Trade Secrets Act of 2016 ("DTSA") (18 U.S.C. §§ 1836, *et seq.*)**<br><br>*BBPOS v. Defendants* | ***Three years.*** *See* 18 U.S.C.A. § 1836(d), Period of limitations ("A civil action under subsection (b) may not be commenced later than 3 years after the date on which the misappropriation with respect to which the action would relate is discovered or by the exercise of reasonable diligence should have been discovered. For purposes of this subsection, a continuing misappropriation constitutes a single claim of misappropriation."). | BBPOS's trade secret theft claims relative to all accused products were timely asserted as of the date of BBPOS's initiation of this lawsuit on December 20, 2018 – to the extent that ROAM's transfer of license constitutes a new claim. Minimally, however, the claim is timely as it relates to accused products RP150, RP170, RP457c, and RP457c-BT. |
| **COUNT V**<br><br>**Breach of Contract (Massachusetts)**<br><br>*BBPOS v. Ingenico Inc.* | ***Six years***. *See* Mass. Gen. L. c. 260, § 2 ("Actions of contract ... shall, except as otherwise provided, be commenced only within six years next after the cause of action accrues."); *Schwartz v. Travelers Indem. Co.*, 740 N.E.2d 1039 (Mass. App. 2001). | BBPOS has suffered damages arising out of or resulting from the breach of Ingenico Inc.'s confidentiality, non-assignment prohibition, and indemnification obligations under the BBPOS-ROAM Licensing Agreement, which have accrued or otherwise become subject to indemnification during the six-year statutory limitations period. |
| **COUNT VII**<br><br>**Unjust Enrichment (Massachusetts)**<br><br>*Plaintiffs v. Defendants* | ***Six years (at most)***. Unjust enrichment claims, arising, in part, from breach of contract allegations, are subject to a six-year statute of limitations. *Palandjian v. Pahlavi*, 614 F.Supp. 1569, 1577 (D.Mass.1985) ("In Massachusetts the statutes of limitation applicable to law actions based on contract and tort are also applicable to suits in equity. [] The court must look to the 'gist of the action' or the essential nature of the plaintiff's claim in determining what statute of limitations to apply.") (internal citation omitted). *See also Zelby Holdings, Inc. v.* | See above analysis for COUNT V (or COUNT III, as may be applicable). |

| | | |
|---|---|---|
| | *Videogenix, Inc*., 92 Mass. App. Ct. 86 (2017) (applying six-year statute of limitations to unjust enrichment claim based on breach of contract allegations). | |
| **COUNT VIII**<br><br>**Violation of the Georgia Deceptive Trade Practices Act ("UDTPA") (O.C.G.A. § 10-1-372(a))**<br><br>*Plaintiffs v. Defendants* | *Four years*. *Kason Indus., Inc. v. Component Hardware Grp., Inc*., 120 F.3d 1199, 1204-05 (11th Cir. 1997)("We thus deem the four-year limitations period set forth in § 9–3–31 the proper statute of limitations for the UDTPA to borrow."). | BBPOS's deceptive trade practices claims relative to all accused products were timely asserted as of the date of BBPOS's initiation of this lawsuit on December 20, 2018 – by several months under *Hanna*. Minimally, however, the claim is timely as it relates to as accused products RP17c, RP150, RP170, RP457c, and RP457c-BT. |

a.      *Georgia's 5-Year Limitations Period for Trade Secret Theft*

The statute of limitations on trade secret claims under the Georgia statute is five years and runs from the time the misappropriation is discovered or, by reasonable diligence, should have been discovered. O.C.G.A. § 10-1-766. Under the "discovery" rule, the statute of limitations does not begin to run until the plaintiff has sufficient information to make a "meaningfully colorable" claim of trade secret misappropriation. The mere suspicion of possible misappropriation does not amount to objectively reasonable notice sufficient to trigger the running of the statute. *Porex Corp. v. Haldopoulos*, 284 Ga. App. 510, 644 S.E.2d 349 (2007), cert. denied, (June 25, 2007).

If the plaintiff becomes aware of facts that would make a reasonably prudent person suspicious, he has a duty to investigate further and is charged with knowledge of the matters that would have been revealed in such investigation. This rule applies even if the potential plaintiff fails to conduct an investigation. However, if certain key facts are unavailable even to a reasonably diligent plaintiff, the statute is tolled until the facts become available. *Id*. Moreover, to prevent multiple claims for a continuing use of a misappropriated trade secret, the statute states that a

13

continuing misappropriation by any person constitutes a single claim against that person. O.C.G.A. § 10-1-766. However, the limitation period is applied separately to claims against different persons who misappropriate the trade secret by receiving it from another misappropriator. *Id*.

Thus, the statute of limitations does not begin to run until a plaintiff has sufficient information to make a "meaningfully colorable" claim. *Porex Corp. v. Haldopoulos, supra*. In rejecting a trial court's articulation of the triggering date for the five-year statute of limitations that "[a]ny fact that excites [a plaintiff's] suspicion is the same as actual knowledge of his entire claim," the Court of Appeals for Georgia in *Porex* explained that "mere suspicion of possible misappropriation does not amount to objectively reasonable notice sufficient to trigger the running of the statute." The *Porex* Court stated:

> In interpreting the language of the uniform statute, courts have concluded that the statute begins to run when the plaintiff has "knowledge of sufficient facts from which a reasonable jury could infer misappropriation." . . . Thus, the statute of limitation does not begin to run until a plaintiff has sufficient information to make a "meaningfully colorable" claim. . . . Accordingly, mere suspicion of possible misappropriation does not amount to objectively reasonable notice sufficient to trigger the running of the statute.

