UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANYWHERECOMMERCE, INC. and BBPOS LIMITED,<br><br>    Plaintiffs,<br><br>v.<br><br>INGENICO INC., INGENICO CORP., and INGENICO GROUP SA,<br><br>    Defendants. | Civil Docket No: 1:19-cv-11457-IT<br><br>Jury Trial Demanded |

**PLAINTIFFS ANYWHERECOMMERCE, INC.'S AND BBPOS LIMITED'S REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT (DOC. NO. 189) ON INGENICO INC.'S SECOND AMENDED COUNTERCLAIMS**

Jonathon D. Friedmann, Esq. (BBO # 180130)
Robert P. Rudolph, Esq. (BBO # 684583)
RUDOLPH FRIEDMANN LLP
92 State Street
Boston, MA 02109
Tel.: (617) 723-7700
Fax: (617) 227-0313
JFriedmann@rflawyers.com
RRudolph@rflawyers.com

And

KUTAK ROCK LLP
Oliver D. Griffin (Pro Hac Vice)
Pennsylvania Bar No. 88026
Oliver.griffin@kutakrock.com
Peter N. Kessler (Pro Hac Vice)
Pennsylvania Bar No. 209033
Peter.kessler@kutakrock.com
Melissa A. Bozeman (Pro Hac Vice)
Pennsylvania Bar No. 201116
Melissa.bozeman@kutakrock.com
Two Logan Square
100 No. 18th Street, Suite 1920
Philadelphia, PA  19103-4104

(215) 299-4384 (Telephone)
(215) 981-0719 (Facsimile)

Ricardo G. Cedillo, Esq. (pro hac vice)
755 E. Mulberry Ave., Ste 500
San Antonio, Texas 78212
rcedillo@lawdcm.com

Attorneys for Plaintiffs / Counterclaim-Defendants

Table of Contents

Page

I. THE EXCLUSIVITY PROVISION IS NOT AMBIGUOUS ........................................... 1

II. THE UNDISPUTED EXTRINSIC EVIDENCE WARRANTS THE ENTRY OF SUMMARY JUDGMENT IN PLAINTIFFS' FAVOR ....................................................... 4

III. DEFENDANTS' PROPOSED INTERPRETATION OF THE SCOPE OF EXCLUSIVITY IS AN ILLEGAL RESTRAINT ON TRADE ......................................... 8

IV. UNJUST ENRICHMENT IS NOT A PROPER MEASURE OF INGENICO INC.'S CONTRACT DAMAGES ................................................................................. 10

V. ROAM WAS AWARE OF BBPOS'S MANUFACTURING AND SALE OF OTHER MPOS DEVICES NO LATER THAN SEPTEMBER 2011 .............................. 11

VI. THE IOENGINE PROCEEDINGS WERE AFFIRMATIVE CLAIMS THAT BBPOS HAS NO DUTY TO PROSECUTE .................................................................. 12

VII. CONCLUSION ............................................................................................................ 13

# CITATION OF SUPPORTING AUTHORITIES

## FEDERAL CASES

*Adria Int'l Group, Inc. v. Ferre Dev., Inc.*,
   241 F.3d 103 (1st Cir. 2001) ................................................................................................. 5
*Boston Five Cents Sav. Bank v. Sec'y of Dept. of Hous. and Urban Dev.*,
   768 F.2d 5 (1st Cir. 1985) ..................................................................................................... 5
*Clinical Technology, Inc. v. Covidien Sales, LLC*,
   192 F. Supp. 3d 223 (D. Mass. 2016) ................................................................................... 2
*Gomez v. Rivera Rodriguez*,
   344 F.3d 103 (1st Cir. 2003) ................................................................................................. 3
*Guilfoile v. Shields Pharmacy, LLC*,
   No. 16-CV-10652, 2021 WL 4459515 (D. Mass. Sept. 29, 2021) ...................................... 10
*Mesnick v. General Elec. Co.*,
   950 F.2d 816 (1st Cir. 1991), *cert. denied*, 504 U.S. 985, 112 S. Ct. 2965, 119
   L. Ed. 2d 586 (1992) ............................................................................................................ 4
*Nadherny v. Roseland Prop. Co.*,
   390 F.3d 44 (1st Cir. 2004) ................................................................................................... 3
*Nat'l Tax Inst., Inc. v. Topnotch at Stowe Resort and Spa*,
   388 F.3d 15 (1st Cir. 2004) ................................................................................................... 3
*Peerless Industries Inc. v. Crimson AV, LLC*,
   2012 WL 3686774 at *2-3 (N.D. Ill. Aug. 24, 2012) ........................................................ 6-7
*Suzuki of W. Mass, Inc. v. Outdoor Sports Expo, Inc.*,
   126 F. Supp. 2d 40 (D. Mass. 2001) ..................................................................................... 8
*United States v. Data Translation, Inc.*,
   984 F.2d 1256 (1st Cir. 1992) ............................................................................................... 3
*Video Cent., Inc. v. Data Translation, Inc.*,
   925 F. Supp. 867 (D. Mass. 1996) ........................................................................................ 2

