## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **ANYWHERECOMMERCE, INC.** **and BBPOS LIMITED,** **Plaintiffs,** **v.** **INGENICO INC., INGENICO CORP.** **and INGENICO GROUP, SA,** **Defendants.** | **CIVIL ACTION NO.** **1:19-cv-11457-IT** |

## DEFENDANTS' REPLY TO PLAINTIFFS' CONCISE
## STATEMENT OF DISPUTED MATERIAL FACTS FOR TRIAL

Pursuant to Rule 56.1 of the Local Rules for the United States District Court for the

District of Massachusetts, Defendants Ingenico Inc., Ingenico Corp., and Ingenico Group, S.A.

(collectively, "Defendants" or "Ingenico") respectfully submit this Reply to Plaintiffs' Concise

Statement of Disputed Material Facts for Trial ("Plaintiffs' SDMF," Doc. No. 198).  As

explained below, Plaintiffs' SDMF—which consists of over 130 independent responses to

Ingenico's Statement of Undisputed Material Facts ("Ingenico's SUMF," Doc. No. 193)—

violates Local Rule 56.1 by failing to present a "concise statement" of material facts for trial.

Instead, Plaintiffs' SDMF improperly exceeds the scope of facts proffered in Ingenico's SUMF

by introducing argument, unsupported inferences, inadmissible testimony, mischaracterizations

of the evidence, and extraneous and immaterial facts into the record.  For these reasons,

Plaintiffs' SDMF fails to raise any material question of fact and is not worthy of this Court's

consideration.

<u>GENERAL REPLY TO PLAINTIFFS' RESPONSES</u>

I.    **The purported Declaration of Ben Lo does not warrant consideration because it is inadmissible hearsay and presents self-serving statements that contradict Lo's prior Rule 30(b)(6) testimony.**

In attempting to manufacture a dispute of material fact, Plaintiffs through their SDMF introduce and heavily rely[1] on a purported declaration of the Ben Lo, the Rule 30(b)(6) designee of BBPOS. *See* Lo Dec. (Doc. No. 198-1). Plainitffs' reliance is misplaced, as Ben Lo's purported declaration constitutes inadmissible hearsay.

Rule 56(c) of the Federal Rules of Civil Procedure provides, in relevant part, that "[a]n affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Although 28 U.S.C. § 1746 provides an exception to the general rule that any such affidavit or declaration must be signed in the presence of a witness or notarized, that same statutory provision imposes its own requirements. More specifically:

> Wherever . . . any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration . . . in writing of the person making the same . . . , such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration . . . in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:
>
> (1) If executed without the United States: "I declare (or certify, verify, or state) under penalty of perjury ***under the laws of the United States of America*** that the foregoing is true and correct. Executed on (date). (Signature)"

---

[1]    Plaintiffs in their SDMF refer this Court to the Lo Declaration on at least 25 separate occasions. *See* Plainitffs' SDMF (Doc. No. 198) ¶¶ 13(a), 16(a), 18(a), 19(b)-(c), 19(e)‚25(c), 26(a), 29(a), 30(a), 31(a), 32(a)-(b), 38(a)-(c), 39(a), 40(a), 42(a), 45(b)-(e), 46(a), 47(a).

> (2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)"

28 U.S.C. § 1746 (emphasis added).

As indicated *supra*, "the form used for declarations . . . executed outside the United States is only distinguishable from those executed within the United States ***by requiring language specifying that the . . . declarant is subject to the penalties of perjury 'under the laws of the United States of America'.*"  *Eli Lilly & Co. v. Arch Ins. Co.*, No. 113CV01770LJMTAB, 2017 WL 2930571, at *6 (S.D. Ind. July 10, 2017) (emphasis added).  As such, any unsworn declaration executed outside of the United States that fails to include the above-mentioned, required language fails to comport with § 1746.  *See id.* (holding that because the unsworn affidavits executed outside of the United States did "not substantially state that they were made pursuant to the penalties of perjury 'under the laws of the United States of America,' the [a]ffidavits [did] not comply with the requirements of 28 U.S.C. § 1746"); *see also Int'l Ins. Co. v. Caja Nacional De Ahorro y Seguro*, 293 F.3d 392, 398 (7th Cir. 2002) ("we note that an affidavit executed outside the United States must include a statement that the affiant has made his declarations 'under penalty of perjury under the laws of the United States'").

Adopting the conspicuous legislative intent of § 1746, federal courts nationwide decline to consider unsworn declarations executed outside of the United States that fail to comport with the statutory provision.  *See, e.g.*, *Ostrow v. GlobeCast Am. Inc.*, No. 10-61348-CIV, 2011 WL 4853568, at *4 n.4 (S.D. Fla. Oct. 13, 2011) (declining to consider foreign-executed declarations in summary judgment proceedings because the declarations "omit[ted] the one necessary item for declarations sworn outside the United States that does not exist for those sworn within the United States," namely "an acknowledgment that the declarant is subject to the laws of perjury ***of the***

*United States*") (emphasis in original), *aff'd*, 489 F. App'x 433 (11th Cir. 2012); *Jack v. Trans World Airlines, Inc.*, 854 F. Supp. 654, 659 n.3 (N.D. Cal. 1994) (rejecting submission of the plaintiffs' affidavits executed outside of the United States because, *inter alia*, the affidavits were not "stated to be true and correct and made under the penalty of perjury under the laws of the United States of America.").

The omission of "under the laws of the United States of America" from unsworn declarations executed outside of the United States is material.  Indeed, when an individual "executes a document outside the United States," a recitation that the declarant made the document "under penalty of perjury without reference to which country's perjury laws will be applied provides no assurance of truthfulness because the penalty of perjury may be non-existent or trivial in the place where the person signed the document."  *Jack*, 854 F. Supp. at 659 n.3; *see also Eli Lilly & Co.*, 2017 WL 2930571, at *6 (recognizing that without the distinguishing element, "there is no way for the Court to enforce such perjury laws" against a foreign declarant).

Here, the purported declaration of Ben Lo executed outside of the United States[2] provides as follows:

> I declare under penalty of perjury that the foregoing is true and correct.  This Declaration is made pursuant to 28 U.S.C. § 1746.

---

[2]     To the extent that Plainitffs may allege that Lo signed the purported declaration from within the United States, the record is devoid of any evidence to support such an allegation.  As the United States District Court for the Middle District of Florida recently made clear, the party proffering the declaration has the burden of satisfying "all applicable requirements in order for the Court to consider the declaration."  *See Taser Int'l, Inc. v. Phazzer Elecs., Inc.*, No. 6:16-CV-366-PGB-LRH, 2021 WL 7501157, at *4 n.8 (M.D. Fla. Apr. 15, 2021) (declining to conclude that the contested declaration satisfied the requirements of § 1746 when the proffering party "nowhere identifie[d] [the declarant's] location at the time he signed the declaration.").

Lo Dec. (Doc. No. 198-1) at 5.  Although § 1746 does not require a precise recitation of the model language set forth in subsection (1) for declarations executed outside of the United States, Lo's purported declaration fails to include *any* reference to the statute's sole distinguishing element between its two discrete provisions: namely an acknowledgment that Lo is subject to the laws of perjury *of the United States*.  Absent compliance with § 1746, Lo's purported declaration constitutes inadmissible hearsay and does not warrant this Court's consideration.

Even assuming *arguendo* that Lo's purported declaration comports with § 1746—which it does not—the declaration is not competent evidence because it is self-serving and repeatedly contradicts Lo's prior statements in his capacity as BBPOS's Rule 30(b)(6) designee.  A party may not oppose summary judgment on the basis of its own self-serving declaration that contradicts other evidence of a party's own statement of the matter.  *See Torrech-Hernandez v. GE*, 519 F.3d 41, 47 (1st Cir. 2008) (internal citations omitted) (affirming the district court's decision to not consider statements and assertions presented in the plaintiff's affidavit submitted in opposition to summary judgment because the affidavit "seemingly contradict[ed]" the plaintiff's "own deposition testimony and asser[ted] what amount[ed] to nothing more than self-serving, factually-devoid allegations); *Abreu-Guzman v. Ford*, 241 F.3d 69, 74 (1st Cir. 2001) ("a party opposing summary judgment may not manufacture a dispute of fact by contradicting [their] earlier sworn testimony.").

Here, Plaintiffs *on over 20 occasions* refer this Court to the self-serving declaration of Ben Lo in attempting to contradict facts that Lo's prior Rule 30(b)(6) testimony substantiates.[3] As such, Lo's manufactured, self-serving declaration does not warrant this Court's consideration.

---

[3]     *See* Plainitffs' SDMF (Doc. No. 198) ¶¶ 18(a), 19(b)-(c), 19(e), 25(c), 26(a), 29(a), 30(a), 31(a), 32(a)-(b), 38(a)-(c), 39(a), 40(a), 42(a), 45(b)-(e), 46(a), 47(a).

**II.    Plaintiffs improperly rely on parol evidence in attempting to manufacture a dispute of material fact.**

The May 4, 2010 BBPOS-ROAM Licensing Agreement (Doc. No. 188-3) is a written

document speaks for itself.  Despite conceding this on at least two dozen occasions,[4] Plaintiffs

nonetheless attempt in their SDMF to introduce parol evidence to modify the terms of that same

agreement.[5]

It is well settled that parol evidence is inappropriate for consideration at the summary

judgment stage because it is inadmissible.  *Compare* Fed. R. Civ. P. 56(c)(2) ("A party may

object that the material cited to support . . . a fact cannot be presented in a form that would be

admissible in evidence") with *Fairfield 274-278 Clarendon Tr. v. Dwek*, 970 F.2d 990, 993 (1st

Cir. 1992) (internal citation omitted) (recognizing that the parol evidence presented was

inadmissible to modify the terms of an integrated agreement) *and* BBPOS-ROAM Licensing

Agreement (Doc. No. 188-3) § 12.1 (stating that the BBPOS-ROAM Licensing Agreement is

integrated).  Accordingly, this Court should disregard Plaintiffs' shortsighted attempts to produce

a factual dispute concerning the BBPOS-ROAM Licensing Agreement that are grounded on

inadmissible parol evidence.

**III.   Plaintiffs' attempt to use their statement of disputed material facts as a platform to proffer new and nonresponsive materials, reiterate immaterial and already-submitted materials, and re-brief irrelevant arguments constitutes a violation of Local Rule 56.1.**

Plaintiffs' SDMF—which exceeds 130 paragraphs—constitutes a violation of Local Rule

56.1 because it attempts to present myriad immaterial purported facts and arguments that are

---

[4]    *See* Plainitffs' SDMF (Doc. No. 198) ¶¶ 13, 15-23, 25-33, 38-42 ("The BBPOS-ROAM Licensing Agreement is a written document that speaks for itself;").

[5]    *See* Plaintiffs' SDMF (Doc. No. 198) ¶¶ 12(b); 13(a); 13(d); 15(a); 16(a).

non-responsive to Ingenico's SUMF.  Local Rule 56.1 provides, in relevant part, that a part

opposing a motion for summary judgment "shall include a concise statement of the ***material***

***facts*** of the record ***as to which it is contended that there exists a genuine issue to be tried*** . . ."

D. Mass. L.R. Cv. 56.1 (emphasis added).  Local Rule 56.1 "was adopted to expedite the process

of determining which facts are genuinely in dispute, so that the court may turn quickly to the

usually more difficult task of determining whether the disputed issues are material."  *Brown v.*

*Armstrong*, 957 F. Supp. 1297 (D. Mass. 1997), *aff'd*, 129 F.3d 1252 (1st Cir. 1997).

Where a party fails to comply with Local Rule 56.1, "the court has discretion to decide

whether to impose the sanction of deeming the moving party's factual assertions to be admitted."

*Id.* (citing *Swallow v. Fetzer Vineyards*, 46 Fed. Appx. 636, 638-39 (1st. Cir. 2002)).  It is

entirely inappropriate for a party opposing summary judgment to present immaterial,

nonresponsive allegations to rebut the moving party's statement of undisputed facts.  *See Mosley*

*v. City of Chicago*, No. 06 C 6314, 2009 WL 3097211, at *1 n.1 (N.D. Ill. Sept. 22, 2009), *aff'd*,

614 F.3d 391 (7th Cir. 2010).

*Mosley* is instructive.  In *Mosley*, the United States District Court for the Northern

District of Illinois recognized that the plaintiff's reply to the defendant's statement of undisputed

facts "largely fail[ed] to comply" with the local rule[6] analogous to this Court's Local Rule 56.1

---

[6]        Then-Local Rule 56.1(b)(3)(C)—as cited in *Mosley*—provides as follows:

> Each party opposing a motion filed pursuant to Fed.R.Civ.P.56 shall
> serve and file . . . a statement, consisting of short numbered
> paragraphs, of any additional facts that require the denial of
> summary judgment, including references to the affidavits, parts of
> the record, and other supporting materials relied upon.  Absent prior
> leave of Court, a respondent to a summary judgment motion shall
> not file more than 40 separately-numbered statements of additional
> facts.  All material facts set forth in the statement required of the

because most of the plaintiff's responses "[did] not controvert the specific facts preferred" by the defendants, as the plaintiff "instead . . . offer[ed] additional, nonresponsive factual allegations, many of which [were] belied by the record." *Id.* In those instances, the *Mosley* court "treated [the defendant's] proffered facts as admitted and ignored [the plaintiff's] replies, except where an evidentiary basis" for the plaintiff's "nonresponsive assertions" was "readily apparent from the record." *Id.*

Here, Plaintiffs' SDMF is laden with content that is wholly unrelated to the proffered undisputed facts. By way of example, Paragraph 49 of Ingenico's SUMF provides—in its entirety—that "[o]n April 30, 2013, ROAM issued a press release announcing the RP350X." *See* Doc. No. 193 ¶ 49. In response to this one-sentence statement concerning a press release that Ingenico also submitted as an exhibit,[7] Plaintiffs proffered *more than 30 paragraphs* of immaterial statements. *See* Plaintiffs' SDMF (Doc. No. 198) ¶¶49(a) through 49(ff). Significantly, only two of these 30-plus paragraphs appear to address the above-mentioned press release. *See id.* ¶¶ 49(s) and 49(t). Even more significant is the fact that neither paragraph contests the issuance of the press release. *See id.* ¶¶ 49(s) (Plaintiffs alleging that Lo had not before seen the press release) and 49(t) (Plaintiffs alleging that the press release did not "'refresh' Lo's recollection as to when the RP350x was actually a competitive product on the market."). The remaining 30-plus paragraphs in response to Ingenico's one-sentence statement do not concern the press release. *See id.* ¶¶49(a) through 49(ff).

---

moving party will be deemed to be admitted unless controverted by a statement of the opposing party.

N.D. Ill. L.R. 56.1(b)(3)(C). Following *Mosley*, Local Rule 56.1 for the Northern District of Illinois was amended and no longer provides the above-mentioned provision.

[7]       *See* April 30, 2013 Press Release (Doc. No. 193-5).

As explained *infra*, Plaintiffs' 30-plus paragraph response to Paragraph 49 is merely a snapshot of Plaintiffs' thinly-veiled attempt to use their SDMF as a platform to proffer new and nonresponsive materials, reiterate immaterial and already-submitted materials, and re-brief irrelevant arguments in contravention of the applicable page limits.  In light of Plaintiffs' material abuse of Local Rule 56.1, this Court should decline to recognize each of the immaterial representations identified below, and in doing so, recognize as undisputed fact the corresponding statement that Ingenico has proffered.

## IV.   Plaintiffs' presentation of conclusory, unsubstantiated argument to Ingenico's undisputed facts is not worthy of consideration.

As a last-ditch effort to produce a material factual dispute, Plaintiffs *on over 40 occasions* simply allege—without any evidentiary support—that "a genuine issue of material fact exists" concerning one of Ingenico's presented undisputed facts.[8]  These bald assertions are inappropriate for this Court's consideration.  *See In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 385 F. Supp. 3d 138, 144 n.5 (D.P.R. 2019) ("The Court declines to address assertions proffered by the parties" in their respective statements of facts in support of or opposition to summary judgment "that are immaterial or conclusory statements of law which the parties proffer as facts."), *aff'd*, 948 F.3d 457 (1st Cir. 2020).  Accordingly, this Court should decline to recognize each of these conclusory allegations identified *infra*, and in doing so, recognize as undisputed fact the corresponding statement that Ingenico has proffered.

---

[8]      *See* Plaintiffs' SDMF (Doc. No. 198) ¶¶ 3, 12-13, 15-23, 25-33, 38-42, 45-49, 51-52, 64, 66, 68-71, 75-76, 81, 84-85.

