## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **ANYWHERECOMMERCE, INC. and BBPOS LIMITED,**<br>        **Plaintiffs,** | |
| **v.** | **Civil Docket No: 1:19-cv-11457-IT** |
| **INGENICO INC., INGENICO CORP., and INGENICO GROUP SA,**<br>        **Defendants.** | **Jury Trial Demanded** |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION IN LIMINE NO. 2 TO PRECLUDE ARGUMENT OR TESTIMONY RELATING TO REVERSE ENGINEERING

Ingenico's liability expert, Dr. Shamos, opined throughout his report that BBPOS' claimed trade secrets could not, in fact, be trade secrets because they were susceptible to reverse engineering. (*See* Ex. A, Rebuttal Report of Shamos at 25, 29, 35, 39, and 40). With this statement, Dr. Shamos misrepresents both the applicable law and the actual facts in the record.

A review of the Georgia Trade Secret Act demonstrates the fault with this opinion. Georgia Code § 10-1-761 defines the following relevant terms:

**(1) "Improper means"** includes theft, bribery, misrepresentation, breach or inducement of a breach of a confidential relationship or other duty to maintain secrecy or limit use, or espionage through electronic or other means. **Reverse engineering of a trade secret not acquired by misappropriation or independent development shall not be considered improper means.**

**...**

**(4) "Trade secret"** means information, without regard to form, including, but not limited to, technical or nontechnical data, a formula, a pattern, a compilation, a program, a device, a method, a technique, a drawing, a process, financial data, financial plans, product plans, or a list of actual or potential customers or suppliers which is not commonly known by or available to the public and which information:

1

(A) Derives economic value, actual or potential, from not being generally known to, **and not being readily ascertainable by proper means by**, other persons who can obtain economic value from its disclosure or use; and

(B) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Ga. Code., § 10-1-761(1), (4) (emphasis supplied).  Georgia law on this topic makes clear that *theoretical* reverse engineering is not instructive on whether the element of a trade secret claim (that the information is not "readily ascertainable by proper means"), but rather *actual* reverse engineering is a defense to misappropriation of a trade secret.  *Arconic Inc. v. Universal Alloy Corp.*, No. 1:15-CV-01466-ELR, 2019 WL 12528963, at *8 (N.D. Ga. July 25, 2019), report and recommendation adopted, No. 1:15-CV-01466-ELR, 2020 WL 10486178 (N.D. Ga. Mar. 30, 2020) ("'Readily ascertainable' is theoretical. 'Reverse engineering' deals with actual undertakings.").

The Georgia Supreme Court opinion in *Essex Grp., Inc. v. Southwire Co.* is highly instructive.  269 Ga. 553, 555, 501 S.E.2d 501, 503 (1998).  In that case, the Georgia Supreme Court held:

We further **reject the position that information is not protectable as a trade secret merely because it may be independently discovered or ascertained by others**. Although information is accorded trade secret status under OCGA § 10–1–761(4) in part because it is not "readily ascertainable by proper means," Georgia law recognizes that trade secrets may be acquired by others either through independent development **or by reverse engineering, and that the acquisition of trade secret information by these means is not improper in the absence of any misappropriation**.  Thus, the Act explicitly recognizes that **trade secret information is protectable until it has been acquired by others by proper means**. This position is consistent with that taken in the Restatement, supra at § 39(f), p. 432.

*Id*. at 503–04 (emphasis supplied).  The Court continued by quoting the applicable language of the Restatement as follows:

4854-0203-5292.1

> **The theoretical ability of others to ascertain the information through proper means does not necessarily preclude protection as a trade secret**. Trade secret protection remains available unless the information is **readily** ascertainable by such means. Thus, if acquisition of the information through an examination of a competitor's product would be **difficult, costly, or time-consuming**, the trade secret owner retains protection against an improper acquisition, disclosure, or use.... However, **any person who actually acquires the information through an examination of a publicly available product has obtained the information by proper means and is thus not subject to liability**. Similarly, the theoretical possibility of reconstructing the secret from published materials containing scattered references to portions of the information or of extracting it from public materials unlikely to come to the attention of the appropriator will not preclude relief against the wrongful conduct....

