# Exhibit D

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **ANYWHERECOMMERCE, INC. and**<br>**BBPOS LIMITED,**<br><br>    **Plaintiffs,**<br><br>              **v.**<br><br>**INGENICO INC., INGENICO CORP.,**<br>**and INGENICO GROUP SA,**<br><br>    **Defendants.** | **Civil Docket No: 1:19-cv-11457-IT**<br><br>    **Jury Trial Demanded** |

**PLAINTIFFS' FIRST SET OF REQUESTS FOR**
**PRODUCTION OF DOCUMENTS UPON DEFENDANTS**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiffs

AnywhereCommerce, Inc. and BBPOS Limited, by and through counsel, request that Defendants

Ingenico Inc., Ingenico Corp., and Ingenico Group SA produce or make available for inspection

and copying the following documents at the offices of Kutak Rock, LLP, 1760 Market Street, Suite

1100, Philadelphia PA 19103, within thirty (30) days of the date of service hereof or at such other

time as the parties may agree or as ordered by the Court.

**INSTRUCTIONS**

1.      All answers and objections in response to these Requests for Production of

Documents ("Requests") shall be made in accordance with applicable rules of court, including

Fed. R. Civ. P. 34 and L.R. 34.1.

2.      These Requests include a request for all documents in your possession, custody or

control, including all documents within the knowledge or possession, custody or control of your

agents or representatives.

3.      These Requests shall be deemed to be continuing, and if, prior to any evidentiary hearing or trial of this case, you discover additional information, materials or evidence, you must supplement your responses to these Requests.

4.      If any document called for by these Requests was in your possession but is no longer in your possession, custody or control, your response hereto shall identify the document by providing, to the best of your ability, its general subject matter, date, author(s), addressee(s) and recipient(s) and what disposition was made of the document and shall identify the document's present custodian.

5.      To the extent that you believe any particular Request, or any subpart thereof, is objectionable, you are requested to produce all those documents called for in such Request not subject to the objection and portions of each document subject to the claimed objection which do not contain objectionable information.  With respect to each document withheld in whole or in part as objectionable, your response shall identify the document by providing, its general subject matter, date, author(s), addressee(s), and recipient(s) and shall state with specificity all grounds upon which you rely in so objecting with respect to each such document.

6.      To the extent that any particular Request, or any subpart thereof, calls for a document that you believe to be subject to a claim of privilege, you are requested to produce all those documents called for in such Request not subject to the claim of privilege and portions of each document subject to the claimed privilege which do not contain privileged information.  With respect to each document withheld in whole or in part because of a claim of privilege, your response shall identify the document by providing, its general subject matter (without disclosing privileged information), date, author(s), addressee(s), recipient(s), and the nature of the privilege that is being claimed with respect to each such document. If the privilege is being asserted in

connection with a claim or defense governed by state law, your response further shall indicate the particular privilege rule that is being invoked.

7.      If any information called for by these Requests is unknown to you, so state and then state all remaining information that is known to you.

8.      Unless expressly specified otherwise, the relevant time period for each of the Requests is January 1, 2006 to the present.

## DEFINITIONS

1.      The terms "you" and "your" refer to Defendants Ingenico Inc., Ingenico Corp., and Ingenico Group SA (and any predecessors,[1] parents, subsidiaries, and affiliates), and each party/entity's respective officers, directors, employees, agents and representatives, including attorneys or any employee, agent or representative of their attorneys.

2.      The term "AnywhereCommerce" refers to Plaintiff AnywhereCommerce, Inc. (and any predecessors, parents, subsidiaries, and affiliates) and its officers, directors, employees, agents and representatives, including attorneys or any employee, agent or representative of its attorneys.

3.      The term "BBPOS" refers to Plaintiff BBPOS Limited (and any predecessors, parents, subsidiaries, and affiliates) and its officers, directors, employees, agents and representatives, including attorneys or any employee, agent or representative of its attorneys.

