## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **ANYWHERECOMMERCE, INC.**<br>**and BBPOS LIMITED,**<br>　　　　　　　　**Plaintiffs,**<br><br>　　　　**v.**<br><br>**INGENICO INC., INGENICO CORP.**<br>**and INGENICO GROUP, SA,**<br>　　　　　　　　**Defendants.** | **CIVIL ACTION NO.**<br>**1:19-cv-11457-IT** |

## DEFENDANTS' PROPOSED JURY INSTRUCTIONS

Pursuant to this Court's Second Amended Procedural Order re: Pretrial/Trial entered on March 29, 2023 (Doc. No. 229), Defendants Ingenico Inc., Ingenico Corp. and Ingenico Group, SA (collectively, "Defendants" or "Ingenico") respectfully propose the following jury instructions.

As Ingenico submits these Proposed Instructions in advance of trial—including, but not limited to before rulings on objections, motions, witnesses, deposition designations, and trial evidence, as well as trial testimony and rulings on any motion for judgment as a matter of law— Ingenico respectfully reserves the right to submit additional, supplemental, or amended proposed instructions or withdraw any of the Proposed Instructions submitted herein as appropriate based on any subsequent rulings by the Court or evidence that is actually introduced at trial. Ingenico further expressly reserves and does not waive any argument that the evidence is insufficient to support the submission of any or all of the attached instructions to the jury. Ingenico expressly reserves the right to assert any objections and to make any requests that it deems appropriate.

Ingenico respectfully requests a charge conference prior to the Court instructing the jury and the jury returning to deliberate.

Respectfully submitted,
INGENICO INC., INGENICO CORP. AND
INGENICO GROUP, SA,

By their attorneys,

/s/ *Jeffrey K. Techentin*
JOHN A. TARANTINO (BBO #492230)
PATRICIA K. ROCHA (BBO #542348)
NICOLE J. BENJAMIN (BBO #666959)
R. BART TOTTEN (BBO #631605)
JEFFREY K. TECHENTIN (*pro hac vice*)
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
Tel: (401) 274-7200
Fax: (401) 351-4607
jtarantino@apslaw.com
procha@apslaw.com
nbenjamin@apslaw.com
btotten@apslaw.com
jtechentin@apslaw.com
Dated: April 10, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on April 10, 2023, I caused to be served via electronic mail a true copy of the within document on the following counsel of record:

Jonathon D. Friedmann, Esq.
Robert P. Rudolph, Esq.
Rudolph Friedmann LLP
92 State Street
Boston, MA 02109
JFriedmann@rflawyers.com
RRudolph@rflawyers.com

Oliver D. Griffin, Esq.
Peter N. Kessler, Esq.
Melissa A. Bozeman, Esq.
Kutak Rock LLP
303 Peach Street, N.E., Suite 2750
Atlanta, GA 30308
Oliver.griffin@kutakrock.com
Peter.kessler@kutakrock.com
Melissa.bozeman@kutakrock.com

Ricardo G. Cedillo, Esq.
755 E. Mulberry Ave., Ste 500
San Antonio, Texas 78212
rcedillo@lawdcm.com

/s/ *Jeffrey K. Techentin*
Jeffrey K. Techentin

2

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

I.  GENERAL INSTRUCTIONS CONCERNING JURY DUTIES ........................... 2

    **A.  Duty of the Jury to Find Facts and Follow Law:** ........................................ 3

    **B.  Burden of Proof; Preponderance of the Evidence:** ................................... 4

    **C.  What Is Evidence; Inferences:** .................................................................. 5

    **D.  Direct and Circumstantial Evidence:** ....................................................... 6

    **E.  Credibility of Witnesses:** .......................................................................... 7

    **F.  Discrepancies in Testimony:** ..................................................................... 8

    **G.  What Is Not Evidence:** .............................................................................. 9

    **H.  Evidence Admitted for a Limited Purpose:** ............................................ 10

II. LEGAL CLAIMS ............................................................................................... 12

    **A.  BBPOS's Misappropriation of Trade Secrets Claim Against Defendants:** ............... 13

       1.  Elements of Claim: ............................................................................. 14

       2.  Trade Secret: ...................................................................................... 15

       3.  Trade Secrets Must Concern Information: ......................................... 16

       4.  Readily Ascertainable by Proper Means: ........................................... 17

       5.  Level of Secrecy Required: ................................................................ 18

       6.  Reasonable Efforts to Maintain the Secrecy: .................................... 19

       7.  Information That Is Voluntarily Shared Is Not a Trade Secret: ......... 21

       8.  Information in the Public Domain Is Not a Trade Secret: .................. 22

       9.  Independent Economic Value: ............................................................ 23

       10. Misappropriation: ............................................................................... 24

       11. Misappropriation by Acquisition—Improper Means: ....................... 25

       12. Lawful Means of Acquisition: ........................................................... 26

       13. Reverse Engineering Is Not "Improper Means": .............................. 27

       14. Independent Development Is Not "Improper Means": ....................... 28

       15. Misappropriation by Disclosure or Use: ........................................... 29

       16. Authorized Use Is Not Misappropriation. ......................................... 30

       17. Substantial Factor Causation: ............................................................ 31

       18. Statute of Limitations: ....................................................................... 32

    **B.  BBPOS's Claim of Breach of Contract Against Ingenico:** ........................... 33

1.   Elements of Claim:................................................................................ 34

2.   Terms of the 2010 Engineering Development and License Agreement: ...................... 35

3.   Contractual Performance:...................................................................... 36

4.   Violation of the Agreement:.................................................................... 37

5.   Statute of Limitations:......................................................................... 38

**C.   Provisional Instruction re: BBPOS's Unjust Enrichment Claim Against Ingenico:**. 39

1.   Provisional Instruction re: Elements of Claim:............................................ 40

2.   Provisional Instruction: Limitation:........................................................ 41

**D.   Ingenico Inc.'s Breach of Contract Claim Against BBPOS:**........................................ 42

1.   Elements of Claim:................................................................................ 43

2.   Terms of the 2010 Engineering Development and License Agreement: ...................... 44

3.   Contractual Performance:...................................................................... 45

4.   Violation of the Agreement..................................................................... 46

III.   DAMAGES.............................................................................................. 47

**A.   Introduction**................................................................................................ 47

**B.   Damages Generally:**...................................................................................... 48

**C.   Proximate Cause:**........................................................................................ 49

**D.   Provisional Instruction re: BBPOS's Claim of Misappropriation of Trade Secrets Against Defendants:**................................................................................... 50

1.   Provisional Instruction re: Damages Recoverable: ...................................... 51

**E.   BBPOS's Claim of Breach of Contract:**........................................................ 52

**F.   Provisional Instruction re: BBPOS's Claim of Unjust Enrichment:** ........................ 53

**H.   Ingenico's Claim of Breach of Contract:**..................................................... 55

IV.   FINAL INSTRUCTIONS............................................................................ 56

**A.   Foreperson's Role; Unanimity:** ................................................................. 57

**B.   Consideration of Evidence:** ...................................................................... 58

**C.   Reaching Agreement:** ............................................................................... 59

**D.   Restrictions on Communication with Outside Sources:**............................... 60

**E.   Communication with the Court:**............................................................... 62

## **INTRODUCTION**

These instructions will be in four parts:

First, general rules that define and control your duties as jurors;

Second, definitions of elements of the legal claims and counterclaims in this case—in other words, what BBPOS and Defendants must prove to make their respective cases.

Third, an explanation of how you should calculate damages if you find for BBPOS and/or Ingenico Inc. on their respective claims.

Fourth, some rules for your deliberations in the jury room and the return of your verdict. You may take these instructions with you to the jury room.

**I.**     <u>**GENERAL INSTRUCTIONS CONCERNING JURY DUTIES**</u>

First, I will discuss some general duties of jurors and go over what is and is not evidence that you may consider in deciding this case.

