## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **ANYWHERECOMMERCE, INC. and BBPOS LIMITED,** | |
| **Plaintiffs,** | **Civil Docket No: 1:19-cv-11457-IT** |
| **v.** | **Jury Trial Demanded** |
| **INGENICO INC., INGENICO CORP., and INGENICO GROUP SA,** | |
| **Defendants.** | |

## PLAINTIFFS' PROPOSED JURY INSTRUCTIONS

Plaintiffs AnywhereCommerce Inc. and BBPOS Limited (together, "Plaintiffs"), by and through their undersigned counsel, Kutak Rock LLP, respectfully and jointly submit these Proposed Jury Instructions pursuant to this Court's Scheduling Order. Plaintiffs reserve their right to supplement or amend these requests as appropriate.

4869-0665-5580.1

*AnywhereCommerce, Inc., et al. v. Ingenico, Inc., et al.*, **Civil Action No. 1:19-cv-11457-IT (District of Mass.)**

Requested Jury Instruction

## Georgia Trade Secret Act

Plaintiff BBPOS has asserted a claim against the Defendants for trade secret misappropriation under the Georgia Trade Secret Act. Trade secret means information that: (1) has independent economic value, actual or potential, because it is not generally known or readily ascertainable to the public or to persons who can obtain economic value from its disclosure or use; and (2) is the subject of reasonable efforts to maintain its secrecy. A trade secret may include a device, method, technique, or process.

In this case, BBPOS has alleged that it had five trade secrets that were misappropriated by Ingenico. Those trade secrets have been referred to at trial as (1) audio jack polarity detection; (2) power management; (3) signal control settings and audio gain; (4) communication formats; and (5) data security / encryption methods.

To recover damages for misappropriation of a trade secret, the Plaintiff must prove each of the following elements by a preponderance of the evidence:

(1) that BBPOS possessed information —which may include technical or nontechnical data, financial plans, customer lists, a product design, or product plans;

(2) that the information derives economic value from not being generally known or readily ascertainable to others; and

(3) that the information is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

2

If you find that BBPOS proved that it had a trade secret, then BBPOS must further establish that the trade secret was misappropriated by proving that:

1. Acquisition Theory, GA ST § 10-1-761(2)(a) Ingenico acquired BBPOS' trade secrets and Ingenico knew or had reason to know the trade secret was acquired through improper means, including theft, bribery, misrepresentation, breach or inducement of a breach of a confidential relationship or other duty to maintain secrecy or limit use, or espionage through electronic or other means.

2. Disclosure Theory, GA ST § 10-1-761(2)(b)(1) Ingenico disclosed or used BBPOS' trade secret without BBPOS' consent; and Ingenico used improper means to acquire knowledge of the trade secret; *or*

   Ingenico disclosed or used BBPOS' trade secret without BBPOS' consent and at the time of disclosure or use, knew or had reason to know that knowledge of the trade secret was either: (i) derived from or through a person who had utilized improper means to acquire it; (ii) acquired the trade secret under circumstances giving rise to a duty to maintain its secrecy or limit its use; or (iii) the trade secret was derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use.

[Authority: *Penalty Kick Mgmt. Ltd. v. Coca Cola Co.*, 318 F.3d 1284, 1290-91 (11th Cir. 2003; § 142:27. Jury instructions—Definition of a trade secret, 13 Bus. & Com. Litig. Fed. Cts. § 142:27 (5th ed.); *Diamond Power Intl, Inc. v. Davidson*, 540 F. Supp. 2d 1322, 1332 (N.D. Ga. 2007) (quoting O.C.G.A. § 10-1-761(4)); *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984).]

4869-0665-5580.1

*AnywhereCommerce, Inc., et al. v. Ingenico, Inc., et al.*, **Civil Action No. 1:19-cv-11457-IT (District of Mass.)**

Requested Jury Instruction

**<u>Georgia Trade Secret Act – Possession of a Trade Secret</u>**

As the first step of a three-step test, the Plaintiffs must prove that they possess some product or information that could qualify as a trade secret. Trade secrets can consist of information, technical or nontechnical data, financial plans, customer lists, product designs, or product plans.

