UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANYWHERECOMMERCE, INC. and BBPOS LIMITED,<br>        Plaintiffs,<br><br>    v.<br><br>INGENICO INC., INGENICO CORP. and INGENICO GROUP, SA,<br>        Defendants. | CIVIL ACTION NO.<br>1:19-cv-11457-IT |

### MEMORANDUM OF LAW IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE ANY AND ALL PAROL EVIDENCE CONCERNING THE ENGINEERING DEVELOPMENT AND LICENSE AGREEMENT AND TO PRECLUDE BBPOS LIMITED FROM REFERRING TO THAT AGREEMENT AS A MERE "PRODUCT LICENSE"

Defendants Ingenico Inc., Ingenico Corp., and Ingenico Group, SA (collectively, "Ingenico") submit this Memorandum of Law in support of their Motion *In Limine* to Exclude Any and All Parol Evidence Concerning the Engineering Development and License Agreement and to Preclude BBPOS Limited from Referring to that Agreement as a Mere "Product License," pursuant to Fed. R. Evid. 401, 403.

The clear and unambiguous language of the Engineering Development and License Agreement between ROAM Data, Inc. ("ROAM Data") and Plaintiff BBPOS Limited ("BBPOS") (dated May 4, 2010) (as amended, the "Agreement") granted ROAM Data a broad intellectual property license and governs the engineering, development, and sale of certain services and devises.[1]  BBPOS seeks to introduce at trial parol evidence to overcome, and indeed

---

[1] A true and accurate copy of the Engineering Development and License Agreement (dated May 4, 2010) is attached hereto as Exhibit 1.  A true and accurate copy of the Amendment to Engineering Development & Licensing Agreement (dated August 15, 2011) is attached hereto as Exhibit 2.

contradict, the clear and unambiguous language of the Agreement and to recast the Agreement as conveying merely a license for a single product. As the language of the Agreement is clear and unambiguous, any parol evidence is inadmissible as a matter of law and the Court should exclude it.

Furthermore, BBPOS's attempted mischaracterization of the Agreement would mislead the finder of fact by creating the false impression that Ingenico did not enjoy exclusive rights in BBPOS's intellectual property, including the alleged trade secrets that are at issue in this case. To prevent both unfair prejudice to Ingenico and misleading the jury, the Court should preclude BBPOS from referring to the Agreement as a mere "product license," "exclusive product license," or similar mischaracterizations.

## ARGUMENT

### I. Parol Evidence Is Inadmissible Because The Language In The Agreement Is Clear And Unambiguous

#### A. The Language in the Agreement is Clear and Unambiguous

The Agreement, as amended, is plainly an intellectual property license and not a product license. The plain language of the Agreement unambiguously granted ROAM Data[2] an array of intellectual property rights and not merely the right to sell or distribute a single product. The Agreement provided ROAM Data a license to specified intellectual property relating to two separate products and permitted ROAM Data to "freely use" that intellectual property for

---

[2] Ingenico, Inc. did not become a party to the Agreement until it merged with ROAM Data in 2017. By way of history, in May 2010, when ROAM Data and BBPOS entered into the Agreement, Ingenico, Inc. held a minority (40.32%) interest in ROAM Data. Memorandum & Order (dated March 29, 2023) (ECF No. 228) at 5. In February 2012, Ingenico, Inc.'s ownership interest in ROAM Data increased to 74.71%. *Id.* As of January 2015, ROAM Data was a wholly-owned subsidiary of Ingenico, Inc., and ROAM Data merged with and into Ingenico, Inc. at the end of 2017. *Id.* at 6.

specified purposes. *See* Exhibit 1 at § 1.1; Exhibit 2 at page 1. Nonetheless, in an attempt to evade the plain language of the Agreement, BBPOS seeks to limit the Agreement's scope to sales of one product – the Circle Swipe Device. *See* AnywhereCommerce, Inc.'s and BBPOS Limited's Memorandum of Reasons in Support of their Motion for Summary Judgment on Ingenico Inc.'s Second Amended Counterclaims (ECF No. 120) ("BBPOS SJ Mem.") at 16-20.

The plain and unambiguous language of the Agreement directly contradicts BBPOS's position. As amended, the Agreement contains no restrictions to a single device, and expressly provided ROAM Data the license to use a wide range of intellectual property concerning credit card reading technology:

> [BBPOS] hereby grants to [ROAM Data] a worldwide, perpetual, fully-paid license to freely use the Partner Intellectual Property to make, have made, develop, have developed, use, sell, offer for sale, import and distribute the Products, any portion thereof, or any products similar to or based upon any Products.

