# Exhibit 2

## AMENDMENT TO ENGINEERING DEVELOPMENT AND LICENSE AGREEMENT

Amendment to Engineering Development and License Agreement made as of May 4, 2010 (the "Agreement") by and between ROAM Data, Inc., a Delaware corporation with its head office situated at 280 Summer Street, Lobby Level, Boston, MA 02210, fax no. +1 617 249 1661 (the "Company"), and BBPOS LIMITED, a Hong Kong corporation with its address situated at Room 810, 8/F, Grand City Plaza, 1 Sai Lau Kok Road, Tsuen Wan, H.K., (the "Partner").

WHEREAS, the Agreement originally contemplated an exclusive product license; and

WHEREAS, Partner filed or caused to be filed US Patent Application Number 12/767,831 for secure audio coupled card swiper filed on April 27, 2010 with the United States Patent and Trademark Office (the "Patent Application"); and

WHEREAS, the Company and Partner wish to amend the Agreement to include the Patent Application within the scope of the exclusive license grant under the Agreement, to clarify that the scope of the license grant under the Agreement includes any other intellectual property rights of the Partner relating to the Products and to make certain further amendments to the Agreement;

NOW THEREFORE, for good and valuable consideration the receipt of which is hereby acknowledged, the Company and Partner hereby agree as follows:

1. Section 1.1 of the Agreement is hereby amended and restated to read in its entirety as follows:

   "1.1 The Partner hereby grants to the Company a worldwide, perpetual, fully-paid license to freely use the Partner Intellectual Property to make, have made, develop, have developed, use, sell, offer for sale, import and distribute the Products, any portion thereof, or any products similar to or based upon any Products. For purposes of this Agreement, "Partner Intellectual Property" shall mean: (a) any and all patents and patent applications relating to the Products, including without limitation US Patent Application Number 12/767,831 for secure audio coupled card swiper filed on April 27, 2010 with the United States Patent and Trademark Office (the "Patent Application") and any patents issuing on the Patent Application, including (i) any reissues, renewals, reexaminations, substitutions or extensions thereof and foreign equivalents of the foregoing; (ii) any claim of a continuation-in-part application or patent that is entitled to the priority date of, and is directed specifically to subject matter specifically described in, the Patent Application; (iii) any foreign counterpart thereof (including PCTs); and (iv) any supplementary protection certificates and any other patent term extensions, restorations and exclusivity periods and the like of the Patent Application; and (b) any copyrights, trademarks, trade names, trade secrets, knowledge, data and information owned or controlled by the Partner relating to the Products."

2. Section 1.3 of the Agreement is hereby amended and restated to read in its entirety as follows:

"1.3 The license granted in Section 1.1 is exclusive on a worldwide basis (with the exception of China, Philippines, as set forth below and Section 1.5). Without limiting the generality of the foregoing, the Partner may not, directly or indirectly, anywhere in the world, use or sell any Products, or any portion thereof, or any products similar to or based upon any Products (other than as explicitly provided in this Agreement) or grant any other person rights to the Partner Intellectual Property to make, have made, develop, have developed, use, sell, offer for sale, import and distribute any Products, any portion thereof, or any products similar to or based upon any Products. Notwithstanding the foregoing provisions of this Section 1.3, the Partner shall retain the non-exclusive, non-transferrable right to sell the Products in China for use in China and sell the Products in Philippines for use in Philippines."

3. The following new Section 4.4 is hereby inserted immediately following Section 4.3 of the Agreement:

"4.3 In the event that any person is infringing or misappropriating the Partner Intellectual Property within the Company's exclusive geographic field, the Company shall have the first right, but not the obligation, to institute, prosecute and control legal proceedings and/or administrative proceedings to prevent or restrain such infringement or misappropriation, at its own expense. In the event that the Company elects to initiate legal proceedings and/or administrative proceedings in accordance with the preceding sentence, the Company shall be required to deliver notice of such election to the Partner. The Partner shall assist in the prosecution of such proceedings as reasonably requested by the Company at the Company's expense, and the Partner may participate in such proceedings with its own counsel, at its sole cost and expense. Any recoveries from such proceedings shall first be used to reimburse the Company for the costs and expenses associated with the proceedings (including amounts used to reimburse the Partner for expenses incurred by the Partner for assistance requested by the Company). If any recoveries still remain, the balance shall be paid to the Company."

4. That Schedule II to the Agreement is hereby deleted in its entirety and replaced by Schedule II attached hereto.

5. Any capitalized terms used herein without express definition shall have the respective meanings defined for them in the Agreement.

6. The parties hereby confirm and acknowledge the continuing validity and enforceability of the Agreement as amended hereby.

IN WITNESS whereof the parties hereto have executed this Amendment to Engineering Development and License Agreement, effective as of August 15, 2011.

SIGNED by )
)
for and on behalf of )
**ROAM Data, Inc.** )
in the presence of:- )

**Will Graylin, CEO,**

SIGNED by )
)
for and on behalf of )
**BBPOS (Hong Kong) Limited** )
in the presence of:- )

**Ben Lo, CEO**

## SCHEDULE II

### PAYMENTS for Engineering Development and Licensing

- $250,000 for development, certification and Licensing of ROAMpay POS, which can include additional cost for certification, to be paid as follows: $50,000 upon signing of this agreement, $50,000 upon working prototype of the ROAMpay POS product, $50,000 upon PCI PED certification, and $50,000 upon EMV L1 and L2 certification, $50,000 upon integrating EMV application with ROAMplayer application via Bluetooth. *Additional out of pocket cost of EMV and PCI PED certification of the ROAMpay POS will be paid by Company to Partner.*

- $50,000, to be paid at the time of signing as part of the exclusive license to the Products. Note that any funds from previous contracts on FSK reader and non-encrypted reader can be applied towards money due from the Company to the Partner for this agreement and future orders of product.

- ROAM will be the exclusive distributor of the Products and Devices, Cyrpto Swipe (branded ROAMpay Swipe) and ROAM will provide margin of $3 per Crypto Swipe unit (which shall be reduced to a margin of $2 per unit for sales above 150,000 cumulative units) and $7 per BBPOS or ROAMpay POS unit above cost of manufacturing, packaging and BOM (Bill of Material), paid to BBPOS for delivering the units to ROAM as part of the invoice for hardware. These margins will be built into the price per unit charged to ROAM which also include BOM and manufacturing costs. For the case of BBPOS or ROAMpay POS sales referred by the Partner and where only hardware is sold, both parties will split the margin with 50% of the Margin going to the Partner, in accordance with section 1.5 of this agreement.

- $25,000 per month for four (4) dedicated programmers or development resources include one (1) project manager to help the Company with ongoing software development for ROAMplayer, ROAM Server side work, Internationalization, and other software work. ROAM may request to scale these development resources up or down based on its discretion, and what is happening in the market. To be clear, the Company is separately outsourcing the Partner in this clause to provide development resources for the Company, which can go up or down, this variable cost is purely for engineering development and is not consideration for licensing under this agreement.

- The Company will issue the Partner an option or warrant to purchase 100,000 shares of Company common stock option, with strike price of $0.12, subject to Company board approval and the parties entering into an option or warrant agreement (which shall provide, among other provisions, that upon termination of this Agreement the option or warrant shall terminate and the Company shall have the right to repurchase the shares), and subject to the Company being satisfied that it has obtained all

- required corporate or contractual consents for the issuance and that such issuance is in compliance with applicable law.

- In the event the Partner refers any services to the Company, the Company shall pay to Partner an amount equal to 25% of the Company's net profits from such services as described in section 1.4 of this agreement.