# Exhibit 3

```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS


    _____

    ANYWHERECOMMERCE, INC., and              )
    BBPOS LIMITED,                           )
                                             )
            Plaintiffs,                      )
                                             )
       v.                                    )  Civil Action No.
                                             )  1:19-cv-11457-IT
    INGENICO INC., INGENICO CORP., and       )
    INGENICO GROUP, SA,                      )
                                             )
            Defendants.                      )
                                             )
    _____


         BEFORE THE HONORABLE INDIRA TALWANI, DISTRICT JUDGE


                          MOTION HEARING



                    Thursday, February 9, 2023
                             2:38 p.m.





    John J. Moakley United States Courthouse
    Courtroom No. 9
    One Courthouse Way
    Boston, Massachusetts


    Robert W. Paschal, RMR, CRR
    Official Court Reporter
    rwp.reporter@gmail.com
```

**A P P E A R A N C E S**

On behalf of the Plaintiffs:

    KUTAK ROCK LLP
    BY:  MELISSA ANN BOZEMAN
        OLIVER D. GRIFFIN
    1760 Market Street
    Suite 1100
    Philadelphia, PA  19103
    (215) 299-4384
    melissa.bozeman@kutakrock.com
    oliver.griffin@kutakrock.com

On behalf of the Defendants:

    ADLER POLLOCK & SHEEHAN P.C.
    BY:  JEFFREY TECHENTIN
    One Citizens Plaza
    8th Floor
    Providence, RI  02903
    (401) 274-7200
    jtechentin@apslaw.com

1  matters in the sense of "This is what someone said to someone
2  else.  This is a piece of -- a letter they wrote to someone
3  else.  This is" -- as opposed to "This is what was in my head
4  at the time I signed it.  I know I said "orange," but I meant
5  "red," right?  It's not what's in the person's head.  It's
6  what they're conveying, no?
7              MR. GRIFFIN:  Yes, Your Honor.
8              Your Honor, and we have a detailed argument about
9  the three pieces of evidence that we'd like the Court to look
10 at in order to construe the intent.  Ms. Bozeman will handle
11 those pieces of evidence.
12             And each of those pieces of evidence, which are
13 precontract negotiation emails, pre-amendment to the contract
14 negotiation emails, and then Will Graylin's testimony about
15 how the contract was performed and what the terms meant,
16 which is a 2021 deposition regarding how these documents
17 performed, that's all what people said about whether it's a
18 product contract or whether it's an exclusive, never-ending
19 license contract.
20             THE COURT:  Well, what Will Graylin said about "I
21 believe people were going after each other or there was some
22 bad blood here or whatever," his beliefs about matters other
23 than sort of the hard, tangible, "This is what was said, this
24 is what was done, this is what was heard, this is what I
25 observed" --

1          MR. GRIFFIN:  Yeah, and I -- Your Honor, I agree
2     that the motivations and after-the-fact review of how the
3     parties conducted themselves over a period of years is
4     irrelevant to your analysis and to the Court's analysis, of
5     course.
6          What I'm trying to say is that what we're trying to
7     focus on, is for instance, in Will Graylin's testimony, it's,
8     like, was this a product license, or was it some kind of
9     open-ended exclusive license to cover any and all
10    intellectual property?  "Product license.  Product license.
11    Product license."  You see that over and over again in the
12    emails negotiating the license, and you see it in how it was
13    conducted.
14         THE COURT:  And what I am saying here is that I'm
15    happy to look at the emails that say various things,
16    depending who it went to and the time frame and so forth.
17    But to the extent that somebody -- and it's coming up a lot
18    in the deposition testimony, because that's the way people
19    talk and think, perhaps.  But the way I'm getting evidence
20    that's saying, "We believed that this is what it meant," I
21    don't think I get to use that.
22         MR. GRIFFIN:  Well, you get to weigh it with how
23    they acted in concert with what they may have said that they
24    meant.
25         I mean, we're in a situation with this contract

