UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANYWHERECOMMERCE, INC. and BBPOS LIMITED,<br>　　　　　　　Plaintiffs,<br><br>　　　　v.<br><br>INGENICO INC., INGENICO CORP. and INGENICO GROUP, SA,<br>　　　　　　　Defendants. | CIVIL ACTION NO.<br>1:19-cv-11457-IT |

**MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE ANY AND ALL TESTIMONY FROM BBPOS LIMITED'S EXPERT ON THE TRADE SECRET STANDARD FOR REVERSE ENGINEERING**

Defendants Ingenico Inc., Ingenico Corp. and Ingenico Group, SA (collectively, "Ingenico") submit this Memorandum in support of their Motion *In Limine* to Exclude Any and All Testimony from BBPOS Limited's Expert on the Trade Secret Standard for Reverse Engineering, pursuant to Fed. R. Evid. 401, 402, 403, and 702 and the Supreme Court's decision in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993).

**INTRODUCTION**

One of the key issues in this case is whether BBPOS's information (the "Information") satisfies the stringent criteria for qualifying as a trade secret under Georgia law. It does not.

BBPOS appears to be using its expert, Ivan Zatkovich, in an effort to evade its affirmative burden to establish trade secret protection. It is BBPOS's burden to establish that the Information is not readily ascertainable, *i.e.*, is sufficiently difficult to reverse engineer, such that it could, in theory, qualify as a trade secret. It is not Ingenico's burden to show the reverse. Mr. Zatkovich's proffered opinion improperly attempts to excuse BBPOS of this evidentiary

burden, most likely because BBPOS cannot satisfy it.  Indeed, Ingenico's expert, Michael Shamos, Ph.D., J.D., testified that all of BBPOS's alleged trade secrets were either disclosed in publicly available sources or are readily ascertainable via simple examination.  Transcript of Deposition of Michael Shamos, Ph.D., J.D. (May 17, 2022) ("Shamos Dep.") (true and accurate copy of excerpts attached hereto as Exhibit 1) at 313:11-20, 334:20-23, 336:11-20.

        Under Georgia law, to qualify as a trade secret, the Information must, *inter alia*, "[d]erive[] economic value, actual or potential, from not being generally known to, and *not being readily ascertainable by proper means* by, other persons who can obtain economic value from its disclosure or use."  Ga. Code Ann. § 10-1-761(4)(A) (emphasis added).  The Georgia Supreme Court has relied on the Restatement (Third) of Unfair Competition § 39, cmt. f (the "Restatement") to define the requirements for a trade secret.  *See Essex Group, Inc. v. Southwire Co.*, 501 S.E.2d 501, 504 (Ga. 1998) (quoting the Restatement).  Under the Restatement, "if acquisition of the information through an examination of a competitor's product would be difficult, costly, or time-consuming, the trade secret owner retains protection against an improper acquisition."  Restatement.  Thus, if acquisition of the Information through examination of BBPOS's product would *not* be difficult, costly, or time-consuming, the Information does *not* have any trade secret protection.  Furthermore, "[w]hen the information is readily ascertainable . . . actual resort to the public domain is a formality that should not determine liability."  *Id.*  Thus, under Georgia law, if the Information can readily be reverse engineered, it is not protected, regardless of whether it was actually reverse engineered.

        As the Information can be acquired through mere examination of BBPOS's product, such acquisition would *not* be difficult, costly, or time-consuming, so the Information is readily

ascertainable and is *not* entitled to any trade secret protection.  Because the Information can be readily reverse engineered, BBPOS's trade secret claim fails.

