# EXHIBIT 1

```
 1                    MICHAEL SHAMOS
 2             UNITED STATES DISTRICT COURT
 3           FOR THE DISTRICT OF MASSACHUSETTS
 4                        - - -
 5   ANYWHERECOMMERCE,           :  CIVIL DOCKET
     INC.,and BBPOS LIMITED      :
 6                               :
              PLAINTIFFS         :  NO.
 7                               :  1:19-cv-11457-IT
         vs.                     :
 8                               :
     INGENICO, INC., INGENICO    :
 9   CORP., and INGENICO         :
     GROUP SA                    :
10                               :
              DEFENDANTS         :
11                               :
12                        - - -
13              REMOTE DEPOSITION OF
14                  MICHAEL SHAMOS
15                        - - -
16          Taken remotely, via Zoom, on Tuesday,
17   May 17th, 2022, beginning at 10:00 a.m., before
18   Beau Dillard, RPR, a Notary Public in and for
19   the Commonwealth of Pennsylvania, State of
20   New York and Certified Registered Professional
21   Reporter.
22                        - - -
23      VERITEXT NATIONAL COURT REPORTING COMPANY
                   MID-ATLANTIC REGION
24           1801 Market Street - Suite 1800
             Philadelphia, Pennsylvania  19103
25
```

```
 1                    MICHAEL SHAMOS
 2    A P P E A R A N C E S :
 3                    KUTAK ROCK LLP
                      BY:  MELISSA A. BOZEMAN, ESQ.
 4                    1760 Market Street, Suite 1100
                      Philadelphia,Pennsyvlania 19103
 5                    (215) 288-4384
                      Melissa.bozeman@kutakrock.com
 6                    Representing the Plaintiff
 7
                      ADLER POLLOCK & SHEEHAN P.C.
 8                    BY:  JEFFREY K. TECHENTIN, ESQ.
                      One Citizens Plaza, 8th Floor
 9                    Providence, Rhode Island 02903
                      (401) 274-7200
10                    Jtechentin@apslaw.com
                      Representing the Defendants
11
12
                              - - -
13
      A L S O   P R E S E N T :  Dylan Gillespie,
14                                The Technician
15                                 Robert Leventhal,
                                  The Videographer
16
                              - - -
17
18
19
20
21
22
23
24
25
```

Page 311

1               MICHAEL SHAMOS
2     language of the trade secret statutes.
3          Q.     Okay.
4          A.     So a trade secret has to not be
5     readily ascertainable by proper means.
6          Q.     Uh-huh.
7          A.     It is readily ascertainable by
8     -- so it's not a trade secret.  And so
9     sometimes reverse engineering is readily
10    ascertainable, sometimes it isn't.
11               So, for example, if -- if
12    equipment costing fifty million dollars is
13    required to do the reverse engineering, like
14    you have to put the thing under some kind of
15    scanning electronic microscope, then it might
16    not be readily ascertainable, but if it is
17    ascertainable, it is not a trade secret.
18         Q.     You'll agree that you did
19    nothing to determine whether or not Ingenico in
20    fact reverse engineered any of the trade
21    secrets alleged by BBPOS; correct?
22         A.     I have no evidence that they did
23    and it doesn't matter.
24         Q.     Okay.  And you did not
25    personally undertake any effort to reverse

1        MICHAEL SHAMOS
2        Q.     Summaries, correct.  All right.
3   So the first one in Paragraph 18, you state
4   Mr. Zatkovich has not shown that any of the
5   alleged trade secrets were actually trade
6   secrets.  In fact, they're not.
7        A.     Yeah.  That's two opinions.
8        Q.     Okay.  When you say in fact,
9   they're not.  Are you referring -- what are you
10  referring to?
11       A.     So something is not a trade
12  secrets if it has appeared in published
13  sources.  Something is not a trade secret if it
14  is readily ascertainable by a proper mean.
15       Q.     Uh-huh.
16       A.     In every case for all the
17  alleged trade secrets, they were either
18  disclosed in publically available sources or
19  they were readily ascertainable by proper
20  means.
21       Q.     Okay.  So I -- in going through
22  your report, and I think it's consistent with
23  the statements you've made today, you've
24  expressed the opinion that conceptionally,
25  these trade secrets alleged by BBPOS are

Page 334

1        MICHAEL SHAMOS
2     Q.    So you said here any detection
3   embodied in any BBPOS circuits could be readily
4   ascertained by reverse engineering.
5           Do you see that?
6     A.    Yes.  You open the box and you
7   look at the circuit.
8     Q.    Okay.  Is that the basis for
9   your opinion?
10    A.    Yes.
11    Q.    Okay is there any other
12  information that you -- or data that you looked
13  at that would be also relevant to the
14  conclusion that you reached?
15    A.    Don't need any.  If you allege
16  that a circuit is a trade secret and you put
17  your circuit in publically available devices,
18  it's no longer a trade secret, that's why we
19  have patents.
20          Anybody can open it up look at
21  it and say, oh, I can use that.  I'll put that
22  in my device, no prohibition against that
23  unless it's patented.
24    Q.    Does your conclusion in this
25  regard necessarily assume that it's in the

Page 336

1        MICHAEL SHAMOS
2    the nature of the contract was between the
3    holder of the device and the emitter of the
4    device.  If they were under obligation of
5    confidentiality and had a prohibition against
6    reverse engineering, then that would not
7    officiate the trade secret.
8        Q.    Okay.  Let's -- let's move to 95
9    of your report and this is just as a preview, I
10   think these are all going to be references to
11   the reverse engineering.  So that's 95.
12       A.    Same answer to both questions.
13       Q.    Okay.  So this is the basis of
14   your opinion is that it is a circuit and once
15   it's in the public realm, it is capable of
16   being reverse engineered?
17       A.    Well, it -- it's not actually
18   even reverse engineering, it's just looking and
19   seeing what it is.  And just taking it and
20   putting it in your own product.  Reverse
21   engineering implies that you have to do some
22   work to figure out how it works so you can
23   understand its principle of operation.
24             That would not be necessary,
25   once you identified that this is a polarity

Page 354

1            MICHAEL SHAMOS
2         C E R T I F I C A T E
3
   COMMONWEALTH OF PENNSYLVANIA:
4
   COUNTY OF PHILADELPHIA:
5
6         I, Beau Dillard, RPR, a Notary Public
   within and for the County and State aforesaid,
7  do hereby certify that the foregoing deposition
   of MICHAEL SHAMOS was taken before me, pursuant
8  to notice, at the time and place indicated;
   that said deponent was by me duly sworn to tell
9  the truth, the whole truth, and nothing but the
   truth; that the testimony of said deponent was
10 correctly recorded in machine shorthand by me
   and thereafter transcribed under my supervision
11 with computer-aided transcription; that the
   deposition is a true record of the testimony
12 given by the witness; and that I am neither of
   counsel nor kin to any party in said action,
13 nor interested in the outcome thereof.
14         WITNESS my hand this 20th day of May, 2022.
15
16  *[signature: Beau Dillard]*
17
                    _____
18                  Beau Dillard, RPR
                    Notary Public
19
20
21
22
23
24
25