UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ANYWHERECOMMERCE, INC. and BBPOS LIMITED,<br><br>　　　　Plaintiffs,<br><br>　　　　　　v.<br><br>INGENICO INC., INGENICO CORP., and INGENICO GROUP SA,<br><br>　　　　Defendants. | Civil Docket No: 1:19-cv-11457-IT<br><br>Jury Trial Demanded |

## JOINT PRETRIAL MEMORANDUM

Pursuant to Local Rule 16.5(d) of the United States District Court for the District of Massachusetts, and this Court's Second Amended Procedural Order Re: Pretrial/Trial, the parties certify that counsel have conferred for the purpose of jointly preparing a pretrial memorandum for submission to the Court and hereby submit the following as their Joint Pretrial Memorandum:

1. **A Concise Summary of the Evidence that Will Be Offered by the Parties.**

　　　a. **BBPOS**

| BBPOS's Claim / Defense | Concise Summary of the Anticipated Evidence |
|---|---|
| **BBPOS'S FIRST AMENDED COMPLAINT ("FAC") – COUNT II**<br><br>**VIOLATION OF THE GEORGIA TRADE SECRETS ACT ("GTSA") (O.C.G.A. §§ 10-1-760, *et seq.*)**<br><br>*BBPOS v. Defendants*<br><br>The GTSA allows for relief where a plaintiff proves "that (1) it had a trade secret and (2) the opposing party misappropriated the trade secret." *Penalty Kick Mgmt. Ltd. v. Coca Cola Co.*, 318 F.3d 1284, 1290-91 (11th Cir. | • BBPOS-ROAM Licensing Agreement, as amended.<br>• All BBPOS documents, schematics, products, etc., that reflect trade secret information – (1) as supplied by BBPOS and disclosed to ROAM / Ingenico; (2) as reflected in internal ROAM / Ingenico documents and emails; and (3) as supplied by BBPOS to Ivan Zatkovich.<br>• ROAM / Ingenico mPOS devices examined by Ivan Zatkovich: (1) ROAM / Ingenico's RP350X mPOS device; (2) ROAM / Ingenico's RP750X mPOS device (prototype); (3) ROAM / Ingenico's RP457C mPOS device; and (4) ROAM / Ingenico's RP170C. |

| | |
|---|---|
| 2003) (internal quotations omitted). "To prove the existence of a trade secret, the plaintiff must show that it possessed information—which may include technical or nontechnical data, financial plans, customer lists, a product design, or product plans—that derives economic value from not being generally known or readily ascertainable to others, and that 'is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.'" *Diamond Power Intl, Inc. v. Davidson*, 540 F. Supp. 2d 1322, 1332 (N.D. Ga. 2007) (quoting O.C.G.A. § 10-1-761(4)); *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984) ("Because of the intangible nature of a trade secret, the extent of the property right therein is defined by the extent to which the owner of the secret protects his interest from disclosure to others."). Under Massachusetts contract law, "an individual who breaches contractual duties to obtain trade secrets has used improper means," and "[a] party who knowingly benefits from the breachr's trade secret bounty is also liable." *Optos, Inc. v. Topcon Med. Sys., Inc.*, 777 F. Supp. 2d 217, 240 (D. Mass. 2011). | • BBPOS testimony by Ben Lo (to be elicited).<br>• BBPOS testimony by Jimmy Tang (to be elicited).<br>• Testimony by Will Graylin (to be elicited).<br>• Ivan Zatkovich's testimony (to be elicited) regarding his opinions on liability: (1) Identifying what proprietary information BBPOS has created in the development of their products; (2) Identifying what BBPOS proprietary information that Ingenico obtained; and (3) Determining what BBPOS proprietary information Ingenico misappropriated.<br>• The amount of damages suffered by BBPOS as calculated using Ingenico's own sales data documents (V. Young Dep. Tr. 9, 8; and as recently supplied, for 2021 to present) [IngenicoInc_0126787, V. Young Dep. Tr. 8 (2018 Data from SAP), IngenicoInc_0307599].<br>• Steve Scherf's testimony (to be elicited) regarding his opinions on damages (as a measure of unjust enrichment).<br>• Internal Will Graylin, Christopher Rotsaert, and other email communications regarding theft of BBPOS's trade secrets.<br>• Mr. Zatkovich's rebuttal opinions on prior art references of Dr. Shamos.<br>• Testimony by Christopher Rotsaert (to be elicited) regarding theft of BBPOS's trade secrets, which were put to commercial use in the accused products. |
| **BBPOS'S FAC COUNT V**<br><br>**BREACH OF BBPOS-ROAM LICENSING AGREEMENT (CONFIDENTIALITY OBLIGATIONS, §§6.1 – 6.3; INDEMNITY OBLIGATIONS, §4.3)**<br><br>*BBPOS v. Ingenico Inc.* | • BBPOS testimony by Ben Lo (to be elicited).<br>• BBPOS testimony by Jimmy Tang (to be elicited).<br>• Testimony by Christopher Rotsaert (to be elicited).<br>• Documents evidencing the material that was requested, received, disseminated, and used by ROAM / Ingenico / Landi.<br>• Evidence demonstrating that BBPOS's disclosures of its trade secrets to ROAM / Ingenico fall within the definition of |

