UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANYWHERECOMMERCE, INC. and BBPOS LIMITED,<br><br>**Plaintiffs,**<br><br>v.<br><br>INGENICO INC., INGENICO CORP., and INGENICO GROUP SA,<br><br>**Defendants.** | Civil Docket No: 1:19-cv-11457-IT<br><br>Jury Trial Demanded |

**BBPOS LIMITED'S OPPOSITION TO INGENICO'S THIRD MOTION TO STRIKE BBPOS LIMITED'S JURY DEMAND**

Plaintiff BBPOS Limited submits this opposition to Defendants Ingenico Inc., Ingenico Corp. and Ingenico Group, SA (collectively, "Ingenico") Third Motion to Strike BBPOS' Jury Demand (Doc. No. 280). For the reasons herein, the motion should be denied.

**INTRODUCTION**

For the third time, Ingenico asks the Court to strike BBPOS' jury demand. Again, its request should be denied. First, *both* parties continue to assert legal claims against one another in this case, and because common issues relate to the remaining legal and equitable claims, the jury demand must remain intact. In fact, the heart of BBPOS' breach of contract relates to Ingenico's theft of confidential information—the same confidential information that makes up BBPOS' trade secrets. Moreover, BBPOS is not precluded from an award of actual loss *plus* unjust enrichment, or a reasonable royalty, as a remedy for its misappropriation of trade secrets claim. Second, even if BBPOS' trade secret claim were the only remaining claim, and it was limited to disgorgement as its sole remedy, its jury demand should nevertheless remain intact because in this case, disgorgement is a remedy being utilized to BBPOS to pursue its underlying legal claim for

misappropriation of trade secrets. *See TCL Commc'n Tech. Holdings Ltd. v. Telefonaktiebolaget LM Ericsson*, 943 F.3d 1360, 1373 (Fed. Cir. 2019).

## ARGUMENT

Plaintiffs filed the First Amended Complaint ("FAC") on October 17, 2019. (Doc. No. 67). The Complaint included all of the claims and relief that will be at issue at trial, including counts for breach of contract, violation of the Georgia Trade Secrets Act ("GTSA"), and unjust enrichment. (*Id.*). The FAC expressly included unjust enrichment as one of the measures of damages under the GTSA which BBPOS intended to (and will) seek at trial. (*Id.* at 33). The FAC included a demand for jury trial. (*Id.* at 42).

Ingenico filed its Answer to Plaintiffs' Amended Complaint and Ingenico Inc.'s Amended Counterclaims on October 30, 2019 (the "Answer") (Doc. No. 68). In its Answer, Ingenico included multiple, unqualified jury demands, writing:

> "Defendants demand a trial by jury on Plaintiffs' claims." (Doc. No. 68 at 26); and

> "Defendants demand a trial by jury on Plaintiffs' claims and Defendant Ingenico Inc. demands a trial by jury on its counterclaims." (*Id.* at 44).[1]

Thus, for three years, five months, and fourteen days, the Parties litigated this case with the expectation that all claims and defenses would be tried to a jury. Then, on April 2, 2023—three weeks before the start of trial—Ingenico filed its first motion to strike the jury demand. That motion must be denied here, because both legal and equitable claims remain for trial. Additionally, even if BBPOS' only remaining claim was trade secret misappropriation and its only remedy

---

[1] Ingenico would later file the Second Amended Counterclaims of Ingenico, Inc., which again included a demand for jury trial on its counterclaims (Doc. No. 78 at 25), but did not amend its Answer.

permitted at trial was disgorgement of profits, its jury trial demand should still remain intact because underlying nature of BBPOS' claim is legal, while its chosen remedy is equitable.

