**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **ANYWHERECOMMERCE, INC. and BBPOS LIMITED,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**INGENICO INC., INGENICO CORP. and INGENICO GROUP, SA,**<br>**Defendants.** | **CIVIL ACTION NO. 1:19-cv-11457-IT** |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR ATTORNEYS' FEES**

Pursuant to Rule 54(d) of the Federal Rules of Civil Procedure, 18 U.S.C. § 1836, Georgia Code § 10-1-764, Massachusetts General Laws chapter 93, § 42C, and this Court's inherent power, Defendants Ingenico Inc., Ingenico Corp., and Ingenico Group, SA submit this memorandum of law in support of their Motion for Attorneys' Fees. Plaintiffs AnywhereCommerce, Inc. and BBPOS Limited's claims were brought and prosecuted in bad faith. AnywhereCommerce alleged that its claim was based on tortious interference with a First Data contract but the discovery that it took thoroughly undermined its theory. Rather than abandon its claim, AnywhereCommerce adopted a new theory based on BBPOS's trade secrets, and persisted in that claim despite acknowledging at summary judgment that it was unsupported in the law. BBPOS asserted trade-secret claims based on inapplicable statutes and that were obviously time-barred, which BBPOS knew when it initiated this litigation. BBPOS admitted that it delayed to exploit its relationship with Ingenico financially. In fact, BBPOS brought suit only after its prospects of continued

financial gain from Ingenico faded due to the obsolescence of the BBPOS audio jack technology,[1] and after Ingenico Inc. insisted that it would hold BBPOS to its contractual obligations to indemnify and hold harmless under the parties' contract. Its tactical decision to delay bringing suit had the "benefit" (from BBPOS's perspective) of drastically increasing its claimed damages, which naturally, and foreseeably, increased the complexity and cost of the suit. An award of attorneys' fees is warranted in light of the knowing and intentional conduct of the Plaintiffs.

## ARGUMENT

### I. Defendants Are Entitled To Attorneys' Fees Based On The Trade-Secret Statutes At Issue.

The Defend Trade Secrets Act provides that "if a claim of the misappropriation is made in bad faith, which may be established by circumstantial evidence, a motion to terminate an injunction is made or opposed in bad faith, or the trade secret was willfully and maliciously misappropriated, award reasonable attorneys' fees to the prevailing party." 18 U.S.C. § 1836(b)(3)(D). Section 10-1-764 of the Georgia Code similarly provides that "[i]f a claim of misappropriation is made in bad faith, a motion to terminate an injunction is made or resisted in bad faith, or willful and malicious misappropriation exists, the court may award reasonable attorneys' fees to the prevailing party." Section 42C of chapter 93 of the Massachusetts General Laws also says attorney's fees may be awarded if a trade-secrets claim is made in bath faith. *See* Mass. Gen. Laws ch. 93, § 42C. "[T]he court may take into account the claimant's specification of trade secrets and the proof that such alleged trade secrets were misappropriated." *Id.*

1 BBPOS waited to bring suit until after the technology at issue had lost any competitive value, as confirmed by BBPOS not even pleading an entitlement to, let alone seeking, injunctive relief despite the fact that injunctive relief is presumptively available to remedy trade secret misappropriation. *See generally* ECF No. 1; *see also* Ga. Code Ann. § 10-1-763 (West) (noting that damages are available "[i]n addition to or in lieu of" injunctive relief). And, of course, when the matter proceeded to trial, BBPOS did not request any confidentiality restrictions on the completely public proceedings in which the "secrets" were disclosed.

In *Northstar Healthcare Consulting, LLC v. Magellan Health, Inc.*, No. 1:17-CV-1071-ODE, 2020 WL 10486256, at *30 (N.D. Ga. Feb. 20, 2020), the court applied the same two-part test to a request for attorney's fees under the Georgia Trade Secrets Act and the Defend Trade Secrets Act; *see also Magnesium Mach., LLC v. Terves, LLC*, No. 20-3779, 2021 WL 5772533, at *5 (6th Cir. Dec. 6, 2021) (assessing "bad faith" using a two-part test with "objective and subjective prongs" under three different trade-secrets statutes with bad-faith fee shifting and finding that fees were warranted under each statute). Under that assessment, a two-prong inquiry determines whether a claim was made in bad faith. The test "requires finding that '(1) Plaintiffs' claim was "objectively specious"; and (2) Plaintiffs exhibited "subjective misconduct" in bringing or maintaining the claim.'" *See Northstar*, 2020 WL 10486256, at *30 (citation omitted). "Objective speciousness exists where 'there is a complete lack of evidence as to every element of a misappropriation of trade secrets claim.'" *Id.* (citation omitted). "Subjective misconduct exists if 'a plaintiff knows or is reckless in not knowing that its claim for trade secret misappropriation has no merit.'" *Id.* at *33 (citation omitted). "To prove subjective misconduct, a prevailing defendant may either: (1) rely on direct evidence of plaintiff's knowledge; or (2) ask the Court to infer it 'from the speciousness of plaintiff's trade secret claim and its conduct during litigation.'" *Id.*

