## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **ANYWHERECOMMERCE, INC. and BBPOS LIMITED,**<br><br>    **Plaintiffs,**<br><br>                   **v.**<br><br>**INGENICO INC., INGENICO CORP., and INGENICO GROUP SA,**<br><br>    **Defendants.** | **Civil Docket No: 1:19-cv-11457-IT** |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND BILL OF COSTS

**TABLE OF CONTENTS**

Introduction.................................................................................................................. 1

ARGUMENT ............................................................................................................... 1

    I.    Ingenico is Not Entitled to Attorneys' Fees............................................ 1

        a.    Ingenico has not (and cannot) show that BBPOS's statute of
            limitations and laches analyses were "objectively specious." ................. 2

        b.    Ingenico Cannot Prove "Subjective Bad Faith.".................................... 8

        c.    This is Not an Extreme Case Where the Court Should Exercise
            Inherent Authority to Award Attorneys' Fees ....................................... 12

    II.    Ingenico is Not Entitled to the Costs it Seeks ...................................... 15

        a.    The Court Should Deny Costs ............................................................... 15

        b.    The Costs Sought by Ingenico are Not Reasonable............................... 17

    III.    Ingenico's Failure to Support its Request for Fees is Fatal to its Request .......... 19

CONCLUSION........................................................................................................... 21

## INTRODUCTION

To succeed on their motion for fees under trade secret law,[1] Ingenico Group SA, Ingenico Inc., and Ingenico Corp. (collectively, "Ingenico") must show that BBPOS's trade secret misappropriation claims were made and maintained in "bad faith."  To meet this standard, Ingenico is required to show (1) the objective speciousness of the claim, and (2) the subjective bad faith in bringing or maintaining the action for an improper purpose.  *Johnson Matthey Process Techs., Inc. v. G.W. Aru LLC*, 603 F. Supp. 3d 1374, 1379 (S.D. Ga. 2022).  Ingenico's request for the extreme relief of fees fails to establish either of these prongs—either factually or legally.  Similarly, this case is not one of the "egregious" circumstances where the Court should exercise inherent power to award attorneys' fees.  *Whitney Bros. Co. v. Sprafkin*, 60 F.3d 8, 12 (1st Cir. 1995).  Finally, the Court should find that there is no "prevailing party" here for purposes of an award of costs, and decline to award costs to any party.  Ingenico's motion should be denied.

## ARGUMENT

### I.    Ingenico is Not Entitled to Attorneys' Fees

To succeed on its motion for fees under the Georgia Trade Secrets Act, the Defend Trade Secrets Act, or the Massachusetts trade secret statute, Ingenico must show that the claim for misappropriation be "made in bad faith."  Ga. Code § 10-1-764; 18 U.S.C. § 1836(b)(3)(D); Mass. Gen. Laws ch. 93, § 42C.  Federal courts analyzing Georgia's fee provision have applied the two-

---

[1] Ingenico's submission consists of no breakdown of hours worked (or rates billed) on a particular claim or matter.  It simply presents one all-or-nothing amount of $2,335,429.05.  For purposes of this response, Plaintiffs will assume that Ingenico's position is that some unknown portion of that amount should be awarded under trade-secret law, and then some other unknown portion awarded under the Court's inherent power.

prong test from *Stilwell Dev., Inc. v. Chen*, No. CV86-4487-GHK, 1989 WL 418783, at *3 (C.D. Cal. Apr. 25, 1989).  To prevail, "the party seeking an award of attorney's fees must show both (1) the objective speciousness of [an] opposing party's claim, and (2) the subjective bad faith of the opposing party in bringing or maintaining the action for an improper purpose."  *Johnson Matthey*, 603 F. Supp. 3d at 1379.  Ingenico has not, and cannot, meet either of those requirements.

### a. Ingenico has not (and cannot) show that BBPOS's statute of limitations and laches analyses were "objectively specious."

Although Ingenico's Memorandum of Law in Support of its Motion for Attorneys' Fees focuses on various elements of BBPOS's trade-secret claim, the Court's July 14th Findings of Fact and Conclusions of Law (Doc. No. 369) decided BBPOS's claim only on statute of limitations and laches grounds ("The court starts (and ends) with Ingenico's defenses.") (Doc. No. 369 at 16).  As such, for Ingenico to prevail on its motion for attorneys' fees, it needs to show that BBPOS's positions ***on those two issues*** (statute of limitations and laches) were objectively specious (in other words, completely lacking any evidentiary or legal basis).  Ingenico's motion does not meet this standard.  Nor can it.

As an initial matter, having survived summary judgment, BBPOS's GTSA claim cannot be objectively specious.  (Doc 228).  *See, e.g.*, *Cardinal Health 414, Inc. v. Adams*, Case No. 3:07-00691, 2008 WL 4706364, at 14 n. 7 (M.D. Tenn Oct. 10, 2008) (denying defendant's motion for summary judgment because fact questions remained and stating "based on this finding, it is clear that Cardinal did not bring the TUTSA claim in bad faith"); *Hammerton, Inc. v. Heisterman*, No. 2:06-CV-806 TS, 2008 WL 4057010, at *8 (D. Utah Aug. 25, 2008) (denying motion for attorneys' fees, holding "[t]his claim was clearly not baseless, as demonstrated by the Court's finding triable issues of fact thereon at the summary judgment stage."); *Norwood Oper. Co. v. Beacon*

