**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

---

**ANYWHERECOMMERCE, INC.**
**and BBPOS LIMITED,**
                                    **Plaintiffs,**


          **v.**


**INGENICO INC., INGENICO CORP.**
**and INGENICO GROUP, SA,**
                                    **Defendants.**

---

**CIVIL ACTION NO.**
**1:19-cv-11457-IT**


**Leave to file granted on August 21, 2023**


**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF**
**THEIR MOTION FOR ATTORNEYS' FEES AND PETITION FOR COSTS**

## <u>TABLE OF CONTENTS</u>

ARGUMENT .................................................................................................................... 1

   I.      DEFENDANTS ARE ENTITLED TO REASONABLE ATTORNEYS' FEES. ........... 1

      A.   Plaintiffs' Pursuit Of Their Claims Was Objectively Specious. ................................. 1

      B.   Plaintiffs Pursuit Of Their Claims Involved Subjective Misconduct. ......................... 3

      C.   This Court's Inherent Power Justifies Awarding Defendants their Fees...................... 4

   II.    Defendants are a prevailing party and are entitled to costs as specified in their request. 6

   III.   The Fees Are Reasonable, And Defendants Will Provide Detailed Invoices And Time
       Sheets If Required By The Court. ................................................................................... 9

CONCLUSION ............................................................................................................. 10

# TABLE OF AUTHORITIES

## Cases

*Alamar Biosciences, Inc. v. Difco Lab'ys, Inc.*, No. CIV-S-941856 DFL PAN, 1996 WL 784495 (E.D. Cal. Feb. 27, 1996) ................................................................................................ 2, 3

*Asphalt Supply & Serv., Inc. v. United States*, 75 Fed. Cl. 598 (2007) ......................................... 7

*Brigham & Women's Hosp., Inc. v. Perrigo Co.*, 395 F. Supp. 3d 168 (D. Mass. 2019) .............. 7

*Fid. Int'l Currency Advisor A. Fund, LLC v. United States*, No. 05-40151-FDS, 2010 U.S. LEXIS 134467 (D. Mass. Dec. 20 2010) ................................................................................ 8

*Gabriel Techs. Corp. v. Qualcomm Inc.*, No. 08CV1992 AJB MDD, 2013 WL 410103 (S.D. Cal. Feb. 1, 2013) ........................................................................................................................... 3

*Guzman v. Boeing Co.*, No. CV 13-12615-JGD, 2019 WL 468195 (D. Mass. Feb. 6, 2019) ........ 9

*Prouty v. Thippanna*, 552 F. Supp. 3d 45 (D. Mass 2021) ............................................................ 8

*RTR Techs., Inc. v. Helming*, No. 09-CV-30189-MAP, 2012 WL 601913 (D. Mass. Feb. 22, 2012) ......................................................................................................................................... 4, 5

*Sheehy v. Town of Plymouth*, No. CIV. A. 95-12425-RBC, 2001 WL 92386 (D. Mass. Jan. 18, 2001) ......................................................................................................................................... 6, 7

*Slane v. Mariah Boats, Inc.*, 164 F.3d 1065 (7th Cir. 1999) ......................................................... 6

*Stilwell Dev. Inc. v. Chen*, No. CV86-4487-GHK, 1989 WL 418783 (C.D. Cal. Apr. 25, 1989) .. 2

4882-1642-6104, v. 6

Defendants Ingenico Inc., Ingenico Corp., and Ingenico Group, SA, ("Defendants" or Ingenico") submit this reply memorandum in support of their Motion for Attorneys' Fees.

Plaintiffs' opposition ignores and distorts this case's history and outcome. Plaintiffs' opposition consists of an attempt to relitigate the merits of the case—for example, by urging that their interpretation of the statute of limitations, and not the Court's, is controlling—and to recast the result of the litigation as having no prevailing party for purposes of awarding costs. Notwithstanding those counterfactual arguments, Defendants prevailed and are entitled to their costs, and because Plaintiffs' pursuit of this action was objectively specious and with subjective bad faith, Defendants are entitled to reasonable attorneys' fees.