*Id*., 284 Ga. App. at 515, 644 S.E.2d at 353 (internal citations omitted).

Noting that " '[m]ere knowledge that a company is competing in the marketplace and manufacturing similar parts is not dispositive on the accrual of the statute of limitations in a trade secret misappropriation case[,]' " *id*., 284 Ga. App. at 518, 644 S.E.2d at 355 (quotation omitted), the appellate court found error with the trial court's findings on two grounds. First, it determined that certain suspicions reflected in a letter seeking assurances regarding a question of potential theft created a material issue of fact as to whether they were sufficient to cause a reasonably prudent person to investigate whether its trade secrets had been misappropriated. Second, it found that "the trial court erred in finding as a matter of law that reasonable diligence would have

revealed information of an arguably colorable claim during the five-month period between April and September 2000", noting that:

> . . . Certainly nothing in the current record indicates that further investigation in 2000 would have revealed the information that Porex discovered on its tour of the MicroPore facility in August 2005, upon which it now bases its claim. There is no evidence in the record that MicroPore or Haldopoulos ever supplied plastic products to Safari; in fact, the only indication in the record is that no business relationship existed between those parties.

*Id.*, 284 Ga. App. at 518-19, 644 S.E.2d at 355. Accordingly, the court reversed the trial court's order granting partial summary judgment.

Here, based on both legal and factual reasons, Georgia's trade secret theft statute is a proper statutory framework for determining the timeliness of BBPOS's trade secret theft claims under a five-year statute of limitations (i.e., law of transferor forum under 28 U.S.C. § 1404; principal place of business for the Ingenico defendants within the United States; *etc.*).

Applying Georgia law, most conservatively, the earliest date that the five-year statute of limitations could have been triggered here is February 4, 2014 – i.e., the date of the first accused product sale based on Defendants' sales records (*see* Doc. No. 198 (Pl. Disputed) at 34, ¶49(u) (citing Ex. 9 (First Sales Data), Doc. No. 198-9) – and, as such, even assuming arguendo BBPOS had contemporaneous knowledge of the same (*which it did not*), this is the first objective point in time at which a suspicion could arise that Ingenico used BBPOS's stolen trade secrets to unfairly compete with BBPOS in the marketplace. Using this date, then, as the applicable trigger for Georgia's five-year statute of limitations, BBPOS's trade secret theft claim here is timely by more than forty-five days.

It is well settled, however, under Georgia law that "suspicion" alone is not enough to trigger the running of this statute of limitations. It is more likely here that the five-year statute of limitations was triggered no earlier than October 2014, when Lo visually observed Ingenico's

15

accused RP350x device at a Cartes trade show held in Paris, France, was not able to physically examine it. *Id.* at 34-35, ¶¶49(v) – (x) (citing Ex. 2 (Lo II Tr.), Doc. No. 198-2; Ex. 4 (Lo I Tr.), Doc. No. 198-4). Such a determination would mean that BBPOS's trade secret theft claims are timely by more than nine months. *See also, id.* at Ex. 1 (Lo Dec.) at ¶30, Doc. No. 198-1 at 4.

The record facts also establish why it is particularly appropriate in this case for equitable discovery rule principles to apply where ROAM / Ingenico, in fact, made false written assurances to BBPOS, in an email dated January 19, 2013, in addressing the unsubstantiated rumors of Ingenico's anticipated launch of competing EMV reader, stating: "**I can assure you that there is no commonality in terms of architecture, firmware or power with the Ingenico device as it is based off of an existing Landi product**." *Id.* at 32, ¶49(o) (citing Ex. 8 (2/12/2013 Thread), Doc. No. 198-8) (emphasis added). This assertion, however, has been disproven by the unrebutted findings of BBPOS's liability expert.

Lastly, under the anti-assignment provisions of the exclusive product license, January 1, 2015 (i.e., the date by which Ingenico acquired 100% of the ownership interests in ROAM) provides an alternative point in time for the Court to find that this action for trade secret theft was brought well within applicable five-year statute of limitations, which, under Georgia law, is applied separately to any continuing misappropriation claim against each person who receives a trade secret from another person who misappropriated that trade secret. O.C.G.A. § 10-1-766.