## STATE CASES

*Associated Perfumers v. Andelman*,
   316 Mass. 176, 55 N.E.2d 209 (1944) .................................................................................. 9
*Commonwealth v. CRINC*,
   392 Mass. 79, 466 N.E.2d 792 (1984) .................................................................................. 8
*Ficara v. Belleau*,
   331 Mass. 80 (1954) ........................................................................................................... 11
*Kennedy Bros., Inc. v. Bird*,
   287 Mass. 477, 192 N.E. 73 (1934) ................................................................................... 5-6
*Marine Contractors Co., Inc. v. Hurley*,
   365 Mass. 280 (1974) ......................................................................................................... 10
*Mass. Mun. Wholesale Elec. Co. v. Town of Danvers*,
   411 Mass. 39, 577 N.E.2d 283 (1991) .................................................................................. 5
*McGirr v. Dugas*,
   62 Mass. App. Ct. 1102, No. 03-P-987 (Mass. App. Ct. Sept. 21, 2004) ....................... 6, 10

...

*Novelty Bias Binding Co. v. Shevrin*,
   342 Mass. 714, 175 N.E.2d 374 (1961) .................................................................................9
*Quincy Oil Co. v. Sylvester*,
   238 Mass. 95, 130 N.E. 217 (1921) .......................................................................................9
*Rizzo v. Cunningham*,
   303 Mass. 16, 20 N.E.2d 471 (1939) .....................................................................................5
*Shea v. Bay State Gas Co.*,
   383 Mass. 218, 418 N.E.2d 597 (1981) .................................................................................3
*Situation Mgmt. Sys., Inc. v. Malouf, Inc.*,
   430 Mass. 875 (2000) ..........................................................................................................11
*Veridiem, Inc. v. Phelan*,
   17 Mass. L. Rptr. 8, *2 (Sup. Ct. Mass. Sept. 26, 2003) .....................................................10
*Woolley's Laundry v. Silva*,
   304 Mass 383 (1939) ............................................................................................................8

## FEDERAL STATUTES

Sherman Antitrust Act, 15 U.S.C. § 1 ............................................................................................8

## STATE STATUTES

M.G.L.A. c. 93, § 4 ........................................................................................................................8

## OTHER AUTHORITIES

Local Rule 4.5(c) ..........................................................................................................................14
Local Rule 5.2(b) .........................................................................................................................14
Local Rule 56.1 ..............................................................................................................................1
Restatement (First) of Contracts § 515 (1932) ..............................................................................9
Restatement (First) of Contracts § 516 (1932), Comment g .........................................................9
Restatement (First) of Contracts § 516(e) (1932) .........................................................................9

Pursuant to Local Rule 56.1, Plaintiffs AC[1] and BBPOS submit this Reply in further support of their Motion for Summary Judgment on Counts I through VII of Ingenico Inc.'s Second Amended Counterclaims (the "Motion"), Doc. No. 189. Defendants assert many legal arguments in their Opposition to Plaintiffs' Motion for Summary Judgment ("Opposition"), Doc. No. 199, but critically fail to demonstrate the existence of any genuine issues of material fact to preclude an entry of summary judgment in favor of Plaintiffs. These arguments are unavailing, contradictory, and insufficiently supported to survive this Motion. The Court should reject them, and grant summary judgment in favor of Plaintiffs.

## I.    THE EXCLUSIVITY PROVISION IS NOT AMBIGUOUS

A chief controversy in the case centers on the meaning of the phrase "any Products, or any portion thereof, or any products similar to or based upon any Products" in §1.3 of the BBPOS-ROAM Licensing Agreement, which grants ROAM exclusive rights to use and sell the covered products on a worldwide basis (with the exception of China and the Philippines). Doc. No. 188-3 at 1. It is the basis for both Defendants' primary affirmative defense to BBPOS's trade secret theft claims and nearly all of Ingenico Inc.'s counterclaims.