## SPECIFIC REPLIES TO PLAINTIFFS' RESPONSES

| Defendants' Undisputed Fact | | Plaintiffs' Response | Defendants' Reply |
|---|---|---|---|
| No. | | | |
| 3 | HomeATM is the previous name for AnywhereCommerce. Nov. 29, 2021 Deposition of Mitchell Cobrin ("Cobrin Dep. I," attached as **Exhibit 1**) at 148:3-11. | To the extent that this factual issue is determined to be "material," a genuine issue of fact exists with respect to this statement. | Plaintiffs' conclusory response to Paragraph 3 presents argument, as opposed to evidence of a purported dispute of material fact. *See* General Reply to Pls.' Responses ("General Reply") *supra* Section IV. |
| 3 | HomeATM is the previous name for AnywhereCommerce. | 3(a). When questioned "was that the same corporation only a different name," Mitchell Cobrin ("Cobrin") testified in his personal capacity that: "I believe it's the same, I believe it's the same corporation, different trade name." Exhibit 1 (Cobrin Dep. I at 148:6-11), Doc. No. 193-1 at 14, attached to Defendants' Statement of Undisputed Material facts re [191] Motion for Summary Judgment ("Def. Facts"), Doc. No. 193. | Plaintiffs' presentation of portions of Cobrin's testimony in response to Paragraph 3 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |
| 3 | HomeATM is the previous name for AnywhereCommerce. Nov. 29, 2021 Deposition of Mitchell Cobrin ("Cobrin Dep. I," attached as **Exhibit 1**) at 148:3-11. | 3(b). The business activities of AC's parent company, 4361423 Canada Inc. ("436 Canada"), including those conducted under the trade name HomeATM, were essentially bifurcated in 2010, when AC was formally incorporated, at which point, 436 Canada's pre-existing activities related to selling mobile hardware products or gateway products or services, were taken over and continued by AC as a distinct corporate entity. Plaintiffs' Statement of facts ("Pl. Facts"), Doc. No. 188 at 8-9, ¶¶19-21 (citing Ex. F (Kron I Tr.) at Doc. No. 188-6 at 2). | Plaintiffs' presentation of already-proffered purported facts unrelated to Paragraph 3 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to reiterate the contents of already-submitted materials and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |
| 12 | The ROAM-BBPOS Agreement reflects that Ingenico Inc. (and ROAM, before it merged with Ingenico Inc.) paid BBPOS and provided BBPOS with other valuable consideration in return for BBPOS' services, including | The above-referenced agreement (hereinafter, the "BBPOS-ROAM Licensing Agreement") is a written document that speaks for itself; however, there is a genuine issue of material fact as to specific amounts paid and "other valuable | Plaintiffs' conclusory response to Paragraph 12 presents argument, as opposed to evidence of a purported dispute of material fact. *See* General Reply *supra* Section IV. |

| | | | |
|---|---|---|---|
| | the design, manufacture, and production of certain mobile payment devices. Second Am. Countercl. (Doc. No. 78) ¶ 14; Ex. 3 (ROAM-BBPOS Agreement) at 1-2. | consideration" purportedly provided to BBPOS by ROAM and later Ingenico Inc. that is not "reflected" or otherwise evidenced by merely the agreement itself. | |
| 12 | The ROAM-BBPOS Agreement reflects that Ingenico Inc. (and ROAM, before it merged with Ingenico Inc.) paid BBPOS and provided BBPOS with other valuable consideration in return for BBPOS' services, including the design, manufacture, and production of certain mobile payment devices. | 12(a).  The BBPOS-ROAM Licensing Agreement, for the most part, reflects future payments that were contemplated to be made by ROAM under the agreement, assuming certain conditions were met. Specifically, the BBPOS-ROAM Licensing Agreement at Schedule II and amended Schedule II, both entitled "PAYMENTS for Engineering Development and Licensing," sets forth these various contemplated payments to be made under the contract relative to BBPOS's development and engineering of a customized version of the EMV "BBPOS" device specially for ROAM (referred to therein as the "ROAMpay POS"), a $50,000 payment due at signing "as part of the exclusive license to the Products", a $3-2 per unit margin payment thereafter for each CircleSwipe or "Crypto Swipe" device manufactured by BBPOS and sold to ROAM, a contemplated $7 per unit margin payment for each ROAMpay POS device manufactured by BBPOS and sold ROAM (although none were), a $25,000 per month software service and support fees for dedicated four-person team of BBPOS programmers, certain stock options, and revenue sharing arrangement for any services referred to ROAM by BBPOS per §1.4 of the contract. Other than the $50,000 payment due at signing, the contract thus reflects only contemplated future payments to be made under the | Plaintiffs' opinion that the ROAM-BBPOS Agreement "for the most part, reflects future payments . . ." in response to Paragraph 12 constitutes argument, as opposed to evidence of a purported dispute of material fact.  *See* General Reply *supra* Section IV. The cited portions of the BBPOS-ROAM Agreement in response to Paragraph 12 fail to establish a dispute of material fact, and Plaintiffs' presentation thereof serves only as a thinly-veiled attempt to reiterate the contents of already-submitted materials and re-brief Plaintiffs' arguments.  *See* General Reply *supra* Section III. |

| | | contract.  Doc. No. 188-3 Ex. C (BBPOS-ROAM Licensing Agreement) at 11, 15-16. | |
|---|---|---|---|
| 12 | The ROAM-BBPOS Agreement reflects that Ingenico Inc. (and ROAM, before it merged with Ingenico Inc.) paid BBPOS and provided BBPOS with other valuable consideration in return for BBPOS' services, including the design, manufacture, and production of certain mobile payment devices. | 12(b). BBPOS earned a $3-2 per unit margin payment under the agreement for each CircleSwipe or "Crypto Swipe" device it manufactured and sold to ROAM; however, in the event that BBPOS's trade secrets and IP were leveraged in any way in connection with the sale of any of ROAM/Ingenico's mPOS products (whether permissibly or not), the agreement does not provide for any means by which BBPOS would be compensated for such use to the extent that such devices were not manufactured by BBPOS. Doc. 188 (Pl. Facts) at 18-19, ¶48 (citing Ex. E (Graylin Tr.), Doc. No. 188-5 at 6); 19, n.4 (citing Ex. X (Vanderhart Tr.), Doc. No. 188-5 at 2-3); 23, ¶60 (citing Ex. C (BBPOS-ROAM Licensing Agreement), Doc. No. 188-3 at 11); 24, ¶65 (citing Ex. V (5/30/2011 Thread), Doc. No. 188-21 at 1; Ex. C (BBPOS-ROAM Licensing Agreement), Doc. No. 188-3 at 15-16); 28-29, ¶75 (citing Ex. W (BBPOS Report), Doc. No. 188-23 at 3; ¶76 (citing Ex. X (Vanderhart Tr.), Doc. No. 188-5 at 2-3); and ¶77 (citing Ex. X (Vanderhart Tr.), Doc. No. 188-5 at 3). | Graylin's cited testimony in response to Paragraph 12 constitutes parol evidence, which is inappropriate for consideration at the summary judgment stage because it is inadmissible.  *See* General Reply *supra* Section II.<br><br>Plaintiffs' presentation of already-proffered purported facts unrelated to Paragraph 12 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to reiterate the contents of already-submitted materials and re-brief Plaintiffs' arguments.  *See* General Reply *supra* Section III. |
| 13 | BBPOS provided Ingenico Inc. with an exclusive license to certain mobile payment devices and related intellectual property. Second Am. Countercl. (Doc. No. 78) ¶ 14; Ex. 3 (ROAM-BBPOS Agreement) at 1-2. | The BBPOS-ROAM Licensing Agreement is a written document that speaks for itself; however, a genuine issue of material fact exists as to whether the exclusive product license granted by BBPOS covers any mobile payment devices other than the CircleSwipe product family (i.e., CircleSwipe, Crypto Swipe, swiper, and/or ROAM's G3X, G4X, and G5X product lines). | Plaintiffs' conclusory response to Paragraph 13 presents argument, as opposed to evidence of a purported dispute of material fact.  *See* General Reply *supra* Section IV. |

| 13 | BBPOS provided Ingenico Inc. with an exclusive license to certain mobile payment devices and related intellectual property. | 13(a). BBPOS granted ROAM an exclusive product license for one particular magnetic stripe reader-only product that connected to mobile phones/tablets via audio-jack plug, and, which, generally, was referred to as the "CircleSwipe." Ex. A (Lo I Tr.) at 26:13-15, Doc. No. 188-1 at 4 ("It was an audio jack card reader. It only accept [magstripe card], and we call it Circle Swipe."). *See also* Declaration Ben Lo ("Lo Dec.") at ¶4, a true and correct copy of which is attached as Exhibit 1. The exclusive product license grant does not cover, wholesale, every single mPOS device in BBPOS's inventory that was developed, manufactured, and sold from its inception through the present. Ex. 1 (Lo Dec.) at ¶5. | The purported Declaration of Ben Lo is inadmissible hearsay and therefore inappropriate for consideration at the summary judgment stage. *See* General Reply *supra* Section I.<br><br>Lo's cited testimony concerning the ROAM-BBPOS Agreement constitutes parol evidence, which is inappropriate for consideration at the summary judgment stage because it is inadmissible. *See* General Reply *supra* Section II. |
| --- | --- | --- | --- |
| 13 | BBPOS provided Ingenico Inc. with an exclusive license to certain mobile payment devices and related intellectual property. | 13(b). The exclusive product license granted at §1.3 of the BBPOS-ROAM Licensing Agreement, as amended, specifically, covers any sales of "Products," which are then defined in Schedule I as the CircleSwipe device and a contemplated EMV ROAMpay POS unit (as yet to be developed). Doc. No. 188-3 Ex. C (BBPOS-ROAM Licensing Agreement) at 1, 10, 12-13. | Plaintiffs' response to Paragraph 13 is misleading and fails to establish a dispute in material fact, as it omits portions of the Schedule I definition of "Products," which includes the "'Crypto Swipe' or 'ROAMpay Swipe' that has the ability to generate capacitance for encryption from the audio jack of a mobile device or PC . . . and including any variance of this design." Doc. No. 188-3 at 10. |
| 13 | BBPOS provided Ingenico Inc. with an exclusive license to certain mobile payment devices and related intellectual property. | 13(c). BBPOS's only grant of licensing rights relative to its IP, generally, appears at §9.2, and is narrowly construed to (i) IP owned by BBPOS and then only to the extent incorporated in the Products or Devices; (ii) carries no grant of exclusionary rights; and (iii) limited in permissible uses of developing, manufacturing, or selling the Products or Devices, the latter also defined at Schedule I as being the contemplated ROAMpay POS. Doc. | Plaintiffs' reference to §9.2 of the ROAM-BBPOS Agreement in response to Paragraph 13 fails to establish a dispute of material fact, and Plaintiffs' presentation thereof serves only as a thinly-veiled attempt to reiterate the contents of already-submitted materials and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |

| | | No. 188-3 Ex. C (BBPOS-ROAM Licensing Agreement) at 7, 10. | |
|---|---|---|---|
| 13 | BBPOS provided Ingenico Inc. with an exclusive license to certain mobile payment devices and related intellectual property. | 13(d). During his deposition, ROAM's founder and former CEO confirmed that the scope of exclusive license grant set forth in the BBPOS-ROAM Licensing Agreement, as amended, was limited to the CircleSwipe family of devices. Doc. 188 (Pl. Facts) at 6, ¶15 (citing Ex. E (Graylin Tr.), Doc. No. 188-5 at 6 ("So for -- for CircleSwipe, I think -- I think it was exclusive with the exception of a . . . couple of areas."); 11 ("So in 1.4 it says, BBPOS is non-exclusive. **1.3 says that we have exclusive rights**, which to me was **the swiper solution, the CircleSwipe**, so that was what we white-labeled and branded."); 11 (". . . At this particular point in time [i.e., execution of the original licensing agreement], I recall we distinctively separated the two. **One was exclusive, which was CircleSwipe** and then **the other one was non-exclusive**, which . . . they were in the process of building for us . . . to sell. So that was what they named here as BBPOS, that's EMV-capable."); 12 ("Q On Page 1, you say here, 'Yes, I have told Ken Paull and others at ROAM and Ingenico that EMV/NFC is not part of the exclusivity. Good to see them admit it,' right? **A Uh-huh.** Q And again, you're saying this during the time that you're exploring the possibility of selling these devices with Ben Lo [after being terminated by ROAM], right? **A Yeah. But that was also my belief that the EMV was not exclusive**.") (emphasis added). | Graylin's cited testimony constitutes parol evidence, which is inappropriate for consideration at the summary judgment stage because it is inadmissible. *See* General Reply *supra* Section II.<br><br>Plaintiffs' presentation of already-proffered purported facts unrelated to Paragraph 13 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to reiterate the contents of already-submitted materials and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |
| 13 | BBPOS provided Ingenico Inc. with an exclusive license to | 13(e). Graylin also confirmed that, while the agreement granted ROAM exclusive rights in the sale of | Graylin's cited testimony constitutes parol evidence, which is inappropriate for consideration |

| | | | |
|---|---|---|---|
| | certain mobile payment devices and related intellectual property. | CircleSwipe devices outside of China and Philippines, the license grant was not intended by the parties at the time to confer upon ROAM any exclusionary rights in or to BBPOS's trade secrets or intellectual property, generally, or otherwise effectuate a purchase of BBPOS's IP. Doc. 188 (Pl. Facts) at 6, ¶15 (citing Ex. E (Graylin Tr.), Doc. No. 188-5 at 5 ("Q Okay. Now, this engineering and license agreement, this was a product license agreement, correct? **A I believe so. Yes.**"); 6 (confirming that the licensing agreement was not a transfer BBPOS's patents, adding: "No. **It was a technology development and license**."). | at the summary judgment stage because it is inadmissible.  *See* General Reply *supra* Section II.<br><br>Plaintiffs' presentation of already-proffered purported facts unrelated to Paragraph 13 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to reiterate the contents of already-submitted materials and re-brief Plaintiffs' arguments.  *See* General Reply *supra* Section III. |
| 15 | The exclusive license granted by BBPOS covers a magnetic swipe reader that interfaces with mobile devices or computers through an audio jack, a mobile payment unit with a Bluetooth interface, and an EMV terminal "based on the foundation of BBPOS." Second Am. Countercl. (Doc. No. 78) ¶ 15; Ex. 3 (ROAM-BBPOS Agreement) at 10. | The BBPOS-ROAM Licensing Agreement is a written document that speaks for itself; however, a genuine issue of material fact exists as to whether the exclusive product license granted by BBPOS covers any mobile payment devices other than the CircleSwipe product family (i.e., Crypto Swipe, Swiper, and ROAM's G3X, G4X, and G5X product lines). | Plaintiffs' conclusory response to Paragraph 15 presents argument, as opposed to a purported dispute in material fact. |
| 15 | The exclusive license granted by BBPOS covers a magnetic swipe reader that interfaces with mobile devices or computers through an audio jack, a mobile payment unit with a Bluetooth interface, and an EMV terminal "based on the foundation of BBPOS." | 15(a). Because the contemplated EMV ROAMpay POS project (being the anticipated other type of Product / Device identified under the agreement at Schedule I) was never completed, the exclusive product license grant does not extend to such device having the described functionality thereof under the BBPOS-ROAM Licensing Agreement (i.e., "a mobile payment unit with a Bluetooth interface, and an EMV terminal 'based on the foundation of BBPOS.'"). *See* 30(b)(6) Deposition Transcript of Ben Lo dated December 10, 2021 | BBPOS's 30(b)(6) testimony constitutes parol evidence, which is inappropriate for consideration at the summary judgment stage because it is inadmissible.  *See* General Reply *supra* Section II.<br><br>The cited portions of BBPOS's 30(b)(6) testimony in response to Paragraph 15 fail to establish a dispute of material fact, and Plaintiffs' introduction thereof serves only as a thinly-veiled attempt to proffer new evidence and re-brief Plaintiffs' |

| | | ("Lo II Tr.") at 60:7-25 – 61:1-10 (referring to the term "EMV-capable POS unit with Bluetooth interface" as listed on Schedule I as a "Product," which was never completed for the contemplated casino project, stating "[t]his product has never been finished.") and 63:8-23 (referring to the term "ROAMpay POS EMV terminal" as listed on Schedule I as a "Device," stating it was a "special terminal" that was to be used for the abandoned casino project), a true and correct excerpted copy of which is attached as Exhibit 2. | arguments. *See* General Reply *supra* Section III. |
|---|---|---|---|
| 16 | The exclusive license extends to those specified devices, to products "similar to or based upon" such devices, and in the case of the swipe reader and the mobile payment unit with a Bluetooth interface, to any portion of the device.[9] Second Am. Countercl. (Doc. No. 78) ¶ 15; Ex. 3 (ROAM-BBPOS Agreement) at 10. | The BBPOS-ROAM Licensing Agreement is a written document that speaks for itself; however, a genuine issue of material fact exists as to whether the exclusive product license granted by BBPOS covers any mobile payment devices other than the CircleSwipe product family (i.e., Crypto Swipe, Swiper, and ROAM's G3X, G4X, and G5X product lines). | Plaintiffs' conclusory response to Paragraph 16 presents argument, as opposed to evidence of a purported dispute of material fact. *See* General Reply *supra* Section IV. |
| 16 | The exclusive license extends to those specified devices, to products "similar to or based upon" such devices, and in the case of the swipe reader and the mobile payment unit with a Bluetooth interface, to any portion of the device. | 16(a). The "similar to or based upon" and "or any portion thereof" language in the BBPOS-ROAM Licensing Agreement, as amended, was understood by the parties as clarifying that the exclusive product license grant would also cover immaterial variations of the CircleSwipe and contemplated EMV ROAMpay POS product, such as physical form factor, which accounts for the differences in nomenclature between the G3X, G4X, and G5X versions of the CircleSwipe (all indisputably covered). Doc. No. 188-1 at 4, Ex. A (Lo I Tr.) at 26:20-23; at 6, Ex. A (Lo I Tr.) at 43:7-25 – 44:1- | The purported Declaration of Ben Lo is inadmissible hearsay and therefore inappropriate for consideration at the summary judgment stage. *See* General Reply *supra* Section I.<br><br>Lo's cited testimony constitutes parol evidence, which is inappropriate for consideration at the summary judgment stage because it is inadmissible. *See* General Reply *supra* Section II.<br><br>Plaintiffs' presentation of already-proffered portions of Lo's testimony unrelated to |

---

[9]     Collectively, the devices (and portions of devices) covered by the exclusive license are referred to as "Covered Mobile Payment Devices."