*Id*. at 504 (quoting Restatement (Third) of Unfair Competition § 39 (1995)) (emphasis supplied).

Put simply, Georgia law permits a party to avoid liability under the trade secret statute if the party actually obtained the trade secrets through reverse engineering and the acquisition was not otherwise improper. However, the fact that a trade secret could *theoretically* be reverse engineered does not deprive the information from its protection as a trade secret. The information has to *actually* be obtained via reverse engineering and not otherwise misappropriated.

Here, the Court should preclude Ingenico from arguing that the trade secrets are not trade secrets because they could theoretically be reverse engineered, and further preclude Ingenico from raising reverse engineering as a defense to misappropriation. Ingenico did not raise *actual* reverse engineering as a defense to misappropriation, and it cannot do so now. *See Arconic Inc. v. Universal Alloy Corp.*, 2019 WL 12528963, at *9 (excluding defense of reverse engineering in trade secret case where defendant did not raise the defense until the "eleventh hour.") Moreover, the record is devoid of any evidence that Ingenico actually obtained any of the trade secret information through reverse engineering.

Ingenico's expert opinions that the trade secrets are not trade secrets, or are worthless, because they theoretically could be reverse engineering is even more problematic. This theory is contrary to Georgia law and is thus wholly irrelevant to any claim or defense at issue in this case.

3

It should be excluded under FRE 401 on that basis alone.  Moreover, permitting Ingenico's experts to testify on reverse engineering would create an extreme risk of unfair prejudice to Plaintiffs because it is likely to suggest to the jury (wrongly) that information cannot be a trade secret if it is *theoretically susceptible* to being reverse engineered.  In fact, Ingenico's damages expert, Dr. Vanderhart, specifically opines that the value of the trade secrets should be zero if a finder of fact determines that all of the trade secrets "could" have been reverse engineered.  (Doc 188-29 at 34). That is plainly wrong.

Therefore, the Court should preclude the irrelevant and unfairly prejudicial arguments related to reverse engineering by precluding Ingenico from offering any argument, testimony, or other evidence that the trade secrets could have been or were actually reverse engineered.

Respectfully submitted:

*/s/ Melissa A. Bozeman*

By: Melissa A. Bozeman (Pro Hac Vice)
Pennsylvania Bar No. 201116
Oliver D. Griffin (Pro Hac Vice)
Pennsylvania Bar No. (80126)
Peter N. Kessler (Pro Hac Vice)
Pennsylvania Bar No. 209033
KUTAK ROCK LLP
Two Logan Square
100 N. 18th Street, Suite 1920
Philadelphia, PA  19103-4104
(215) 299-4384 (Telephone)
(215) 981-0719 (Facsimile)
Melissa.bozeman@kutakrock.com
Oliver.griffin@kutakrock.com
Peter.kessler@kutakrock.com

and

Leland P. Abide (Pro Hac Vice)
MN Bar No. 039269

4

KUTAK ROCK LLP
60 South Sixth Street, Suite 3400
Minneapolis, MN 55402-4018
Telephone: (612) 334-5000
Facsimile: (612) 334-5050
leland.abide@kutakrock.com

 and

Jonathon D. Friedmann, Esq. (BBO # 180130)
Robert P. Rudolph, Esq. (BBO # 684583)
RUDOLPH FRIEDMANN LLP
92 State Street
Boston, MA 02109
Tel.: (617) 723-7700
Fax: (617) 227-0313
JFriedmann@rflawyers.com
RRudolph@rflawyers.com

 and

Ricardo G. Cedillo
DAVIS, CEDILLO & MENDOZA, INC.
755 E. Mulberry Ave., Ste 500
San Antonio, Texas 78212
Tel: (210) 822-6666
Fax: (210) 822-1151
rcedillo@lawdcm.com

Dated: April 10, 2023    *Attorneys for Plaintiffs / Counterclaim-Defendants*

4854-0203-5292.1

<u>**CERTIFICATE OF SERVICE**</u>

I, Melissa A. Bozeman, hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on

April 10, 2023.

<u>/s/ *Melissa A. Bozeman*</u>
Melissa A. Bozeman, Esq.

4854-0203-5292.1