4.      The term "ROAM" refers to ROAM Data, Inc. (and any predecessors, parents, subsidiaries, and affiliates) and its officers, directors, employees, agents and representatives, including attorneys or any employee, agent or representative of its attorneys.

5.      The term "First Data" refers to First Data Corporation (and any predecessors, successors, parents, subsidiaries, and affiliates, including without limitation FDMS and TASQ)

---

[1] Expressly included in this term is Ingenico Ventures SAS.

4836-0342-2123.1

and its officers, directors, employees, agents and representatives, including attorneys or any employee, agent or representative of its attorneys.

6.     The term "FDMS" refers to First Data Merchant Services Corporation (and any predecessors, successors, parents, subsidiaries, and affiliates) and its officers, directors, employees, agents and representatives, including attorneys or any employee, agent or representative of its attorneys.

7.     The term "TASQ" refers to TASQ Technology Inc. (and any predecessors, successors, parents, subsidiaries, and affiliates) and its officers, directors, employees, agents and representatives, including attorneys or any employee, agent or representative of its attorneys.

8.     The term "NAB" refers to North American Bancard (and any predecessors, successors, parents, subsidiaries, and affiliates) and its officers, directors, employees, agents and representatives, including attorneys or any employee, agent or representative of its attorneys.

9.     The term "Graylin Litigation" refers to all litigation matters to which you and Mr. Graylin are/were named parties therein or otherwise relate to any claims asserted by Mr. Graylin against you for trade secret theft or other improper conduct (other than the present action), including, without limitation, the derivative action commenced by Mr. Graylin, et al. against Ingenico SA, et al. in the Massachusetts Superior Court in Suffolk at docket no. 12-4032 and the action commenced by Mr. Graylin against Ingenico SA, et al. in the Massachusetts Superior Court in Suffolk at docket no. 13-3271.

10.    The term "Mr. Coonen" refers to the adult individual Christopher Coonen.

11.    The term "Mr. Graylin" refers to the adult individual William W. Graylin a/k/a Will Wang Graylin.

12.    The term "Mr. Lazare" refers to the adult individual Philippe Lazare.

13.     The term "Mr. Rotsaert" refers to the adult individual Christopher Rotsaert.

14.     The terms "related to," "relating" and "relates" mean constitutes, refers to, contains, embodies, evidences, reflects, contradicts, refutes, identifies, states, deals with, bears upon or is in any way connected with the matter described.

15.     The terms "documentation" or "documents" or "document" shall mean any kind of written, typewritten, printed, recorded, electronically-stored, computer stored, computer-produced, or graphic information or material, however produced or reproduced, including, without limitation, emails, text messages, instant messages, social media postings or messages, website pages, brochures, pamphlets, bulletins, prospectuses, drawings, graphs, photographs, microfilms, microfiches, notes, memoranda, letters, reports, plans, account statements, confirmations, forms, telegrams, facsimiles, applications, newspaper advertisements and articles, summaries and/or records of telephone conversations, summaries and/or records of personal conversations, summaries and/or records of meetings and conferences, summaries and/or records of negotiations or investigations, diaries, questionnaires, commentaries, notebooks, minutes, calendars, appointment books, analyses, computer printouts, computer disks, hard copy of software computer programs, projections, ledger sheets, accounts, tax returns, bills, invoices, purchase orders, journals, publications, agreements, deposit and withdrawal slips, cancelled checks, receipts, records, tapes, transcripts of records and recordings and business records relating to the subject matter to which the Request refers and including, without limitation, all original, copies, drafts and/or any other writings in the possession, custody or control of Defendants, their agents, employees, attorneys, accountants and/or any other person acting on their behalf.  This definition includes electronically stored information ("ESI") stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a

reasonably usable form including, without limitation, on a computer, thumb drive, portable external hard drive, mobile phone, smart phone, or any other electronic device, and all metadata connected to electronically store information, as well as information kept in hard copy format. This definition also includes all tangible things, including physical models, objects, prototypes, miniatures, examples, samples, copies, and representations.