**A. <u>Duty of the Jury to Find Facts and Follow Law:</u>**

It is your duty to find the facts from all the evidence admitted in the case. You have seen and heard the evidence, and you will decide what the facts are. To those facts, you must apply the law as I give it to you. The determination of the law is my duty as the judge. It is your duty to apply the law exactly as I give it to you, whether you agree with it or not. You must not be influenced by any personal likes or dislikes, prejudices, or sympathy. That means you must decide the case solely on the evidence before you and according to the law.

You will recall that you took an oath promising to do so at the beginning of the case.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all equally important. You must not read into these instructions, or into anything I may have said or done, any suggestion as to what verdict you should return—that is a matter entirely for you to decide.

**Authority:** *DeVona v. Zeitels et al.*, 13-cv-10952-IT (Jury Instructions, Doc. 269, Jan. 27, 2017) at 3.

**B.  Burden of Proof; Preponderance of the Evidence:**

Both BBPOS and Ingenico Inc. must prove their cases by a preponderance of the evidence. The standard of a preponderance of the evidence means the greater weight of the evidence. A preponderance of the evidence is such that, when considered and compared with any evidence opposed to it, has more convincing force and produces in your mind a belief that what is sought to be proved is more probably true than not true.

Stated another way, a proposition is proved by a preponderance of the evidence if, after weighing the evidence, you find it more likely or probable than not that the proposition occurred, such that, notwithstanding any remaining doubts in your mind, you have an actual belief in the truth of that proposition.

Simply stated, a matter has been proved by a preponderance of the evidence if you determine, after you have weighed all of the evidence, that the matter is more probably true than not true.

**Authority:** *DeVona v. Zeitels et al.*, 13-cv-10952-IT (Jury Instructions, Doc. 269, Jan. 27, 2017) at 4.

4

### C.  **What Is Evidence; Inferences:**

The evidence from which you are to decide what the facts are in this case consists of testimony, exhibits, and permissible inferences. Let me address each in turn.

The evidence includes the sworn testimony of witnesses, both on direct and cross-examination regardless of who called the witness and regardless of whether the witness testified in court.

The evidence includes those exhibits that have been received into evidence. The exhibits are numbered, but there are many gaps in the numbering. The gaps are of no importance and should not be considered by you in any way.

An inference is a permissible deduction that you may make from evidence that you have accepted as believable. Inferences are things you do every day—little steps in reasoning in which you take some known information, apply your experience in life to it, and then draw a conclusion. You may draw an inference even if it is not necessary or inescapable, so long as it is reasonable and warranted by the evidence.

Let me give you an example of what an inference is. If your mailbox was empty when you left home this morning, and you find mail in it when you go home tonight, you may infer that the mailperson delivered the mail. Now, obviously, you did not see the mailperson deliver the mail, but from the fact that it was empty this morning and is filled tonight, and that today is a Thursday (when there is mail delivery) and not Sunday, you may infer that the mailperson came in the interim and delivered the mail. That is all I mean by an inference.

**Authority:** *DeVona v. Zeitels et al.*, 13-cv-10952-IT (Jury Instructions, Doc. 269, Jan. 27, 2017) at 6.

### D.  **Direct and Circumstantial Evidence:**

Although you may consider only the evidence presented in this case in determining what facts have been proven, you are not limited to the bald statements made by the witnesses or contained in the documents. In other words, you are not limited solely to what you see and hear as the witnesses testify. Again, you are permitted to draw from the facts that you find to have been proven reasonable inferences that you believe are justified in the light of common sense and personal experience.

Lawyers and judges commonly refer to two kinds of evidence as direct and circumstantial evidence. Direct evidence is direct proof of a fact, such as testimony of an eyewitness that the witness saw something. Circumstantial evidence is indirect evidence that is proof of a fact or facts (again, starting with testimony of a witness or other evidence presented in the case) from which you could draw the inference, by reason and common sense, that another fact exists, even though it has not been proven directly.

In my example about the delivery of the mail, you may have one witness testify about leaving the house and there being no mail and arriving home to find mail (circumstantial evidence that the mailperson came by), and another witness testify that she watched the house all day and never saw anyone go near the mailbox (direct testimony that the mailperson did not come by). You are entitled to consider both kinds of evidence and to give both direct and circumstantial evidence the weight you think is appropriate.

**Authority:** *DeVona v. Zeitels et al.*, 13-cv-10952-IT (Jury Instructions, Doc. 269, Jan. 27, 2017) at 7.

### E.  <u>Credibility of Witnesses:</u>

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You may believe everything a witness says, or only part of it, or none of it. It is up to you to decide which facts are true.

In deciding what to believe, you may consider a number of factors, including the following:

(1)  The witness's ability to see or hear or know the things the witness testifies to;

(2)  The quality of the witness's memory;

(3)  The witness's conduct and demeanor while testifying;

(4)  Any interest you may discern that the witness may have in the outcome of this case;

(5)  Any motive, bias, or prejudice the witness may have displayed;

(6)  Whether the witness is contradicted by anything the witness said or wrote before trial or by other evidence;

(7)  How reasonable the witness's testimony is when considered in light of the other evidence which you believe; and

**(8)**  Any other facts or circumstances disclosed by the evidence that tend to corroborate or contradict the witness's version of the events.

**Authority:** *DeVona v. Zeitels et al.*, 13-cv-10952-IT (Jury Instructions, Doc. 269, Jan. 27, 2017) at 8.

**F.   Discrepancies in Testimony:**

Where there are inconsistencies or discrepancies in a witness's testimony, or between the testimony of different witnesses, that may or may not cause you to discredit such testimony. Innocent mistakes of memory do happen—sometime people forget things, or get confused, or remember an event differently. In weighing such discrepancies, you should consider whether they involve important facts or only minor details, and whether the discrepancies result from innocent lapses of memory or intentional falsehoods.

**Authority:** *DeVona v. Zeitels et al.*, 13-cv-10952-IT (Jury Instructions, Doc. 269, Jan. 27, 2017) at 9.

### G.  **What Is Not Evidence:**

As I told you earlier, there are rules that control what you may consider as evidence. Certain things are not evidence. I will remind you of what is not evidence.

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they say in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. Any statements by lawyers as to their beliefs is not evidence. If the facts as you remember them from the evidence differ from the way the lawyers have stated them, your memory of the facts controls.

(2) Anything you may have seen or heard when the court was not in session is not evidence. Anything that lawyers may have seen or heard when the court was not in session is not evidence, and any references thereto must be entirely disregarded.

(3) Questions and objections by lawyers are not evidence. Lawyers have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by my ruling on it.

(4) Anything that I have excluded from evidence or ordered stricken and instructed you to disregard is not evidence. You must not consider such items.

You are to decide the case solely on the evidence received at trial.

**Authority:** *DeVona v. Zeitels et al.*, 13-cv-10952-IT (Jury Instructions, Doc. 269, Jan. 27, 2017) at 10.

### H.  **Evidence Admitted for a Limited Purpose:**

A particular item of evidence is sometimes admitted for a limited purpose only. That is, you can consider this evidence only for one particular purpose, and not for any other purpose.

When evidence in this case was only admitted for a limited purpose, I have told you that, and I have instructed you on the purposes for which the evidence can and cannot be used. You must follow my instruction and only consider the evidence for the permissible purpose I have identified.

For example, you will remember that I instructed you that certain statements made in this case could not be considered for their underlying truth. Generally, a statement made outside of court rather than by a witness testifying under oath, unless some exception applies, cannot be introduced for the truth of the matter stated. That is because the speaker is not present in court to make the statement, and therefore cannot be cross-examined on that statement.