[Authority: *HCC Ins. Holdings, Inc. v. Flowers*, 237 F. Supp. 3d 1341, 1350 (N.D. Ga. 2017); *Insight Tech., Inc. v. FreightCheck, LLC*, 633 S.E.2d 373, 380 (2006); *see generally Avnet, Inc. v. Wyle Lab'ys, Inc.*, 437 S.E.2d 302, 304 (1993)]

*AnywhereCommerce, Inc., et al. v. Ingenico, Inc., et al.*, **Civil Action No. 1:19-cv-11457-IT
(District of Mass.)**

Requested Jury Instruction

## Georgia Trade Secret Act – Trade Secret Derives Economic Value

To prove that a trade secret derives economic value, BBPOS must prove that there is value
in the information because it is not generally known to, and not being generally ascertainable by
proper means by, other persons who could obtain economic value from its disclosure and use. The
economic benefit could be an actual economic benefit or a potential benefit that has not yet been
realized. The fact that all or some of the component parts of a product are generally known does
not preclude protection for a secret combination, compilation or integration of individual elements.
A trade secret can include a system where all the elements are in the public domain, but there has
been accomplished an effective, successful and valuable integration of the public domain elements
and the trade secret gave the [trade secret owner] a competitive advantage which is protected from
misappropriation.


[Authority: *Essex Grp., Inc. v. Southwire Co*., 501 S.E.2d 501, 554 (1998); *Rivendell Forest
Prod., Ltd. v. Georgia-Pac. Corp*., 28 F.3d 1042, 1046 (10th Cir. 1994); *Bacon v. Volvo Serv.
Ctr., Inc.*, 597 S.E.2d 443 (2004)]

*AnywhereCommerce, Inc., et al. v. Ingenico, Inc., et al.*, Civil Action No. 1:19-cv-11457-IT
(District of Mass.)

Requested Jury Instruction

**Georgia Trade Secret Act – Reasonable Efforts to Maintain Secrecy**

The second part of the test for a product to qualify for protection under the Georgia Trade Secrets Act is that reasonable efforts must have been taken to maintain the secrecy of the information. The efforts taken to maintain the secrecy of the information need only be "reasonable" it is not the general view that absolute secrecy is needed to qualify information as a trade secret. Actions such as issuing non-disclosure agreements, even limiting which employees may access certain information has qualified as protecting the trade secret. If you find that BBPOS has taken reasonable steps to maintain the secrecy of their trade secrets, they have satisfied their burden.

[Authority: *Infrasource, Inc. v. Hahn Yalena Corp.*, 613 S.E.2d 144, 149 (2005); *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 418(III)(A) (1999); *EarthCam, Inc. v. OxBlue Corp.,* 49 F. Supp. 3d 1210, 1226 (N.D. Ga. 2014)]

4869-0665-5580.1

*AnywhereCommerce, Inc., et al. v. Ingenico, Inc., et al.*, **Civil Action No. 1:19-cv-11457-IT (District of Mass.)**

Requested Jury Instruction

### Georgia Trade Secret Act – Damages

If you have find that BBPOS has met the elements under the Georgia Trade Secrets Act, then you may award damages to BBPOS. In the event of the misappropriation of a trade secret, the owner of that secret may enjoin the actual or threatened misappropriation and may recover damages arising from the misappropriation. Damages include the actual losses suffered due to the theft of the trade secret, as well as unjust enrichment. If the owner cannot prove these damages, the court may award a reasonable royalty. If the misappropriation was willful, the owner of the trade secret may recover exemplary damages, also known as punitive damages, up to twice the amount of compensatory damages.

**1. Actual Damages**

Under the Georgia Trade Secret Act, you may award actual damages to the Plaintiffs. Actual damages are simply defined as those meant to compensate for the actual injury sustained by the theft of the trade secret.

**2. Unjust Enrichment**

You may choose to award damages for unjust enrichment. Unjust enrichment is defined as the economic value of whatever benefit a defendant has gained from disclosing or using plaintiffs manufacturing processes and tools that have been shown to be trade secrets. More simply, unjust enrichment damages, should you choose to award them, return to the aggrieved party the benefits the other party gained from committing a wrongful act.

**3. Exemplary Damages**

If the BBPOS prevails on the misappropriation of trade secrets claim, then you must decide whether Ingenico willfully and maliciously misappropriated the trade secrets. If willful and malicious misappropriation exists, the court may award exemplary damages and reasonable attorneys' fees to the prevailing party.

Willfulness is reckless indifference to an unreasonable risk. Malicious misappropriation involves the subjective intent to cause harm to the owner of the trade secret.