Exhibit 2 at page 1. The Agreement expressly defines "Products" as including two different devices: the "Encrypted Circle Swipe reader" and an "EMV capable POS unit with Bluetooth interface." Exhibit 1 at page 10 (Schedule 1). As amended, the Agreement expansively defines "Partner Intellectual Property" to include:

> (a) any and all patents and patent applications relating to the Products, including without limitation US Patent Application Number 12/767,831 for secure audio coupled card swiper filed on April 27, 2010 with the United State Patent and Trademark Office (the "Patent Application") and any patents issuing on the Patent Application, including (i) any reissues, renewals, reexaminations, substitutions or extension s thereof and foreign equivalents of the foregoing; (ii) any claim of a continuation-in-part application or patent that is entitled to the priority date of, and is directed specifically to subject matter specifically described in, the Patent Application; (iii) any foreign counterpart thereof (including PCTs); and (iv) any supplementary protection certificates and any other patent term extensions, restorations and exclusivity periods and the like of the Patent Application; and (b) any copyrights, trademarks,

3

> trade names, trade secrets, knowledge, data and information owned
> or controlled by [BBPOS] relating to the Products.

Exhibit 2 at page 1.

In describing the exclusive nature of the Agreement, the express terms further provide:

> Without limiting the generality of the foregoing, the Partner may
> not, directly or indirectly, anywhere in the world, use or sell any
> Products, or any portion thereof, or any products similar to or
> based upon any Products (other than provided in this Agreement)
> or grant any other person rights to the Partner Intellectual Property
> to make, have made, develop, have developed, use, sell, offer for
> sale, import and distribute any Products, any portion thereof, or
> any products similar to or based upon any Products [except in
> China for use in China and in Philippines for use in Philippines].

Exhibit 1 at § 1.3.

Thus, any interpretation of the clear and unambiguous language of the Agreement that would limit the scope of the Agreement to a license for one device, or even the two devices identified in the defined term "Products," would constitute a wholesale revision of the contractual language.  Indeed, it would render a nullity, *inter alia*, (1) the inclusion of "EMV capable POS unit with Bluetooth interface" in the definition of "Products"; (2) the definition of "Partner Intellectual Property"; and (3) the specific authority to "freely use" the "Partner Intellectual Property" granted to ROAM Data.  As a matter of law, a contract cannot be interpreted in a manner that renders any of its provisions a nullity.  *See James B. Nutter & Co. v. Estate of Murphy*, 478 Mass. 664, 669 (2018) (court must "construe a contract as a whole, so as to 'give reasonable effect to each of its provisions'") (quoting *J.A. Sullivan Corp. v. Commonwealth*, 397 Mass. 789, 795 (1986)); *Balles v. Babcock Power Inc.*, 476 Mass. 565, 578 (2017) (Massachusetts Supreme Judicial Court rejected party's interpretation of contract that "read the correction provision out of [the] clause"); *J.A. Sullivan*, 397 Mass. at 795 ("[E]very phrase and clause must be presumed to have been designedly employed, and must be given

meaning and effect, whenever practicable, when construed with all the other phraseology contained in the instrument" (quoting *Charles I. Hosmer, Inc. v. Commonwealth*, 302 Mass. 495, 501 (1939)).

Consequently, the plain and unambiguous language of the Agreement could not be clearer – ROAM Data's rights under the Agreement extend well beyond the "Circle Swipe" product.

### B. Because the Language in the Agreement is Clear and Unambiguous, Parol Evidence Is Inadmissible

In an attempt to reinforce its mischaracterizations of the Agreement, BBPOS seeks to submit at trial parol evidence to contradict the Agreement's clear and unambiguous language. *See* BBPOS's Exhibit List (ECF No. 235) (including pre-Agreement emails that pertain to "Negotiations of Exclusive Product License"); *see also* BBPOS SJ Mem. at 16-20. However, the parol evidence rule prohibits exactly that – submitting extrinsic evidence that contradicts clear and unambiguous contractual language. Accordingly, the Court should exclude any and all such evidence.