1  where we don't really have to worry about what people meant,
2  because there was a contract for essentially one item, the
3  CircleSwipe.  It was a product.  It was sold.  Royalties were
4  paid.  And so when people talk about what the product was
5  that the license covered, they talk about how that --
6              THE COURT:  Okay.  You're moving into the substance
7  of the argument, and we can get there.  But I'm just telling
8  you, just -- this is simply contract interpretation 101.  Any
9  disagreement that I'm not looking at what's in people's
10 heads, particularly after-the-fact heads, but that that's not
11 what this is about, that I'm looking at what was said, what
12 was observed, what the patterns were, what the communications
13 were, et cetera, to the extent I get to parol evidence?
14             MR. GRIFFIN:  I absolutely agree, Your Honor.
15             THE COURT:  Okay.  That was just the threshold
16 question.
17             Okay.  So I am -- I usually say, "The moving party,
18 I'll let you start."  Obviously, since we have two moving
19 parties here, we could bring it each way.  But I will let
20 plaintiffs start on the motion for summary judgment on the
21 counterclaims.
22             MS. BOZEMAN:  Thank you, Your Honor.
23             So the vast majority of this case, in our motion
24 for summary judgment as to the claims that are asserted in
25 the second amended counterclaims that were brought by

1    Ingenico, the vast majority turns on this central question;
2    and that central question for the Court is whether or not
3    this is an exclusive product license, or whether this is an
4    exclusive IP license.
5         BBPOS' position as to what the meaning of this
6    contract is, is that it was an exclusive product license.
7    Ingenico takes the position, as both an affirmative defense
8    and then for their affirmative claims, that this is an
9    exclusive IP license that is as broad as the day is long,
10   that it covers the entirety of the mobile point-of-sale
11   devices that were in development at the time the contract was
12   entered into in 2010 into perpetuity.
13        The effect of the way they construe this license
14   after the fact and inconsistent with how the parties formed
15   is -- performed is that it turns the exclusivity provision
16   that is in the contract at 1.3 of the contract, it turns it
17   into an effective restraint on trade.  And because it is
18   open-ended and ambiguous and somewhat up to interpretation,
19   it's something that can't be enforced by the client.  Now --
20   or by -- is something that cannot be enforced by the Court.
21        Now, in our motion in support of our exclusive
22   product license theory of the case, we went through; and as
23   Mr. Griffin referenced to Your Honor, we put together the
24   evidence that we found in the record that supports the
25   reading of the contract that we're urging the Court to adopt

1 here.
2          So in 2010, we have contract negotiations.  Those
3 contract negotiations were conducted primarily through Ben Lo
4 of BBPOS, as well as Will Graylin, who was the founder and
5 the CEO of ROAM at the time.  Both of these two parties were
6 key persons for the negotiation and execution and then early
7 performance of the contract.  They both have the authority to
8 enter into this contract, and they were the ones who
9 negotiated it.
10          So the best evidence here as to what the intent of
11 this agreement is, is BBPOS' communications at the time, the
12 negotiations --
13          THE COURT:  Well, the first start is what the
14 language is of the contract.
15          MS. BOZEMAN:  I think you're right.  Yes, of
16 course, Your Honor.  And then when there is -- when there is
17 a dispute as to what the meaning of that contract provision
18 provides, that's when the Court is able to construe what the
19 intent of the parties was.
20          In fact, the *Video Central* case actually suggests
21 that the Court should ferret out what the parties' intent is
22 here.  And that can be seen very clearly in the email threads
23 that we attach to the complaint and that we reference in our
24 undisputed material facts at Numbers 38 through 46.
25          Now, we attached four separate email threads.

**CERTIFICATE OF OFFICIAL REPORTER**

I, Robert W. Paschal, Registered Merit Reporter and Certified Realtime Reporter, in and for the United States District Court for the District of Massachusetts, do hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing pages are a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 21st day of February, 2023.

/s/ Robert W. Paschal
_____
ROBERT W. PASCHAL, RMR, CRR
Official Court Reporter