Notwithstanding the ready ascertainability of the Information, BBPOS's expert, Ivan Zatkovich, opines that whether an alleged trade secret can be reverse engineered is irrelevant if it was not actually reverse engineered.  *See* Transcript of Deposition of Ivan Zatkovich (May 11, 2022) ("Zatkovich Dep.") (true and accurate copy of excerpts attached hereto as Exhibit 2) at 91:10-12, 91:24-92:10; *see also* Reply Report of Ivan Zatkovich to Rebuttal Report of Dr. Shamos ("Zatkovich Reply Report") (true and accurate copy of excerpts attache hereto as Exhibit 3) at 4 ("The relevant question is not whether, *theoretically*, a trade secret may be susceptible to reverse-engineering, as Dr. Shamos posits, but, rather, was it, in fact, acquired via reverse-engineering or other lawful means.").  This opinion is directly contrary to Georgia trade secret law, under which the Information is not protected because it can be readily reverse engineered, without regard to whether it was actually reverse engineered.  *See* Restatement. Accordingly, Mr. Zatkovich's testimony is not "the product of reliable principles and methods." Fed. R. Evid. 702(c).  Furthermore, as Mr. Zatkovich's opinion is contrary to the governing law, it does *not* have "any tendency to make a fact more or less probable than it would be without the evidence."  Fed. R. Evid. 401(a).  Even if Mr. Zatkovich's opinion could somehow be relevant (which it cannot), "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [and] misleading the jury."  Fed. R. Evid. 403.  Mr. Zatkovich's opinion directly contradicts Georgia trade secret law, so it would confuse the issues concerning BBPOS's trade secret claim, mislead the jury, and unfairly prejudice Ingenico, who could be found liable for millions of dollars of alleged damages based on legally erroneous testimony from BBPOS's expert.

Accordingly, the Court should exclude from the trial in this case any and all testimony from Mr. Zatkovich as to this opinion concerning the relevance of reverse engineering.

**ARGUMENT**

**I.      Legal Standard for Expert Testimony**

An expert may provide an opinion only if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Supreme Court has explained that Federal Rule of Evidence 702 creates "a gatekeeping role for the [trial] judge" to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). Acting as a gatekeeper under *Daubert*, this Court must ensure that expert witness testimony "rests on a sufficiently trustworthy foundation." *United States v. Tavares*, 843 F.3d 1, 5 (1st Cir. 2016); *see Smith v. Jenkins*, 732 F.3d 51, 65 (1st Cir. 2013) (rejecting expert testimony because the district court failed to perform its gatekeeping function and most of the testimony was inadmissible); *Samaan v. St. Joseph Hosp.*, 670 F.3d 21, 34 (1st Cir. 2012) (excluding expert testimony because "*Daubert* demands relevancy, and [the expert's] testimony f[ell] short of this requirement").

Furthermore, evidence is admissible only if it is relevant. Fed. R. Evid. 401, 402. Relevant evidence is "evidence that has any tendency to make a fact of consequence in determining the action more or less probable than it would be without the evidence." Fed. R. Evid. 401; *see United States v. Maldonado–García*, 446 F.3d 227, 232 (1st Cir. 2006) (to be

relevant, evidence must make existence or non-existence of material fact more likely) (citing Fed. R. Evid. 401). Even if evidence is relevant, it is nonetheless inadmissible if "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [and] misleading the jury." Fed. R. Evid. 403.

As demonstrated below, Mr. Zatkovich's testimony as to the relevance of reverse engineering does not satisfy the requirements of Fed. R. Evid. 401, 402, 403, 702 and/or *Daubert* because it contradicts Georgia trade secret law. Accordingly, that testimony should be excluded from the trial in this matter.

**II.     Under Georgia Law, Information That Can Be Readily Ascertained Via Reverse Engineering Without Substantial Investment Of Time Or Expense Is Not Entitled To Trade Secret Protection, Without <u>Regard To Whether The Information Was Actually Reverse Engineered</u>**

Under Georgia law, like the laws of other states that have adopted the Uniform Trade Secrets Act, to qualify as a trade secret, the Information must, *inter alia*, "[d]erive[] economic value, actual or potential, from not being generally known to, and *not being readily ascertainable by proper means* by, other persons who can obtain economic value from its disclosure or use." Ga. Code Ann. § 10-1-761(4)(A) (emphasis added). The Georgia Supreme Court has relied on the Restatement to define the requirements for a trade secret. *See Essex Group*, 501 S.E.2d at 504 (quoting the Restatement). The Restatement states, in pertinent part, as follows:

> The theoretical ability of others to ascertain the information through proper means does not necessarily preclude protection as a trade secret. Trade secret protection remains available unless the information is readily ascertainable by such means. *Thus, if acquisition of the information through an examination of a competitor's product would be difficult, costly, or time-consuming, the trade secret owner retains protection* against an improper acquisition, disclosure, or use prohibited under the rules stated in § 40. . . .

5

. . .

> If the information has become readily ascertainable from public sources . . . the information is in the public domain and no longer protectable under the law of trade secrets. . . . [N]o liability attaches if the defendant actually extracts the information from public sources. When the information is readily ascertainable from such sources, however, *actual resort to the public domain is a formality* that should not determine liability.