| | |
|---|---|
| "To prevail on a claim for breach of contract, a plaintiff must demonstrate that there was [1] an agreement between the parties; [2] the agreement was supported by consideration; [3] the plaintiff was ready, willing, and able to perform his or her part of the contract; [4] the defendant committed a breach of the contract; and [5] the plaintiff suffered harm as a result." *Bulwer v. Mount Auburn Hosp*., 46 N.E.3d 24, 39 (Mass. 2016) (citing *Singarella v. Boston*, 173 N.E.2d 290, 291 (Mass. 1961)).<br><br>A material breach of contract by one party excuses the other from performance as a matter of law. *Hastings Assocs., Inc. v. Local 369 Bldg. Fund, Inc*., 675 N.E.2d 761, 766 (1997). *See Lease–It, Inc. v. Mass. Port Auth*., 33 Mass.App.Ct. 391, 600 N.E.2d 599, 602 (1992) ("When a party to an agreement commits an immaterial breach of that agreement, the injured party ... may not stop performing its obligations under the agreement."). "A material breach of an agreement occurs when there is a breach of 'an essential and inducing feature of the contract[ ].' " *Id.* (alteration in original) (quotation omitted). | "Confidential Information" and were made under the protections of §§6.2 and 6.3.<br>• Proofs (via Ben Lo testimony) of actual loss(es) caused by breach of ROAM / Ingenico Inc.'s confidentiality obligations (and non-duplicative damages caused by the misuse of "Confidential Information" by Ingenico, and others, to develop directly competitive mPOS devices).<br>• Evidence of incurred attorneys' fees and costs, consistent with engagement agreement.<br>• Proofs relative to the breach and materiality of the confidentiality provision also as an affirmative defense to Ingenico Inc.'s indemnification claims to excuse BBPOS's further performances under the contract as the nonbreaching party under the BBPOS-ROAM Licensing Agreement as of the date of such breach. |
| **BBPOS'S FAC<br>COUNT VII**<br><br>**UNJUST ENRICHMENT**<br><br>*BBPOS v. Defendants*<br><br>Under Massachusetts law, unjust enrichment has three elements: (1) A benefit conferred upon the defendant by the plaintiff; (2) An appreciation or knowledge of the benefit by the defendant; and (3) The acceptance or | • BBPOS testimony by Ben Lo (to be elicited).<br>• BBPOS testimony by Jimmy Tang (to be elicited).<br>• Testimony by Will Graylin (to be elicited).<br>• Testimony by Christopher Rotsaert (to be elicited).<br>• Documents evidencing the material that was requested, received, disseminated, and used by ROAM / Ingenico / Landi. |

| retention of the benefit by the defendant under circumstances which make such acceptance or retention inequitable. *Sweeney v. DeLuca*, No. 042338, 2006 WL 936688 (Mass. Super. Mar. 16, 2006) (distinguished on unrelated grounds). "Unjust enrichment is defined as 'retention of money or property of another against the fundamental principles of justice or equity and good conscience.' " *Santagate v. Tower*, 833 N.E.2d 171, 176 (2005). "The fact that a person has benefited from another is not of itself sufficient to require the other to make restitution therefor." *Keller v. O'Brien*, 683 N.E.2d 1026, 1030 (1997). Standard for unjust enrichment is based on reasonable expectations of party. *Santagate v. Tower*, 833 N.E.2d 171, 176 (2005). | |
|---|---|

      b.   <u>Defendants</u>

Defendants will present evidence that all of the conduct identified by Plaintiffs was lawful, that the information alleged to be trade secret (1) was not trade secret, (2) was not misappropriated, and (3) was not used in the development of, or incorporated into, the accused products. Defendants will present expert testimony that even assuming liability with respect to all five trade secrets on all accused products, the proper measure of BBPOS's unjust enrichment falls within the range of $0 to $2 per unit of accused product containing the alleged trade secrets. Defendants will demonstrate that BBPOS breached its contract with Ingenico Inc. by failing to indemnify various intellectual property claims asserted against Ingenico Inc. by third parties arising out of the sale of BBPOS devices.