## I. BBPOS' JURY DEMAND MUST REMAIN INTACT BECAUSE LEGAL AND EQUITABLE CLAIMS WITH COMMON ISSUES REMAIN

The Supreme Court has instructed that where a legal claim is joined with an equitable claim, "the right to jury trial on the legal claim, *including all issues common to both claims*, remains intact. The right cannot be abridged by characterizing the legal claim as 'incidental' to the equitable relief sought." *Curtis v. Loether*, 415 U.S. 189, 196 (1974) (emphasis supplied). BBPOS' legal claim for breach of contract remains. That claim is based upon Ingenico's breach of Section 6.1 of the Agreement, the confidentiality provision, which provides:

> Both parties agree to treat the other's Confidential Information (as defined below) as confidential, to take all reasonable measures to protect and prevent the disclosure of and/or unauthorized use by third parties of the other parties' Confidential Information, to exercise at least the same degree of care exercised for the protection of its own Confidential Information, and to not use Confidential Information other than for its intended purpose under this Agreement.

(Doc. No. 67 at 37). Breach of the confidentiality provision entitles BBPOS to indemnification of all related losses incurred by BBPOS as a result of this improper disclosure of its confidential material to a direct competitor, which BBPOS will seek at trial. The Confidential Information contemplated by the above provision includes the trade secrets which form the basis of BBPOS' misappropriation of trade secrets claim. Although the two claims involve many of the same underlying facts, both are permitted to proceed to trial where one claim arises from the breach and the misappropriation claim arises from separate and distinct legal duty. *See Cargill, Inc. v. Sears Petroleum & Transp. Corp.*, 388 F. Supp. 2d 37, 64 (N.D.N.Y. 2005) (claims for misappropriation of trade secrets and breach of confidentiality agreement, though based on common set of facts, were neither co-extensive, nor mutually exclusive; misappropriation was independent tort which existed independently of parties' contractual obligations.). On April 2, 2023, this Court issued a

well-reasoned Memorandum and Order which permitted BBPOS' breach of contract claim to go forward. (Doc. No. 228). Thus, because BBPOS' breach of contract claim—which seeks legal relief in the form of indemnification of costs and attorneys' fees—involves a commonality of issues with BBPOS' claim for misappropriation of trade secrets—the jury trial demand remains intact. The Court's inquiry may end here.

Additionally, damages under the GTSA are not limited to unjust enrichment, but includes actual loss caused by misappropriation *and* the unjust enrichment, or a reasonably royalty. O.C.G.A. § 10-1-763(a). While Ingenico has attempted to limit BBPOS' requested damages at trial to only disgorgement under the GTSA, the Court has not ruled on that motion, and it would be an improper limitation. BBPOS' damages theories have not changed since the outset of this litigation. At a 30(b)(6) deposition, Ingenico did not ask BBPOS about actual damages stemming from the misappropriation. (*See* Doc. No. 310-1 at 3–4). As to that claim, Ingenico clarified that damages relating to the sale of the accused products would come in the form of expert testimony.[2] Attorneys' fees were also discussed as a measure of damages at the 30(b)(6) deposition. (*Id*. at 4). BBPOS did concede that it was not seeking damages in the form of "injured reputation or anything like that" and also agreed that it was not seeking relief other than monetary relief. (*Id*.). At that point, Ingenico moved on to ask about damages related to other claims. (*See* Doc. No. 310-1). It never asked about damages related to breach of contract, or revisited trade secret misappropriation

---

[2] *See* Doc. No. 310-1 at 4:

 ·1· · · Q.· Explain to me what you think BBPOS is entitled to
 ·2· ·in terms of the money from the sales of these products.
 ·3· · · **A.· If the product is with our stolen IP, with our**
 ·4· ·**IP, we should be entitled to some of the money.**
 ·5· · · Q.· Do you have any idea how much of the money?
 ·6· · · **A.· I leave to the expert, and the expert, he didn't**
 ·7· ·**share with me yet**.

4

damages to ask about actual loss. If Ingenico believes that any damages are improperly requested at trial, it can object and cross-examine the witness on the basis of the damages.