Continued pursuit of a time-barred trade secrets claim has been found to be both objectively specious and subjective misconduct. *See Knights Armament Co. v. Optical Sys. Tech., Inc.*, No. 6:07-CV-1323-ORL, 2012 WL 3932863, at *8 (M.D. Fla. Aug. 20, 2012) (approving a motion for attorney's fees based on a time barred claim because "[i]f a claim is clearly time-barred, then asserting the claim is frivolous and sanctionable. . . . This is true even if the claim might have been meritorious if timely asserted" (citations omitted). In *Alamar Biosciences, Inc. v. Difco Lab'ys,*

*Inc.*, No. CIV-S-941856 DFL PAN, 1996 WL 784495, at *1 (E.D. Cal. Feb. 27, 1996), the court applied the same two-part test and found that pursuit of a time-barred claim warranted an award of fees. The claimant there became aware of the potential misappropriation and neither brought suit nor investigated further. *Id.* Because "all the facts which made [the claimant's] action frivolous were known to [the claimant] at the time the complaint was filed," the Court awarded attorney's fees. *Id.* at *3; *see also Stilwell Dev. Inc. v. Chen*, No. CV86-4487-GHK, 1989 WL 418783, at *5 (C.D. Cal. Apr. 25, 1989) ("Th[e] knowing persistence in an invalid claim also demonstrates plaintiffs' subjective bad faith in causing the needless expenditure of money in defense of the trade secret claim.").

Here, Plaintiffs' litigation was both objectively specious and subjective misconduct. As to BBPOS's trade-secret claims, the Defend Trade Secrets Act claim and the Massachusetts Trade Secret Act (MTSA) claim were subject to summary judgment because they were obviously time barred. *See* ECF No. 228, p. 22. BBPOS's principal, Ben Lo, was advised that a publicly displayed product was "almost the same" as BBPOS's Chipper, yet BBPOS did nothing for years until it brought the time-barred claims. Even worse, BBPOS's MTSA claim was brought pursuant to a statute that was enacted after the alleged misappropriation and was not retroactive,[2] and Plaintiffs pointed out this inapplicability in their opposition to summary judgment. *See* ECF No. 202, p. 17.

---

[2] The relevant session law provides:

> Sections 42 to 42G, inclusive, of chapter 93 of the General Laws shall take effect on October 1, 2018, and shall not apply to misappropriation occurring prior to the effective date. With respect to a continuing misappropriation that began prior to the effective date, said sections 42 to 42G, inclusive, also do not apply to the continuing misappropriation that occurs after the effective date.

ECONOMIC DEVELOPMENT, 2018 Mass. Legis. Serv. Ch. 228 (H.B. 4732) (WEST) (emphasis added).

Thus, the MTSA count was objectively specious for multiple reasons. Plaintiffs' pursuit of these obviously time-barred claims is subjective misconduct. *See Stilwell*, 1989 WL 418783, at *5 ("Th[e] knowing persistence in an invalid claim also demonstrates plaintiffs' subjective bad faith in causing the needless expenditure of money in defense of the trade secret claim.").