*Promotions, Inc.*, Civil No. 04-1390 (MJD/SRN), 2006 WL 3103154, at *3 (D. Minn. Oct. 31, 2006) (denying motion for fees, holding: "In addressing the trade secret claims on summary judgment, the Court did find genuine issues of material fact as to some elements of these claims. Accordingly, the Court finds that the trade secret claims were not objectively specious."); *Wixon Jewelers, Inc. v. Aurora Jewelry Designs*, No. C0-01-2149, 2002 WL 1327014, at *2 (Minn. App. June 18, 2002) ("Because the district court here denied respondents' motion for summary judgment on Wixon's claim of misappropriation of trade secrets, Wixon had no reason to believe that it would be subject to sanctions by continuing to assert its claim against Peterson."); *Russo v. Baxter Healthcare Corp.*, 51 F. Supp. 2d 70, 77 (D.R.I. 1999) (denying motion for attorney's fees because "[o]bjectively, [plaintiff] had a colorable claim [under RIUTSA], as evidenced both by Judge Pettine's refusal to grant summary judgment and by this [court's] belief that the case needed to go to trial."); *Vanwyk Textile Sys., B.V. v. Zimmer Math. Am., Inc.*, 994 F. Supp. 350, 387 (W.D.N.C. 1997) ("Even if it is assumed that Zimmer 'prevailed,' Zimmer does not establish bad faith or that the claim was specious. The claim survived summary judgment.").  Ingenico's Motion should therefore be denied.

Regardless, BBPOS's GTSA claim was never specious.  Throughout this dispute, BBPOS has based its GTSA statute of limitations analysis on the leading case interpreting OCGA § 10-1-766: *Porex Corp. v. Haldopoulos*, 644 S.E.2d 349 (Ga. App. 2007).  *Porex* holds that "mere suspicion of possible misappropriation does not amount to objectively reasonable notice sufficient to trigger the running of the statute."  Rather, the limitations period begins under the GTSA when "there is reason to suspect that a trade secret has been misappropriated, ***and*** a reasonable investigation would produce facts sufficient to confirm this suspicion (and justify bringing suit)." *Id.* at 353 (emphasis added).  While a plaintiff has a duty to investigate, "if certain facts necessary

3

to the claim are unavailable" (even to a reasonably diligent plaintiff), then the limitations period

is tolled "until those facts become available." *Id*. at 354.  As the *Porex* Court noted:

> We cannot apply statute of limitations law in a way that pressures litigants to file
> suits based merely on suspicions and fears. At least in the commercial setting at
> issue here, suspicion and fear are not sufficient predicates for launching a lawsuit,
> and to file an action with no other basis would offend norms articulated in rules like
> Federal Rule of Civil Procedure 11.

*Id*. at 353; *see also Massachusetts Eye and Ear Infirmary v. QLT Phototherapeutics*, 412 F3d 215,

239 (1st Cir. 2005) ("Suspicion and knowledge are poles apart on a continuum of understanding.

. ..") (citation and punctuation omitted).

The facts of *Porex* are illustrative.  There the trade-secret owner (Porex) had strong

suspicions of misappropriation after one of its key employees (Haldopoulos) left to start his own

plastics-manufacturing business (MicroPore).  In fact, in 2000 Porex sent two letters from its

outside counsel to counsel for Haldopoulos, noting in the second one:

> Based on Porex's considerable experience in the industry, it is inconceivable that,
> in a matter of months, Mr. Haldopoulos could have established a competing
> enterprise housed in the facility of a customer of Porex with projected revenues of
> $1M simply by using his general industry knowledge, examining some expired
> patents, gathering information from the public domain and obtaining specifications
> from customers.

*Porex*, 644 S.E.2d at 351.  Yet despite those suspicions, Porex did nothing, other than continue to

monitor MicroPore as it grew, over five years, into one of Porex's largest and most significant

competitors.  At that point, in 2005, Porex approached Haldopoulos about the possibility of

acquiring MicroPore; it was only then, when Porex employees were touring MicroPore's

manufacturing facilities as part of those negotiations/due diligence, that Porex learned that

MicroPore's non-public manufacturing process had used Porex's trade secrets (at which point

Porex ended the negotiations and filed its lawsuit).

Despite that five-year-plus delay from Porex's original suspicions, the Court of Appeals held that the trial court had erred in finding as a matter of law that reasonable diligence would have revealed information of an arguably colorable claim in 2000.  As the court noted: "Certainly nothing in the current record indicates that further investigation in 2000 would have revealed the information that Porex discovered on its tour of the MicroPore facility in August 2005."  *Id*. at 518.  In light of that, the Court determined that it would be inappropriate to grant judgment on statute of limitations grounds "where the record is silent as to what facts such an investigation would have shown."  *Id*. at 519.

Applying that precedent to the facts here (as enumerated by the Court in the July 14th Findings of Fact and Conclusions of Law), BBPOS was reasonable to conclude that the statute of limitations did not begin to run on its GTSA claim until at least when ROAM shipped an accused product in 2014 and BBPOS had the opportunity to confirm its suspicions.  (Doc. No. 369 at 10).  Although BBPOS may have had suspicions before then (as early as Q4 of 2012, and then running through Q1 and Q2 of 2013) (Doc. No. 369 at 10–11), as in *Porex,* nothing in the record indicates that further investigation in 2013 would have revealed information to confirm BBPOS's suspicions.  In fact, the evidence of record definitively shows that what was available to BBPOS in 2013 was ***not*** enough to confirm its suspicions.  The Court has already concluded that the prototype that was displayed at the Cartes trade show in Q4 of 2012 "would not reasonably [have] put BBPOS on notice that the new prototype potentially contained BBPOS's key designs."  (Doc. No. 369 at 17).  Similarly, raising concerns directly with ROAM was not sufficient: BBPOS did that in Q1 of 2013, only to have ROAM's CEO provide clear and unequivocal assurances that the new competing Landi product would not use BBPOS's key designs.  (Doc. No. 369 at 11).  And the Court has concluded that in light of those assurances, BBPOS had no further obligation to

5

investigate at that time. (Doc. No. 369 at 17). As in *Porex*, the record here is silent as to what facts an investigation in 2013 would have shown, given that, as the Court already has noted, "at this juncture, no product had yet been put on the market such that BBPOS would have discovered it." (Doc. No. 228 at 22.)