## ARGUMENT

### I.     DEFENDANTS ARE ENTITLED TO REASONABLE ATTORNEYS' FEES.

#### A.     Plaintiffs' Pursuit Of Their Claims Was Objectively Specious.

Plaintiffs assert that merely surviving summary judgment is sufficient to demonstrate that BBPOS's time-barred trade-secret claims were not objectively specious. First, this ignores the obviously time-barred claims brought pursuant to Defend Trade Secrets Act (DTSA) and Massachusetts Trade Secrets Act (MTSA), which have shorter statutes of limitations, and which were disposed of at summary judgment. It also ignores the fact that there could be no conceivable right to recovery under the MTSA because it was not in effect at the time of the alleged misappropriation and is expressly not retroactive. Plaintiffs' opposition does not contest the objective speciousness of those claims. Similarly, the opposition ignores that the Georgia Trade Secrets Act (GTSA) has no extraterritorial application and cannot apply to conduct occurring in Massachusetts. *See* ECF No. 367, p. 17 (pointing out that the connection to Georgia is not the misappropriation but the succession by a Georgia company); *see also* ECF No. 374, p.

7.  Finally, a claim that proceeds to trial may nevertheless be objectively specious.  *See Stilwell*

*Dev. Inc. v. Chen*, No. CV86-4487-GHK, 1989 WL 418783, at *1 (C.D. Cal. Apr. 25, 1989)

(awarding attorneys' fees in favor of defendant who obtained a directed verdict after the

presentation of a plaintiff's case).  In *Stilwell*, the court found that a claim was "at best" specious,

litigated with subjective misconduct, and therefore warranted a fee award.  *Id.*  The fact that the

claim went to trial played no role in the court's analysis.  *Id.*

　　　　　Plaintiffs' argument is also undermined by the history of this case.  Although this Court

did not grant Ingenico's motion for summary judgment on BBPOS's GTSA claim, it did so

based on the specific possibility that the fact finder would conclude that BBPOS asserted that

claim in a timely fashion upon acquiring sufficient information that it reasonably should have

discovered the alleged misappropriation.  Although no factual determinations could be made at

summary judgment, BBPOS was aware of the facts.  *See Alamar Biosciences, Inc. v. Difco*

*Lab'ys, Inc.*, No. CIV-S-941856 DFL PAN, 1996 WL 784495, at *3 (E.D. Cal. Feb. 27, 1996).

In *Alamar Biosciences*, the court awarded fees based on a party's continued pursuit of a time-

barred trade-secrets claim.  *Id.*  The party, MicroScan, had been suspicious of misappropriation

but elected not to pursue litigation.  *Id.* at *1.  The court rejected MicroScan's argument that fees

were unwarranted because the factual record had not yet established that its claim was time

barred:

> Whatever the state of MicroScan's counsel's knowledge was,
> MicroScan was aware of all the facts.  Indeed, MicroScan had
> considered litigation . . . , but decided not to proceed. Moreover, all
> the facts which made MicroScan's action frivolous were known to
> MicroScan at the time the complaint was filed. The statute of
> limitations bar was explained in detail in letters from [the
> defendant's] counsel to MicroScan's.

*Id.* at *3.  The same is true here:  BBPOS actively considered litigation but says it "lacked the

energy" to proceed.  Although the nature of the summary-judgment standard of review may have

2

delayed the final determination that its claim was time barred, that determination was made based upon facts that BBPOS knew at the time.  The willful pursuit of a time-barred claim is both objectively specious and subjective bad faith.  The outcome is no different simply because it took until trial to definitively establish the underlying facts known all the while to Plaintiffs.[1]

### B.      Plaintiffs Pursuit Of Their Claims Involved Subjective Misconduct.

Plaintiffs also argue that the pursuit of BBPOS's GTSA claim was not subjective misconduct because there was no "significant warning" about the deficiencies in the claims from the Court.  *See Gabriel Techs. Corp. v. Qualcomm Inc.*, No. 08CV1992 AJB MDD, 2013 WL 410103, at *8 (S.D. Cal. Feb. 1, 2013), *aff'd,* 560 F. App'x 966 (Fed. Cir. 2014) (awarding fees in a case pursued despite being clearly time-barred and without identifying the nature of the trade secrets until well into the litigation).  The Court's summary-judgment decision indicated the dates by which BBPOS must have learned facts sufficient that a reasonably diligent trade-secret holder would have discovered the misappropriation.  *See* ECF No. 228, p. 21.  BBPOS knew when it learned of the relevant facts.  *See Alamar Biosciences,* 1996 WL 784495, at *3.  The fact that the Court did not sternly warn BBPOS not to pursue claims it knew to be time-barred is immaterial.  The Court need not admonish a litigant about its claims at every turn for vexatious conduct to qualify as such.[2]  Plaintiffs were sufficiently aware and sufficiently warned that their claims were time barred that continued pursuit was objectively specious and subjective misconduct.