Accordingly, the factual record here is more than sufficient to create a genuine issue of material fact on this issue to easily overcome any motion for summary judgment and, more importantly, prevail at trial upon submission to the fact-finder.

        b.     *Massachusetts's Three-Year Limitations Period for Trade Secret Theft*

With respect to misappropriation of trade secrets that occurred before October 1, 2018, the previous statutory and state jurisprudence controls.[6] Moreover, the "continuing tort" limitation contained in the presently enacted Massachusetts trade secret theft law does not apply here insomuch as the bad acts occurred before October 1, 2018.  In tort actions and actions for Chapter 93A violations, the cause of action accrues when the plaintiff's injury occurs. *Stark v. Advanced Magnetics, Inc.*, 736 N.E.2d 434, 441 (Mass. App. Ct. 2000); *Prescott v. Morton Int'l, Inc.*, *supra*. The plaintiff does not need to have actual notice of the plaintiff's injury. The statute of limitations will accrue when the plaintiff either knew or should have known of the injury. *Stark*, 736 N.E.2d at 443. Here, BBPOS knew of its trade secret theft injury in or around 2016 – when the company experienced a sharp decline in sales, bringing this claim within the three-year statute of limitations purview. Ex. 1 (Lo Dec.) at ¶¶28-29, Doc. No. 198-1 at 4. One could further argue each act of transferring the license post-2015 gives rise to a new cause of action.

Under G.L. c. 260, §12, the statute of limitations will be tolled "if the wrongdoer either 'concealed the existence of a cause of action through some affirmative act done with intent to deceive' or breached a fiduciary duty of full disclosure." *Puritan Med. Center, Inc. v. Cashman,* 413 Mass. 167, 175, 596 N.E.2d 1004 (1992), quoting from *Frank Cooke, Inc., v. Hurwitz,* 10 Mass.App.Ct. 99, 108, 406 N.E.2d 678 (1980). The statute of limitations, however, is not tolled if the plaintiff has actual knowledge of the facts giving rise to his cause of action. *Malapanis v. Shirazi,* 21 Mass.App.Ct. 378, 386 n. 8, 487 N.E.2d 533 (1986). *Patsos v. First Albany Corp.,* 48 Mass.App.Ct. 266, 272, 719 N.E.2d 882 (1999). In the case of actual fraud, the statute will not be tolled if the plaintiff also had the means to acquire the facts on which his

---

[6] Both acts of misappropriation and/or use are triggering events under the prior statutory scheme.

cause of action is based. *Brackett v. Perry,* 201 Mass. 502, 505, 87 N.E. 903 (1909). *Demoulas v.*

*Demoulas Super Markets, Inc.,* 424 Mass. 501, 520 & n. 25, 677 N.E.2d 159 (1997). Given that

ROAM / Ingenico, in fact, made false written assurances to BBPOS of no trade secret theft in an

email dated January 19, 2013, equitable tolling under the fraudulent concealment rule applies. Doc.

No. 198 at 32, ¶¶49(n) – (o) (citing Ex. 8 (2/12/2013 Thread), Doc. No. 198-8).

The "discovery rule" is also an available means to equitably toll the statute of limitations.

That rule is explained in the case of *Geo. Knight & Co. v. Watson Wyatt & Co.,* 170 F.3d 210, 213

(1st Cir.1999), as follows:

> Pursuant to the discovery rule, an action accrues when the injured party knew, or, in the exercise of reasonable diligence, should have known the factual basis for the cause of action.... In order for the statute of limitations to be tolled pursuant to the discovery rule, "the factual basis for the cause of action must have been 'inherently unknowable' at the time of the injury." ... The factual basis for a cause of action is "inherently unknowable" if it is "incapable of detection by the wronged party through the exercise of reasonable diligence."

(internal citations omitted).

Applying the fraudulent concealment and discovery rules, the earliest date that the three-

year statute of limitations could have been triggered here as to accused products RP150, RP170,

RP457c, and RP457c-BT, at least, is January 29, 2016, bringing BBPOS's claim, as to those

products, minimally, well within the three-year period. Doc. No. 198 (Pl. Disputed) at 34, ¶49(u)

(citing Ex. 9 (First Sales Data), Doc. No. 198-9. That said, under *Stark*, it is the 2016 injury that

primarily drives the analysis, and which should be applied, such that BBPOS's claim covers the

entire suite of accused products at issue here.

Accordingly, the factual record here is more than sufficient to create a genuine issue of

material fact on this issue to easily overcome any motion for summary judgment and, more

importantly, prevail at trial upon submission to the fact-finder.

c.     *DTSA's Three-Year Limitations Period*

An action for trade secret misappropriation under the DTSA arises under federal law and is subject to a three-year statute of limitations. *See* 18 U.S.C.A. § 1836(d) ("A civil action under subsection (b) may not be commenced later than 3 years after the date on which the misappropriation with respect to which the action would relate is discovered or by the exercise of reasonable diligence should have been discovered. For purposes of this subsection, a continuing misappropriation constitutes a single claim of misappropriation.").

The federal doctrine of fraudulent concealment operates to toll the statute of limitations "where a plaintiff has been injured by fraud and 'remains in ignorance of it without any fault or want of diligence or care on his part.' " *Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946) (quoting *Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 348, 22 L.Ed. 636 (1874)); *see Maggio v. Gerard Freezer & Ice Co*., 824 F.2d 123, 127 (1st Cir.1987).