Plaintiffs contend that this language grants exclusivity rights to ROAM for the use and sale of BBPOS's CircleSwipe product line (i.e., G3X, G4X, G5X, and various customized versions of the product specified by ROAM's customers) everywhere in the world except China and the Philippines. Doc. No. 188 at 6. Defendants contend:

> The exclusivity that BBPOS extended to ROAM pertained to "Products," which included the (never finished) EMV swiper, as well as products "similar to or based upon" CircleSwipe. *See* [Doc. No. 188-3] § 1.3. In contrast, **the "BBPOS and**

---

[1] All undefined, capitalized terms appearing herein shall have the meanings ascribed them in Plaintiffs' Memorandum of Reasons, Doc. No. 190, unless otherwise indicated.

1

> **ROAMpay POS solution described on Schedule I" of the BBPOS-ROAM Licensing Agreement was non-exclusive**. *See id*. § 1.4.[2]

Doc. No. 200 at 6-7, ¶15 (emphasis added). Defendants have construed the scope of exclusivity as encompassing *every* sale made by BBPOS for *every* mPOS device across its entire product lines to *every* customer of BBPOS (other than itself) from the time the agreement was first executed in 2010 to the present (with the exception of BBPOS's CircleSwipe sales in China and the Philippines). *See, e.g.,* Doc. No. 188-29 at 40, ¶86 and 74, Exhibit D-1, "Accused BBPOS Products."

Defendants argue that this language is ambiguous and, therefore, is a fact issue for the jury to resolve. However, "[a] contract is not ambiguous just because the parties disagree about its meaning." *Clinical Technology, Inc. v. Covidien Sales, LLC*, 192 F. Supp. 3d 223, 232 (D. Mass. 2016) (applying Mass. law). Nor does it mean that the provision is incapable of judicial determination. "Where the language of the contract is susceptible to more than one interpretation, the court should construe the contract in the light of the situation and relation of the parties at the time it was made, and, if possible, accord it a reasonable and sensible meaning, consonant with its dominant purpose." *Video Cent., Inc. v. Data Translation, Inc*., 925 F.Supp. 867, 871–72 (D. Mass. 1996) (citation omitted). Stated more simply, a Court confronted with competing interpretations of a contract should consider whose interpretation makes more sense – or, what interpretation

---

[2] The Opposition is the first time (in this litigation) that Defendants concede that exclusivity *does not* extend to the second undeveloped EMV device contemplated under the agreement. *Cf.* Doc. No. 193 at 3, ¶16 (stating, in support of their pending Motion for Summary Judgment, that "[t]he exclusive license extends to those specified devices, to products 'similar to or based upon' such devices, and in the case of the swipe reader and the mobile payment unit with a Bluetooth interface, to any portion of the device[,]" adding in n. 1, "[c]ollectively, the devices (and portions of devices) covered by the exclusive license are referred to as 'Covered Mobile Payment Devices.'"). This concession calls into even further doubt Ingenico Inc.'s claimed exclusivity damages of approximately $56 million, which were calculated by Defendants' damages expert consistent with this broader definition of the scope of exclusivity.

would accomplish a rational end for the parties as then situated and in light of usage of trade. *See Gomez v. Rivera Rodriguez*, 344 F.3d 103, 121 (1st Cir.2003); *Shea v. Bay State Gas Co.*, 383 Mass. 218, 418 N.E.2d 597, 601–02 (1981); *Nat'l Tax Inst., Inc. v. Topnotch at Stowe Resort and Spa*, 388 F.3d 15, 18 (1st Cir.2004) ("Agreements, **especially commercial arrangements, are designed to make sense**. If one reading produces a plausible result . . . that reading has a strong presumption in its favor as against another reading producing an unlikely result.") (emphasis added).

Here, Defendants' interpretation is implausible. They effectively propose that BBPOS agreed to perpetually disengage from the global mPOS hardware supplier market in exchange for some development/servicing costs and a modest $3-2 margin earned on each CircleSwipe device it now was agreeing to sell to just a single customer without (perpetual) guaranteed purchase minimums or any other discernible protections for such a proposition. No reasonable business (BBPOS), especially one poised on the forefront of a burgeoning new technology, would agree to this. No reasonable business (ROAM/Ingenico) would want to acquire a business, as Defendants attempted in 2012, that was stuck in this kind of contract. It doesn't make any sense.