| | | | |
|---|---|---|---|
| | | 10 (confirming that BBPOS exclusively sold to ROAM all versions of its CircleSwipe device outside of China). *See also* Ex. 1 (Lo Dec.) at ¶6. | Paragraph 16 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to reiterate the contents of already-submitted materials and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |
| 17 | BBPOS promised in the ROAM-BBPOS Agreement that this license is exclusive even as to BBPOS (except that BBPOS has a non-exclusive, non-transferrable right to sell two specific devices in China and the Philippines—an exception that applies to all licenses referenced therein). Ex. 3 (ROAM-BBPOS Agreement) at 12-13; Ex. 2 (BBPOS 30(b)(6) Dep.) at 49:4-9. | The BBPOS-ROAM Licensing Agreement is a written document that speaks for itself; however, a genuine issue of material fact exists as to whether the exclusive product license granted by BBPOS covers any mobile payment devices other than the CircleSwipe product family (i.e., Crypto Swipe, Swiper, and ROAM's G3X, G4X, and G5X product lines). | Plaintiffs' conclusory response to Paragraph 17 presents argument, as opposed to evidence of a purported dispute of material fact. *See* General Reply *supra* Section IV. |
| 17 | BBPOS promised in the ROAM-BBPOS Agreement that this license is exclusive even as to BBPOS (except that BBPOS has a non-exclusive, non-transferrable right to sell two specific devices in China and the Philippines—an exception that applies to all licenses referenced therein). | 17(a). Ben Lo's ("Lo") referenced corporate designee testimony, confirming that the scope of the exclusive product license grant extended to just two products, was specifically limited to Lo's understanding thereof "as of May 4th of 2010 when this agreement was entered into[.]" Exhibit 2 to Def. Facts, Doc. No. 193-2 at 5 (BBPOS 30(b)(6) Dep. at 49:4-17). | The cited portions of BBPOS's 30(b)(6) testimony in response to Paragraph 17 fail to establish a dispute of material fact, and Plaintiffs' presentation thereof serves only as a thinly-veiled attempt to re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |
| 18 | Specifically, BBPOS agreed that it would not use or sell any of the Covered Mobile Payment Devices, that it would not grant any rights to intellectual property related to Covered Mobile Payment Devices to develop or sell such devices, and that it would not design, produce, or assist in the design or production of Covered Mobile Payment Devices for any other party. Ex. 3 (ROAM-BBPOS Agreement) at 12-13; | The BBPOS-ROAM Licensing Agreement is a written document that speaks for itself; however, a genuine issue of material fact exists as to whether the exclusive product license granted by BBPOS or other related restrictive covenants in the agreement cover any mobile payment devices other than the CircleSwipe product family (i.e., Crypto Swipe, Swiper, and ROAM's G3X, G4X, and G5X product lines). | Plaintiffs' conclusory response to Paragraph 18 presents argument, as opposed to evidence of a purported dispute of material fact. *See* General Reply *supra* Section IV. |


| | | | |
|---|---|---|---|
| | Ex. 2 (BBPOS 30(b)(6) Dep.) at 50:4-10. | | |
| 18 | Specifically, BBPOS agreed that it would not use or sell any of the Covered Mobile Payment Devices, that it would not grant any rights to intellectual property related to Covered Mobile Payment Devices to develop or sell such devices, and that it would not design, produce, or assist in the design or production of Covered Mobile Payment Devices for any other party. | 18(a). The term "Covered Mobile Payment Devices" does not appear in the BBPOS-ROAM Licensing Agreement, is a term that was first defined by Defendants for litigation purposes, and presents a contractual interpretation that is inconsistent with the parties' original intent, understanding, and performances under the agreement. Ex. 1 (Lo Dec.) at ¶7; Doc. No. 188-3 (BBPOS-ROAM Licensing Agreement); Defendants' Answer and Ingenico Inc.'s Counterclaims, Doc. No. 58 at 27, ¶14; Doc. No. 188 (Pl. Facts) at 14-18, ¶¶38-46 (regarding the negotiations of the contract and citing Ex. M (3/11/2010 Thread), Doc. No. 188-13; Ex. N (4/12/2010 Thread), Doc. No. 188-14; Ex. O (4/22/2010 Thread), Doc. No. 188-15; Ex. P (4/23/2010 Draft), Doc. No. 188-16; Ex. Q (4/24/2010 Thread), Doc. No. 188-17; and Ex. E (Graylin Tr.), Doc. No. 188-5 at 5-6, 11-12); Doc. No. 188 (Pl. Facts) at 24, 28-29, ¶¶65, 75-77 (regarding the parties' understanding of and performances under the contract and citing Ex. U (5/30/2011 Thread), Doc. No. 188-21; Ex. W (BBPOS Report), Doc. No. 188-23 at 3; and Ex. X (Vanderhart Tr.), Doc. No. 188-24 at 2-3). *See also* above Genuine Disputed Material Facts at ¶¶13(a) – (e)[.] | The purported Declaration of Ben Lo is inappropriate for consideration at the summary judgment stage because it constitutes inadmissible hearsay and presents self-serving statements that contradict Lo's prior Rule 30(b)(6) testimony. *See* General Reply *supra* Section I. Plaintiffs' presentation of unrelated, already-proffered purported facts in response to Paragraph 18 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to reiterate the contents of already-submitted materials and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |
| 19 | BBPOS also promised that it will indemnify and hold Ingenico Inc. harmless from any and all losses, costs, liabilities, or expenses—including attorneys' fees—that arise out of the breach of any of its promises, and BBPOS' | The BBPOS-ROAM Licensing Agreement is a written document that speaks for itself; however, a genuine issue of material fact exists as to whether the indemnification obligations are enforceable, in part or in whole, under the circumstances. | Plaintiffs' conclusory response to Paragraph 19 presents argument, as opposed to evidence of a purported dispute of material fact. *See* General Reply *supra* Section IV. |

| | | | |
|---|---|---|---|
| | obligation to indemnify Ingenico Inc. extends, inter alia, to "any claim brought by a third party against [Ingenico Inc.] as a result of or relating to any actual or alleged breach hereof." Ex. 3 (ROAM-BBPOS Agreement) §§ 3.2, 3.10, 3.18; Ingenico Indemnity Demand (attached as **Exhibit 4**); Ex. 2 (BBPOS 30(b)(6) Dep.) at 55:8-56:5. | | |
| 19 | BBPOS also promised that it will indemnify and hold Ingenico Inc. harmless from any and all losses, costs, liabilities, or expenses—including attorneys' fees—that arise out of the breach of any of its promises, and BBPOS' obligation to indemnify Ingenico Inc. extends, inter alia, to "any claim brought by a third party against [Ingenico Inc.] as a result of or relating to any actual or alleged breach hereof." | 19(a). Ingenico Inc. initiated affirmative litigation proceedings against IOEngine LLC, which were unresolved at the time demands for indemnification were issued. Doc. No. 188 (Pl. Facts) at 23-24, ¶63 (citing Ex. C (BBPOS-ROAM Licensing Agreement), Doc. No. 188-3 at 3-5); at 30, ¶80 (citing Ex. AA (Indemnity Letters), Doc. No. 188-27); at 32, ¶87 (citing Ex. CC (Vanderhart Report), Doc. No. 18829 at 43-44 and 86); at 32, ¶88 (citing Ex. DD (IOEngine Docket), Doc. No. 188-30 at 4-6, 13). | Plaintiffs' presentation of unrelated, already-proffered purported facts in response to Paragraph 19 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to reiterate the contents of already-submitted materials and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |
| 19 | BBPOS also promised that it will indemnify and hold Ingenico Inc. harmless from any and all losses, costs, liabilities, or expenses—including attorneys' fees—that arise out of the breach of any of its promises, and BBPOS' obligation to indemnify Ingenico Inc. extends, inter alia, to "any claim brought by a third party against [Ingenico Inc.] as a result of or relating to any actual or alleged breach hereof." | 19(b). Ingenico Inc. promised to keep BBPOS informed of the status of various claims, but then failed to do so. Doc. No. 188 (Pl. Facts) at 30, ¶80 (citing Ex. AA (Indemnity Letters), Doc. No. 188-27); at 32-33, ¶89 (citing Ex. AA (Indemnity Letters), Doc. No. 188-27 and Ex. BB (Declaration of Melissa Bozeman), Doc. No. 188-28). *See also* Ex. 1 (Lo Dec.) at ¶8. | The purported Declaration of Ben Lo is inappropriate for consideration at the summary judgment stage because it constitutes inadmissible hearsay and presents self-serving statements that contradict Lo's prior Rule 30(b)(6) testimony. *See* General Reply *supra* Section I.

Plaintiffs' presentation of unrelated, already-proffered purported facts in response to Paragraph 19 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to reiterate the contents of already-submitted materials |

| | | | and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |
|---|---|---|---|
| **19** | BBPOS also promised that it will indemnify and hold Ingenico Inc. harmless from any and all losses, costs, liabilities, or expenses—including attorneys' fees—that arise out of the breach of any of its promises, and BBPOS' obligation to indemnify Ingenico Inc. extends, inter alia, to "any claim brought by a third party against [Ingenico Inc.] as a result of or relating to any actual or alleged breach hereof." | 19(c). Ingenico Inc. failed to provide any advance notice or evidence of reasonableness of settlements purportedly reached. Doc. No. 188 (Pl. Facts) at 31, ¶¶83-84 (citing Ex. CC (Vanderhart Report), Doc. No. 188-29 at 43-44 and 86); at 31-32, ¶¶85-86 (citing Ex. X (Vanderhart Tr.), Doc. No. 188-24 at 4-6). *See also* Ex. 1 (Lo Dec.) at ¶9. | The purported Declaration of Ben Lo is inappropriate for consideration at the summary judgment stage because it constitutes inadmissible hearsay and presents self-serving statements that contradict Lo's prior Rule 30(b)(6) testimony. *See* General Reply *supra* Section I. Plaintiffs' presentation of unrelated, already-proffered purported facts in response to Paragraph 19 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to reiterate the contents of already-submitted materials and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |
| **19** | BBPOS also promised that it will indemnify and hold Ingenico Inc. harmless from any and all losses, costs, liabilities, or expenses—including attorneys' fees—that arise out of the breach of any of its promises, and BBPOS' obligation to indemnify Ingenico Inc. extends, inter alia, to "any claim brought by a third party against [Ingenico Inc.] as a result of or relating to any actual or alleged breach hereof." | 19(d). Ingenico Inc. failed to provide any evidence of reasonableness of attorneys' fees and costs allegedly purportedly incurred. Doc. No. 188 (Pl. Facts) at 31, ¶¶83-84 (citing Ex. CC (Vanderhart Report), Doc. No. 188-29 at 43-44 and 86); at 31-32, ¶¶85-86 (citing Ex. X (Vanderhart Tr.), Doc. No. 188-24 at 4-6). | Plaintiffs' presentation of unrelated, already-proffered purported facts in response to Paragraph 19 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to reiterate the contents of already-submitted materials and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |
| **19** | BBPOS also promised that it will indemnify and hold Ingenico Inc. harmless from any and all losses, costs, liabilities, or expenses—including attorneys' fees—that arise out of the breach of any of its promises, and BBPOS' | 19(e). BBPOS requested in writing, through its counsel, information necessary for it to fully analysis Ingenico Inc.'s indemnification demands; despite indicating its amenability of entering into a Common Interest Agreement as Ingenico Inc.'s condition to providing | The purported Declaration of Ben Lo is inappropriate for consideration at the summary judgment stage because it constitutes inadmissible hearsay and presents self-serving statements that contradict Lo's prior Rule 30(b)(6) testimony. |

| | | | |
|---|---|---|---|
| | obligation to indemnify Ingenico Inc. extends, inter alia, to "any claim brought by a third party against [Ingenico Inc.] as a result of or relating to any actual or alleged breach hereof." | the requested information on December 3, 2018, no further response was provided and none of the requested information was disclosed to BBPOS until the close of this lawsuit. Doc. No. 188 (Pl. Facts) at 30, ¶80 (citing Ex. AA (Indemnity Letters), Doc. No. 188-27); at 30, ¶81 (citing Ex. BB (Declaration of Melissa Bozeman), Doc. No. 188-28); at 30-31, ¶82 (citing Ex. BB (Declaration of Melissa Bozeman), Doc. No. 188-28); at 31-32, ¶86 (citing Ex. X (Vanderhart Tr.), Doc. No. 188-24 at 5-6); at 32-33, ¶89 (citing Ex. AA (Indemnity Letters), Doc. No. 188-27); Ex. BB (Declaration of Melissa Bozeman), Doc. No. 188-28)). *See also* Ex. 2 (Lo II Tr.) at 56:14-16 ("Q. And did BBPOS indemnify Ingenico? **A. We asked Ingenico to provide further information and they didn't provide**."). *See also* Ex. 1 (Lo Dec.) at ¶10. | *See* General Reply *supra* Section I. Plaintiffs' presentation of unrelated, already-proffered purported facts in response to Paragraph 19 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to reiterate the contents of already-submitted materials and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |
| 20 | The ROAM-BBPOS Agreement defines "confidential information" to include confidential or proprietary information including, *inter alia*, technical information shared pursuant to the agreement. Ex. 3 (ROAM-BBPOS Agreement) § 3.18. | The BBPOS-ROAM Licensing Agreement is a written document that speaks for itself; however, a genuine issue of material fact exists as to the scope of the confidentiality obligations and protections set forth under the agreement. | Plaintiffs' conclusory response to Paragraph 20 presents argument, as opposed to evidence of a purported dispute of material fact. *See* General Reply *supra* Section IV. |
| 20 | The ROAM-BBPOS Agreement defines "confidential information" to include confidential or proprietary information including, *inter alia*, technical information shared pursuant to the agreement. | 20(a). Section 6.1 of the BBPOS-ROAM Licensing Agreement provides: Both parties agree to treat the other's Confidential Information (as defined below) as confidential, to take all reasonable measures to protect and prevent the disclosure of and/or unauthorized use by third parties of the other parties' Confidential Information, to exercise at least the same degree of care exercised for the protection of its own | Plaintiffs' reference to Section 6.1 of the ROAM-BBPOS Agreement in response to Paragraph 20 fails to establish a dispute of material fact, and Plaintiffs' presentation thereof serves only as a thinly-veiled attempt to reiterate the contents of already-submitted materials and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |

| | | Confidential Information, and to not use Confidential Information other than for its intended purpose under this Agreement. Doc. No. 188-3 at 6, Ex. C (BBPOS-ROAM Licensing Agreement). | |
|---|---|---|---|
| 20 | The ROAM-BBPOS Agreement defines "confidential information" to include confidential or proprietary information including, *inter alia*, technical information shared pursuant to the agreement. | 20(b). "Confidential Information" shall mean information (whether written or oral) of a confidential or propriety nature concerning this Agreement or the assets, products or business of any party hereto that either party shall have obtained as a result of discussions or communications related to this Agreement or the transactions contemplated undertaken by this Agreement, including (but not limited to) in the case of the Company, the technical and other information concerning the Products and Devices and related documentation. Without limiting the generality of the foregoing, if either party hereto receives from the other party written information that is marked "Confidential" and/or "Proprietary", such information shall be deemed "Confidential Information." The obligation to keep Confidential Information confidential shall not apply to information that has been disclosed in publicly available sources; if, through no fault of the party receiving the confidential information, hereafter disclosed in a publicly available source; or is in the rightful possession of the party receiving the confidential information without an obligation of confidentiality. Doc. No. 188-3 at 6, Ex. C (BBPOS-ROAM Licensing Agreement). | Plaintiffs' reference to the ROAM-BBPOS Agreement in response to Paragraph 20 fails to establish a dispute of material fact, and Plaintiffs' presentation thereof serves only as a thinly-veiled attempt to reiterate the contents of already-submitted materials and re-brief Plaintiffs' arguments.  *See* General Reply *supra* Section III. |
| 20 | The ROAM-BBPOS Agreement defines "confidential information" to include | 20(c). Section 6.3 provides, in relevant part: Notwithstanding any provision herein to the contrary, a | Plaintiffs' reference to Section 6.3 of the ROAM-BBPOS Agreement in response to |

| | | | |
|---|---|---|---|
| | confidential or proprietary information including, *inter alia*, technical information shared pursuant to the agreement. | party may disclose Confidential Information on a need-to-know basis to its contractors, lawyers, accountants and agents, provided that any such person is bound by a duty of confidentiality, and such party shall be responsible for any disclosure or use by any such third party in contravention hereof. Doc. No. 188-3 at 6, Ex. C (BBPOS-ROAM Licensing Agreement). | Paragraph 20 fails to establish a dispute of material fact, and Plaintiffs' presentation thereof serves only as a thinly-veiled attempt to reiterate the contents of already-submitted materials and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |
| 21 | The agreement imposes a duty on a receiving party to keep information confidential where it is "marked 'Confidential' and/or 'Proprietary' [...]." *Id.* | The BBPOS-ROAM Licensing Agreement is a written document that speaks for itself; however, a genuine issue of material fact exists as to the scope of the confidentiality obligations set forth under the agreement. *See* above Genuine Disputed Material Facts at ¶¶20(a) – (c). | Plaintiffs' conclusory response to Paragraph 21 presents argument, as opposed to evidence of a purported dispute of material fact. *See* General Reply *supra* Section IV. |
| 22 | That duty of confidence does not apply as to "information that is disclosed in publicly available sources [or] is in the rightful possession of the party receiving the confidential information without an obligation of confidentiality." *Id.* | The BBPOS-ROAM Licensing Agreement is a written document that speaks for itself; however, a genuine issue of material fact exists as to the scope of the confidentiality obligations set forth under the agreement. *See* above Genuine Disputed Material Facts at ¶¶20(a) – (c). | Plaintiffs' conclusory response to Paragraph 22 presents argument, as opposed to evidence of a purported dispute of material fact. *See* General Reply *supra* Section IV. |
| 23 | The ROAM-BBPOS Agreement does not contain any terms describing the manner in which "Confidential Information" must be protected by the receiving party. *Id[.]* | The BBPOS-ROAM Licensing Agreement is a written document that speaks for itself; however, a genuine issue of material fact exists as to the scope of the confidentiality obligations set forth under the agreement. *See* above Genuine Disputed Material Facts at ¶¶20(a) – (c). | Plaintiffs' conclusory response to Paragraph 23 presents argument, as opposed to evidence of a purported dispute of material fact. *See* General Reply *supra* Section IV. |
| 25 | In December 2015, BBPOS attempted to sell Covered Mobile Payment Devices to one of Ingenico Inc.'s customers, North American Bancard, LLC, in violation of the Ingenico-BBPOS Agreement. Ex. 2 | The BBPOS-ROAM Licensing Agreement is a written document that speaks for itself; however, a genuine issue of material fact exists as to whether the exclusive product license granted by BBPOS or other related restrictive covenants in the agreement cover any mobile | Plaintiffs' conclusory response to Paragraph 25 presents argument, as opposed to evidence of a purported dispute of material fact. *See* General Reply *supra* Section IV. |