16.     Any reference to the singular shall include the plural, and references to the plural shall include the singular.

17.     The conjunctions "and" and "or" shall be construed either disjunctively or conjunctively so as to bring within the scope of these Requests all information that otherwise might be construed to be outside their scope.

18.     The term "any" shall be read to mean each and every.

19.     The term "communications" shall mean any transfer or exchange between two or more persons of any information in-person, orally, and/or by written or electronic means including, but not limited to, written correspondence, electronic mail, text message, instant message, facsimile, and telegram.

20.     The term "mPOS" refers to mobile point of sale.

21.     The term "POS" refers to point of sale.

22.     The term "mPOS technology" means hardware, software, and other technical features related to mPOS card readers, including the devices themslves.

23.     The term "mobile commerce market" means the supply of mobile card-readers and mPOS solutions to merchants and merchant acquirers.

24.     Pursuant to L.R. 26.5(a), the full text of the definitions set forth in subsection (c) of L.R. 26.5 is deemed incorporated by reference into these Requests.   In the event of any

inconsistencies between the definitions set out in these Requests and the definitions set out in L.R. 26.5(c), the definitions set out in these Requests shall control.

25.     All terms not otherwise defined are to be defined as referenced in Plaintiffs' Amended Complaint.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.      All statements (as that term is used in Fed. R. Civ. P. 26(b)(3)(C)) which were previously made by you and any of your present or former directors, officers, or employees, including, without limitation, Messrs. Coonen, Graylin, Lazare, and Rotsaert, in the Graylin Litigation or otherwise, concerning this action or relating to its subject matter.

2.      All documents which relate to any communication between you and AnywhereCommerce, concerning this action or relating to its subject matter.

3.      All documents which relate to any communication between you and BBPOS, concerning this action or relating to its subject matter.

4.      All documents which relate to any communication between you and First Data, concerning this action or relating to its subject matter.

5.      All documents which relate to any communication between you and FDMS, concerning this action or relating to its subject matter.

6.      All documents which relate to any communication between you and TASQ, concerning this action or relating to its subject matter.

7.      All documents which relate to any communication between you and NAB, concerning this action or relating to its subject matter.

8.      All documents which relate to any communication which indicates or shows the existence of a contract or relationship between BBPOS and AnywhereCommerce.

9.      All documents which relate to any communication which indicates or shows the existence of a contract or relationship between First Data and AnywhereCommerce.

10.      All documents which relate to any communication which indicates or shows the existence of a contract or relationship between BBPOS and NAB.

11.      All documents which relate to any communication which indicates or shows the existence of a contract or relationship between you or ROAM and NAB.

12.      All documents which relate to any communication which indicates or shows the existence of a contract or relationship between BBPOS and any third party, concerning this action or relating to its subject matter.

13.      All documents which relate to any communication which indicates or shows the existence of a contract or relationship between AnywhereCommerce and any third party, concerning this action or relating to its subject matter.

14.      All documents which relate to any communication which indicates or shows the existence of a contract or relationship between you and any third party, concerning this action or relating to its subject matter.

15.      All documents which relate to any communication which indicates or shows the existence of a contract or relationship between ROAM and any third party, concerning this action or relating to its subject matter.

16.      All documents which relate to any communication which shows or tends to show that you had knowledge of the existence of a contract or relationship between AnywhereCommerce and BBPOS.

17.     All documents which relate to any communication which shows or tends to show that you had knowledge of the existence of a contract or relationship between AnywhereCommerce and First Data.

18.     All documents which relate to any communication which demonstrates any value which might be attributed to the contract or relationship between AnywhereCommerce and First Data.

19.     All documents which relate to any communication which demonstrates any value which might be attributed to the contract or relationship between you or ROAM and BBPOS.

20.     All documents which relate to any communication which demonstrates any value which might be attributed to the contract or relationship between you or ROAM and First Data.