When I have told you that evidence cannot be considered for the truth, you should *not* consider whether the contents of the reported statement are true (*e.g.*, you cannot use this reported statement to conclude that events described by the out-of-court speaker are true). As directed by me, you may consider such evidence for only the limited purpose I described. For example, you may be able to consider certain statements for the effect they had on the listener. For example, a witness might testify that a friend told him that his mother was sick.  If I directed you that you could not consider the friend's statement for the truth of the matter but could consider it for the effect on the witness, you could not use the statement to decide whether the mother was or was not sick (you would need some other evidence for that) but you could use it in considering why the witness called his mother. That is, whether true or false, the statement may have caused a person hearing it to act in a certain manner or may have put that individual on

notice of that something had been said; whether or not the statement was true or false. You may consider such limited purpose evidence for only the limited purpose I identified to you when the evidence was introduced.

**Authority:** *DeVona v. Zeitels et al.*, 13-cv-10952-IT (Jury Instructions, Doc. 269, Jan. 27, 2017) at 11-12.

## II.     <u>LEGAL CLAIMS</u>

I now come to the second part of my instructions: the elements of each legal claim that BBPOS and Ingenico Inc. must establish to prevail on that claim and the instructions on how to calculate damages if you find for BBPOS or Ingenico Inc. on that claim.

At the beginning of the trial I told you briefly what BBPOS must prove to make its case, and what Ingenico Inc. must prove to make its case. I will now give you more complete and detailed instructions on the law. I am first going to instruct you about the elements of each of the claims, and I will then instruct you specifically about damages.

**Authority:** *DeVona v. Zeitels et al.*, 13-cv-10952-IT (Jury Instructions, Doc. 269, Jan. 27, 2017) at 13.

## A.  BBPOS's Misappropriation of Trade Secrets Claim Against Defendants:

BBPOS has alleged that Defendants has misappropriated alleged trade secrets belonging to BBPOS regarding the manufacturing of mobile point of sale devices, in violation of the Georgia Trade Secrets Act.

**Authority:** O.G.C.A. §§ 10-1-761, 10-763(a); *Priority Payment Sys., LLC v. Signapay, LTD*, 161 F. Supp. 3d 1294, 1299 (N.D. Ga. 2016) (citing *Capital Asset Research Corp. v. Finnegan*, 160 F.3d 683, 685 (11th Cir. 1998)).

1. **Elements of Claim:**

To succeed on its claim that Defendants violated the Georgia Trade Secrets Act, BBPOS must prove the each of following by a preponderance of the evidence:

(1) BBPOS was the owner of the alleged trade secrets;

(2) The alleged trade secrets qualified as trade secrets at the time they were allegedly misappropriated; and

(3) One or more of the Defendants misappropriated the alleged trade secrets.

**Authority:** O.G.C.A. §§ 10-1-761, 10-763(a); *Priority Payment Sys., LLC v. Signapay, LTD*, 161 F. Supp. 3d 1294, 1299 (N.D. Ga. 2016) (citing *Capital Asset Research Corp. v. Finnegan*, 160 F.3d 683, 685 (11th Cir. 1998)).

2.  **Trade Secret:**

For BBPOS's claim against Defendants under the Georgia Trade Secrets Act, you must first determine whether or not the information regarding the manufacturing of mobile point of sale devices is a trade secret of BBPOS.

"Trade Secret" means information, without regard to form, including, but not limited to, technical or nontechnical data, a formula, a pattern, a compilation, a program, a device, a method, a technique, a drawing, a process, financial data, financial plans, product plans, or a list of actual or potential customers or suppliers which is not commonly known by or available to the public and which information:

(a) derives economic value, actual or potential, from being generally not known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

(b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy; and

BBPOS's claim under the Georgia Trade Secrets Act must fail if BBPOS does not prove the existence of a trade secret. Whether or not any particular information qualifies as a trade secret depends upon factors that I will describe in a moment but, by way of introduction, I want you to understand that a trade secret concerns information.

**Authority:** O.G.C.A. § 10-1-761(4); *EarthCam, Inc. v. OxBlue Corp.*, 49 F. Supp. 3d 1210, 1224-25 (N.D. Ga. 2014), *aff'd*, 703 F. App'x 803 (11th Cir. 2017); *Priority Payment Sys., LLC v. Signapay, LTD*, 161 F. Supp. 3d 1294, 1299 (N.D. Ga. 2016) (citing O.G.C.A. § 10-1-761(4)).

### 3. Trade Secrets Must Concern Information:

In fact, a "trade secret," by definition, must concern information. By contrast, an employee's general knowledge, skills, experience, talents, or abilities cannot be a trade secret.

**Authority:** *EarthCam, Inc. v. OxBlue Corp.*, 49 F. Supp. 3d 1210, 1237 (N.D. Ga. 2014), *aff'd*, 703 F. App'x 803 (11th Cir. 2017); *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1139-41 (11th Cir 2005); *Stone v. Williams Gen. Corp.,* 266 Ga. App. 608, 611 (2004), *rev'd on other grounds* 279 Ga. 428, 614 S.E.2d 758 (Ga. 2005); *Avnet, Inc. v. Wyle Labs, Inc.,* 263 Ga. 615 (1993); *Textile Rubber & Chemical Co. v. Shook*, 243 Ga. 587, 591 (1979)).

**4.   Readily Ascertainable by Proper Means:**

Information that is generally known in the field or is readily ascertainable by proper means by those skilled in the art at the time of the alleged misappropriation cannot qualify as a trade secret. There is no fixed standard for determining what is "readily ascertainable by proper means."

But generally speaking, the more difficult information is to obtain, and the more time and resources that must be expended in gathering it, the less likely it will be readily ascertainable by proper means.  For example, if you find the acquisition of information by someone skilled in the art of point of sale technology through examining BBPOS's products would have been difficult, costly, or time consuming, then BBPOS would retain trade secret protection against an improper acquisition.

On the other hand, if you find that someone skilled in the art of point of sale technology could have acquired BBPOS's information through a process that was not difficult, costly, or time-consuming, then you must also find that that information was readily ascertainable by proper means and therefore cannot qualify as a trade secret.

**Authority:** O.G.C.A. § 10-1-761(4)(A); *EarthCam, Inc. v. OxBlue Corp.*, 49 F. Supp. 3d 1210, 1227-29 (N.D. Ga. 2014), *aff'd*, 703 F. App'x 803 (11th Cir. 2017) (applying Georgia law); *See Essex Group, Inc. v. Southwire Co.*, 501 S.E.2d 501, 504 (Ga. 1998) (quoting the Restatement (Third) of Unfair Competition § 39, cmt. f); *Leo Publications Inc. v. Reid*, 265 Ga. 561, 562 (1995); *Vito v. Inman*, 286 Ga. App. 646, 649-650 (2007); *Builder Servs. Grp., Inc. v. Topshelf Builder Specialties, Inc.*, No. CV419-056, 2019 WL 3948370, at *3 (S.D. Ga. Aug. 20, 2019) ("Claims under the [Georgia Trade Secrets Act] and the [Defend Trade Secrets Act] substantially overlap and this Court will consider these claims simultaneously"); Dylan W. Wiseman, Jeffrey Judd, Julian (Pete Mack), Template Civil Jury Instructions Under the Defend Trade Secrets Act, 33 Intell. Prop. & Tech. L.J. 16, 20 (2021) (citing 18 U.S.C. §1839(3)(B)).

### 5.   Level of Secrecy Required:

The secrecy required to prove that something is a trade secret does not have to be absolute secrecy in the sense that no one else in the world possessed the information at the relevant time. It may have been disclosed to employees involved in the owner's use of the trade secret as long as they were instructed to keep the information secret. It may have also been disclosed to nonemployees if they were obligated to keep it secret, including by way of a non-disclosure or confidentiality agreement.