[Authority: O.C.G.A. § 10-1-762; O.C.G.A. § 10-1-763; § 142:31. Jury instructions—Damages, 13 Bus. & Com. Litig. Fed. Cts. § 142:31 (5th ed.); *Margaret Furlong, et al., v. Pure Grace, Inc., et. al.,* 2008 WL 6601250 (D. Or. 2008); *see also Accenture global Services, GmbH and Accenture, LLP v. Guidewire Software, Inc.,* 2010 WL 2397810 (D. Del. 2010)]

*AnywhereCommerce, Inc., et al. v. Ingenico, Inc., et al.*, **Civil Action No. 1:19-cv-11457-IT (District of Mass.)**

Requested Jury Instruction

**<u>Defendants' Affirmative Defense</u>**
**<u>Trade Secret – Generally Known</u>**

In their affirmative defense, Defendants have asserted that there was not a violation of the Georgia Trade Secrets Act because the information was generally known.  A trade secret refers to information, without regard to form, including, but not limited to, technical or nontechnical data, a formula, a pattern, a compilation, a program, a device, a method, a technique, a drawing, a process, financial data, financial plans, product plans, or a list of actual or potential customers or suppliers which is not commonly known by or available to the public. If you find that the BBPOS's information was generally known or available to the public, you must find in favor of Ingenico's affirmative defense.


[Authority: Ga. Code Ann. § 10-1-761 (West)]

4869-0665-5580.1

*AnywhereCommerce, Inc., et al. v. Ingenico, Inc., et al.*, **Civil Action No. 1:19-cv-11457-IT (District of Mass.)**

Requested Jury Instruction

**<u>Defendants' Affirmative Defense</u>**
**<u>Trade Secret – Failure to Maintain Reasonable Protections of Secrecy</u>**

In order to prevail on a claim for trade secret misappropriation under the Georgia Trade Secret Act, it must be shown that reasonable efforts were taken to maintain the secrecy of the trade secret. Defendants have asserted that Plaintiffs did not take reasonable steps to protect the secrecy of their information. If the Plaintiffs have disclosed what they allege are trade secrets at trade shows or to the public through other public demonstrations, than any information publicly disclosed no longer qualifies as a trade secret. If you find that reasonable steps were not taken by the Plaintiffs to protect this secrecy you must find in favor of the Defendants under Plaintiffs claim for the violation of the Georgia Trade Secrets Act.

[Authority: GA ST § 10-1-765; *Avnet, Inc. v. Wyle Laboratories*, 437 S.E.2d 302, 305 (1993).]

4869-0665-5580.1

*AnywhereCommerce, Inc., et al. v. Ingenico, Inc., et al.*, Civil Action No. 1:19-cv-11457-IT (District of Mass.)

Requested Jury Instruction

## Breach of Contract – Generally

Both parties have asserted claims against the other for breach of contract. Plaintiff asserts that Defendants have breached the duties of confidentiality and the duty to indemnify. Defendant asserts that Plaintiff has failed to indemnify. A contract exists when two or more companies agree to bind themselves by promises they make to each other. That agreement may be written or oral. To prove breach of contract, a party must prove that three things are more likely true than not true:

1.   The opposing party failed to perform their obligations before the other could perform;

2.   The party at fault violated the contract or in other words, breached the contract; and

3.   The nonbreaching party suffered damages because of the breach.

I will now explain these elements in more detail.[1]

### (1) Offer

An offer must do three things: (1) express a willingness to enter into a contract, (2) state the terms of the proposed contract with reasonable certainty, and (3) make clear that a contract will bind both sides if the other company accepts the offer. To state the proposed contract with reasonable certainty, the offer must communicate the essential[2] terms of the contract. A term is

---

[1]      *Vacca* v. *Brigham & Women's Hospital, Inc.,* 98 Mass. App. Ct. 463, 467 (2020). See also *Kauders* v. *Uber Technologies, Inc.,* 486 Mass. 557, 572 (2021) (the party seeking to enforce a  contract through an online app must prove "[1] reasonable notice of the terms and [2] a reasonable manifestation of assent to those terms").