As a matter of law, parol evidence is inadmissible when the contractual terms are clear and unambiguous. A party may not introduce extrinsic evidence to either "contradict the clear terms of an agreement, or to create ambiguity where none otherwise exists." *ITT Corp. v. LTX Corp.*, 926 F. 2d 1258, 1261 (1st Cir. 1991) (applying Massachusetts law). Parol evidence could be admissible to discern the parties' intent only if the contractual terms at issue are ambiguous. *See Massachusetts Mun. Wholesale Elec. Co. v. Town of Danvers*, 411 Mass. 39, 48 (1991). Whether contractual terms are clear and unambiguous is a legal issue for the Court to decide. *See Bank v. Thermo Elemental Inc.*, 451 Mass. 638, 649 (2008) ("extrinsic evidence may be used as an interpretive guide only after the judge or the court determines that the contract is

ambiguous"); *Browning-Ferris Indus., Inc. v. Casella Waste Mgmt. of Mass., Inc.*, 79 Mass. App. Ct. 300, 307 (2011) ("First we must decide whether § 4(d) contains an ambiguity.  That determination presents a question of law for the trial court and one for de novo review by the appellate court."); *Quinn v. Mar-Lees Seafood, LLC*, 69 Mass. App. Ct. 688, 696 n.7 (2007) ("whether a contract is ambiguous is a question of law").

As demonstrated above, the clear and unambiguous language of the Agreement is not limited to licensing one device; rather, it encompasses a wide range of "Partner Intellectual Property" concerning two specific "Products," including patents, trademarks, copyrights, and trade secrets, as well as general knowledge and information, relating to those products.  *See* Exhibit 1 at § 1.1, page 10 (Schedule 1); Exhibit 2 at page 1.  As the contractual terms are clear and unambiguous, parol evidence concerning the Agreement is inadmissible and should be excluded from trial.

BBPOS's Exhibit List (ECF No. 235) includes emails that predate the Agreement, which BBOS characterizes as "Email[s] re:  Negotiations of Exclusive Product License."  The Court should exclude from trial all such emails because they are being offered to contradict the clear and unambiguous language of the Agreement.  The Court also should exclude any testimony of Will Graylin, who signed the Agreement on behalf of ROAM Data, and Ben Lo, who signed the Agreement on behalf of BBPOS, concerning the parties' alleged intent.  *See* BBPOS SJ Mem. at 16-20.  All such evidence is irrelevant, and therefore inadmissible at trial, because as a matter of contract law, that evidence cannot be used to vary the terms of clear and unambiguous contractual language.  *See* Fed. R. Evid. 401 (evidence is relevant when "it has any tendency to make a fact more or less probable than it would be without the evidence"); Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").

BBPOS's proposed parol evidence also is inadmissible under Fed. R. Evid. 403 because "its probative value [if any] is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [and] misleading the jury." Fed. R. Evid. 403. The Agreement's terms concerning ROAM Data's rights to the subject intellectual property are clear and unambiguous, so the admission of extrinsic evidence to contradict those terms would (1) confuse the issue of whether misappropriation occurred; (2) mislead the factfinder by mischaracterizing the terms of the Agreement; and (3) unfairly prejudice Ingenico by submitting to the factfinder evidence that contradicts the clear and unambiguous terms of the parties' written Agreement and that could therefore result in a finding of substantial liability. *See Alstom Power, Inc. v. RMF Indus. Contracting, Inc.*, 203CV1050, 2006 WL 3839235, at *2 (W.D. Pa. Dec. 29, 2006) (granting a motion in limine to exclude evidence of prior communications between contracting parties because the "rule bars such references to oral representations").

**II.     The Court Should Preclude BBPOS From Referring To The Agreement As A Mere "Product License," "Exclusive Product License," Or Similar Mischaracterizations**

As demonstrated above, the clear and unambiguous language of the Agreement is not limited to licensing one device: it encompasses a wide range of "Partner Intellectual Property" concerning credit card reading technology, two specific "Products," including patents, trademarks, copyrights, and trade secrets, as well as general knowledge and information, relating to those products. *See* Exhibit 1 at § 1.1, page 10 (Schedule 1); Exhibit 2 at page 1. Nonetheless, BBPOS has contended that the Agreement is merely a "product license." For example, at the summary judgment hearing, counsel for BBPOS stated "'Product license. Product license. Product license.' You see that over and over again in the emails negotiating the license, and you see it in how it was conducted." Transcript of Hearing of February 9, 2023 (true and accurate copy of excerpts attached hereto as Exhibit 3) at 15. BBPOS' counsel explained

7

that "BBPOS' position as to what the meaning of this contract is, is that it was an exclusive product license." *Id.* at 17.  Counsel specifically contrasted that position with Ingenico's position, which he described as being that the Agreement is "an exclusive IP license that is broad as the day is long." *Id.* Whether the Agreement is, or is not, "as broad as the day is long," it clearly is not just a license for a single product (or even multiple products) because the license grant is for "Partner Intellectual Property," not merely one or more products.  Exhibit 2 at page 1.