Restatement (emphases added); *see Essex Group*, 501 S.E.2d at 504 (quoting the Restatement).[1]

Thus, under the Restatement, if acquisition of the Information through examination of BBPOS's product would *not* be difficult, costly, or time-consuming, the Information is *not* entitled to any trade secret protection. *See Leo Publications, Inc. v. Reid*, 458 S.E.2d 651, 652 (Ga. 1995) (customer list did not qualify as trade secret because the information contained therein was readily ascertainable by proper means, including review of every newspaper advertisement in every issue and the telephone directory). Whether the Information actually was reverse engineered is irrelevant: "A review of the *Leo Publications* opinion shows that *it does not matter* whether Defendants actually utilized proper means to obtain the subject information." *AmeriGas Propane, L.P. v. T-Bo Propane, Inc.*, 972 F. Supp. 685, 699 (S.D. Ga. 1997) (emphasis in original). The "focus is not upon the action of Defendants but upon the nature of the information." *Id.* (citing Ga. Code Ann. § 10-1-761(4)).

> Under this portion of the statute, if the information could be (as opposed to was) readily ascertained by proper means, the circumstances surrounding its alleged misappropriation is, quite

---

[1] The Georgia Supreme Court's statement in *Essex Group* that it "reject[s] the position that information is not protectable as a trade secret merely because it may be independently discovered or ascertained by others" is consistent with the Restatement's standard that trade secret protection would be retained if "acquisition of the information through an examination of a competitor's product would be *difficult, costly, or time-consuming*." *Essex Group*, 501 S.E.2d at 503; *id.* at 504 (emphasis added); *see* Restatement; *see also Lummus Corp. v. Cherokee Fabrication Co., Inc.*, No. 1:04-CV-01408-JTC, 2007 WL 9698294, at *5 (N.D. Ga. Jan. 22, 2007) ("*Essex Group* did not involve a . . . potential reverse engineering").

> simply, irrelevant. It does not matter if the offender engaged in a Watergate type burglary to get the list or if the offender innocently found the list laying on a church pew wrapped in a purple ribbon with a pink bow.[2]

*Id.* at 699-700.[3]

Numerous courts have concluded that information is not entitled to trade secret protection if it could be readily ascertained by proper means or, conversely, that information is entitled to trade secret protection if it could not be readily ascertained by proper means. *See Williams v. Curtiss-Wright Corp.*, 681 F.2d 161, 163-64 (3d Cir. 1982) (drawings and specifications constituted trade secrets based on expert testimony that they could not be reverse engineered); *Leo Publications*, 458 S.E.2d at 652 (in ruling that customer list did not qualify as trade secret because the information contained therein was readily ascertainable by proper means, the court did not consider whether the subject information actually was obtained by proper means).

The Arkansas appellate court addressed the issue of "readily ascertainable" in *Gibraltar Lubricating Services, Inc. v. Pinnacle Resources, Inc.*, 486 S.W.3d 224 (Ark. Ct. App. 2016):

> Here, the central issue before the court was whether the GLS formulas were readily ascertainable, such that they did not qualify as trade secrets. Relative to this issue, the circuit court received affidavits from two expert witnesses, each of whom offered an opinion on the matter, with the focus being the expense and difficulty involved in reverse engineering the GLS lubricants.

---

[2] Whether information *can* be reverse engineered is distinct from whether the information actually *was* reverse engineered. If the information can be readily reverse engineered, then the information does not qualify as a trade secret. If the information actually was reverse engineered, then regardless of whether the information could qualify as a trade secret, the defendant would not be liable for misappropriation because the information was obtained by a proper means.

[3] The court in *AmeriGas Propane* ultimately concluded that there were genuine issues of material fact as to whether the information was readily ascertainable but granted summary judgment because the lack of reasonable efforts to maintain secrecy was fatal to the trade-secret claim. *Id.* at 700.

*Id.* at 227.  The appellate court concluded that "a fact question remains as to the cost or difficulty of reverse engineering the GLS formulas" and therefore reversed the trial court's grant of summary judgment.  *Id.* at 228 ("formula or product may maintain its status as a trade secret, even though it can be reverse engineered, if the process of reverse engineering is too difficult or costly") (citing the Restatement).