Defendants will put on this evidence through the following witnesses:

      a.   Christopher Rotsaert: Mr. Rotsaert will testify to his knowledge and actions as an employee of ROAM Data, Inc. and Ingenico, Inc. with direct responsibility for product

development and interaction with BBPOS with respect to mPOS readers.  Mr. Rotsaert will testify concerning the communication of the alleged trade secrets by BBPOS to ROAM Data, Inc. and Ingenico, the development of the accused products, the performance of the ROAM-BBPOS agreement from 2012 to the present.

b.      David Szczepanski:  Mr. Szczepanski will testify as to his knowledge and actions as an employee of ROAM Data, Inc. and Ingenico, Inc. with supervisory responsibility for product development and corporate interaction with BBPOS with respect to the performance of the ROAM-BBPOS agreement, including BBPOS's breach of the agreement.

c.      Victor Young:  Mr. Young will testify concerning the financial information produced by Defendants in this action and that is the source of the "unjust enrichment" damages assertion by BBPOS.

d.      Ben Lo (by deposition):  Mr. Lo will testify regarding the transfer of information that occurred in 2012, BBPOS's awareness of the alleged breaches and the accused products' availability in the marketplace, and BBPOS's contractual breaches.

d.      Dr. Michael Shamos:  Dr. Shamos is an expert witness who will testify as to the matters set forth in his expert report, including the fact that the asserted trade secrets are not, in fact, trade secrets, but were either well known or readily ascertainable at the time of the alleged misappropriation.

e.      Dr. Jennifer Vanderhart:  Dr. Vanderhart is an expert witness who will testify as to the matters set forth in her expert report, including a rebuttal to the expert opinions of Plaintiffs' damages expert, Stephen Scherf.  Dr. Vanderhart will also testify regarding the damages associated with BBPOS's breach of the ROAM-BBPOS agreement and BBPOS's profits under that agreement after Defendants had, allegedly, misappropriated its trade secrets.

f.      Kerry Timbers, Esq.:  Mr. Timbers will testify as to the work and associated fees undertaken by him and members of his law firm in defense of matters for which BBPOS was contractually obliged to indemnify Ingenico, Inc., and hold it harmless.

**2.      The Facts Established by Pleadings or by Stipulations or Admissions of Counsel**

The parties jointly agree to the following Stipulations:

a.      BBPOS and ROAM Data, Inc. entered into the Engineering Development and License Agreement ("License Agreement") on May 4, 2010.

b.      BBPOS and ROAM Data, Inc. amended the License Agreement on August 15, 2011.

c.      ROAM Data merged with and into Ingenico Inc. on December 13, 2017.

d.      BBPOS first asserted its claims for misappropriation of trade secret, breach of contract, and unjust enrichment on December 20, 2018.  Dkt. 1.

Defendants (only) propose the following facts as established by pleadings or stipulations or admissions of counsel:

a.      By 2011, ROAM had nearly run out of cash and was on the verge of bankruptcy. First Amended Complaint (Dkt. 67) at ¶ 43.

b.      The alleged breach of the License Agreement by Defendants occurred in summer 2012.  First Amended Complaint (Dkt. 67) at ¶ 53.

c.      The alleged misappropriation of trade secrets by Defendants occurred in summer 2012.  First Amended Complaint (Dkt. 67) at ¶ 53.

**3.      Contested Issues of Fact**

a.      <u>BBPOS</u>

Plaintiffs submit the following list of contested issues of fact:

1.      Did Plaintiff BBPOS assert its legal claim within five years of the Defendants' misappropriation and/or theft being discovered by the exercise of reasonable diligence?

2.      Did Plaintiff BBPOS prove that it had mPOS device technology that was not readily ascertainable by proper means by other persons (i.e., that BBPOS had a "Trade Secret")?

3.      Did Plaintiff BBPOS take reasonable steps, under the circumstances, to maintain the secrecy of its Trade Secrets?

4.      Did Defendants acquire Plaintiff's Trade Secrets through improper means and/or without permission and/or consent from Plaintiff?

5.      Did Plaintiff suffer damages as a result of Defendants' wrongful actions of acquiring and then selling BBPOS's Trade Secrets in the commercial marketplace without permission and/or consent from Plaintiff?

6.      What amount of money damages do you award BBPOS as a result of Defendants' wrongful actions?

7.      Should Defendant be barred from continuing to sell any product that includes BBPOS's Trade Secrets?

8.      Was Defendant's misappropriation willful and malicious?

9.      Did Plaintiff BBPOS prove by a preponderance of the evidence that Defendants received a benefit?

10.     Was the benefit that Defendants received unjust in light of the reasonable expectations of the parties?

11.     What amount of money damages must Defendants pay to Plaintiff to compensate Plaintiff?

12.     Did Defendant Ingenico Inc. breach its confidentiality obligations under the BBPOS-ROAM Licensing Agreement?

13.     Was Plaintiff BBPOS damaged by that breach?

14.     What are Plaintiff BBPOS's damages as a result of the breach?

15.     Did Plaintiff BBPOS breach its indemnification obligations under the BBPOS-ROAM Licensing Agreement for failing to pay legal fees for certain unrelated lawsuits?

16.   Did Defendant Ingenico Inc. commit a preceding material breach of the BBPOS-ROAM Licensing Agreement by breaching its confidentiality obligations to Plaintiff?

17.   Was Defendant Ingenico Inc. damaged by that breach in the amount up to $398,260?

18.   In what amount has Defendant Ingenico Inc. been damaged?

b.   <u>Defendants</u>

1.   What information was conveyed to ROAM Data, Inc.

2.   What information was conveyed to Ingenico, Inc.

3.   What information was conveyed to Fujian Landi Commercial Equipment Co.

4.   Whether any information conveyed by BBPOS was trade secret.

5.   Whether any information conveyed by BBPOS was accompanied by obligations of confidentiality.

6.   Whether any information conveyed by BBPOS was misappropriated.

7.   Whether any information conveyed by BBPOS was utilized by any of Defendants in the development or manufacture of any accused devices.