Even if the Court determines that BBPOS is limited to presenting disgorgement damages at trial, the jury trial demand must still remain in effect because of Ingenico's own jury trial demand on its counterclaim for breach of the Agreement. Ingenico's counterclaim is compulsory because it bears a "logical relationship" to BBPOS' claims. *Eon Labs Inc. v. Smithkline Beecham Corp.*, 298 F. Supp. 2d 175, 179 (D. Mass. 2003) ("A counterclaim has a logical relationship to the original claim if 'it arises out of the same aggregate of operative facts as the original claim' in the sense that 'the same aggregate of operative facts serves as the basis of both claims.' "). In this circumstance, courts have held that a jury demand remained and could not be unilaterally withdrawn in a case alleging trade secret theft that involved a mix of legal and equitable claims. *Bro-Tech Corp. v. Thermax, Inc.*, No. CIV.05-CV-2330, 2009 WL 737349, at *1 (E.D. Pa. Mar. 19, 2009). In *Bro-Tech*, the court held that because the claims and counterclaims were "plainly 'offshoots of the same basic controversy between the parties,' and to hear them separately would be duplicative and wasteful of judicial and party resources." *Id*. at *3. (quoting *Great Lakes Rubber Corp. v. Herbert Cooper Co*., 286 F.2d 631, 634 (3d Cir. 1961).

The same is true here. Ingenico's compulsory counterclaim is plainly an offshoot of the same basic controversy between BBPOS and Ingenico. Having a separate trial on Ingenico's counterclaim would be duplicative and wasteful. And, Ingenico has also made a jury demand both on BBPOS' claims and its own counterclaim. Rule 38 of the Federal Rules of Civil Procedure provides that, a "party waives a jury trial unless its demand is properly served and filed. A proper demand may be withdrawn only if the parties consent." Fed. R. Civ. P. 38(d). "Any party can preserve its right to a jury by making a timely demand for a jury trial . . . and once the demand is

5

made, both parties must consent before it can be withdrawn. *Concordia Co. v. Panek*, 115 F.3d 67, 69 (1st Cir. 1997) (emphasis in original). *See also Dell'Orfano v. Romano*, 962 F.2d 199, 202 (2d Cir.1992) ("A plaintiff is entitled to rely on a defendant's jury demand to preserve his own right to a jury trial."). BBPOS does not consent to a bench trial.

Thus, because there is commonality of issues between the legal and equitable claims, and BBPOS does not consent to the withdrawal of the jury demand, all issues should be tried to the jury.

## II. BBPOS IS ENTITLED TO A JURY TRIAL ON ITS CLAIM FOR TRADE SECRET MISAPPROPRIATION EVEN IF DISGORGEMENT IS THE ONLY REMEDY

The GTSA, like other Uniform Trade Secret Act statutes, provides alternative measures of damages caused by misappropriation:

> Damages can include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss. If neither damages nor unjust enrichment caused by the misappropriation are proved by a preponderance of the evidence, the court may award damages caused by misappropriation measured in terms of a reasonable royalty for a misappropriator's unauthorized disclosure or use of a trade secret for no longer than the period of time for which use could have been prohibited.

O.C.G.A. § 10-1-763(a). Ingenico argument is that because BBPOS seeks unjust enrichment/disgorgement damages as a remedy, its claim is equitable rather than legal, and is thus not entitled to a jury trial. It cites cases from other jurisdictions that have concluded the same. However, there is no Georgia or First Circuit authority in support of its position. Moreover, other courts considering this issue have concluded that actions for misappropriation of trade secrets are legal in nature, regardless of the measure of damages sought, and should be tried to a jury.

In *Newark Group, Inc. v. Sauter*, the Southern District of Ohio considered a defendant's motion to strike the plaintiff's demand for a jury trial on its Ohio Trade Secrets Misappropriation Act claim, because the plaintiff in that case sought money damages solely on an unjust enrichment

theory. No. C2:01-CV-1247, 2004 WL 5782100, at *1 (S.D. Ohio Apr. 6, 2004). Like the GTSA, the Ohio Trade Secrets Act permits damages in the form of actual plus and unjust enrichment, or a reasonably royalty. Ohio Rev. Code § 1333.63. The plaintiff in *Newark* conceded that no right to jury trial exists for equitable actions, and that a cause of action in equity, such as an action for unjust enrichment. *Sauter*, 2004 WL 5782100 at *1. However, an action for trade secret misappropriation which seeks unjust enrichment damages is different than an action for unjust enrichment. The Court concluded that the plaintiff was seeking monetary damages for the defendant's alleged misappropriation of trade secret information, to be measured by the unjust enrichment, and held that plaintiff was entitled to a jury trial under the Seventh Amendment. *Id.* at *2.