Because BBPOS was aware long before filing suit that Ingenico "wanted to sell a competing audio-jack product made by Landi," yet failed to investigate, its Georgia Trade Secrets Act claim was similarly clearly time barred, and BBPOS's pursuit of that claim similarly represents bad faith for which an award of attorneys' fees is appropriate. *See* ECF No. 369, p. 17. Although this Court did not grant summary judgment on BBPOS's Georgia trade secret claim, its decision was based on the possible determination by a fact finder that the claim was not time barred. *See* ECF No. 228, p. 22. The Southern District of California awarded attorneys' fees in a trade secrets case when the plaintiff pursued claims that it had been warned likely were barred by the statute of limitations. *See Gabriel Techs. Corp. v. Qualcomm Inc.*, No. 08CV1992 AJB MDD, 2013 WL 410103, at *8 (S.D. Cal. Feb. 1, 2013), *aff'd*, 560 F. App'x 966 (Fed. Cir. 2014). As did the plaintiff there, BBPOS pursued its claim notwithstanding the statute of limitations defense that this Court had said would bar the claim except under a certain set of facts. *See Gabriel Techs. Corp. v. Qualcomm Inc.*, No. 08CV1992 AJB MDD, 2013 WL 410103 at *8 ("'Bad faith may be inferred where the specific shortcomings of the case are identified by opposing counsel, and the decision is made to go forward despite the inability to respond to the arguments raised.'" (citation omitted)). This Court should not abide an argument that the record was not yet developed, so BBPOS's pursuit of its time-barred claim was in a good faith, as BBPOS knew the facts. *See Alamar Biosciences, Inc.*, 1996 WL 784495, at *3 (rejecting an argument that an undeveloped

record precluded a finding of bad faith because "[w]hatever the state of [the claimant's] counsel's knowledge was, [the claimant] was aware of all the facts.").

BBPOS's pursuit of a clearly time-barred claim represents objective speciousness and subjective misconduct. *See id.* at *1. BBPOS not only failed to bring suit within the limitations period, but as this Court found in barring BBPOS's trade-secret claim based on laches, BBPOS took no steps whatsoever and continued to profit from sales of its products to Ingenico. In addition, evidence of BBPOS's subjective misconduct and objectively specious claims is shown in their failure, for the majority of this litigation, to specify the trade secrets they alleged were misappropriated. *See* ECF No. 294, p. 2-4. Specifically, BBPOS was asked in May 2020 to identify and describe the trade secrets at issue. ECF No. 294, p. 2-4. After more than a year, BBPOS disclosed the supposed trade secrets by means of an unverified interrogatory response that employed the oft-criticized tactic of "identifying" the trade secrets by means of a lengthy, unexplained list of dozens of Bates numbers. *See Masimo Corp. v. Apple Inc.*, No. SACV2048JVSJDEX, 2021 WL 925885, at *3 (C.D. Cal. Jan. 6, 2021) (A "laundry list of items . . . does not meaningfully define the trade secrets at issue."), quoting *Invisible Dot, Inc. v. DeDecker*, 2019 WL 1718621, at *5 (C.D. Cal. Feb. 6, 2019)). BBPOS finally specified what it said to be the four trade secrets at issue in the deposition of Mr. Lo on the eve of the close of fact discovery. ECF No. 294, p. 3. Only upon disclosing an expert witness did BBPOS identify a fifth purported trade secret, which was not even contained within the list of Bates stamped documents identified in the interrogatory response. ECF No. 294, p. 5. As in *Gabriel Technologies*, 2013 WL 410103, at *8, attorneys' fees may be appropriately awarded in part because the plaintiff failed to sufficiently articulate its trade secrets in discovery.

Even more fundamental, BBPOS's lone claim that went to trial was a Georgia Trade Secrets Act claim relating to conduct that occurred, if at all, in Massachusetts by a Massachusetts company. As this Court pointed out during post-trial hearing, any alleged misappropriation of trade secrets had nothing to do with Georgia. ECF No. 367, p. 17 (identifying that there is no connection to Georgia other than a Georgia company succeeding the alleged misappriator, ROAM).[3] The Georgia Trade Secrets Act has no application whatsoever to misappropriation occurring in Massachusetts. *See Glock v. Glock*, 247 F. Supp. 3d 1307, 1318 (N.D. Ga. 2017), *aff'd*, 714 F. App'x 987 (11th Cir. 2018) ("Georgia statutes have a presumption against extraterritorial application. Thus, absent a clear statement to the contrary, the Georgia courts refrain from applying statutes extraterritorially."). Although BBPOS's counsel suggested at the June 15 hearing that the GTSA requires only that the conduct "implicate[s] interstate commerce," that statement appears to have no support in the law. The phrase "interstate commerce" appears in neither the GTSA itself nor in any case citing the law, except when referring to other claims under federal statutes with such a requirement. Indeed, courts have contrasted the GTSA with the Defend Trade Secrets Act, the federal trade-secrets law that does impose an interstate commerce element. *See Peniel Sols., LLC v. Weems Design Studio, Inc.*, No. 1:17-CV-01799-RWS, 2018 WL 11343742, at *9 (N.D. Ga. Dec. 10, 2018) (describing the GTSA's elements and contrasting the "[t]he GTSA's federal counterpart demands the same showing with an additional requirement that the trade secret be" used in interstate commerce). Thus, the trade secrets claim actually tried was completely meritless, and the trade secrets claims disposed of at summary judgment were time