In fact, even Ingenico did not argue that the statute of limitations began to run in May 2013, and the significance of that date remains unclear to BBPOS. There was no new information available to BBPOS on that date and no accused products were commercially available. With no competing product available for it to review or assess, and with assurances from the ROAM CEO that any Landi product would not use BBPOS's key designs, it was not "objectively specious" for BBPOS to conclude that, under *Porex*, the statute of limitations on its GTSA claims did not begin to run until it could confirm its suspicions (at the earliest in 2014 when ROAM's commercial product was shipped). (See Doc. No. 369 at 12).

Similarly, it was not "objectively specious" for BBPOS to conclude that laches would not bar its statutory GTSA claim. Georgia law is clear that laches only applies to equitable claims, and the defense does not apply when a plaintiff is seeking to enforce a legal right. *See*, e.g., *Stuckey v. Storms*, 458 S.E.2d 344, 346 (Ga. 1995) ("The doctrine of laches is a purely equitable defense and is not applicable to a complaint for the enforcement of a legal right"). Here, just as BBPOS reasonably concluded, the Court correctly found that BBPOS's GTSA cause-of-action was a statutory claim (Doc. No. 369 at 18), and thus laches should not apply. The fact that OCGA § 10-1-763(a) provides that a GTSA plaintiff's damages can include ***both*** (1) the actual loss caused by the misappropriation; and (2) the unjust enrichment caused by the misappropriation (to the extent that it is not already taken into account in computing actual loss), and that BBPOS chose to rely on (2) rather than (1), does not transform BBPOS's statutory GTSA claim into an equitable claim

6

under Georgia law.  *See, e.g., City of Barnesville v. Stafford*, 161 Ga. 588 (1926) (declining to apply laches to "a statutory action for the recovery of land," holding the action made "no case for equitable interference," and that the complaint "fails to make a case for equitable relief."); *Jones v. Tri-State Elec. Co-op.*, 94 S.E.2d 497, 501 (Ga. 1956) (applying *Barnesville* to deny laches to a suit seeking an injunction permitted by statute); *Stuckey*, 458 S.E.2d at 346 (applying *Tri-State* to deny laches in an election dispute).  These principles of Georgia law are especially important where, as here, the Georgia legislature has explicitly provided for a five-year statute of limitations in OCGA § 10-1-766.  BBPOS reasonably concluded that Ingenico's application of laches to anything short of that five-year statute of limitations period would raise significant separation-of-powers concerns, as the Supreme Court has now twice noted in relation to other IP claims:

> Laches provides a shield against untimely claims, and statutes of limitations serve a similar function. When Congress enacts a statute of limitations, it speaks directly to the issue of timeliness and provides a rule for determining whether a claim is timely enough to permit relief. The enactment of a statute of limitations necessarily reflects a congressional decision that the timeliness of covered claims is better judged on the basis of a generally hard and fast rule rather than the sort of case-specific judicial determination that occurs when a laches defense is asserted. Therefore, applying laches within a limitations period specified by Congress would give judges a "legislation overriding" role that is beyond the Judiciary's power. . . . [C]ourts are not at liberty to jettison Congress' judgment on the timeliness of suit.

*SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 580 U.S. 328, (2017); *citing Petrella v. Metro–Goldwyn–Mayer, Inc.*, 572 U.S. 663, 675-77 (2014) (citations omitted). Yes, *SCA* and *Petrella* are a patent and copyright case (respectively), and not trade-secrets cases, as the Court noted.  (Doc. No. 369 at 18).  But that distinction makes no difference to the broader separation-of-powers point that the Supreme Court was making—namely, that where Congress (or, in this case, the Georgia General Assembly) enacts a statute of limitations, a court shouldn't override that legislation.

In fact, several courts across the country have held that trade secret misappropriation claims are legal in nature, meaning that a right to jury trial exists and, as relevant here, that laches does not apply as a matter of law. *See; e.g., Evans v. Gen. Motors Corp.*, 893 A.2d 371, 380–81 (2006) (finding claims for damages for actual loss and unjust enrichment under Connecticut UTSA legal because "all of the available evidence suggests that claims alleging the improper disclosure of a trade secret were recognized at common law and tried before juries in English courts when the Connecticut constitution was adopted in 1818," and because the plaintiff sought only monetary, not injunctive, relief); *MSC. Software Corp. v. Altair Eng'g, Inc.*, No. 07-12807, 2016 WL 1714873, at *2 (E.D. Mich. Jan. 7, 2016) (holding that a claim for misappropriation of trade secrets under the Michigan UTSA is a "tort action at law" and that the plaintiff is "entitled to a jury trial on all aspects of the claim, including damages under an unjust enrichment theory."); *Control Ctr. L.L.C. v. Lauer*, 2002 WL 31971561 (M.D.Fla.2002) (holding that the plaintiff had a Seventh Amendment right to trial by jury on his damages claim under the Florida Uniform Trade Secrets Act). While there is no case law from Georgia, the Eleventh Circuit, or the First Circuit that has addressed this issue, in light of this other authority, it was not "objectively specious" for BBPOS to conclude that laches did not apply here.