---

[1] Plaintiffs have been aware that the statutes of limitations potentially barred their claims since at least August 15, 2019.  On that date, Defendants answered the original Complaint and raised the statute of limitations as its First Defense.  *See* ECF No. 58, p. 22.  Counsel for Defendants also informed Plaintiffs that the statute of limitations barred their claims prior to filing Defendants' summary judgment motion.  *See* ECF No. 204-3, p. 1-2.

[2] Although not the grounds upon which this case was ultimately decided, BBPOS and the plaintiff in *Gabriel Technologies* had similar problems sufficiently identifying their trade secrets. *See* 2013 WL 410103, at *8; *see also* ECF No. 294, p. 2-4.

Plaintiffs contend that it was not subjective misconduct for BBPOS to pursue its MTSA claim despite that statute's express inapplicability. The MTSA was not applicable, could not have been applicable, and can never be applicable to conduct occurring before October 1, 2018. *See* ECF No. 374, p. 4. Plaintiffs claim that pleading a statutory claim under the MTSA instead of the common law was merely "inartful pleading." The difference is more than inartful pleading. For conduct occurring when the alleged conduct occurred here, an MTSA claim is a figment of Plaintiffs' imagination. Plaintiffs' pursuit of the claim is objectively specious and subjective misconduct.

Plaintiffs also argue that there is no argument that the trade-secret claim was brought to give it an improper competitive edge or thwart competition. This is obviously incorrect. *See* ECF No. 363, p. 15-16. At trial and in post-trial briefing, Defendants argued that BBPOS waited to pursue its claims because it believed the sales to ROAM and Ingenico were more lucrative than a lawsuit and, when BBPOS believed the opposite, it filed suit. *Id.* This was the basis for Defendants' laches defense, and the Court agreed. ECF No. 369, p. 19-20. Thus, contrary to Plaintiffs' position, not only was there argument to that effect, Defendants prevailed.

## C.   This Court's Inherent Power Justifies Awarding Defendants their Fees.

The case Plaintiffs cite in their opposition demonstrates why this Court should award Defendants their fees using its inherent power. *See RTR Techs., Inc. v. Helming*, No. 09-CV-30189-MAP, 2012 WL 601913, at *1 (D. Mass. Feb. 22, 2012) (Ponsor, J.), *aff'd*, 707 F.3d 84 (1st Cir. 2013). There, the Court noted that the plaintiff pursued a claim despite "the prohibitory statute of limitations and the absence of substantive merits." *Id.* The Court noted that the litigation may have had ulterior motivation in the form of tax avoidance. *Id.* Importantly, the only reason why the plaintiff in *RTR Technologies* avoided paying its opponents fees were "[t]he

4

affidavits and other material submitted by [p]laintiffs in opposition to the motion for fees," which the Court said "provide[d] a fig leaf, sufficient (though barely) to protect [them] from exposure to the very large fee award that [d]efendants understandably seek." *Id.* at *2.

Here, Plaintiffs continued to pursue multiple claims that were clearly barred after having been told that they were barred.  Plaintiffs commenced this litigation only after sitting on their hands for years because the sales to ROAM/Ingenico Inc. benefited BBPOS more than they assessed litigation would have.  Obviously, contrary to RTR Technologies, Plaintiffs have not submitted affidavits or material purporting to show a proper investigation and good faith regarding these specific issues, despite Plaintiffs' reliance on the case.  Because Plaintiffs lack even a "fig leaf," this Court should use its inherent power to award Defendants their attorneys' fees.

AnywhereCommerce's pursuit of its claims is a near paradigm example of vexatious litigation.  AnywhereCommerce first alleged that Defendants interfered through specific acts. *See* ECF No. 67, p. 30-31.  Having no support for their claim, AnywhereCommerce decided instead the tortious interference was Defendants use of BBPOS's purported trade secrets, a theory AnywhereCommerce admitted was unsupported.  *See* ECF No. 214, p. 93.  Now, in opposing Defendants motion for fees and costs, AnywhereCommerce misrepresents this Court's summary-judgment decision.  This Court did not find, as stated in the opposition, that there was some evidence of tortious interference; rather, this Court found that "there [wa]s only speculation" and that AnywhereCommerce "ha[d] not provided evidence."  *See* ECF No. 228, p. 19.  With the summary-judgment standard, this means there was no evidence.  The vexatious and bad faith litigation continues up to and including opposing the motion for fees and costs.

5

None of the arguments made by Plaintiffs change the fact that (1) their claims were barred—by a combination of the relevant statute of limitations, the facts, the law, the conduct occurring outside Georgia, or the statute expressly saying so; (2) they knew it; and (3) they pursued the claims anyway.  Under the relevant trade-secrets statutes and this Court's inherent power, this Court should award Defendants their fees.