To successfully assert a basis for tolling under the fraudulent concealment doctrine, a plaintiff must establish that "(1) sufficient facts were [not] available to put a reasonable [business] in [BBPOS's] position on inquiry notice of the possibility of fraud, and (2) [BBPOS] exercised due diligence in attempting to uncover the factual basis underlying this alleged fraudulent conduct." *Maggio*, 824 F.2d at 128. Thus, allegations of fraudulent concealment do not modify the requirement that plaintiffs must have exercised reasonable diligence. *See Truck Drivers & Helpers Union v. NLRB,* 993 F.2d 990, 998 (1st Cir.1993) ("Irrespective of the extent of the effort to conceal, the fraudulent concealment doctrine will not save a charging party who fails to exercise due diligence, and is thus charged with notice of a potential claim.").

Here, the earliest date that the three-year statute of limitations could have been triggered as to accused products RP150, RP170, RP457c, and RP457c-BT, at least, is January 29, 2016, bringing BBPOS's claim, as to those products, minimally, well within the three-year period. Doc.

No. 198 (Pl. Disputed) at 34, ¶49(u) (citing Ex. 9 (First Sales Data), Doc. No. 198-9). One could further argue each act of transferring the license post-2015 gives rise to a new cause of action.

Accordingly, the factual record here is more than sufficient to create a genuine issue of material fact on this issue to easily overcome any motion for summary judgment and, more importantly, prevail at trial upon submission to the fact-finder.

> d.     *Massachusetts's Six-Year Limitations Period for Breach of Contract*

In Count V, BBPOS asserts a claim for breach of contract against Ingenico Inc. that arises under the BBPOS-ROAM Licensing Agreement.  Under Massachusetts law,[7] this claim is subject to a six-year statute of limitations. *See* MA ST 260 § 2; *Schwartz v. Travelers Indem. Co.*, *supra*.

Here, Defendants thieved BBPOS's trade secrets and gleaned an unfair competitive advantage by then misusing the stolen technology and trade secrets, and converting the same to their exclusive benefit without any reasonable value in return, to develop a directly competitive EMV reader. The foregoing also constitutes a breach of the ROAM licensing agreement at §§6.1 and 6.3, which provide, in relevant part:

> Both parties agree to treat the other's Confidential Information (as defined below) as confidential, to take all reasonable measures to protect and prevent the disclosure of and/or unauthorized use by third parties of the other parties' Confidential Information, to exercise at least the same degree of care exercised for the protection of its own Confidential Information, and to not use Confidential Information other than for its intended purpose under this Agreement.
>
> *          *          *
>
> Notwithstanding any provision herein to the contrary, a party may disclose Confidential Information on a need-to-know basis to its contractors, lawyers, accountants and agents, provided that any such person is bound by a duty of

---

[7] Section 16.1 of the BBPOS-ROAM Licensing Agreement states, in relevant part:

> This Agreement shall be governed by and construed in all respects in accordance with the laws of Massachusetts, USA and the parties hereto hereby irrevocably submit to the exclusive jurisdiction of the courts of Massachusetts.

Doc. No. 188-3 at 8 (BBPOS-ROAM Licensing Agreement).

> confidentiality, and such party shall be responsible for any disclosure or use by
> any such third party in contravention hereof. . .

*Id.* at 13-14, ¶¶20(a), (c) (citing Doc. No. 188-3 at 6 (BBPOS-ROAM Licensing Agreement)).

Moreover, no later than January 1, 2015, there was a triggering sale of ROAM under Delaware law that, under the licensing agreement, resulted in an attempted prohibited transfer or assignment of the license. This act also constituted a material breach of the licensing agreement. *See, e.g., Nano-Proprietary, Inc. v. Canon, Inc*., 537 F.3d 394 (5th Cir. 2008) (holding that unauthorized sublicensing is a material breach of a patent licensing agreement); *Icahn Sch. of Med. at Mount Sinai v. Neurocrine Biosciences, Inc.*, 191 F. Supp. 3d 322, 334 (S.D.N.Y. 2016) (allegations of grant of unauthorized sublicense was sufficient to support breach of licensing agreement).

Said breach entitles BBPOS to indemnification by Ingenico Inc. of all related losses incurred by BBPOS as a result of this improper disclosure of its confidential material and other contractual breaches. In particular, §4.3 of the BBPOS-ROAM Licensing Agreement provides:

> The Company agrees to indemnify and hold [BBPOS] harmless from any and all
> losses, costs, liabilities, or expenses (including court costs and reasonable fees of
> attorneys and other professionals) arising out of or resulting from the breach any
> warranty, representation or other provision of this Agreement by the Company or
> arising out of or resulting from any claim brought by a third party against [BBPOS]
> as a result of or relating to any actual or alleged breach hereof by the Company. In
> the event of any such claim, [BBPOS] agrees to notify the Company promptly of
> the claim and to permit the Company at the Company's expense, to assume control
> of the defence (sic) thereof with counsel of the Company's choosing, and cooperate
> with the Company in such defence (sic) at the Company's expense.

Doc. No. 188-3 at 5 (BBPOS-ROAM Licensing Agreement).

BBPOS has suffered losses, costs, liabilities, or expenses (including court costs and reasonable fees of attorneys and other professionals) arising out of or resulting from the breach of Ingenico Inc.'s confidentiality, non-assignment prohibition, and indemnification obligations under

21

the BBPOS-ROAM Licensing Agreement, entitling BBPOS to recovery of the same from Ingenico Inc. These claims accrued or otherwise became subject to indemnification during the six-year statutory limitations period.