If no reasonable person could interpret the contract to mean what Defendants say it means, the issue is properly subject to judicial determination. *Nadherny v. Roseland Prop. Co.*, 390 F.3d 44, 49 (1st Cir. 2004); *United States v. Data Translation, Inc.*, 984 F.2d 1256, 1259–63 (1st Cir.1992). It is also, of course, subject to judicial determination on other legal grounds, as outlined in Plaintiffs' Motion and further below, such as for being too insufficiently definite to enforce. This is an argument that Defendants do not address, but further illustrates the absurdity of Defendants' position. Taken to its logical end, under Defendants' interpretation, the "any portion thereof" language in §1.3 could arguably extend to any product using an audio jack, such as

3

headphones or microphone. Or an "off-the-shelf" chip set. Or a plastic casing. This is obviously not a result that either party could have reasonably intended or foreseen at the time of contracting, and should be rejected.

## II.  THE UNDISPUTED EXTRINSIC EVIDENCE WARRANTS THE ENTRY OF SUMMARY JUDGMENT IN PLAINTIFFS' FAVOR

Defendants present no definite, competent evidence to rebut the Motion – as a nonmoving party *must do* to carry its burden of production to withstand an adverse grant of summary judgment. *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991), cert. denied, 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992). Instead, Defendants assert conclusory (and flawed) legal objections in an attempt to further delay adjudication of the merits of a dispute that does not square with their legal theories.[3] Absent any significant probative evidence tending to support their claims, as their Opposition now establishes, Defendants are not entitled to submit them to the jury.

Defendants open and close their brief arguing that the exclusivity provision of the contract is ambiguous (*see* Doc. No. 199 at 7-8, 27-28), but then decline *sixteen (16) times* to present any

---

[3] Specifically, Defendants disputed forty-six (46) of Plaintiffs' total ninety-four (94) material facts – but presented evidentiary material (*albeit, nonprobative*) in support of just one. *See* Defendants' Statement of Disputed Material Facts, Doc. No. 200 at 42-43, ¶93; Defendants' Statement of Additional Undisputed Material Facts, Doc. No. 201 at 1-2, ¶¶1-4. The remainder of Defendants' disputes are <u>all legal</u> and <u>no substance</u>: (i) citations to the BBPOS-ROAM Licensing Agreement itself (*see* Doc. No. 200 at 6-9, 13-24, 29, ¶¶15, 17, 32, 61); (ii) as "inadmissible" parol evidence (*id.* at 7-9, 16-25, 30-31, 36-37, 43, ¶¶17, 39-50, 65, 77, 94); (iii) because "added emphasis" in certain quoted material "constitutes an inappropriate alteration of purported evidentiary support" (*id.* at 16-19, 21, 28-33, 35-36, ¶¶39-41, 45, 59, 61, 63-64, 67-69, 75); (iv) as argumentative (*id.* at 19-24, 29, 36, 39, ¶¶43-44, 46-49, 61, 76, 84); (v) where "Graylin's subjective analysis" is deemed immaterial (*id.* at 35-37, ¶¶75-77); (vi) as violative of the best evidence rule (*id.* at 38-39, 41, 43, ¶¶82, 89, 94); (vii) as "inadmissible" hearsay (*id.* at 38-39, 41, ¶¶82, 89); (viii) for "failing" to identify a referenced document that was, in fact, attached to the Motion at Doc. No. 188-28 at 3-7 (*id.* at 38, ¶81); (ix) for inadvertently omitting a referenced email communication subject of counsel's declaration at Ex. BB (Declaration of Melissa Bozeman), Doc. No. 188-28 at 2, ¶¶4-5, which is now attached to Plaintiffs' Reply Material Facts as Exhibit A (*id.* at 38-39, 41, ¶¶82, 89); and/or (x) because Defendants' damages expert (Dr. Vanderhart) is "not an expert on the meaning of the BBPOS-ROAM [Licensing] Agreement" (*id.* at 36-37, ¶77).