| | | | |
|---|---|---|---|
| | (BBPOS 30(b)(6) Dep.) at 176:3-6. | payment devices other than the CircleSwipe product family (i.e., Crypto Swipe, Swiper, and ROAM's G3X, G4X, and G5X product lines). *See* above Genuine Disputed Material Facts at ¶18(a) (disputing the propriety of Defendants' use of the defined term "Covered Mobile Payment Devices").<br><br>A genuine issue of material fact also exists as to whether any conduct (remediated or otherwise) undertaken by BBPOS with respect to NAB violated the BBPOS-ROAM Licensing Agreement. *See* above Genuine Disputed Material Facts at ¶16(a). | |
| 25 | In December 2015, BBPOS attempted to sell Covered Mobile Payment Devices to one of Ingenico Inc.'s customers, North American Bancard, LLC, in violation of the Ingenico-BBPOS Agreement. | 25(a). In or around December 2015, BBPOS unintentionally accepted a purchase order for CircleSwipes (or "swipers") from NAB, but thereafter promptly canceled the order, when Ingenico Inc. brought the error to BBPOS's attention. Ex. EE (12/9/2015 Thread), Doc. No. 188-31. *See also* Internal BBPOS Email Thread dated December 11, 2015 [BBPOS_0000070-073] ("12/11/2015 Thread") (instructing "Do not take the order from NAB re swiper"), a true and correct copy of which is attached as Exhibit 3. | Plaintiffs' (1) presentation of an already-proffered exhibit (Doc. No. 188-31); and (2) introduction of a new exhibit in response to Paragraph 25 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to reiterate the contents of already-submitted materials, introduce new evidence, and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |
| 25 | In December 2015, BBPOS attempted to sell Covered Mobile Payment Devices to one of Ingenico Inc.'s customers, North American Bancard, LLC, in violation of the Ingenico-BBPOS Agreement. | 25(b). Ingenico Inc. was aware of the circumstances of the alleged "attempt[] to sell" no later than December 9, 2015. Ex. EE (12/9/2015 Thread), Doc. No. 188-31. | Plaintiffs' presentation of unrelated, already-proffered purported facts in response to Paragraph 25 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to reiterate the contents of already-submitted materials and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |

| 25 | In December 2015, BBPOS attempted to sell Covered Mobile Payment Devices to one of Ingenico Inc.'s customers, North American Bancard, LLC, in violation of the Ingenico-BBPOS Agreement. | 25(c). BBPOS has never sold any CircleSwipe devices to NAB. Doc. No. 188-1 at 6, Ex. A (Lo I Tr.) at 43:7-25 – 44:1-10 (confirming that BBPOS exclusively sold to ROAM all versions of its CircleSwipe device outside of China). *See also* Ex. 1 (Lo Dec.) at ¶¶11, 12. | The purported Declaration of Ben Lo is inappropriate for consideration at the summary judgment stage because it constitutes inadmissible hearsay and presents self-serving statements that contradict Lo's prior Rule 30(b)(6) testimony. *See* General Reply *supra* Section I.<br><br>Plaintiffs' presentation of unrelated, already-proffered testimony in response to Paragraph 25 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to reiterate the contents of already-submitted materials and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |
| 25 | In December 2015, BBPOS attempted to sell Covered Mobile Payment Devices to one of Ingenico Inc.'s customers, North American Bancard, LLC, in violation of the Ingenico-BBPOS Agreement. | 25(d). Lo's referenced corporate designee testimony neither confirms any alleged attempt by BBPOS to sell "Covered Mobile Payment Devices" to NAB nor confirms any intentional or attempted violations of the exclusivity provisions of the BBPOS-ROAM Licensing Agreement; rather, Lo testified that BBPOS has purposely marketed and sold its Chipper device to NAB – but not the CircleSwipe device, *see* Ex. 2 (Lo II Tr.) at 169:2-25 – 170:1-12; that if BBPOS, hypothetically, attempted to sell NAB the CircleSwipe, "then we shall stop," *id.* at 171:18-25 – 172:1-6; and that internal instruction "Do not take the order from NAB re swiper" in the 12/11/2015 Thread meant "[BBPOS] cannot take the order from NAB as we are an agreement with ROAM Data for not selling Circle Swipe to NAB. So we should cancel the order[,]" *id.* at | Plaintiffs' introduction of portions of BBPOS's 30(b)(6) testimony and an email thread in response to Paragraph 25 fails to establish a dispute of material fact, and Plaintiffs' introduction thereof serves only as a thinly-veiled attempt to proffer new evidence and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |

| | | 172:24-25 – 173:1-7; Ex. 3 (12/11/2015 Thread). | |
|---|---|---|---|
| 26 | BBPOS sold and continues to sell Covered Mobile Payment Devices to AnywhereCommerce. *Id.* at 70:9-12. | The BBPOS-ROAM Licensing Agreement is a written document that speaks for itself; however, a genuine issue of material fact exists as to whether the exclusive product license granted by BBPOS or other related restrictive covenants in the agreement cover any mobile payment devices other than the CircleSwipe product family (i.e., Crypto Swipe, Swiper, and ROAM's G3X, G4X, and G5X product lines). *See* above Genuine Disputed Material Facts at ¶18(a) (disputing the proprietary of Defendants' use of the defined term "Covered Mobile Payment Devices"). | Plaintiffs' conclusory response to Paragraph 26 presents argument, as opposed to evidence of a purported dispute of material fact. *See* General Reply *supra* Section IV. |
| 26 | BBPOS sold and continues to sell Covered Mobile Payment Devices to AnywhereCommerce. | 26(a). BBPOS has never sold any CircleSwipe devices to AC. Doc. No. 188-1 at 6, Ex. A (Lo I Tr.) at 43:7-25 – 44:1-10 (confirming that BBPOS exclusively sold to ROAM all versions of its CircleSwipe device outside of China). *See also* Ex. 1 (Lo Dec.) at ¶¶11, 13. | The purported Declaration of Ben Lo is inappropriate for consideration at the summary judgment stage because it constitutes inadmissible hearsay and presents self-serving statements that contradict Lo's prior Rule 30(b)(6) testimony. *See* General Reply *supra* Section I.<br><br>Plaintiffs' presentation of cited portions of Lo's testimony in response to Paragraph 26 that Plaintiffs have already proffered fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to proffer the same evidence and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |
| 26 | BBPOS sold and continues to sell Covered Mobile Payment Devices to AnywhereCommerce. | 26(b). Lo's referenced corporate designee testimony neither confirms any sale of "Covered Mobile Payment Devices" to AC nor confirms any violations of the exclusivity or restrictive covenant provisions of the BBPOS-ROAM | Plaintiffs' presentation of unrelated, already-proffered testimony of Lo in response to Paragraph 26 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to reiterate the contents |

| | | Licensing Agreement; rather, Lo testified that BBPOS sold its Chipper device to AC, which is a "Chip based product . . . which can read the EMV card reader." Ex. 2 (Lo II Tr.) at 69:13-25 – 71:1-8. | of already-submitted materials and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |
|---|---|---|---|
| 27 | The Ingenico-BBPOS Agreement was in effect when BBPOS sold Covered Mobile Payment Devices to AnywhereCommerce. *Id.* at 87:24-88:2. | The BBPOS-ROAM Licensing Agreement is a written document that speaks for itself; however, a genuine issue of material fact exists as to whether the exclusive product license granted by BBPOS or other related restrictive covenants in the agreement cover any mobile payment devices other than the CircleSwipe product family (i.e., Crypto Swipe, Swiper, and ROAM's G3X, G4X, and G5X product lines). *See* above Genuine Disputed Material Facts at ¶18(a) (disputing the propriety of Defendants' use of the defined term "Covered Mobile Payment Devices"); ¶¶26(a) – (b). | Plaintiffs' conclusory response to Paragraph 27 presents argument, as opposed to evidence of a purported dispute of material fact. *See* General Reply *supra* Section IV. |
| 28 | BBPOS has itself and has permitted third parties, including AnywhereCommerce, to use some or all of the licensed intellectual property rights in violation of the Ingenico-BBPOS Agreement. *Id.* at 70:9-12. | The BBPOS-ROAM Licensing Agreement is a written document that speaks for itself; however, a genuine issue of material fact exists as to whether the exclusive product license granted by BBPOS or other related restrictive covenants in the agreement cover any mobile payment devices other than the CircleSwipe product family (i.e., Crypto Swipe, Swiper, and ROAM's G3X, G4X, and G5X product lines). *See* above Genuine Disputed Material Facts at ¶¶13(a) – (e), 26(b). | Plaintiffs' conclusory response to Paragraph 28 presents argument, as opposed to evidence of a purported dispute of material fact. *See* General Reply *supra* Section IV. |
| 28 | BBPOS has itself and has permitted third parties, including AnywhereCommerce, to use some or all of the licensed intellectual property rights in violation of the Ingenico-BBPOS Agreement. | 28(a). Section 9.2 of the BBPOS-ROAM Licensing Agreement states, in relevant part: If the Products or Devices incorporate **Partner-owned IP**, the Company is hereby granted a worldwide, perpetual, fully paid, sublicensable license to use the Partner IP to continue developing, manufacturing and selling the | Plaintiffs' presentation of Section 9.2 of the BBPOS-ROAM Licensing Agreement in response to Paragraph 28 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to reiterate the contents of already-submitted materials and re-brief Plaintiffs' |

| | | | |
|---|---|---|---|
| | | Products and Devices. Doc. No. 188-3 at 7, Ex. C (BBPOS-ROAM Licensing Agreement) (emphasis added). *See also* Doc. No. 188 (Pl. Facts) at 22-23, ¶59 (referring to the limited and non-exclusive nature of BBPOS's grant of IP licensing rights under §9.2). | arguments. *See* General Reply *supra* Section III. |
| 29 | BBPOS sold Covered Mobile Payment Devices to NMA. *Id.* at 180:14-181:19. | The BBPOS-ROAM Licensing Agreement is a written document that speaks for itself; however, a genuine issue of material fact exists as to whether the exclusive product license granted by BBPOS or other related restrictive covenants in the agreement cover any mobile payment devices other than the CircleSwipe product family (i.e., Crypto Swipe, Swiper, and ROAM's G3X, G4X, and G5X product lines). *See* above Genuine Disputed Material Facts at ¶18(a) (disputing the propriety of Defendants' use of the defined term "Covered Mobile Payment Devices"). | Plaintiffs' conclusory response to Paragraph 29 presents argument, as opposed to evidence of a purported dispute of material fact. *See* General Reply *supra* Section IV. |
| 29 | BBPOS sold Covered Mobile Payment Devices to NMA. | 29(a). BBPOS has never sold any CircleSwipe devices to NMA. Doc. No. 188-1 at 6, Ex. A (Lo I Tr.) at 43:7-25 – 44:1-10 (confirming that BBPOS exclusively sold to ROAM all versions of its CircleSwipe device outside of China). *See also* Ex. 1 (Lo Dec.) at ¶¶11, 14. | The purported Declaration of Ben Lo is inappropriate for consideration at the summary judgment stage because it constitutes inadmissible hearsay and presents self-serving statements that contradict Lo's prior Rule 30(b)(6) testimony. *See* General Reply *supra* Section I.<br><br>Plaintiffs' presentation of unrelated, already-proffered testimony of Lo in response to Paragraph 29 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to reiterate the contents of already-submitted materials and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |

| 29 | BBPOS sold Covered Mobile Payment Devices to NMA. | 29(b). Lo's referenced corporate designee testimony neither confirms any sale of "Covered Mobile Payment Devices" to NMA nor confirms any violations of the exclusivity or restrictive covenant provisions of the BBPOS-ROAM Licensing Agreement; in fact, Lo actually testified that he was not sure whether NMA was even a customer: "**A. So you're asking whether they're our customer?** Q. Yes. . . Q. NMA? **A. NMA?** Q. Yes. **A. A for apple? I'm not sure**." Ex. 2 (Lo II Tr.) at 181:12-19. | Plaintiffs' introduction of portions of BBPOS's 30(b)(6) testimony in response to Paragraph 29 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to proffer new evidence and re-brief Plaintiffs' arguments.  *See* General Reply *supra* Section III. |
| --- | --- | --- | --- |
| 30 | BBPOS sold Covered Mobile Payment Devices to Shopify. *Id.* at 180:14-181:25. | The BBPOS-ROAM Licensing Agreement is a written document that speaks for itself; however, a genuine issue of material fact exists as to whether the exclusive product license granted by BBPOS or other related restrictive covenants in the agreement cover any mobile payment devices other than the CircleSwipe product family (i.e., Crypto Swipe, Swiper, and ROAM's G3X, G4X, and G5X product lines). *See* above Genuine Disputed Material Facts at ¶18(a) (disputing the propriety of Defendants' use of the defined term "Covered Mobile Payment Devices"). | Plaintiffs' conclusory response to Paragraph 30 presents argument, as opposed to evidence of a purported dispute of material fact.  *See* General Reply *supra* Section IV. |
| 30 | BBPOS sold Covered Mobile Payment Devices to Shopify. | 30(a). BBPOS has never sold any CircleSwipe devices to Shopify. Doc. No. 188-1 at 6, Ex. A (Lo I Tr.) at 43:7-25 – 44:1-10 (confirming that BBPOS exclusively sold to ROAM all versions of its CircleSwipe device outside of China). *See also* Ex. 1 (Lo Dec.) at ¶¶11, 15. | The purported Declaration of Ben Lo is inappropriate for consideration at the summary judgment stage because it constitutes inadmissible hearsay and presents self-serving statements that contradict Lo's prior Rule 30(b)(6) testimony. *See* General Reply *supra* Section I. |
| 30 | BBPOS sold Covered Mobile Payment Devices to Shopify. | 30(b). Lo's referenced corporate designee testimony neither confirms any sale of "Covered Mobile Payment Devices" to Shopify nor confirms any violations of the | Plaintiffs' introduction of portions of BBPOS's 30(b)(6) testimony in response to Paragraph 30 fails to establish a dispute of material fact, and |

| | | exclusivity or restrictive covenant provisions of the BBPOS-ROAM Licensing Agreement; rather, Lo merely confirmed that Shopify is a customer: "**A. So you're asking whether they're our customer?** Q. Yes. . . Q. NMA? **A. NMA?** Q. Yes. **A. A for apple? I'm not sure.**" Ex. 2 (Lo II Tr.) at 181:12-19. | serves only as a thinly-veiled attempt to proffer new evidence and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. . |
|---|---|---|---|
| 31 | BBPOS sold Covered Mobile Payment Devices to its customers in Mexico. *Id.* at 70:9-19. | The BBPOS-ROAM Licensing Agreement is a written document that speaks for itself; however, a genuine issue of material fact exists as to whether the exclusive product license granted by BBPOS or other related restrictive covenants in the agreement cover any mobile payment devices other than the CircleSwipe product family (i.e., Crypto Swipe, Swiper, and ROAM's G3X, G4X, and G5X product lines). *See* above Genuine Disputed Material Facts at ¶18(a) (disputing the propriety of Defendants' use of the defined term "Covered Mobile Payment Devices"). | Plaintiffs' conclusory response to Paragraph 31 presents argument, as opposed to evidence of a purported dispute of material fact. *See* General Reply *supra* Section IV. |
| 31 | BBPOS sold Covered Mobile Payment Devices to its customers in Mexico. | 31(a). BBPOS has never sold any CircleSwipe devices to its customers in Mexico. Doc. No. 188-1 at 6, Ex. A (Lo I Tr.) at 43:7-25 – 44:1-10 (confirming that BBPOS exclusively sold to ROAM all versions of its CircleSwipe device outside of China). *See also* Ex. 1 (Lo Dec.) at ¶¶11, 16. | The purported Declaration of Ben Lo is inappropriate for consideration at the summary judgment stage because it constitutes inadmissible hearsay and presents self-serving statements that contradict Lo's prior Rule 30(b)(6) testimony. *See* General Reply *supra* Section I.<br><br>Plaintiffs' presentation of already-proffered testimony of Lo in response to Paragraph 31 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to reiterate the contents of already-submitted materials and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |

| | | | |
|---|---|---|---|
| 31 | BBPOS sold Covered Mobile Payment Devices to its customers in Mexico. | 31(b). Lo's referenced corporate designee testimony neither confirms any sale of "Covered Mobile Payment Devices" to customers in Mexico nor confirms any violations of the exclusivity or restrictive covenant provisions of the BBPOS-ROAM Licensing Agreement; rather, Lo testified that BBPOS sold its Chipper device in Mexico, which is a "Chip based product . . . which can read the EMV card reader." Ex. 2 (Lo II Tr.) at 69:13-25 – 71:1-19. | Plaintiffs' introduction of portions of BBPOS's 30(b)(6) testimony in response to Paragraph 31 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to proffer new evidence and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |
| 32 | Ingenico made demand upon BBPOS for attorneys' fees and other costs related to claims by third parties that the use or sale of Covered Mobile Payment Devices or other deliverables or services that BBPOS provided under the Agreement. Second Am. Countercl. (Doc. No. 78) ¶ 29; Ex. 2 (BBPOS 30(b)(6) Dep.) at 56:7-13. | The BBPOS-ROAM Licensing Agreement is a written document that speaks for itself; however, a genuine issue of material fact exists as to whether the exclusive product license granted by BBPOS or other related restrictive covenants in the agreement cover any mobile payment devices other than the CircleSwipe product family (i.e., Crypto Swipe, Swiper, and ROAM's G3X, G4X, and G5X product lines). *See* above Genuine Disputed Material Facts at ¶18(a) (disputing the propriety of Defendants' use of the defined term "Covered Mobile Payment Devices."). | Plaintiffs' conclusory response to Paragraph 32 presents argument, as opposed to evidence of a purported dispute of material fact. *See* General Reply *supra* Section IV. |
| 32 | Ingenico made demand upon BBPOS for attorneys' fees and other costs related to claims by third parties that the use or sale of Covered Mobile Payment Devices or other deliverables or services that BBPOS provided under the Agreement. | 32(a). Ingenico Inc. made demands upon BBPOS for attorneys' fees and other costs related to claims by third parties that explicitly involved non-BBPOS accused products / services or otherwise could be reasonably construed to involve non-BBPOS accused products / services. Doc. No. 188-1 at 6, Ex. A (Lo I Tr.) at 43:7-25 – 44:1-10 (confirming that BBPOS exclusively sold to ROAM all versions of its CircleSwipe device outside of China). *See also* Ex. 1 (Lo Dec.) at ¶11. | The purported Declaration of Ben Lo is inappropriate for consideration at the summary judgment stage because it constitutes inadmissible hearsay and presents self-serving statements that contradict Lo's prior Rule 30(b)(6) testimony. *See* General Reply *supra* Section I.<br><br>Plaintiffs' presentation of unrelated, already-proffered testimony of Lo in response to Paragraph 32 fails to establish a dispute of material fact, and |

| | | | serves only as a thinly-veiled attempt to reiterate the contents of already-submitted materials and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |
|---|---|---|---|
| 32 | Ingenico made demand upon BBPOS for attorneys' fees and other costs related to claims by third parties that the use or sale of Covered Mobile Payment Devices or other deliverables or services that BBPOS provided under the Agreement. | 32(b). Lo's referenced corporate designee testimony neither confirms any sale of "Covered Mobile Payment Devices" to customers in Mexico nor confirms any violations of the exclusivity or restrictive covenant provisions of the BBPOS-ROAM Licensing Agreement; rather, Lo testified that BBPOS sold its Chipper device in Mexico, which is a "Chip based product . . . which can read the EMV card reader." Ex. 2 (Lo II Tr.) at 69:13-25 – 71:1-19. *See also* Ex. 1 (Lo Dec.) at ¶¶11, 16. | The purported Declaration of Ben Lo is inappropriate for consideration at the summary judgment stage because it constitutes inadmissible hearsay and presents self-serving statements that contradict Lo's prior Rule 30(b)(6) testimony. *See* General Reply *supra* Section I.<br><br>Plaintiffs' introduction of portions of BBPOS's 30(b)(6) testimony in response to Paragraph 32 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to proffer new evidence and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |
| 33 | BBPOS refused Ingenico's indemnification demand.  Ex. 2 (BBPOS 30(b)(6) Dep.) at 56:17-19. | The BBPOS-ROAM Licensing Agreement is a written document that speaks for itself; however, a genuine issue of material fact exists as to whether the indemnification obligations are enforceable, in part or in whole, under the circumstances. *See* above Genuine Disputed Material Facts at ¶¶19(a) – (e). | Plaintiffs' conclusory response to Paragraph 33 presents argument, as opposed to evidence of a purported dispute of material fact.  *See* General Reply *supra* Section IV. |
| 33 | BBPOS refused Ingenico's indemnification demand. | 33(a). Lo's referenced corporate designee testimony does not state that BBPOS "refused" the indemnification demand; rather, when asked whether BBPOS indemnified Ingenico Inc., Lo testified that "We asked Ingenico to provide further information and they didn't provide." Ex. 2 (Lo II Tr.) at 56:14-16. | Plaintiffs' introduction of portions of BBPOS's 30(b)(6) testimony in response to Paragraph 33 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to proffer new evidence and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |

| 38 | BBPOS sent emails to third parties with documents it later described as trade secrets. Ex. 2 (BBPOS 30(b)(6) Dep.) at 153:19-154:16; 202:16-203:23; 204:22-205:7. | The BBPOS-ROAM Licensing Agreement is a written document that speaks for itself; however, a genuine issue of material fact exists as to whether BBPOS was aware of corporate affiliations of each of the recipients of such emails (i.e., ROAM, Ingenico, or both) and whether, irrespective thereof, the disclosures were made at the direction of ROAM or otherwise covered by the confidentiality obligations set forth in the agreement, including under §6.3, or otherwise. | Plaintiffs' conclusory response to Paragraph 38 presents argument, as opposed to evidence of a purported dispute of material fact.  *See* General Reply *supra* Section IV. |
| 38 | BBPOS sent emails to third parties with documents it later described as trade secrets. | 38(a). Lo's referenced corporate designee testimony does not admit that BBPOS knowingly sent trade secret information to third parties; to the contrary, Lo, in fact, denied doing so, when he was asked why trade secret information was shared via email with a third party, stating: "This is not a third party. Christopher [Rotsaert] is a ROAM people. So they may want to -- I sent to ROAM, so they may want to review it." Ex. 2 (Lo II Tr.) at 153:9-25 – 154:1-22 (discussing two emails between BBPOS and Christopher Rotsaert ("Rotsaert")). *See also* Ex. 2 (Lo II Tr.) at 202:16-25 – 203:1-21 (testifying about an email where Rotsaert is directing BBPOS to communicate with an Ingenico engineer, Lo reiterates "[b]ut Christopher is a ROAM -- is introduced to me by Will Graylin is ROAM. So I still believe that this is -- this is ROAM introduce one of their partner to us who is Ingenico. So Christopher here I still think that he's from ROAM."); 204:3-25 – 206:1-11 (testifying about two more emails between BBPOS and Rotsaert, with respect to one that shared trade secret information with the Ingenico | The purported Declaration of Ben Lo is inappropriate for consideration at the summary judgment stage because it constitutes inadmissible hearsay and presents self-serving statements that contradict Lo's prior Rule 30(b)(6) testimony. *See* General Reply *supra* Section I.<br><br>Plaintiffs' introduction of portions of BBPOS's 30(b)(6) testimony in response to Paragraph 38 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to proffer new evidence and re-brief Plaintiffs' arguments.  *See* General Reply *supra* Section III. |

| | | engineer at Rotsaert's direction, Lo states: "This is a trade secret, and this secret we sent to ROAM Data. And also suggested to protected by the 6.3. . . of the ROAM agreement."). *See also* Ex. 1 (Lo Dec.) at ¶¶17-18. | |
|---|---|---|---|
| 38 | BBPOS sent emails to third parties with documents it later described as trade secrets. | 38(b). BBPOS understood Rotsaert to be a corporate representative for ROAM at the time BBPOS disclosed its trade secrets and other confidential information to him and/or others, at his specific direction. Doc. No. 188 at 13-14, ¶37 (referencing Rotsaert's appointment to ROAM as its VP of mPOS Product Management, beginning in 2012, while, concurrently, assuming the position as Head of Product Management and R&D for Ingenico's global Mobility Payment Business Line no later than mid-2012 and citing Ex. H (8/1/2012 Email), Doc. No. 188-8 at 57; Ex. B (Rotsaert Tr.), Doc. No. 188-2 at 2-3. *See also* Ex. 1 (Lo Dec.) at ¶17. | The purported Declaration of Ben Lo is inappropriate for consideration at the summary judgment stage because it constitutes inadmissible hearsay and presents self-serving statements that contradict Lo's prior Rule 30(b)(6) testimony. *See* General Reply *supra* Section I.<br><br>Plaintiffs' presentation of already-proffered exhibits and purported facts in response to Paragraph 38 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to reiterate the contents of already-submitted materials and re-brief Plaintiffs' arguments.  *See* General Reply *supra* Section III. |
| 38 | BBPOS sent emails to third parties with documents it later described as trade secrets. | 38(c). BBPOS made certain disclosures of its Confidential Information under the BBPOS-ROAM Licensing Agreement at the request of ROAM, for the ostensible benefit of ROAM and / or BBPOS, or otherwise in furtherance of purposes and intents of the agreement, including to affiliated Ingenico parties, from time to time, with the understanding or belief that such disclosures would be subject to the confidentiality obligations pursuant to §§6.1 and / or §6.3. Ex. 2 (Lo II Tr.) at 142:5-25 – 144:1 (explaining that, if requested by ROAM, "6.3 of the agreement, that for information that we send to ROAM, that ROAM | The purported Declaration of Ben Lo is inappropriate for consideration at the summary judgment stage because it constitutes inadmissible hearsay and presents self-serving statements that contradict Lo's prior Rule 30(b)(6) testimony. *See* General Reply *supra* Section I.<br><br>Plaintiffs' presentation of cited portions of BBPOS's testimony in response to Paragraph 38 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to proffer additional evidence and re-brief |

| | | will take care, will treat this document as confidential document."). *See also* Ex. 1 (Lo Dec.) at ¶¶17-18. | Plaintiffs' arguments. *See* General Reply *supra* Section III. |
|---|---|---|---|
| 39 | On February 28, 2012, BBPOS emailed a document listed as "swiper API android guy.doc" that contains information BBPOS considers trade secrets. Ex. 2 (BBPOS 30(b)(6) Dep.) at 155:9-25. | The BBPOS-ROAM Licensing Agreement is a written document that speaks for itself; however, a genuine issue of material fact exists as to whether BBPOS was aware of corporate affiliations of each of the recipients of such emails (i.e., ROAM, Ingenico, or both) and whether, irrespective thereof, the disclosures were made at the direction of ROAM or otherwise covered by the confidentiality obligations set forth in the agreement, including under §6.3, or otherwise. *See* above Genuine Disputed Material Facts at ¶¶38(a) – (c). | Plaintiffs' conclusory response to Paragraph 39 presents argument, as opposed to evidence of a purported dispute of material fact. *See* General Reply *supra* Section IV. |
| 39 | On February 28, 2012, BBPOS emailed a document listed as "swiper API android guy.doc" that contains information BBPOS considers trade secrets. | 39(a). Lo's referenced corporate designee testimony does not admit that BBPOS knowingly sent trade secret information to third parties; to the contrary, when asked why BBPOS was sending trade secrets to Rotsaert in an email that copied at least one Ingenico engineer, Lo testified: "I don't remember. But like when ROAM asked me to send some data to them, they must be -- have some reason. . .". Ex. 2 (Lo II Tr.) at 155:9-25 – 156:1-2). *See also* Ex. 1 (Lo Dec.) at ¶¶17-18. | The purported Declaration of Ben Lo is inappropriate for consideration at the summary judgment stage because it constitutes inadmissible hearsay and presents self-serving statements that contradict Lo's prior Rule 30(b)(6) testimony. *See* General Reply *supra* Section I.<br><br>Plaintiffs' introduction of portions of BBPOS's 30(b)(6) testimony in response to Paragraph 39 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to proffer new evidence and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |
| 40 | On July 17, 2012, BBPOS sent an email with the PayPal G4X schematic attached, which BBPOS now considers a trade secret. *Id.* at 153:19-154:16. | The BBPOS-ROAM Licensing Agreement is a written document that speaks for itself; however, a genuine issue of material fact exists as to whether BBPOS was aware of | Plaintiffs' conclusory response to Paragraph 40 presents argument, as opposed to evidence of a purported dispute |

| | | corporate affiliations of each of the recipients of such emails (i.e., ROAM, Ingenico, or both) and whether, irrespective thereof, the disclosures were made at the direction of ROAM or otherwise covered by the confidentiality obligations set forth in the agreement, including under §6.3, or otherwise. *See* above Genuine Disputed Material Facts at ¶¶38(a) – (c), 39(a). | of material fact. *See* General Reply *supra* Section IV. |
|---|---|---|---|
| 40 | On July 17, 2012, BBPOS sent an email with the PayPal G4X schematic attached, which BBPOS now considers a trade secret. | 40(a). This statement refers to one of the same emails addressed at above Genuine Disputed Material Fact at ¶38(a). Again, Lo's referenced corporate designee testimony does not admit that BBPOS knowingly sent trade secret information to third parties; to the contrary, Lo, in fact, denied doing so, when he was asked why trade secret information was shared via email with a third party, stating: "This is not a third party. Christopher [Rotsaert] is a ROAM people. So they may want to -- I sent to ROAM, so they may want to review it." Ex. 2 (Lo II Tr.) at 153:9-25 – 154:1-22. *See also* Ex. 1 (Lo Dec.) at ¶¶17-18. | The purported Declaration of Ben Lo is inappropriate for consideration at the summary judgment stage because it constitutes inadmissible hearsay and presents self-serving statements that contradict Lo's prior Rule 30(b)(6) testimony. *See* General Reply *supra* Section I.<br><br>Plaintiffs' introduction of portions of BBPOS's 30(b)(6) testimony in response to Paragraph 40 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to proffer new evidence and re-brief Plaintiffs' arguments.  *See* General Reply *supra* Section III. |
| 41 | BBPOS did not mark the schematics it emailed as "Confidential."  *Id.* at 145:14-15. | The BBPOS-ROAM Licensing Agreement is a written document that speaks for itself; however, a genuine issue of material fact exists as to the scope of the confidentiality obligations and protections set forth under the agreement. *See* above Genuine Disputed Material Facts at ¶¶20(a) – (c). | Plaintiffs' conclusory response to Paragraph 41 presents argument, as opposed to evidence of a purported dispute of material fact. *See* General Reply *supra* Section IV. |
| 41 | BBPOS did not mark the schematics it emailed as "Confidential." | 41(a). Lo's referenced corporate designee testimony does not confirm or acknowledge any obligation to specifically mark information "Confidential" in order for it to | Plaintiffs' introduction of portions of BBPOS's 30(b)(6) testimony in response to Paragraph 41 fails to establish a dispute of material fact, and |

| | | nonetheless be protected under the BBPOS-ROAM Licensing Agreement; to the contrary, Lo, testified that information shared with a customer, and particularly, "engineering, schematic issues," would qualify as confidential. Ex. 2 (Lo II Tr.) at 145:1-12. | serves only as a thinly-veiled attempt to proffer new evidence and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |
|---|---|---|---|
| 42 | BBPOS also sent an email on another occasion containing trade secrets pertaining to the DUKPT method. *Id.* at 205:9-206:7. | The BBPOS-ROAM Licensing Agreement is a written document that speaks for itself; however, a genuine issue of material fact exists as to whether BBPOS was aware of corporate affiliations of each of the recipients of such emails (i.e., ROAM, Ingenico, or both) and whether, irrespective thereof, the disclosures were made at the direction of ROAM or otherwise covered by the confidentiality obligations set forth in the agreement, including under §6.3, or otherwise. *See* above Genuine Disputed Material Facts at ¶¶38(a) – (c), 39(a), 40(a). | Plaintiffs' conclusory response to Paragraph 42 presents argument, as opposed to evidence of a purported dispute of material fact. *See* General Reply *supra* Section IV. |
| 42 | BBPOS also sent an email on another occasion containing trade secrets pertaining to the DUKPT method. | 42(a). This statement also refers to one of the same emails addressed at above Genuine Disputed Material Fact at ¶38(a). Again, Lo's referenced corporate designee testimony does not admit that BBPOS knowingly shared trade secret information regarding its unique implementation of DUKPT key management with an Ingenico engineer without any confidentiality protections in place; to the contrary, Lo, in fact, denied that the information was shared for the benefit of a third party at all, stating: "This is a trade secret, and this secret we sent to ROAM Data. And also suggested to protected by the 6.3. . . of the ROAM agreement."). Ex. 2 (Lo II Tr.) at 205:9-25 – 206:1-11. *See also* Ex. 1 (Lo Dec.) at ¶¶17-18. | The purported Declaration of Ben Lo is inappropriate for consideration at the summary judgment stage because it constitutes inadmissible hearsay and presents self-serving statements that contradict Lo's prior Rule 30(b)(6) testimony. *See* General Reply *supra* Section I.<br><br>Plaintiffs' presentation of cited portions of BBPOS's testimony in response to Paragraph 42 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to proffer additional evidence and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |

| 45 | Ben Lo, as the Rule 30(b)(6) designee of BBPOS, testified that he was "not sure" if the files containing BBPOS's trade secrets were password protected. *Id.* at 139:13-140:14. | A genuine issue of material fact exists with respect to whether BBPOS undertook sufficiently reasonable measures to maintain the secrecy of its trade secrets at issue in the case. | Plaintiffs' conclusory response to Paragraph 45 presents argument, as opposed to evidence of a purported dispute of material fact. *See* General Reply *supra* Section IV. |
|---|---|---|---|
| 45 | Ben Lo, as the Rule 30(b)(6) designee of BBPOS, testified that he was "not sure" if the files containing BBPOS's trade secrets were password protected. | 45(a). In reference to *one particular set of schematics for an audio jack* (i.e., Deposition Exhibit 78), when asked "how is this set of schematics kept confidential at BBPOS," Lo testified that he was unsure whether BBPOS's electronic file for the same was password protected, but noted that it is file that normally is not necessary to send to anyone. Ex. 2 (Lo II Tr.) at 138:14-25 – 140:1-14. | Plaintiffs' introduction of portions of BBPOS's 30(b)(6) testimony in response to Paragraph 45 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to proffer new evidence and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |
| 45 | Ben Lo, as the Rule 30(b)(6) designee of BBPOS, testified that he was "not sure" if the files containing BBPOS's trade secrets were password protected. | 45(b). BBPOS maintains its electronic files on a local server. To access the local server, a recognized username and password successful login is required. Ex. 1 (Lo Dec.) at ¶20. | The purported Declaration of Ben Lo is inappropriate for consideration at the summary judgment stage because it constitutes inadmissible hearsay and presents self-serving statements that contradict Lo's prior Rule 30(b)(6) testimony. *See* General Reply *supra* Section I. |
| 45 | Ben Lo, as the Rule 30(b)(6) designee of BBPOS, testified that he was "not sure" if the files containing BBPOS's trade secrets were password protected. | 45(c). BBPOS's electronic files containing trade secrets are stored on computers, that are password protected which can only be accessed by a certain engineer, who acts as both custodian / gatekeeper, subject to standing instructions against any unauthorized distribution thereof. Ex. 2 (Lo II Tr.) at 139:13-25 – 140:1-12; Ex. 1 (Lo Dec.) at ¶19. | The purported Declaration of Ben Lo is inappropriate for consideration at the summary judgment stage because it constitutes inadmissible hearsay and presents self-serving statements that contradict Lo's prior Rule 30(b)(6) testimony. *See* General Reply *supra* Section I. |
| 45 | Ben Lo, as the Rule 30(b)(6) designee of BBPOS, testified that he was "not sure" if the files containing BBPOS's trade secrets were password protected. | 45(d). With the exception of possibly Jimmy Tang, or some "very early senior staff," Lo testified that he is the only person at BBPOS who has the authority to authorize a third party disclosure of any of BBPOS's engineering files, all of which are considered to be confidential as a matter of course. Ex. 2 (Lo II Tr.) at | The purported Declaration of Ben Lo is inappropriate for consideration at the summary judgment stage because it constitutes inadmissible hearsay and presents self-serving statements that contradict Lo's prior Rule 30(b)(6) testimony. |

| | | 141:2-25 – 142:1-4. *See also* Ex. 1 (Lo Dec.) at ¶19. | *See* General Reply *supra* Section I.<br><br>Plaintiffs' introduction of portions of BBPOS's 30(b)(6) testimony in response to Paragraph 45 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to proffer new evidence and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |
|---|---|---|---|
| 45 | Ben Lo, as the Rule 30(b)(6) designee of BBPOS, testified that he was "not sure" if the files containing BBPOS's trade secrets were password protected. | 45(e). With respect to the five trade secrets at issue in this case, Lo authorized the disclosures to made to ROAM, as requested, under the protections of the BBPOS-ROAM Licensing Agreement. Lo is the only person at BBPOS who is authorized to disclose its trade secrets. Ex. 1 (Lo II Tr.) at 142:5-19. *See also* Ex. 1 (Lo Dec.) at ¶¶17-19, 22-23. | The purported Declaration of Ben Lo is inappropriate for consideration at the summary judgment stage because it constitutes inadmissible hearsay and presents self-serving statements that contradict Lo's prior Rule 30(b)(6) testimony. *See* General Reply *supra* Section I.<br><br>Plaintiffs' introduction of portions of BBPOS's 30(b)(6) testimony in response to Paragraph 45 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to proffer new evidence and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |
| 46 | The only protection BBPOS had in place was its practice of having the employees who had unfettered access to the trade secrets ask for permission to disburse the information containing trade secrets. *Id.* at 141:4-18. | A genuine issue of material fact exists with respect to whether BBPOS undertook sufficiently reasonable measures to maintain the secrecy of its trade secrets at issue in the case. *See* above Genuine Disputed Material Facts at ¶¶45(a) – (e). | Plaintiffs' conclusory response to Paragraph 46 presents argument, as opposed to evidence of a purported dispute of material fact. *See* General Reply *supra* Section IV. |
| 46 | The only protection BBPOS had in place was its practice of having the employees who had unfettered access to the trade | 46(a). No employee of BBPOS had "unfettered access" to the trade secrets at issue in the case, and further sign nondisclosure | The purported Declaration of Ben Lo is inappropriate for consideration at the summary judgment stage because it |

| | | | |
|---|---|---|---|
| | secrets ask for permission to disburse the information containing trade secrets. | agreements from disclosing information they may have access to; moreover, the disclosures were made at the direction of Lo, not as a result of any employee seeking permission to do so. Ex. 2 (Lo II Tr.) at 142:5-19; Ex. 1 (Lo Dec.) at ¶¶24-26. | constitutes inadmissible hearsay and presents self-serving statements that contradict Lo's prior Rule 30(b)(6) testimony. *See* General Reply *supra* Section I. <br><br> Plaintiffs' introduction of portions of BBPOS's 30(b)(6) testimony in response to Paragraph 46 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to proffer new evidence and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |
| 47 | Mr. Lo was not even certain who had this authority. BBPOS 30(b)(6) Dep. at 141:4-18. 141:23-142:4. | A genuine issue of material fact exists with respect to whether BBPOS undertook sufficiently reasonable measures to maintain the secrecy of its trade secrets at issue in the case. *See* above Genuine Disputed Material Facts at ¶¶45(a) – (e), ¶46(a). | Plaintiffs' conclusory response to Paragraph 47 presents argument, as opposed to evidence of a purported dispute of material fact. *See* General Reply *supra* Section IV. |
| 47 | Mr. Lo was not even certain who had this authority. | 47(a). Lo's referenced corporate designee testimony does not address, with particularity, the disclosure of trade secrets; rather, Lo testified that, with the exception of possibly Jimmy Tang, or some "very early senior staff," no one other than himself would have the authority to disclose the company's engineering files, which are considered to be confidential as a matter of course. Ex. 2 (Lo II Tr.) at 141:225 – 142:1-4; Ex. 1 (Lo Dec.) at ¶¶19, 21-22. | The purported Declaration of Ben Lo is inappropriate for consideration at the summary judgment stage because it constitutes inadmissible hearsay and presents self-serving statements that contradict Lo's prior Rule 30(b)(6) testimony. *See* General Reply *supra* Section I. <br><br> Plaintiffs' presentation of cited portions of BBPOS's testimony in response to Paragraph 47 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to proffer additional evidence and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |

| | | | |
|---|---|---|---|
| 48 | When asked if there were other people besides Mr. Lo who could authorize the disclosure of confidential information, Mr. Lo replied, "maybe." BBPOS 30(b)(6) Dep. at 141:4-18. 141:23-142:1. | A genuine issue of material fact exists with respect to whether BBPOS undertook sufficiently reasonable measures to maintain the secrecy of its trade secrets at issue in the case. *See* above Genuine Disputed Material Facts at ¶¶45(a) – (e), 46(a), 47(a). | Plaintiffs' conclusory response to Paragraph 48 presents argument, as opposed to evidence of a purported dispute of material fact.  *See* General Reply *supra* Section IV. |
| 49 | On April 30, 2013, ROAM issued a press release announcing the RP350X.  *See* April 30, 2013 Press Release (attached as **Exhibit 5**). | A genuine issue of material fact exists with respect to the timeliness of Plaintiffs' claims asserted in this lawsuit under applicable statutory and controlling federal and state legal jurisprudence. | Plaintiffs' conclusory response to Paragraph 49 presents argument, as opposed to evidence of a purported dispute of material fact.  *See* General Reply *supra* Section IV. |
| 49 | On April 30, 2013, ROAM issued a press release announcing the RP350X. | 49(a). Sometime in 2012, Lo testified that he received a call from Graylin during which he expressed a concern that Rotsaert may have improperly shared BBPOS's IP with Ingenico. *See* Deposition Transcript of Ben Lo dated December 8, 2021 ("Lo I Tr.") at 111:1-25 – 115:1-3; 176:1-12, a true and correct excerpted copy of which, is attached as Exhibit 4. *See also* Deposition of William Graylin dated August 31, 2021 ("Graylin Tr.") at 100:11-24 – 102:1; 145:14-21, a true and correct excerpted copy of which is attached as Exhibit 5. | Plaintiffs' introduction of portions of Lo and Graylin's testimony in response to Paragraph 49 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to proffer new evidence and re-brief Plaintiffs' arguments.  *See* General Reply *supra* Section III. |
| 49 | On April 30, 2013, ROAM issued a press release announcing the RP350X. | 49(b). In an internal BBPOS email dated October 11, 2012, Lo states, in relevant part: ROAM's new product manager called RAM is going to visit us on Tuesday. Please don't disclose too much technical information to him. After last visit, Christopher and the two Ingenico R&D guys must collect some info back to Ingenico. Will told me that Ingenico passes some info to Landi for making terminal to compete with us. We should not trust any hardware guy from Ingenico or ROAM anymore. *See* Email dated October 11, 2012 | Plaintiffs' introduction of an immaterial email correspondence in response to Paragraph 49 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to proffer new evidence and re-brief Plaintiffs' arguments.  *See* General Reply *supra* Section III. |

| | | [BBPOS_0658887] ("10/11/2012 Email") (Lo 30b Exhibit 75), a true and correct copy of which is attached as Exhibit 6. | |
|---|---|---|---|
| 49 | On April 30, 2013, ROAM issued a press release announcing the RP350X. | 49(c). During his deposition, Lo was questioned about this 2012 phone call and testified that Graylin "just told me that . . . Ingenico steal our IP." Ex. 4 (Lo I Tr.) at 111:10-11. | Plaintiffs' introduction of portions of Lo's testimony in response to Paragraph 49 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to proffer new evidence and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |
| 49 | On April 30, 2013, ROAM issued a press release announcing the RP350X. | 49(d). Lo testified that he found Graylin's 2012 statements not credible and, in any event, incapable of substantiation:<br><br>(1) Graylin neither identified which Ingenico entity (or entities) stole BBPOS's IP nor what IP had been stolen, stating that "[t]here was no detail . . . I ask him, but he didn't give me any detail" (Ex. 4 (Lo I Tr.) at 111:10-25 – 112:1-3);<br><br>(2) During this call, Graylin "deliver[ed] to me message" – one that "he was fired by ROAM Data[,]" and was "quite angry", and, secondly, that one of the reasons why he had been fired was because ROAM stole BBPOS's IP Lo Tr. at 112:17-22; 114:7-8 – specifically, telling Lo that "he ha[d] different opinion with some of the - - with the owner of the - - with the top member of the ROAM Data . . . about whether to transfer IP to Ingenico" (Ex. 4 (Lo I Tr.) at 112:25 – 113:1-21);<br><br>(3) At the time, Lo "did nothing" and "was quite skeptical about that [i.e., Graylin's allegation that Ingenico stole BBPOS's IP]" (Ex. 4 (Lo I Tr.) at 112:19-23); | Plaintiffs' introduction of portions of Lo's testimony in response to Paragraph 49 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to proffer new evidence and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |

| | | (4) Lo added "I don't believe him" (Ex. 4 (Lo I Tr.) at 113:24-25; 114:21-23) and then clarified that he believed that Graylin had been fired (in fact, he observed that to be objectively true as his point of contact for ROAM contemporaneously changed), (Ex. 4 (Lo I Tr.) at 114:12; 114:10-20), but that, given how angry Graylin was and the fact that ROAM was one of BBPOS's biggest customers, "it seemed to me that [Graylin] tried to arrange to destroy everything[,] [s]o I don't believe him" (Ex. 4 (Lo I Tr.) at 114:3-8; 114:21-22; 176:1-7); and<br><br>(5) Lo "didn't do anything to verify" Graylin's claims at the time, further confirming that he did not "have any reason to think that information was actually making its way to Ingenico." Ex. 4 (Lo I Tr.) at 114:24-25 – 115:1-3. | |
|---|---|---|---|
| **49** | On April 30, 2013, ROAM issued a press release announcing the RP350X. | 49(e). Graylin testified that his "personal complaint and all of the rest of the minority shareholders' complaint . . . somewhat is a separate case from what [Lo] has to deal with as a supplier . . . for ROAM and for Ingenico." Ex. 5 (Graylin Tr.) at 146:7-12. | Plaintiffs' introduction of portions of Graylin's testimony in response to Paragraph 49 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to proffer new evidence and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |
| **49** | On April 30, 2013, ROAM issued a press release announcing the RP350X. | 49(f). Graylin was unable to specifically recall either the substance of this conversation with Lo or Lo's precise reaction to his suspicions, other than to say that "we were just lamenting the . . . challenges that I went through being terminated by . . . Ingenico and, of course, [Lo / BBPOS] still had a relationship with Ingenico that . . . he needs to and wants to maximize" as well as "to the extent that [Lo] has a contract with | Plaintiffs' introduction of portions of Graylin's testimony in response to Paragraph 49 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to proffer new evidence and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |

| | | Ingenico, he needs to carry that forward." Ex. 5 (Graylin Tr.) at 145:22-24 – 146:1-7; 147:1-11. | |
|---|---|---|---|
| **49** | On April 30, 2013, ROAM issued a press release announcing the RP350X. | 49(g). Graylin then confirmed that "the substance of the conversation included [Lo's] reaction that he has an ongoing relationship with Ingenico," stating that, like himself in his continuing capacity as a minority shareholder of ROAM, "[c]learly, [Lo] has . . . an obligation as well as an incentive to make sure that that relationship [with ROAM / Ingenico] works . . ." Ex. 5 (Graylin Tr.) at 147:12-22. | Plaintiffs' introduction of portions of Graylin's testimony in response to Paragraph 49 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to proffer new evidence and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |
| **49** | On April 30, 2013, ROAM issued a press release announcing the RP350X. | 49(h). Graylin also freely admitted that, at the time of his 2012 discussion with Lo, he had no actual knowledge (and to this day still has no actual knowledge or evidence) as to whether any of BBPOS's IP was, in fact, improperly used by Ingenico in the development and sale of the accused products at issue after he left his position with ROAM that same year. Ex. 5 (Graylin Tr.) at 171:7-24 – 172:1-19. | Plaintiffs' introduction of portions of Graylin's testimony in response to Paragraph 49 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to proffer new evidence and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |
| **49** | On April 30, 2013, ROAM issued a press release announcing the RP350X. | 49(i) Graylin was merely aware of the unauthorized disclosure of BBPOS's IP to Ingenico and its recently acquired Chinese POS manufacturer, Fujian Landi Commercial Equipment Co Ltd. ("Landi") via Rotsaert, and certain unconfirmed reports within the company that Ingenico "planned on building a competing EMV reader." Ex. 5 (Graylin Tr.) at 35:5-24 – 37:1-5; 38:1-24 – 39:1-7; 48:2-24 – 51:1-10 (referring Doc. No. 188-9 at 1, Ex. I (9/17/2012 Thread) (an internal email thread dated September 17, 2012 among Graylin and Rotsaert, wherein Mr. Graylin sets forth certain concerns that "[Rotsaert] was going to transfer information over to | Plaintiffs' presentation of cited portions of Graylin's testimony in response to Paragraph 49 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to proffer additional evidence and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |

| | | Ingenico" to "create a competing product" and regarding "him transferring . . . data to Ingenico [that] contained some parts of IP that . . . not just belonged to us, but also belonged to someone else" (i.e., BBPOS)). | |
|---|---|---|---|
| 49 | On April 30, 2013, ROAM issued a press release announcing the RP350X. | 49(j). Graylin testified that he was concerned "that [competing products] would take away [ROAM's] revenue source" and, when asked if this could "also negatively impact BBPOS[,]" he commented "[w]ell, we pay a royalty to BBPOS. So as . . . a result, that also can impact our partners." Ex. 5 (Graylin Tr.) at at 52:1-12. | Plaintiffs' introduction of portions of Graylin's testimony in response to Paragraph 49 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to proffer new evidence and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |
| 49 | On April 30, 2013, ROAM issued a press release announcing the RP350X. | 49(k). Graylin testified that he disagreed with Rotsaert's unauthorized decision to transfer BBPOS's IP here as being "certainly" harmful to ROAM, potentially harmful to BBPOS, and indicative of a lack of "respect for [BBPOS's] intellectual property." Ex. 5 (Graylin Tr.) at 52:19-24 – 54:1-9. | Plaintiffs' introduction of portions of Graylin's testimony in response to Paragraph 49 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to proffer new evidence and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |
| 49 | On April 30, 2013, ROAM issued a press release announcing the RP350X. | 49(l). During the 30(b)(6) deposition of Lo for BBPOS, Lo was asked about a one-page product preview sheet for Ingenico's RP350x mobile card device that had been received by him in January 2013. Ex. 2 (Lo II Tr.) at 126:3-25 – 127:1-24. *See also* January 16, 2013 specification sheet [BBPOS_15859552] ("January 2013 Spec. Sheet"), a true and correct copy of which is attached as Exhibit 7. | Plaintiffs' introduction of portions of BBPOS's 30(b)(6) testimony and an immaterial "specification sheet" in response to Paragraph 49 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to proffer new evidence and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |
| 49 | On April 30, 2013, ROAM issued a press release announcing the RP350X. | 49(m). Lo testified that he did not recall seeing the document, but, in any event, considered it to be aspirational (or a mockup flyer), having never seen the subject product in reality at that time, but nonetheless prompting him to reasonably follow up with Ken Paull ("Paull") of ROAM in an effort to sure up BBPOS preferred vendor status with | Plaintiffs' introduction of portions of BBPOS's 30(b)(6) testimony in response to Paragraph 49 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to proffer new evidence and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |

| | | ROAM for the manufacturing of mPOS products. Ex. 2 (Lo II Tr.) at 127:20-25 – 128:1-25. | |
|---|---|---|---|
| 49 | On April 30, 2013, ROAM issued a press release announcing the RP350X. | 49(n). During Lo's 30(b)(6) deposition, he was also shown a previously unproduced email thread dated February 12, 2013 [IngenicoInc_0162912-919] ("2/12/2013 Thread") among Paull of ROAM and Lo. Lo 30b6 Tr. at 104:5-114:1. *See also* 2/12/2013 Thread, a true and correct copy of which is attached as Exhibit 8. | Plaintiffs' introduction of portions of BBPOS's 30(b)(6) testimony and an immaterial email thread in response to Paragraph 49 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to proffer new evidence and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |
| 49 | On April 30, 2013, ROAM issued a press release announcing the RP350X. | 49(o). In this email thread, on January 19, 2013, Mr. Paull assures BBPOS that any fears of IP theft are unfounded and suggests that their strategic partnership remained on good footing, writing:<br><br>I heard from Bill that you were upset about hearing that there is an Ingenico EMV prototype that we are showing. I'm confused as you and I spoke about this, our need to move to a dual supply chain as we move to handle demand from around the world and even the possibility of ROAM licensing BBPOS software for potentially a unified SDK/API that would support both product lines. **I can assure you that there is no commonality in terms of architecture, firmware or power with the Ingenico device as it is based off of an existing Landi product.**<br><br>**We are also anxious to start showing your product ASAP in the market** and that's why I asked our team to start getting all the product information, timelines, costs, etc. from you so that we can begin proposing it. We have a few very large customers and prospects who | Plaintiffs' introduction of an immaterial email thread in response to Paragraph 49 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to proffer new evidence and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |

| | | are demanding a dual supply chain and we want to try to capture 100% of their business instead of only a split.<br><br>Ex. 8 (2/12/2013 Thread) at IngenicoInc_0162912 (emphasis added). | |
|---|---|---|---|
| 49 | On April 30, 2013, ROAM issued a press release announcing the RP350X. | 49(p). Lo testified that, at the time of his inquiries, he had not seen any alleged EMV prototype, and then emphasized, "I didn't see the actual, actual device. I just heard that they are -- they are coming with a competitive -- Ingenico coming with a competitive product, but I don't see the product yet." Ex. 2 (Lo II Tr.) at 105:17-25. | Plaintiffs' introduction of portions of BBPOS's 30(b)(6) testimony in response to Paragraph 49 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to proffer new evidence and re-brief Plaintiffs' arguments.  *See* General Reply *supra* Section III. |
| 49 | On April 30, 2013, ROAM issued a press release announcing the RP350X. | 49(q). Lo testified that he was "upset" at the time because this information was at odds with BBPOS's impression that it was partnering with ROAM to sell BBPOS's Chipper EMV device to PayPal and others, more generally, in bringing new mPOS devices to a rapidly emerging market sector. Lo 30b6 Tr. at 109:1-25 – 112:1-15. He testified that prototype devices, such as the rumored Ingenico EMV device discussed herein, are not generally shown in trade shows; rather, "if it is sold at a trade show, the product is ready." Ex. 2 (Lo II Tr.) at 108:1-24. | Plaintiffs' introduction of portions of BBPOS's 30(b)(6) testimony in response to Paragraph 49 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to proffer new evidence and re-brief Plaintiffs' arguments.  *See* General Reply *supra* Section III. |
| 49 | On April 30, 2013, ROAM issued a press release announcing the RP350X. | 49(r). Lo freely acknowledged, however, that Ingenico is entitled to compete with BBPOS on mPOS technology, and that there is "nothing inherently wrong with Ingenico" attempting to do so, Ex. 2 (Lo II Tr.) at 184:10-19 – assuming that, as Paull had (falsely) assured BBPOS was the case, BBPOS's trade secrets were not being improperly used in the development of Ingenico's accused products – and, instead, went about | Plaintiffs' introduction of portions of BBPOS's 30(b)(6) testimony in response to Paragraph 49 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to proffer new evidence and re-brief Plaintiffs' arguments.  *See* General Reply *supra* Section III. |

| | | trying to sure up BBPOS's perceived strategic partnership with ROAM in the hopes that Ingenico would ultimately abandon its competitive development / manufacturing activities upon demonstration of the superiority of BBPOS's Chipper to any comparable product in the marketplace due to BBPOS's greater expertise and track record of success in the mPOS space. Ex. 2 (Lo II Tr.) at 116:610 ("Now, I try my best to tell Ken Paull and Bill that our product is the best and it is not easy to come up with audio jack card reader. We don't need second source. We have enough capability to manufacture enough product for them."). | |
|---|---|---|---|
| 49 | On April 30, 2013, ROAM issued a press release announcing the RP350X. | 49(s). During his deposition, Lo was shown an Ingenico press release dated April 30, 2013 (as referenced at the outset of this section) purporting to announce an upcoming release of its RP350x product that had been produced by Ingenico during discovery. Exhibit 5 to Def. Facts, Doc. No. 193-5 (Press Release; Ex. 2 (Lo II Tr.) at 123:23-25 – 128:1-25. Lo testified that he had not seen the document before. Ex. 2 (Lo II Tr.) at 124:9-10 ("Q. Have you seen this before? A. No."). | Plaintiffs' introduction of portions of BBPOS's 30(b)(6) testimony in response to Paragraph 49 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to proffer new evidence and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |
| 49 | On April 30, 2013, ROAM issued a press release announcing the RP350X. | 49(t). When asked whether BBPOS "pa[id] attention to the competitive environment for mPOS devices" at that time, Lo testified that BBPOS did not because it had "one major customer, called ROAM" and that BBPOS "trust[ed] [its] customer." Lo 30b6 Tr. at 124:21-25 – 125:1-7. The press release, upon defense counsel's questioning, further did not "refresh" Lo's "recollection as to when the RP350x was actually a competitive | Plaintiffs' introduction of portions of BBPOS's 30(b)(6) testimony in response to Paragraph 49 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to proffer new evidence and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |

| | | product on the market." Ex. 2 (Lo II Tr.) at 125:8-11. | |
|---|---|---|---|
| 49 | On April 30, 2013, ROAM issued a press release announcing the RP350X. | 49(u). It was not, in fact, "a competitive product on the market" at that time. The following table sets forth, for each accused product at issue in the case, its first date of sale in market based on internal sales data produced in this lawsuit:<br><br>_See_ PDF Conversion of Native Excel (Book I) VictorYoung-9 (Sales Data) [IngenicoInc_0126787] ("First Sales Data"), a true and correct copy of which is attached as Exhibit 9. | Plaintiffs' introduction of an immaterial sales data spreadsheet in response to Paragraph 49 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to proffer new evidence and re-brief Plaintiffs' arguments. _See_ General Reply _supra_ Section III. |

| ACCUSED PRODUCT | FIRST DATE OF RECORDED SALE | REFERENCE [IngenicoInc_0126787] |
|---|---|---|
| RP757c | February 4, | Line 4 |
| RP350x | July 9, 2014 | Line 5 |
| RP755x | September 5, | Line 8 |
| RP170c | October 15, | Line 64 |
| RP150 | January 29, | Line 104 |
| RP170 | March 4, | Line 124 |
| RP457c | March 15, | Line 129 |
| RP457c-BT | June 15, 2017 | Line 580 |

| | | | |
|---|---|---|---|
| 49 | On April 30, 2013, ROAM issued a press release announcing the RP350X. | 49(v). Lo testified that he did not see "the actual [Ingenico / Landi RP350x] product" until October 2014 in exhibition. Ex. 2 (Lo II Tr.) at 125:12-22; 106:1-25 – 107:1-25. | Plaintiffs' introduction of portions of BBPOS's 30(b)(6) testimony in response to Paragraph 49 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to proffer new evidence and re-brief Plaintiffs' arguments. _See_ General Reply _supra_ Section III. |
| 49 | On April 30, 2013, ROAM issued a press release announcing the RP350X. | 49(w). Lo testified that the first time that he began to "worry" that Defendants had, in fact, stolen BBPOS's trade secrets was not until the mPOS Cartes trade show held in Paris, France during the fourth | Plaintiffs' introduction of portions of BBPOS's 30(b)(6) testimony in response to Paragraph 49 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to proffer new evidence |

| | | quarter of 2014. Ex. 2 (Lo II Tr.) at 125:12-22; 106:1-25 – 107:1-25. | and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |
|---|---|---|---|
| 49 | On April 30, 2013, ROAM issued a press release announcing the RP350X. | 49(x). At the trade show, Mr. Lo "saw a device which is similar to Chipper" for the first time "in an Ingenico booth[.]" Ex. 4 (Lo I Tr.) at 112:8-10 ("We saw the defendant has a similar product in a trade show in 2014. Then remind me what Will Graylin told me before."); Ex. 4 (Lo I Tr.) at 176:8-25 – 186:16; Ex. 2 (Lo II Tr.) at 107:4-25. Although he did not observe a demonstration or physically handle the device, the similarities, visually, included EMV and magstripe capabilities, audio jack interface, a similar look in size and shape (i.e., form factor requested by PayPal), and a slot into which you would insert a card for EMV transactions – all of which were present in BBPOS's Chipper device. Ex. 4 (Lo I Tr.) at 177:13-25 – 178:1-17. | Plaintiffs' introduction of portions of Lo's and BBPOS's 30(b)(6) testimony in response to Paragraph 49 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to proffer new evidence and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |
| 49 | On April 30, 2013, ROAM issued a press release announcing the RP350X. | 49(y). Lo attempted neither to use this device nor discuss the same with ROAM / Ingenico during the trade show, now that it was clear to him that ROAM / Ingenico was now a direct competitor of BBPOS, but, instead, asked AC's Michael Kron (as a mPOS device distributor) to attempt to investigate the product further. Ex. 4 (Lo I Tr.) at 178:18-25 – 183:1-10. | Plaintiffs' introduction of portions of Lo's testimony in response to Paragraph 49 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to proffer new evidence and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |
| 49 | On April 30, 2013, ROAM issued a press release announcing the RP350X. | 49(z). Lo repeated again that he was now "worried" that ROAM would be forced to buy the device from Ingenico, and it triggered his memory of what Will Graylin had told him back in 2012, but concluding, "what can I do?" Ex. 4 (Lo I Tr.) at 183:11-16 – 184:1-2. | Plaintiffs' introduction of portions of BBPOS's 30(b)(6) testimony in response to Paragraph 49 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to proffer new evidence and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |

| 49 | On April 30, 2013, ROAM issued a press release announcing the RP350X. | 49(aa). When he was asked whether "there [was] anything about the product in particular that made [him] think that it might be built using BBPOS IT," Ex. 4 (Lo I Tr.) at 185:4-6, Lo testified:<br><br>Yes. Because Ingenico is not the type of company who deals mobile POS sales. Ingenico is the biggest transitional POS terminal manufacturer in the world. So they're using transitional POS. And all of a sudden, they have this Chipper like product. So I start to worry, worry. How come Ingenico come up with this type of product? This is not their main business? Ex. 4 (Lo I Tr.) at 185:7-14. | Plaintiffs' introduction of portions of BBPOS's 30(b)(6) testimony in response to Paragraph 49 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to proffer new evidence and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |
| --- | --- | --- | --- |
| 49 | On April 30, 2013, ROAM issued a press release announcing the RP350X. | 49(bb). When asked what he meant by the phrase "all of a sudden," Lo elaborated:<br><br>Well, because ROAM Data kept buying the product from us. Since Will Graylin told me he was no longer with ROAM Data, he was fired by ROAM Data, and then -- you know, he was fired by ROAM Data. I'm still selling product to ROAM Data in 2012, 2013, even 2014. So ROAM Data just keep buying product from us. So when I saw the product in Ingenico booth, that's why I feel that it's weird. That's why I said all of a sudden, Ingenico has an impulse to compete with us. Ex. 4 (Lo I Tr.) at 185:15-25 – 186:1-6. | Plaintiffs' introduction of portions of Lo's testimony in response to Paragraph 49 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to proffer new evidence and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |
| 49 | On April 30, 2013, ROAM issued a press release announcing the RP350X. | 49(cc). Lo was also shown an internal BBPOS email dated December 11, 2015 ("12/11/2015 Thread") [BBPOS_0003629-632], wherein BBPOS's then CEO, Bob Cook ("Cook"), states, in relevant part:<br><br>First we should officially notify them | Plaintiffs' introduction of an immaterial email thread in response to Paragraph 49 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to proffer new evidence and re-brief Plaintiffs' |

| | | that we are not approving to assign the agreement to ING. This does not mean will will (sic) not continue to sell to them just not under the current agreement conditions. ING is a competitor and we need to protect our interests. In a new agreement we should not agree to any exclusivity. Ex. 3 (12/11/2015 Thread). | arguments. *See* General Reply *supra* Section III. |
|---|---|---|---|
| 49 | On April 30, 2013, ROAM issued a press release announcing the RP350X. | 49(dd). When asked to explain his understanding of this statement by Cook, Lo testified:<br><br>I think in 2015 Ingenico acquire ROAM, and as we are doing business with ROAM that means ROAM become Ingenico in 2015 and we are competitor. I think this is what Bob Cook try to say that if our agreement, if there is transfer of ownership to a company with competitive products that we should terminate the exclusivity relationship. I think this is what Bob is trying to say. Ex. 2 (Lo II Tr.) at 177:16-22. | Plaintiffs' introduction of portions of BBPOS's 30(b)(6) testimony in response to Paragraph 49 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to proffer new evidence and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |
| 49 | On April 30, 2013, ROAM issued a press release announcing the RP350X. | 49(ee). Unsure whether the exclusivity was, in fact, terminated in response to Cook's comments, Lo added that this was Cook's "opinion" as BBPOS's "CEO at that period of time." Ex. 2 (Lo II Tr.) at 177:24-25 – 178:1-2. | Plaintiffs' introduction of portions of BBPOS's 30(b)(6) testimony in response to Paragraph 49 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to proffer new evidence and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |
| 49 | On April 30, 2013, ROAM issued a press release announcing the RP350X. | 49(ff). When Lo was asked whether he "ever performed any analysis of the RP350x or any other Ingenico product to determine how, if at all, it utilizes any of the information that [BBPOS] identified as trade secret," Lo testified as follows:<br><br>No. I didn't do that by myself, but I had hired IP expert. They confirm . . . that the Ingenico device is quite | Plaintiffs' introduction of portions of Lo's testimony in response to Paragraph 49 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to proffer new evidence and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |

| | | similar and misuse of our trade secret. Ex. 4 (Lo I Tr.) at 194:20-25 – 195:1-8. | |
|---|---|---|---|
| **51** | Plaintiffs' expert Stephen Scherf agreed that BBPOS "actually sent the [Intellectual Property] that is being asserted as a trade secret in this case to Ingenico." May 12, 2022 Deposition of Stephen Scherf ("Scherf Dep.," attached as **Exhibit 7**) at 111:11-112:19. | To the extent that this factual issue is determined to be "material," a genuine issue of fact exists with respect to this statement. | Plaintiffs' conclusory response to Paragraph 51 presents argument, as opposed to evidence of a purported dispute of material fact. *See* General Reply *supra* Section IV. |
| **51** | Plaintiffs' expert Stephen Scherf agreed that BBPOS "actually sent the [Intellectual Property] that is being asserted as a trade secret in this case to Ingenico." | 51(a). While Mr. Scherf at first agreed that BBPOS had supplied certain of its IP at issue to Ingenico, he quickly corrected his response, mid-sentence, to reflect: "I don't know if he sent it to Ingenico. I know it was sent to ROAM." Exhibit 7 (Scherf Dep. at 112:15-22), Doc. No. 193-7 at 7, to Defendants' Statement of Undisputed Material facts re [191] Motion for Summary Judgment ("Def. Facts"), Doc. No. 193. | |
| **52** | In his report, Defendants' expert Michael Shamos states that BBPOS sent confidential information to Ingenico in an email concerning a joint development workshop between BBPOS and Ingenico and that BBPOS was fully aware of the people copied on the technical emails and raised no objection at the time because the work being conducted was joint. Expert Report of Michael Shamos ("Shamos Report," attached as **Exhibit 8**) at 15. | The content of this "Material Fact" presents inadmissible hearsay, upon which, Defendants may not properly rely for purposes of moving for summary judgment. However, even assuming, for the sake of argument, that it presented competent testimony, a genuine issue of material exists as to whether BBPOS was "fully aware of the people copied on technical emails" and whether BBPOS was sufficiently apprised of the circumstances afoot to competently raise a timely objection. *See* above Genuine Disputed Material Facts at ¶¶38(a) – (c), 39(a), 40(a), 42(a). | Plaintiffs' conclusory response to Paragraph 52 presents argument, as opposed to evidence of a purported dispute of material fact. *See* General Reply *supra* Section IV. |