21.     All documents which relate to any written or oral agreements between ROAM and AnywhereCommerce or BBPOS.

22.     All documents which relate to any written or oral agreements between you and AnywhereCommerce or BBPOS.

23.     All documents which relate to any written or oral agreements between you and ROAM.

24.     All documents which relate to any written or oral agreements between you or ROAM and NAB.

25.     Sufficient documents which relate to or reflect your POS products existing as of November 1, 2009.

26.     All documents which relate to the identity of your target customers for your POS products existing as of November 1, 2009.

27.     Sufficient documents which relate to or reflect your POS products existing as of February 6, 2012.

28.     All documents which relate to the identity of your target customers for your POS products existing as of February 6, 2012.

29.     Sufficient documents which relate to or reflect your POS products existing as of January 1, 2015.

30.     All documents which relate to the identity of your target customers for your POS products existing as of January 1, 2015.

31.     The organizational charts sufficient to identify you as of November 2009 and any material changes in your organization or corporate structuring through to the present.

32.     All documents which relate to each instance a merger, combination, acquisition, investment arrangement, or other similar transaction by you with ROAM, including but not limited to due diligence materials, valuations, financial models and sensitivity analyses, business plans, projections, marketing plans, and break even analyses.

33.     The valuations of your investment(s) in ROAM and/or ROAM's share value undertaken by Floyd Advisory, Ernst & Young, and Houlihan Lokey in determining a "Purchase Price Per Share" for the company as of September 20, 2012 and the valuation undertaken by Stout Risius Ross, Inc. with an effective date of June 30, 2013.

34.     All documents which relate to a potential merger, combination, acquisition, investment arrangement, or other similar transaction by you or ROAM with BBPOS, including but not limited to due diligence materials, valuations, financial models and sensitivity analyses, business plans, projections, marketing plans, and break even analyses.

35.      All documents which relate to a potential merger, combination, acquisition, investment arrangement, or other similar transaction by you or ROAM with AnywhereCommerce, including but not limited to due diligence materials, valuations, financial models and sensitivity analyses, business plans, projections, marketing plans, and break even analyses.

36.      All documents which relate to an actual or potential merger, combination, acquisition, investment arrangement, or other similar transaction by you or ROAM with First Data, including but not limited to due diligence materials, valuations, financial models and sensitivity analyses, business plans, projections, marketing plans, and break even analyses.

37.      All documents which relate to an actual or potential merger, combination, acquisition, investment arrangement, or other similar transaction by you or ROAM with any third party mPOS supplier/provider (other than BBPOS or AnywhereCommerce), including but not limited to due diligence materials, valuations, financial models and sensitivity analyses, business plans, projections, marketing plans, and break even analyses.

38.      All documents which relate to your or ROAM's pursuit of Series B financing for purposes of a potential marger, combination, acquisition, investment arrangement, or similar transaction by you or ROAM with AnywhereCommerce or BBPOS.

39.      Copies of your registration documents, with all attachments and exhibits, from 2006 through the present (both native language and translated versions).

40.      Copies of any investor presentations or materials used by ROAM.

41.      Copies of any investor presentations or materials used by you, concerning First Data, ROAM, mPOS technology, and/or the mobile commerce market.

42.      Copies of any press releases issued by ROAM, concerning First Data, mPOS technology, and/or the mobile commerce market.

43.     Copies of any press releases issued by you, concerning First Data, ROAM, mPOS technology, and/or the mobile commerce market.

44.     All documents which relate to your efforts, interest, plans, or evaluations related to the mobile commerce market and/or development of mPOS technology.

45.     All documents which relate to any mobile commerce market reports or research received by you or ROAM, concerning First Data, BBPOS, and/or AnywhereCommerce.

46.     All documents which relate to any confidentiality and/or non-disclosure agreements that ROAM received, requested and/or executed, concerning any disclosure or proposed disclosure of mPOS technology and design information, commercial information, or other trade secrets.