**Authority:** *FIMIC, S.r.L. v. ADG Sols., Inc.*, No. 1:19-CV-05636-SDG, 2022 WL 4715685, at *10 (N.D. Ga. Sept. 30, 2022) (applying Georgia law); *Arconic Inc. v. Universal Alloy Corp.*, No. 1:15-CV-01466-ELR, 2019 WL 12529047, at *5 (N.D. Ga. Aug. 7, 2019) (applying Georgia law), *report and recommendation adopted*, No. 1:15-CV-01466-ELR, 2020 WL 10486178 (N.D. Ga. Mar. 30, 2020); *Equifax Servs. v. Examination Mgmt. Servs.*, 453 S.E.2d 488, 493 (Ga. Ct. App. 1994); *Builder Servs. Grp., Inc. v. Topshelf Builder Specialties, Inc.*, No. CV419-056, 2019 WL 3948370, at *3 (S.D. Ga. Aug. 20, 2019) ("Claims under the [Georgia Trade Secrets Act] and the [Defend Trade Secrets Act] substantially overlap and this Court will consider these claims simultaneously"); Dylan W. Wiseman, Jeffrey Judd, Julian (Pete Mack), Template Civil Jury Instructions Under the Defend Trade Secrets Act, 33 Intell. Prop. & Tech. L.J. 16, 18 (2021) (citing 18 U.S.C. § 1839(3)(A); *InteliClear v. ETC Global Holdings, Inc.*, 978 F.3d 653, 661 (9th Cir. 2020)).

**6. Reasonable Efforts to Maintain the Secrecy:**

To qualify as a protectable trade secret, BBPOS must have made reasonable efforts to keep the information secret. Reasonable efforts to keep the information secret are the efforts that would have been made by a reasonable individual or business in the same situation, and with the same knowledge and resources, as the alleged owner, in exercising due care to protect important information of the same kind.

In determining whether the owner made reasonable efforts to keep the information secret, the following factors should be considered, among any other factors pertinent to the issue. The presence of absence of any one or more of these factors is not determinative, and the importance of any single factor depends upon all the circumstances:

    (1) Whether the owner required employees or others with access to the information to sign confidentiality or nondisclosure agreements;

    (2) Whether products, hardware, documents, or computer files containing the information were marked with confidentiality warnings;

    (3) Whether the owner instructed its employees to treat the information as confidential;

    (4) Whether the owner limited the access or use of the alleged trade secrets to those who had a need to know the information;

    (5) Whether the owner kept the information in a restricted or secured area;

    (6) Whether the owner used passwords, firewalls, encryption or other electronic means to protect the information;

    (7) Whether the owner took any action to protect the specific information, or whether it relied on general measures taken to protect its information or assets;

(8) The extent to which any general measures taken by the owner would prevent the unauthorized disclosure of the information; and

(9) Whether there were other reasonable measures available to the owner that it did not take.

**Authority:** O.G.C.A. § 10-1-761(4); *IPC Sys., Inc. v. Garrigan*, No. 1:11-CV-3910-AT, 2012 WL 12872028, at *5 (N.D. Ga. May 21, 2012); *Builder Servs. Grp., Inc. v. Topshelf Builder Specialties, Inc.*, No. CV419-056, 2019 WL 3948370, at *3 (S.D. Ga. Aug. 20, 2019) ("Claims under the [Georgia Trade Secrets Act] and the [Defend Trade Secrets Act] substantially overlap and this Court will consider these claims simultaneously"); Dylan W. Wiseman, Jeffrey Judd, Julian (Pete Mack), Template Civil Jury Instructions Under the Defend Trade Secrets Act, 33 Intell. Prop. & Tech. L.J. 16, 19 (2021) (citing 18 U.S.C. § 1839(3)(A)).

**7.  Information That Is Voluntarily Shared Is Not a Trade Secret:**

Information that is voluntarily shared to others is not a trade secret.

A company could voluntarily share what it claims to be trade secrets for a variety of reasons.  For example, when a company shares what it claims to be its trade secrets with another company in anticipation of a joint venture with that company, then the sharing company failed to undertake reasonable efforts to maintain the secrecy.  Therefore, the shared information is not a trade secret—even if that anticipated joint venture does not materialize.

In this case, if you find that BBPOS voluntarily shared what it claims to be trade secrets with Defendants for whatever reason without an obligation to keep the information secret, then you must also find that BBPOS failed to undertake reasonable efforts to maintain the secrecy, and as such, the information BBPOS shared was not trade secrets.

**Authority:** *Infrasource, Inc. v. Hahn Yalena Corp.*, 613 S.E.2d 144, 149 (Ga. App. 2005); *Stargate Software Int'l, Inc. v. Rumph*, 482 S.E.2d 498 (Ga. App. 1997).

**8.  Information in the Public Domain Is Not a Trade Secret:**

Information that has been publicly disclosed, such as through the sale or disclosure to customers is not protected by the Georgia Trade Secrets Act. This is because there is no reasonable expectation of secrecy attached to any information that has been placed in the public domain.

For example, if BBPOS distributed to its customers any schematic diagrams, repair instructions, product manuals, or similar information—even if they are labeled "proprietary" or "confidential"—BBPOS's failure to maintain its secrecy precludes trade secret protection.

**Authority:** *Diamond Power Int'l, Inc. v. Davidson*, 540 F. Supp. 2d 1322, 1332 (N.D. Ga. 2007) (applying Georgia law); *accord Roboserve, Ltd. v. Tom's Foods, Inc.*, 940 F.2d 1441, 1454 (11th Cir. 1991) (applying Georgia law).

### 9. Independent Economic Value:

A trade secret has independent economic value if it would have given the owner an actual or potential business advantage over others who did not know the information and who could have obtained economic value from that information. In determining whether the information had actual or potential economic value because it was a secret, you may consider the following list. The presence or absence of any one or more of these factors is not determinative:

(1) The extent to which the owner obtained or could have obtained economic value from the information by keeping it a secret;

(2) The extent to which others could have obtained economic value from the information if it was not secret;

(3) The amount of time, money, or labor that the owner expended in developing the information; and

(4) The amount of time, money, or labor that defendant saved by using that information.

**Authority:** O.G.C.A. § 10-1-761(4); *RoadSync, Inc. v. Relay Payments, Inc.*, No. 1:21-CV-3420-MLB, 2022 WL 4715656, at *2 (N.D. Ga. Sept. 30, 2022) (applying Georgia law); *Philips Med. Sys. Nederland B.V. v. TEC Holdings, Inc.*, No. 1:17-CV-2864-LMM, 2019 WL 11825610, at *2 (N.D. Ga. May 20, 2019) (applying Georgia law); *Builder Servs. Grp., Inc. v. Topshelf Builder Specialties, Inc.*, No. CV419-056, 2019 WL 3948370, at *3 (S.D. Ga. Aug. 20, 2019) ("Claims under the [Georgia Trade Secrets Act] and the [Defend Trade Secrets Act] substantially overlap and this Court will consider these claims simultaneously"); Dylan W. Wiseman, Jeffrey Judd, Julian (Pete Mack), Template Civil Jury Instructions Under the Defend Trade Secrets Act, 33 Intell. Prop. & Tech. L.J. 16, 20 (2021) (citing 18 U.S.C. § 1839(3)(B)).

**10. Misappropriation:**

BBPOS must also prove by a preponderance of the evidence that the alleged trade secret was "misappropriated." Misappropriation means:

(1) The acquisition of a trade secret of another by an entity who knows or has reason to know that the trade secret was acquired by improper means; or

(2) The disclosure or use of a trade secret of another without express or implied consent by an entity that:

    a.  Used improper means to acquire knowledge of a trade secret;

    b.  At the time of disclosure or use, knew or had reason to know that knowledge of the trade secret was:

        i.  Derived from or through an entity that had utilized improper means to acquire it;

        ii.  Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

        iii.  Derived from or through an entity that owed a duty to the entity seeking relief to maintain its secrecy or limit its use; or

    c.  Before a material change of position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

I will now describe in greater detail misappropriation by acquisition of a trade secret, and then misappropriation by disclosure or use of a trade secret.

**Authority:** O.G.C.A. § 10-1-761(2); *RoadSync, Inc. v. Relay Payments, Inc.*, No. 1:21-CV-3420-MLB, 2022 WL 4715656, at *5 (N.D. Ga. Sept. 30, 2022) (applying Georgia law).