[2] This instruction uses the familiar word "essential" instead of the arguably more precise, but more legalistic, word "material." The cases appear to use the words "essential" and "material" interchangeably. *See, e.g., Situation Management Systems, Inc. v. Malouf, Inc*., 724 N.E.2d 699, 702 (2000); *Novel Iron Works, Inc. v. Wexler Const. Co., Inc*., 26 Mass. App. Ct. 401, 408 (1988), further appellate review denied (1988). A judge may, however, choose to substitute "material" or "important" for the word "essential" throughout this instruction.

4869-0665-5580.1

"essential" if it is an essential part of the proposed contract. In other words, an essential term is something that makes a difference to one side or the other when they form their contract.[3]

Sometimes an offer does not explicitly address a particular matter, such as when or how to perform the contract. That omission does not matter if the parties intended to promise to perform under the contract within a reasonable time or manner or if they intended to be bound by established business or professional practices.[4] On the other hand, if you find that they failed to agree upon an essential term, there is no contract.

**(2) Acceptance**

To accept an offer, the company must communicate to the other company that it agrees to all the essential terms of the offer.[4] Acceptance may occur in writing, through spoken words, or by conduct that reasonably conveys an intent to accept the offer.

If someone signs a written agreement or accepts it in some other way, they are bound by its terms whether or not they read and understand it. No acceptance occurs if a company responds to an offer by changing any of the essential terms. For instance, there is no contract if someone offers to sell a car for $5000 and you respond by saying "I accept your offer to sell the car but I'll pay $4000".[5]

**(3) Consideration**

Finally, a party must prove that they took action, or decided not to take action because they reasonably relied on the offer or promise. To do this the party asserting breach of contract must show that four things are more likely true than not true:

---

[3] *Vacca v. Brigham & Women's Hospital, Inc.,* 98 Mass App. Ct. 463, 468 (2020).
[4] Lack of agreement on "subsidiary matters [does not] not preclude the formation of a binding contract." *McCarthy v. Tobin*, 429 Mass. 84, 86 (1999), citing *Lafayette Place Associates v. Boston Redevelopment Authority*, 427 Mass. 509, 516, 694 N.E.2d 820 (1998) and *Blomendale v. Imbrescia*, 25 Mass App. Ct. 144, 147 (1987).
[5] *See, e.g.*, G.L. c. 106 § 2-207 (Uniform Commercial Code).

(1) There was an offer;

(2) The nonbreaching party reasonably should have expected the nonbreaching party to act or not to act because of the offer or promise;

(3) The breaching party in fact acted, or decided not to act, because of the offer or promise; and

(4) The nonbreaching party suffered some loss or disadvantage because of that action or inaction.

**(4) Breach.**

To succeed on a breach of contract claim a party must prove that the other party breached - in other words, violated - the contract. A party breached the contract if it failed comply with one or more essential terms of the contract. In order to make this determination, you will have to refer to the terms of the parties' contract as expressed in their offer and acceptance.

**(5) Damages.**

If the contract was breached, the party asserting the claim must prove the amount of damages resulting from that breach. By instructing you on damages, I am not suggesting anything about your answers to questions.

The purpose of contract damages is to award the nonbreaching party the benefit of the contractual bargain. You must determine an amount that will compensate them for the loss of that bargain. You should ask: "Would they have benefited if the other party had fully performed the contract?" If so, you should award money damages to compensate them for the value of the contract benefits that were lost because of the breach. Contract damages do not, however, include emotional distress. Also, you may not award damages for the purpose of rewarding either party.

4869-0665-5580.1

As with the other elements of the claim, to succeed a party must prove that the breaching party's conduct more likely than not caused the damages. You should not award damages for any harm that someone other than the breaching party caused.

I'll conclude with a few general instructions about the damages that I have mentioned in this case.

First, some damages are difficult to prove with certainty. Sometimes you have little evidence to work with. But you can still award full and fair compensation, if the evidence allows you to determine damages in a reasonable way. The important thing is that you cannot determine damages by guessing. You must base your decision on fair and reasonable conclusions based on the evidence. If you decide to award damages, the amount of damages you award is up to your judgment as jurors.

[Authority: § 94:10. Plaintiff's request for instructions—Contract claim—Superior Court Model Jury Instructions, 10C Mass. Prac., Procedural Forms Annotated § 94:10 (6th ed.)]

*AnywhereCommerce, Inc., et al. v. Ingenico, Inc., et al.*, **Civil Action No. 1:19-cv-11457-IT (District of Mass.)**

Requested Jury Instruction

## Ambiguous Terms. *If Applicable based on motions in limine*

In this case, the parties disagree about the meaning of certain language in the contract, namely the exclusivity provisions in the Agreement. This language has more than one reasonable and logical meaning.