Given that BBPOS's mischaracterizations of the Agreement as a mere "product license" or as applying to only the Circle Swipe Device contradict the plain and unambiguous language of the Agreement, those mischaracterizations should be excluded from trial because they would (1) confuse the issue of whether misappropriation occurred by mischaracterizing the terms of the Agreement; (2) mislead the factfinder by mischaracterizing the terms of the Agreement; and (3) unfairly prejudice Ingenico by submitting to the factfinder evidence that contradicts the clear and unambiguous terms of the parties' written Agreement and that could therefore result in a finding of substantial liability.  Indeed, such mischaracterizations would have no probative value and would be vastly outweighed by the risk of confusion and unfair prejudice to Ingenico.  Accordingly, such evidence is inadmissible under Fed. R. Evid. 403 and should be excluded from trial.  Courts have "precluded the use of prejudicial terms under Rule 403 when evidentiary support is lacking or the terms are ambiguous." *Lightfoot v. Hartford Fire Ins. Co.*, No. CV 07-4833, 2011 WL 13208897, at *3 (E.D. La. Feb. 8, 2011).  Here, BBPOS's mischaracterizations of the Agreement are directly contradicted by the Agreement's plain and unambiguous language, so "evidentiary support" for BBPOS's mischaracterizations "is lacking." *See Betts v. City of Chicago*, 784 F. Supp. 2d 1020, 1028-29 (N.D. Ill. 2011) (granting motion *in limine* to exclude, under Rules 401 and 403, the terms "code of silence" and "blue wall" as "generalized

allegations" that were "not helpful"); *Hughes v. Guanciale*, No. 1:03-cv-261, 2006 WL 1207974, at *1 (S.D. Ohio Apr. 28, 2006) (granting motion *in limine* to preclude use of the word "stroke" because the plaintiff had no history of a stroke).

## CONCLUSION

For all the aforementioned reasons, Ingenico respectfully request that the Court exclude from the trial in this case (1) any parol and/or extrinsic evidence concerning the Agreement and (2) any evidence that refers to the Agreement as a mere "product license," "exclusive product license," or similar mischaracterizations.

## REQUEST FOR ORAL ARGUMENT

Ingenico requests oral argument on this Motion because it raises important issues concerning contract interpretation, unfair prejudice, and misleading the jury, and Ingenico believes that oral argument may assist the Court in addressing the Motion.

Dated:  April 10, 2023

                    Respectfully submitted,
INGENICO INC., INGENICO CORP. AND INGENICO GROUP, SA,

By their attorneys,

/s/ *Jeffrey K. Techentin*
JOHN A. TARANTINO (BBO #492230)
PATRICIA K. ROCHA (BBO #542348)
NICOLE J. BENJAMIN (BBO #666959)
R. BART TOTTEN (BBO #631605)
JEFFREY K. TECHENTIN (*pro hac vice*)
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
Tel: (401) 274-7200
Fax: (401) 351-4607
jtarantino@apslaw.com
procha@apslaw.com
nbenjamin@apslaw.com
btotten@apslaw.com
jtechentin@apslaw.com

## CERTIFICATE OF SERVICE

       I hereby certify that on April 10, 2023, I caused to be served via electronic mail a true copy of the within document on the following counsel of record:

| | |
|---|---|
| Jonathon D. Friedmann, Esq.<br>Robert P. Rudolph, Esq.<br>Rudolph Friedmann LLP<br>92 State Street<br>Boston, MA 02109<br>JFriedmann@rflawyers.com<br>RRudolph@rflawyers.com | Oliver D. Griffin, Esq.<br>Peter N. Kessler, Esq.<br>Melissa A. Bozeman, Esq.<br>Kutak Rock LLP<br>303 Peach Street, N.E., Suite 2750<br>Atlanta, GA 30308<br>Oliver.griffin@kutakrock.com<br>Peter.kessler@kutakrock.com<br>Melissa.bozeman@kutakrock.com |
| | Ricardo G. Cedillo, Esq.<br>755 E. Mulberry Ave., Ste 500<br>San Antonio, Texas 78212<br>rcedillo@lawdcm.com |

                                      /s/ *Jeffrey K. Techentin*
                                      Jeffrey K. Techentin