The focus, therefore, is on the degree of investment that would be necessary to reverse engineer the Information:

> The fact that information can be ultimately discerned by others – whether through independent investigation, accidental discovery, or reverse engineering – does not make it unprotectable.  Instead, the court must look at whether the duplication of the information would require a substantial investment of time, effort, and energy.

*Avidair Helicopter Supply, Inc. v. Rolls-Royce Corp.*, 663 F.3d 966, 973 (8th Cir. 2011) (internal citation omitted); *see Telex Corp. v. International Business Machines Corp.*, 510 F.2d 894, 929 (10th Cir. 1975) (affirming finding of trade secret because, *inter alia*, competitors were "not able, legitimately and within a reasonable time frame, to obtain it otherwise").  Substantial investment of time is required for trade secret protection:

> We thus find that, consistent with the interpretation of the UTSA in other jurisdictions, where the duplication or acquisition of alleged trade secret information requires a substantial investment of time, expense, or effort, such information may be found "not being readily ascertainable" so as to qualify for protection under the Indiana Uniform Trade Secrets Act.  Therefore, the trial court's finding that methods of acquiring the information pertaining to the location of the Indiana oil reserve sites "were not simple or easy to accomplish, and are expensive to develop," Record at 173L, is sufficient to support its conclusion that such information was not readily ascertainable and thus entitled to trade secret protection.

*Amoco Production Co. v. Laird*, 622 N.E.2d 912, 919 (Ind. 1993).  Thus, in this case, BBPOS would have to "provid[e] evidence sufficient to demonstrate that duplication of its trade secret

information would require a substantial investment of time, expense, and effort, [to] establish[] that its . . . information was not readily ascertainable." *Id.* at 920.  If BBPOS's Information could be reverse engineered without substantial investment of time or expense, then the Information is not entitled to trade secret protection:

> [I]f the information can be readily duplicated without involving considerable time, effort or expense, then it is not a secret. Conversely, information which can be duplicated only by an expensive and time-consuming method of reverse engineering, for instance, could be secret, and the ability to duplicate it would not constitute a defense.

*Hamer Holding Group, Inc. v. Elmore*, 560 N.E.2d 907, 918 (Ill. Ct. App. 1990); *see Coenco, Inc. v. Coenco Sales, Inc.*, 940 F.2d 1176, 1179 (8th Cir. 1991) (information did not qualify as trade secret because, *inter alia*, it was "readily ascertainable by proper means (such as reverse engineering or simple observation)") (construing Arkansas' version of the Uniform Trade Secrets Act); *SI Handling Systems, Inc. v. Heisley*, 753 F.2d 1244, 1262 (3d Cir. 1985) (holding that "under Pennsylvania law [the system at issue] is not entitled to trade secret protection if it is susceptible to reverse engineering, regardless of whether appellants in fact went through such an exercise," and affirming district court's finding, based on expert testimony, that system could not be reverse engineered); *Webcraft Technologies, Inc. v. McCaw*, 674 F. Supp. 1039, 1045 (S.D.N.Y. 1987) (information qualifies as a trade secret if it is "only discoverable with great effort") (construing New York law); *Public Systems, Inc. v. Towry*, 587 So. 2d 969, 972 (Ala. 1991) ("information that is readily available and does not require substantial research investment to obtain" is not entitled to trade secret protection); *Adolph Gottscho, Inc. v. Bell-Mark Corp.*, 191 A.2d 67, 69-70 (N.J. Super. 1963) (features of machinery were not protectable as trade secrets because competent mechanic could easily ascertain them by inspecting machines on the open market); *Electro-Craft Corp. v. Controlled Motion, Inc.*, 332 N.W.2d 890, 899 (Minn.

9

1983) (based on expert testimony that defendant "could not *readily* (i.e., quickly) reverse engineer a motor with exactly the same dimensions, tolerances, and materials as the [plaintiff's motor,]" plaintiff's motor was not readily ascertainable) (emphasis in original).