8.   Which accused devices, if any, are based upon or incorporate any of the asserted trade secrets.

9.   The amount, if any, by which any defendant was unjustly enriched as a result of a misappropriation of trade secret(s).

10.   Whether BBPOS brought its claims within the applicable statute(s) of limitations.

11.     Whether BBPOS is precluded from recovery based upon its inequitable conduct (*i.e.*, unclean hands).

12.     Whether BBPOS is precluded from recovery based upon laches.

13.     Whether BBPOS is precluded from recovery based on its own breach of contract.

14.     Whether BBPOS breached the ROAM-BBPOS agreement by failing to indemnify and hold harmless Ingenico, Inc. for intellectual property claims arising out of the sale of BBPOS products.

**15.**     The quantum of Ingenico Inc.'s damages for BBPOS's breach of contract.

**4.     Questions Raised by Pending Motions (Other than Motions *in Limine*)**

a.     <u>BBPOS</u>

Plaintiffs identify the following pending Motion: Defendants' Motion to Strike Jury Demand (Doc. No. 280).

b.     <u>Defendants</u>

Defendants' motion to strike Plaintiffs' jury demand is pending.  See ECF No. 280.  This motion addresses whether remaining claims, other than the indemnification counterclaim asserted by Ingenico, Inc., presents issues triable to a jury, in light of the equitable nature of the relief sought on each of BBPOS's claims.

**5.     Issues of Law, Including Evidentiary Questions, Together with Supporting Authority**

a.     <u>BBPOS</u>

Plaintiffs identify the following fifteen (15) pending Motions *in Limine*:

<u>Plaintiffs' Ten Motions *In Limine* (supporting authority appearing therein):</u>

1.      BBPOS's MIL No. 1 (Doc. Nos. 253, 254) To Preclude Argument
That BBPOS Breached the Agreement and to Preclude Reference to
Ingenico's Claimed "Damages" on Dismissed Claims

      a.      Requesting that defendants be excluded from arguing that
BBPOS breached the Engineering Development and
Licensing Agreement and presenting damages to the jury its
previous damages from dismissed claims;

      b.      Ingenico at a status conference seemed to suggest they were
to present their whole case including those reduced by the
Court's March 27 Order, and they intended to present their
affirmative defenses that are no longer relevant due to the
dismissal of the Breach of Contract claim;

      c.      Further unclean hands does not presently apply under
Georgia law and would therefore waste time;

      d.      Reducing damages- Ingenico's only remaining damages are
$398,260, and their presentation to jury must not go beyond
this amount;

      e.      Concerns regarding Defendants improperly bolstering
defenses. For example, recoupment here, if any, must be
capped at above measured indemnification damages.

2.      BBPOS's MIL No. 2 (Doc. Nos. 255, 256) To Preclude Argument
or Testimony Relating to Reverse Engineering

      a.      Ingenico liability expert stated trade secrets were capable of
reverse engineering. The Georgia Trade Secrets Act,
however, holds that actual not theoretical reverse
engineering is a defense to trade secret misappropriation;

      b.      The information used must be actually supplied through
reverse engineering and not otherwise misappropriated.

      c.      Ingenico should be precluded from arguing to the jury that
these are not trade secrets. Ingenico did not present evidence
of actual reverse engineering.

3.      BBPOS's MIL No. 3 (Doc. Nos. 257, 258) Preclude Reference to
Any Previously Dismissed Claims

      a.      The Court dismissed Ingenico's breach of duty of good faith
and fair dealing, intentional interference with NAB, AC
intentional interference with BBPOS, DTSA, MTSA, and

deceptive trade practices, and breach of contract (exclusivity provisions);

    b.    Risk of Ingenico flashing the dismissed $70 million (speculative, and dismissed) damages figure to the jury would result in unfair prejudice.

4.    BBPOS's MIL No. 4 (Doc. Nos. 259, 260) To Preclude Reference to Stripe Acquisition of BBPOS

    a.    Stripe acquisition was long after pertinent events of this case, Ingenico might present the purchase price to unfairly prejudice the jury;

    b.    Concerns regarding Ingenico attempting to argue that parties had equal financial bargaining power at the time, among others.

5.    BBPOS's MIL No. 5 (Doc. Nos. 261, 262) To Preclude reference to the terms of legal engagement or fee arrangement

    a.    Ingenico has previously sought discovery of these matters, and the Court declined to compel producing engagement letter, etc.;

    b.    Plaintiffs' extraneous legal arrangements have no evidentiary value at trial and would create unfair prejudice because it could suggest to the jury that Plaintiffs are ganging up on Ingenico.