Other courts have agreed that actions seeking damages under state statutory trade secret law are legal in nature regardless of the method used to calculate damages. *See, e.g., Evans v. Gen. Motors Corp.*, 893 A.2d 371, 380–81 (2006) (finding claims for damages for actual loss and unjust enrichment under Connecticut UTSA legal because "all of the available evidence suggests that claims alleging the improper disclosure of a trade secret were recognized at common law and tried before juries in English courts when the Connecticut constitution was adopted in 1818," and because the plaintiff sought only monetary, not injunctive, relief); *MSC. Software Corp. v. Altair Eng'g, Inc.*, No. 07-12807, 2016 WL 1714873, at *2 (E.D. Mich. Jan. 7, 2016) (holding that a claim for misappropriation of trade secrets under the Michigan UTSA is a "tort action at law" and that the plaintiff is "entitled to a jury trial on all aspects of the claim, including damages under an unjust enrichment theory."); *De Lage Landen Operational Services, LLC v. Third Pillar Systems, LLC*, 09–2439, 2011 WL 1627899 (E.D. Pa. Apr. 28, 2011 (Doc. 233)) (holding that plaintiff's claim for damages under a reasonable royalty theory under California's Uniform Trade Secrets Act

7

must be submitted to the jury); *Control Ctr. L.L.C. v. Lauer*, 2002 WL 31971561 (M.D.Fla.2002) (holding that the plaintiff had a Seventh Amendment right to trial by jury on his damages claim under the Florida Uniform Trade Secrets Act).

Ingenico urges this Court to ignore *Sauter*, claiming that it ignores precedent, including Supreme Court precedent. (Doc. No. 281 at 10 fn. 5). Ingenico goes on to misrepresent the language in *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 668 (2014). Citing footnote one of the opinion, Ingenico states that the Supreme Court found "no right to a jury trial when the requested remedy for a violation of the Copyright Act was disgorgement." (Doc. No. 281 at 10 fn. 5). That is not what the Supreme Court held, and in fact, the issue of a jury trial was not even at issue in *Petrella.* Rather, the issue in that case was whether relief under the Copyright Act was legal or equitable in nature *for the purposes of whether or not defenses to equitable relief may apply*. *Petrella*, 572 U.S. at 667. What the Supreme Court actually wrote in footnote one is:

> As infringement remedies, the Copyright Act provides for injunctions, § 502, impoundment and disposition of infringing articles, § 503, damages and profits, § 504, costs and attorney's fees, § 505. **Like other restitutional remedies, recovery of profits "is not easily characterized as legal or equitable," for it is an "amalgamation of rights and remedies drawn from both systems**." Restatement (Third) of Restitution and Unjust Enrichment § 4, Comment b, p. 28 (2010). Given the "protean character" of the profits-recovery remedy, we regard as appropriate its treatment as "equitable" **in this case**. *See id.*, comment c, at 30.

*Petrella*, 572 U.S. at 668, fn. 1 (emphasis supplied). Thus, not only did the Supreme Court acknowledge the difficulty in ascertaining whether restitutional remedies flowing from statutory claims are "not easy" to characterize as legal or equitable, it also limited its holding to the specific case. It is an extraordinary leap for Ingenico to claim that *Petrella* stands for the proposition that there is no right to a jury trial when disgorgement is the requested remedy.