[3] During a similar discussion about the lack of evidence trying Ingenico Group, SA or Ingenico Corp. to the alleged wrongful conduct, the Court likewise pointed out that there was nothing in the record tying (at least) Ingenico Corp. to this case in any way. ECF No. 367, p. 14-17.

barred, based on a statute that had not been enacted at the time of the misappropriation, or both. Bringing these claims and continuing to pursue them supports findings of both objective speciousness and subjective misconduct.

AnywhereCommerce, although it had no trade secrets of its own, tried to enforce the BBPOS trade secrets by claiming it was injured by Defendants' alleged use of the BBPOS trade secrets. This new theory was unsupported by law and, because it is essentially a trade secret claim, justifies a fee award for the similar reasons as pertain to BBPOS. AnywhereCommerce asserted a claim for tortious interference, and it argued that the tortious interference was the misappropriation of trade secrets, specifically BBPOS's trade secrets. *See* ECF No. 228, p. 18 n.14. Of course, AnywhereCommerce lacked standing to assert the misappropriation of BBPOS trade secrets, and it could not identify no legal support for its theory that it should be permitted to point to misappropriation of another's trade secrets to support its tortious-interference theory. When this Court prompted AnywhereCommerce's counsel for any legal support whatsoever, counsel suggested that this Court should create the case law it sought. ECF No. 214, p. 214 ("Give me a case that somebody says this is more than a good theory." "Well, maybe Your Honor will say that."). AnywhereCommerce's claim, which is pursued through a trade-secret lens, was objectively specious insofar as it was entirely unsupported, and conducted in bad faith insofar as AnywhereCommerce pursued it despite knowing it was legally unsupported.

For the above reasons, this Court should award Defendants their attorneys' fees pursuant to 18 U.S.C. § 1836, § 10-1-764 of the Georgia Code, and Massachusetts General Laws chapter 93, § 42C, entering such award against both BBPOS and AnywhereCommerce.

**II. Defendants are entitled to attorneys' fees based on this Court's Inherent Authority.**

This Court also possesses inherent authority to award fees for bad faith, vexatious, wanton, or oppressive conduct. *See Johnson v. Cont'l Airlines Corp.*, No. CV 03-11992-PBS, 2008 WL 11510809, at *3 (D. Mass. Feb. 22, 2008) ("[A] district court has the inherent power to manage its own proceedings and to control the conduct of litigants who appear before it through the issuance of orders or the imposition of monetary sanctions for bad faith, vexatious, wanton, or oppressive behavior." (Citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-50 (1991))). "Vexatious conduct occurs where a party's actions are frivolous, unreasonable or without foundation." *Id.* (citing *Local 285 Service Employees Intern'tl v. Nontuck Resources Assoc., Inc.*, 64 F.3d 735, 737 (1st Cir. 1995)). A party need not possess bad intent if the party brings a "frivolous claim, meaning a claim that no reasonable person could suppose to have any merit." *Id.* (citing *Lee v. Clinton*, 209 F.3d 1025, 1026 (7th Cir. 2000)).

Although this Court conducted a bench trial in April and May, 2023 on a single count, this case has gone on for years because it included frivolous claims and other vexatious conduct that extended the litigation and increased the cost. AnywhereCommerce asserted four claims, all of which were based on factual assertions that were quickly proved false through discovery, but then continued using an entirely unsupported theory that Defendants' conduct vis-à-vis BBPOS's trade secrets created liability as to AnywhereCommerce. AnywhereCommerce's claims were either dismissed with prejudice or disposed of at summary judgment because the theories were wholly without merit. *See* ECF No. 228 (granting summary judgment on Count I, VII, and VIII as to AnywhereCommerce); ECF No. 370 (entering final judgment as to those counts and dismissing Count IX with prejudice).