### b. Ingenico Cannot Prove "Subjective Bad Faith."

Independent from its failure to establish the first prong necessary to claim fees, Ingenico also has failed to prove the second prong—BBPOS's supposed subjective bad faith in bringing and maintaining its trade secret claim. *Johnson Matthey*, 603 F. Supp. at 1379. "Subjective misconduct exists if 'a plaintiff knows or is reckless in not knowing that its claim for trade secret misappropriation has no merit." *Id.* at 1382. Subjective bad faith can be inferred from evidence that a party intended to cause unnecessary delay, filed the action to harass the opposing party, or

8

harbored an improper motive. *Id.* at 1379.  To prove subjective bad faith, a prevailing party may either: (1) rely on direct evidence of plaintiff's knowledge; or (2) ask the Court to infer it from the speciousness of plaintiff's trade secret claim and its conduct during litigation. *Id.*  Here, there is no evidence that BBPOS somehow filed this action merely to "harass" Ingenico, or somehow harbored an "improper motive."  Nor is there any evidence that BBPOS "knew" that the Court would ultimately rule against it on statute of limitation or laches grounds—in fact, Lo testified at trial that he was not aware of the first accused product coming to market until November 2014. (Doc. No 351 at 128).

The case Ingenico relies on, *Gabriel Techs. Corp. v. Qualcomm Inc*., is inapposite.  No. 08CV1992 AJB MDD, 2013 WL 410103, at *8 (S.D. Cal. Feb. 1, 2013), aff'd, 560 F. App'x 966 (Fed. Cir. 2014).  That case awarded fees against a plaintiff who continued to pursue time-barred claims after "significant warning" from the court that its claims were likely time-barred. *Id.*  Here there was no such warning from the Court: in fact, the Court ruled in BBPOS's favor on its GTSA claim at summary judgment. (Doc. No. 228 at 22–23).  In addition, and before awarding fees, the court in *Gabriel* also noted that the plaintiff had been warned of other shortcomings in their trade secret claims, including an "inability to sufficiently articulate" them. *Id.*  Nothing close to that is present here.

Although the Defend Trade Secrets Act and Massachusetts Trade Secret Act claims were subject to shorter statute of limitations and dismissed at summary judgment, they were not objectively specious or brought in bad faith.  Ingenico did not apportion its $2.3M+ fee request by claim, and it is clear that the bulk of the time it spent defending against one trade secret claim would have been performed as long as one claimed survived.  That alone is sufficient to deny the motion (*See* Section III, below).  In any event, multiple of the accused products were launched

9

within three years of the filing of this action, and Ingenico's misuse of the trade secrets was (and

is) continuing.   At least one Massachusetts case has rejected the argument that continuing

misappropriation could not be asserted as multiple claims for misappropriation occurring prior to

October 1, 2018.   *Acacia Commc'ns, Inc. v. ViaSat, Inc.*, No. 1784CV02386BLS1, 2018 WL

6184637, at *2 (Mass. Super. Oct. 16, 2018).   The *Acacia* court wrote:

> the Court has considered, and rejects, Acacia's argument that its alleged continuing
> misappropriation of ViaSat's trade secrets, including its actual or threatened
> disclosure to OIF's membership, constitutes a single, indivisible "claim" that cannot
> be asserted in multiple forums. Most of the trade secret cases cited by Acacia in
> support of this proposition turn on language contained in the Uniform Trade Secrets
> Act ("UTSA"). *See, e.g., Cadence Design Systems, Inc. v. Avant! Corp.*, 29 Cal.4th
> 215, 222 (2002) ("The most critical section of UTSA for purposes of this case is
> section 3426.6, which provides: 'An action for misappropriation must be brought
> within three years after the misappropriation is discovered or by the exercise of
> reasonable diligence should have been discovered. *For the purposes of this section,
> a continuing misappropriation constitutes a single claim.*' ") (emphasis in original).
> The UTSA only became effective in Massachusetts on October 1, 2018, and its
> terms explicitly "do not apply" to any alleged misappropriation "occurring prior to
> the effective date." St. 2018, c. 228, § 70.

*Id*.   While BBPOS pled its claim as a statutory claim, this inartful pleading was not prejudicial

because it did not impact the elements of BBPOS's trade secret claim under Massachusetts law.

BBPOS further pointed to evidence that it was not fully aware of its injury until it began

experiencing sharp sales declines in 2016 and that Ingenico fraudulently concealed its

misappropriation.  (*See* Doc 202 at 17–18).