## II.      Defendants are a prevailing party and are entitled to costs as specified in their request.

Defendants are a prevailing party and are entitled to their costs as specified in their request.  Plaintiffs' contention that "actually, neither party prevailed," ignores the record in this case and the law regarding "prevailing party," and it should be rejected.

Plaintiffs cite *Sheehy v. Town of Plymouth*, No. CIV. A. 95-12425-RBC, 2001 WL 92386, at *4 (D. Mass. Jan. 18, 2001), as revealing the "two views" applicable when a defendant successfully defends itself but does not prevail on its counterclaims.  That is not what happened here:  Defendants prevailed on Count I of its counterclaims.  *See id.* at *3 ("'[W]hen one party gets substantial relief it prevails even if it doesn't win on every claim.'" (Citing *Slane v. Mariah Boats, Inc.,* 164 F.3d 1065, 1068 (7th Cir. 1999)).  To be sure, Defendants did not obtain total relief on every counterclaim, but that result is not necessary to be a "prevailing party."  *See id.*[3] BBPOS owes Defendants damages pursuant to a final judgment, not the other way around.

In their attempt to suggest that Defendants are not the prevailing party, Plaintiffs do not focus on the claims on which Defendants *prevailed*.  Instead, Plaintiffs counterintuitively point to two specific counterclaims on which Defendants did not obtain relief.  These claims, Plaintiffs

---

[3] Curiously, BBPOS points to this Court's resolution of the IOEngine matter as evidence that it was a prevailing party.  This Court said indemnification for the IOEngine matter was premature. ECF No. 228, p. 41.  This Court, moreover, declined to estop Defendants from seeking indemnification for the IOEngine matter.  ECF No. 228, p. 41.  Ingenico Inc. intends to seek indemnification from BBPOS for the IOEngine matter at the appropriate time.

argue, illustrate "the scope of Ingenico's loss in this case" (again, a case in which BBPOS owes Defendants hundreds of thousands of dollars pursuant to a judgment).  The first counterclaim cited by Plaintiffs, Count VIII of Ingenico's Second Amended Counterclaims, was dismissed *without prejudice* by stipulation of the parties.  ECF No. 178.  The other was Ingenico's breach-of-contract claim seeking disgorgement of profits, on which this Court granted summary judgment.  ECF No. 228.  Of course, BBPOS pursued the same theory of damages and was cagey about other, undisclosed damages it might present, essentially arguing that Defendants and the Court should "stay tuned" for trial when BBPOS would reveal its claimed contract damages.  This Court ultimately put a stop to BBPOS's games and granted a motion *in limine* to preclude BBPOS from presenting evidence other than disgorgement.  *See* ECF No. 326.  That count was dismissed with prejudice.  ECF No. 331; ECF No. 370, p. 2.  Regardless of Plaintiffs' pointing to the resolution of a claim pursuing the same theory that BBPOS itself pursued, the focus on those claims is misplaced.  A party need not prevail on all claims to be a prevailing party.  *See Sheehy*, 2001 WL 92386, at *3.  It is undeniable that (1) Defendants prevailed on all claims and prevailed on Count I of the Counterclaim; (2) Plaintiffs did not prevail on any of their claims and did not successfully defend against the counterclaims.

On the specific costs, Plaintiffs contend that the depositions were not actually used. "Depositions of record may be considered reasonably necessary to the case, even if not used at trial, as long as they were reasonably necessary at the time they were taken." *Asphalt Supply & Serv., Inc. v. United States*, 75 Fed. Cl. 598, 603 (2007).  Use for cross-examination or impeachment is also sufficient to make the deposition costs taxable.  *See Brigham & Women's Hosp., Inc. v. Perrigo Co.*, 395 F. Supp. 3d 168, 172 (D. Mass. 2019).  The depositions in this case were all reasonably necessary for either the defense against Plaintiffs' claims or prosecution

of Count I of the Counterclaims.  *See* ECF No. 371.  Although Plaintiffs argue that maybe the depositions were not used at summary judgment, it is not difficult to confirm that Defendants cited seven deposition transcripts in their Statement of Undisputed Facts in support of summary judgment.  *See* ECF No. 193.  Defendants deposed only eight witnesses.  ECF No. 372, p. 4. Finally, Plaintiffs' arguments that this Court should parse the costs for depositions taken by video ignores that the depositions involved parties in four countries on three continents amid a global pandemic and that Plaintiffs unilaterally determined that its deponents would appear in Canada at a time of significant international travel restrictions.  The costs were necessary for these depositions to occur and the videos were expected to be used had the case been tried to a jury.  *See e.g. Fid. Int'l Currency Advisor A. Fund, LLC v. United States*, No. 05-40151-FDS, 2010 U.S. LEXIS 134467, at *2-4 (D. Mass. Dec. 20 2010) (holding that costs for videotaping a deposition are reasonably necessarily obtained in the case and thereby taxable when witnesses reside out-of-state and may not have been available at trial).