Accordingly, the factual record here is more than sufficient to create a genuine issue of material fact on this issue to easily overcome any motion for summary judgment and, more importantly, prevail at trial upon submission to the fact-finder.

       e.     *Georgia's Four-Year Limitations Period for Deceptive Trade Practices*

The limitations period of O.C.G.A. § 9–3–31 begins to run when a cause of action "accrues." O.C.G.A. § 9-3-31. A cause of action accrues, for purposes of the statute, at the time of the injury. *Hanna v. McWilliams*, 213 Ga.App. 648, 651, 446 S.E.2d 741, 744 (1994).

Although multiple allegations drive the substance of this claim that could provide for alternative limitations period analyses, the earliest date that the four-year statute of limitations could have been triggered here as to accused products RP170c, RP150, RP170, RP457c, and RP457c-BT, at least, is October 15, 2015, bringing BBPOS's claim, as to those products, minimally, well within the four-year period. Doc. No. 198 (Pl. Disputed) at 34, ¶49(u) (citing Ex. 9 (First Sales Data), Doc. No. 198-9). That said, under *Hanna*, it is the 2016 injury that primarily drives the analysis, and which should be applied, such that BBPOS's claim, minimally, covers the entire suite of accused products at issue here.

Accordingly, the factual record here is more than sufficient to create a genuine issue of material fact on this issue to easily overcome any motion for summary judgment and, more importantly, prevail at trial upon submission to the fact-finder.

3.      BBPOS's Trade Secret Theft Claims Present Genuine Issues of Material
Fact for Trial

In the final argument section of their Motion, Defendants present a nonsensical and unsupported attempt at disproving essential elements of BBPOS's statutory trade secret theft claims under Georgia, Massachusetts, and Federal law, warranting an entry of summary judgment on BBPOS's claims in their favor. It must be denied.

Referencing the applicable standards for misappropriation, Defendants claim they are insulated from any finding that they acquired BBPOS's trade secrets by improper means, where the evidence indisputably shows that BBPOS willingly handed its trade secrets over to Ingenico and without any markings to designate its trade secret disclosures as "confidential," as purportedly required under the terms of the BBPOS-ROAM Licensing Agreement. Therefrom, they go on to contend, such impliedly, careless handling of one's trade secrets is proof sufficient of a failure by BBPOS to employ reasonable measures to ensure the secrecy of its trade secrets, thereby purportedly foreclosing the availability of statutory trade secret protections for BBPOS's trade secrets. This argument should be summarily rejected for the following reasons.

First, Defendants' foundational argument fails to account for the fact that not all claims for misappropriation require a showing of "improper means" under applicable statutory or case law. Under the GTSA, for example, misappropriation can occur even when the trade secret at issue had been acquired by "accident or mistake" as it is defined at O.C.G.A. § 10–1–761(2).  *See Camp Creek Hosp. Inns, Inc. v. Sheraton Franchise Corp.*, 139 F.3d 1396, 1412 (11th Cir. 1998) (". . . the GTSA includes the diversion of information acquired under legitimate circumstances within its definition of misappropriation, *see* O.C.G.A. §§ 10–1–761(1), 10–1–761(2)(B)(ii)(II) & (III) . . ."). As such, Defendants' pre-supposition that sufficient proofs of an acquisition by improper means are an essential element of each of BBPOS's statutory trade secret theft claims is wrong.

23

Second, even where proof of "improper means" is required, the analysis does not rise or fall on whether a disclosure was voluntary or not. Under Georgia law, for example, misappropriation arises when one who has legitimate access to trade secret information, such as in the course of his or her employment or by virtue of a license or other type of agreement *CMAX/Cleveland, Inc. v. UCR, Inc*., 804 F. Supp. 337 (M.D. Ga. 1992) (applying Georgia law), takes advantage of that knowledge by using it to develop or market his or her own product *Specialty Chemicals & Services, Inc. v. Chandler*, 9 U.S.P.Q.2d 1793, 1988 WL 618583 (N.D. Ga. 1988) (applying Georgia law); *Thomas v. Best Mfg. Corp., Division of Tillotson Corp*., 234 Ga. 787, 218 S.E.2d 68 (1975)) or discloses the product to unauthorized persons. *Georgia-Pacific Corp. v. Lieberam*, 959 F.2d 901 (11th Cir. 1992) (applying Georgia law).

This is true even if the final product has been modified as long as the product is substantially derived from the original. *EarthCam, Inc. v. OxBlue Corp*., 49 F. Supp. 3d 1210 (N.D. Ga. 2014), aff'd, 703 Fed. Appx. 803 (11th Cir. 2017) (applying Georgia law) (further providing that if the contribution made by the trade secret is so slight that the actor's product or process can be said to derive from other sources of information or from independent creation, the trade secret has not been "used" for purposes of imposing liability); *Specialty Chemicals & Services, Inc. v. Chandler*, 9 U.S.P.Q.2d 1793, 1988 WL 618583 (N.D. Ga. 1988) (applying Georgia law). However, a licensee may use trade secrets as long as the use is within the scope of the license agreement. *Philip Morris, Inc. v. Brown & Williamson Tobacco Corp*., 641 F. Supp. 1438 (M.D. Ga. 1986), order clarified, 645 F. Supp. 174 (M.D. Ga. 1986) (applying Georgia law).