rebuttal evidence regarding the extrinsic evidence regarding the negotiations, confirmatory admissions made in the early years following its execution, among other matters, presented in Plaintiffs' Concise Statement of Material Facts as "inadmissible" parol evidence. While Massachusetts's parol evidence rule prevents the introduction of extrinsic evidence to enlarge, abridge, or vary the terms of integrated contracts reduced to writing, it is appropriate for a Court to consider the weight of undisputed extrinsic evidence as relevant to a provision that has been challenged as "ambiguous." *See Kennedy Bros., Inc. v. Bird*, 287 Mass. 477, 192 N.E. 73, 76 (1934) ("Previous negotiations may clarify the sense in which expressions were understood by the parties."); *Mass. Mun. Wholesale Elec. Co. v. Town of Danvers*, 411 Mass. 39, 577 N.E.2d 283, 288 (1991) ("When construing a contract, a court looks to the parties' intent to determine whether they have created a condition precedent."); *Rizzo v. Cunningham*, 303 Mass. 16, 21, 20 N.E.2d 471, 474 (1939) ("Where the language is ambiguous, preliminary negotiations, the conduct of the parties, and interviews between them after the contract is executed are relevant matters and are admissible in evidence, not to vary or enlarge the agreement, but to define the meaning of the terms the parties employ.").

Thus, should the Court be inclined to consider the extrinsic evidence presented in Plaintiffs' Motion – and which Defendants inexplicably declined to substantively address – this Court can *and should* conclude that the uncontested evidence is "so one-sided that no reasonable person could decide the contrary[,]" *Boston Five Cents Sav. Bank v. Sec'y of Dept. of Hous. and Urban Dev.*, 768 F.2d 5, 8 (1st Cir.1985), and appropriately enter summary judgment. *See Adria Int'l Group, Inc. v. Ferre Dev., Inc*., 241 F.3d 103, 111 (1st Cir.2001). Not only does Defendants' proposed interpretation contradict the plain language, manifest intent, and objective performances of BBPOS and Ingenico Inc. (or its predecessor-in-interest, ROAM) under the 2010 agreement

from its inception until the filing of this lawsuit in late 2018, it contradicts the undisputed documentary and testimonial evidence properly presented in the Motion and advocates a nonsensical business arrangement. *Kennedy Bros*., 287 Mass. at 482-83, 192 N.E. at 75-76 ("A contract is to be construed as a business transaction entered into by practical men to accomplish an honest purpose in accord with common sense.") (citations omitted).

In effect, the exclusivity promised under §1.3 of the BBPOS-ROAM Licensing Agreement is nothing more than a promise not to compete. The agreement is clear that – with limited exceptions as to China and the Philippines – BBPOS may not use or sell "the Products."  It is less clear once one gets to "or any portion thereof or any products similar to or based upon any Products" since those terms are not defined. As noted above, under Massachusetts law, the court's first step in this circumstance should be to determine if the language is ambiguous on its face.  If so, it should consider whether extrinsic evidence would clarify the language or whether it should be stricken as indefinite. *McGirr v. Dugas*, 62 Mass. App. Ct. 1102, No. 03-P-987 at *1 (Mass. App. Ct. Sept. 21, 2004).

A district court in Illinois considered a circumstance similar to this dispute:  a supply agreement that apparently contained a noncompetition provision with regard to "similar products."  There, the agreement used "subjective terms such as 'substantially the same appearance' and 'reflects' and is limited solely by reference to [the buyer's] 'reasonable judgment'." *See, e.g., Peerless Industries Inc. v. Crimson AV, LLC*, 2012 WL 3686774 at **2-3 (N.D. Ill. Aug. 24, 2012).  On those facts, the court held that the term "similar products" was not reasonably defined and struck the noncompetition provision altogether from the agreement. *Id.* (declining to "blue pencil" the provision and explaining that "[d]ue to the technical nature of the noncompetition provision at issue, however, it is not clear that the definition of

6

'Similar Products' can be brought into conformity with Illinois law simply by adding or deleting a few offending terms.").

Here, the "products similar to or based upon" provision of §1.3 appears even more indefinite and more ambiguous than in *Peerless*, as the BBPOS-ROAM Licensing Agreement does not even attempt to define the term. While other provisions of the agreement seem to reflect that the parties simply intended that BBPOS not be able to simply use the same specific designs and specifications that BBPOS developed under the license to manufacture essentially the same products for other customers, *see e.g.,* §§3.11 (pertaining to use of Company Property) and 3.12 (regarding Company's ownership of Deliverables and Software), there is no guidance whatsoever as to the scope of "products similar to or based upon" in §1.3.  Doc. No. 188-3 at 4. Thus, the ambiguities here require that the provision be stricken, just like in *Peerless*.  The prohibitions of §§3.11 and 3.12 ably protect ROAM's interests. Similarly, the restrictive covenant in §1.3 of the BBPOS-Roam agreement should be stricken as undefined and ambiguous, or, alternatively, narrowly construed under principles akin to employee non-compete agreements (as discussed further below).