| 58 | During his deposition as BBPOS's Rule 30(b)(6) designee, Ben Lo failed to identify "Power Management" design as an alleged BBPOS trade secret. | The transcript of this deposition is a written document that speaks for itself. By way of further response, *see* Ex. 2 (Lo II Tr.) at 89:20-25 – 90:1-92:1-16; 94:1-95:1-7; 134:16-25 – 135:1-8 (discussing principles related to BBPOS's trade secret concerning power management). | Plaintiffs' introduction of portions of BBPOS's 30(b)(6) testimony in response to Paragraph 58 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to proffer new evidence and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |
|---|---|---|---|
| 64 | Besides the fact that an AnywhereCommerce/Ingenico deal did not materialize, there is no evidence to support the allegation that Ingenico's offers regarding a potential business deal with AnywhereCommerce were a sham.  Nov. 30, 2021 Deposition of Michael Kron ("Kron Dep.," attached as **Exhibit 12**) at 139:14-22. | A genuine issue of material fact exists with respect to Ingenico's subjective motives and whether it was acting in good faith, which is supported by circumstantial evidence, with all favorable inferences, based on the allegations in Plaintiffs' pleadings and testimony of its witnesses and representatives, and, particularly, as cited to herein and in Doc. No. 188 (Pl. Facts). | Plaintiffs' conclusory response to Paragraph 64 presents argument, as opposed to evidence of a purported dispute of material fact. *See* General Reply *supra* Section IV. |
| 66 | From 2008 until 2013, AnywhereCommerce had not succeeded in selling "strategic partnership opportunities" to First Data (Paragraph 82 in Complaint). Ex. 1 (Cobrin Dep. I) at 91:22-92:3[.] | Plaintiffs' FAC and deposition transcript of Mitchell Cobrin are written documents that speak for themselves; however, a genuine issue of material fact exists as to statement. | Plaintiffs' conclusory response to Paragraph 66 presents argument, as opposed to evidence of a purported dispute of material fact. *See* General Reply *supra* Section IV. |
| 66 | From 2008 until 2013, AnywhereCommerce had not succeeded in selling "strategic partnership opportunities" to First Data (Paragraph 82 in Complaint). | 66(a). On September 27, 2012, AC and First Data entered into a Purchase and Services Agreement for the supply of mPOS hardware within the United States; the parties also agreed to a Statement of Work dated September 27, 2012, addressing the pricing structure that would govern the supplier arrangement. Performance on the contract had already long been underway. Doc. No. 67 at 2021 (FAC) at ¶¶81, 84-87. | Plaintiffs' reliance on the First Amended Complaint in response to Paragraph 66 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |
| 66 | From 2008 until 2013, AnywhereCommerce had not succeeded in selling "strategic partnership opportunities" to First Data (Paragraph 82 in Complaint). | 66(b). Over the next several years, AC was consistently invited to bid on requests for proposals issued by First Data and was awarded projects, expanding the scope of its preferred mPOS hardware supplier | Plaintiffs' reliance on the First Amended Complaint in response to Paragraph 66 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to re-brief Plaintiffs' |

| | | arrangement with the company. Doc. No. 67 at 21-23 (FAC) at ¶¶88-90, 93, 95. | arguments. *See* General Reply *supra* Section III. |
|---|---|---|---|
| 66 | From 2008 until 2013, AnywhereCommerce had not succeeded in selling "strategic partnership opportunities" to First Data (Paragraph 82 in Complaint). | 66(c). As evidenced, in part, in a document dated "November 19, 2014", which was produced by First Data under the designation of "Highly Confidential – Attorneys' Eyes Only" ("AEO"), entitled "ROAM Data – Project Reprieve Site Visit" [FISV-AC-0000357], a meeting was held between representatives of ROAM and First Data to discuss the parameters of replacing AC with ROAM as First Data's preferred hardware supplier of mPOS products, which identifies the following two topics under the heading "Conversion Considerations:" "Need to determine if Roam can support interfacing with the current AC readers – Not likely" and "Cannot support AC hardware within Roam infrastructure[.]" A true and correct fully redacted version of this document (with the exception of solely the quoted language herein) is attached as Exhibit 10. | Plaintiffs' introduction of an immaterial document (Doc. No. 198-10) in response to Paragraph 66 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to proffer new evidence and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |
| 66 | From 2008 until 2013, AnywhereCommerce had not succeeded in selling "strategic partnership opportunities" to First Data (Paragraph 82 in Complaint). | 66(d). As evidenced, in part, in a document dated November 21, 2014, which was produced by First Data under the designation of AEO, entitled "Reprieve Status Meeting Deliverables for upcoming meeting 11/21/14" [FISV-AC-0000092], there is a generic listing of ROAM's inventory of "Card readers" designated "Audio-jack" and "Bluetooth" with functionalities that match, in addition to the G3X, G4X, and G5X product line, the accused products in this case. A true and correct fully redacted version of this document (with the exception of solely the quoted language herein) is attached as Exhibit 11. | Plaintiffs' introduction of an immaterial document (Doc. No. 198-11) in response to Paragraph 66 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to proffer new evidence and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |

| 66 | From 2008 until 2013, AnywhereCommerce had not succeeded in selling "strategic partnership opportunities" to First Data (Paragraph 82 in Complaint). | 66(e). As evidenced, in part, in a document dated October 1, 2014, which was produced by First Data under the designation of AEO, entitled "Project Reprieve Meeting" [FISV-AC-0000043], there is a comment: "**Moving ahead with ROAM** is likely the fastest path away from Apriva, given much upfront work is complete and our strategic relationship w/Ingenico." (Emphasis in original). A true and correct fully redacted version of this document (with the exception of solely the quoted language herein) is attached as Exhibit 12. | Plaintiffs' introduction of an immaterial document (Doc. No. 198-12) in response to Paragraph 66 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to proffer new evidence and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |
| --- | --- | --- | --- |
| 66 | From 2008 until 2013, AnywhereCommerce had not succeeded in selling "strategic partnership opportunities" to First Data (Paragraph 82 in Complaint). | 66(f). By applying a simple sorting function for the customer "First Data Corp" to Defendants' produced sales data, the data shows that Defendants earned revenues of $12,405,200.00 and incurred costs of $7,921,512.95, which resulted in an unjust enrichment in the amount of $4,483,687.95, for the reviewed period. *See* PDF FD Conversion of Native Excel (Book I) VictorYoung-9 [IngenicoInc_0126787] ("FD Sales Data"), a true and correct copy of which is attached as Exhibit 13. | Plaintiffs' introduction of an immaterial document (Doc. No. 198-13) in response to Paragraph 66 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to proffer new evidence and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |
| 66 | From 2008 until 2013, AnywhereCommerce had not succeeded in selling "strategic partnership opportunities" to First Data (Paragraph 82 in Complaint). | 66(g). In 2013, AC was a leading mPOS hardware (i.e., 3rd overall in market share with approximately 15%). Doc. No. 188-12 at 6, 12 (4/10/2014 Email) (attaching ABI Research's 2013 mPOS Competitive Assessment [IngenicoInc_0276980-1032] that ranked Ingenico's recently acquired ROAM in first place, and AC in third, in overall mPOS hardware market share for the first half of 2013. | Plaintiffs' presentation of unrelated, already-proffered document (Doc. No. 188-12) in response to Paragraph 66 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to reiterate the contents of already-submitted materials and re-brief Plaintiffs' arguments. *See* General Reply *supra* Section III. |
| 66 | From 2008 until 2013, AnywhereCommerce had not succeeded in selling "strategic partnership opportunities" to | 66(h). AC earns royalties in the range of 4-5% in connection with BBPOS's sales of certain mPOS devices that speak to its patents, which are often | Plaintiffs' introduction of portions of Kron's testimony in response to Paragraph 66 fails to establish a dispute of material |

| | | |
|---|---|---|
| | First Data (Paragraph 82 in Complaint). | paid to AC in the nature of offsets, and which then filter upstream, in part, to its parent company, 4361423 Canada Inc. ("436 Canada"). Deposition Transcript of Michael Kron dated November 30, 2021 ("Kron I Tr.") at 52:20-25 – 53:1-13, 53:23-25 – 54:1-15, 55:425 – 56:1-4, 56:16-20, a true and correct excerpted copy of which, is attached as Exhibit 14. | fact, and serves only as a thinly-veiled attempt to proffer new evidence and re-brief Plaintiffs' arguments.  *See* General Reply *supra* Section III. |
| 66 | From 2008 until 2013, AnywhereCommerce had not succeeded in selling "strategic partnership opportunities" to First Data (Paragraph 82 in Complaint). | 66(i). After certain alleged infirmities in BBPOS's intellectual property rights arising under the HATM-BBPOS License got flagged during M&A due diligence, ROAM attempted, unsuccessfully, to resolve those issues, first, by way of an amended licensing agreement between 436 Canada and BBPOS, and then later, by seeking a direct license to 436 Canada's IP in its own right, well after the contemplated BBPOS acquisition had been terminated. Doc. No. 188-7 at 10-11, Ex. G (Houlihan Lokey Report) (quoting Ernst & Young Valuation Analysis of Common Shareholders' Equity of ROAM Data, Inc. as of September 20, 2012, pages 32-33); Doc. No. 188-22, Ex. V (May 2013 Rejection Letter) (rejecting ROAM's request for a direct license to 436 Canada's IP). | Plaintiffs' presentation of already-proffered documents unrelated to Paragraph 66 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to reiterate the contents of already-submitted materials and re-brief Plaintiffs' arguments.  *See* General Reply *supra* Section III. |
| 66 | From 2008 until 2013, AnywhereCommerce had not succeeded in selling "strategic partnership opportunities" to First Data (Paragraph 82 in Complaint). | 66(j). When Defendants were unable to obtain these licensing rights from AC, legally, Defendants simply decided to leverage this IP in their accused products without paying for this use, as evidenced by its theft of BBPOS's trade secrets, as discussed further below. Doc. No. 188-22, Ex. V (May 2013 Rejection Letter). | Plaintiffs' reference to an already-proffered document (Doc. No. 188-22) unrelated to Paragraph 66 fails to establish a dispute of material fact, and serves only as a thinly-veiled attempt to reiterate the contents of already-submitted materials and re-brief Plaintiffs' arguments |
| 68 | Michael Kron Doesn't have any evidence as to why First Data | A genuine issue of material fact exists with respect to First Data's | Plaintiffs' conclusory response to Paragraph 68 presents |

| | | | |
|---|---|---|---|
| | rejected AnywhereCommerce's bid for the POGO RFP statement of work. Ex. 12 (Kron Dep.) at 154:6-10. | subjective motives and whether it (or Defendants) was acting in good faith, which is supported by circumstantial evidence, with all favorable inferences, based on the allegations in Plaintiffs' pleadings and testimony of its witnesses and representatives, and, particularly, as cited to herein and in Doc. No. 188 (Pl. Facts). *See also* Genuine Disputed Material Facts above at ¶¶66(a) – (j). | argument, as opposed to evidence of a purported dispute of material fact. *See* General Reply *supra* Section IV. |
| 69 | AnywhereCommerce has no evidence as to how First Data evaluated any of competitors' RFP submissions. Ex. 11 (AnywhereCommerce 30(b)(6) Dep.) at 69:13-20. | A genuine issue of material fact exists with respect to First Data's subjective motives and whether it (or Defendants) was acting in good faith, which is supported by circumstantial evidence, with all favorable inferences, based on the allegations in Plaintiffs' pleadings and testimony of its witnesses and representatives, and, particularly, as cited to herein and in Doc. No. 188 (Pl. Facts). *See also* Genuine Disputed Material Facts above at ¶¶66(a) – (j). | Plaintiffs' conclusory response to Paragraph 69 presents argument, as opposed to evidence of a purported dispute of material fact. *See* General Reply *supra* Section IV. |
| 70 | AnywhereCommerce has no evidence that it was the low bidder for any RFP except for the live RFP in 2013. *Id.* at 69:6-12. | A genuine issue of material fact exists with respect to First Data's subjective motives and whether it (or Defendants) was acting in good faith, which is supported by circumstantial evidence, with all favorable inferences, based on the allegations in Plaintiffs' pleadings and testimony of its witnesses and representatives, and, particularly, as cited to herein and in Doc. No. 188 (Pl. Facts). *See also* Genuine Disputed Material Facts above at ¶¶66(a) – (j). | Plaintiffs' conclusory response to Paragraph 70 presents argument, as opposed to evidence of a purported dispute of material fact. *See* General Reply *supra* Section IV. |
| 71 | AnywhereCommerce has no evidence that, if First Data concluded that one of AnywhereCommerce's competitors other than Ingenico offered a better value than AnywhereCommerce did, First Data would not have chosen that. *Id.* at 71:13-17[.] | A genuine issue of material fact exists with respect to First Data's subjective motives and whether it (or Defendants) was acting in good faith, which is supported by circumstantial evidence, with all favorable inferences, based on the allegations in Plaintiffs' pleadings and testimony of its witnesses and representatives, and, | Plaintiffs' conclusory response to Paragraph 71 presents argument, as opposed to evidence of a purported dispute of material fact. *See* General Reply *supra* Section IV. |

| | | particularly, as cited to herein and in Doc. No. 188 (Pl. Facts). *See also* Genuine Disputed Material Facts above at ¶¶66(a) – (j). | |
|---|---|---|---|
| **75** | AnywhereCommerce has no evidence that, but for Ingenico's wrongful alleged conduct, AnywhereCommerce would have actually sold any mPOS devices to any of the companies listed in Paragraph 116 of the Complaint.  Ex. 11 (AnywhereCommerce 30(b)(6) Dep.) at 114:11-5. | A genuine issue of material fact exists with respect to First Data's subjective motives and whether it (or Defendants) was acting in good faith, which is supported by circumstantial evidence, with all favorable inferences, based on the allegations in Plaintiffs' pleadings and testimony of its witnesses and representatives, and, particularly, as cited to herein and in Doc. No. 188 (Pl. Facts). *See also* Genuine Disputed Material Facts above at ¶¶66(a) – (j); Ex. 9 (First Sales Data). | Plaintiffs' conclusory response to Paragraph 75 presents argument, as opposed to evidence of a purported dispute of material fact.  *See* General Reply *supra* Section IV. |
| **76** | Other than selling products that have technology that incorporates trade secrets of some entity other than AnywhereCommerce, AnywhereCommerce doesn't have any evidence that Ingenico engaged in tortious conduct with respect to AnywhereCommerce's contracts with Global Payments, TSYS, Priority Payments, or ProPay, or any other contracts between AnywhereCommerce and a third party.  *Id.* at 57:4-59:21. | A genuine issue of material fact exists with respect to First Data's subjective motives and whether it (or Defendants) was acting in good faith, which is supported by circumstantial evidence, with all favorable inferences, based on the allegations in Plaintiffs' pleadings and testimony of its witnesses and representatives, and, particularly, as cited to herein and in Doc. No. 188 (Pl. Facts). *See also* Genuine Disputed Material Facts above at ¶¶66(a) – (j); Ex. 9 (First Sales Data). | Plaintiffs' conclusory response to Paragraph 76 presents argument, as opposed to evidence of a purported dispute of material fact.  *See* General Reply *supra* Section IV. |
| **81** | Mitchell Cobrin states that nobody else at AnywhereCommerce or BBPOS has any knowledge of the allegation in Paragraph 109 of the Complaint that Ingenico began "bundling and discounting products to unfairly inflate profits and shut out competition." *Id.* at 125:10-15. | A genuine issue of material fact exists with respect to First Data's subjective motives and whether it (or Defendants) was acting in good faith, which is supported by circumstantial evidence, with all favorable inferences, based on the allegations in Plaintiffs' pleadings and testimony of its witnesses and representatives, and, particularly, as cited to herein and in Doc. No. 188 (Pl. Facts). *See also* Genuine Disputed Material Facts | Plaintiffs' conclusory response to Paragraph 81 presents argument, as opposed to evidence of a purported dispute of material fact.  *See* General Reply *supra* Section IV. |

| | | above at ¶¶66(a) – (j); Ex. 9 (First Sales Data). | |
|---|---|---|---|
| **84** | AnywhereCommerce does not have any evidence of unlawful conduct relating to the leveraging of Ingenico's historic POS terminal influence globally.  Ex. 12 (AnywhereCommerce 30(b)(6) Dep.) at 123:3-15. | A genuine issue of material fact exists with respect to First Data's subjective motives and whether it (or Defendants) was acting in good faith, which is supported by circumstantial evidence, with all favorable inferences, based on the allegations in Plaintiffs' pleadings and testimony of its witnesses and representatives, and, particularly, as cited to herein and in Doc. No. 188 (Pl. Facts). *See also* Genuine Disputed Material Facts above at ¶¶66(a) – (j); Ex. 9 (First Sales Data). | Plaintiffs' conclusory response to Paragraph 84 presents argument, as opposed to evidence of a purported dispute of material fact.  *See* General Reply *supra* Section IV. |
| **85** | AnywhereCommerce has not undertaken any assessment of its purported damages as a result of Ingenico's alleged tortious interference with AnywhereCommerce and First Data's contract.  *Id.* at 65:15-19. | A genuine issue of material fact exists with respect to First Data's subjective motives and whether it (or Defendants) was acting in good faith, which is supported by circumstantial evidence, with all favorable inferences, based on the allegations in Plaintiffs' pleadings and testimony of its witnesses and representatives, and, particularly, as cited to herein and in Doc. No. 188 (Pl. Facts). *See also* Genuine Disputed Material Facts above at ¶¶66(a) – (j); Ex. 9 (First Sales Data). | Plaintiffs' conclusory response to Paragraph 85 presents argument, as opposed to evidence of a purported dispute of material fact.  *See* General Reply *supra* Section IV. |

INGENICO INC., INGENICO CORP. AND
INGENICO GROUP, SA,

By their attorneys,

/s/ *Jeffrey K. Techentin*
JOHN A. TARANTINO (BBO #492230)
PATRICIA K. ROCHA (BBO #542348)
NICOLE J. BENJAMIN (BBO #666959)
JEFFREY K. TECHENTIN (*pro hac vice*)
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
Tel: (401) 274-7200
Fax: (401) 351-4607
jtarantino@apslaw.com
procha@apslaw.com
nbenjamin@apslaw.com
jtechentin@apslaw.com
Dated: July 27, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on July 27, 2022, I caused to be served via electronic mail a true copy

of the within document on the following counsel of record:

Jonathon D. Friedmann, Esq.
Robert P. Rudolph, Esq.
Rudolph Friedmann LLP
92 State Street
Boston, MA 02109
JFriedmann@rflawyers.com
RRudolph@rflawyers.com

Oliver D. Griffin, Esq.
Peter N. Kessler, Esq.
Melissa A. Bozeman, Esq.
Kutak Rock LLP
303 Peach Street, N.E., Suite 2750
Atlanta, GA 30308
Oliver.griffin@kutakrock.com
Peter.kessler@kutakrock.com
Melissa.bozeman@kutakrock.com

Ricardo G. Cedillo, Esq.
755 E. Mulberry Ave., Ste 500
San Antonio, Texas 78212
rcedillo@lawdcm.com

/s/ *Jeffrey K. Techentin*
Jeffrey K. Techentin