47.     All documents which relate to any confidentiality and/or non-disclosure agreements that you received, requested and/or executed, concerning any disclosure or proposed disclosure of mPOS technology and design information, commercial information, or other trade secrets owned, licensed, and/or controlled by ROAM, BBPOS, and/or AnywhereCommerce.

48.     All documents which relate to your development and/or launch of new or emerging cross-channel products and/or services by and among the acquired Easycash, Ogone, and ROAM business operations.

49.     All documents which relate to any interviews taken of, or statements attributed to, BBPOS, concerning BBPOS's or AnywhereCommerce's mPOS technology or otherwise relating to the intellectual property at use in the making of ROAM's products.

50.     All documents which relate to any communication between you and ROAM related to your requests for and/or your receipt of documents and/or information related to mPOS technology.

51.     All documents which relate to any communication between you or ROAM and BBPOS related to requests for and/or receipt of documents and/or information related to mPOS technology.

52.     All documents which relate to any communication between you or ROAM and AnywhereCommerce related to requests for and/or receipt of documents and/or information related to mPOS technology.

53.     All documents which relate to any communication related to AnywhereCommerce's or BBPOS's mPOS technology, including but not limited as to development, operations, plans, projections, patents, and licensing.

54.     All documents which relate to any communication between you and Mr. Rotsaert, concerning any technology and design information, commercial information, or other trade secrets owned, licensed, and/or controlled by ROAM, BBPOS, and/or AnywhereCommerce.

55.     All documents which relate to any communication between Mr. Rotsaert and Mr. Graylin, identifying any files or other information that had been obtained from BBPOS.

56.     All documents which relate to any communication concerning the development of ROAM's EMV Swipe reader.

57.     Mr. Coonen's e-mail dated in or around mid-2012 to Mr. Graylin or ROAM, copying Mr. Lazare, directing him to stop engaging a vendor to accelerate the development of the EMV Level 2 kernel.

58.     All documents which relate to any communication between you and ROAM concerning a document called "Delegation of Authority".

59.     Copies of the pleadings filed of record in the Graylin Litigation.

60.     Copies of the deposition transcripts, with all exhibits and copies of any related visual or audio recording(s) thereto, of any depositions undertaken in connection with the Graylin Litigation, concerning this action, or relating to its subject matter.

61.     All non-privileged documents which relate to your investigation of the merits of this action or the Graylin Litigation or by virtue of any discovery efforts undertaken in connection with the Graylin Litigation, concerning this action, or relating to its subject matter.

62.     The Series A Preferred Stock Purchase Agreement (including all exhibits and schedules), dated February 6, 2012, entered into by or among Ingenico Ventures SAS, Mr. Graylin, and ROAM, as well as any amendments or addenda related thereto.

63.     The Amended and Restated Call Option Agreement (including all exhibits and schedules), dated February 6, 2012, entered into by or among Ingenico Ventures SAS, Mr. Graylin, and ROAM, as well as any amendments or addenda related thereto.

64.     All documents which relate to any communication between you and Mr. Graylin, concerning your alleged receipt of intellectual property, trade secrets, and other proprietary information owned, licensed, or controlled by ROAM, BBPOS, and/or AnywhereCommerce.

65.     All documents which relate to any communication between you and Mr. Graylin, concerning your alleged use of intellectual property, trade secrets, and other proprietary information owned, licensed, or controlled by ROAM, BBPOS, and/or AnywhereCommerce.

66.     All documents which relate to any communication concerning your development of any product substantially similar to or otherwise competitive with one or more of ROAM's products.

4836-0342-2123.1

67.     All documents which relate to any communication concerning your development of any product substantially similar to or otherwise competitive with one or more of BBPOS's products.

68.     Mr. Graylin's written communication(s) directed to the attention of Messrs. Lazare and Coonen on or about September 3, 2012, concerning the alleged receipt and use by you of intellectual property at use in the making of ROAM's products.