**11. Misappropriation by Acquisition—Improper Means:**

The acquisition of a trade secret by "improper means" includes theft, bribery, misrepresentation, breach or inducement of a breach of a confidential relationship or other duty to maintain secrecy or limit use, or espionage through electronic or other means.

**Authority:** O.G.C.A. § 10-1-761(1).

**12. Lawful Means of Acquisition:**

The acquisition of a trade secret by lawful means does not constitute misappropriation. In this case, you must find that Defendants did not use improper means to obtain BBPOS's alleged trade secrets if you find by a preponderance of the evidence that Defendants lawfully acquired the information concerning the manufacturing of mobile point of sale devices at the time of the alleged misappropriation. Lawful acquisition by Defendants may include reverse engineering, independent development, obtaining a license to the information, or other lawful means.

**Authority:** O.G.C.A. § 10-1-761(1).

**13. Reverse Engineering Is Not "Improper Means":**

"Reverse engineering" is the process of starting with a lawfully obtained product and then working backwards to figure out how that product was developed or manufactured, or to determine the ingredients or make-up of that product. The process of "reverse engineering" a lawfully obtained product does not constitute "improper means" for the purpose of misappropriation. Indeed, competitors have the right to right to dissemble and scrutinize products that are available on the marketplace and obtained through that marketplace.

For example, if you find that Defendants have proven by a preponderance of the evidence that they acquired the information that BBPOS alleges are trade secrets by reverse engineering a lawfully obtained product, then there was no misappropriation.

**Authority:** *FIMIC, S.r.L. v. ADG Sols., Inc.*, No. 1:19-CV-05636-SDG, 2022 WL 4715685, at *10 (N.D. Ga. Sept. 30, 2022) (citing O.G.C.A. § 10-1-761(1); *Essex Grp., Inc. v. Southwire Co.*, 269 Ga. 553, 556 n.2 (1998)).

**14. Independent Development Is Not "Improper Means":**

Likewise, independent development of a trade secret shall not be considered improper means. Indeed, competitors have the right to independently obtain, discover, develop, or compile their own information without the benefit of someone else's trade secrets. Therefore, even if one company has a protectable trade secret in certain information, other companies are free to independently develop and use the same or similar information on their own.

For example, if you find that Defendants prove by a preponderance that they independently developed BBPOS's alleged trade secrets concerning the manufacturing of mobile point of sale devices, then there was no misappropriation.

**Authority:** O.G.C.A. § 10-1-761(1); *Craft Creations, LLC v. Gartner*, No. CV 212-091, 2015 WL 1541507, at *23 (S.D. Ga. Mar. 31, 2015) (citing *Essex Grp., Inc. v. Southwire Co.*, 501 S.E.2d 501, 503-04 (Ga. 1998)).

**15. Misappropriation by Disclosure or Use:**

I will now explain in greater detail misappropriation by unauthorized disclosure or unauthorized use.

Misappropriation by disclosure requires the unauthorized disclosure of the alleged trade secret. The disclosure may be within a single business to co-workers; there is no requirement that the disclosure be made outside that business to third parties. The disclosure must be made without authorization.

Misappropriation by use requires the unauthorized use of the alleged trade secret. Unauthorized use requires the productive use of the alleged trade secret. Merely possessing the alleged trade secret without utilizing it is not "unauthorized use."

**Authority:** *Diamond Power Int'l, Inc. v. Davidson*, 540 F. Supp. 2d 1322, 1338 (N.D. Ga. 2007) (applying Georgia law); *Penalty Kick Mgmt. Ltd. v. Coca Cola Co.*, 318 F.3d 1284, 1292 (11th Cir. 2003) (citing O.G.C.A. § 10-1-761(2)(B)); *Builder Servs. Grp., Inc. v. Topshelf Builder Specialties, Inc.*, No. CV419-056, 2019 WL 3948370, at *3 (S.D. Ga. Aug. 20, 2019) ("Claims under the [Georgia Trade Secrets Act] and the [Defend Trade Secrets Act] substantially overlap and this Court will consider these claims simultaneously"); Dylan W. Wiseman, Jeffrey Judd, Julian (Pete Mack), Template Civil Jury Instructions Under the Defend Trade Secrets Act, 33 Intell. Prop. & Tech. L.J. 16, 21-22 (2021) (citing 18 U.S.C. § 1839(5)(B)); Eleventh Circuit Pattern Jury Instructions, Civil Cases, § 11.1, (last revised March 2022).

**16. Authorized Use Is Not Misappropriation.**

Authorized use of a trade secret is not misappropriation. In this case, Defendants deny any use of BBPOS's claimed secrets, and that the use that BBPOS alleges was authorized pursuant to an agreement between ROAM Data and BBPOS that has been referred to as the 2010 Engineering Development and License Agreement.

Under that agreement, BBPOS granted ROAM Data a worldwide, perpetual, fully-paid license to freely use certain information, including trade secrets.

If you find that BBPOS has failed to prove by a preponderance of the evidence that Defendants' use of BBPOS's trade secrets was not authorized under the License Agreement, then there was no misappropriation.

**Authority:** *Diamond Power Int'l, Inc. v. Davidson*, 540 F. Supp. 2d 1322, 1338 (N.D. Ga. 2007) (applying Georgia law); *Penalty Kick Mgmt. Ltd. v. Coca Cola Co.*, 318 F.3d 1284, 1292 (11th Cir. 2003) (citing O.G.C.A. § 10-1-761(2)(B)).

**17. Substantial Factor Causation:**

To succeed on its claim under the Georgia Trade Secrets Act, BBPOS must also prove by a preponderance of the evidence that Defendants' misappropriation was a substantial factor in causing harm to BBPOS. A substantial factor in causing harm means a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause for the harm.

**Authority:** *Builder Servs. Grp., Inc. v. Topshelf Builder Specialties, Inc.*, No. CV419-056, 2019 WL 3948370, at *3 (S.D. Ga. Aug. 20, 2019) ("Claims under the [Georgia Trade Secrets Act] and the [Defend Trade Secrets Act] substantially overlap and this Court will consider these claims simultaneously"); Dylan W. Wiseman, Jeffrey Judd, Julian (Pete Mack), Template Civil Jury Instructions Under the Defend Trade Secrets Act, 33 Intell. Prop. & Tech. L.J. 16, 22 (2021).

**18. Statute of Limitations:**

Defendants claim that BBPOS's lawsuit was not filed within the time set by law, which is within five years after (1) BBPOS discovered the alleged misappropriation; or (2) should have discovered the alleged misappropriation by the exercise of reasonable diligence.

To succeed on this defense, Defendants must prove by a preponderance of the evidence that before December 20, 2013, BBPOS discovered—or with reasonable diligence should have discovered—the claimed misappropriation of BBPOS's alleged trade secrets. The law considers a continuing misappropriation as a single misappropriation. Therefore, you should determine whether the claimed misappropriation is a single misappropriation BBPOS discovered or should have discovered with reasonable diligence before December 20, 2013.

While suspicion alone is insufficient to trigger the statute of limitations period, when there is reason to suspect that a trade secret has been misappropriated, and a reasonable investigation would produce facts sufficient to confirm this suspicion, the limitation period begins, even if no investigation has been conducted.

If you find that the limitation period began prior to December 20, 2012, then you must find for Defendants on this count.

**Authority:** O.G.C.A. § 10-1-766; *Porex Corp. v. Haldopoulos*, 284 Ga. App. 510, 516-17, 644 S.E.2d 349, 353-54 (2007).

**B.  BBPOS's Claim of Breach of Contract Against Ingenico:**

BBPOS also claims that Ingenico Inc. breached a contract that has been referred to as the

2010 Engineering Development and License Agreement. A contract exists when two or more

companies agree to bind themselves by promises they make to each other.