You will have to decide what the parties intended when they agreed to this language. You may consider the meaning of the words that the parties used and what they said during negotiations or in other discussions or writings.

4869-0665-5580.1

***AnywhereCommerce, Inc., et al. v. Ingenico, Inc., et al.*, Civil Action No. 1:19-cv-11457-IT
(District of Mass.)**

Requested Jury Instruction

**Plaintiff's Affirmative Defense**
**Preceding Material Breach**

Plaintiff has asserted the affirmative defense of a material breach of contract. A material breach of an agreement occurs when there is a breach of an essential and inducing feature of the contract. Where there is a material breach of the contract, the nonbreaching party is excused from further performance under the contract. If you find that a material breach of the contract occurred before any breach of the contract by the Plaintiff, you must find that the Plaintiff has not breached the contract. Where there is a material breach of a contract the injured party may stop their performance under the contract. To find that there was a material breach of the contract, you must find that there was a breach of a material and inducing term of the contract.

[Authority: *Hastings Assocs., Inc. v. Local 369 Bldg. Fund, Inc*., 675 N.E.2d 761, 766 (1997). *See Lease–It, Inc. v. Mass. Port Auth*., 600 N.E.2d 599, 602 (1992); *Ward v. American Mut. Liab. Ins. Co*., 443 N.E.2d 1342, 1343 (1983);  *See* Restatement (Second) of Contracts § 237 (1981)]

4869-0665-5580.1

***AnywhereCommerce, Inc., et al. v. Ingenico, Inc., et al.*, Civil Action No. 1:19-cv-11457-IT**
**(District of Mass.)**

Requested Jury Instruction

### **Unjust Enrichment**

BBPOS claims that Ingneico has been unjustly enriched. Under Massachusetts law, unjust enrichment has three elements: (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge of the benefit by the defendant; and (3) the acceptance or retention of the benefit by the defendant under circumstances which make such acceptance or retention inequitable. To establish a claim for unjust enrichment, BBPOS must prove:

1. BBPOS has conferred a benefit on Ingenico;

2. Ingenico knows of the benefit; and

3. The given circumstances make it inequitable for defendant to retain the benefit without paying value in return.

Where a defendant has been unjustly enriched, the law implies a contract in order to prevent it. However, if you find that the parties entered into an express contract on the same matter, you may not allow the plaintiff to recover under a theory of unjust enrichment.

[Authority: § 2:8.Unjust enrichment, 1 Handling Business Tort Cases § 2:8; *Sweeney v. DeLuca*, No. 042338, 2006 WL 936688 (Mass. Super. Mar. 16, 2006)]

4869-0665-5580.1

*AnywhereCommerce, Inc., et al. v. Ingenico, Inc., et al.*, **Civil Action No. 1:19-cv-11457-IT (District of Mass.)**

Requested Jury Instruction

## Damages for Unjust Enrichment

Damages for unjust enrichment are measured by the extent of the defendant's enrichment. If you find for BBPOS on its unjust enrichment claim, you should award it an amount of money that the greater weight of the evidence shows was unfairly and unjustly retained by Ingenico in connection with the benefits conferred by BBPOS.

[Authority: § 2:8.Unjust enrichment, 1 Handling Business Tort Cases § 2:8; *Sweeney v. DeLuca*, No. 042338, 2006 WL 936688 (Mass. Super. Mar. 16, 2006)]

*AnywhereCommerce, Inc., et al. v. Ingenico, Inc., et al.*, Civil Action No. 1:19-cv-11457-IT (District of Mass.)

Requested Jury Instruction

**<u>Promissory Estoppel</u>**

Plaintiff asserts promissory estoppel as an affirmative defense to Defendant's claim for indemnity. Plaintiff asserts that the Defendant failed to keep the Plaintiff informed of the status or merit of ongoing patent infringement claims, failed to provide information or evidence of the reasonableness of these settlements, and failed to provide evidence of the reasonableness of the attorney's fees and costs allegedly incurred in settling these claims. Plaintiff asserts that the Defendant's failure to do these acts has prevented it from indemnifying the Defendant for these settlements.