Thus, information that could be readily ascertained via reverse engineering without substantial investment of time or expense is not entitled to trade secret protection. The testimony of Ingenico's expert, Dr. Shamos, is consistent with this legal principle. Dr. Shamos explained that the relevant inquiry is whether the Information is readily ascertainable and opined that it is. Shamos Dep. 313:11-20 (May 17, 2022) (explaining that all of the alleged trade secrets were either disclosed in publicly available sources or readily ascertainable by proper means). For example, Dr. Shamos testified that the aspects embodied in the circuits of BBPOS products would not have even required "reverse engineering" because it would be "just looking and seeing what it is. . . . Reverse engineering implies that you have to do some work to figure out how it works so you can understand its principle of operation." *Id.* at 336:17-23; *see also id.* at 334:20-23 ("Anybody can open it up look at it and say oh, I can use that. I'll put that in my device, no prohibition against that unless it's patented."). When asked whether the Information was actually reverse engineered in this case, Dr. Shamos testified that he did not have evidence that Ingenico reverse engineered the Information but that it would not matter. *Id.* at 311:18-23.

In contrast, as demonstrated below, Mr. Zatkovich's opinion directly contracts Georgia law that information that can be readily ascertained via reverse engineering without substantial investment of time or expense is not entitled to trade secret protection, without regard to whether the information was actually reverse engineered. Accordingly, the Court should exclude Mr. Zatkovich's opinion.

10

### III. The Court Should Exclude Mr. Zatkovich's Testimony On The Trade Secret Standard For Reverse Engineering Because It Is Contrary To Law

BBPOS proposes to proffer testimony from its expert that is contrary to the legal standard under Georgia trade secret law. The Court should exclude all such testimony.

In his Reply Report, BBPOS's expert, Mr. Zatkovich, opined as to the legal relevance of reverse engineering. *See* Zatkovich Reply Report at ¶¶ 10-16. Mr. Zatkovich asserted in his Reply Report that the only relevant inquiry is whether Ingenico actually reverse engineered BBPOS's alleged trade secret, and that whether the Information *could be* reverse engineered is irrelevant. *Id.* at ¶¶ 14-16.[4] Mr. Zatkovich reiterated these opinions during his deposition and testified that any opinion that "it could've been reversed [sic] engineered means it's not a trade secret is not a legitimate opinion." Zatkovich Dep. at 91:10-12; *see also id.* at 91:24-92:10 (Mr. Zatkovich's testimony that he had never encountered that opinion before and that the only way to show something can be reverse engineered is to actually reverse engineer it).

As demonstrated above, as a matter of Georgia trade secret law, if acquisition of an alleged trade secret through examination of the subject product would not be difficult, costly, or time-consuming, there is no trade secret protection. *See* Restatement. Thus, if reverse engineering the Information would not be difficult, costly, or time-consuming (regardless of whether it actually was reverse engineered), the Information does not qualify as a trade secret. *See id.* Accordingly, Mr. Zatkovich's proffered opinions are contrary to law and should be excluded from the trial in this case:

> We encourage exercise of the trial court's gatekeeper authority when parties proffer, through purported experts, not only unproven science, *see Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509

---

[4] At his deposition, Mr. Zatkovich testified that he relied on representations of counsel for his opinions about the legal relevance of reverse engineering. *See* Zatkovich Dep. at 22:20-24; 86:18-87:9.

11

> U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), but markedly incorrect law. Incorrect statements of law are no more admissible through "experts" than are falsifiable scientific theories.

*Hebert v. Lisle Corp.*, 99 F.3d 1109, 1117 (Fed. Cir. 1996) (reversing jury verdict that patent was unenforceable due to inequitable conduct because, *inter alia*, expert witness' testimony of what constituted inequitable conduct contradicted the legal standard); *see Exela Pharma Sciences, LLC v. Eton Pharms., Inc.*, No. 20-CV-365 (MN), 2022 WL 806524, at *3 (D. Del. Feb. 8, 2022) (excluding expert opinion testimony that was based on erroneous legal theory because "expert's opinion that crucially depends on an incorrect legal theory is not likely to be relevant to the Court's fact-finding"); *Sprint Communications Co. L.P. v. Cox Communications Inc.*, 302 F. Supp. 3d 597, 620, 624 (D. Del. 2017) (excluding expert testimony as "unhelpful to the court, and . . . likely to confuse the jury" because it was "contrary to the court's claim construction" and "improperly applies legal principles, such as those relating to claim construction, prosecution history estoppel, and double patenting" and gave the court "no confidence that [the expert] 'ha[d] reliably applied the principles and methods to the facts of the case'") (quoting Fed. R. Evid. 702(d)); *Miller v. Elexco Land Servs., Inc.*, No. 5:09-CV-0038 GTS/DEP, 2011 WL 4499281, at *17-18 (N.D.N.Y. Sept. 27, 2011) (excluding expert testimony as to definition of "tree" under New York property law because it was inaccurate); *Martinez v. Porta*, 601 F. Supp. 2d 865, 866-67 (N.D. Tex. 2009) (excluding expert testimony that was based on incorrect interpretation of applicable statute).