6.    BBPOS's MIL No. 6 (Doc. Nos. 263, 264) To Preclude Evidence or Argument That the Accused Products Do Not Utilize Any Of The Claimed Trade Secrets

    a.    This testimony requires scientific or technical knowledge and cannot be testified to by a lay witness, only an expert;

    b.    Ingenico's technical expert did not offer opinion that the accused products did not utilize trade secrets and he cannot expand that opinion now.

7.    BBPOS's MIL No. 7 (Doc. Nos. 265, 266) To Preclude Evidence or Argument Relating to Ingenico's Claimed Indemnification Damages

    a.    Indemnification extends to reasonable attorneys fees, and Ingenico has done nothing to present the reasonableness of

their attorneys fees, a subject which requires expert testimony.

8.   BBPOS's MIL No. 8 (Doc. Nos. 267, 268) To Preclude Use of Late Produced Documents

   a.   Ingenico produced all evidence of damages documents after the close of fact discovery. These late productions were inexcusable, particularly in light of the wasted time asserting privacy protections in the GDPR;

   b.   The Court should preclude all late produced documents and in the alternative, Volume 18 regarding Ingenico's liability defenses.

9.   BBPOS's MIL No. 9 (Doc. Nos. 269, 270) To Preclude Kerry Timbers From Testifying

   a.   Mr. Timbers was not included on Defendants' initial disclosures, and there was never amendment to add Mr. Timbers, nor was he deposed;

   b.   FRCP 37(c)(1) and 26(a) or (e) preclude use of the information.

10.   BBPOS's MIL No. 10 (Doc. Nos. 271, 272) To Preclude evidence or argument related to assigning incremental value of the trade secrets to the accused products

   a.   Anticipating Ingenico will use experts / witnesses to belatedly assign incremental costs to each of the five trade secrets. Dr Vanderhaart did not offer such testimony in her report however;

   b.   Offering this information would be outside the scope of the expert reports.

<u>Defendants' Five Motions *In Limine*</u>:

1.   Defendants' MIL (Doc. Nos. 283, 284) to Exclude Any And All Evidence of BBPOS Limited's Alleged Damages And/Or Remedies Other Than Disgorgement – *BBPOS opposes this MIL for the reasons set forth more fully in their Opposition.*

2.   Defendants' MIL (Doc. Nos. 286, 287) to Exclude any and all parol evidence concerning the engineering development and license agreement and to preclude BBPOS Limited from referring to that

agreement as a mere product license – *BBPOS opposes this MIL for the reasons set forth more fully in their Opposition.*

3.  Defendants' MIL (Doc. Nos. 288, 289) to Exclude any and all testimony from BBPOS Limited's expert on the trade secret standard for reverse engineering – *BBPOS opposes this MIL for the reasons set forth more fully in their Opposition.*

4.  Defendants' MIL (Doc. Nos. 291, 292) to Exclude Any and All Testimony of, And/Or Reference to BBPOS Limited's Duplicative Claim for Unjust Enrichment – *BBPOS opposes this MIL for the reasons set forth more fully in their Opposition.*

5.  Defendants' MIL (Doc. Nos. 293, 294) to Preclude unreliable and inadmissible expert testimony of Ivan Zatkovich – *BBPOS opposes this MIL for the reasons set forth more fully in their Opposition.*

Plaintiffs further reserve the right to properly consider, brief, and rebut Defendants' "open legal issues" below – only first identified by Defendants in the context of preparing this Joint Pretrial Memorandum filing. Plaintiffs submit that Defendants' "open legal issues" equate to a second attempt at dispositive motion practice or otherwise are matters better resolved at the parties' jury charging conference with the Court.

Regarding the first "open legal issue" on disgorgement of profits, Plaintiffs note the following, with a reservation of rights to supplement in a timely manner or as directed by the Court:

A plaintiff alleging misappropriation of trade secrets must prove proximate causation to receive damages for its lost sales, its lost profits, or disgorgement of a defendant's profits. The plaintiff also bears the burden to prove causation of its own losses (whether sales or profits). The Sedona Conference, Commentary on Monetary Remedies in Trade Secret Litigation, at sec. II(E)(2), THE SEDONA CONFERENCE (2022, Public Comment Version), https://thesedonaconference.org/publication/Commentary_on_Monetary_Remedies_in_Trade_Secret_Litigation. Regarding disgorgement, a plaintiff generally must show that the defendant's

misappropriation proximately caused the defendant's unjust enrichment. *Id.* After that showing, the burden then shifts to the defendant to apportion the value of the defendant's profits or other benefit attributable to its wrongdoing. *Id.* (citing RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 45 cmt. f (AM. LAW INST. 1995) ("The plaintiff is entitled to the defendant's net profits from sales of goods incorporating the trade secret… [and only] bears the burden of establishing sales; the defendant has the burden of establishing deductible expenses and any sales not attributable to the use of the trade secret."); *Univ. Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 539 (5th Cir. 1974) ("if the defendant enjoyed actual profits, a type of restitutionary remedy can be afforded the plaintiff—either recovering the full total of defendant's profits or some apportioned amount designed to correspond to the actual contribution the plaintiff's trade secret made to the defendant's commercial success.")). Notwithstanding any burden shifting, then, the ultimate proof of proximate causation regarding disgorgement of a defendant's profits or unjust benefits will likely remain the responsibility of the plaintiff. *Id.*