Moreover, a year after the Federal Circuit issued its opinion in *Texas Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.*, ("*TAOS*") on which Ingenico relies, it issued

8

another ruling at odds with its holding.  895 F.3d 1304, 1326 (Fed. Cir. 2018).  In *TCL Commc'n Tech. Holdings Ltd. v. Telefonaktiebolaget LM Ericsson*, the dispute involved whether or not a patent owner complied with obligations to offer fair, reasonable, and non-discriminatory license rates to plaintiff, and the resolution of the dispute required determination of the amount of a "release payment" owed by defendant as retrospective compensation for past wrongs.  943 F.3d 1360 (Fed. Cir. 2019).  The release payment was a substitute for past patent infringement damages. *Id*.  The Federal Circuit was required to determine whether the claim was legal or equitable in nature, and in doing so, considered the Supreme Court's guidance that "for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession."  *Id.*  (quoting *Great-West Life*, 534 U.S. at 214).  "In contrast, if the basis of the release payment is to provide a 'substitute' remedy for 'benefits' conferred to [defendant], then the claim is legal."  *Id*.  Ultimately, the Federal Circuit concluded that regardless of whether the release payment was characterized as compensation or restitution, it did not matter because "the underlying nature of the relief is legal" and thus a jury trial was required.  *Id*.

      The fact that TCL dealt with patent infringement rather than trade secret claims was not material to its decision.  Rather, the Federal Court focused the substance as opposed to the form of the restitution remedy at issue. *See id*.  It did not matter that the release payment could be characterized as restitution or that the release payment was ordered in the form of an injunction.  What did matter was that the release payment, in substance, provided a substitute *remedy* for the benefits obtained by the defendant in engaging in unlicensed sales of proprietary technology.  So too here—disgorgement is the *remedy* afforded to BBPOS to recover the benefits wrongfully obtained by Ingenico for the misappropriation of the trade secrets.

Accordingly, the Court should permit BBPOS' jury demand to remain intact, even if the sole remaining claim for trial is misappropriation of trade secrets and BBPOS is limited to seeking disgorgement of profits as its remedy.

## CONCLUSION

For the above reasons, Plaintiffs respectfully request that the Court enter an Order denying Defendants' motion to strike Plaintiffs' jury demand.

Respectfully submitted:

*/s/ Melissa A. Bozeman*
By: Melissa A. Bozeman (Pro Hac Vice)
   Pennsylvania Bar No. 201116
   Oliver D. Griffin (Pro Hac Vice)
   Pennsylvania Bar No. (80126)
   Peter N. Kessler (Pro Hac Vice)
   Pennsylvania Bar No. 209033
   KUTAK ROCK LLP
   Two Logan Square
   100 N. 18th Street, Suite 1920
   Philadelphia, PA  19103-4104
   (215) 299-4384 (Telephone)
   (215) 981-0719 (Facsimile)
   Melissa.bozeman@kutakrock.com
   Oliver.griffin@kutakrock.com
   Peter.kessler@kutakrock.com

   and

   Leland P. Abide (Pro Hac Vice)
   MN Bar No. 039269
   KUTAK ROCK LLP
   60 South Sixth Street, Suite 3400
   Minneapolis, MN 55402-4018
   Telephone: (612) 334-5000
   Facsimile: (612) 334-5050
   leland.abide@kutakrock.com

   and

   Jonathon D. Friedmann, Esq. (BBO # 180130)

        Robert P. Rudolph, Esq. (BBO # 684583)
        RUDOLPH FRIEDMANN LLP
        92 State Street
        Boston, MA 02109
        Tel.: (617) 723-7700
        Fax: (617) 227-0313
        JFriedmann@rflawyers.com
        RRudolph@rflawyers.com

        and

        Ricardo G. Cedillo
        DAVIS, CEDILLO & MENDOZA, INC.
        755 E. Mulberry Ave., Ste 500
        San Antonio, Texas 78212
        Tel: (210) 822-6666
        Fax: (210) 822-1151
        rcedillo@lawdcm.com

Dated: April 18, 2023       *Attorneys for Plaintiffs / Counterclaim-Defendants*

## CERTIFICATE OF SERVICE

  I, Melissa A. Bozeman, hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 18, 2023.

            /s/ *Melissa A. Bozeman*
            Melissa A. Bozeman, Esq.