AnywhereCommerce's bad faith and vexatious conduct is illustrated by its tortious interference claim. AnywhereCommerce asserted a tortious interference claim based on alleged interference with AnywhereCommerce's relationship with First Data. *See* ECF No. 67, p. 14. AnywhereCommerce alleged that Ingenico tortiously interfered with the former's opportunity to successfully win the bid for a particular Request for Proposal (RFP) from First Data. *See* ECF No. 67, p. 26-28. AnywhereCommerce obtained documents from First Data via third-party discovery, but those documents eviscerated any claim that AnywhereCommerce would have won the bid on the RFP with which it claims Ingenico interfered. ECF No. 204, p. 16; ECF No. 204-2, p. 2. Undeterred by the facts proving the opposite of their allegations, AnywhereCommerce recast its tortious interference claim into one for which it admitted it had no support in the law. *See* ECF No. 214, p. 93. AnywhereCommerce's vexatious conduct warrants an award of Defendants' attorneys' fees.

BBPOS similarly engaged in vexatious and bad faith conduct in the form of bringing and pursuing frivolous claims. As an initial matter, despite its awareness of Ingenico's product development, BBPOS continued cashing Ingenico's checks until it became more lucrative to assert claims. *See* ECF No. 369, p. 19-20 (finding that BBPOS unreasonably delayed in bringing its claims, which were therefore barred by laches). As described above, BBPOS asserted claims that were clearly time barred, despite having all the facts regarding its awareness of Ingenico's development of a mobile-payment device. BBPOS, moreover, brought and continued to pursue a claim based on a statute that did not exist at the time of the relevant conduct (and was not retroactive). *See supra* at n.2. BBPOS failed to sufficiently identify its trade secrets for nearly two years after Defendants first propounded discovery—through the end of fact discovery—until identifying the last of its trade secrets upon disclosing their expert in February 2022. *See* ECF

294, p. 2-6. BBPOS continued to pursue its breach-of-contract claim based on a measure of damages that this Court rejected as applied to Ingenico, *see* ECF No. 237 (seeking leave to file motion for summary judgment on contract claim seeking disgorgement); ECF No. 247 (Plaintiffs' opposition to motion for leave), only to abandon the claim anyway. ECF No. 328, p. 9 (voluntarily dismissing breach-of-contract claim).

Throughout and for the entirety of this case, Plaintiffs' litigation has been in bad faith and vexatious. The frivolous claims and conduct needlessly created and extended this litigation such that an award of fees is appropriate.

## **CONCLUSION**

For the foregoing reasons, Defendants request an award of attorneys' fees in the amount of $2,335,429.05 pursuant to Rule 54(d), 18 U.S.C. § 1836, § 10-1-764 of the Georgia Code, Massachusetts General Laws chapter 93, § 42C, and this Court's inherent authority. Pursuant to Rule 54(d)(2)(B)(iv), Defendants will provide, if the Court so orders, the terms of any agreement about fees as well as the invoices and any other required supporting documentation.

Respectfully submitted,
INGENICO INC., INGENICO CORP. AND INGENICO GROUP, SA,

By their attorneys,

/s/ *Jeffrey K. Techentin*

JOHN A. TARANTINO (BBO #492230)
PATRICIA K. ROCHA (BBO #542348)
NICOLE J. BENJAMIN (BBO #666959)
R. BART TOTTEN (BBO #631605)
JEFFREY K. TECHENTIN (*pro hac vice*)
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
Tel: (401) 274-7200
Fax: (401) 351-4607
jtarantino@apslaw.com
procha@apslaw.com
nbenjamin@apslaw.com
btotten@apslaw.com
jtechentin@apslaw.com

Dated: July 28, 2023

**CERTIFICATE OF SERVICE**

I hereby certify that on July 28, 2023, I caused to be served via electronic mail a true copy of the within document on the following counsel of record:

Jonathon D. Friedmann, Esq.
Robert P. Rudolph, Esq.
Rudolph Friedmann LLP
92 State Street
Boston, MA 02109
JFriedmann@rflawyers.com
RRudolph@rflawyers.com

Oliver D. Griffin, Esq.
Peter N. Kessler, Esq.
Melissa A. Bozeman, Esq.
Kutak Rock LLP
303 Peach Street, N.E., Suite 2750
Atlanta, GA 30308
Oliver.griffin@kutakrock.com
Peter.kessler@kutakrock.com
Melissa.bozeman@kutakrock.com

/s/ *Jeffrey K. Techentin*