These arguments apply with equal force to the Defend Trade Secrets Act Claim, and

certainly with respect to the accused products launched within the three-year window, including

the RP150, RP170, and RP457c, which may have utilized additional or new combinations of

BBPOS trade secrets.   There is federal authority for the proposition that the DTSA permits a

continuing misappropriation theory, as stated in *Adams Arms, LLC v. Unified Weapon Sys., Inc.*,

No. 8:16-CV-1503-T-33AEP, 2016 WL 5391394, at *6 (M.D. Fla. Sept. 27, 2016).   The court in

10

that case wrote: "Section 2(e) specifies that DTSA applies to 'any misappropriation...for which any act occurs' after the effective date . . . At the least, this language suggests that when an 'act' occurs after the effective date, a partial recovery is available on a misappropriation claim." Other Courts have pointed to that language of *Adams Arms* in denying requests from attorneys' fees in trade secret misappropriation cases. *Farmers Edge Inc. v. Farmobile, LLC*, No. 8:16CV191, 2018 WL 3747833, at *7 (D. Neb. Aug. 7, 2018) (fact that DTSA claim was time barred did not equate to objective speciousness and that both prongs of "bad faith" test were failed). "[T]here is some legal and factual support for the proposition that the continuing violation theory may apply to a DTSA claim." *Id*.

Moreover, like in *Farmer's Edge*, there is no evidence (or even argument) that the purpose of BBPOS's trade secret claim was to give it an improper competitive edge or thwart competition—a possible basis for a finding of subjective bad faith. *Id*. at *8. Nor has Ingenico shown that BBPOS "actually knew or was reckless in not knowing that its claim for trade secret misappropriation had no merit." *Id*. at *9. The fact that the Court did not agree with BBPOS is a far-cry from the objectively specious and bad faith standard. *Id*. ("Although [plaintiff] was not ultimately successful, that fact alone does not establish that it acted in bad faith or engaged in misconduct in bringing and maintaining its claim. Notably, [defendant] was equally aggressive in connection with counterclaims against [plaintiff].").

Finally, Ingenico asks the Court to award its attorneys' fees under trade secret law for AnywhereCommerce's claims despite AnywhereCommerce not asserting a trade secret claim. Ingenico does not cite any law in support of its theory. Other courts have declined to consider requests for attorneys' fees involving intellectual property where there are not specific fee-shifting provisions. *See CytoDyn of New Mexico, Inc. v. Amerimmune Pharms., Inc.*, 160 Cal. App. 4th

11

288, 300, 72 Cal. Rptr. 3d 600, 610 (2008) ("because [plaintiff's] complaint cannot be read to allege a cause of action for misappropriation of trade secrets, we are compelled to conclude the trial court erred in awarding attorney fees . . .").

### c. This is Not an Extreme Case Where the Court Should Exercise Inherent Authority to Award Attorneys' Fees

Finally, Ingenico tries to backstop its request for fees under trade-secret law (even for non-trade-secret claims) with an appeal to the Court's inherent authority. This too must fail. "District courts are well-advised to use their inherent power cautiously and to grant attorneys' fees sparingly under that power." *RTR Techs., Inc. v. Helming*, 707 F.3d 84, 94 (1st Cir. 2013) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); *Estate of Hevia v. Figuero–Marrero*, 602 F.3d 34, 46 (1st Cir.2010)). In *RTR*, the First Circuit recognized that even when a party has put forth a "credible argument" for fees, the district court has broad discretion to deny that request. *Id*. The district court in the RTR case had this to say about the plaintiffs' claims:

> Defendants' motion for fees and non-statutory costs in the amount of $249,505.82 (Dkt. No. 46) presents a much more difficult question. The court expressed its opinion of this litigation in (for this court) **unusually blunt terms** in its September 19, 2011 memorandum allowing Defendants' Motion for Summary Judgment. (See Dkt. No. 43.) In the conclusion of the memorandum the court observed that **"[i]t is surprising that Plaintiffs had the temerity to bring this lawsuit**." (Id. at 59.) Later in the same paragraph, the court described Plaintiffs' allegations as "**close to ludicrous**." (Id.) It remains this court's opinion that **the decision to bring this lawsuit, given the prohibitory statute of limitations and the absence of substantive merits, was profoundly ill-advised**. More ominously, the conduct revealed through this litigation appears to express a determination on the part of Plaintiffs to avoid substantial taxes legitimately owed.

*RTR Techs., Inc. v. Helming*, No. 09-CV-30189-MAP, 2012 WL 601913, at *1 (D. Mass. Feb. 22, 2012), aff'd, 707 F.3d 84 (1st Cir. 2013) (emphasis supplied). Yet, even in those circumstances, the court declined to award fees, noting that its "ruling is anchored upon the American judicial

system's strong disinclination, outside the most outrageous circumstances, to shift fees from one party to another, except where an explicit fee-shifting statute applies." *Id.* at *2.

This case falls well-short of the conduct in *RTR*. As to AnywhereCommerce's claim for tortious interference: while the Court's summary judgment order noted that there was some evidence to the argument that there was interference with the contract with First Data, it held the evidence was not sufficient to permit a jury to find that AnywhereCommerce "had a relationship with First Data that was reasonably likely to develop." (Doc. No. 228 at 19). Evidence falling short at summary judgment is not grounds for finding a vexatious claim or bad faith. *See SASCO v. Rosendin Elec., Inc.*, 207 Cal. App. 4th 837, 847, 143 Cal. Rptr. 3d 828, 835 (2012), as modified on denial of reh'g (Aug. 7, 2012) (the "absence of evidence alone, even after discovery, does not support a finding of subjective bad faith"). Neither is a good-faith extension of existing law, even if a theory is novel, as may have been the case of AnywhereCommerce's unjust enrichment claim. *See Davis v. Aetna Cas. & Sur. Co.*, 696 F. Supp. 634, 636 (N.D. Ga. 1988) (recognizing the right to raise novel theories provided that it is not done for an improper purpose). And finally, its claim for deceptive trade practices fell with its other claims. (*See* Doc. No. 228 at 21).