Contrary to Plaintiffs' argument, the First Circuit has held that "copying costs which were reasonably necessary to the maintenance of the action are allowable, even if they are not filed as evidence."  *Prouty v. Thippanna*, 552 F. Supp. 3d 45, 49 (D. Mass 2021) (citation omitted).  Plaintiffs' opposition also ignores this Court's Instruction to Counsel Concerning Trial Procedures requiring a bench copy of all proposed exhibits and the reality of trying this case in which both parties used paper exhibits in questioning witnesses.  These costs are properly awarded.

Defendants' witness fees are based on the witnesses being from out of state, not knowing when their testimony would be required, and knowing that their testimony would *necessarily* depend on the evidence introduced in trial prior to their taking the stand.  *See Guzman v. Boeing*

*Co.*, No. CV 13-12615-JGD, 2019 WL 468195, at *4 (D. Mass. Feb. 6, 2019).  Plaintiffs suggest

that these witnesses should instead have reviewed the daily transcript each evening[4] and

(apparently) waited on standby to travel to Massachusetts when it appeared that their testimony

was imminent.  In *Guzman*, this Court allowed travel expenses and additional stay because they

additional time was necessary, and the same is true here.

### III.      The Fees Are Reasonable, And Defendants Will Provide Detailed Invoices And Time Sheets If Required By The Court.

The attorneys' fees sought by Defendants were reasonably incurred in this litigation, and

there was no significant portion of the fees that realistically could have been apportioned by claim.

For example, BBPOS' trade-secret claim was decided after trial, but its other claims were all based

on the same conduct.  Plaintiffs alleged that Defendants were unjustly enriched because they

misappropriated BBPOS's trade secrets, and BBPOS's breach-of-contract claim—dismissed with

prejudice like the unjust-enrichment claim—was based on Defendants breaching the contract by

using the confidential information comprising the trade secrets.  It is not the case that the attorneys'

fees may be apportioned in the manner Plaintiffs suggest.

Plaintiffs' assertion that the Court should deny the claim for fees based upon the form of

Defendants' motion ignores the express provisions of Rule 54(c), which permits the Court to

determine "issues of liability for fees before receiving submissions on the value of services."

Consistent with this provision and Rule 54(d)(2)(B)(iv), Defendants are prepared to disclose, if

and as the Court so orders, the terms of the agreement regarding fees and detailed timesheets, along

with other documentation establishing the reasonableness and necessity of the fees incurred.

---

[4] Plaintiffs do not explain how the witnesses could have gleaned what evidence was introduced on the day they first took the stand, for which no transcript would have yet been available.

## CONCLUSION

For the foregoing reasons, this Court should grant Defendants' motion for attorneys' fees and bill of costs.

Respectfully submitted,
INGENICO INC., INGENICO CORP. AND
INGENICO GROUP, SA,

By their attorneys,

/s/ *Jeffrey K. Techentin*
JOHN A. TARANTINO (BBO #492230)
PATRICIA K. ROCHA (BBO #542348)
NICOLE J. BENJAMIN (BBO #666959)
R. BART TOTTEN (BBO #631605)
JEFFREY K. TECHENTIN (*pro hac vice*)
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
Tel: (401) 274-7200
Fax: (401) 351-4607
jtarantino@apslaw.com
procha@apslaw.com
nbenjamin@apslaw.com
btotten@apslaw.com
jtechentin@apslaw.com
Dated:  August 21, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2023, I caused to be served via electronic mail a true copy of the within document on the following counsel of record:

Jonathon D. Friedmann, Esq.
Robert P. Rudolph, Esq.
Rudolph Friedmann LLP
92 State Street
Boston, MA 02109
JFriedmann@rflawyers.com
RRudolph@rflawyers.com

Oliver D. Griffin, Esq.
Peter N. Kessler, Esq.
Melissa A. Bozeman, Esq.
Kutak Rock LLP
303 Peach Street, N.E., Suite 2750
Atlanta, GA 30308
Oliver.griffin@kutakrock.com
Peter.kessler@kutakrock.com
Melissa.bozeman@kutakrock.com

/s/ *Jeffrey K. Techentin*

10