Here, the record overflows with genuine issues of material facts and other evidence that, via the BBPOS-ROAM Licensing Agreement, unauthorized and/or limited purpose disclosures of BBPOS's trade secrets and other confidential information were made to Ingenico (and others) that

were then used for unauthorized and unlawful purposes. *See generally* Doc. No. 188 (Pl. Facts) and Doc. No. 198 (Pl. Disputed). Where disclosures, if any, were made intentionally to Ingenico, Plaintiffs did not understand them to be disclosures to a third party, but rather an extension of ROAM. Doc. No. 198 (Pl. Disputed) at 22-26, ¶¶38(a) – (c), ¶39(a), ¶40(a), ¶401(a), ¶42(a); Ex. 1 (Lo Dec.) at ¶¶17-18, Doc. 198-1 at 3. Defendants fail to cite to, and Plaintiffs are not aware of, any legal precedence for their proposition that, if a trade secret is acquired as a result of a knowing or voluntary disclosure, no "improper means" can be found.

Regardless, a genuine issue of material fact exists to preclude summary judgment as to (1) whether BBPOS was, in fact, aware of the corporate affiliations of each of the recipients of its trade secret disclosures and/or what role such recipient may have been functioning at that time (i.e., ROAM, Ingenico, or both) and (2) whether, irrespective thereof, the disclosures were made at the direction of ROAM and / or otherwise covered by the confidentiality obligations set forth in the agreement, including under §6.3. *Id.* For example, Lo testified, repeatedly, as to his understanding that, for most, if not all of BBPOS's disclosures that involved some level of participation from Christopher Rotsaert, he believed him to be a representative of ROAM, at the time. *Id.*

Here, BBPOS made certain disclosures of its Confidential Information under the BBPOS-ROAM Licensing Agreement at the request of ROAM, for its benefit, or otherwise in furtherance of its purposes and intents of the agreement, which included to affiliated Ingenico parties, from time to time, but were made with the understanding or belief that such disclosures would be subject to the confidentiality obligations pursuant to §§6.1 and / or §6.3. *Id.* at 23, ¶38(a) (citing Ex. 2 (Lo II Tr.) at 142:5-25 – 144:1 (explaining that, if requested by ROAM, "6.3 of the agreement, that for information that we send to ROAM, that ROAM will take care, will treat this document as confidential document.")).

25

Section 6.2 broadly defines the scope of what materials and disclosures may be considered "Confidential Information" under the agreement. Notably, however, the definition does not limit its protections to documentary disclosures that have been specifically marked as "confidential." In particular, §6.2 provides:

> "Confidential Information" shall mean information (whether written or oral) of a confidential or propriety nature concerning this Agreement or the assets, products or business of any party hereto that either party shall have obtained as a result of discussions or communications related to this Agreement or the transactions contemplated undertaken by this Agreement, including (but not limited to) in the case of the Company, the technical and other information concerning the Products and Devices and related documentation. **Without limiting the generality of the foregoing,** if either party hereto receives from the other party written information that is marked "Confidential" and/or "Proprietary", such information shall be deemed "Confidential Information." The obligation to keep Confidential Information confidential shall not apply to information that has been disclosed in publicly available sources; if, through no fault of the party receiving the confidential information, hereafter disclosed in a publicly available source; or is in the rightful possession of the party receiving the confidential information without an obligation of confidentiality.

Doc. No. 188-3 at 6, Ex. C (BBPOS-ROAM Licensing Agreement) (emphasis added). Defendants seemingly fail to appreciate the plain meaning of the phrase "Without limiting the generality of the foregoing," preceding the option provided thereunder for marking material "confidential," and which is obviously meant to clarify that this option should not be construed to limit or restrict the general statement.

Under Georgia law, a "trade secret" is:

[I]nformation including, but not limited to, technical or nontechnical data, a formula, a pattern, a compilation, a program, a device, a method, a technique, [or] a process ... which:

(A) Derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means, by other persons who can readily obtain economic value from its disclosure or use; and
(B) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

26

O.C.G.A. § 10–1–761(4). Georgia's trade secret theft statute provides trade secret protection to a unique combination, compilation, or integration of publicly available information if it either: (1) adds value to the information; (2) provides a competitive advantage to the party combining, compiling, or integrating the information. *Essex Grp., Inc. v. Southwire Co*., 501 S.E.2d 501, 503 (Ga. 1998).

Defendants argue that BBPOS's failure to mark its trade secret disclosures as "confidential" equates to a failure to take reasonable measures to maintain the secrecy of its trade secrets at issue in the case, thus dooming BBPOS's trade secret theft claims, as a matter of law. At one point, they note: "BBPOS did not even do the bare minimum of apprising the recipient of the information's highly confidential nature, which might have bound Ingenico to maintain the confidentiality pursuant to the terms of the ROAM-BBPOS Agreement[,]" but then go on to ultimately conclude that "even if BBPOS had designated the material . . . the complete lack of a nondisclosure agreement with Ingenico is fatal to BBPOS's position." Doc. No. 192 at 19.