Plaintiffs respectfully submit that the extrinsic evidence cited in Plaintiffs' Motion went undisputed by Defendants because there was none to present in opposition. Regardless, having failed to address it, Defendants also fail to carry their burden of production on summary judgment. Because Defendants failed to demonstrate the existence of a material issue of fact on the issue of exclusivity, this Court should grant Plaintiffs' Motion and enter summary judgment in Plaintiffs' favor.

### III. DEFENDANTS' PROPOSED INTERPRETATION OF THE SCOPE OF EXCLUSIVITY IS AN ILLEGAL RESTRAINT ON TRADE

Defendants argue that Plaintiffs' Motion should be denied because a commercial license, such as the BBPOS-ROAM Licensing Agreement, between corporate parties, is insusceptible to a restraint-of-trade challenge. Doc. No. 199 at 6-15. They say that Plaintiffs fail to cite any cases that apply the restrictive covenant principles presented in the Motion outside of an employment-related context; but, in a similar vein, Defendants likewise fail to cite any cases that say it would be *inappropriate* for a court to do so. Non-competes are disfavored in Massachusetts because a public policy exists in favor of every person carrying on his trade or occupation freely. *Woolley's Laundry v. Silva*, 304 Mass 383, 387 (1939); *Commonwealth v. CRINC*, 392 Mass. 79, 87-88, 466 N.E.2d 792 (1984). There is no indication that this overarching public policy has no broader implications than to protect employees *to the exclusion of other interested stakeholders* (such as businesses, the public, *etc*.).

To the contrary, this concept is embodied in M.G.L.A. c. 93, § 4, "Restraint of trade or commerce," the state analogue to Section One of the Sherman Antitrust Act, 15 U.S.C. § 1,[4] which is geared towards regulating illegal anticompetitive activities amongst *businesses*, providing: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce in the commonwealth shall be unlawful." Massachusetts law provides:

> Under modern trade conditions a contract is not void at common law because it imposes restraint upon competition, unless that restraint is unreasonable, and tends to the prejudice of the public. When on considering the contract in the light of the business and situation of the parties and the circumstances with reference to which it was made, it appears that the restraint contracted for is for an honest purpose, is only such as affords a fair protection to the legitimate interests of the party in whose favor it is imposed, and not so large as to interfere with the interests of the public, the restraint is held to be reasonable, and the contract valid.

---

[4] *Suzuki of W. Mass, Inc. v. Outdoor Sports Expo, Inc.*, 126 F.Supp.2d 40, 44 (D. Mass. 2001).

*Quincy Oil Co. v. Sylvester*, 238 Mass. 95, 97, 130 N.E. 217, 218 (1921) (citations omitted). *See also Associated Perfumers v. Andelman*, 316 Mass. 176, 55 N.E.2d 209 (1944) (citing text, and Restatement First, Contracts § 516(e)[5]; upholding a contract containing a restraint when there is an honest purpose and fair protection, without interference with the public interests). "A restraint is unreasonable, in the absence of statutory authorization or dominant social or economic justification, if it (a) is greater than is required for the protection of the person for whose benefit the restraint is imposed, or (b) imposes undue hardship upon the person restricted, or (c) tends to create, or has for its purpose to create, a monopoly, or to control prices or to limit production artificially, or (d) unreasonably restricts the alienation or use of anything that is a subject of property, or (e) is based on a promise to refrain from competition and is not ancillary either to a contract for the transfer of good-will or other subject of property or to an existing employment or contract of employment." Restatement (First) of Contracts § 515 (1932). Massachusetts courts have applied these same Restatement principles in considering whether a restrictive covenant in an employment context is illegal and unenforceable. *Novelty Bias Binding Co. v. Shevrin*, 342 Mass. 714, 716, 175 N.E.2d 374, 376 (1961). Moreover, considering that by mid-2013, the three biggest players in the mPOS hardware sales marketplace reportedly were ROAM/Ingenico (controlling 62.5%), CHARGE Anywhere (controlling 15%), and AC (controlling 5%), clearly anticompetition concerns have application here. Doc. No. 188-12 at 12.

---

[5] The comment on §516(e) provides:
> An agreement providing for exclusive dealing between the parties, while not in itself necessarily illegal, is not unlikely to involve an attempt to obtain a monopoly. In such a case the agreement is illegal. The nature of a business moreover may make an agreement for exclusive dealing opposed to public policy. This is especially likely to be the case where the business is one of public service, but is not necessarily so.