69.     Mr. Graylin's e-mail dated September 15, 2012 directed to Messrs. Lazare and/or Coonen, concerning the alleged receipt and use by you of intellectual property at use in the making of ROAM's products.

70.     All documents which relate to any communication concerning your or ROAM's assertion of a claim or right to set-off against Mr. Graylin for alleged indemnified losses under the Series A Preferred Stock Purchase Agreement, including your calculations of any diminution in value of ROAM or its shares related thereto.

71.     All non-privileged documents which relate to any communication concerning the so-called "BBPOS Covenant."

72.     All documents which relate to any communication concerning the Engineering Development and License Agreement dated May 4, 2010 as amended August 15, 2010, between BBPOS and ROAM.

73.     All documents which relate to any communication concerning your development of mPOS devices, including but not limited market data, economic analyses, schematics, designs, research and development, and testing.

74. All documents which relate to any communication concerning your development of mPOS services, including but not limited market data, economic analyses, schematics, designs, research and development, and testing.

75. All documents which relate to any communication concerning licensing rights related to mPOS technology that you or ROAM have granted or have been granted, including but not limited to negotiations thereof.

76. All documents which relate to any communication concerning royalties you or ROAM have paid or been paid related to mPOS technology.

77. All documents which relate to income, expenses, assets, liabilities, and debts related to your or ROAM's mPOS technology operations.

78. All documents which relate to the mPOS technology you or ROAM have sold, licensed, or leased, including but not limited to contracts with merchants, volume of sales/leases, pricing, and solicitation.

79. All documents which relate to your or ROAM's efforts to secure preferred and/or exclusive vendor status, modified pricing arrangements, distributor agreements, and/or supply agreements for your or ROAM's mPOS technology, including but not related to marketing, solicitations, RFPs, bids, proposals, offers, and negotiations.

80. All documents which relate to your or ROAM's efforts to secure from First Data preferred and/or exclusive vendor status, modified pricing arrangements, distributor agreements, and/or supply agreements for your or ROAM's mPOS technology, including but not related to marketing, solicitations, RFPs, bids, proposals, offers, and negotiations.

81. All documents which relate to your or ROAM's bid for the POGO RFP statement of work, as described in the Amended Complaint.

82.     All documents which relate to the auction process between you or ROAM and First Data related to your or ROAM's mPOS technology.

83.     All documents which relate to preferred and/or exclusive vendor status, modified pricing arrangements, distributor agreements, and/or supply agreements for your or ROAM's mPOS technology.

84.     All documents which relate to any arrangements, agreements, or transactions between you or ROAM and First Data with respect to your or ROAM's mPOS technology.

85.     All documents which relate to your or ROAM's finances since November 2009 related to sales, licensing, leases, supply, or distribution of your or ROAM's mPOS technology, including but not limited to audited financial statements, unaudited financial statements, tax returns, check registers, ledgers, and journals.

86.     All documents which relate to your ot ROAM's finances related to sales, licensing, leases, supply, or distribuition of your or ROAM's mPOS technology in the United States since November 2009, including but not limited to audited financial statements, unaudited financial statements, tax returns, check registers, ledgers, and journals.

87.     All documents which relate to finances related to sales, licensing, leases, supply, or distribution of your or ROAM's mPOS technology to or through First Data since November 2009, including but not limited to audited financial statements, unaudited financial statements, tax returns, check registers, ledgers, and journals.

88.     All internal financial statements (income statements) related to your or ROAM's mPOS technology since November 2009, separated by product and/or service.

89.     All documents which relate to your or ROAM's business plans, forecasts, and/or projections related to your or ROAM's mPOS technology.

90.     All documents which relate to your marketing plans for mPOS technology relative to:

      a.     Your operations and/or sales in the United States and/or North America;

      b.     ROAM business operations;

      c.     Easycash business operations; and

      d.     Ogone business operations.

91.     All documents which relate to your Strengths, Weaknesses, Opportunities, Threats (SWOT) analyses related to mPOS technology at use in connection with your operations and/or sales in the United States and/or North America.