**Authority:** "Contract Claims," Massachusetts Superior Court Model Jury Instructions: Civil
Instructions      (https://www.mass.gov/doc/superior-court-model-civil-jury-instructions-contract-
claims-doc/download) (last revised March 1, 2021); MCLE, Massachusetts Superior Court Civil
Jury Instructions, § 14.1.

1. **Elements of Claim:**

For this claim, BBPOS must show, by a preponderance of the evidence, that:

>   (1) A valid agreement existed between BBPOS and Ingenico Inc.;

>   (2) BBPOS substantially performed its obligations under that agreement;

>   (3) Ingenico Inc. violated this agreement or in other words, breached the agreement; and

>   (4) BBPOS suffered damages because of Ingenico Inc.'s breach.

Even though Ingenico Inc. is not a named party to the 2010 Engineering Development and License Agreement, BBPOS may bring a claim for breach of contract against Ingenico Inc. This is because ROAM Data, Inc., a party to the original agreement, merged into Ingenico Inc., and as such, Ingenico Inc. shall be considered a party to the original agreement.

In this case, the parties have agreed that a valid agreement—namely the License Agreement—existed between BBPOS and Ingenico Inc. so you need not deliberate on that element; you may treat it as already proven by BBPOS. Instead, you should focus on the remaining elements which are not in agreement, each of which BBPOS must prove by a preponderance of the evidence.

**Authority:** "Contract Claims," Massachusetts Superior Court Model Jury Instructions: Civil Instructions (https://www.mass.gov/doc/superior-court-model-civil-jury-instructions-contract-claims-doc/download) (last revised March 1, 2021); MCLE, Massachusetts Superior Court Civil Jury Instructions, § 14.1.

**2.   Terms of the 2010 Engineering Development and License Agreement:**

You must determine the terms of the 2010 Engineering Development and License Agreement. The terms of the License Agreement are those terms to which the parties mutually agreed. In deciding what the terms of the agreement were, unless otherwise expressly defined in the agreement, you should give all words within the agreement their ordinary and commonly understood meaning.

**Authority:** MCLE, <u>Massachusetts Superior Court Civil Jury Instructions</u>, § 14.3 (citing *City of Springfield v. Dep't of Telecomms. & Cable*, 457 Mass. 562, 568 (2010); *Kravetz v. Merchants Distrib., Inc.*, 387 Mass. 457, 460 (1982); *Rosenfield v. U.S. Trust Co.*, 290 Mass. 210 (1935)).

### 3. Contractual Performance:

To recover for a breach of contract, BBPOS must establish its material performance of all obligations under the 2010 Engineering Development and License Agreement, or demonstrate that it is excused from performance.

If you find that Ingenico Inc. fully performed its obligations under the agreement, then you cannot find that Ingenico Inc. is in breach of the agreement. Likewise, if you find that BBPOS has accepted the benefit of Ingenico Inc.'s full performance, BBPOS cannot claim a breach of contract by lack of performance.

A material breach of the agreement by one party excuses further performance by the nonbreaching party. If you find that Ingenico Inc. has proven by a preponderance of the evidence that BBPOS materially breached the agreement, you should find that Ingenico Inc. was thereafter excused from any performance of the agreement.

**Authority:** MCLE, <u>Massachusetts Superior Court Civil Jury Instructions</u>, § 14.4 (citing *Lease-It, Inc. v. Mass. Port Auth.*, 33 Mass. App. Ct. 391, 397 (1992); *Threlfall v. Coffee Roasters Prods.*, 306 Mass. 378, 380 (1940); *First Nat'l Bank of Boston v. Cartoni*, 295 Mass. 75, 78-79 (1936)).

**4.   Violation of the Agreement:**

BBPOS must prove that Ingenico Inc. breached—in other words—violated the 2010 Engineering Development and License Agreement. Ingenico Inc. breached the agreement if it failed to comply with one or more essential terms of the agreement. In order to make this determination, you will have to refer to the terms of the parties' agreement.

**Authority:** "Contract Claims," Massachusetts Superior Court Model Jury Instructions: Civil Instructions (https://www.mass.gov/doc/superior-court-model-civil-jury-instructions-contract-claims-doc/download) (last revised March 1, 2021).

**5. Statute of Limitations:**

Ingenico Inc. claims that BBPOS's breach of contract claim was not filed within the time set by law, which is within six years after the alleged breach occurred. To succeed on this defense, Ingenico Inc. must prove by a preponderance of the evidence that the alleged breach occurred before December 20, 2012.  If you find that Ingenico Inc. breached the License Agreement, but that breach occurred before December 20, 2012, then you must find for Ingenico Inc. on this count.

**Authority:** Contract Defenses," Massachusetts Superior Court Model Jury Instructions: Civil Instructions (https://www.mass.gov/doc/superior-court-model-civil-jury-instructions-contract-defenses-pdf/download) (last revised March 1, 2021).

### C. **Provisional Instruction[1] re: BBPOS's Unjust Enrichment Claim Against Ingenico:**

BBPOS has asserted a claim of unjust enrichment against Ingenico.  Unjust enrichment is defined as the retention of money or property of another against the fundamental principles of justice or equity and good conscience.

**Authority:** *Biltcliffe v. CitiMortgage, Inc.*, 952 F. Supp. 2d 371, 380 (D. Mass. 2013) (applying Massachusetts law), *aff'd*, 772 F.3d 925 (1st Cir. 2014).

---

[1]      Defendants offer provisional instructions in the event that this Court concludes that these issues be tried to a jury.

**1. Provisional Instruction re: Elements of Claim:**

To succeed on its claim for unjust enrichment BBPOS must prove, by a preponderance of the evidence, that:

    (1) BBPOS conferred a benefit upon Defendants;

    (2) Defendants had an appreciation or knowledge of that benefit; and

    (3) It would be inequitable for Defendants to accept or retain that benefit without payment for its value.

**Authority:** *Biltcliffe v. CitiMortgage, Inc.*, 952 F. Supp. 2d 371, 380 (D. Mass. 2013) (applying Massachusetts law), *aff'd*, 772 F.3d 925 (1st Cir. 2014).

**2. Provisional Instruction: Limitation:**

A party cannot recover for breach of an agreement and also for unjust enrichment also based on that breach of that agreement.

If you find both (1) that the 2010 Engineering Development and License Agreement controls the intellectual property rights at issue in this case; and (2) that there was no unjust enrichment separate and apart from damages awarded for the breach of that agreement, then you cannot award BBPOS damages for unjust enrichment.

**Authority:** *Biltcliffe v. CitiMortgage, Inc.*, 952 F. Supp. 2d 371, 381 (D. Mass. 2013) (applying Massachusetts law), *aff'd*, 772 F.3d 925 (1st Cir. 2014).

### D. <u>Ingenico Inc.'s Breach of Contract Claim Against BBPOS:</u>

Ingenico Inc. claims that BBPOS has breached the 2010 Engineering Development and License Agreement.  As I mentioned earlier, a contract exists when two or more companies agree to bind themselves by promises they make to each other.

**Authority:** "Contract Claims," Massachusetts Superior Court Model Jury Instructions: Civil Instructions        (https://www.mass.gov/doc/superior-court-model-civil-jury-instructions-contract-claims-doc/download) (last revised March 1, 2021); MCLE, <u>Massachusetts Superior Court Civil Jury Instructions</u>, § 14.1.

1. **Elements of Claim:**

As with BBPOS's breach of contract claim, Ingenico Inc. must show, by a preponderance of the evidence, that:

(1) A valid agreement existed between Ingenico Inc. and BBPOS;

(2) Ingenico Inc. substantially performed its obligations under that agreement;

(3) BBPOS violated this agreement or in other words, breached the agreement; and

(4) Ingenico Inc. suffered damages because of BBPOS's breach.