To state a claim for promissory estoppel, Plaintiff must establish that (1) a promisor makes a promise which he should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee, (2) the promise does induce such action or forbearance, and (3) injustice can be avoided only by enforcement of the promise. The reliance on the promise must have been reasonable.

If you find that the Plaintiff had a contractual duty to indemnify the Defendant under the BBPOS-ROAM Licensing Agreement, you must then evaluate whether the Plaintiff has met all the elements of promissory estoppel. If you find that Plaintiff has met this burden, it is excused from its duty to indemnify.

[Authority: *Loranger Constr. Corp. v. E.F. Hauserman Co.*, N.E.2d 306, 308 (1978); *see Rhode Island Hosp. Trust Nat'l Bank v. Varadian*, 647 N.E.2d 1174, 1178 (1995)]

*AnywhereCommerce, Inc., et al. v. Ingenico, Inc., et al.*, **Civil Action No. 1:19-cv-11457-IT (District of Mass.)**

Requested Jury Instruction

**<u>Statute of Limitations</u>**

The Defendant has asserted the statute of limitations as a defense to Plaintiff's claim for trade secret misappropriation. In Georgia, an action for misappropriation must be brought within five years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered. Suspicion alone is insufficient to trigger the limitations period on a misappropriation of trade secrets claim. Mere knowledge that a company is competing in the marketplace and manufacturing similar parts is not dispositive on the accrual of the statute of limitations in a trade secret misappropriation case. If certain facts necessary to the claim are unavailable even to a reasonably diligent plaintiff, the limitations period is tolled, until the facts do become available.

If you find that the Plaintiff brought its claim more than five years after it could reasonably have, or did, discover the theft of its trade secrets, than you cannot find in favor for Plaintiff under the Georgia Trade Secret Act.

[Authority: O.C.G.A. § 10-1-766; *Porex Corp. v. Haldopoulos*, 644 S.E.2d 349, 353 (2007); *see generally Prescott v. Morton Int'l, Inc*., 769 F. Supp. 404,406 (D. Mass. 1990); *Alamar Biosciences, Inc. v. Difco Lab'ys, Inc*., No. CIV-S-941856 DFL PAN, 1995 WL 912345 (E.D. Cal. Oct. 13, 1995); ]

Respectfully submitted:


        */s/ Melissa A. Bozeman*

By: Melissa A. Bozeman (Pro Hac Vice)
   Pennsylvania Bar No. 201116
   Oliver D. Griffin (Pro Hac Vice)
   Pennsylvania Bar No. (80126)
   Peter N. Kessler (Pro Hac Vice)
   Pennsylvania Bar No. 209033
   KUTAK ROCK LLP
   Two Logan Square
   100 N. 18th Street, Suite 1920
   Philadelphia, PA  19103-4104
   (215) 299-4384 (Telephone)
   (215) 981-0719 (Facsimile)
   Melissa.bozeman@kutakrock.com
   Oliver.griffin@kutakrock.com
   Peter.kessler@kutakrock.com

    and

   Leland P. Abide (Pro Hac Vice)
   MN Bar No. 039269
   KUTAK ROCK LLP
   60 South Sixth Street, Suite 3400
   Minneapolis, MN 55402-4018
   Telephone: (612) 334-5000
   Facsimile: (612) 334-5050
   leland.abide@kutakrock.com

    and

   Jonathon D. Friedmann, Esq. (BBO # 180130)
   Robert P. Rudolph, Esq. (BBO # 684583)
   RUDOLPH FRIEDMANN LLP
   92 State Street
   Boston, MA 02109
   Tel.: (617) 723-7700
   Fax: (617) 227-0313
   JFriedmann@rflawyers.com
   RRudolph@rflawyers.com

    and

4869-0665-5580.1

Ricardo G. Cedillo
DAVIS, CEDILLO & MENDOZA, INC.
755 E. Mulberry Ave., Ste 500
San Antonio, Texas 78212
Tel: (210) 822-6666
Fax: (210) 822-1151
rcedillo@lawdcm.com

Dated: April 10, 2023                    *Attorneys for Plaintiffs / Counterclaim-Defendants*

**CERTIFICATE OF SERVICE**

I, Melissa A. Bozeman hereby certify that I have served a true and correct copy of the foregoing Proposed Jury Instructions on this 10th day of April, 2023, upon all counsel of record via CM / ECF Notification.

*/s/ Melissa A. Bozeman*
Melissa A. Bozeman

4869-0665-5580.1