Mr. Zatkovich's proposed testimony on the trade secret standard for reverse engineering is contrary to Georgia trade secret law, so it is not "the product of reliable principles and methods." Fed. R. Evid. 702(c). Furthermore, Mr. Zatkovich's opinion is irrelevant and unfairly prejudicial. As his opinion is contrary to the governing law, it does *not* have "any tendency to

12

make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401(a). Even if Mr. Zatkovich's opinion could somehow be relevant (which it cannot), "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [and] misleading the jury." Fed. R. Evid. 403. Mr. Zatkovich's opinion directly contradicts Georgia trade secret law, so it would confuse the issues concerning BBPOS's trade secret claim, mislead the jury, and unfairly prejudice Ingenico, who could be found liable for millions of dollars of alleged damages based on legally erroneous testimony from BBPOS's expert.

## CONCLUSION

For all the reasons set forth above, Mr. Zatkovich's opinion on the trade secret standard for reverse engineering should be excluded under Rules 401, 402, 403, and 702 of the Federal Rules of Evidence and *Daubert*. As a matter of law, Mr. Zatkovich's opinion does not satisfy the standard for expert testimony, is irrelevant, is likely to confuse the jury, and would be unfairly prejudicial to Ingenico. Accordingly, Ingenico respectfully requests that the Court strike and exclude from trial any and all opinions and conclusions (and any and all testimony derived therefrom) offered by Mr. Zatkovich about the trade secret standard for reverse engineering, including but not limited to the opinions contained in paragraphs 10-16 of Mr. Zatkovich's Reply Report and page 89, line 7 to page 92, line 10 of Mr. Zatkovich's deposition.

## REQUEST FOR ORAL ARGUMENT

Ingenico requests oral argument on its Motion *In Limine* to Exclude Any and All Testimony from BBPOS Limited's Expert on the Trade Secret Standard for Reverse Engineering. Ingenico's Motion raises important issues concerning the scope of permissible

13

expert testimony and Ingenico believes that oral argument may assist the Court in addressing the Motion.

Dated:  April 10, 2023

    Respectfully submitted,
    INGENICO INC., INGENICO CORP. AND
    INGENICO GROUP, SA,

    By their attorneys,

    /s/ *Jeffrey K. Techentin*
    JOHN A. TARANTINO (BBO #492230)
    PATRICIA K. ROCHA (BBO #542348)
    NICOLE J. BENJAMIN (BBO #666959)
    R. BART TOTTEN (BBO #631605)
    JEFFREY K. TECHENTIN (*pro hac vice*)
    Adler Pollock & Sheehan P.C.
    One Citizens Plaza, 8th Floor
    Providence, RI 02903
    Tel: (401) 274-7200
    Fax: (401) 351-4607
    jtarantino@apslaw.com
    procha@apslaw.com
    nbenjamin@apslaw.com
    jtechentin@apslaw.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on April 10, 2023, I caused to be served via electronic mail a true copy of the within document on the following counsel of record:

| | |
|---|---|
| Jonathon D. Friedmann, Esq.<br>Robert P. Rudolph, Esq.<br>Rudolph Friedmann LLP<br>92 State Street<br>Boston, MA 02109<br>JFriedmann@rflawyers.com<br>RRudolph@rflawyers.com | Oliver D. Griffin, Esq.<br>Peter N. Kessler, Esq.<br>Melissa A. Bozeman, Esq.<br>Kutak Rock LLP<br>303 Peach Street, N.E., Suite 2750<br>Atlanta, GA 30308<br>Oliver.griffin@kutakrock.com<br>Peter.kessler@kutakrock.com<br>Melissa.bozeman@kutakrock.com<br><br>Ricardo G. Cedillo, Esq.<br>755 E. Mulberry Ave., Ste 500<br>San Antonio, Texas 78212<br>rcedillo@lawdcm.com |

      /s/ *Jeffrey K. Techentin*
      Jeffrey K. Techentin