There is no Georgia precedent (that Plaintiffs' research has been able to uncover), requiring an apportionment of value to alleged multiple trade secrets. However, BBPOS's technical liability expert will opine, consistent with his Initial and Rebuttal Reports, that (1) each asserted trade secret is so integral to the product that it is truly impossible to apportion value between them; and (2) the five alleged trade secrets encompass the designs and methods used to create parts of a unified structure, such that the misappropriation of any of the asserted trade secrets would have caused all of the damages it sought. The issue of apportionment may arise when a trade secret plaintiff asserts larger numbers of trade secrets or the accused product/service at issue is a composite of accused and nonaccused components. In such situations, as here, it may be the case that each asserted trade secret is so integral to the product that it is truly impossible to apportion value between them. *See,*

*e.g., Huawei Techs. Co. v. Yiren Huang*, No. 4:17-CV-00893, 2019 WL 2395276, at *3 (E.D. Tex. June 6, 2019) ("[Plaintiff] is a small start-up company . . . the asserted trade secrets are an integral part of the all research and development and it is not possible to identify and apportion research and development expenses that are tied solely to the ten trade secrets."); *BladeRoom Group v. Emerson Electric,* 331 F. Supp. 3d 977, 979 (N.D. Cal. 2018) (rejecting a challenge to the sufficiency of the evidence to support the damages award, in part because "the jury was not asked to apportion damages among the trade secrets[,]" reasoning that, in the absence of a rule requiring apportionment, the plaintiff "could argue that since its trade secrets encompass the designs and methods used to create parts of a unified structure, the misappropriation of any of the asserted trade secrets would have caused all of the damages it sought."); *Sabre GLBL, Inc. v. Shan*, 779 Fed. App'x 843, 852 (3d Cir. 2019); *CardiAQ Valve Techs., Inc. v. Neovasc Inc*., No. 14-CV-12405-ADB, 2016 WL 6465411, at *11-12 (D. Mass. Oct. 31, 2016) (denying motion for new trial on damages where jury found three of six asserted trade secrets misappropriated and expert did not testify as to reasonable royalty for each trade secret because court found jury had reasonable basis to conclude that the individual trade secrets misappropriated solved the same challenges and gave defendant the same head start).

      b.   <u>Defendants</u>

        1.   **<u>Whether BBPOS is Entitled to Disgorgement of Defendants' Profits</u>**.

As unjust enrichment damages, BBPOS seeks 100% of the profits from the Accused Devices. An issue of law concerns whether BBPOS bears the burden of proving that the entire profits are a reasonable expression of the value of the trade secrets, *i.e.*, the amount by which one or more defendants were unjustly enriched. *Cochran v. Ogletree*, 244 Ga. App. 537, 540, 536 S.E.2d 194, 197 (2000) ("Where an award of money damages is made for unjust enrichment [or

quantum meruit], it must be supported by evidence from which it can be determined to a reasonable certainty that the [plaintiff] in fact realized such [gains].") (quoting *White v. Arthur Enterprises*, 464 S.E.2d 255 (1995)); *see also In re White*, 559 B.R. 787, 807 (Bankr. N.D. Ga. 2016) (burden on plaintiff to establish value of property transferred to defendant to calculate the amount of enrichment that was "unjust"). In the context of a trade secret claim, this requires the presentation of "evidence by which the jury can value the rights the defendant has obtained." *Advantor Sys. Corp. v. DRS Tech. Servs., Inc.*, 678 F. App'x 839, 853 (11th Cir. 2017) (applying Florida Uniform Trade Secrets Act) (citation and quotation omitted).

If BBPOS seeks to obtain the entire profit from the accused devices, BBPOS bears the burden of presenting evidence that the alleged trade secrets form the basis of customer demand. *In re Avaya Inc.*, 602 B.R. 445, 459 (S.D.N.Y. 2019) (*citing  Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1337 (Fed. Cir. 2009)); *see also MSC Software Corp. v. Altair Eng'g, Inc*., No. CV 07-12807, 2015 WL 13273227, at *3 (E.D. Mich. Nov. 9, 2015), supplemented, No. CV 07-12807, 2015 WL 13359781 (E.D. Mich. Nov. 22, 2015) (trade secret damages determined by reference to analogous provisions of patent damages) (quoting *University Computing Co. v. Lykes-Youngstown Corp*., 504 F.2d 518, 535 (5th Cir. 1974))*.