Ingenico's statement that "AnywhereCommerce obtained documents from First Data via third-party discovery, but those documents eviscerated any claim that AnywhereCommerce would have won the bid on the RFP with which it claims Ingenico interfered" is unfounded. In its summary judgment briefing, AnywhereCommerce pointed out that it had a long history being invited to bid on requests for proposals issued by First Data and was awarded projects, expanding the scope of its preferred mPOS hardware supplier arrangement with the company, and that evidence of a November 2014 meeting between ROAM and First Data showed evidence of interference sufficient to create a jury issue. (Doc. No. 202 at 6–7). While the Court disagreed,

13

AnywhereCommerce's decision to litigate the claim to summary judgment was certainly not vexatious.  Moreover, at no time did the Court suggest that AnywhereCommerce (or BBPOS) was continuing to litigate a claim vexatiously or in bad faith.

The First Circuit has stated that "when a district court exercises its inherent power to award attorneys' fees, it must describe the losing parties' bad faith conduct with 'sufficient specificity' and accompany this description with a 'detailed explanation of reasons justifying the award.' " *Universal Truck & Equip. Co. v. Southworth-Milton, Inc.*, 765 F.3d 103, 111 (1st Cir. 2014). *Whitney Bros. Co. v. Sprafkin*, 60 F.3d 8, 12 (1st Cir. 1995) is instructive.  In that case, the First Circuit reviewed an award of attorneys' fees made under the district court's inherent powers where the district court had made five findings in support of bad faith conduct, including that the party resisting the award could not support their legal or factual assertions, gave testimony that was not credible, and relied on evidence through the case that would not be admissible, among other things. *Id*. Despite the district court's finding that the "record overwhelmingly indicate[d]" that the plaintiff never should have had to bring the action, the First Circuit reversed the award of fees, cautioning that "a court's inherent power to shift attorneys' fees should be used **sparingly and reserved for egregious circumstances**."  *Id*. at 13 (emphasis supplied) (further noting that the case involved a complex set of facts and events that occurred both in and out of court). None of the claims or defenses put forth by Plaintiffs in this case were vexatious, and this is certainly not an "egregious" case that warrants deviating from the American rule.

14

## II.    Ingenico is Not Entitled to the Costs it Seeks

Ingenico seeks $60,701.43 in costs comprised of deposition costs ($30,254.52), court transcript costs ($9,491.50), printing and copying ($4,669,60), and witness fees ($16,285.81). The Court should exercise its broad discretion to deny costs entirely.

### a.  The Court Should Deny Costs

The Court has "broad discretion" to award or deny costs in a case that yielded mixed results. *Conway v. Licata*, 146 F. Supp. 3d 355, 356 (D. Mass. 2015). This Court has held that "the assessment of costs hinges on two factors: 1) the definition of 'prevailing party' and 2) the discretion afforded courts with respect to the amount of costs to be awarded." *Sheehy v. Town of Plymouth*, No. CIV. A. 95-12425-RBC, 2001 WL 92386, at *2 (D. Mass. Jan. 18, 2001). First, Ingenico does not clearly fall within the definition of a "prevailing party" under this rule. Where a defendant is successful in defending against a plaintiff's claims but enjoys a less favorable outcome on any counterclaims seeking affirmative relief, *Sheehy* recognized two views: 1) to award costs to defendant because but-for the lawsuit, the counterclaims would not have been brought, or 2) to view neither party as prevailing and have each side bear its own costs. *Id*. at *4.

While Ingenico prevailed as to BBPOS's trade secret claims, BBPOS was the prevailing party at summary judgment as to Ingenico's claims for breach of contract and breach of duty of good faith and fair dealing, for which Ingenico sought about $60 million. The Court also dismissed Ingenico's claim for indemnification with respect to the IOEngine matter—another multi-million-dollar claim. Thereafter, BBPOS was the prevailing party as to three of the four indemnification claims that proceeded to trial, as Ingenico prevailed only on the MobilePay matter. (Doc. No. 369 at 27). It failed as to the REM Holdings 3/Comerica, REM Holdings 3, and Blackbird matters, for which it sought additional hundreds of thousands of dollars. (*Id*.). The first option under *Sheehy*

15

is not applicable here, where Ingenico was already pursuing indemnification claims against BBPOS, even though suit had not yet been brought.

Two of Ingenico's failed counterclaims illustrate the scope of Ingenico's loss in this case, and the time and resources expended in defeating these vexatious claims.  First, its Count VIII of its Second Amended Counterclaims (Doc. No. 78) for patent infringement was truly vexatious.  Ingenico lacked standing to assert the claims, as they were indisputably owned and controlled by 4361423 Canada, Inc.  Although the Court denied Plaintiffs' motion to dismiss (Doc. No. 137), Ingenico knew all along that it would be unable to develop facts necessary to support this claim, leading to a voluntary dismissal of the claim in March 2022 (Doc. No. 178).  Second, Ingenico's pursuit of an alleged breach of contract utilizing an unjust enrichment theory of recovery was also baseless, and required Plaintiffs to expend considerable resources in defending against this claim through summary judgment.  As the Court noted in its March 29, 2023 Order, this theory was not recognized in the First Circuit.  (Doc. No. 228 at 36).  And, even if it were, it was inapplicable here because the alleged breach concerned a duty to refrain from dealing with third parties, and thus the "lost opportunity" theory did not apply.  *See Gemini Invs. Inc. v. AmeriPark, Inc.*, 643 F.3d 43 (1st Cir. 2011).  When all claims are considered together, the final scorecard is much closer than Ingenico suggests.  Thus, neither party should be determined to be "prevailing" here.