This, however, is yet another mischaracterization of controlling law by Defendants. For example, the GTSA affirmatively *obviates* the necessity for a plaintiff to produce a contract (for example, a nondisclosure agreement) to recover damages for misappropriation of a trade secret or obtain injunctive relief. O.C.G.A. §§ 10-1-762(d) ("In no event shall a contract be required in order to maintain an action or to obtain injunctive relief for misappropriation of a trade secret."); 10-1-763(c) ("In no event shall a contract be required in order to maintain an action or to recover damages for misappropriation of a trade secret.").

Whether a business has taken reasonable steps to maintain the secrecy of an alleged trade secret is a question of fact under Georgia law. *Camp Creek Hosp. Inns, Inc. v. Sheraton Franchise*

*Corp.*, 139 F.3d 1396, 1410-11 (11th Cir. 1998). Examples of reasonable steps to protect information as trade secrets include:

- Controlling physical access to information.
- Not publishing the information outside of the business or confidential relationship.
- Creating and enforcing company-wide policies to prevent disclosure to third parties.
- Limiting access to customer information to certain employees.
- Password protecting customer information.
- Preventing employees from printing out information.

*Paramount Tax & Accounting, LLC v. H & R Block E. Enterprises, Inc*., 299 Ga.App. 596, 603, 683 S.E.2d 141, 148 (2009).

Here, there is ample evidence in the record, drawing all inferences in favor of BBPOS, as the nonmoving party here, to establish a genuine issue of material fact as to the reasonableness of BBPOS's measures in protecting the secrecy of its trade secrets, to preclude the entry of summary judgment on these statutory claims. For example, BBPOS restricts employee access to its confidential information and trade secrets, prohibits external disclosures without proper authorizations, requires employees to sign non-disclosure agreement, among others. *See, e.g.,* Doc. No. 198 (Pl. Disputed) at 26-18, ¶¶45(a) – (e), ¶46(a), ¶47(a); Ex. 1 (Lo Dec.), Doc. No. 198-1 at 3, ¶¶17-26.

Thus, due, again, to fatal legal infirmities and the existence of genuine issues of material fact, the Court should reject Defendants' arguments and deny summary judgment.

4.   Defendants' Preemption Arguments Fail.

Defendants argue that, because BBPOS's trade secret theft claims purportedly fail, its remaining claims based on allegations of trade secret misappropriation likewise must fail due to preemption under the Georgia and Massachusetts trade secret theft statutes. Doc. No. 192 at 20. The Court should reject this argument for two reasons.

First, preemption of claims of misappropriation of a trade secret under Massachusetts common law is permissible only to the extent that claims are alleged to have occurred on or after October 1, 2018, which is not the case here. M.G.L. c. 93, § 42F. Because the claims in this case are not governed by the most recently enacted Massachusetts statute, this argument fails.

Second, while the GTSA's preemption principles do, on the other hand, potentially have application here in superseding Georgia common law on the topic of trade secrets, O.C.G.A. §10-1-767(a), this statute does not supersede: (1) contractual duties, whether or not based on trade secret misappropriation; (2) contractual remedies, whether or not based on trade secret misappropriation; or (3) other civil remedies not based on trade secret misappropriation, O.C.G.A. § 10-1-767(b)(1), (2).

Moreover, a federal court interpreting Georgia law held that a claim of fraud may continue to be viable even if the allegedly misappropriated information was a trade secret. *RMS Titanic, Inc. v. Zaller*, 978 F. Supp. 2d 1275, 1296 (N.D. Ga. 2013). In *Prof'l Energy*, the court found that the GTSA does not conflict with claims remedying injuries a plaintiff sustained due to conduct separate from any misappropriation claim, and, as such, the GTSA does not supersede these claims. *Prof'l Energy Mgmt., Inc. v. Necaise*, 684 S.E.2d 374, 377-78 (Ga. Ct. App. 2009). Specifically, it found that the GTSA did not supersede common law conversion, unjust enrichment, breach of fiduciary duty; tortious interference with contract; or tortious interference with business relations. *Prof'l Energy Mgmt., Inc*., 684 S.E.2d at 378-80. However, whether the GTSA supersedes a claim depends on the facts of each case. *Diamond Power Int'l, Inc. v. Davidson,* 540 F. Supp. 2d 1322, 1339 (N.D. Ga. 2007).

Here, BBPOS's remaining claims (other than those for trade secret theft) are as follows: COUNT V – Breach of Contract; COUNT VII – Unjust Enrichment; and COUNT VIII – Violation

of the Georgia Deceptive Trade Practices Act (O.C.G.A. § 10-1-372(a)). The contractual and quasi-contractual claims fall outside the purview of the preemption under the GTSA; so does the unfair competition claim to the extent that those allegations include matters beyond the scope of trade secret theft and further involve the rights of an additional party (i.e., AC) whose claims are not premised on trade secret theft misappropriation.

Accordingly, the Court should deny Defendants' request for dismissal of any claims on the basis of preemption.