Restatement (First) of Contracts § 516 (1932), Comment g. on Clause (e).

Under Massachusetts law (like most states), restrictive covenants and non-competes should be narrowly construed; if a restrictive covenant is determined to be ambiguous, it should be held unenforceable. *See, e.g., Veridiem, Inc. v. Phelan,* 17 Mass.L.Rptr. 8, *2 (Sup. Ct. Mass. Sept. 26, 2003) (explaining that employee covenants not to compete generally are enforceable only to the extent that they are necessary to protect the legitimate business interests of the employer and describing "legitimate business interests" as potentially including "trade secrets, other confidential information, or, particularly relevant here, the good will the employer has acquired through dealings with its customers…. Protection of the employer from ordinary competition, however, is not a legitimate business interest, and a covenant not to compete designed solely for that purpose will not be enforced.") (citing *Marine Contractors Co., Inc. v. Hurley,* 365 Mass. 280, 287-88 (1974) (citing cases)); *McGirr v. Dugas*, 62 Mass. App. Ct. 1102, No. 03-P-987 at *1 (Mass. App. Ct. Sept. 21, 2004) (regarding restrictive covenants, explaining that the court must "first" determine if the language of a restrictive covenant is ambiguous on its face, which it is if the phraseology lends itself to multiple interpretations).

While Plaintiffs' research has revealed only cases specifically addressing *employee* non-competes and *property* restrictive covenants applying Massachusetts law, the legal principles and policy concerns are the same and should be considered and applied here in the absence of contraindication.

## IV. UNJUST ENRICHMENT IS NOT A PROPER MEASURE OF INGENICO INC.'S CONTRACT DAMAGES

"The usual rule for damages in a breach of contract case is that the injured party should be put in the position they would have been in had the contract been performed." *Guilfoile v. Shields Pharmacy, LLC,* No. 16-CV-10652, 2021 WL 4459515, at *5 (D. Mass. Sept. 29, 2021) (*citing*

*Situation Mgmt. Sys., Inc. v. Malouf, Inc.,* 430 Mass. 875, 880 (2000)). Plaintiff is "entitled to be made whole and no more." *Ficara v. Belleau,* 331 Mass. 80, 82 (1954).

Defendants argue that unjust enrichment is a proper measure of damages for Ingenico Inc.'s breach of contract claim (Doc. No. 199 at 15-17), as a purportedly "deliberate" breach on BBPOS's part, but fail to articulate why a recovery of its alleged "lost profits" affords inadequate protection to its alleged contractual entitlement to exclusivity in this situation. If the benefit of the bargain here, *theoretically*, was BBPOS essentially doing nothing, or making no sales outside of to ROAM/Ingenico or in China and the Philippines, such that the overall competition in the global mPOS marketplace was diminished, Ingenico Inc.'s measure of damages would be the profits that Ingenico Inc. would have made on those sales that it can demonstrate it would have made but for BBPOS's breach. It is a lot easier to calculate unjust enrichment, which requires none of this secondary legwork, but is too speculative for calculating contract damages. For example, suppose Defendants did not have the capacity, or industry connections, or desired product features, or customer/sales support to have actually made one or more of BBPOS's sales that amount to more than $56 million. Just because Defendants did not undertake the hard work necessary to prove its damages doesn't mean this measure of damages provides it inadequate protections under the contract. Defendants' argument and application of an improper damages theory should be rejected as improper and too speculative.

### V. ROAM WAS AWARE OF BBPOS'S MANUFACTURING AND SALE OF OTHER MPOS DEVICES NO LATER THAN SEPTEMBER 2011

ROAM knew of AC's sales of the Rambler, as evidenced by a September 2011 email attached to the Motion, triggers the running of the six-year statute of limitations for its alleged exclusivity breaches; Defendants' only counterargument as to why the limitations period was not triggered is that the "email does not concern BBPOS's sales of any products, let alone sales of

11

Covered Mobile Payment Devices" and is "fully consistent" with ROAM's knowledge that BBPOS sold mPOS devices to third parties prior to entering into the BBPOS-ROAM Licensing Agreement (Doc. No. 199 at 18-20).[6] This argument does not meet Defendants' burden of production on the point. It also does not make sense because, if ROAM had opportunity to physically inspect the Rambler, it would only be because it was available for sale in the marketplace. Moreover, the email post-dates the execution of the agreement. Having failed to demonstrate the existence of a genuine issue of material fact, this argument fails.