92.     All documents which relate to any and all claims of infringement that you contend are losses, which are subject to indemnification by BBPOS.

93.     All documents which relate to any communication which shows or tends to show that you had knowledge of the existence of a contract or relationship between AnywhereCommerce and BBPOS.

94.     All documents identifying every product, service, and/or device that you contend at ¶ 15 of the Second Amended Counterclaims are Covered Mobile Payment Devices (as defined therein).

95.     All documents containing factual matter related to your contention at ¶ 93 of the Second Amended Counterclaims that "[t]he principal of BBPOS, who is listed as an inventor on each of the Asserted Patents, has asserted facts" to somehow challenge 4361423 Canada Inc.'s ownership of certain Asserted Patents (as defined therein) based on either fraud or a failure of consideration.

96.     All documents containing factual matter related to your contention at ¶ 95 of the Second Amended Counterclaims that you "hold[] a legally sufficient interest" in the Asserted Patents (as defined therein).

97.     All documents which relate to any communication which shows or tends to show that you had knowledge of the litigation matter initiated by 4361423 Canada Inc. for patent infringement against Square, Inc. in the United States District Court for the Northern District of California at Case No. 3:19-cv-04311.

98.     All documents which relate to any communication between you and Square, Inc., or its officers, directors, employees, agents and representatives, including attorneys or any employee, agent or representative of its attorneys, concerning its litigation with 4361423 Canada Inc., concerning this action or relating to its subject matter.

99.     All documents which relate to any release, settlement, or other agreement, formal or informal, pursuant to which the liability of any person or any entity for damage arising out of the occurrences which are the subject matter of this action has been limited, reduced, or released in any manner.  This request includes all agreements by one party or person to indemnify another party or person for claims asserted in this action.

100.    All insurance policies under which a person carrying on an insurance business might be liable to pay to you or on your behalf all or part of the damages sought in this action.

101.    All documents received from or provided to any other party to this action or received from any third party since the filing of the initial complaint, whether provided informally or in response to a formal request.

102.    All documents referred to in the Amended Complaint and other pleadings, as the word "pleadings" is defined in Fed. R. Civ. P. 7(a).

103.    Copies of social media messages, chat programs (such as g-chat), or postings concerning this action or relating to its subject matter.

104.    All documents containing factual matter related to your contention at ¶ 57 of the Second Amended Counterclaims that AnywhereCommerce interfered with your or ROAM's relationship with BBPOS "by inducing BBPOS to breach the contract or preventing it from performing its contractual obligations."

105.    All documents identifying the the particular "trade secrets" of BBPOS that you contend AnywhereCommerce allegedly misappropriated and the improper means by which AnywhereCommerce allegedly obtained them.

106.    All documents containing factual matter related to your contention at ¶ 83 of the Second Amended Counterclaims that "BBPOS' and AnywhereCommerce Inc.'s actions as alleged constitute an unfair method of competition and an unfair or deceptive act or practice. . ."

107.    All documents containing factual matter related to your first affirmative defense that "[s]ome or all of Plaintiffs' claims are or may be barred by the applicable statutes of limitations."

108.    All documents containing factual matter related to your second affirmative defense that "Plaintiffs' recovery, if any, should be reduced by set off."

109.    All documents containing factual matter related to your third affirmative defense that "Plaintiffs' recovery, if any, should be reduced due to recoupment."

110.    All documents containing factual matter related to your fourth affirmative defense that "Plaintiffs' recovery, if any, should be reduced as a result of their failure to mitigate damages."

111.    All documents containing factual matter related to your fifth affirmative defense that "Plaintiffs[] are not entitled to any remedy due to the doctrine of unclean hands."

112.   All documents containing factual matter related to your sixth affirmative defense that "[s]ome or all of Plaintiffs' claims are or may be barred by laches."

113.   All documents containing factual matter related to your seventh affirmative defense that "[a]ll or part of Plaintiffs' claims are or may be barred because Defendants have a license to use that which Defendants are accused of unlawfully using."