As I mentioned earlier, Ingenico Inc. was not a party to the 2010 Engineering Development and License Agreement. However, BBPOS may bring a claim for breach of contract against Ingenico Inc.. This is because ROAM Data, Inc., a party to the original agreement, merged into Ingenico Inc., and as such, Ingenico Inc. shall be considered a party to the original agreement.

Also as I mentioned earlier, in this case, the parties have agreed that the License Agreement existed between BBPOS and Ingenico, so you need not deliberate on that element; you may treat it as already proven by Ingenico Inc. Instead, you should focus on the remaining elements which are not in agreement, each of which Ingenico Inc. must prove by a preponderance of the evidence.

**Authority:** "Contract Claims," Massachusetts Superior Court Model Jury Instructions: Civil Instructions     (https://www.mass.gov/doc/superior-court-model-civil-jury-instructions-contract-claims-doc/download) (last revised March 1, 2021); MCLE, Massachusetts Superior Court Civil Jury Instructions, § 14.1.

43

### 2.   Terms of the 2010 Engineering Development and License Agreement:

As with BBPOS's breach of contract claim, you must determine the terms of the 2010 Engineering Development and License Agreement. The terms of License Agreement are those terms to which the parties mutually agreed. In deciding what the terms of the agreement were, unless otherwise expressly defined in the agreement, you should give all words their ordinary and commonly understood meaning.

**Authority:** MCLE, <u>Massachusetts Superior Court Civil Jury Instructions</u>, § 14.3 (citing *City of Springfield v. Dep't of Telecomms. & Cable*, 457 Mass. 562, 568 (2010); *Kravetz v. Merchants Distrib., Inc.*, 387 Mass. 457, 460 (1982); *Rosenfield v. U.S. Trust Co.*, 290 Mass. 210 (1935)).

### 3.  Contractual Performance:

As with BBPOS's breach of contract claim, to recover for a breach of contract, Ingenico Inc. must establish its material performance of all obligations under the 2010 Engineering Development and License Agreement, or demonstrate that it is excused from performance. A material breach of the License Agreement by one party excuses further performance by the nonbreaching party.

There is no breach of contract if BBPOS fully performed its obligations under the License Agreement. If Ingenico Inc. has accepted the benefit of BBPOS's full performance, Ingenico Inc. cannot claim a breach of contract by lack of performance.

**Authority:** MCLE, <u>Massachusetts Superior Court Civil Jury Instructions</u>, § 14.4 (citing *Lease-It, Inc. v. Mass. Port Auth.*, 33 Mass. App. Ct. 391, 397 (1992); *Threlfall v. Coffee Roasters Prods.*, 306 Mass. 378, 380 (1940); *First Nat'l Bank of Boston v. Cartoni*, 295 Mass. 75, 78-79 (1936)).

### 4. Violation of the Agreement

Ingenico Inc. must prove by a preponderance of the evidence that BBPOS breached—in other words—violated the 2010 Engineering Development and License Agreement. BBPOS breached the License Agreement if it failed to comply with one or more essential terms of the agreement. In order to make this determination, you will have to refer to the terms of the License Agreement.

**Authority:** "Contract Claims," Massachusetts Superior Court Model Jury Instructions: Civil Instructions (https://www.mass.gov/doc/superior-court-model-civil-jury-instructions-contract-claims-doc/download) (last revised March 1, 2021).

## III.   DAMAGES

### A.  Introduction

I will now instruct you more particularly on the principles of damages applicable to the claims in this case.

The fact that I am charging you on the issue of damages does not mean that I think damages should be awarded. I am giving you these instructions because I am required to charge you on all phases of the case that you might have to consider. If you find that BBPOS or Ingenico Inc. has not proven each of the elements that I have given you as to a claim, then you may not award damages as to that claim. If you find that BBPOS or Ingenico Inc. has proven each of those elements I have given you as to a claim, then you may award money damages as to that claim.

In awarding money damages, you must consider what amount of money would be full, fair, and reasonable compensation for harm caused by the wrongful conduct. The amount of damages should be based on just and reasonable inferences, even though there may be an element of uncertainty in your determination.

**Authority:** *DeVona v. Zeitels et al.*, 13-cv-10952-IT (Jury Instructions, Doc. 269, Jan. 27, 2017) at 29.

**B.  Damages Generally:**

Each party seeking damages must prove the existence and extent of their damages. In other words, you may make an award of damages only to the extent that you find damages have been proven by a preponderance of the evidence by the party seeking the damages.  The parties are entitled only to damages that they have proven with reasonable certainty. You may not base an award of damages or the amount of any such award on speculation or conjecture. At the same time, damages do not need to be calculated or proved with mathematical exactitude; what is required is that they are based on reasonable and probable estimates.

You must base your evaluation of "reasonably certainty" on any evidence, including expert or opinion evidence. In making an award of damages, you must determine the precise amount to be awarded.  The damages award should be based on sound economic proof.

**Authority:** *DeVona v. Zeitels et al.*, 13-cv-10952-IT (Jury Instructions, Doc. 269, Jan. 27, 2017) at 30; *Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1377 (Fed. Cir. 2003).

### C.  <u>Proximate Cause:</u>

Even if you find that BBPOS has proven each of the elements that I have given to you as a claim, no liability for damages attaches to Defendants unless Defendants' conduct was a proximate cause of the injuries over which BBPOS claims damages.  Defendants are only held responsible for the natural and probable consequences of its conduct.  Similarly, even if Ingenico Inc. has proven each of the elements that I have given you as a claim, no liability for damages attaches to BBPOS unless BBPOS's conduct was a proximate cause of the injuries over which Ingenico Inc. claims damages.  BBPOS is only held responsible natural and probable consequences of its conduct."

**Authority:** *DeVona v. Zeitels et al.*, 13-cv-10952-IT (Jury Instructions, Doc. 269, Jan. 27, 2017) at 31.

**D. Provisional Instruction re: BBPOS's Claim of Misappropriation of Trade Secrets Against Defendants:**

If you conclude that Defendants violated the Georgia Trade Secrets Act, you must decide whether BBPOS is entitled to damages. Monetary recovery for trade secret misappropriation is permitted only for the period in which information is entitled to protection as a trade secret.

**Authority:** *Builder Servs. Grp., Inc. v. Topshelf Builder Specialties, Inc.*, No. CV419-056, 2019 WL 3948370, at *3 (S.D. Ga. Aug. 20, 2019); *Cajun Services Unlimited LLC v. Benton Energy Service Company, et al.*, 2:17-cv-00491-BWA-DPC (Jury Instructions, Doc. No. 266, July 18, 2019) at 19.

1. **Provisional Instruction re: Damages Recoverable:**

Under the Georgia Trade Secrets Act, BBPOS can recover damages for Defendants' unjust enrichment, if any, that is the result of their misappropriation of the trade secrets.

**Authority:** O.G.C.A. § 10-1-763(a).

**E.  <u>BBPOS's Claim of Breach of Contract:</u>**

If you conclude that Ingenico Inc. breached the 2010 Engineering Development and Licensing Agreement, you must decide whether BBPOS is entitled to damages.  The purpose of contract damages is to award the non-breaching party the benefit of the contractual bargain.

You must determine an amount that will compensate BBPOS for the loss of that bargain. You should ask: "Would BBPOS have benefited if Ingenico Inc. had fully performed under the contract?" If so, you should award money damages to compensate BBPOS for the value of the contract benefits that BBPOS lost because of Ingenico Inc.'s breach.  Contract damages do not, however, include disgorgement of Ingenico Inc.'s profits.  Also, you may not award contract damages for the purpose of rewarding BBPOS or punishing Ingenico.

As with the other elements of this claim, BBPOS must prove by a preponderance of the evidence that Ingenico Inc.'s conduct caused the damages.  You should not award damages for any harm that BBPOS or someone other than Ingenico Inc. caused.

**Authority:** "Contract Claims," Massachusetts Superior Court Model Jury Instructions: Civil Instructions (<u>https://www.mass.gov/doc/superior-court-model-civil-jury-instructions-contract-claims-doc/download</u>) (last revised March 1, 2021); MCLE, <u>Massachusetts Superior Court Civil Jury Instructions</u>, § 14.9.3.