Georgia law specifically distinguishes between the remedy of unjust enrichment, which is the remedy specified by the Georgia Trade Secrets Act, and the disgorgement of profits, which might be available under a different cause of action, for example trademark infringement. *Compare* Ga. Code Ann., § 10-1-451 (for trademark violations, permitting award of "all profits derived from" unlawful conduct) *with* Ga. Code Ann., § 10-1-763 (Trade Secrets Act providing for damages in the form of unjust enrichment).  Unlike disgorgement, which would divest a defendant of all profits associated with the wrongful activity, "'[e]quity requires only that a

16

defendant give up its unjust enrichment.'" *Est. of Pidcock By & Through Pidcock v. Sunnyland Am., Inc.*, 726 F. Supp. 1322, 1336 n. 12 (S.D. Ga. 1989) (quoting *Rowe v. Maremont Corp.*, 850 F.2d 1226, 1241 (7th Cir.1988)). In the *Estate of Pidcock* case, the court analyzed whether unjust enrichment would entitle a plaintiff to the profits, not only on the half of the property at issue, but on the half owned by the defendant. The court found that while "disgorgement of any profit associated with the fraud might be appropriate under certain circumstances[,] that is not the prevailing view[…]." *Id.* (citation omitted).

Here, BBPOS seeks profits not only from the alleged trade secrets, but from the sale of products that perform functions beyond the scope of those trade secrets. Defendants will present evidence that (1) the accused devices are complex electronic products that, even if they contain the trade secrets, include other features and components such that any alleged trade secret features would be of *de minimis* value; and (2) the profit margin associated with the accused products reflects the efforts (in terms of research, design, manufacture, marketing, and sale) of Defendants, and not the alleged trade secrets. The portion of the profits that are attributable to Defendants' efforts, as opposed to the alleged trade secrets themselves, is not an amount by which Defendants have been unjustly enriched. *Pidcock v. Sunnyland Am., Inc.*, 854 F.2d 443, 447 (11th Cir. 1988) ("A significant limitation on the disgorgement doctrine is that *a plaintiff may not recover any portion of the profits attributable to the defendant's 'special or unique efforts* ... other than those for which he is duly compensated.") (cleaned up) (emphasis added).

### 2.  <u>Unjust Enrichment claim</u>.

BBPOS should not be permitted to assert a stand-alone claim for unjust enrichment where the conduct alleged to give rise to the claim and the damages sought in the claim are duplicative of the BBPOS trade secret claim. *See Hendricks v. StarKist Co.*, 30 F. Supp. 3d 917 (N.D. Cal.

2014) (rejecting an unjust-enrichment claim because it was duplicative of a claim brought pursuant to state consumer protection statutes); *Brazil v. Dole Food Co., Inc.*, 935 F. Supp. 2d 947, 967 (N.D. Cal. 2013) (rejecting claim for restitution as "superfluous" because it was a remedy under separate statutory claim asserted by plaintiff); *see also Freeman v. MetLife Group, Inc.*, 583 F. Supp. 2d 218, 222 (D. Mass. 2008) (rejecting a claim because it was duplicative of another claim that relied on the same allegations and sought the same relief).

If BBPOS is permitted to assert a stand-alone claim for  unjust enrichment, whether Georgia law or Massachusetts law would govern that claim would be an issue.  BBPOS initially brought this lawsuit in the United States District Court for the Northern District of Georgia.  After the case was transferred to this Court, BBPOS amended its Complaint to add the allegation that Defendants accepted, retained, and enjoyed the benefit of the alleged trade secrets in connection with Defendants' operations in Georgia.  First Am. Compl. ¶ 177.  This allegation made clear that BBPOS is asserting its unjust enrichment claim under Georgia law.  This Court previously stated it considers the unjust enrichment claim to have been brought under Massachusetts law because the parties cited Massachusetts law in their summary-judgment papers.  Memorandum and Order at 20 n.16 (ECF No. 228).

If, consistent with BBPOS's allegations in its First Amended Complaint, the unjust enrichment claim is governed by Georgia law, then the claim is preempted by the Georgia Trade Secrets Act.  *See* Ga. Code Ann. § 10-1-767(a) (the Georgia Trade Secrets Act "supersedes all conflicting laws providing restitution or civil remedies for the misappropriation of trade secrets"); *Diamond Power International, Inc. v. Davidson*, 540 F. Supp. 2d 1322, 1346 (N.D. Ga. 2007) (granting summary judgment on an unjust-enrichment claim because the claimant "ma[de] no attempt to distinguish the factual basis for its unjust enrichment claim from the factual basis for its

trade secrets claims"); *Robbins v. Supermarket Equip. Sales, LLC*, 722 S.E.2d 55, 58 (Ga. 2012) (holding that a claim for equitable relief was preempted by the GTSA).

In addition, if Georgia law governs BBPOS's claim for unjust enrichment, then, as Ingenico has previously demonstrated, the statute of limitations is four years. *See* Ga. Code Ann. § 9-3-26; *see also* Defs' Mem. in Support of Mot. for Summary Judgment at 13-14 (noting that the unjust enrichment claim references Georgia law and arguing that that state's statute of limitations bars the claim).

3.    **BBPOS Contract claim**.