*Sheehy* further recognized that "perhaps of greater significance" than the definition of prevailing party is the discretion afforded the district court.  *Sheehy* 2001 WL 92386 at *4. "In complex litigation where multiple claims and counterclaims are presented, the simplicity of the judgment winner standard may produce harsh results for a 'losing' party." *Id.* at *5.  This Court has instructed that denial of costs is appropriate when it would be inequitable to award them.  *Id.* Common examples of inequity include incurring unreasonable or unnecessary expenses or

16

engaging in misconduct. *Id*. One such instance of misconduct involved Ingenico forcing delays in discovery by withholding documents under claims of GDPR protections, which this Court overruled following Plaintiffs' motion to compel. (Doc. No. 118). Ingenico's misconduct makes it unworthy of an award of costs. The Court should exercise its considerable discretion and decline them.

### b. The Costs Sought by Ingenico are Not Reasonable

The Court should exercise its broad discretion to deny Ingenico's motion for costs in its entirety. Independently, the specific costs sought by Ingenico also are unreasonable.

First, Ingenico's claimed $30,254.52 in deposition costs are not taxable. "For a deposition transcript to be taxed, it must be used at trial, entered into evidence, or there must be 'special circumstances' that justify taxing it." *Inline Plastics Corp. v. Lacerta Grp., Inc.*, No. CV 4:18-11631-TSH, 2023 WL 1822899, at *1 (D. Mass. Feb. 8, 2023). But in this case, all witnesses were presented live—no deposition transcripts were read, and no videos were played—and no transcripts were entered into evidence. In *Brigham & Women's Hosp., Inc. v. Perrigo Co.*, which Ingenico cites, the Court specially declined to award costs for transcripts and videographer fees for depositions that were not used at trial. 395 F. Supp. 3d 168, 172–73 (D. Mass. 2019). Ingenico's brief does not even claim that it used any of the deposition transcripts at trial. Similarly, Ingenico does not point to any deposition transcripts that were used at summary judgment. Even if it did, for the reasons discussed above, Ingenico was not the "prevailing party" at summary judgment and thus there are no "special circumstances" present here.

If the Court awards some costs of depositions, it should only award costs associated with "the actual transcript cost and, if applicable, the reporter attendance fee. Costs associated with the rough transcript, archiving, or shipping and handling are not recoverable. Nor may defendants

17

recover the costs of videotaping depositions." *Id.* at 172 n. 1.  Thus, for any deposition where costs are awarded, the Court should not include exhibit fees, video pages, or other unclear costs such as "MLV connect", "AgileLaw", or "GoGreenScripts Lit Package."

Second, the Court should reduce the court transcript costs sought by Ingenico by $8,254.50 for the daily trial transcripts.  Daily trial transcripts are not taxable "as a matter of course."  *SiOnyx, LLC v. Hamamatsu Photonics K.K.*, 540 F. Supp. 3d 85, 90 (D. Mass. 2021).  In *SiOnyx*, this Court declined to award daily trial transcript costs where the party claimed they were necessary "because of 'the complexity of the technology at issue, the fact that witness testimony spanned multiple days, the translation of witness testimony from Japanese to English, and the number of issues in the case'" but failed to explain with any specificity "special circumstances" that would permit an award of these costs.  *Id*.  The same is true here.  Ingenico cites only the complex nature of the proceedings, but there are no "special circumstances" that would permit taxing costs for daily transcripts.[2]  Thus, any costs awarded for court transcripts should be reduced at least by $8,254.50.

Third, the Court should decline to award $4,669.60 in printing costs because there is no breakdown of which exhibits or number of printed pages were actually introduced at trial.  This Court's Procedures for Filing the Bill of Costs instructs that "Photocopying costs are taxable only to the extent that the copies were used as exhibits, were furnished to the Court or opposing counsel, or were otherwise necessary for maintenance of the action."[3]  Likewise, this Court in *SiOnyx* awarded printing costs for exhibits based on the number of pages that were actually introduced at trial.  *Id*. at 91.  Here, Ingenico seeks reimbursement for printing two complete sets of its own

---

[2] An additional basis to deny the cost of daily transcripts exists because Ingenico did not request such costs to be taxable before trial. *SiOnyx*, 540 F. Supp. 3d at 90, n. 1.

[3] https://www.mad.uscourts.gov/resources/pdf/taxation.pdf

exhibits and one complete set of BBPOS's exhibits, but most of those were not used at trial. Ingenico has provided no means to determine how many pages of printed exhibits were actually introduced or used at trial. This lack of detail should result in these costs being denied.

Fourth and finally, Ingenico seeks $16,285.81 in witness fees, including $7,723.30 for Dr. Vanderhart, who attended 10 days of trial, and $6,836.91 for Dr. Shamos, who attended 8 days of trial. "A witness's compensation is not limited solely to days the witness testifies, 'but may also be awarded for each day the witness *necessarily* attends trial [and] time spent during delays and temporary adjournments.'" *Guzman v. Boeing Co.*, No. CV 13-12615-JGD, 2019 WL 468195, at *3 (D. Mass. Feb. 6, 2019) (emphasis in original). It was not necessary for Dr. Vanderhart, whose testimony lasted about 90 minutes over two days, to attend every day of trial. Similarly, there was no reason for Dr. Shamos to attend eight trial days. Both experts could have easily gotten up to speed by reading the daily transcripts that Ingenico received. In *Guzman*, witness fees were appropriate for four days of subsistence fees for a witness who testified over a two-day period. To be in-line with *Guzman*, Dr. Vanderhart's attendance and subsistence fee should be reduced by 60% for a total fee of $3,700, and Dr. Shamos' attendance and subsistence fee should be reduced by 50% to a total fee of $4,984.