5.    Defendants' Arguments for Narrowing the Scope of Trade Secrets at Issue Fail.

There is no rule, legal principle, or case law cited by Defendants in support of their request for the Court to eliminate one of BBPOS's five stolen trade secrets from the case, i.e., the trade secret that was entitled "Power Management" design by BBPOS's liability expert, Ivan Zatkovich ("Zatkovich"), in his initial expert report. Their request is akin to a proposed taking of BBPOS's intellectual property rights without due process or any articulated standard of review to govern the request. The purported justification for this request – Defendants were "surprised" by Mr. Zatkovich's use of the "Power Management" phraseology in his report. Doc. No. 192 at 21. They, apparently, had not seen the phrase "Power Management" used previously in the case.[8]

Notably, Defendants do not allege that BBPOS's expert report disclosures were untimely or that this trade secret was the product of a supplemented or eleventh hour disclosure. Zatkovich's initial and rebuttal reports were timely issued by Plaintiffs, in adherence with the applicable case management deadlines set in the case, express opinions formed based on the record evidence in

---

[8] Defendants do not address whether any of the phraseology Zatkovich similarly assigned to the other four trade secrets in authoring his initial liability expert report.

the case and materials available to him, and then subject to up to seven hours of cross-examination via expert depositions.

In his report, Zatkovich identified at least five of BBPOS's trade secrets that were accessed by Defendants and used to develop and sell competitive mPOS products, globally, including Ingenico's RP350x, RP750x, RP100 series and RP450 series of devices, as set forth below in the following table:

| BBPOS TRADE SECRET | DESCRIPTION |
|---|---|
| 1. Audio Jack Polarity Detection | Determines if the base of the mobile phone's audio jack has a positive or negative polarity and to route the microphone/input signal appropriately. This enables a single solution to support multiple mobile phone signal formats. |
| 2. Power Management | Refers to methods for efficient power use for battery powered mPOS devices as well as performing sleep and auto wakeup (Power on) functions in order to conserve power. |
| 3. Signal Control Settings and Auto Gain Control | Determines the appropriate gain (e.g. signal thresholds) to use in decoding data, and at what speed to reliably transmit and receive the information based parameters defined for the specific mobile phone being used. |
| 4. Communication Formats | Refers to over 25 different formats for sending credit card and transaction related information between the mPOS device and the mobile phone to ensure compatibility with different mobile payment vendor applications. |
| 5. Data Security / Encryption Methods | Refers to methods for encrypting credit card data based on variations of data encryption methods. |

Exhibit 9 (Zatkovich Report), Doc. No. 193-9 at 4-5 to Doc. No. 193 (Def. Facts).

Accordingly, this request seeks to procedurally narrow BBPOS's trade secret theft claims by 20% without having to address the merits thereof. Defendants claim that it is a new allegation in the case that was introduced via BBPOS's expert. That is not true. While the "Power

Management" design *phraseology* may be new, the substance of the underlying trade secret allegation, including its implementation in Defendants' accused products, certainly is not. Moreover, Lo testified specifically to the underlying and related principles regarding power management during his deposition. Ex. 2 (Lo II Tr.), Doc. No. 198-2, 89:20-25 – 90:1-92:1-16; 94:1-95:1-7; 134:16-25 – 135:1-8.

Defendants do not claim to have suffered any harm arising from BBPOS's expert's characterization of this trade secret, nor have they sustained any. In short, Defendants' argument lacks any legal or substantive basis to warrant the entry of such drastic relief and/or impose a "surprise" sanction against Plaintiffs, as presently requested. It should be summarily rejected.[9]

## VI.    **CONCLUSION**

For the foregoing reasons, Plaintiffs / Counterclaim Defendants BBPOS Limited and AnywhereCommerce, Inc. respectfully respect that the Court enter an Order, denying this Motion and for such further relief as may be just or appropriate.

Dated: July 13, 2022.

> Respectfully submitted,
>
> Plaintiffs / Counterclaim-Defendants,
>
> By their attorneys,
>
> */s/ Melissa A. Bozeman*
> MELISSA A. BOZEMAN
> OLIVER D. GRIFFIN
> PETER N. KESSLER
> Kutak Rock LLP
> 1760 Market Street, Suite 1100
> Philadelphia, PA 19103
> Tel: (215) 288-4384
> Fax: (215) 981-0719

---

[9] Plaintiffs reserve the right to supplement their opposition to this request, as necessary, and further request a reasonable opportunity to consider and respond to any applicable legal bases as may be later articulated or identified in connection with this request.

Melissa.bozeman@kutakrock.com
Oliver.griffin@kutakrock.com
Peter.kessler@kutakrock.com

JONATHON D. FRIEDMANN
ROBERT P. RUDOLPH
Rudolph Friedmann LLP
92 State Street
Boston, MA 02109
Tel: (617) 723-7700
Fax: (617) 227-0313
jfriedmann@rflawyers.com
rrudolph@rflawyers.com

RICARDO G. CEDILLO
Davis, Cedillo & Mendoza, Inc.
755 E. Mulberry Ave., Ste 500
San Antonio, Texas 78212
Tel: (210) 822-6666
Fax: (210) 822-1151
rcedillo@lawdcm.com

*Attorneys for Plaintiffs / Counterclaim-Defendants*