## VI. THE IOENGINE PROCEEDINGS WERE AFFIRMATIVE CLAIMS THAT BBPOS HAS NO DUTY TO PROSECUTE

Section 3.18 sets forth the indemnification obligations of BBPOS under the BBPOS-ROAM Licensing Agreement in the nature of a "duty to indemnify":

> The Partner agrees to indemnify and hold the Company harmless from any and all losses, costs, liabilities, or expenses (including court costs and reasonable fees of attorneys and other professionals) arising out of or resulting from the breach any warranty, representation or other provision of this Agreement by the Partner or arising out of or resulting from **any claim brought by a third party against the Company** as a result of or relating to any actual or alleged breach hereof.

(Emphasis added). The IOEngine proceedings are both affirmative claims, initiated and prosecuted by Ingenico, among others, against IOEngine. Under the plain language of §3.18, such losses, if any, thus do not fit within the express scope of indemnity. Defendants' argument that a "duty to prosecute" arises under the contract by virtue of BBPOS's obligations under §3.10 to "make all filings and take all actions reasonably requested by the Company in order to perfect or protect the Company's intellectual property rights in the Products, Devices, Deliverables and Services," Doc.

---

[6] Doc. No. 188-25 at 1-4 (attaching three photographs of the inside of an mPOS device (the Rambler a/k/a BBPOS's Chipper) that show, among other things, an audio jack interface, to an email sent by Graylin of ROAM to Lo of BBPOS).

No. 199 at 24; Doc. No. 188-3 at 3, is belied by the import of §4.4 of the contract. This section, which was added by way of amendment in 2011, provides:

> In the event that any person is infringing or misappropriating the Partner Intellectual Property within the Company's exclusive geographic field, the Company shall have the first right, but not the obligation, to institute, prosecute and control legal proceedings and/or administrative proceedings to preventor restrain such infringement or misappropriation, at its own expense. In the event that the Company elects to initiate legal proceedings and/or administrative proceedings in accordance with the preceding sentence, the Company shall be required to deliver notice of such election to the Partner. The Partner shall assist in the prosecution of such proceedings as reasonably requested by the Company at the Company's expense, and the Partner may participate in such proceedings with its own counsel, at its sole cost and expense.

Doc. No. 188-3 at 13. Defendants' interpretation of §3.18, as purportedly encompassing a duty to prosecute, if correct, would make the addition of ROAM's right to prosecute proceedings in defense of "Partner Intellectual Property" – "at its own expense" – both contradictory and superfluous. Thus, this argument fails under ordinary contract interpretation principles, and must be rejected.

## VII. CONCLUSION

For the foregoing reasons, Plaintiffs / Counterclaim Defendants BBPOS Limited and AnywhereCommerce, Inc. respectfully respect that the Court enter an Order, granting this Motion and entering summary judgment in favor of Plaintiffs, and for such further relief as may be just or appropriate.

Dated: July 27, 2022.

        Respectfully submitted,

        Plaintiffs / Counterclaim-Defendants,

        By their attorneys,

        */s/ Melissa A. Bozeman*
        MELISSA A. BOZEMAN
        OLIVER D. GRIFFIN

PETER N. KESSLER
Kutak Rock LLP
Two Logan Square
100 No. 18th Street, Suite 1920
Philadelphia, PA 19103
Tel: (215) 288-4384
Fax: (215) 981-0719
Melissa.bozeman@kutakrock.com
Oliver.griffin@kutakrock.com
Peter.kessler@kutakrock.com

JONATHON D. FRIEDMANN
ROBERT P. RUDOLPH
Rudolph Friedmann LLP
92 State Street
Boston, MA 02109
Tel: (617) 723-7700
Fax: (617) 227-0313
jfriedmann@rflawyers.com
rrudolph@rflawyers.com

RICARDO G. CEDILLO
Davis, Cedillo & Mendoza, Inc.
755 E. Mulberry Ave., Ste 500
San Antonio, Texas 78212
Tel: (210) 822-6666
Fax: (210) 822-1151
rcedillo@lawdcm.com

*Attorneys for Plaintiffs / Counterclaim-Defendants*

## CERTIFICATE OF SERVICE

I, Melissa A. Bozeman, hereby certify that this Reply, in accordance with L.R. 4.5(c) and 5.2(b), was filed through the ECF system on July 27, 2022, and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) via the court's transmission facilities.

*/s/ Melissa A. Bozeman*
Melissa A. Bozeman, Esq.