114.   All documents containing factual matter related to your eighth affirmative defense that "[s]ome or all of Plaintiffs' claims are or may be barred because they lack standing."

115.   All documents containing factual matter related to your ninth affirmative defense that "[s]ome or all of Plaintiffs' claims are or may be barred because they materially breached the contract upon which they rely."

116.   All documents containing factual matter related to your tenth affirmative defense that "Plaintiffs lack capacity to sue because they have failed to comply with Mass. Gen. Laws ch. 156D, §§ 15.02 & 15.03."

117.   All documents containing factual matter related to your eleventh affirmative defense that "[s]ome or all of Plaintiffs' claims are or may be barred because they fail to state a cause of action upon which relief can be granted."

118.   All documents containing factual matter related to your twelfth affirmative defense that "[s]ome or all of Plaintiffs' claims fail due to lack of agreement and lack of consideration with respect to the form and/or interpretation of the agreement(s) as Plaintiffs purport to be the case."

119.   All documents containing factual matter related to your claim for patent infringement asserted in Count VIII of the Second Amended Counterclaims or otherwise subject to automatic patent-related disclosure requirements.

120.   All documents which demonstrate any reason why you contend that your or ROAM's actions relating to the contract or relationship between AnywhereCommerce and First Data were not intentional.

121.   All documents which demonstrate any reason why you contend that your or ROAM's actions relating to the contract or relationship between AnywhereCommerce and First Data were justified.

122.   All documents which demonstrate any reason why you contend that AnywhereCommerce's actions relating to the contract or relationship between you or ROAM and BBPOS were intentional.

123.   All documents which demonstrate any reason why you contend that AnywhereCommerce's actions relating to the contract or relationship between you or ROAM and BBPOS were unjustified.

124.   All documents which demonstrate any reason why you contend that BBPOS's actions relating to the contract or relationship between you or ROAM and NAB were intentional.

125.   All documents which demonstrate any reason why you contend that BBPOS's actions relating to the contract or relationship between you or ROAM and NAB were unjustified.

126.   All documents which demonstrate any reason why you contend that your or ROAM's actions relating to the contract or relationship between AnywhereCommerce and First Data were not intentional.

*[Signature page follows]*

Dated: December 20, 2019

Plaintiffs,
By their attorneys,

KUTAK ROCK LLP

*/s/ Melissa A. Bozeman*
Oliver D. Griffin (Pro Hac Vice)
Pennsylvania Bar No. 88026
Oliver.griffin@kutakrock.com
Peter N. Kessler (Pro Hac Vice)
Pennsylvania Bar No. 209033
Peter.kessler@kutakrock.com
Melissa A. Bozeman (Pro Hac Vice)
Pennsylvania Bar No.  201116
Melissa.bozeman@kutakrock.com
1760 Market Street
Suite 1100
Philadelphia, PA  19103-4104
(215) 299-4384 (Telephone)
(215) 981-0719 (Facsimile)

Daniel Carmeli (Pro Hac Vice)
Colorado Bar No. 52880
1801 California Street
Suite 3000
Denver, CO 80202-2652
(303) 297-2400 (Telephone)
(303) 292-7799 (Facsimile)

Attorneys for Plaintiffs

CORRECTED CERTIFICATE OF SERVICE

I, Melissa A. Bozeman, certify that the foregoing was served via electronic mail on December 21, 2019 and U.S. First Class Mail on December 20, 2019 upon the following counsel of record:

John A. Tarantino
Patrick K. Rocha
William K. Wray, Jr.
Adler Pollock & Sheehan P.C.

4836-0342-2123.1

One Citizens Plaza, 8th Floor
Providence, RI 02903
jtarantino@apslaw.com
procha@apslaw.com
wwray@apslaw.com

*/s/ Melissa A. Bozeman*
Melissa. A. Bozeman

4836-0342-2123.1