**F.  Provisional Instruction re: BBPOS's Claim of Unjust Enrichment:**

If you find that BBPOS has been unjustly enriched by Defendants you may award

BBPOS damages for the value of the benefit that BBPOS conferred on Defendants.

**Authority:** *Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47, 66 (1st Cir. 2009) (applying Massachusetts law), *decision clarified on denial of reh'g*, 559 F.3d 1 (1st Cir. 2009).

**G.  Provisional Instruction re: Amount of Profit Allocable to the Trade Secrets:**

BBPOS is seeking damages for the misappropriation of trade secrets under what is called the "entire market value rule." Pursuant to this rule, a plaintiff may be awarded damages a portion of revenues or profits attributable to an entire multi-component product where the plaintiff establishes that it is the protected feature or features that drives the demand for the entire product. The ultimate award of damages must reflect the value attributable to the protected features of the product, and no more.

In this case, BBPOS bears the burden to establish the entire value of a product as a marketable article is properly attributable to the protected feature or features.

Second, in order for you to assess damages based on the entire market value of the product, BBPOS must have established that the protected feature or features drove the demand for the entire product. If BBPOS does not establish the protected feature or features drove the demand for the entire product, you must apportion the damages down to a reasonable estimate of the value of the protected feature or features.

**Authority:**  *Intell. Ventures I LLC v. Symantec Corp.*, 1:10-CV-01067-LPS (Mem. Order, Doc. 635, January 23, 2015);  *In re Avaya Inc.*, 602 B.R. 445, 459 (S.D.N.Y. 2019) (citing *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1337 (Fed. Cir. 2009)); *MSC Software Corp. v. Altair Eng'g, Inc.*, No. CV 07-12807, 2015 WL 13273227, at *4–5 (E.D. Mich. Nov. 9, 2015), *supplemented*, No. CV 07-12807, 2015 WL 13359781 (E.D. Mich. Nov. 22, 2015) (quoting *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014)).

**H. <u>Ingenico's Claim of Breach of Contract:</u>**

If you conclude that BBPOS breached the 2010 Engineering Development and Licensing Agreement, you must decide whether Ingenico Inc. is entitled to damages.  As I mentioned earlier, the purpose of contract damages is to award the non-breaching party the benefit of the contractual bargain.

You must determine an amount that will compensate Ingenico Inc. for the loss of that bargain.  You should ask: "Would Ingenico Inc. have benefited if BBPOS had fully performed under the contract?" If so, you should award money damages to compensate Ingenico for the value of the contract benefits that Ingenico lost because of BBPOS's breach.  As I mentioned earlier, contract damages do not, however, include disgorgement of BBPOS's profits.  Also, you may not award contract damages for the purpose of rewarding Ingenico Inc. or punishing BBPOS.

As with the other elements of this claim, Ingenico Inc. must prove by a preponderance of the evidence that BBPOS's conduct caused the damages.  You should not award damages for any harm that Ingenico Inc. or someone other than BBPOS caused.

**Authority:** "Contract Claims," Massachusetts Superior Court Model Jury Instructions: Civil Instructions (https://www.mass.gov/doc/superior-court-model-civil-jury-instructions-contract-claims-doc/download) (last revised March 1, 2021); MCLE, <u>Massachusetts Superior Court Civil Jury Instructions</u>, § 14.9.3.

## IV.    <u>FINAL INSTRUCTIONS</u>

I will now provide some final instructions regarding your deliberations.

A. **Foreperson's Role; Unanimity:**

When you return to the jury room to deliberate, you should first choose a foreperson, and then discuss the case with the other jurors. You shall permit your foreperson to preside over your deliberations, and your foreperson shall speak for you here in court. Any verdict you return must be unanimous.

**Authority:** *DeVona v. Zeitels et al.*, 13-cv-10952-IT (Jury Instructions, Doc. 269, Jan. 27, 2017) at 38.

**B.  <u>Consideration of Evidence:</u>**

Your verdict must be based solely on the evidence and on the law as I have given it to you in these instructions. However, nothing that I have said or done is intended to suggest what your verdict should be—that is entirely for you to decide.

**Authority:** *DeVona v. Zeitels et al.*, 13-cv-10952-IT (Jury Instructions, Doc. 269, Jan. 27, 2017) at 39.

### C. **Reaching Agreement:**

Each of you must decide the case for yourself, but you should do so only after considering all the evidence, discussing it fully with the other jurors, and listening to the views of the other jurors. Do not be afraid to change your opinion if you think you are wrong. But do not come to a decision simply because other jurors think it is right.

This case has taken time and effort to prepare and try. There is no reason to think it could be better tried or that another jury is better qualified to decide it. It is important therefore that you reach a unanimous verdict if you can do so conscientiously. If it looks at some point as if you may have difficulty in reaching a unanimous verdict, and if the greater number of you are agreed on a verdict, the jurors in both the majority and the minority should reexamine their positions to see whether they have given careful consideration and sufficient weight to the evidence that has favorably impressed the jurors who disagree with them.

You should not hesitate to reconsider your views from time to time and change them if you are persuaded that this is appropriate.

It is important that you attempt to return a verdict, but of course, only if each of you can do so after having made your own conscientious determination. Do not surrender an honest conviction as to the weight and effect of the evidence simply to reach a verdict.

**Authority:** *DeVona v. Zeitels et al.*, 13-cv-10952-IT (Jury Instructions, Doc. 269, Jan. 27, 2017) at 4.

**D.  Restrictions on Communication with Outside Sources:**

Throughout your deliberations, you may discuss with each other the evidence and the law that has been presented in this case, but you must not communicate with anyone else by any means about the case.  You also cannot learn from outside sources about the case, the matters in the case, the legal issues in the case, or individuals or other entities involved in the case.  This means you may not use any electronic device or media (such as a phone, computer, or tablet), the internet, any text or instant messaging service, or any social media apps (such as Twitter, Facebook, Instagram, LinkedIn, YouTube, WhatsApp, and Snapchat) to research or communicate about what you've seen and heard in this courtroom.

Those restrictions continue during deliberations because it is essential, under our Constitution, that you decide this case based solely on the evidence and law presented in this courtroom.  Information you find on the internet or through social media might be incomplete, misleading, or inaccurate.  And, as I noted in my instructions at the start of the trial, even using your smartphones, tablets, and computers—and the news and social media apps on those devices— may inadvertently expose you to certain notices, such as pop-ups or advertisements, that could influence your consideration of the matters you've heard about in this courtroom.

You are permitted to discuss the case with only your fellow jurors during deliberations because they have seen and heard the same evidence and instructions on the law that you have and it is important that you decide this case solely on the evidence presented during the trial, without undue influence by anything or anyone outside of the courtroom.  For this reason, I expect you to inform me at the earliest opportunity, should you learn about or share any information about this case outside of this courtroom or the jury room, or learn that another juror has done so.

**Authority:** Judicial Conference Committee on Court Administration and Case Management, *Proposed Model Jury Instructions The Use of Electronic Technology to Learn or Communicate about a Case* (https://www.uscourts.gov/sites/default/files/proposed_model_jury_instructions.pdf) (updated June 2020).

**E.** <u>**Communication with the Court:**</u>

If it becomes necessary during your deliberations to communicate with me, you may send a note through the jury officer signed by your foreperson or by one or more members of the jury. No member of the jury should ever attempt to communicate with me on anything concerning the case except by a signed writing, and I will communicate with any member of the jury on anything concerning the case only in writing, or orally here in open court.  If you send out a question, I will consult with the parties as promptly as possible before answering it, which may take some time. You may continue with your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.

**Authority:** *DeVona v. Zeitels et al.*, 13-cv-10952-IT (Jury Instructions, Doc. 269, Jan. 27, 2017) at 42.