Applying the law of the case, BBPOS cannot prevail on its contract claim because its remedies consist exclusively of the equitable remedy of disgorgement. *See Ms. M. v. Falmouth Sch. Dep't*, 875 F.3d 75, 78 (1st Cir. 2017) ("The law of the case doctrine precludes relitigation of the legal issues presented in successive stages of a single case once those issues have been decided.") (quoting *Cohen v. Brown Univ.*, 101 F.3d 155, 167 (1st Cir. 1996)); *Gemini Investors Inc. v. AmeriPark, Inc.*, 643 F.3d 43 (1st Cir. 20011) (rejecting a "lost opportunity" theory in a case based on a breach of an exclusivity provision); *G4S Tech. LLC v. Massachusetts Tech. Park Corp.*, 99 N.E.3d 728, 741 (Mass. 2018) ("The nonbreaching party is entitled to be made whole and no more."); *see also* Memorandum & Order (ECF No. 228) (relying on *Gemini Investors* and *G4S Tech* to conclude that disgorgement of profits is not a proper measure of damages when the duty that was allegedly breached was an obligation not to take certain actions).

Alternatively, should BBPOS intend to present evidence of actual damages for the alleged breach of contract, BBPOS is foreclosed from seeking disgorgement on its contract claim because the availability of equitable relief for breach of contract is limited to circumstances in which the claimant cannot establish actual damages. *See Shedd v. Sturdy Mem'l Hosp., Inc.*, No.

2173CV00498C, 2022 WL 1102524, at *11 (Mass. Super. Apr. 5, 2022) (recognizing the alternative theory of disgorgement for a breach-of-contract claim only as an "alternative to a remedy in remedy" to damages when damages are inadequate); *see also* Fed. R. Civ. P. 26(a)(1)(A)(ii), (iii) (requiring disclosure of documents and things to support claims or defenses and disclosure of each category of damages); *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 523 (Fed. Cir. 2012) (upholding the exclusion of damages evidence because the plaintiff offered new damage calculation methodology "on the eve of trial," which created "unjustified risk of prejudice" to the defendant).

**6.      Requested Amendments to the Pleadings**

    a.      <u>BBPOS</u>: None.

    b.      <u>Defendants</u>:  None.

**7.      Additional Matters to Aid in the Disposition of the Action**

    a.      <u>BBPOS</u>: None known, at this time.

    b.      <u>Defendants</u>:  None.

**8.      The Probable Length of the Trial**

    a.      <u>BBPOS</u>

Plaintiffs estimate that the presentation of their case-in-chief will be completed in six days.

    b.      <u>Defendants</u>

Defendants estimate that the trial, inclusive of jury selection if necessary, will take 10 trial days (9am-1pm).

Respectfully, and jointly submitted:


                */s/ Melissa A. Bozeman*
            By: Melissa A. Bozeman (Pro Hac Vice)
               Pennsylvania Bar No. 201116
               Oliver D. Griffin (Pro Hac Vice)
               Pennsylvania Bar No. (80126)

Peter N. Kessler (Pro Hac Vice)
Pennsylvania Bar No. 209033
KUTAK ROCK LLP
Two Logan Square
100 N. 18th Street, Suite 1920
Philadelphia, PA  19103-4104
(215) 299-4384 (Telephone)
(215) 981-0719 (Facsimile)
Melissa.bozeman@kutakrock.com
Oliver.griffin@kutakrock.com
Peter.kessler@kutakrock.com

and

Leland P. Abide (Pro Hac Vice)
MN Bar No. 039269
KUTAK ROCK LLP
60 South Sixth Street, Suite 3400
Minneapolis, MN 55402-4018
Telephone: (612) 334-5000
Facsimile: (612) 334-5050
leland.abide@kutakrock.com

and

Jonathon D. Friedmann, Esq. (BBO # 180130)
Robert P. Rudolph, Esq. (BBO # 684583)
RUDOLPH FRIEDMANN LLP
92 State Street
Boston, MA 02109
Tel.: (617) 723-7700
Fax: (617) 227-0313
JFriedmann@rflawyers.com
RRudolph@rflawyers.com

and

Ricardo G. Cedillo
DAVIS, CEDILLO & MENDOZA, INC.
755 E. Mulberry Ave., Ste 500
San Antonio, Texas 78212
Tel: (210) 822-6666
Fax: (210) 822-1151
rcedillo@lawdcm.com

Dated: April 13, 2023                    *Attorneys for Plaintiffs / Counterclaim-Defendants*

Dated:  April 13, 2023

Respectfully submitted,
INGENICO INC., INGENICO CORP. AND
INGENICO GROUP, SA,

By their attorneys,

/s/ *Jeffrey K. Techentin*
JOHN A. TARANTINO (BBO #492230)
PATRICIA K. ROCHA (BBO #542348)
NICOLE J. BENJAMIN (BBO #666959)
R. BART TOTTEN (BBO #631605)
JEFFREY K. TECHENTIN (*pro hac vice*)
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
Tel: (401) 274-7200
Fax: (401) 351-4607
jtarantino@apslaw.com
procha@apslaw.com
nbenjamin@apslaw.com
btotten@apslaw.com
jtechentin@apslaw.com