## III.    Ingenico's Failure to Support its Request for Fees is Fatal to its Request

Even if Ingenico were permitted to recover any attorneys' fees or costs, the Court must decline (or greatly reduce) any award here because Ingenico has not provided *any* details surrounding the work that was performed, which claim the work related to, the reasonableness of the work performed, who performed the work, or the rates that were charged. As the party seeking fees, Ingenico "bears the burden of providing sufficiently detailed documentation from which the Court may determine the reasonableness of the fees requested." *RFF Fam. P'ship, LP v. Link*

*Dev., LLC*, No. CIV.A. 14-10065-NMG, 2015 WL 1472253, at *4 (D. Mass. Mar. 31, 2015), *aff'd sub nom. RFF Fam. P'ship, LP v. Ross*, 814 F.3d 520 (1st Cir. 2016).  Although that case involved a request for fees under a separate statute, the GTSA (and all of Ingenico's theories of recovery) contains a similar requirement that the fees awarded be reasonable.  *See* Ga. Code § 10-1-764 ("If a claim of misappropriation is made in bad faith . . . the court may award reasonable attorneys' fees to the prevailing party.).  Ingenico has presented no analysis of the reasonableness of its $2,335,429.05 fee request.  Worse, it has not provided any of the details necessary for the Court to conduct the analysis.  In *RFF*, this Court stated that "poor quality of supporting documentation" for the attorneys' fees sought warranted a significant reduction in the amount sought.  *Id*.  Here, the supporting documentation regarding fees submitted by Ingenico is not merely "poor"—it is nonexistent.

Federal Appellate Courts considering requests for "reasonable" attorneys' fees have stated that an award can only be made for time *reasonably* expended.  *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982).  "Thus the fee application must also contain sufficiently detailed information about the hours logged and the work done." *Id*.  After-the-fact estimates are insufficient, and a fee application "must maintain contemporaneous, complete and standardized time records which accurately reflect the work done by each attorney." *Id*.  The Ninth Circuit Court of Appeals reversed awards of attorneys' fees in trade secret cases where the district court did not make an explanation of the award, which must include specific findings about the rates and hours that it has determined to be reasonable.  *Rent Info. Tech., Inc. v. Home Depot U.S.A.*, Inc., 268 F. App'x 555, 560 (9th Cir. 2008); *see also Frank Music Corp. v. Metro–Goldwyn–Mayer Inc.*, 886 F.2d 1545, 1557 (9th Cir.1989) ("the district court should make specific

20

findings of the rate and hours it has determined to be reasonable.").  This lack of detail is fatal to Ingenico's request for fees under any theory.  The motion should be denied.

## CONCLUSION

For the above reasons, Plaintiffs respectfully request that the Court deny Ingenico's motion for attorneys' fees in full, and further request that the Court decline to award costs to any party.


Dated: August 11, 2023.                                Respectfully submitted:

                                                              */s/ Oliver D. Griffin*
                                                       By:  Melissa A. Bozeman (Pro Hac Vice)
                                                              Pennsylvania Bar No. 201116
                                                              Oliver D. Griffin (Pro Hac Vice)
                                                              Pennsylvania Bar No. (80126)
                                                              Peter N. Kessler (Pro Hac Vice)
                                                              Pennsylvania Bar No. 209033
                                                              KUTAK ROCK LLP
                                                              Two Logan Square
                                                              100 N. 18th Street, Suite 1920
                                                              Philadelphia, PA  19103-4104
                                                              (215) 299-4384 (Telephone)
                                                              (215) 981-0719 (Facsimile)
                                                              Melissa.bozeman@kutakrock.com
                                                              Oliver.griffin@kutakrock.com
                                                              Peter.kessler@kutakrock.com

                                                                 and

                                                              Leland P. Abide (Pro Hac Vice)
                                                              MN Bar No. 039269
                                                              KUTAK ROCK LLP
                                                              60 South Sixth Street, Suite 3400
                                                              Minneapolis, MN 55402-4018
                                                              Telephone: (612) 334-5000
                                                              Facsimile: (612) 334-5050
                                                              leland.abide@kutakrock.com

                                                                 and

21

Jonathon D. Friedmann, Esq. (BBO # 180130)
Robert P. Rudolph, Esq. (BBO # 684583)
RUDOLPH FRIEDMANN LLP
92 State Street
Boston, MA 02109
Tel.: (617) 723-7700
Fax: (617) 227-0313
JFriedmann@rflawyers.com
RRudolph@rflawyers.com

and

Ricardo G. Cedillo
DAVIS, CEDILLO & MENDOZA, INC.
755 E. Mulberry Ave., Ste 500
San Antonio, Texas 78212
Tel: (210) 822-6666
Fax: (210) 822-1151
rcedillo@lawdcm.com

*Attorneys for Plaintiffs/Counterclaim-Defendants*

## CERTIFICATE OF SERVICE

I, Melissa A. Bozeman, do hereby certify that on August 11, 2023, I served a true and correct copy of the foregoing on all parties via the Court's CM/ECF Electronic Filing System.

*/s/ Melissa A. Bozeman*
Melissa A. Bozeman

22